HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

DAVID A. WARRINGTON*
dwarrington@dhillonlaw.com
CURTIS M. SCHUBE*
cschube@dhillonlaw.com
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, VA 22314
Telephone: (571) 400-2121

*Admission *Pro Hac Vice* forthcoming

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,** a non-profit corporation, and **MARK SIKES,** an individual,<br><br>        Plaintiffs,<br><br>        v.<br><br>**CITY OF SAN JOSE, a public entity, JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL,**<br><br>        Defendants. | Case Number: _____<br><br>COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND NOMINAL DAMAGES |



Complaint                                            No: _____

*"That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create …"* Justice John Marshall, *M'Culloch v. Maryland*, 17 U.S. 316, 431 (1819). *"A tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding governmental interest."* Justice Sandra Day O'Connor, *Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.*, 460 U.S. 575, 582 (1983).

Plaintiffs National Assocation for Gun Rights, Inc. ("NAGR"), and Mark Sikes ("Sikes"), by and through the undersigned counsel, hereby bring this action for injunctive relief, a declaratory judgment, and nominal damages as a result of the City of San Jose's unconstitutional and unlawful ordinance, specifically Chapter 10 of Title 10 of the San Jose Municipal Code (the "Ordinance"). In support of these requests, Plaintiffs state as follows:

## INTRODUCTION

1.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), and the government "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943). And yet, the City of San Jose has taken the unprecedented step of requiring virtually all gun owners within its city limits to pay unspecified sums of money to private insurance companies and an unspecified fee to an unidentified government-chosen non-profit simply to exercise their constitutional right to own a gun, as well as an unspecified fee to the City for the costs of administering the unlawful Ordinance. Just as a tax on the fundamental right for the press to circulate its content "suggests that the goal of the regulation is not unrelated to suppression of expression," *Grosjean v. American Press Co.*, 297 U.S. 233, 245 (1936), San Jose's imposition of a tax, fee, or other arbitrary cost on gun ownership is intended to suppress gun ownership without furthering any government interest. In fact, the penalties for nonpayment of the insurance and fees include seizure of the citizen's gun. The Ordinance is, therefore, patently unconstitutional.

2.     Moreover, it is at home "where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628. Because California and the City of San Jose have already made

Complaint

it exceedingly difficult to lawfully carry a weapon outside the home, and the Ordinance only affects owners of lawfully owned guns, the Ordinance's true impact is solely on guns kept in the home by law-abiding citizens. It does *nothing* to deter the scourge of unlawful ownership and use of guns by criminals or to recoup from them compensation for the injuries and damage they cause. If left intact, the City of San Jose's Ordinance would strike at the very core of the fundamental constitutional right to keep and bear arms and defend one's home.

3.      By compelling gun owners to subsidize the advocacy of an unnamed government-chosen and anti-gun ownership non-profit, as appears to be the intent and function of the Ordinance, the Ordinance also violates the First Amendment rights of gun owners.

4.      Additionally, the Ordinance violates Article XXIII of the California Constitution because it imposes taxes that were not approved by the voters, or in the alternative, imposes a fee that is unrelated to the costs borne by the City of San Jose. Finally, the Ordinance violates the San Jose City Charter because, by commanding gun owners to directly pay one non-profit for unspecified programs not controlled by the City Council, it unlawfully deprives the City Council of its budget and appropriations powers, and violates a requirement that City receipts be deposited into City accounts.

5.      To preserve the safety and core rights under the Constitution of the law-abiding citizens of the City of San Jose, as well as their rights under the California Constitution and the City Charter, this Court must prevent Defendants from enforcing the unconstitutional and unlawful Ordinance.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the First, Second, Fifth, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C § 1983. This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

7.      This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims regarding (the City of) San Jose's lack of authority to pass the Ordinance because the

Complaint

federal claims and this state claim are so related that they form part of the same case or controversy.

8.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1) because Defendants are officials of the City of San Jose, which is within the geographical boundaries of the Northern District of California. Defendants are also residents of this State within the meaning of 28 U.S.C. § 1391(c).

9.      The Court has personal jurisdiction over the Defendants because Defendant, an official with the City of San Jose, is within the State of California.

## INTRADISTRICT ASSIGNMENT

10.      This action is properly assigned to the San Jose Division, pursuant to Civil L.R. 3-2(e). A substantial part of the events giving rise to the claims occurred in Santa Clara County, California.

## PARTIES

11.      Plaintiff NAGR is a non-stock, non-profit corporation incorporated under the laws of the Commonwealth of Virginia and has its principal place of business in Windsor, Colorado. NAGR is a grassroots organization whose mission is to defend the right to keep and bear arms under the Second Amendment and advance the constitutional right by educating the American people and urging them to action in public policy.  NAGR has members who would be subject to the Ordinance within the City of San Jose.

12.      Plaintiff Mark Sikes resides in San Jose, California. Sikes legally owns a gun, is not a peace officer, does not have a concealed carry permit, and does not meet the qualifications of CAL. GOV. CODE § 68632 (a) and (b) and, therefore, would be subject to the Ordinance if it were to go into effect on July 23, 2022.

13.      Defendant City of San Jose is a municipal corporation within the County of Santa Clara, California. A true and correct copy of the City of San Jose's City Charter is attached as Exhibit "A."

14.      Defendant Jennifer Maguire ("Maguire") is the current and active City Manager for the City of San Jose. San Jose's Charter states that "The City Manager shall be responsible for the faithful execution of all laws, provisions of this Charter, and acts of the Council which are subject to enforcement by the City Manager or by the officers who are under the City Manager's direction and

Complaint

1  supervision." San Jose City Charter, § 701(d) (Exhibit "A"). Additionally, the City Manager is

2  directly identified with enforcement authority throughout the Ordinance. Ordinance §§ 10.32.205,

3  210, 215, 235, & 250.

4       15.   Defendant San Jose City Council (the "City Council") is vested with authority under

5  Article IV of the City of San Jose's City Charter (see Exhibit "A"). The Ordinance vests the City

6  Council with authority to "set forth the schedule of fees and charges established by resolution of the

7  City Council." *Id.,* § 10.32.215; 10.32.250.

8                      **STATEMENT OF FACTS**

9                       **The Ordinance**

10       16.   On January 25, 2022, the City Council adopted bill number 22-045, which will become

11  law on July 25, 2022, one hundred eighty (180) days from the date of its passing.  This law is to be

12  codified as Chapter 10.32 of Title 10 of the San Jose Municipal Code (collectively referred to as the

13  "Ordinance"). A true and correct copy of bill number 22-045 is attached as Exhibit "B." A copy of a

14  January 21, 2022 memo with passed amendments is attached as "Exhibit C."

15       17.   According to a memorandum from Mayor Sam Liccardo, the Ordinance will require an

16  estimated 50,000-55,000 gun-owning San Jose Citizens, minus a few exceptions, to obtain an

17  insurance policy and pay annual fees simply to exercise the same constitutional right to own a gun that

18  existed prior to this ordinance. Liccardo Mem. re Gun Harm Reduction Ord., Jan., 19, 2022 (attached

19  as Exhibit "D").

20       18.   The City of San Jose's City Attorney's summary of the law states

21  that:

22            If approved, the proposed ordinance will require, with certain

          exceptions, that San José residents who own firearms: (a) obtain

23            and maintain liability insurance; (b) pay an annual gun harm

          reduction fee to a designated nonprofit organization that will use

24            the fee proceeds to provide gun harm reduction services to

          residents of the City who own or possess a gun or to members of

25            their household; and (c) pay any City cost recovery fees associated

26            with program implementation, including any associated third-party costs.

27

28  Frimann Mem. re Gun Harm Reduction Ord., Jan. 14, 2022, (attached hereto as Exhibit "E").

4

Complaint

19.　　"Failure to comply [with the Ordinance] shall constitute a civil violation subjecting the owner to the temporary or permanent seizure of the gun, and under specified circumstances, a fine." *Id.* at 2; *see also* Ordinance § 10.32.245 (seizure of guns for noncompliance); § 10.32.240 (fines).

20.　　The Ordinance targets guns in the home. It does not apply to people who have a license to carry a concealed weapon. *Id.*, § 10.32.225. Additionally, absent a concealed carry permit, there is no other way to carry a firearm in San Jose. CAL. PENAL CODE §§ 25850, 26150, 26155, 26350, 26400. The Ordinance thus would charge all law-abiding owners of guns for home and self-defense to pay for the harms caused by criminals who use unregistered guns to commit acts of violence. Ordinance § 10.32.200 (identifying costs the Ordinance seeks to recoup to include those arising from homicides and all firearm-related injuries).

*Insurance Requirement*

21.　　The Ordinance conditions the constitutional right to own a gun on the payment of an unstated amount for insurance.  It states that "A person who resides in the City of San Jose and owns or possesses a Firearm in the City shall obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy…specifically covering losses or damages resulting from any negligent or accidental use of the Firearm, including but not limited to death, injury, or property damage." Ordinance § 10.32.210.A; *see also* § 10.32.200.B.9.

22.　　This requirement does not contain any information about minimum insurance coverage thresholds or premiums. Thus, the City of San Jose has conditioned the constitutional right of its law-abiding citizens to own a gun on an unstated, unregulated price to be set by an industry of for-profit private sector corporations.

*Fee Requirement*

23.　　The second primary component of the Ordinance is the creation of a "fee" for owning a gun. The Ordinance states that "A person who resides in the City and owns or possesses a Firearm in the City shall pay an Annual Gun Harm Reduction Fee to the Designated Nonprofit Organization each year." Ordinance § 10.32.215. No fee amount is specified, nor is there a criteria on how to calculate the fee.  *Id*. Rather, Defendant City Council reserved the right for itself to determine the fee amount at

a later date. *Id.*

24.    The destination of the money is to an undetermined non-profit. That determination is delegated to Defendant Maguire. *Id.*, § 10.32.220.

25.    The non-profit fee in the Ordinance is not to defray the City's administrative costs. Rather, "all monies…shall be expended by the Designated Nonprofit Organization…." *Id.*, § 10.32.220.A.

26.    The only criteria for said non-profit is that it "provid[e] services to residents of the City that own or possess a Firearm in the City or to members of their household, or to those with whom they have a close familial or intimate relationship." These services "include, *but are not necessarily limited to*" suicide prevention services or programs, violence reduction or domestic violence services or programs, mental health services related to gun violence, firearms safety education or training, or addiction intervention and substance abuse treatment. *Id.*, § 10.32.220.A (emphasis added).

27.    "The City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" by the non-profit. *Id.*, § 10.32.220.C

28.    The fee thus functions to compel gun owners to give their money to government-approved non-profits to spend on either wholly unspecified programs at the non-profit's discretion, the non-profit staff's salaries and benefits, or a handful of specified services that the City is not obligated to perform. This redistribution of wealth from gun owners to one City-favored non-profit and its staff is not only obnoxious to the Constitution, it is an invitation to corruption and waste.

29.    By its plain terms, this fee and insurance requirement do not compensate the City to cover reasonable costs of governmental activity, because they are not for government activity. Further, the manner in which those costs are allocated to gun owners do not bear a fair or reasonable relationship to the gun owner's burdens on, or benefits received from, the City's governmental activity.

30.    Indeed, the Ordinance also authorizes a separate fee just to recoup the costs associated in enforcing the Ordinance. *Id.*, § 10.32.250.

31.    Accordingly, as discussed further below, the "Annual Gun Harm Reduction Fee" — unconnected to the cost of City services and for unspecified programs outside of the City's control—is

6

Complaint

nothing more than a *tax* the City is imposing on the exercise of a constitutional right.

**The Second Amendment**

32.     The Second Amendment to the United States Constitution states that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

33.     "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010).

34.     Even in the face of "the problem of handgun violence in this country,…the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636.

35.     "The upshot of [*Heller* and *McDonald*] is that there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home." *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011).

36.     Local governments, including the City of San Jose, are bound by the Second Amendment. *McDonald*, 561 U.S. at 790; *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012).

37.     Imposing an insurance mandate and fees (or taxes) on gun owners in the City of San Jose burdens Plaintiff NAGR's members and Plaintiff Sikes by creating an indefinite cost on their ability to exercise their basic and fundamental right to possess a gun. "A tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding governmental interest." *Minneapolis Star and Tribune*, 460 U.S. at 582.

38.     Specific to insurance, in theory, when crime increases in a community, insurance premiums will increase, just as premiums for car insurance increase in geographical locations that have more car accidents.

39.     Thus, in times of increased need for self-protection and defense, which is one of the very purposes of the Second Amendment, exercising that right will become increasingly expensive and burdensome.

40.     Specific to both the insurance mandate and the fees created by the Ordinance, these

Complaint

costs are subject to the whims of the City Council and private insurance companies and, thus, bear a significant risk of making gun ownership cost prohibitive.

41.     The Ordinance cites a number of statistics about gun violence, but provides no studies or statistics that liability insurance will reduce the stated aim of reducing gun violence. Rather, it in conclusory fashion states that "Liability insurance can reduce the number of gun incidents by encouraging safer behavior…." Ordinance § 10.32.200.B.9.

42.     The Ordinance cites a number of statistics about gun violence, but provides no studies or statistics that the yet-to-be-determined non-profit will accomplish the stated aim of reducing gun violence. Rather, in conclusory fashion, it states that "Programs and services to gun owners and their households can also encourage safer behavior, and provide education and resources to those residents." *Id.*, § 10.32.200.B.10.

43.     Neither the insurance mandate nor the non-profit fee "fit" any stated government objective.

44.     Additionally, governments "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock*, 319 U.S. at 113.

45.     The only exception is to "meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed." *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941). Applied to the Second Amendment, "imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2nd Cir. 2013).

46.     Neither the insurance premium nor the fee to be paid to the City's chosen non-profit are designed to defray the City's administrative costs.

### The Ordinance's Uncertainties

47.     The Ordinance's insurance mandate does not specify any standards for insurance, including a minimum coverage threshold, and requires coverage for certain liabilities "*including but not limited to*" death, injury or property damage. Ordinance § 10.32.210. Thus, the scope of coverage is not sufficiently defined so as to determine what liabilities must be covered.

48.     The Ordinance does not specify how much either fee will cost gun owners. *Id*. §§

8

Complaint

10.32.215; 10.32.250. Rather, "The annual fee will be set forth in the schedule of fees and charges established by resolution of the City Council." *Id.*, § 10.32.215. And, "The City Manager is hereby authorized to charge and collect any and all cost recovery fees…established by resolution of the City Council." *Id.*, § 10.32.250.

49.     The non-profit fee schedule is also undetermined. The Ordinance delegates that responsibility to Defendant Maguire. "The date by which payment shall be made annually shall be established in the regulations promulgated by City Manager." *Id.*, § 10.32.215.

50.     The Ordinance does not create any criteria for the fee amount to be distributed to the non-profit. *Id.*, § 10.32.215.

51.     No assurances are made that the non-profit will use the money for any of the stated purposes. To the contrary, "The City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended." *Id.*, § 10.32.220.C.

52.     The Ordinance does not identify the recipient of the non-profit fee money. Rather, it only sets out criteria that "include, but are not necessarily limited to" suicide prevention or programs, violence reduction, mental health services, firearms safety education or training, or addiction intervention and substance abuse treatment. *Id.*, § 10.32.220. Thus, the criteria for who receives the proceeds of the fee described in section 10.32.220 is open ended.

### The First Amendment

53.     The First Amendment, applied to the states through the Fourteenth Amendment, protects the freedom of speech, including both the right to speak freely and the right to refrain from speaking at all, and to avoid associating with others for expressive purposes. The First Amendment thus prohibits government officials from forcing individuals to support views that they find objectionable.

54.     Thomas Jefferson famously said that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical." *Janus v. AFSCME*, 138 S.Ct. 2448 (2018) quoting *A Bill for Establishing Religious Freedom*, in 2 Papers of Thomas Jefferson 545 (J. Boyd ed. 1950).

55.     The Ordinance directs gun owners to subsidize one unidentified non-profit by paying

Complaint

the city's fee directly to that organization. The Ordinance even prohibits the city from directing how the non-profit would use the funds. The one thing that is clear is that the organization will likely be dedicated to exclusively preaching the negative risks of gun ownership.

56.     The Defendants may not require Plaintiffs to pay fees to non-profits when those fees are going to be used to fund activities of ideological or political nature with which Plaintiffs disagree. *See Keller v. State Bar of California*, 496 U.S. 1, 13 (1990).

57.     The Ordinance therefore compels Plaintiffs' speech and this Court should preliminarily and permanently enjoin Defendant from enforcing the Ordinance and award Plaintiffs' nominal damages.

**California Constitution-Preemption**

58.     Article XI, section 7 of the California Constitution states that "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

59.     Article XI, section 7 of the California Constitution preempts any local law that "duplicates, contradicts, or *enters an area fully occupied by general law*, either expressly or by legislative implication." *Fiscal v. City and County of San Francisco* 158 Cal.App.4th 895, 903 (Cal. Ct. App. 2008)(quotation omitted)(emphasis added).

60.     "[T]he Legislature intended to occupy the field of residential handgun possession to the exclusion of local government entities." *Fiscal*, 158 Cal.App.4th at 909.

61.     Gun regulation is already fully occupied by the state of California. Indeed, California already comprehensively regulates firearms, including firearm safety, CAL. PENAL CODE §§ 23500-23520, the appearance of firearms, *id*., §§ 23800-24790, storage of firearms, *id*., §§ 25000-25225, how to handle lost or stolen firearms, *id*., §§ 25250-25225, carrying firearms, *id*., §§ 25300-26406, the sale, lease, or transfer of firearms, *id*., §§ 26500-28490, the registration and assignment of firearms, *id*., §§ 28010-28024, how to transfer firearms between private persons, *id*., §§ 28050-28070, recordkeeping, background checks, and fees related to transfer, *id*., §§ 28100-28490, the manufacture of firearms, *id*., §§ 29010-29184, who may not possess a firearm, *id*., §§ 29610-30165, rules pertaining to "firearm equipment," *id*., §§ 30150-30165, and, in some cases, firearm registration, *id*.,

Complaint

§§ 30900-30965. This is but a sample of all of the separate statutes regulating firearms in California. *See generally* CAL. PENAL CODE §§ 23500-34370.

62.     Thus, firearm regulation is not within the purview of the City of San Jose pursuant to the California Constitution because the Ordinance is preempted by California law.

**California's Local Tax Requirements**

63.     All taxes imposed by local governments in California must be approved by voters of the local government. CAL. CONST. art. XIII C. A "tax" in California, with exceptions that do not apply here, is defined as "any levy, charge, or exaction of any kind imposed by a local government." Article XIII C, § 1.

64.     The Ordinance, which contains three separate "taxes" (that is, the insurance mandate, the non-profit fee, and the administrative fee), was not submitted to the electorate for approval and, therefore, violates the California Constitution.

**The San Jose City Charter**

65.     The San Jose City Charter vests in the City Council "[a]ll powers of the City and the determination of all matters of policy." San Jose City Charter § 400. These powers include the exclusive authority to impose taxes.  *Id.*, § 602(c).  With regard to the expenditure of City funds, only the City Council has the power to establish a budget. *Id.* §§ 1204, 1206.  The Council also has the sole power to appropriate the expenditure of City funds. *Id.*, § 1207.

66.     The City Manager is the "Chief Administrative Officer and head of the administrative branch of the City government." *Id.*, § 502; *see also id.*, § 701.

67.     "All revenues and receipts which are not required by [the] Charter, State law or ordinances to be placed in special funds shall be credited to the [City's] General Fund." *Id.*, § 1211. The General Fund is "a medium of control and accounting for all City activities excepting activities for which special funds are established and maintained." *Id.*

68.     The Ordinance, by prohibiting the City from directing how "monies from the Gun Harm Reduction fee are expended" by the chosen non-profit, Ordinance § 10.32.220.C, violates the San Jose City Charter's reservation of budgeting and appropriation power to the City Council.

69.     The Ordinance, to the extent it empowers the City Manager to determine how the

Complaint

Ordinance's cost recovery fee is spent, violates the separation of powers within the City Charter, which reserve budgeting and the appropriation of funds to the City Council.

70.     The Ordinance, by requiring gun owners to pay the City-required, City-determined fee directly to a non-profit organization, *id.*, § 10.32.215, thereby diverts a City fee to a non-profit rather than the City's General Fund, and thus violates the City Charter's requirement that all City revenues and receipts be deposited into City accounts as an essential means of City "control and accounting." This too is an invitation to corruption, waste, and fraud.

71.     The Ordinance also violates California Government Code § 43400 which requires that all "money received from licenses, street poll taxes, fines, penalties, and forfeitures shall be paid into the general fund."

\*        \*        \*        \*

72.     In sum, the Ordinance violates the Second Amendment by infringing upon the right to bear arms, violates the First Amendment by forcing gun owners to subsidize a non-governmental non-profit organization's advocacy against gun ownership, violates the Fifth and Fourteenth Amendment rights to due process by being unconstitutionally vague, violates article XI, §7 of the California Constitution by preempting a field thoroughly occupied by state law, violates article XIII C of the California Constitution by failing to submit a local tax to the voters for approval, violates the San Jose City Charter's budget and appropriations provisions, and violates controls on the handling of city receipts under the City Charter and the California Government Code. Accordingly, Plaintiffs request this court to issue preliminary and permanent injunctions preventing Defendants from enforcing the Ordinance in its entirety pursuant to 42 U.S.C. § 1983, declare the Ordinance unconstitutional in its entirety under both the United States and California Constitutions, declare that the Ordinance violates the San Jose City Charter and the California Government Code, issue nominal damages, and order any other relief this Court deems necessary and proper.

### FIRST CLAIM FOR RELIEF
**Violation of the Second and Fourteenth Amendments (42 U.S.C. § 1983)**
***The Ordinance requiring owners of guns to purchase insurance and pay an annual fee violates the Second and Fourteenth Amendments to the United States Constitution.***

73.     Plaintiffs incorporate by reference and re-allege each of the Paragraphs set forth above.

Complaint

74. The Second Amendment of the United States Constitution guarantees "the right of the people to keep and bear arms" and that right "shall not be infringed." U.S. CONST., amend. II.

75. In a Second Amendment inquiry, a Court asks "whether the challenged law burdens conduct protected by the Second Amendment[.]" *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

76. Government "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock*, 319 U.S. at 113. For example, in 1973 the Minnesota legislature passed a use tax on paper and ink. The Supreme Court struck down this special use tax because it singled out the press for special treatment and the Court found that a "tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding governmental interest." *Minneapolis Star and Tribune Co.*, 460 U.S. at 581.

77. This is particularly true because the exercise of a constitutional right cannot be conditioned upon a fee unless it is to defray an administrative expense. *Cox*, 312 U.S. at 577; *Kwong*, 723 F.3d at 165.

78. The Ninth Circuit has adopted the *Murdock*/*Cox* standards for Second Amendment fee cases. *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017).

*The Ordinance Violates the Second Amendment*

79. Both the insurance mandate and the two fee requirements in the Ordinance impose costs on gun owners in the City of San Jose for the enjoyment of their Second Amendment rights.

80. If the City has the power to impose such taxes and fees on gun ownership, there would be little to prevent the city from extinguishing the Second Amendment within its borders.

81. Though it threatens the confiscation of guns for noncompliance with its insurance and fee mandates when it takes effect in just 180 days, the Ordinance does not specify a sum certain or articulate standards that will determine the cost of the insurance requirement or either fee that the Ordinance creates. Therefore, the as yet unknown financial burden of the Ordinance's insurance requirement will be left to the whims of for-profit insurance companies without a clear standard for what their policies must cover.  The City's fees, too, are left unstated and deferred to future, unscheduled determinations of the City Council in an exercise of unfettered discretion.

Complaint

82.    The City's dictate that the right to gun ownership will depend on citizens having an unspecified insurance policy and payment of as-yet undetermined fees to the City and a third party who has yet to be chosen will chill and infringe upon on those citizens' Second Amendment rights.

83.    It is plausible, if not probable, that the City would make gun ownership cost prohibitive for at least some San Jose residents, particularly in light of the view of gun ownership reflected in the Ordinance's findings.

84.    Where, as here, taxes and fees are not anchored to value or income, they are also inherently regressive; their burden on citizens' rights will be inversely proportional to those citizens' ability to pay the taxes and fees.

85.    At the very least, any such a cost "infringe[s]" upon the constitutional right to bear arms.

### *The Ordinance Does Not Serve Its Claimed Purpose or Any Other Valid Purpose*

86.    The Ordinance's "Purpose and Findings" recites facts about homicide, suicide, accidental injury and death, hospitalizations, probabilities of incidents as they correlate to gun ownership, and statistics from automobile insurance. Ordinance § 10.32.200.B. Accordingly, the City of San Jose appears to claim a stated objective of reducing gun violence. *Id.*, § 10.32.200.

87.    However, requiring gun owners to purchase an insurance policy and pay an annual fee to an unnamed non-profit are not a "reasonable fit" to the asserted objective of reducing gun violence insofar as the violence to be reduced is committed by persons who do not register their guns and use their guns to commit crimes, or the injuries are inflicted by persons other than the guns' owners.

88.    The City makes no findings, other than conclusory statements, that insurance or funding non-profits will impact gun violence, particularly gun violence by those who lawfully possess and register their firearms to be kept in the home as opposed to others who possess guns either unlawfully or outside the home. *See generally id.*, § 10.32.200. That the Ordinance does not in fact control how the chosen non-profit would spend the City's fees, and specifically forbids the City from directing the spending of its own funds, further undermines the contention that payment of the fee would achieve the Ordinance's aims.

89.    To the extent that Defendants will assert a separate government interest, said

Complaint

government interest would not be significant, substantial, or important.

90.     To the extent that Defendant will assert a separate government interest, requiring gun owners to pay insurance and an annual fee to an unnamed non-profit does not constitute a "reasonable fit" for any other government interest.

91.     Neither the insurance requirement nor the fee requirement is historically or presumptively lawful, in that, the Ordinance is a first-of-its-kind regulation of firearms.

*       *       *       *

92.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

93.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Ordinance.

94.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### Violation of the First and Fourteenth Amendments (42 U.S.C. § 1983)
*The payment of a fee to a non-profit violates the free speech rights of gun owners by compelling them to subsidize private speech on matters of substantial public concern.*

95.     Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

96.     The First Amendment protects Plaintiffs' freedom of speech which includes both the right to speak freely and the right to refrain from speaking at all.

97.     The First Amendment protects the right of Plaintiffs to eschew association for expressive purposes.

98.     The First Amendment prohibits government officials from forcing individuals to support views that they find objectionable.

99.     Thomas Jefferson famously said that "to compel a man to furnish contributions of

Complaint

money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical." *Janus*, 138 S.Ct. at 2464 (quoting *A Bill for Establishing Religious Freedom*, in 2 Papers of Thomas Jefferson 545 (J. Boyd ed. 1950)).

100.    In *Janus v. AFSCME*, the Supreme Court examined the case of compelled subsidization of private speech. The Court never determined if the courts are to use strict scrutiny or exacting scrutiny because in *Janus* the Court concluded that the "Illinois scheme cannot survive under even the more permissive standard." *Id.* at 2465.

101.    Furthermore, the Defendants may not require Plaintiffs to pay fees to non-profits when those fees are going to be used to fund activities of ideological or political nature, such as endorsing gun control. *See Keller*, 496 U.S. at 13.

102.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

103.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Ordinance.

104.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
#### Violation of the Fifth and Fourteenth Amendments (42 U.S.C. § 1983)
*The insurance requirements and annual fee are unconstitutionally vague, in violation of the Fifth and Fourteenth Amendments.*

105.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

106.    A law is unconstitutionally vague when "obedience to a rule or standard was so vague and indefinite as really to be no rule or standard at all." *Boutilier v. INS*, 387 U.S. 118, 123 (1967).

107.    The Ordinance is vague, in that, it does not specify any standards for insurance, including a minimum coverage threshold, and requires coverage for certain liabilities "*including but*

---

16

Complaint

*not limited to*" death, injury or property damage. Ordinance § 10.32.210.

108.    The Ordinance is vague, in that, it does not identify any particular standards by which the non-profit fee is calculated, or a specific fee amount, and leaves open the possibility of prohibitive fees and future fee increases.  *Id.*, § 10.32.220.

109.    The Ordinance is vague, in that, it does not identify the recipient of the fee that must be paid to a non-profit in order to avoid gun confiscation and fines.

110.    Further, the Ordinance does not specify how the chosen non-profits must spend the City's fee revenues, but rather only sets out a criterion that "include, but are not necessarily limited to" suicide prevention or programs, violence reduction, mental health services, firearms safety education or training, or addiction intervention and substance abuse treatment. *Id.*, § 10.32.220.

111.    No assurances are made that these non-profits will use the money for any of the stated purposes. To the contrary, "The City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended." *Id.*, § 10.32.220.C.

112.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

113.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Ordinance.

114.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF
### Violation of article XI, §7 of the California Constitution-Field Preemption
*The Ordinance occupies a field already occupied by California law.*

115.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

116.    Article XI, section 7 of the California Constitution states that "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not

Complaint

in conflict with general laws."

117.    The State of California has voluminous statutes comprehensively regulating firearm ownership in California. *See generally* CAL. PENAL CODE §§ 23500-34370. California courts have already determined that "the Legislature intended to occupy the field of residential handgun possession to the exclusion of local government entities." *Fiscal*, 158 Cal.App.4th at 909 (citing Cal. Penal Code § 12026).[1]

118.    Accordingly, because the state legislature has already occupied the field of regulating residential handgun possession, as well as all conceivable fields of gun possession, local governments are excluded from further regulation of guns, particularly guns in the home.

119.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

120.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**FIFTH CLAIM FOR RELIEF**

**Violation of article XXIII C, §1 of the California Constitution-Local Tax Elections**
***The Ordinance imposes new taxes, but was not submitted to the electorate for vote.***

121.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

122.    The California Constitution requires that "No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote." Article XIII C, §2(b).

123.    It also requires that "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." Article XIII C, §2(d).

124.    A "tax" is "any levy, charge, or exaction of any kind imposed by a local government,"

---

[1] The state laws cited in *Fiscal* have since been repealed.  However, they have been continued into other statutes with no substantive change.

Complaint

with exceptions that do not apply here. Article XIII C, §1(e).

125.    Thus, both of the fees in the Ordinance and the insurance requirement constitute a "tax."

126.    The Ordinance, whether it is a general or a special tax, was never submitted to the electorate for a vote.

127.    We note that, if the City disputes that the Ordinance is a tax, "the [City] bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." Article XIII C, §1.

128.    The City cannot meet this burden because the fees imposed are a levy, charge, or exaction imposed by the city that does not meet any exception, and the amount of the fees are "more than necessary to cover the reasonable costs of the governmental activity" because they are not for government activity, and "the manner in which those costs are allocated to" gun owners do not "bear a fair or reasonable relationship to the payor's burdens on, or benefits received from" the City's "governmental activity." Article XIII C, §1.

129.    As stated previously, the insurance requirement and the fee allocated to a non-profit do not cover "costs of a governmental activity" as the insurance is allocated to for-profit corporations and the fee is allocated to an unnamed non-profit rather than the City.

130.    Neither the insurance requirement nor the non-profit fees bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, a governmental activity.

131.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

132.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

19

Complaint

1   //

2   //

3   //

### SIXTH CLAIM FOR RELIEF
**San Jose City Charter, Art. IV, §§ 400, 502, 602, 701, 1204, 1206, 1207, 1211**
***The Ordinance Violates the Separation of Powers Within the City of San Jose's Government, its Budget and Appropriations Procedures, and Controls on the City's Receipts***

133.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

134.    The San Jose City Charter ("Charter") establishes the powers of the City of Sam Jose's government.  San Jose City Charter § 200.

135.    The Charter divides the legislative power of the City's government from its executive power.  "All powers of the City and the determination of all matters of policy shall be vested in the Council, subject to the provisions of this Charter and the Constitution of the State of California." *Id.*, § 400.

136.    The Charter grants the City Council the power to impose taxes by ordinance.  *Id.*, § 602(c).

137.    Only the City Council has the power to establish a budget. *Id.* §§ 1204, 1206.  The Council also has the sole power to appropriate the expenditure of City funds. *Id.*, § 1207.

138.    Finally, "[a]ll revenues and receipts which are not required by [the] Charter, State law or ordinances to be placed in special funds shall be credited to the [City's] General Fund." *Id.*, § 1211. The General Fund is "a medium of control and accounting for all City activities excepting activities for which special funds are established and maintained." *Id.* Cal. Gov't. Code § 43400 also requires monies received "from licenses, street poll taxes, fines, penalties, and forfeitures" to be put into the general fund.

139.    Here, the Ordinance states that "[t]he City shall not specifically direct how the monies from the Gun Harm Reduction fee are expended" by its chosen non-profit.  Ordinance, § 10.32.220.C.

140.    The Ordinance, by prohibiting the City from directing how "monies from the Gun Harm Reduction fee are expended" violates the San Jose City Charter's reservation of budgeting and

Complaint

appropriation power to the City Council.

141.    The Ordinance, to the extent it empowers the City Manager to determine how the Ordinance's cost recovery fee is spent, violates the separation of powers within the City Charter, which reserves budgeting and the appropriation of funds to the City Council.

142.    The Ordinance states that gun owners must pay the City-required, City-determined fee directly to a non-profit organization. *Id.*, § 10.32.215.

143.    By diverting a City fee to a non-profit rather than the City's General Fund, the Ordinance violates the City Charter's requirement that all City revenues and receipts be deposited into City accounts as an essential means of City "control and accounting."

144.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

145.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## SEVENTH CLAIM FOR RELIEF
### Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202
*Plaintiffs are entitled to declaratory relief.*

146.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

147.    To the extent that each of the claims above have not already established a remedy, Plaintiffs are entitled to declaratory relief holding that the Ordinance violates Plaintiffs' individual rights under the United States and California constitutions and San Jose's City Charter, and is otherwise invalid, are entitled to preliminary and permanent injunctions preventing the enforcement of the Ordinance, nominal damages, and further relief that this Court deems necessary or proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray, on behalf of themselves and all of NAGR's members, for the following:

A.    Preliminary and permanent injunctions enjoining Defendants and all successors in

Complaint

1    office from enforcing the Ordinance, including those authorized by 42 U.S.C. § 1983

2    and Cal. Civil Code §52.1;

3    B.    A declaratory judgment that the Ordinance violates the First, Second, Fifth, and

4    Fourteenth Amendments of the United States Constitution and article XI, section 7 and

5    article XIII C of the California Constitution, San Jose's City Charter, and granting the

6    necessary and proper relief this Court deems appropriate, including relief authorized by

7    28 U.S.C. §§ 2201, 2202;

8    C.    Nominal damages;

9    D.    Costs and attorney fees, including those authorized by 42 U.S.C. § 1988 and California

10    Code of Civil Procedure Section 1021.5; and

11    E.    Any other relief as this Court, in its discretion, deems just and appropriate.

12

13    Dated: January 25, 2022                    DHILLON LAW GROUP INC.

14

15                                              By:  /s/ Harmeet K. Dhillon

16                                              Harmeet K. Dhillon
                                                Michael A. Columbo
17                                              Mark P. Meuser
                                                DHILLON LAW GROUP INC.
18                                              177 Post Street, Suite 700
                                                San Francisco, California 94108
19                                              (415) 433-1700

20
                                                David A. Warrington*
21                                              Curtis M. Schube*
                                                DHILLON LAW GROUP INC.
22                                              2121 Eisenhower Avenue, Suite 402
                                                Alexandria, VA 22314
23                                              (571) 400-2121

24
                                                *Admission *pro hac vice* forthcoming
25

26                                              *Attorneys for Plaintiffs*

27

28

Complaint