JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
KAIYI A. XIE (SBN 311182)
kxie@cpmlegal.com
MELISSA MONTENEGRO (SBN 329099)
mmontenegro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.**, a non-profit corporation, and **MARK SIKES**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, a public entity**, JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL**,<br><br>Defendants. | **Case No. 5:22-cv-00501-BLF**<br><br>**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          June 2, 2022<br>Time:          9:00 AM<br>Courtroom:  3 – 5th Floor<br>Judge:         Hon. Beth Labson Freeman<br><br>Complaint Filed: January 25, 2022 |

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Thursday, June 2, 2022 at 9:00 A.M., or as soon thereafter as counsel may be heard, before the Honorable Beth Labson Freeman, Courtroom 3 of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California 95113, Defendants City of San Jose, Jennifer Maguire, in her official capacity as City Manager of the City of San Jose, and the City of San Jose City Council (collectively, "Defendants") will and hereby do move this Court to dismiss Plaintiffs' Complaint, ECF No. 1 ("Complaint"), in its entirety under Federal Rules of Civil Procedure 8(a) and 12(b)(1). This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Toni Taber, San Jose City Clerk, and supporting papers, the attached exhibits, the Proposed Order filed herewith, judicially noticeable facts, the Request for Judicial Notice and supporting Declaration of Tamarah P. Prevost, the complete files and records in this action, and such other evidence and argument as may be allowed at the hearing on this Motion.

Defendants respectfully request that this Court grant Defendants' Motion in its entirety.

## ISSUES TO BE DECIDED

1.   Whether the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because the Complaint fails to present a justiciable Case or Controversy under Article III of the U.S. Constitution.

2.   Whether the Complaint fails to plead a claim for relief under Fed. R. Civ. P. 8(a) because, even if the allegations in the Complaint are taken as true, it fails to state the grounds for the Court's jurisdiction and fails to show that show that Plaintiffs are entitled to relief.

3.   Whether the Complaint's allegations and legal contentions lack all basis in existing law, wholly lack evidentiary support, and were asserted without a reasonable inquiry such that sanctionable conduct has occurred under Fed. R. Civ. P. 11 for which Plaintiffs' counsel should be ordered to show cause why the filing of the Complaint does not violate Fed. R. Civ. P. 11(b).

4.   Whether leave to amend should be denied because the Court is in want of jurisdiction from the suit's inception, and because the continued maintenance of this suit violates the Tenth Amendment and the U.S. Constitution's guarantees of federalism and local sovereignty.

1  Dated: February 7, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

2

3                                            By: */s/ Tamarah P. Prevost*
                                                 JOSEPH W. COTCHET
4                                                TAMARAH P. PREVOST
                                                 KAIYI A. XIE
5                                                MELISSA MONTENEGRO

6                                            *Attorneys for Defendants*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY .............................................3

III.  LEGAL STANDARD..................................................................................3

IV.  ARGUMENT ................................................................................................4

    A.   Plaintiffs Seek an Advisory Opinion on Claims that are Not Ripe ...................5

        1.   Nonjusticiability is Apparent from the Pleadings ....................................5

        2.   Nonjusticiability is Supported by Incontrovertible Facts .........................6

        3.   Courts Routinely Reject Challenges to Potential Government Action .....................8

    B.   The Complaint Violates Fed. R. Civ. P. 11 ....................................................10

        1.   The Complaint is Objectively Frivolous ..................................................10

        2.   The Complaint was Filed to Impede the Democratic Process ...................11

    C.   The Complaint Should be Dismissed Without Leave to Amend ....................13

V.    CONCLUSION...........................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anderson v. City of San Jose*,
    42 Cal. App. 5th 683 (2019) .......................................................................................4

5

6

*Cetacean Cmty. v. Bush*,
    386 F.3d 1169 (9th Cir. 2004) ...................................................................................4

7

*Cisco Sys., Inc. v. Alberta Telecomms. Res. Ctr.*,
    892 F. Supp. 2d 1226 (N.D. Cal. 2012) .....................................................................8

8

9

*Citizens United v. Fed. Election Comm'n*,
    558 U.S. 310 (2010) ..................................................................................................11

10

11

*City of Napa v. Easterby*,
    61 Cal. 509 (1882) ......................................................................................................6

12

*Clancy v. Mancuso*,
    2021 WL 3191634 (N.D. Cal. July 28, 2021) ..........................................................13

13

14

*Clinton v. Acequia, Inc.*,
    94 F.3d 568 (9th Cir. 1996) ........................................................................................5

15

16

*Coal. For a Healthy Cal. v. FCC*,
    87 F.3d 383 (9th Cir. 1996) ........................................................................................3

17

*Friends of the Earth v. Sanderson Farms, Inc.*,
    2019 WL 3457787 (N.D. Cal. July 31, 2019) ..........................................................13

18

19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ....................................................................................................3

20

*Leadsinger, Inc. v. B.M.G. Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) ....................................................................................13

21

22

*Lopes v. Turnage*,
    2021 WL 5142070 (N.D. Cal. Oct. 15, 2021) ..........................................................13

23

24

*Marbury v. Madison*,
    5 U.S. 137 (1803) ........................................................................................................2

25

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
    858 F.2d 1376 (9th Cir. 1988) ..................................................................................13

26

27

*Nguyen v. Simpson Strong-Tie Co.*,
    2020 WL 5232564 (N.D. Cal. Sept. 2, 2020) .....................................................10, 11

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .................................................................................9

*Portland Police Ass'n v. City of Portland*,
    658 F.2d 1272 (9th Cir. 1981) ...............................................................14

*Potter v. City of Compton*,
    15 Cal. App. 2d 232 (1936) ......................................................................6

*Reno v. Catholic Soc. Servs., Inc.*,
    509 U.S. 43 (1993)....................................................................................4

*Rizzo v. Goode*,
    423 U.S. 362 (1976) ...............................................................................14

*S.F. Herring Assoc. v. Pac. Gas & Elec. Co.*,
    2020 WL 6736930 (N.D. Cal. June 15, 2020) .........................................2

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ..................................................................4

*Splunk Inc. v. Deutsche Telekom AG*,
    2021 WL 3140832 (N.D. Cal. July 26, 2021)...........................................8

*Talece Inc. v. Zheng Zheng*,
    2021 WL 242913 (N.D. Cal. Jan. 25, 2021) ...........................................10

*Taylor v. Beckham*,
    178 U.S. 548 (1900)...............................................................................5, 9

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ......................................................3, 4, 8, 9

*United Pub. Workers of Am. v. Mitchell*,
    330 U.S. 75 (1947)....................................................................................9

*United States v. Butler*,
    297 U.S. 1 (1936)......................................................................................1

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
    454 U.S. 464 (1982)............................................................................2, 11

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)................................................................................12

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ....................................................................9

*W. Oil & Gas Association v. Sonoma Cty.*,
    905 F.2d 1287 (9th Cir. 1990) ..................................................................9

*Westlands Water Dist. Distrib. Dist. v. Nat. Res. Defense Council*,
 276 F. Supp. 2d 1046 (E.D. Cal. 2003)........................................................14

*Wolfson v. Brammer*,
 616 F.3d 1045 (9th Cir. 2010) ....................................................................8

**Other Authorities**

5 Wright & Miller, Federal Practice and Procedure
 § 1206 (4th ed. 2021) ................................................................................10

6 Wright & Miller, Federal Practice and Procedure
 § 1473 (3d ed. 2021) ..................................................................................13

*Dudley's Range Rogues*, YouTube, at 01:30–02:02 (Jan. 30, 2022),
 https://youtu.be/YZJlctURfeg........................................................................12

**Rules**

Federal Rules of Civil Procedure
 Rule 8(a)...............................................................................................1, 10
 Rule 11 .............................................................................................. *passim*
 Rule 12(b)(1)............................................................................................1, 4
 Rule 12(h)...................................................................................................8
 Rule 15(a)..................................................................................................13
 Rule 15(a)(2)..............................................................................................13
 Rule 15(d)..................................................................................................13

Federal Rules of Evidence
 Rule 201....................................................................................................12
 Rule 802(d)(2)............................................................................................12

San Jose City Charter
 Article VI, Section 604 ......................................................................... *passim*

United States Constitution
 Article III ........................................................................................... *passim*

1

### MEMORANDUM OF POINTS AND AUTHORITIES[1]

It is sometimes said that the court assumes a power to overrule or control the action of the people's representatives. This is a misconception…. The only power it has, if such it may be called, is the power of judgment. This court neither approves nor condemns any legislative policy. Its delicate and difficult office is to ascertain and declare whether the legislation is in accordance with, or in contravention of, the provisions of the Constitution; and, having done that, its duty ends.

*United States v. Butler*, 297 U.S. 1, 62 (1936).

## I. INTRODUCTION

At 11:08 p.m. on January 25, 2022, mere minutes after the San Jose City Council's ***first reading*** of a ***draft*** firearm ordinance seeking to mitigate gun harms and protect San Jose residents' health and safety, Plaintiffs hastily filed this suit—over a law that ***does not yet exist***. Plaintiffs disregarded whether the target of their litigation had actually been enacted before they sprinted into federal court and in front of television cameras. What Plaintiffs have in their crosshairs is a blueprint, *proposed* legislation subject to later amendment, delay, or potentially rejection. In fact, Plaintiffs' Complaint attaches a version of the proposed gun ordinance clearly labeled "**DRAFT**" *on each and every page*. *See* Compl., Ex. B at 1-13. The preliminary nature of this ordinance is clear: in its first reading, the City Council directed the San Jose City Attorney to make additional edits to certain provisions of the draft ordinance for future consideration and adoption. *See* attached Declaration of Toni Taber, San Jose City Clerk, in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Taber Decl.") ¶ 4.

Plaintiffs claim to have filed suit to vindicate their constitutional rights. Disappointingly, however, in their haste they violate bedrock principles arising from that very same Constitution: that

---

[1] Herein, *unless otherwise specified*: Defendants are alternatively referred to as "San Jose," "Council," and "City Council"; "Constitution" means the U.S. Constitution; citations to "¶__" reference paragraphs in the Complaint (ECF No. 1) and "Compl., Ex.__" to the Complaint's Exhibits (*see* ECF No. 1-1); pincites do not rely on ECF-generated pagination; internal citations, alterations, quotations, and footnotes are omitted; and emphasis is added.

**DEFENDANTS' MOTION AND MP&A ISO MTD FOR LACK OF SMJ;
CASE NO. 5:22-CV-00501-BLF**

1

a federal court can only adjudicate real, live controversies. "[T]he 'cases and controversies' language of Art. III forecloses the conversion of courts of the United States into judicial versions of college debating forums," and forecloses Plaintiffs' claims here. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 473 (1982) (citing U.S. Const. art. III, § 2). San Jose strongly believes that the proposed ordinance is lawful and constitutionally sound. Upholding the Constitution and laws of the United States—including the Second Amendment—is of paramount importance, and San Jose is without doubt that it is "emphatically the province and duty" of this Court "to say what the law is," and "that a law repugnant to the constitution is void." *Marbury v. Madison*, 5 U.S. 137, 177, 180 (1803). However, the *draft* gun ordinance at issue in this suit was and is not law. So, Plaintiffs' choice to favor politicization over prudence must not be credited, particularly as it risks intimidating Councilmembers who are still actively considering the draft ordinance.

Moreover, the unelected Plaintiffs should not be permitted to use federal judicial resources to potentially influence elected officials' consideration of proposed legislation, then alter their Complaint once the ordinance is enacted. Such gamesmanship threatens to obstruct duly elected San Jose lawmakers in the discharge of their duties, in violation of the Tenth Amendment and constitutional guarantees of federalism and local sovereignty. Plaintiffs' Complaint cannot be cured through later amendment or supplementation, even once the ordinance is enacted. The Court should grant San Jose's Motion and dismiss the Complaint without leave to amend, and order Plaintiffs' counsel to show cause why the Complaint satisfies Fed. R. Civ. P. 11(b) ("Rule 11") should Plaintiffs choose to oppose this Motion.[2]

/ / /

/ / /

/ / /

---

[2] ***To be clear, San Jose is not moving for sanctions and is not pursuing fees and expenses*** under Rule 11(c)(2) or Civil L.R. 7-8. *See, e.g.*, *S.F. Herring Assoc. v. Pac. Gas & Elec. Co.*, 2020 WL 6736930, at *8 n.5 (N.D. Cal. June 15, 2020) (noting that the defendant asked the Court to "order an attorney to show cause why conduct … has not violated Rule 11(b)" based on "Rule 11(c)(3)").

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1

## II.   FACTUAL AND PROCEDURAL HISTORY

2

On June 29, 2021, the San Jose City Council directed the San Jose City Attorney to return to

3

Council with a draft gun control ordinance seeking to mitigate gun harms and protect San Jose

4

residents' health and safety, for Council to consider. Taber Decl. ¶ 2; Ex. 1; Compl., Ex. E at 1.

5

On the evening of January 25, 2022, the San Jose City Council heard Agenda Item 4.1 – Gun

6

Harm Reduction Ordinance No. 30716, which concerned the draft ordinance that Plaintiffs have

7

attached to their Complaint. Taber Decl. ¶ 3; Ex. 2; Compl., Ex. B. It was the first reading of the

8

draft ordinance. Taber Decl. ¶¶ 4, 7. During the same meeting, and pursuant to the requirements of

9

the San Jose City Charter ("City Charter"), the City Council voted to publish the proposed ordinance

10

and to lay it before the Council for later consideration and adoption. Taber Decl. ¶¶ 4-5, 7; Ex. 3;

11

Compl., Ex. A at art. VI., § 604. The City Council also directed the San Jose City Attorney to amend

12

certain provisions of the draft ordinance. Taber Decl. ¶ 4. The City Council did *not* vote to enact the

13

draft ordinance into law at that time. *Id.* According to this District's CM/ECF-generated docket

14

activity report, Plaintiffs filed suit at 11:08 p.m. on January 25, 2022, the very same evening that the

15

City Council considered the draft ordinance on first reading and voted to publish it in anticipation

16

of later acting upon the ordinance. Ex. 7.

17

Indeed, the second reading of the draft firearm ordinance with amendments is currently

18

scheduled to take place on February 8, 2022, at which time the City Council can vote to, *inter alia*,

19

reject or pass a version of the ordinance into law. Taber Decl. ¶ 8; Ex. 5.

20

## III.   LEGAL STANDARD

21

The plaintiff bears the burden of establishing that the Court has jurisdiction. *Kokkonen v.*

22

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court's "role is neither to issue

23

advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or

24

controversies consistent with the powers granted the judiciary in Article III of the Constitution."

25

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc).

26

"[F]ederal courts have never been empowered to render advisory opinions." *Coal. For a Healthy*

27

*Cal. v. FCC*, 87 F.3d 383, 386 (9th Cir. 1996). One of the justiciability doctrines designed to ensure

28

that federal courts do not give advisory opinions is ripeness, which "prevent[s] the courts, through

**DEFENDANTS' MOTION AND MP&A ISO MTD FOR LACK OF SMJ;
CASE NO. 5:22-CV-00501-BLF**

3

1  avoidance of premature adjudication, from entangling themselves in abstract disagreements."

2  *Thomas*, 220 F.3d at 1138. Ripeness doctrine "is drawn from both Article III limitations on judicial

3  power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc.*

4  *Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).

5      A defendant may attack a plaintiff's assertion of jurisdiction by moving to dismiss pursuant

6  to Fed. R. Civ. P. 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule

7  12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d

8  1035, 1039 (9th Cir. 2004). Herein, San Jose makes *both* a facial and a factual jurisdictional attack.

9  "In a ***facial attack***, the challenger asserts that the allegations contained in a complaint are insufficient

10 on their face to invoke federal jurisdiction. By contrast, in a ***factual attack***, the challenger disputes

11 the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "In

12 resolving a factual attack on jurisdiction, the district court may review evidence beyond the

13 complaint without converting the motion to dismiss into a motion for summary judgment. The court

14 need not presume the truthfulness of the plaintiff's allegations." *Id.* If "the moving party has

15 converted the motion to dismiss into a factual motion by presenting affidavits or other evidence

16 properly brought before the court, the party opposing the motion must furnish affidavits or other

17 evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*

18 **IV.    ARGUMENT**

19      This suit presents a highly unusual circumstance in which a federal court is asked to place

20 its judicial thumb on the legislative deliberations of the elected City Council of San Jose, a charter

21 city on which the California Constitution confers "plenary power over [] municipal affairs" absent

22 conflicting state law under California's Home Rule doctrine. *Anderson v. City of San Jose*, 42 Cal.

23 App. 5th 683, 693 (2019).

24      ***First***, Plaintiffs' Complaint should be dismissed because it calls for an advisory opinion on

25 nonjusticiable issues that are not ripe for review; the proposed ordinance is subject to change and

26 not yet law. ***Second***, Plaintiffs' counsel should be ordered to show cause as to why the pleadings

27 satisfy Rule 11(b) because nonjusticiability is self-evident from the face of Plaintiffs' internally

28 contradictory pleadings. ***Third***, dismissal should be without leave to amend. Even if the proposed

ordinance were enacted at some point, allowing Plaintiffs to await that possibility only to amend or supplement the Complaint would be highly prejudicial to legislative deliberations over all proposed ordinances and repugnant to the Tenth Amendment and constitutional guarantees of federalism and local sovereignty.

### A.        Plaintiffs Seek an Advisory Opinion on Claims that are Not Ripe

The Complaint attempts to manufacture an actual controversy over a proposed ordinance that is subject to change and whose passage is a contingent probability. No matter how likely its passage in one form or another, there is no justiciable controversy at bar. "Knowing" or "believing" it will be passed is constitutionally insufficient. Controlling law is unequivocal: "a case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur." *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996); *see also, e.g.*, *Taylor v. Beckham*, 178 U.S. 548, 579-80 (1900) ("Whether certain statutes have or have not binding force it is for the state to determine, and that determination in itself involves no infraction of the Constitution of the United States, and raises no Federal question giving the courts of the United States jurisdiction."). As shown below, the facts—whether taken from the Complaint and assumed to be true, or from authoritative extrinsic evidence—conclusively demonstrate that Plaintiffs have sued over a nonjusticiable contingency.

### 1.        Nonjusticiability is Apparent from the Pleadings

The fact that San Jose's proposed ordinance has not been enacted into law is obvious based on a review of the pleadings. For example, the Complaint alleges that on "January 25, 2022, the City Council adopted bill number 22-045," which is "attached as Exhibit 'B.'" ¶ 16. The following text appears on *every page* of Exhibit B: "**DRAFT--Contact the Office of the City Clerk at (408)535-1260 or CityClerk@sanjoseca.gov for final document.**" Compl., Ex. B at 1-13 (emphasis in original).

Also, Exhibit B's final page contains a section for San Jose's Mayor and City Clerk to sign and record the City Council's votes on whether the bill "PASSED FOR PUBLICATION." *Id.* at 13 (emphasis in original). Generously construing Plaintiffs' imprecise allegation that "bill 22-045" (*i.e.*,

Exhibit B to the Complaint) "passed" on January 25, 2022 (¶ 16), it can at most be understood that the bill "passed *for publication*."

Under the San Jose City Charter (also attached to the Complaint as Exhibit A), a proposed city ordinance's publication is a necessary—not sufficient—condition to its final enactment into binding law. Article VI, Section 604 of the City Charter governs the procedure for the adoption of ordinances. There, it states:

> No ordinance shall be adopted unless (a) it is ***first passed for publication*** of title, (b) the title of the ordinance is published as hereinafter provided in this Section, and (c) ***at least six (6) days*** have elapsed between the date it was passed for publication of title and the date it is adopted. The title of an ordinance shall be deemed to have been "published", as said term is hereinabove used in this Section if such title is printed in a newspaper of general circulation in the City no later than the third day immediately preceding the date of its adoption.

Taber Decl. ¶ 5; Ex. 3; Compl., Ex. A at art. VI, § 604.

In other words, San Jose must first publish a proposed ordinance before taking a final vote on its enactment. San Jose is a charter city that has "adopted procedure for the passage of ordinances" in its City Charter, and "such procedure must prevail over the general laws"—including state law governing the procedure for passing ordinances, which are applicable only to non-charter cities. *Potter v. City of Compton*, 15 Cal. App. 2d 232, 235 (1936).

Here, simply passing "bill 22-045" for publication on first reading, does not pass it as law. Over 140 years ago, the California Supreme Court rejected a flaw in reasoning inversely analogous to that inherent in Plaintiffs' Complaint: "We are not authorized to infer that [the ordinance] was properly published because it was passed…." *City of Napa v. Easterby*, 61 Cal. 509, 517 (1882). Clearly, a draft ordinance's publication and passage are two independent acts.

### 2.    Nonjusticiability is Supported by Incontrovertible Facts

Though the absence of subject matter jurisdiction is facially apparent and gives the Court reason enough to dismiss the Complaint, incontrovertible facts extrinsic to the pleadings supply further "ammunition." The City of San Jose's "Guide to Council Meetings" pamphlet (attached as

Ex. 4, and is freely available online and fully accessible to Plaintiffs) provides a fair overview of the overall parliamentary procedure for the adoption of ordinances by the City Council. It states: "With the exception of emergency ordinances and tax/appropriation ordinances, ***all ordinances must have two 'readings' at two separate Council meetings. Those ordinances do not become effective until 30 days after Council adoption at the second meeting***." *See* Taber Decl. ¶ 6; Ex. 4.

Here, when looking to the evidence and laws, it is clear that the draft ordinance was simply introduced to Council for a *first* reading on January 25, 2022. Plaintiffs' Complaint was filed the same day. As explained above, the draft ordinance was passed for publication on January 25, 2022. However, there are three more steps the Council must take before the draft ordinance can be properly adopted as law.

***First***, the ordinance must undergo a second reading by Council. Taber Decl. ¶ 7. That has not yet happened. *Id.* At second reading, Council can vote to, *inter alia*, reject or pass a version of the proposed ordinance into law. *Id.* ¶ 8. Council also directed the San Jose City Attorney to make edits to certain provisions of the draft ordinance for consideration on second reading. *Id.* ¶ 4. ***Second***, the title of the ordinance must be published in a newspaper of general circulation in San Jose. *Id.* ¶ 5; Ex. 3; Compl., Ex. A at art. VI, § 604(a). Publication took place on January 31, 2022, *after* the January 25, 2022, first reading of the proposed ordinance. Taber Decl. ¶ 9; Ex. 6. ***Third***, under the City Charter, *at least six days* must elapse between the date it was passed for publication of title and the date it is adopted. Taber Decl. ¶ 5; Ex. 3; Compl., Ex. A at art. VI, § 604(c). The six-day requirement is critical here because it makes it impossible that all three required steps could have occurred on January 25, 2022, when Plaintiffs filed their complaint mere minutes after Council passed the draft ordinance for publication. Even if the Council hastily "passed" the ordinance on January 25, 2022, when first introduced, it would be in contravention of the City Charter because a proposed ordinance cannot be passed within six days of its introduction. In sum, the facts make clear that the draft firearm ordinance at issue in this suit was not adopted into law on January 25, 2022, when Plaintiffs filed their Complaint.

/ / /

/ / /

### 3. <u>Courts Routinely Reject Challenges to Potential Government Action</u>

The Court lacks subject matter jurisdiction because the draft ordinance has not been enacted. For there to be subject matter jurisdiction, the constitutional and prudential requirements of ripeness must both be met. *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).[3] Here, neither is satisfied. With respect to a pre-enforcement challenge to a law, the ***constitutional requirement*** demands that there be a "*genuine* threat of *imminent* prosecution." *Id.* (emphasis in original). The Ninth Circuit has determined that "the mere existence of a statute is insufficient to create a ripe controversy." *Id.* As discussed, San Jose's proposed gun ordinance does not even *exist* as statutory law at this point. So, the constitutional requirement of standing cannot possibly be satisfied because nobody can be under a genuine threat of imminent prosecution from a phantom decree. *See, e.g.*, *Splunk Inc. v. Deutsche Telekom AG*, 2021 WL 3140832, at *2 (N.D. Cal. July 26, 2021) (holding that the receipt of demand letters threatening legal action under *foreign* trademark law was "a country mile" from a justiciable impending threat of a trademark suit under U.S. law). Notably, *Splunk Inc.* was filed under the Declaratory Judgment Act, which is governed by the same justiciability principles applicable to all federal cases. 2021 WL 3140832, at *1; *see also, e.g.*, *Cisco Sys., Inc. v. Alberta Telecomms. Res. Ctr.*, 892 F. Supp. 2d 1226, 1230 (N.D. Cal. 2012) ("The phrase 'actual case or controversy' as used in the [Declaratory Judgment] Act refers to the same 'Cases' and 'Controversies' that are justiciable under Article III of the Constitution.").

Furthermore, the ***prudential requirement*** of ripeness incorporates two considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 1060. Here, the claims are unfit for decision because the "challenged action" must be "final." *Id.* San Jose's proposed ordinance is not. Its fate is contingent on the City Council's actions during second reading currently scheduled to take place on February 8, 2022. Taber Decl. ¶ 8. Also, Plaintiffs would suffer no hardships in the absence of judicial review because there is no "direct and immediate" threat to their rights. *See, e.g.*, *Thomas*, 220 F.3d at 1142 ("[T]he absence of any real or imminent threat of enforcement, particularly criminal enforcement, seriously undermines

---

[3] To the extent that Fed. R. Civ. P. 12(h) permits, Plaintiffs do not waive any objection or defense to the Complaint, including other challenges to the Court's jurisdiction or this suit's justiciability.

**DEFENDANTS' MOTION AND MP&A ISO MTD FOR LACK OF SMJ;
CASE NO. 5:22-CV-00501-BLF**

1    any claim of hardship."). Quite the opposite. If San Jose were "forced to defend the [] laws in a

2    vacuum and in the absence of any particular victims . . . the City would suffer hardship were we to

3    adjudicate this case now." *Id.*

4         Courts consistently refuse to hear cases even where there is the mere possibility that *existing*

5    law implicates individual liberties. For instance, the U.S. Supreme Court rejected a challenge by

6    federal employees who hoped to engage in activities "protected by the First, Fifth, Ninth and Tenth

7    Amendments" that could potentially violate the Hatch Act's prohibition on "specified political

8    activities of federal employees." *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 78, 89 (1947).

9    In addition, in *Western Mining Council v. Watt*, the Ninth Circuit held that miners who feared their

10   activities could violate the Federal Land Policy and Management Act, based on statements by the

11   Secretary of the Interior interpreting the law, did not bring a justiciable constitutional challenge. 643

12   F.2d 618, 622, 626 (9th Cir. 1981). And in *Western Oil & Gas Association v. Sonoma County*, the

13   Ninth Circuit dismissed a constitutional attack on promulgated county ordinances concerning

14   offshore drilling because a two-year federal moratorium on offshore drilling rendered the challenge

15   "far too speculative for resolution by a federal court." 905 F.2d 1287, 1289, 1291 (9th Cir. 1990),

16   *cert. denied*, 498 U.S. 1067; *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("Here we can

17   only speculate whether respondents will be arrested, either again or for the first time, for violating a

18   municipal ordinance or a state statute, particularly in the absence of any allegations that

19   unconstitutional criminal statutes are being employed to deter constitutionally protected conduct.");

20   *Taylor v. Beckham*, 178 U.S. 548, 579-80 (1900) ("Whether certain statutes have or have not binding

21   force it is for the state to determine, and that determination in itself involves no infraction of the

22   Constitution of the United States, and raises no Federal question giving the courts of the United

23   States jurisdiction.").

24        Here, *there is no ordinance in existence* that could reasonably threaten Plaintiffs' rights,

25   constitutional or otherwise, as alleged in the Complaint. In view of controlling law, this Court lacks

26   Article III jurisdiction and should dismiss the Complaint.

27   / / /

28   / / /

B. <u>**The Complaint Violates Fed. R. Civ. P. 11**</u>

The Complaint, which baselessly attempts to brandish judicial authority to undermine legislative deliberations and air nonjusticiable grievances, violates Rule 11(b). Although San Jose has grounds to do so, San Jose is ***not*** seeking sanctions, nor is it seeking fees and expenses under Rule 11(c)(2) or Civil L.R. 7-8. San Jose firmly believes that the people have the right to seek redress from the courts to vindicate their constitutionally protected rights and individual liberties, including the Second Amendment. But the deliberative, democratic process is no less constitutionally sacrosanct. A pretextual lawsuit filed to bully San Jose's elected officials into voting a certain way on pending legislation should not be countenanced. Therefore, the Court should order Plaintiffs' counsel to show cause why the Complaint does not violate Rule 11(b), if they oppose dismissal of the Complaint in any manner.

"In the Ninth Circuit, Rule 11 sanctions are appropriately imposed where:" (1) a court filing is "frivolous"; or (2) the filing was made "for an improper purpose." *Talece Inc. v. Zheng Zheng*, 2021 WL 242913, at *2 (N.D. Cal. Jan. 25, 2021) (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)). Sanctions are appropriate in this litigation under either rationale.

1. <u>**The Complaint is Objectively Frivolous**</u>

As permissive as federal notice pleading requirements may be, the basis for the Court's jurisdiction is just about the only thing that Plaintiffs, like all plaintiffs, were required to specifically set forth in their Complaint upon a reasonably inquiry. *See, e.g.*, Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief *must* contain: (1) a short and plain statement of the grounds for the court's jurisdiction…."); Fed. R. Civ. P. 11(b) (requiring pleadings to be presented after an "inquiry reasonable under the circumstances"); 5 Wright & Miller, Federal Practice and Procedure § 1206 (4th ed. 2021) ("[T]he basis upon which the district court's jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference."); Civil L.R. 3-5(a).

Courts in this District have held pleadings that are clearly self-contradictory to be in violation of Rule 11(b). *See, e.g.*, *Nguyen v. Simpson Strong-Tie Co.*, 2020 WL 5232564, at *5 (N.D. Cal.

Sept. 2, 2020). In *Nguyen*, the plaintiff's counsel "cherry picked and incorporated into the FAC isolated portions of" documents that formed the basis for the suit "while simply ignoring other language which, as [the defendant] rightly asserted, contradicted core allegations made in the FAC." *Id.* Here, the Complaint is no different. It categorically asserts that the proposed ordinance "*will become law* on July 25, 2022" (¶ 16) and unreservedly represents the attached draft legislation as if it were already black letter law. *See, e.g.*, ¶¶ 19, 21, 23-27, 30, 41-42, 47-52, 68-70, 86, 88, 107-08, 110-11. Yet, the fact that the City Council only considered the draft "for publication" purposes is apparent from the text of the exact draft attached to the Complaint, and also from the attached City Charter. Compl., Ex. B at 13; Compl., Ex. A at art. VI., § 604. The impact of a complaint rife with internal consistencies is that it is "factually misleading, which can warrant sanctions." *Nguyen*, 2020 WL 5232564, at *5. Plaintiffs are armed with competent legal counsel and should not be permitted to bypass bedrock jurisdictional principles in favor of a preemptive press conference.  Furthermore, "[c]ounsel [cannot] avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." *Id.* at *8 (quoting *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994)) (alteration in original). Like the sanctioned attorney in *Nguyen*, Plaintiffs' counsel cannot cry ignorance of the factual predicates for their Complaint because "alleging claims that were directly undercut by the [documents] … that Counsel cited in the FAC shows that Counsel were making allegations in spite of the information known to them, rather than in a state of uncertainty because of a lack of discovery." *Id.*

## 2.      The Complaint was Filed to Impede the Democratic Process

Rule 11(b)(1) forbids counsel from filing papers that "harass" the opposing party. Filing a lawsuit that treats federal courts like "publicly funded forums for the ventilation of public grievances" to vindicate "value interests," as Plaintiffs have done, imposes an immense burden and an unconscionable intrusion of judicial power into the operations of duly elected legislatures. *Valley Forge Christian Coll.*, 454 U.S. at 473. It also risks intimidating and improperly influencing City Councilmembers. Indeed, there is a "classic governmental interest in protecting against improper influences on officeholders that debilitate the democratic process." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 399 (2010) (Stevens, J., concurring in part). Plus, facial constitutional

challenges akin to Plaintiffs' suit in which the court *actually has jurisdiction* and there *actually are real laws to contest* are disfavored because they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008). Here, nothing is more central to the "democratic process" than elected officials' lawmaking activities.

How curious that Plaintiffs lodged their suit at 11:08 p.m. on January 25, 2022, impeccably timed to turn up mere minutes after the City Council voted to publish the draft ordinance in anticipation of future consideration and adoption. Taber Decl. ¶ 7. Indeed, Plaintiffs all but admit that they paid close attention to City Council proceedings and awaited the first reading of the proposed ordinance before filing their preprepared Complaint:

> We had our complaint ready to go knowing what they would pass. Once it was confirmed they passed we literally filed that evening very late at night or early in the morning, I guess. So once we heard that San Jose was going to schedule this and we knew we'd be filing a lawsuit, we knew we needed to probably do a news conference talking about it and to have an actual response. We were going to get inundated from reporters if we just filed the lawsuit and didn't make any comments.

Dudley W. Brown, President, National Association for Gun Rights, *FIGHTING A WHOLE NEW BREED of GUN CONTROL – Dudley's Range Rogues*, YouTube, at 01:30–02:02 (Jan. 30, 2022), https://youtu.be/YZJlctURfeg ("Statement"). The Court can take judicial notice of the truth of this Statement by Dudley W. Brown, President of entity Plaintiff National Association for Gun Rights, for the reasons explained in San Jose's concurrently filed Request for Judicial Notice and supporting papers. Namely, that it is an admission by a party opponent, accessible on a publicly accessible website, from a source whose accuracy cannot be reasonably questioned (*i.e.*, the party opponent himself). Fed. R. Evid. 201, 802(d)(2).

/ / /

/ / /

/ / /

C.   <u>**The Complaint Should be Dismissed Without Leave to Amend**</u>

Anything short of dismissal without leave to amend would be an impermissible intrusion on the powers constitutionally reserved for San Jose to exercise under the Tenth Amendment and the Constitution's assurance of federalism.

First and foremost, the Ninth Circuit's permissive standards for granting leave to amend are wholly inapplicable here. The amendment of pleadings concerns the provisions of Fed. R. Civ. P. 15(a) ("Rule 15"). *Leadsinger, Inc. v. B.M.G. Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (noting that the requirement that courts grant leave to amend "freely when justice so requires" derives from Rule 15(a)(2)). However, Rule 15(a) only allows parties to amend pleadings to "assert matters that were overlooked or were unknown *at the time the party interposed the original complaint*." 6 Wright & Miller, Federal Practice and Procedure § 1473 (3d ed. 2021) ("[A]n amended pleading, whether prepared with or without leave of court, only should relate to matters that have taken place prior to the date of the earlier pleading."). No amount of amending could teleport this Complaint "Back to the Future," to a time if and when San Jose passes its gun ordinance. "Any amendment would be futile" here and should not be allowed. *Leadsinger, Inc.*, 512 F.3d at 532.

Allowing Plaintiffs to supplement their pleadings under Rule 15(d) would also not be permissible. "***If jurisdiction is lacking at the outset [of a litigation], the district court has no power to do anything with the case except dismiss***." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989). Granted, some nuances have arisen since *Morongo* which hint against a wholly rigid application of this principle. But none are applicable here. *See, e.g.*, *Lopes v. Turnage*, 2021 WL 5142070, at *1 (N.D. Cal. Oct. 15, 2021) (applying *Morongo* to dismiss complaint without leave to amend where the pro se plaintiff failed to plead that federal question jurisdiction existed from the outset of the litigation), *adopted by* 2021 WL 5140122 (N.D. Cal. Nov. 4, 2021); *Clancy v. Mancuso*, 2021 WL 3191634, at *2 (N.D. Cal. July 28, 2021) (citing *Morongo* in dismissing the pro se plaintiff's case without leave to amend for failure to plead that diversity matter jurisdiction existed at the time the original complaint was filed); *Friends of the Earth v. Sanderson Farms, Inc.*, 2019 WL 3457787, at *1, 4 (N.D. Cal. July 31, 2019) (dismissing lawsuit after close of discovery because "Plaintiffs cannot rely

1  on evidence after the filing of their lawsuit to support their standing to sue") (citing *Morongo*, 858

2  F.2d at 1380), *aff'd*, 992 F.3d 939 (9th Cir. 2021).

3      Additionally, a practice of allowing plaintiffs to sue legislatures whenever a bill looked *likely*

4  to pass so that the plaintiffs could amend or supplement their pleadings when the bill actually passes

5  is itself unconstitutional. This is not merely an issue of prudential curiosity but is of an unwaivable,

6  structural, constitutional nature—respect for legislative deliberations and federalism is integral to

7  the constitutional structure and the Tenth Amendment. "Where, as here, the exercise of authority by

8  state officials is attacked, federal courts must be constantly mindful of the special delicacy of the

9  adjustment to be preserved between federal equitable power and State administration of its own

10  law." *Rizzo v. Goode*, 423 U.S. 362, 377-78 (1976) (addressing federalism as a consideration in

11  federal courts' jurisdiction "beyond … the existence of a live controversy" under Article III).

12  Federalism plays "such an important part in governing the relationship between federal courts and

13  state governments" and must be afforded weight in all pronouncements by federal courts that affect

14  local governments. *Id.* at 380. The Ninth Circuit has, for instance, refused to exercise jurisdiction in

15  litigation that involved the policies of a municipal police department due to "federalism concerns."

16  *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1275 n.3 (9th Cir. 1981); *see also, e.g.*,

17  *Westlands Water Dist. Distrib. Dist. v. Nat. Res. Defense Council*, 276 F. Supp. 2d 1046, 1051 (E.D.

18  Cal. 2003) (refusing to exercise jurisdiction over administrative agency's rulemaking process to

19  avoid "premature adjudicating," entanglement over "abstract disagreements over administrative

20  policies, and also to protect the agencies from judicial interference until an administrative decision

21  has been formalized and its effects felt in a concrete way by the challenging parties") (quoting *Rapid

22  Transit Advocates, Inc. v. S. Cal. Rapid Transit Dist.*, 752 F.2d 373, 378 (9th Cir. 1982)). And, to

23  permit suits to be filed during legislative deliberations and then amended or supplemented once a

24  law is passed would invite gamesmanship and the manipulation of judicial power to exert undue

25  influence over lawmakers' deliberations.

26      Constitutional violations can arise in many ways. However, there is only one way in this

27  country and in San Jose by which the laws that advance the Constitution's principles are

28  promulgated. If and when the time comes, San Jose stands ready to champion its laws, all of them,

passed by and through the people's leaders popularly elected to the San Jose City Council. But proposed ordinances are not law, so now is not that time.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint without leave to amend, and that Plaintiffs' counsel are ordered to show cause why the Complaint satisfies the requirements of Fed. R. Civ. P. 11(b) if they elect to oppose this Motion.


Dated: February 7, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**


By: */s/ Tamarah P. Prevost*
    JOSEPH W. COTCHETT
    TAMARAH P. PREVOST
    KAIYI A. XIE
    MELISSA MONTENEGRO

    *Attorneys for Defendants*