1  HARMEET K. DHILLON (SBN: 207873)
   harmeet@dhillonlaw.com
2  MICHAEL A. COLUMBO (SBN: 271283)
   mcolumbo@dhillonlaw.com
3  MARK P. MEUSER (SBN: 231335)
   mmeuser@dhillonlaw.com
4  DHILLON LAW GROUP INC.
5  177 Post Street, Suite 700
   San Francisco, California 94108
6  Telephone: (415) 433-1700
7
   DAVID A. WARRINGTON*
8  dwarrington@dhillonlaw.com
   CURTIS M. SCHUBE (admitted *pro hac vice*)
9  cschube@dhillonlaw.com
   DHILLON LAW GROUP INC.
10 2121 Eisenhower Avenue, Suite 402
11 Alexandria, VA 22314
   Telephone: (571) 400-2121
12
13 *Admission *pro hac vice* pending

14                    **UNITED STATES DISTRICT COURT**

15              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16                        **SAN JOSE DIVISION**

17

18  **NATIONAL ASSOCIATION FOR GUN**        Case Number: 5:22-cv-00501-BLF
    **RIGHTS, INC.,** a nonprofit corporation, and
19  **MARK SIKES,** an individual,           **PLAINTIFFS' NOTICE OF MOTION
                                             AND MOTION FOR PRELIMINARY
20              Plaintiffs,                  INJUNCTION AND MEMORANDUM OF
                                             POINTS AND AUTHORITIES IN
21              v.                           SUPPORT THEREOF**

22  **CITY OF SAN JOSE, a public entity,**   Hearing Date: July 21, 2022
    **JENNIFER MAGUIRE**, in her official capacity   Hearing Time: 9:00 a.m.
23  as City Manager of the City of San Jose, and the   Location: Courtroom 3, 5th Floor
    **CITY OF SAN JOSE CITY COUNCIL,**      Robert F. Peckham Federal Building
24                                          280 South First Street, San Jose, CA
25              Defendants.
26                                          Judge: Honorable Beth Labson Freeman
27
28



1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2    PLEASE TAKE NOTICE that on July 21, 2022, at 9:00 a.m. or as soon thereafter this matter

3    may be heard before the Honorable Beth Labson Freeman, in Courtroom 3 of the above-entitled

4    Court, located at the Robert F. Peckham Federal Building & United States Courthouse, 280 South

5    1st Street, Room 2112, San Jose, California, 95113.

6    Plaintiffs National Association for Gun Rights, Inc. ("NAGR") and Mark Sikes ("Sikes"),

7    pursuant to Fed. R. Civ. P. 65, will and hereby do move this Court for the issuance of a preliminary

8    injunction prohibiting Defendants from enforcing Part 6 of Chapter 10.32 of Title 10 (§§10.32.200-

9    10.32.250) of the City of San Jose's local ordinances.

10    The grant of a preliminary injunction is warranted because: (i) to allow the Ordinance to go

11    into effect would deprive Plaintiffs, as well as all citizens of San Jose, of their First, Second, Fifth,

12    and Fourteenth Amendment rights under the United States Constitution, articles XI and XIIIC of the

13    California Constitution, and the San Jose Charter, (ii) the denial of such relief would irreparably

14    harm Plaintiffs, (iii) providing said relief would not harm Defendants; and (iv) the public interest

15    favors upholding the United States and California Constitutions and the San Jose City Charter, and

16    (v) Plaintiffs are likely to succeed on the merits.

17    In support of this Motion, Plaintiffs respectfully refer this Court to this Motion, the

18    Memorandum of Points and Authorities in Support of the Motion for Preliminary Injunction, the

19    attached exhibits, the pleadings on record, and the arguments of counsel.

20    *//*

21    *//*

22    *//*

23    *//*

24    *//*

25    *//*

26    *//*

27    *//*

28    *//*



Plaintiffs' Notice of Motion and Motion for                                  Case No.22-cv-00501-BLF
Preliminary Injunction

1

Respectfully submitted,

2

Date: March 8, 2022

DHILLON LAW GROUP INC.

3

By:    /s/ Harmeet K. Dhillon

4

Harmeet K. Dhillon
Michael A. Columbo

5

Mark P. Meuser

6

DHILLON LAW GROUP INC.
177 Post Street, Suite 700

7

San Francisco, California 94108
(415) 433-1700

8

9

David A. Warrington*
Curtis M. Schube (admitted *pro hac vice*)

10

DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 402

11

Alexandria, VA 22314

12

(571) 400-2121

13

*Admission *pro hac vice* pending

14

Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

RELEVANT FACTUAL BACKGROUND.....................................................................2

   The Ordinance ...............................................................................................4

   The Purpose and Justifications of the Ordinance.........................................4

ARGUMENT ...................................................................................................................9

  I.    PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF. .............9

    A.    There Is a Strong Likelihood Plaintiffs' Will Succeed in Proving Their Claims on Multiple Grounds. .........................................................................................9

      1.    The Ordinance violates the Second Amendment of the United States Constitution...........................................................................................9

        *a. The Ordinance Burdens The Right to Keep Arms*...................................... 11

        *b.The Court Should Apply Strict Scrutiny*......................................................... 11

        *c.The Ordinance Even Fails Intermediate Scrutiny*........................................ 13

        *d. Alternatively, the Ordinance is Unconstitutional Because It Burdens the Second Amendment Right to Keep and Bear Arms* ……………………………13

      2.    The Ordinance Violates Plaintiffs' Free Speech and Association Rights........15

      3.    The Ordinance Violates article XI, § 7 of the California Constitution.............18

      4.    The Orders Violate Article XIII C, Section 1 of the California Constitution..19

      5.    The Ordinance Violates the San Jose's City Charter's Reservation of Budget and Appropriation Powers to the City Council and Administrative Powers to the City Manager..................................................................................20

      6.    The Ordinance Violates the San Jose City Charter's Requirement that City Receipts Be Deposited into City Accounts.......................................................21

    B.    Plaintiffs Face Imminent Irreparable Harm Absent Immediate Injunctive Relief.21

    C.    The Balance of Hardships Tips Decidedly in Plaintiffs' Favor............................22

    D.    Injunctive Relief Is In The Public Interest........................................................22

  II.    THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT ...............23



1

CONCLUSION ................................................................................................................23

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Plaintiffs' Notice of Motion and Motion for                    Case No.22-cv-00501-BLF
Preliminary Injunction

1

## TABLE OF AUTHORITIES

2 **Cases** **Page(s)**

3 *All for Wild Rockies v. Cottrell*,

4    632 F.3d 1127 (9th Cir. 2011). ............................................................. 8

5 *Americans for Prosperity Foundation v. Harris*,

6    182 F. Supp. 3d 1049 (C.D. Cal. 2016). ............................................... 21

7 *Bauer v. Becerra*,

8    858 F.3d 1216 (9th Cir. 2017) .............................................................. 14

9 *Bible Club v. Placentia-Yorba Linda School Dist.*,

10    573 F. Supp. 2d 1291 (C.D. Cal. 2008). ............................................... 22

11 *College Republicans at San Francisco State University v. Reed*,

12    523 F. Supp. 2d 1005 (N.D. Cal. 2007) ............................................... 20

13 *Community House, Inc. v. City of Boise*,

14    490 F.3d 1041 (9th Cir. 2007) ............................................................. 21

15 *Cox v. New Hampshire*,

16    312 U.S. 569 (1941) ..................................................................... 13, 14

17 *District of Columbia v. Heller*,

18    554 U.S. 570 (2008) ................................................................. passim

19 *Doctor John's, Inc. v. Sioux City*,

20    305 F. Supp. 2d 1022 (N.D. Iowa 2004) .............................................. 22

21 *Doe v. Harris*,

22    772 F.3d 563  (9th Cir.2014) ........................................................ 21, 22

23 *Duncan v. Becerra*,

24    265 F.Supp.3d 1106 (S.D. Cal. 2017) ............................................. 21, 22

25 *Elrod v. Burns*,

26    427 U.S. 347 (1976) ........................................................................... 20

27 *Ezell v. City of Chicago*,

28    651 F.3d 684 (7th Cir. 2011) ................................................... 10, 11, 20



1   *Fiscal v. City and County of San Francisco,*
2       158 Cal.App.4th 895 (Cal. Ct. App. 2008) .................................................................. 17
3   *Janus v. AFSCME, Council 31,*
4       138 S.Ct. 2448 (2018) .............................................................................................. 15, 16
5   *Jorgensen v. Cassiday,*
6       320 F.3d 906 (9th Cir. 2003). .......................................................................................... 22
7   *Keller v. State Bar of California,*
8       496 U.S. 1 (1990) ............................................................................................................. 15
9   *Knox v. SEIU,*
10      567 U.S. 298 (2012) ......................................................................................................... 15
11  *Kwong v. Bloomberg,*
12      723 F.3d 160 (2nd Cir. 2013) ........................................................................................... 14
13  *McDonald v. City of Chicago, Ill.,*
14      561 U.S. 742 (2010) ........................................................................................................... 9
15  *Minneapolis Star and Tribune Co. v. Minnesota Comm'r. of Rev.,*
16      460 U.S. 575 (1983) ......................................................................................................... 10
17  *Murdock v. Com. of Pennsylvania,*
18      319 U.S. 105, 112 (1943) ............................................................................. 1, 9, 13, 14
19  *Nordyke v. King,*
20      681 F.3d 1041 (9th Cir. 2012) ........................................................................................... 9
21  *Pimentel v. Dreyfus,*
22      670 F.3d 1096 (9th Cir. 2012) ........................................................................................... 8
23  *Regan v. Taxation with Representation of Wash.,*
24      461 U.S. 540 (1983) ......................................................................................................... 16
25  *S.O.C., Inc. v. Cnty. of Clark,*
26      152 F.3d 1136 (9th Cir. 1998). ......................................................................................... 20
27  *Sammartano v. First Jud. Dist. Ct.,*
28      303 F.3d 959 (9th Cir. 2002). ............................................................................... 20, 21, 22



Plaintiffs' Notice of Motion and Motion for                                  Case No.22-cv-00501-BLF
Preliminary Injunction

*Stormans, Inc. v. Selecky*,

   586 F.3d 1109 (9th Cir. 2009). ................................................................................ 21

*United States v. Chester*,

   628 F.3d 673 (4th Cir. 2010) ................................................................................ 11

*United States v. Chovan*,

   735 F.3d 1127 (9th Cir. 2013) ................................................................ 9, 10, 11, 12

*United States v. Masciandaro*,

   638 F.3d 458 (4th Cir. 2011) .................................................................................. 9

*Winter v. Natural Res. Def. Council, Inc.*,

   555 U.S. 7 (2008). .................................................................................................. 8

*Wooley v. Maynard*,

   430 U.S. 705 (1977)............................................................................................. 16

**STATUTES**

42 U.S.C. § 1983 ........................................................................................................ 8

Cal. Penal Code § 12026 ......................................................................................... 17

Cal. Penal Code § 23500 ......................................................................................... 17

Cal. Penal Code § 23520 ......................................................................................... 17

Cal. Penal Code § 25225 ......................................................................................... 17

Cal. Penal Code § 25850 ........................................................................................... 4

Cal. Penal Code § 26150 ........................................................................................... 4

Cal. Penal Code § 26155 ........................................................................................... 4

Cal. Penal Code § 26350 ........................................................................................... 4

Cal. Penal Code § 26400 ........................................................................................... 4

Cal. Penal Code § 28070 ......................................................................................... 17

Cal. Penal Code § 29010 ......................................................................................... 17

Cal. Penal Code § 29184 ......................................................................................... 17

Cal. Penal Code § 29610 ......................................................................................... 17



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

Cal. Penal Code § 30165.................................................................................................17

Cal. Penal Code § 30900.................................................................................................17

Cal. Penal Code § 34370.................................................................................................17


Title 10 of the San José Municipal Code:

   § 10.32.200...............................................................................................................12

   § 10.32.200.A..............................................................................................................4

   § 10.32.200.B.2...........................................................................................................4

   § 10.32.200.B.4...........................................................................................................4

   § 10.32.200.B.7...........................................................................................................4

   § 10.32.200.B.8....................................................................................................5, 13

   § 10.32.200.B.9....................................................................................................5, 13

   § 10.32.200.B.12.........................................................................................................5

   § 10.32.205...............................................................................................................7

   § 10.32.210...............................................................................................................4

   § 10.32.210.A.............................................................................................................6

   § 10.32.215.........................................................................................................passim

   § 10.32.220........................................................................................................7, 14

   § 10.32.220.A.............................................................................................................7

   § 10.32.220.C.......................................................................................................7, 19

   §10.32.225..........................................................................................................4, 10

   § 10.32.230.A.............................................................................................................6

   § 10.32.240.......................................................................................................4, 6, 8

   §10.32.245........................................................................................................4, 6, 8

   §10.32.250.......................................................................................................4, 8, 14

San Jose City Charter:

   § 400.......................................................................................................................19

   § 1204.....................................................................................................................19



§ 1206 ................................................................................................ 19

§ 1211 ................................................................................................ 20

**RULES**

Fed. R. Civ. P. 65(c) ....................................................................................... 22


**CONSTITUTIONAL AUTHORITIES:**

California Consitution:

    Article XI, section 7 .................................................................... 17, 18

    Article XIII C, §2(b) .......................................................................... 18

    Article XIII C, §1 ............................................................................... 18

    Article XIII C, §1(e) .......................................................................... 18

    Article XIII C, §2(d) .......................................................................... 18


United States Consitition:

    amend. I.................................................................................... passim

    amend. II ................................................................................. passim

    amend. XIV ………………………………………………………………………..1

**OTHER AUTHORITIES**

A Bill for Establishing Religious Freedom, in 2 papers of Thomas Jefferson 545 (J. Boyd ed. 1950) ................................................................................................ 15l

Lauren Hernández, *Gun Owners In San Jose Must Buy Liability Insurance Under Newly Passed First-In-The-Nation Law,* SAN FRANCISCO CHRONICLE, Jan. 25, 2022 (updated Jan. 26, 2022) …… 3

Liccardo Press Release, Jan. 19, 2022 ........................................................... 4, 5, 6, 13

Liccardo Press Release, Jan. 25, 2022 ................................................................. 2, 3

Olga R. Rodriguez and Juliet Williams, *San Jose Approves First Law In U.S. Requiring Gun Owners To Have Insurance*, LOS ANGELES TIMES, Jan. 25, 2022 ............................................... 3



Plaintiffs' Notice of Motion and Motion for
Preliminary Injunction

Case No.22-cv-00501-BLF

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3

"The power to tax the exercise of a privilege is the power to control or suppress its enjoyment."

4

*Murdock v. Pennsylvania*, 319 U.S. 105, 112, 63 S. Ct. 870, 874, 87 L. Ed. 1292 (1943).

5

6          The Supreme Court has made it clear that laws designed to burden the exercise of the

7    fundamental right to own a gun and keep it in one's own home is unconstitutional. Just as taxing

8    the press for the right to circulate its content is unconstitutional, so too is an annual tax on the

9    right to own a gun. Yet, the City of San Jose ("City") has taken the unprecedented step of

10   requiring virtually all gun owners who reside in the City to pay annual fees just for their right to

11   own a gun and to pay for special insurance, or risk forfeiture of their guns.

12          The amount of the fees and the cost of the insurance are not defined by this new law and

13   are subject to the whims of the San Jose City Council and private insurance companies—who may

14   not even offer the policy that the City demands to avoid nullification of a person's Second

15   Amendment rights. To make matters worse, one of the fees comprises a compulsory donation to a

16   government-chosen nonprofit, forcing gun owners to associate with a group against their will and

17   to fund educational programs targeting themselves that they didn't ask for and may not want,

18   need, or agree with.

19          This new law does not just violate the United States Constitution. It also violates the

20   California Constitution and the City's own Charter. The California Constitution prevents local

21   governments from enacting laws when state law already occupies the field and California already

22   has extensive gun regulations thoroughly occupying this field. Additionally, the insurance

23   requirement and the Gun Harm Reduction Fee are taxes within the meaning of the law and the

24   City failed, as required by the California Constitution, to submit them to the electorate for

25   approval. Finally, by forcing gun owners to pay the City's Gun Harm Reduction Fee directly to a

26   third party nonprofit to spend as it chooses outside of the control of the City Council, the City's

27   new gun ordinance violates provisions of its own Charter by unlawfully delegating the City

28   Council's budgetary and appropriation powers and by not depositing all of the Ordinance's

proceeds into the City's general fund.

Accordingly, this Court should immediately issue a preliminary injunction to prevent the City from enforcing the unconstitutional and unlawful Ordinance.

**RELEVANT FACTUAL BACKGROUND**

On June 29, 2021, the City Council directed San Jose City Attorney Nora Frimann "to return to Council with an ordinance for Council consideration that would require every gun owner residing in the City of San José, with certain exceptions, to obtain and maintain a City-issued document evincing payment of an annual fee, and attestation of insurance coverage for unintentional firearm-related death, injury, or property damage." Frimann Mem. re Gun Harm Reduction Ord., Jan. 14, 2022, ("City Attorney Mem.") (attached hereto as Exhibit A). Plaintiff National Association for Gun Rights immediately sent the City a cease and desist letter warning that the proposed ordinance was unconstitutional.  *See* Ltr. From D. Warrington and H. Dhillon to San Jose City Council, July 14, 2021 (attached hereto as Exhibit B).

On January 14, 2022, in advance of the City Council's January 25 meeting, the San Jose City Attorney issued a memorandum in compliance with the City Council's directions that recommended the Council "[c]onsider approving an ordinance amending Title 10 of the San José Municipal Code to add Part 6 to Chapter 10.32 to reduce gun harm by: (a) requiring gun owners to obtain and maintain liability insurance; and (b) authorizing a fee to apply to gun harm reduction programs." City Attorney Mem. at 1(Ex. A). Under a section addressing penalties for noncompliance, the City Attorney stated that "[f]ailure to comply shall constitute a civil violation subjecting the owner to the temporary or permanent seizure of the gun, and under specified circumstances, a fine." *Id.* at 2.

In an op-ed published on January 19, 2021, in the Los Angeles Times, San Jose Mayor Sam Liccardo wrote "[l]ast June our City Council unanimously approved my proposals that will mitigate gun harm in our community — and a final vote on Jan. 25 should turn them into law." Mayor Sam Liccardo, *Op-Ed: My City's New Gun Control Laws Will Help More Than Waiting On Congress To Do Something*, LOS ANGELES TIMES, Jan. 19, 2022), https://www.latimes.com/opinion/story/2022-01-19/op-ed-new-gun-control-laws-help-congress (attached as Exhibit C).

//

2

1    On January 21, 2022, Mayor Liccardo, Vice Mayor Jones, Councilmember Cohen, and

2    Councilmember Carrasco issued "Directions" to the City Council, including to "[a]pprove the

3    proposed ordinance," with certain modifications. Mayor's Mem. to City Council, Jan. 21, 2022, 2

4    (attached as Exhibit D). The Mayor's Memorandum also noted that "Members of the California

5    legislature are exploring bills to have law enforcement agencies *seize guns as a sanction for*

6    *violations of local gun regulations*, with subsequent restoration of ownership as required by

7    constitutional due process." *Id.* at 4 (emphasis added).

8    Following the City Council's January 25, 2022, meeting, the Mayor immediately issued a

9    press release the night of the vote, in which he boasted that "Tonight San José became the first city

10   in the United States to *enact* an ordinance to require gun owners to purchase liability insurance, and

11   to invest funds generated from fees paid by gun owners into evidence-based initiatives to reduce gun

12   violence and gun harm." Liccardo Press Release, Jan. 25, 2022 (emphasis added) (attached as

13   Exhibit E).

14   Within 24 hours, articles were published about San Jose enacting an unprecedented

15   regulation of gun ownership, including the San Francisco Chronicle and the Los Angeles Times. *See*

16   Lauren Hernández, *Gun Owners In San Jose Must Buy Liability Insurance Under Newly Passed*

17   *First-In-The-Nation Law,* SAN FRANCISCO CHRONICLE, Jan. 25, 2022 (updated Jan. 26, 2022),

18   https://www.sfchronicle.com/bayarea/article/Gun-owners-in-San-Jose-must-buy-liability-

19   16804951.php ("The San Jose City Council adopted a measure Tuesday night requiring gun owners

20   in the South Bay city to buy liability insurance for their firearms, city officials said.")(attached as

21   Exhibit F); Olga R. Rodriguez and Juliet Williams, *San Jose Approves First Law In U.S. Requiring*

22   *Gun Owners To Have Insurance*, LOS ANGELES TIMES, Jan. 25, 2022,

23   https://www.latimes.com/california/story/2022-01-25/san-jose-gun-liability-insurance (attached as

24   Exhibit G)("The city of San Jose voted Tuesday night to require gun owners to carry liability

25   insurance in what's believed to be the first measure of its kind in the United States. The San Jose

26   City Council overwhelmingly approved the measure despite opposition from some gun owners who

27   said it would violate their 2nd Amendment rights.").

28   The Ordinance was placed on the consent calendar for the City Council's February 8, 2022,

1  meeting, during which a majority of the City Council voted again to approve the Ordinance. Def.'s

2  Mem. Supp. Mot. Dismiss 3.

3                                    **The Ordinance**

4          The Ordinance will take effect on August 8, 2022, one hundred eighty days from the date

5  of its adoption on February 8, 2022, Ord., Sec. 2, and will be codified as Chapter 10.32 of Title

6  10 of the San Jose Municipal Code, Ordinance section 1-2. Ordinance (attached as Exhibit H). It

7  will require 50,000-55,000 San Jose residents, minus a few exceptions, to keep proof with their

8  guns that they have an insurance policy for gun accident liability and have paid an annual Gun

9  Harm Reduction Fee to a nonprofit chosen by the City Manager. *Id.*, §§ 10.32.210, 10.32.215,

10  10.32.250; Liccardo Mem. Re Gun Harm Reduction Ord., Jan. 19, 2022 (attached as Exhibit I).

11  The penalties for noncompliance include "impoundment" (seizure) of a person's guns and the

12  payment of fines. Ordinance §§ 10.32.240, 10.32.245.

13          This Ordinance targets gun ownership in the home because it does not apply to those who

14  have a license to carry a concealed weapon. Ordinance §10.32.225. (Without a concealed carry

15  permit, there is virtually no other way San Jose residents can exercise their Second Amendment

16  rights outside of the home. *See* CAL. PENAL CODE §§ 25850, 26150, 26155, 26350, 26400.)

17                      **The Purpose and Justifications of the Ordinance**

18          The City's vague purpose for the Ordinance is "to reduce gun harm." Ordinance

19  § 10.32.200.A. The Ordinance cites overall state and national injury data for homicide, suicide, and

20  accidents, and statistics on the total number of youth injured in California in certain years. Ordinance

21  § 10.32.200.B.2. As to "gun harm" in San Jose, specifically, the Ordinance notes that in *Santa Clara*

22  *County*, in which San Jose is located, "sixteen (16%) of hospitalizations from firearms injuries were

23  due to unintentional shootings." Ordinance § 10.32.200.B.4. The nonprofit organization helping the

24  City enact and justify the Ordinance, Pacific Institute for Research and Evaluation (PIRE), concluded

25  in its own analysis that an average of "206 people suffer death or serious bodily injury from gunshots

26  each year" in San Jose, though the Ordinance does not specify how many were typically due to

27  accidents or suicide, or intentional violence. *See* Ordinance § 10.32.200.B.7.

28          The Ordinance contains an estimation that "San Jose taxpayers annually spend approximately

1  $39.7 million, or approximately $151 per firearm-owning household, to respond to gun violence with

2  such public services as emergency police and medical response, victim assistance, incident

3  investigation, acute and long-term care, and perpetrator adjudication and judicial sanctioning."

4  Ordinance § 10.32.200.B.8. This estimation also does not differentiate between the costs arising due

5  to intentional violence, suicide, and accidents.

6     The Ordinance boldly claims that "including private costs to individuals and families…San

7  Jose residents incur an annual financial burden of $442 million per year." *Id*., § 10.32.200.B.9.

8  However, more than $328,355,500 or 74% of these alleged costs are for the impact of guns on

9  "quality of life," which includes the "value of pain, suffering, and lost quality of life." Liccardo Jan.

10  19, 2022, Memo., 4 (Ex. I). The next highest figure within the asserted $442 million calculation is

11  "lost work," accounting for $78,272,000 or nearly 18% of the total. *Id*. In other words, 92% of the

12  $442 million in "costs" claimed in the Ordinance comprises artificially calculated "quality of life"

13  and "lost work" due to all causes of firearm deaths and injuries.

14     Accordingly, the costs used to calculate the total financial burden on San Jose, which the

15  Ordinance aims to fully or partially recoup from all gun owners, does not correct for the

16  overwhelming costs imposed by the perpetrators of violent criminal conduct that the Ordinance does

17  not target, and 92% of the highest dollar figure the Ordinance cites for support does not comprise

18  actual expenses incurred by the City. And yet, the Ordinance uses these sham figures to justify:

19     (A) imposing a collective financial burden on all gun owners (except those with a permit to

20  carry their guns) through the Gun Harm Reduction Fee;

21     (B) compelling gun owners to pay the Gun Harm Reduction Fee directly to a City-chosen

22  nonprofit, a forced donation, allegedly for programs to re-educate gun owners about the dangers of

23  guns *and other purposes*; and

24     (C) requiring all gun owners to buy insurance to cover the costs to victims of the accidental

25  use of guns (but not all crime victims).

26     As to compelling purchase of insurance, the Ordinance provides no studies or statistics

27  establishing that gun liability insurance will reduce gun violence. Instead, the Ordinance includes

28  only the conclusory statement that "Liability insurance can reduce the number of gun incidents by



1    encouraging safer behavior…." Ordinance § 10.32.200.B.12.

2            Thus, every citizen of San Jose will be forced to pay a fee and buy insurance to exercise their

3    fundamental Constitutional right to home and self-defense by owning a gun based on the direct and

4    societal costs primarily caused by criminals using guns illegally. Liccardo Jan. 19, 2022, Memo. 1

5    (Ex. I) (noting that "Assaults and homicides are most common" and "Unintentional gunshot wounds

6    tend to be less serious."). Specifically, according to PIRE, the alleged costs to the City of homicide

7    and assault are $7,067,303 out of $7,940,358 (or 89%) of the total costs, *id.* at 2, and PIRE also

8    attributed the majority of its artificially calculated societal costs of guns to "Homicide/Assault/Legal

9    Intervention." *Id.* at 5 ($253,828,000 out of $441,699,000).

10                              *a.   The Insurance Mandate*

11           The insurance mandate requires that "A person who resides in the City of San Jose and owns

12    or possesses a Firearm in the City shall obtain and continuously maintain in full force and effect a

13    homeowner's, renter's or gun liability insurance policy…specifically covering losses or damages

14    resulting from any accidental use of the Firearm, including but not limited to, death, injury, or

15    property damage." Ordinance § 10.32.210.A. The Ordinance does not include any information about

16    minimum insurance coverage thresholds or premiums. *See generally* Ordinance. Thus, the insurance

17    requirement lacks certainty as to the cost of insurance, what has to be covered, and minimum

18    coverage thresholds. This guesswork will allow private for-profit corporations to dictate the

19    government mandated cost of owning a gun. Additionally, based on the insurance companies'

20    economic interests, they may choose not to insure a person who nonetheless has a Constitutional

21    right to keep and bear arms.

22           To comply with the Ordinance, gun owners must present a "City-designated attestation form"

23    signed under penalty of perjury identifying their insurance policy to any police officer who "knows

24    or *has reason to believe*" they possess a firearm.  Ordinance § 10.32.230.A (emphasis added).

25    Failure to comply with the Ordinance authorizes seizure ("impoundment") of the person's gun and

26    fines. Ordinance §§ 10.32.240; 10.32.245.

27                              *b.   Gun Harm Reduction Fee*

28           The first of two fees the Ordinance imposes requires that "A person who resides in the City



1   and owns or possesses a Firearm in the City shall pay an Annual Gun Harm Reduction Fee to the

2   Designated Nonprofit Organization each year." Ordinance § 10.32.215. The fee amount is not

3   specified in the Ordinance, which neither contains any criteria to determine what the fee will be nor

4   any limits on how high it can be set. *See id*. Rather, the City Council reserved the right for itself to

5   determine this amount at an unspecified later date. *Id*.

6        The Ordinance requires gun owners to pay this fee directly to a nonprofit chosen by the City

7   Manager, Defendant Jennifer Maguire ("Maguire"). *Id*., §§ 10.32.205; 10.32.220. No part of the

8   City's fee actually goes to the City. Further, "all monies…shall be expended by the Designated

9   Nonprofit Organization." *Id*., § 10.32.220.A. Additionally, once the money is in the nonprofit's

10  coffers, "the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are

11  expended." *Id*., §10.32.220.C. Accordingly, without City oversight or even knowledge of the fees

12  being paid to the nonprofit, and with the City prohibiting itself from controlling how the funds are

13  being spent, the potential for waste, fraud, and abuse is staggering.  As discussed below, it is also

14  illegal.

15       The Ordinance provides scant information about the Designated Nonprofit Organization,

16  other than the fact that it will have a contract with the City. In recent public comments, Mayor

17  Liccardo has claimed that, in addition to funding this nonprofit, the City will also be creating it and

18  choosing its members—but this is not stated anywhere in the Ordinance. Mary Harris, *San Jose's*

19  *New Gun Law Is the First of Its Kind*, Slate.com (Feb. 3, 2022), https://slate.com/news-and-

20  politics/2022/02/san-jose-gun-law-mayor-sam-liccardo-interview.html (attached as Exhibit

21  J)("We're forming a 501(c)(3) foundation, which is going to receive the dollars, and the board,

22  which will be comprised of a host of folks, . . .").

23       The only criteria for the City's contract with the nonprofit as to how the funds are ultimately

24  spent is that the nonprofit's services are to "include, but are not necessarily limited to" suicide

25  prevention services or programs, violence reduction or domestic violence services or programs,

26  addiction intervention and substance abuse treatment, mental health services related to gun violence,

27  and firearms safety education or training. *Id*., § 10.32.220.A. "All monies from the Gun Harm

28  Reduction Fee shall be expended by the Designated Nonprofit Organization" to provide the services

7

and programs listed above exclusively to "residents of the city that own or possess a Firearm in the City, to members of their household, or to those with whom they have a close familial or intimate relationship." *Id.*

The fee thus functions as a way to compel gun owners to give their money to a government approved nonprofit, that will inevitably hold the City's anti-gun biases, to spend on unspecified programs targeting gun owners at the nonprofit's sole discretion with little to no City oversight. The program forces gun owners to subsidize an organization that is hostile to gun ownership, to be used for their own re-education. But although the Gun Harm Reduction Fee must be exclusively spent on programs to re-educate gun owners, members of their household, or to those with whom they have a close familial or intimate relationship, *id.*, the Ordinance in fact does not include *any* requirement for gun owners or anyone else to attend the nonprofit's programs.

Despite justifying the Ordinance on the grounds that gun injuries are allegedly costing the City hundreds of millions of dollars, the Gun Harm Reduction Fee does not compensate the city for any of those alleged losses. The Ordinance authorizes the City Manager to collect *another* undetermined fee to administer the Ordinance, that is, to "charge and collect any and all cost recovery fees associated with fulfilling the policies of this Part relating to the reduction of gun harm, including any associated third-party costs." Ordinance § 10.32.250.

Any gun owner who does not pay the Gun Harm Reduction Fee could be issued an as yet undetermined fine, Ordinance § 10.32.240 (it "shall be set forth in the schedule of fines established by resolution of the City Council") and may have their gun "impounded." *Id*. at §10.32.245. In a recent interview, the Mayor disclosed how the Ordinance could allow the police new opportunities to confiscate guns.

> Encountering people with guns, out on the street, in bars and nightclubs—you can imagine a host of different venues where a police officer would really like to have the ability to remove a gun from a potentially combustible situation. For example, there's a bar brawl and they're patting down everybody and someone's got a gun. "Have you paid your fee? You have insurance?" "No." OK, well, there's an opportunity for us to remove the gun.

*San Jose's New Gun Law Is the First of Its Kind*, *Supra*. (Ex. J).



1

2    *    *    *    *

3    The insurance requirement and both of the fees in the Ordinance are unknown costs imposed

4  on gun owners that are designed to deter gun ownership. These unknown costs are subject to the

5  whims of the City Council and insurance companies and bear a significant risk of making gun

6  ownership cost prohibitive. The unknown extent of the costs further, whatever they may be now or in

   the future, chills the exercise of Second Amendment rights.

7    Plaintiffs therefore seek a preliminary injunction to prevent the City from enforcing the

8  Ordinance, which it will do should this Court not take action prior to August 8, 2022.

9                                        **ARGUMENT**

10    "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on

11  the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

12  balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

13  *Natural Res. Defense Council*, 555 U.S. 7, 20 (2008); *see Pimentel v. Dreyfus*, 670 F.3d 1096, 1105

14  (9th Cir. 2012) (applying *Winter* to claim under 42 U.S.C. § 1983); *All for the Wild Rockies v.*

15  *Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

16  **I.    PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.**

17    **A.   There Is a Strong Likelihood Plaintiffs' Will Succeed in Proving Their Claims on**
18         **Multiple Grounds.**

19       **1.   The Ordinance violates the Second Amendment of the United States**
20             **Constitution.**

21    Defendants' Ordinance violates the Second Amendment to the U.S. Constitution, which

22  prohibits the government from infringing "the right of the people to keep and bear Arms." U.S.

23  Const., amend. II. The Second Amendment "guarantee[s] the individual right to possess and carry

24  weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Even in

25  the face of "the problem of handgun violence in this country…the enshrinement of constitutional

26  rights necessarily takes certain policy choices off the table." *Id*. at 636. "[I]t is clear that the Framers

27  and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those

28  fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*,



Plaintiffs' Notice of Motion and Motion for                    Case No.22-cv-00501-BLF
Preliminary Injunction

561 U.S. 742, 778 (2010). "The upshot of [*Heller* and *McDonald*] is that there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home." *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011). Local governments, including the City of San Jose, are bound by the Second Amendment. *McDonald*, 561 U.S. at 790; *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012).

In Second Amendment challenges, the Ninth Circuit, along with other circuits have "looked to the First Amendment as a guide." *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013). In *Murdock v. Pennsylvania*, the Supreme Court considered a payment for a license to solicit or deliver orders for goods, as applied to the evangelizing activity of Jehovah's Witnesses. 319 U.S. 105, 106 (1943). The court thus examined the constitutionality of a requirement to, as it called it, "pay a license *tax* as a condition to the pursuit of their activities" that were protected by the First Amendment. *Murdock*, 319 U.S. at 110 (emphasis added).

Similarly, the Ordinance's requirement that gun owners pay a Gun Harm Reduction Fee and purchase insurance comprise taxes as a condition for the ownership of a gun, a constitutional right. "This tax is not a charge for the enjoyment of a privilege or benefit *bestowed by the state*," but rather "[t]he privilege in question *exists apart from state authority*" because "[i]t is guaranteed [to] the people by the federal constitution." *Murdock*, 319 U.S. *at* 115 (emphasis added).

Under the California Constitution, too, the Gun Harm Reduction Fee and the Insurance Mandate are deemed taxes.  A "'tax' means any levy, charge, or exaction of any kind imposed by a local government," with the exception of seven kinds of charges not relevant here. Cal. Const. Art. XIII C §1 (e).

Courts have historically rejected taxing First Amendment rights and therefore Second Amendment rights cannot be taxed. "A tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding government interest." *Minneapolis Star and Tribune Co. v. Minnesota Comm'r. of Rev.*, 460 U.S. 575, 582 (1983). Taxing the press's circulation of content "suggests that the goal of the regulation is not unrelated to the suppression of expression." *Id.* at 585.  The same is true for the taxation of guns. It is a thinly veiled attempt at suppressing the exercise of the right to keep and bear arms by making it more costly and

burdensome to own a gun—in addition to compelling the subsidization of anti-gun education programs.

Courts evaluate Second Amendment challenges by using a two-step inquiry. First, a court asks "whether the challenged law burdens conduct protected by the Second Amendment." *Chovan*, 735 F.3d at 1136. This step evaluates "a textual and historical inquiry into original meaning." *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011) (citing *Heller*, 554 U.S. at 634-35; *see also Chovan*, 735 F.3d at 1137). This first step has a low bar. Even a prohibition on "domestic violence misdemeanants" from possessing firearms satisfied the first step of the test. *Chovan*, 735 F.3d at 1137.

> a.  *The Ordinance Burdens the Right to Keep and Bear Arms*

Regulations on guns in the home fall squarely into the Second Amendment's protections. Indeed, it is at home "where the need for defense of self, family, and property is most acute." *Heller,* 554 U.S. at 628. The Ordinance's primary, if not sole, aim is at guns possessed within the home, as evidenced by it only applying to citizens who cannot carry a weapon outside the home. Ordinance §10.32.225.

Further, Mayor Liccardo's January 21, 2022, Memo states that the insurance mandate will encourage "use of gun safes [and] install child-safe trigger locks," which address storage in the home, and noted that "4.6 million children live in a *household* where a gun is kept and unlocked and loaded, and 72% of gun injuries occur *at home*." Pg. 3 (Ex. D) (emphasis added). Additionally, in justifying the fee, the Memo states that "a properly stored firearm *in the home* doubles occupants' risk of becoming a victim…[and] prioritizing those investments for residents living with guns *in the home* will provide the most direct path for reducing gun harm." *Id*. at 4. (emphasis added).

The Ordinance thus directly regulates firearms *in the home*, where the need is "most acute." Consequently, the Ordinance burdens protected Second Amendment rights.

> b.  *If Applying a Level of Scrutiny, the Court Should Apply Strict Scrutiny*

The second step of the traditional test is for the court to "apply an appropriate level of scrutiny." *Id*. "Given *Heller*'s focus on 'core' Second Amendment conduct and the Court's frequent references to First Amendment doctrine, we agree with those who advocate looking to the First



1  Amendment as a guide in developing a standard of review for the Second Amendment." *United*

2  *States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010). Thus, like the First Amendment, some burdens

3  receive strict scrutiny, such as content based speech restrictions, while others receive intermediate

4  scrutiny, such as time, place and manner restrictions. *Id*. The level of scrutiny "should depend on (1)

5  'how close the law comes to the core of the Second Amendment right, and (2) 'the severity of the

6  law's burden on the right.'" *Chovan*, 735 F.3d at 1138 (quoting *Ezell*, 651 F.3d 703).

7      Strict scrutiny should apply because this law strikes at the very core of the Second

8  Amendment. It specifically targets guns in the home, "where the need for defense of self, family, and

9  property is most acute," *Heller*, 554 U.S. at 628, and threatens the impoundment of guns—the

10  complete denial of Second Amendment rights—for noncompliance with its arbitrary insurance and

11  annual fee requirements.

12      The Ordinance will severely burden a gun owner's ability to exercise his right to own a gun

13  for home or self-defense by imposing uncertain costs just to exercise a constitutional right. Even if

14  the fees are initially a low sum, the Ordinance does not cap or otherwise provide a limiting principle

15  for the total amount the Council may impose as a cost for owning a gun, and the cost of insurance

16  will be at the mercy of private insurers. This unbridled discretion that the City Council has given

17  itself, along with the discretion left to a private, for-profit, industry, can, and likely will, severely

18  burden or chill the residents of San Jose's Second Amendment rights. It also gives the City the

19  ability to strategically play possum in this litigation, proffering the Ordinance imposes a lower

20  financial burden and citing economic hardship exceptions, despite the Ordinance not limiting the

21  costs they can impose tomorrow.

22      For example, if the essential purpose and mechanism of the Ordinance are ratified by the

23  Court, regardless of the amount of the City's fees and the cost of the mandatory insurance and the

24  actual direct costs to the city, there would be nothing to prevent the City from attempting to shift the

25  full brunt of its bogus claim of $442 million in societal costs in San Jose onto the estimated 55,000

26  gun owners, for a per-owner charge of $8,036.36 per person—in addition to whatever insurance

27  companies may charge, if they cover the liabilities the City mandates they cover.

28  //



1      Accordingly, strict scrutiny is the appropriate level of scrutiny if the Court applies any level

2  of scrutiny.

3                          c.   *The Ordinance Even Fails Intermediate Scrutiny*

4      This Ordinance does not satisfy the lower standard of an intermediate scrutiny analysis, let

5  alone the strict scrutiny standard. Intermediate scrutiny requires "1) the government's stated

6  objective to be significant, substantial, or important; and 2) a reasonable fit between the challenged

7  regulation and the asserted objective." *Chovan*, 735 F.3d at 1139.

8      While neither the Supreme Court nor the Ninth Circuit have found reducing gun violence to

9  be a compelling government interest, the Ninth Circuit has stated that it is important. *Chovan*, 735

10  F.3d at 1139. Nevertheless, the Ordinance's provisions are not a reasonable fit, much less narrowly

11  tailored, to its claimed purposes. The City makes no findings, other than conclusory self-serving

12  statements, that special gun accident insurance or compulsory donations to anti-gun nonprofits will

13  reduce gun violence or other injuries, particularly gun violence by those who lawfully possess

14  firearms to be kept in the home, much less the root cause of most costs cited in the Ordinance:

15  criminals who use guns to commit intentional acts of violence. *See generally* Ordinance § 10.32.200.

16      That the Ordinance does not in fact limit how the chosen nonprofit would spend the City's

17  Gun Harm Reduction Fee, and specifically forbids the City from directing the spending of its own

18  fee, renders speculative any argument that payment of the fee furthers the Ordinance's aims. And, so

19  far, there is no requirement that any particular gun owner (or their household members and close

20  personal associates) subject to the Ordinance must actually receive the services for which the City's

21  fee is paying the nonprofit to provide.

22      Additionally, the Ordinance embodies a second government purpose of shifting the claimed

23  collective costs of gun injuries caused by some onto nearly all gun owners. *See* Ordinance

24  § 10.32.200.B.8, 9. The extrajudicial exaction of payments from a whole class of persons (those

25  exercising their Second Amendment rights) to pay City or societal costs arising from the actions of a

26  few individuals (violent criminals, including perpetrators of domestic gun violence, and careless gun

27  owners) smacks of collective punishment. It is neither a reasonable fit with a significant, substantial,

28



1   or important government interest, nor narrowly tailored to a compelling interest—indeed it is an

2   illegitimate government practice.

3          Further, the city's costs related to police, fire, judicial expenses form a substantial part of the

4   City's costs—but none of the Ordinance's measures will compensate the city for these claimed

5   municipal losses.  They are also *normal* government costs, shared by all, that have historically been

6   financed through general tax revenue, not taxes imposed selectively on particular citizens or

7   communities.

8          The other private costs related to loss of work and quality of life are purely manufactured and

9   arbitrary abstract concepts that will only be impacted by the Ordinance in equally arbitrary, abstract,

10  speculative, and attenuated ways. The City's own hired research firm concluded that $253,828,000

11  of the $411,699,000 in total costs it calculated came from "Homicide/Assault/Legal Intervention"

12  alone. Liccardo Jan. 19 Memo 5 (Ex. I). Thus, roughly 57% of the costs incurred by the City, by its

13  own calculation, comes from crime alone, which neither insurance nor the fee will ever reimburse.

14  Indeed, the City's research states that its "primary costs" are for "fire department and police

15  response." The Gun Harm Reduction Fee going to the nonprofit is supposed to be for educational

16  programs, not to compensate San Jose for its losses and there is no indication in the Ordinance that

17  the City expects to claim any funds from the gun owners' insurance policies.

18

19          Finally, the government cannot impose fees on guns for purposes other than administrative

20  costs. The government "may not impose a charge for the enjoyment of a right granted by the federal

21  constitution." *Murdock*, 319 U.S. at 113. It may collect a fee to "meet the expense incident to the

22  administration of the act and to the maintenance of public order in the matter licensed." *Cox v. New*

23  *Hampshire*, 312 U.S. 569 (1941). "[I]mposing fees on the exercise of constitutional rights is

24  permissible when the fees are designed to defray (and do not exceed) the administrative costs of

25  regulating the protected activity." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2nd Cir. 2013). The

26  Ninth Circuit has adopted this *Murdock/Cox* fee-jurisprudence for the Second Amendment. *Bauer v.*

27  *Becerra*, 858 F.3d 1216 (9th Cir. 2017).  Here, the Gun Harm Reduction Fee goes directly to a

28  nonprofit for the purposes of reeducating gun owners. Ordinance §§ 10.32.215, 10.32.220. The



administrative costs of the Ordinance, if any, are actually covered by an entirely separate fee authorized by the Ordinance. *Id*. at § 10.32.250.

    d.   *Alternatively, the Ordinance is Unconstitutional Because It Burdens the Second Amendment Right to Keep and Bear Arms*

The majority opinion in *Heller* noted that "We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach." 554 U.S. at 634. This was in response to Justice Breyer's dissent, which claimed that a law restricting guns was constitutional after weighing its burden on Second Amendment rights against handgun violence, urban geography, and history. *Id*. But the majority stated that "The very enumeration of the right takes out of the hands of government —even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id*. Indeed, as Justice Kavanagh noted, while on the D.C. Circuit, "The Court's failure to employ strict or intermediate scrutiny appears to have been quite intentional and well-considered." *Heller v. District of Columbia*, 670 F.3d 1244, 1273 (D.C. Cir. 2011)(Kavanagh, B., dissenting) (quoting Tr. Of Oral Arg. at 44, *Heller*, 554 U.S. 570 (No. 07-290)) ("[T]hese various phrases under the different standards that are proposed, 'compelling interest,' 'significant interest,' 'narrowly tailored,' none of them appear in the Constitution…these standards that apply in the First Amendment just kind of developed over the years as sort of baggage that the First Amendment picked up."). Thus, a balancing tests that weighs a government interest against a constitutional right under a strict scrutiny or intermediate scrutiny analysis is inappropriate under *Heller*.

The Ordinance is therefore unconstitutional based on the mere fact that its insurance requirement and fees burden Plaintiffs' ability to exercise their Second Amendment rights.

## 2.   The Ordinance Violates Plaintiffs' Free Speech and Association Rights.

To continue to exercise their Second Amendment rights, the Ordinance unconstitutionally forces gun owners to associate with and subsidize the speech of others with whom they may disagree.

 "[M]andatory associations are permissible only when they serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox*

    

1  *v. SEIU*, 567 U.S. 298, 310 (2012). "Compelling a person to subsidize the speech of other private

2  speakers raises similar First Amendment concerns." *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448,

3  2464 (2018)(citing *Knox*, 567 U.S. at 309). "As Jefferson famously put it, 'to compel a man to

4  furnish contributions of money for the propagation of opinions which he disbelieves and abor[s] is

5  sinful and tyrannical." *Id*. (quoting A Bill for Establishing Religious Freedom, in 2 papers of

6  Thomas Jefferson 545 (J. Boyd ed. 1950)). "Because the compelled subsidization of private speech

7  seriously impinges on First Amendment rights, it cannot be casually allowed." *Id*. Thus, in *Janus*,

8  the Supreme Court concluded that a law that requires government agencies to extract "agency fees"

9  from "nonconsenting employees," violates the First Amendment. *Id*. at 2486.

10  The operation of the Ordinance is strikingly similar to the imposition of mandatory union

11  "agency fees" on public sector employees, addressed by the Supreme Court in *Janus*. In *Janus*, an

12  employee, whether or not he/she wanted to associate with the union, was required to pay an "agency

13  fee" to the union. *Janus*, 138 S.Ct. at 2460. Here, whether a gun owner wants to associate with or

14  donate to the nonprofit or not, he/she must pay the Gun Harm Reduction Fee directly to the City's

15  chosen nonprofit. Ordinance § 10.32.215. In *Janus*, no form of employee consent was required by

16  the state's statute. *Janus*, 138 S.Ct. at 2486. Likewise, the Ordinance does not have any consent

17  provision. *See generally* Ordinance. Such a procedure "violates the First Amendment." *Janus*, 138

18  S.Ct. at 2486.

19  In another illustrative case, the Supreme Court held that the California Bar could use

20  members' dues to "fund activities germane" to the "State's interest in regulating the legal

21  profession" but it could not use members' dues to "fund activities of an ideological nature which

22  falls outside of those areas of activity." *Keller v. State Bar of California*, 496 U.S. 1, 13 (1990). So

23  likewise, the City of San Jose cannot force gun owners to pay fees to a nonprofit for whatever

24  purposes they desire, particularly to discourage exercising the right to keep and bear arms.

25  It is a well-established principle that:

26  > [T]he right of freedom of thought protected by the First Amendment against state
   > action includes both the right to speak freely and the right to refrain from speaking at
27  > all. A system which secures the right to proselytize religious, political, and
   > ideological causes must also guarantee the concomitant right to decline to foster such
28

16



1  concepts. The right to speak and the right to refrain from speaking are complementary
components of the broader concept of individual freedom of mind.

2  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citations and internal quotations

3  omitted).

4  In recent comments, Mayor Liccardo has likened the compulsory payment of the Gun Harm

5  Reduction Fee to forced membership in a club. After describing the nonprofit's activities the gun

6  owner's payment of the annual fee to the nonprofit would fund, a reporter asked the mayor if "it's

7  almost like joining a club," to which the Mayor responded:

8

9  Yeah, and look, I don't pretend to believe these are overwhelmingly folks who are
willing to want to do this. I recognize that this is by government fiat, and many would

10  prefer not to pay the fee.

11

12  Mary Harris, *San Jose's New Gun Law Is the First of Its Kind*, Slate.com, https://slate.com/news-

13  and-politics/2022/02/san-jose-gun-law-mayor-sam-liccardo-interview.html.

14  Here, the forced association and subsidization of speech is more severe even than in *Janus*.

15  In *Janus*, the employees' union fees were a condition of employment. While conditioning

16  employment on forgoing constitutional rights is significant, here, the Ordinance conditions a

17  constitutional right on forgoing other constitutional rights.

18  Indeed, "government may not deny a benefit to a person because he exercises a constitutional

19  right." *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540, 545 (1983). Here, the

20  Ordinance denies citizens a benefit (freedom of speech and association) by forcing them to associate

21  with and subsidize a nonprofit that will communicate messages which gun owners will not agree

22  with solely because the citizens exercise their constitutional right to own a gun. The Gun Harm

23  Reduction Fee therefore violates the First Amendment.

24  As stated above, in *Heller*, Justice Roberts noted that interest-balancing tests for the First

25  Amendment are "baggage."  Tr. of Oral Arg. At 44, *Heller*, 554 U.S. 570 (No. 07-290). Currently,

26  the Supreme Court has not assigned a test for compelled subsidization of speech. *See Janus*, 138

27  S.Ct. at 2465 ("[W]e again find it unnecessary to decide the issue of strict scrutiny because the

28  Illinois scheme cannot survive under even the more permissive standard…."). The Court did say,

17

1  however, that "minimal scrutiny is foreign to our free-speech jurisprudence." *Id*. As Justices Scalia

2  and Roberts have noted in *Heller*, the Constitution does not prescribe a balancing test, so there

3  should not be one. However, if such a test is administered, for the reasons stated above, this

4  Ordinance cannot pass even intermediate scrutiny; therefore, the Ordinance should be enjoined for

5  violating the First Amendment.

6  **3.   The Ordinance Violates article XI, § 7 of the California Constitution.**

7  Article XI, section 7 of the California Constitution states that "A county or city may make

8  and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in

9  conflict with general laws." This provision prohibits a local law that "duplicates, contradicts, or

10  *enters an area fully occupied by general law*, either expressly or by legislative implication." *Fiscal*

11  *v. City and County of San Francisco* 158 Cal.App.4th 895, 903 (Cal. Ct. App. 2008)(quotation

12  omitted)(emphasis added).

13  The State of California has voluminous statutes comprehensively regulating firearm

14  ownership in California. *See generally* Cal. Penal Code §§ 23500-34370. This includes firearm

15  safety, CAL. PENAL CODE §§ 23500-23520, the appearance of firearms, *id*., §§ 23800-24790, storage

16  of firearms, *id*., §§ 25000-25225, how to handle lost or stolen firearms, *id*., §§ 25250-25225,

17  carrying firearms, *id*., §§ 25300-26406, the sale, lease, or transfer of firearms, *id*., §§ 26500-28490,

18  the registration and assignment of firearms, *id*., §§ 28010-28024, how to transfer firearms between

19  private persons, *id*., §§ 28050-28070, recordkeeping, background checks, and fees related to transfer,

20  *id*., §§ 28100-28490, the manufacture of firearms, *id*., §§ 29010-29184, who may not possess a

21  firearm, *id*., §§ 29610-30165, rules pertaining to "firearm equipment," *id*., §§ 30150-30165, and, in

22  some cases, firearm registration, *id*., §§ 30900-30965. This is but a sample of all of the separate

23  statutes regulating firearms in California.

24  California courts have already determined that "the Legislature intended to occupy the field

25  of residential handgun possession to the exclusion of local government entities." *Fiscal*, 158

26  Cal.App.4th at 909 (citing Cal. Penal Code § 12026).[1] Thus, the Ordinance, insofar as it intends to

27

28  _____

[1] The specific mandates in the state laws cited in *Fiscal* have since been transferred into other statutes with no substantive change.



1  impose gun storage and safety requirements, plainly encroaches upon a field already occupied by
2  state law, and thus violates Article XI, section 7.

3      **4.   The Ordinance Violates Article XIII C, Section 1 of the California Constitution.**

4          The California Constitution requires that "No local government may impose, extend, or
5  increase any *general tax* unless and until that tax is submitted to the electorate and approved by a
6  majority vote." Article XIII C, §2(b) (emphasis added). It also requires that "No local government
7  may impose, extend, or increase any *special tax* unless and until that tax is submitted to the
8  electorate and approved by a two-thirds vote." Article XIII C, §2(d) (emphasis added). A "tax" is
9  "any levy, charge, or exaction of any kind imposed by a local government," with exceptions that do
10  not apply here. Article XIII C, §1(e). The Gun Harm Reduction Fee and the insurance requirement
11  (backed by the threat of a fine payable to the City) are levies, charges or exactions imposed by the
12  City of San Jose and thus each constitutes a "tax" within the meaning of the California Constitution.
13  *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 564-566 (2012) (a law describing a payment
14  as a "penalty" for not complying with an insurance requirement does not determine whether the
15  payment is a tax for constitutional purposes).

16          If the City disputes that the Gun Harm Reduction Fee or insurance requirement is a tax, "the
17  [City] bears the burden of proving by a preponderance of the evidence that a levy, charge, or other
18  exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the
19  governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or
20  reasonable relationship to the payor's burdens on, or benefits received from, the governmental
21  activity." Article XIII C, §1.

22          The City cannot meet this burden.  The amount of the Gun Harm Reduction Fee and the
23  required insurance payments (including penalties for noncompliance) are "more than necessary to
24  cover the reasonable costs of the governmental activity" because neither is for government activity.
25  Additionally, as to both the Gun Harm Reduction Fee and the mandatory insurance, "the manner in
26  which those costs are allocated to" gun owners do not "bear a fair or reasonable relationship to the
27  payor's burdens on, or benefits received from" the City's "governmental activity." Article XIII C,
28  §1. Every gun owner would be compelled by the Ordinance to pay an arbitrary amount for the Gun

Harm Reduction Fee and pay the city a fine if they do not have an insurance policy specifically covering them for owning a gun.  The Ordinance does not establish, or claim, that each gun owner will receive a benefit in return for the fee paid having a value commensurate with the amount they paid.  For the same reasons stated in the Second Amendment analysis regarding reasonable fit, neither the insurance requirement nor the Gun Harm Reduction Fee bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, a governmental activity.

The Ordinance's required payments, whether general or special taxes, were never voted upon by the citizens of San Jose. Compl. First Am. Compl. ¶ 72.  Accordingly, they violate the California Constitution.

5. **The Ordinance Violates the San Jose's City Charter's Reservation of Budget and Appropriation Powers to the City Council and Administrative Powers to the City Manager.**

The Ordinance violates the San Jose City Charter by commanding gun owners to directly pay the City's Gun Harm Reduction Fee to one nonprofit to be used for program activity that was not directed by the City Council or managed by the City Manager.

The San Jose City Charter vests in the City Council "[a]ll powers of the City and the determination of all matters of policy." San Jose City Charter § 400. With regard to the expenditure of City funds, only the City Council has the power to establish a budget. *Id.* §§ 1204, 1206.  The Council also has the sole power to appropriate the expenditure of City funds. *Id.*, § 1207. The City Manager, by contrast, is the "Chief Administrative Officer and head of the administrative branch of the City government." *Id.*, § 502; *see also id.*, § 701.

The Ordinance, by prohibiting the City Council from using its budgeting and appropriating powers to direct how the receipts from the City's Gun Harm Reduction fee are expended by the chosen nonprofit, Ordinance § 10.32.220.C, violates the San Jose City Charter's reservation of budgeting and appropriation power to the City Council.  The Ordinance also violates the City Charter's delegation of executive functions to the "administrative" branch of the City Government under the leadership and control of the City Manager because the Ordinance says "the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" other than a

DLG

DHILLON LAW GROUP INC.

1   vague direction to "reduce the risk" of harm from using firearms and "mitigate the risk" of harm or

2   liability from possessing firearms. *Id.*

3   **6.   The Ordinance Violates the San Jose City Charter's Requirement that City**
4   **Receipts Be Deposited into City Accounts.**

5   The San Jose City Charter states that "[a]ll revenues and receipts which are not required by

6   [the] Charter, State law or ordinances to be placed in special funds shall be credited to the [City's]

7   General Fund." *Id.*, § 1211.  The General Fund is "a medium of control and accounting for all City

8   activities excepting activities for which special funds are established and maintained." *Id.*

9   The Ordinance requires gun owners to pay the City-required, City-determined fee directly to

10   a nonprofit organization, *id.*, § 10.32.215, thereby diverting a City fee to a nonprofit rather than the

11   City's General Fund or a special fund.  This violates the City Charter's requirement that all City

12   revenues and receipts be deposited into City accounts.  The loss of this essential means of City

13   "control and accounting," in combination with the Ordinance's prohibition against City control of

14   the nonprofit's use of the funds and the vague statements about what the nonprofits should use the

15   funds for, is an open invitation to corruption, waste, fraud, and abuse.

16   **B.   Plaintiffs Face Imminent Irreparable Harm Absent Immediate Injunctive Relief.**

17   For a statute that violates the Second Amendment, the "remedy is necessarily directed at the

18   statute itself and *must* be injunctive and declaratory." *Ezell*, 651 F.3d at 698. (emphasis in original).

19   A city ordinance that violates the Second Amendment "stands as a fixed harm to every [citizen's]

20   Second Amendment right." *Id.* "Irreparable harm is presumed" and cannot be remedied by damages.

21   *Id.* at 699.

22   Additionally, "where the First Amendment is implicated, the Supreme Court has made clear

23   that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably

24   constitutes irreparable injury' for purposes of the issuance of a preliminary injunction." *College*

25   *Republicans at San Francisco State University v. Reed*, 523 F. Supp. 2d 1005, 1011 (N.D. Cal. 2007)

26   (*citing Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973-74 (9th Cir. 2002), *in turn citing Elrod*

27   *v. Burns*, 427 U.S. 347, 373 (1976)); *see also S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1148

28   (9th Cir. 1998) (holding that a civil liberties organization that had demonstrated probable success on

the merits of its First Amendment overbreadth claim had thereby also demonstrated irreparable harm). "In other words, the requirement that a party who is seeking a preliminary injunction show 'irreparable injury' is deemed fully satisfied if the party shows that, without the injunction, First Amendment freedoms would be lost, even for a short period." *Reed*, 523 F. Supp. 2d at 1011. "Unlike a monetary injury, violations of the First Amendment 'cannot be adequately remedied through damages.'" *Americans for Prosperity Foundation v. Harris*, 182 F. Supp. 3d 1049, 1058 (C.D. Cal. 2016) (*citing Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009)).

Without an injunction preventing Defendants from enforcing the Ordinance, Plaintiffs will suffer irreparable harm in the form of deprivation of fundamental freedoms secured by the First, Second and Fourteenth Amendment to the U.S. Constitution and the California Constitution. Plaintiffs' irreparable injuries cannot adequately be compensated by damages or any other remedy available at law. Thus, irreparable injury is clearly shown, necessitating the relief Plaintiffs seek in this Motion.

**C.**     **The Balance of Hardships Tips Decidedly in Plaintiffs' Favor.**

"[S]erious First Amendment questions compel[] a finding that there exists the potential for irreparable injury, or that a the very least the balance of hardships tips sharply in [the plaintiffs'] favor." *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (quoting *Sammartano*, 303 F.3d at 973). Similarly, when there is a threat of sanctions for failure to act on a law that restricts Second Amendment rights, even if the government endures hardship, the balance favors the plaintiffs. *See Duncan v. Becerra*, 265 F.Supp.3d 1106, 1136 (S.D. Cal. 2017).

Here, if the Ordinance goes into effect and is enforced, tens of thousands of San Jose citizens will risk seizure of their guns and the payment of fines if they do not forgo their fundamental rights to keep arms and to free speech and association, as well as rights under the California constitution to vote on tax increases, and rights under the City Charter to have City fees deposited into City accounts. The balance of hardships sharply tips in favor of Plaintiffs.

**D.**     **Injunctive Relief Is in The Public Interest**

"As the Ninth Circuit has consistently recognized, there is a significant public interest in upholding First Amendment principles." *Americans for Prosperity Foundation*, 182 F. Supp. 3d at



1   1059 (internal citations omitted); *see also Doe v. Harris*, 772 F.3d 563, 683 (9th Cir.2014);

2   *Sammartano*, 303 F.3d at 974. Similarly, "the public interest favors the exercise of Second

3   Amendment rights by law-abiding responsible citizens." *Duncan*, 265 F.Supp.3d 1106.

4         As discussed above, Plaintiffs' core constitutional rights to own guns to defend one's home

5   and self will remain in jeopardy so long as Defendants remain free to enforce their Ordinance.

6   Likewise, Plaintiffs' right to free speech and association will be jeopardized by forcing them to

7   subsidize and associate with a nonprofit. Holding the City Council to account for the constraints on

8   its power in the California constitution and the City Charter are also in the public interest.

9   Accordingly, issuance of injunctive relief is proper, and the Court should grant this Motion.

10  **II.    THE COURT SHOULD DISPENSE WITH ANY BOND REQUIREMENT**

11        Rule 65(c) of the Federal Rules of Civil Procedure provides that a preliminary injunction

12  may be issued "only if the movant gives security in an amount that the court considers proper to pay

13  the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

14  Fed. R. Civ. P. 65(c). However, the Court has discretion as to whether any security is required and, if

15  so, the amount thereof. *See, e.g., Jorgensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003).

16        Plaintiffs request that the Court waive any bond requirement, because enjoining Defendants

17  from unconstitutionally enforcing the Ordinance will not financially affect Defendants, who do not

18  have a financial stake in enforcing the Ordinance. A bond would, however, be burdensome on

19  already burdened Plaintiffs under these circumstances. *See, e.g., Bible Club v. Placentia-Yorba*

20  *Linda School Dist.*, 573 F. Supp. 2d 1291, fn. 6 (C.D. Cal. 2008) (waiving requirement of student

21  group to post a bond where case involved "the probable violation of [the club's] First Amendment

22  rights" and minimal damages to the District of issuing injunction)(*citing Doctor John's, Inc. v. Sioux*

23  *City*, 305 F. Supp. 2d 1022, 1043-44 (N.D. Iowa 2004) ("requiring a bond to issue before enjoining

24  potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because

25  the rights potentially impinged by the governmental entity's actions are of such gravity that

26  protection of those rights should not be contingent upon an ability to pay.")).

27  //

28  //

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a preliminary injunction to restrain and enjoin Defendants, as well as their agents, employees, and successors in office, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any provision of the Ordinance.


                                        Respectfully submitted,

Date: March 8, 2022                     DHILLON LAW GROUP INC.

                          By:    /s/ Harmeet K. Dhillon
                                 Harmeet K. Dhillon
                                 Michael A. Columbo
                                 Mark P. Meuser
                                 DHILLON LAW GROUP INC.
                                 177 Post Street, Suite 700
                                 San Francisco, California 94108
                                 (415) 433-1700

                                 David A. Warrington*
                                 Curtis M. Schube (admitted *pro hac vice*)
                                 DHILLON LAW GROUP INC.
                                 2121 Eisenhower Avenue, Suite 402
                                 Alexandria, VA 22314
                                 (571) 400-2121

                                 *Admission *pro hac vice* pending

                                 Attorneys for Plaintiffs



1

**CERTIFICATE OF SERVICE**

2          I, Harmeet K. Dhillon, hereby certify that on March 8, 2022, I electronically filed the above

3   document with the Clerk of the Court using CM/ECF, which will send electronic notification of such

4   filing to all registered counsel.

5

6   Dated: March 8, 2022                          By: /s/Harmeet K. Dhillon
                                                       Harmeet K. Dhillon
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Plaintiffs' Notice of Motion and Motion for                    Case No.22-cv-00501-BLF
Preliminary Injunction