1  JOSEPH W. COTCHETT (SBN 36324)
   jcotchett@cpmlegal.com
2  TAMARAH P. PREVOST (SBN 313422)
   tprevost@cpmlegal.com
3  ANDREW F. KIRTLEY (SBN 328023)
   akirtley@cpmlegal.com
4  MELISSA MONTENEGRO (SBN 329099)
   mmontenegro@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
6  840 Malcolm Road, Suite 200
   Burlingame, CA  94010
7  Telephone:  (650) 697-6000
   Facsimile:   (650) 697-0577
8

9  *Attorneys for Defendants*

10

11

12              **UNITED STATES DISTRICT COURT**

13          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14                     **SAN JOSE DIVISION**

15

16  **NATIONAL ASSOCIATION FOR GUN**       **Case No. 5:22-cv-00501-BLF**
    **RIGHTS, INC.**, a non-profit corporation, and
17  **MARK SIKES**, an individual,          **OPPOSITION TO PLAINTIFFS'**
                                            **MOTION FOR PRELIMINARY**
18                  Plaintiffs,             **INJUNCTION**

19         v.                               Date:      July 21, 2022
                                            Time:      9:00 AM
20  **CITY OF SAN JOSE**, a public entity,  Courtroom: 3 – 5th Floor
    **JENNIFER MAGUIRE**, in her official   Judge:     Hon. Beth Labson Freeman
21  capacity as City Manager of the City of San
    Jose, and the **CITY OF SAN JOSE CITY** Complaint Filed: January 25, 2022
22  **COUNCIL**,
23
                 Defendants.
24

25

26

27

28

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL HISTORY ................................................... 1

    A.  The Ordinance.................................................................................... 1

    B.  Procedural History ............................................................................ 3

III.  LEGAL STANDARD......................................................................................... 4

IV.  ARGUMENT ...................................................................................................... 4

    A.  Plaintiffs' Motion is Unripe and Not a Proper Facial Challenge................... 4

    B.  Plaintiffs Are Not Entitled to Injunctive Relief ............................... 6

        1.  Plaintiffs Fail to Show a Likelihood of Success on the Merits............................ 6

           a.  Plaintiffs Are Not Likely to Succeed on their Second Amendment Claim ............................................................................... 6

              i.  The Appropriate Level of Scrutiny is Intermediate Scrutiny......... .. 7

              ii.  The Ordinance Easily Survives Intermediate Scrutiny...............9

           b.  Plaintiffs are not Likely to Succeed on the Merits of their First Amendment Asserting Compelled Speech or Association ........................... 14

           c.  The Ordinance is Not Preempted Under State Law..................................... 17

           d.  Plaintiffs are Unlikely to Succeed in Proving the Ordinance is Unlawful Tax ..................................................................................... 19

           e.  The Ordinance Does Not Violate the San Jose City Charter......................... 20

              i.  The Charter Does Not Require Placing the Fee into the General Fund………………………………………………… 21

              ii.  The Fee Is Not Subject to the Charter's Budgetary Procedures ………21

              iii.  The City Council Properly Delegated Regulatory Authority to the City Manager ………………………………………………………22

        2.  Plaintiffs Have Not Established That They Will Suffer Irreparable Harm........ 23

        3.  The Balance of Equities and Public Interest Favor Defendants ....................... 24

    C.  The Court Should Deny Plaintiffs Request for Judicial Notice and Should Not Dispense with the Bond Requirement..................................................... 25

V.  CONCLUSION................................................................................................... 25

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1300 N. Curson Investors, LLC v. Drumea,*
    225 Cal.App.4th 325 (2014) ............................................................................21

*Bauer v. Becerra,*
    858 F.3d 1216 (9th Cir. 2017) ..............................................................8, 9, 12, 13

*Birkenfeld v. City of Berkeley,*
    17 Cal.3d 129 (Cal. 1976)...............................................................................22

*Bishop v. City of San Jose,*
    1 Cal.3d 56 (1969) ....................................................................................2, 17

*Cal. Democratic Party v. Jones,*
    530 U.S. 567 (2000)......................................................................................16

*Calguns Foundation, Inc. v. City of San Mateo,*
    218 Cal. App 4th 661 (2013) ..........................................................................19

*Cal. Rifle & Pistol Assn. v. City of West Hollywood,*
    66 Cal.App.4th 1302 (1998) ..........................................................................19

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) ....................................................................4, 17

*City of Renton v. Playtime Theaters, Inc.,*
    475 U.S. 41 (1986).......................................................................................11

*City of San Jose v. Lynch,*
    4 Cal.2d 760 (1935) .....................................................................................21

*Cox v. New Hampshire,*
    312 U.S. 569 (1941) .....................................................................................13

*Diaz v. Brewer,*
    656 F.3d 1008 (9th. Cir. 2011) .......................................................................25

*DISH Network Corp. v. F.C.C.,*
    653 F.3d 771 (9th Cir. 2011) ..........................................................................23

*District of Columbia v. Heller*
    (2008) 554 U.S. 570 ............................................................................7, 8, 12

*Fiscal v. City and County of San Francisco,*
    158 Cal.App.4th 895 (2008) ......................................................................18, 19

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

*Galvan v. Superior Court,*
    70 Cal.2d 851 (1969) ...................................................................................18

*Garcia v. California Supreme Court,*
    2014 WL 309000 (N.D. Cal. Jan. 21, 2014) .............................................25

*Gonzales v. Carhart,*
    550 U.S. 124 (2007) ......................................................................................5

*Great Western Shows, Inc. v. County of Los Angeles,*
    27 Cal.4th 853 (Cal. 2002)..............................................................17, 18, 19

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011) ....................................................................7

*Heller v. District of Columbia,*
    801 F.3d 264 (D.C. Cir. 2015) ......................................................................8

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,*
    736 F.3d 1239 (9th Cir. 2013) ....................................................................23

*Isaakhani v. Shadow Glen Homeowners Assn., Inc.,*
    63 Cal.App.5th 917, 931-932 (2021) ..........................................................21

*Jackson v. City and County of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) .............................................................. *passim*

*Janus v. AFSCME, Council 31,*
    138 S. Ct. 2448 (2018)...........................................................................14, 15

*Kachalsky v. County of Westchester,*
    701 F.3d 81 (2d Cir. 2012)...........................................................................10

*Keller v. State Bar of California,*
    496 U.S. 1 (1990) ........................................................................................15

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ......................................................................25

*Knox v. SEIU,*
    567 U.S. 298 (2012).....................................................................................15

*Kwong v. Bloomberg,*
    723 F.3d 160 (2d Cir. 2013).................................................................8, 9, 12

*Lares v. West Bank One* (*In re Lares*)
    188 F.3d 1166 (9th Cir. 1999) ....................................................................21

*Laurent v. City and County of San Francisco,*
    99 Cal.App.2d 707 (1950) ...........................................................................21

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION;**
**CASE NO. 5:22-CV-00501-BLF**

iii

*Lopez v. Brewer*,
    680 F.3d 1068 (9th Cir. 2012) ...........................................................................4, 6

*Los Angeles Unified Sch. Dist. v. Garcia*,
    58 Cal.4th 175 (2013) ...........................................................................................21

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) ........................................................................................12, 24

*Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.*,
    460 U.S. 575 (1983) ...............................................................................................13

*Murdock v. Pennsylvania*,
    319 U.S. 105 (1943) ...............................................................................................13

*Nat'l Park Hosp. Assn. v. Dep't. of Interior*,
    538 U.S. 803 (2003) .................................................................................................4

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
    16 F.3d 1032 (9th Cir. 1994) ................................................................................25

*Nken v. Holder*,
    556 U.S. 418 (2009) ...............................................................................................24

*Nordyke v. King*,
    681 F.3d 1041 (9th Cir. 2012) ...........................................................................6, 12

*O'Connell v. Gross*,
    No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020)................8, 13

*Olsen v McGillicuddy*,
    15 Cal. App. 3d 897 (1971) ...................................................................................19

*S. Cal. Edison Co. v. Pub. Util. Comm'n*,
    227 Cal.App.4th 172 (2014) ..................................................................................20

*Sacramento Chamber of Commerce v. Stephens*,
    212 Cal. 607 (1931) ...............................................................................................22

*Santa Cruz Lesbian and Gay Cmty. Ctr. v. Trump*,
    508 F.Supp.3d 521 (N.D. Cal. 2020) ....................................................................24

*Schmeer v. County of Los Angeles*,
    213 Cal.App.4th 1310 (2013) ..........................................................................19, 20

*Scholl v. Mnuchin*,
    489 F.Supp.3d 1008 (N.D. Cal. 2020) ...............................................................4, 17

*Scott v. Pasadena Unified Sch. Dist.*,
    306 F.3d 646 (9th Cir. 2002) ..................................................................................5

*Sherwin-Williams Co. v. City of Los Angeles,*
   4 Cal.4th 893 (1993) ....................................................................................................17

*Sierra Club v. United States Army Corps of Eng'rs,*
   990 F.Supp.2d 9 (D.C. Cir. 2013) ................................................................................5

*Stimmel v. Sessions,*
   879 F.3d 198 (6th Cir. 2018) ........................................................................................9

*Stormans, Inc. v. Selecky,*
   586 F.3d 1109 (9th Cir. 2009) ....................................................................................24

*" Sunset Amusement Co. v. Bd. of Police Comm'rs,*
   7 Cal.3d 64 (1972) ......................................................................................................17

*Torcivia v. Suffolk Cty., New York,*
   17 F.4th 342 (2d Cir. 2021) ..........................................................................................9

*Turner Broad. Sys., Inc. v. FCC,*
   520 U.S. 180 (1997)..........................................................................................9, 10, 16

*U.S. v. Chester,*
   628 F.3d 673 (4th Cir. 2010) ........................................................................................8

*U.S. v. Gila Valley Irr. Dist.,*
   31 F.3d 1428 (9th Cir. 1994) ........................................................................................5

*United States v. Chovan,*
   735 F.3d 1127 (9th Cir. 2013) ..............................................................................7, 8, 9

*United States v. Masciandaro,*
   638 F.3d 458 (4th Cir. 2011) ......................................................................................12

*Vieux v. Easy Bay Reg'l Park Dist.,*
   906 F.3d 1330 (9th Cir. 1990) ................................................................................4, 17

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989)........................................................................................................8

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008)..................................................................................................6, 16

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)................................................................................................*passim*

*Young v. Hawaii,*
   992 F.3d 765 (9th Cir. 2021) ....................................................................................7, 9

**Statutes**

Cal. Gov. Code § 53071 ..............................................................................................18, 19

Cal. Pen. Code § 25605...............................................................................................18, 19

**Codes**

SAN JOSE, CAL. MUNI CODE § 10.32.200(A) ...........................................................2

**Ordinances**

§ 10.32.200(B) ..........................................................................................................2

§ 10.32.200(B)(12), (11) ...........................................................................................2

§ 10.32.200(B)(13)....................................................................................................2

§ 10.32.210(A), (C) ..................................................................................................2

§ 10.32.220(C) .......................................................................................................2, 21

§ 10.32.240..............................................................................................................3, 24

§ 10.32.255(A)-(C) ...................................................................................................2

§ 10.32.215..............................................................................................................3, 20

§ 10.32.200(B)(8).....................................................................................................11

§ 10.32.220................................................................................................................20

§ 10.32.220(A) ..........................................................................................................3

§ 10.32.220(B) ..........................................................................................................15

§ 10.32.225(B) ..........................................................................................................18

§ 10.32.225(C) .......................................................................................................11, 12, 13

§ 10.32.230(A), (B)...................................................................................................3

§ 10.32.235(A)(1)-(4) ...............................................................................................4

§ 10.32.245...............................................................................................................3

§ 10.32.215...............................................................................................................21

§ 10.32.305(B)..........................................................................................................21

**Other Authorities**

U.S. Constitution First Amendment............................................................ *passim*

U.S. Constitution First and Second Amendments ...........................................................1

Cal. Const., Art. XIII C, § 1................................................................................................19, 20

California Constitution Article XI, Section 5(a)..............................................................17

California Constitution Article XI, Section 7 ..................................................................17

California Constitution Article XIII C ............................................................................19

**Rules**

Fed. R. Evid. 201(b)(1)-(2) ............................................................................................25

Federal Rules of Civil Procedure Rule 65(c) .................................................................25

**Charters**

San Jose City Charter §§ 300, 700..................................................................................22

San Jose City Charter § 411 ............................................................................................23

San Jose City Charter §§ 1204, 1206, 1207 .............................................................21, 22

San Jose City Charter § 1207 ..........................................................................................22

San Jose City Charter § 1211 ..........................................................................................21

**OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION;**
**CASE NO. 5:22-CV-00501-BLF**

## I.    INTRODUCTION

Plaintiffs seek the extraordinary remedy of enjoining the City of San Jose's ("City" or "San Jose") Ordinance requiring resident gunowners to obtain liability insurance for accidental gun injuries and pay an annual Gun Harm Reduction Fee ("Fee") to a nonprofit organization. The Motion fails for three key reasons. First, it is not ripe for review. Despite repeatedly blasting the Ordinance for imposing costs on gunowners, Plaintiffs concede they do not know the cost of the required Fee, probably because the City has not even set it yet. Plaintiffs similarly speculate about alleged "anti-gun" biases of the non-profit in the Ordinance, but that organization has not yet been designated. In short, the Motion is premised on the kind of contingent future events and hypotheticals that make it unripe for review under Ninth Circuit law.

Second, the Motion fails to demonstrate any likelihood Plaintiffs' claims will succeed on their merits. In scattershot fashion, Plaintiffs attack the ordinance on no fewer than six grounds, contending it violates the First and Second Amendments to the U.S. Constitution, the California Constitution, and the City's own Charter. But these arguments collapse under scrutiny. Looking past the rhetoric and hyperbole, one is left with very little legal analysis and even Plaintiffs' authority often does not support their positions.

Finally, Plaintiffs' argument the Ordinance will cause "imminent irreparable harm" if effectuated essentially asks this Court to take Plaintiffs' word for it, with virtually no evidentiary support, aside from a handful of general news articles. This comes nowhere what Plaintiffs needed to submit to carry their heavy evidentiary burden.

The Ordinance is perfectly lawful. It is a legitimate exercise of the City's police power to craft regulations in its reasonable judgment, and to improve the health, safety, and security of all City residents, including gunowners. Plaintiffs' Motion should be denied.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    The Ordinance

Plaintiffs mischaracterize or misunderstand key aspects of the Ordinance, the purpose of which is to "reduce gun harm" "for the protection of the welfare, peace, and comfort of the

residents of the City of San Jose." *See* S<span>AN</span> J<span>OSE</span>, C<span>AL</span>. M<span>UNI</span>. C<span>ODE</span> § 10.32.200(A).[1] Based on extensive and well-supported empirical evidence regarding the significant extent and toll of firearm injuries and deaths in the United States, California, Santa Clara County, and the City itself, the Ordinance seeks to address "[i]njuries from unintentional shootings, which are generally insurable," as well as the enormous societal costs ($442 million per year) borne by the City and its residents from accidental shootings and other forms of gun violence. § 10.32.200(B). The Ordinance applies to all City residents who own a gun except peace officers, those with a state concealed weapon license, and—critically—those for whom compliance with the Ordinance would cause "financial hardship." § 10.32.255(A)-(C).

The Ordinance has three key requirements. First, gunowners must obtain liability insurance covering loss or damage resulting from the accidental use of their firearm no later than September 7, 2022, or 30 days after the Ordinance takes effect. § 10.32.210(A), (C). The insurance mandate is intended to reduce accidental shootings and other forms of gun violence, and ensure some degree of compensation when tragedy strikes. *See* § 10.32.220(C). In its reasonable judgment, the San Jose City Council ("Council") determined that requiring gunowners to obtain "[l]iability insurance can reduce the number of gun incidents by encouraging safer behavior and it can also provide coverage for losses and damages related to gun incidents." § 10.32.200(B)(12), (11) (noting the success of risk-based liability insurance mandates in the automobile context, which have helped reduce auto fatalities by 80% across the United States by financially incentivizing safety and good driving).

Second, gunowners must pay an annual Fee to make available voluntary services to gunowner residents, their household or family members, or those in an intimate relationship with them, based on the Council's reasonable judgment that providing gun-related "education and resources to [City] residents" and "[p]rograms and services to gun owners and their households can [] encourage safer behavior." § 10.32.200(B)(13). These programs and services will be provided by a nonprofit yet to be designated by the City Manager, and they will focus on the areas of suicide

---

[1] "§" refers to sections of the Ordinance, a copy of which is attached as Exhibit H to Plaintiffs' Request for Judicial Notice in support of their Motion. ECF 25-2.

prevention, reduction of violence and gender-based violence, addiction and substance abuse, mental health services related to gun violence, and firearms safety education or training. §§ 10.32.215, 10.32.220(A). While the City may not "specifically direct" how the nonprofit spends "monies from the [Fee]," the Ordinance is clear that "[n]o portion of the monies … shall be used for litigation, political advocacy, or lobbying activities." *Id*. at subdiv. (B), (C).

Third, the Ordinance requires gunowners to document their compliance by keeping near where their gun is stored or transported a City-issued form attesting that the gunowner has the required insurance and a receipt showing they have paid the Fee, and to produce these documents to a police officer upon lawful request. § 10.32.230(A), (B). Violations of the Ordinance are punishable by an administrative citation, subject to due process protections. § 10.32.240. Contrary to Plaintiffs' assertions that the Ordinance allows the City to "seize" firearms of gunowners who are caught violating the Ordinance (*see* Mot. at 4, 6, 22), the Ordinance only allows for the "impoundment" of firearms and only "to the extent allowed by law." § 10.32.245. There is currently no lawful basis for impoundment of firearms under state or federal law, meaning this provision will not take effect until, for example, the passage of state law permitting municipalities to impound firearms. The Ordinance also contains a severability clause. § 3.

### B. Procedural History

On June 29, 2021, the Council directed the City Attorney to return with a draft gun safety ordinance designed to mitigate gun harms for Council's consideration. Prevost Decl. ¶ 4, Ex. 1. On January 25, 2022, the Council heard a first reading of the draft ordinance, voted to publish the draft ordinance and to consider it at a later date, and directed that amendments be drafted. *Id*. ¶ 5, Ex. 2. That same day, Plaintiffs initiated this lawsuit seeking to invalidate the Ordinance, even though it was still in "draft" form and not yet adopted. ECF 1. Defendants moved to dismiss the Complaint for lack of jurisdiction but the matter would never be heard. ECF 17.

On February 8, 2022, the City enacted a version of the Ordinance into law, delegating various elements to the City Manager to promulgate before the Ordinance's effective date of August 7, 2022. § 2. These elements requiring future rulemaking include: 1) processes, procedures, and forms related to the implementation of the liability insurance requirement; 2) designation of the nonprofit

1   organization that will receive the Fee; 3) designation of any third-party agency or organization to

2   aid in noticing the Ordinance's requirements; and 4) the criteria for the Ordinance's "financial

3   hardship" exemption. § 10.32.235(A)(1)-(4).

4         On February 14, 2022, Plaintiffs filed their First Amended Complaint ("FAC"). ECF 19.

5   Three weeks later, Plaintiffs filed the instant Motion asking this Court to preliminarily enjoin the

6   Ordinance before it takes effect, for reasons identical to those raised in the FAC. ECF 25.

7   **III.   LEGAL STANDARD**

8         To obtain a preliminary injunction, a plaintiff must establish "that he is likely to succeed on

9   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

10   balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural*

11   *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("*Winter*"). An injunction is "an extraordinary remedy

12   that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22;

13   *see also Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (preliminary injunction is an

14   "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear

15   showing, carries the burden of persuasion").

16   **IV.   ARGUMENT**

17        **A.   Plaintiffs' Motion is Unripe and Not a Proper Facial Challenge.**

18         The Ordinance is not effective until August 7, 2022. § 2. Even before reaching the merits of

19   Plaintiffs' motion, when seeking a preliminary injunction, a plaintiff's claim must be "ripe" for

20   review. *Scholl v. Mnuchin*, 489 F.Supp.3d 1008, 1024-27 (N.D. Cal. 2020).[2] Courts do not have

21   jurisdiction to render advisory opinions regarding what the law may be, based on a "hypothetical

22   state of facts." *Vieux v. Easy Bay Reg'l Park Dist.*, 906 F.3d 1330, 1344 (9th Cir. 1990). "The central

23   concern of the ripeness inquiry is whether the case involves uncertain or contingent future events

24   that may not occur as anticipated, or indeed may not occur at all." *Chandler v. State Farm Mut. Auto.*

25   *Ins. Co.*, 598 F.3d 1115, 1122-23 (9th Cir. 2010). And an issue "may not be ripe for review if further

26   factual development would significantly advance [the court's] ability to deal with the legal issues

27   presented." *Nat'l Park Hosp. Assn. v. Dep't. of Interior*, 538 U.S. 803, 812 (2003).

28   

---

[2] Unless otherwise noted, internal citations, alterations, and quotations are generally omitted herein.

"The prudential considerations of ripeness are amplified when constitutional considerations are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) ("*Scott*"). Indeed, "[t]he Supreme Court has neatly instructed that the jurisdiction of federal courts to hear constitutional challenges should be exercised only when the underlying constitutional issues [are tendered] in clean-cut and concrete form." *Id.* (quoting *Rescue Army v. Mun. Ct. of Los Angeles*, 332 U.S. 549, 584 (1947)). In *Scott*, for example, the Ninth Circuit determined that an equal protection challenge to an admissions policy was not ripe because it lacked a "basis to infer" how the policy's criteria was to be implemented. 306 F.3d at 663. And "[w]ithout knowing the conditions under which the policy was to be implemented, no court can make a true determine as to whether the policy" passes constitutional muster. *Id.*

Here, for example, although Plaintiffs do not know how the not-yet-designated nonprofit will expend the funds generated by the Fee, they speculate it will do so in an unlawful way, including by violating the First Amendment to the U.S. Constitution. But speculation as to how a policy will be carried out or enforced does not create a claim over which a court may exercise jurisdiction. *See, e.g., U.S. v. Gila Valley Irr. Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994) (claims not ripe where plaintiff advances "mere speculation" as to what regulatory decision will be); *Sierra Club v. United States Army Corps of Eng'rs*, 990 F.Supp.2d 9, 31-32 (D.C. Cir. 2013) (grounds for preliminary injunction are not ripe where the complained-of conduct "has not yet occurred and is still in the process of being addressed").

In addition to not being ripe for review, Plaintiffs' facial challenge to the Ordinance should be rejected for other reasons. Similar to the foregoing, courts may not "resolve questions of constitutionality with respect to each potential situation that might develop" in litigation, especially when the moving party does not demonstrate that the law "would be unconstitutional in a large fraction of relevant cases." *Gonzales v. Carhart*, 550 U.S. 124, 167-68 (2007). Second, facial challenges "often rest on speculation." *Jackson v. City and County of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014) ("*Jackson*") (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). As such, "they raise the risk of premature interpretations of statutes on the basis of factually barebones records," and "threaten to short circuit the democratic process by

1    preventing laws embodying the will of the people from being implemented in a manner inconsistent

2    with the Constitution." *Wash. State Grange*, 552 U.S at 450-51. To be successful, a facial challenge

3    must show that "no set of circumstances exists under which the [law] would be valid, i.e., that the

4    law is unconstitutional in all of its applications," or at least that it lacks a "plainly legitimate sweep."

5    *Id.* at 449.

6         Plaintiffs proffer no evidence that the Fee would be unconstitutional in a "large fraction" of

7    cases, especially since the amount of the Fee has not even been determined yet. Because the

8    Ordinance furthers the City's legitimate efforts to reduce the harm caused by gun-related accidents

9    and imposes only de minimus or marginal burdens on the constitutional right to obtain a keep a

10   firearm in the home for self-defense, its sweep is legitimate. *Cf. Nordyke v. King*, 681 F.3d 1041,

11   1044 (9th Cir. 2012) (en banc), *cert. denied*, 133 S. Ct. 840 (2013) (rejecting facial challenge to

12   ordinance that regulated gun shows "only minimally and only on county property," without even

13   requiring empirical support justifying the regulation). Plaintiffs' premature Motion should be denied

14   for these reasons alone.

15        **B.**    **Plaintiffs Are Not Entitled to Injunctive Relief**

16        To obtain "the extraordinary and drastic remedy" of a preliminary injunction, Plaintiffs must

17   show they meet all four elements of the *Winter* preliminary injunction test. *Lopez*, 680 F.3d at 1072

18   ("[a] preliminary injunction is an extraordinary and drastic remedy"). Plaintiffs fall far short of

19   carrying their burden. Even if the Court were to find that Plaintiffs presented serious questions going

20   to the merits, the balance of hardships and public interest tip sharply in the City's favor.

21        **1.**    **Plaintiffs Fail to Show a Likelihood of Success on the Merits**

22        Plaintiffs challenge the Ordinance on six different grounds, arguing "[t]here is a strong

23   likelihood" they will prevail on the merits. Mot. at 9. As set forth below, however, this is premised

24   on either Plaintiffs' misunderstanding of the Ordinance, or their misapplication of the law.

25        **j.**    **Plaintiffs Are Not Likely to Succeed on their Second Amendment Claim**

26        Plaintiffs contend the Ordinance impermissibly burdens the Second Amendment rights of

27   City residents to whom the Ordinance applies. Mot. at 13-15. The Ninth Circuit adjudicates Second

28   Amendment challenges using a two-step test, which "(1) asks whether the challenged law burdens

conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). For purposes of opposing the Motion, Defendants concede that the Ordinance imposes some minimal or slight burden, and so proceed to the second step of the test. *See e.g.*, *Heller*, 554 U.S. at 625; *Jackson*, 746 F.3d at 959.

### i. The Appropriate Level of Scrutiny is Intermediate Scrutiny

To determine the appropriate level of scrutiny, Courts look to two factors. Courts first assess how close the law comes to the *core* of the Second Amendment right, which is the right to keep firearms in the home for purposes of self-defense. *Heller*, 554 U.S. at 629; *Jackson*, 746 F.3d at 963. Unless the challenged law both affects that core right and places a "substantial burden" on it, Courts generally apply intermediate scrutiny. *Chovan*, 735 F.3d. at 1138-39; *see also Heller v. District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir. 2011) ("*Heller II*") ("[A] regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify."). Here, intermediate scrutiny applies because the Ordinance does not "impos[e] restrictions on the use of handguns within the home" or otherwise imposes anything even close to a substantial burden on the core Second Amendment right of keeping firearms in the home for self-defense. *Jackson*, 746 F.3d at 963. It merely requires residents who own guns to obtain liability insurance for accidental gun injuries and to pay a reasonable fee to reduce well established harms that result from guns being lawfully kept and to provide a mechanism for compensation when accidental gun injuries occur.

The second factor of the scrutiny evaluation requires the Court to assess the "severity of the law's burden" on the Second Amendment right. *Jackson*, 746 F.3d at 963; *see also Young v. Hawaii*, 992 F.3d 765, 784 (9th Cir. 2021) ("A law that implicates the core of the Second Amendment right and severely burdens that right receives strict scrutiny; and in other cases in which Second Amendment rights are affected in some lesser way, we apply intermediate scrutiny.") Laws that regulate only the "manner in which persons may exercise their Second Amendment rights" are obviously less burdensome than those which ban firearm possession completely. *Jackson*, 746 F.3d

at 961 (citing *Chovan*, 735 F.3d at 1138). Similarly, "firearm regulations which leave open alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not. *Jackson,* 746 F.3d at 961; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (noting that laws placing "reasonable restrictions on the time, place, or manner of protected speech" and that "leave open alternative channels" for communication pose less burden to a First Amendment right and are reviewed under intermediate scrutiny). Here, the severity of the law's burden is minimal, as it neither regulates the use of firearms, how or where they are stored, or any other factors that directly affect residents' ability to keep and bear arms for self-defense. *Heller*, 554 U.S. at 629. Instead, it merely requires that they get insurance and pay a reasonable annual Fee. The Ordinance neither seeks to ban guns, nor does it threaten their seizure.

Plaintiffs vaguely contend that the City's "imposition of costs" and the mere "threat [of] impoundment" somehow mandate the application of strict scrutiny based on three cases, none of which support Plaintiffs' position or even apply strict scrutiny. Mot. at 10-12, 14; *see District of Columbia v. Heller* (2008) 554 U.S. 570, 629 (holding only that rational basis does not apply); *Chovan*, 735 F.3d at 1138 (applying intermediate scrutiny); *U.S. v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010) (applying intermediate scrutiny after rejecting plaintiff's argument to apply strict scrutiny as "too broad" because "[w]e do not apply strict scrutiny whenever a law impinges upon a right specifically enumerated in the Bill of Rights"). Plaintiffs' threadbare argument for strict scrutiny also ignores that the Ninth Circuit (in line with the other Circuits) has long applied intermediate scrutiny to uphold laws similar to the Ordinance at issue here. *See, e.g.*, *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) (upholding DOJ's use of gun sale fee for enforcement efforts targeting illegal firearm possession after point of sale under intermediate scrutiny); *Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015) ("*Heller III*") (upholding $48 in gun licensing fees under intermediate scrutiny); *Kwong v. Bloomberg*, 723 F.3d 160, 161, 167 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014) (upholding $340 gun licensing fee under intermediate scrutiny); *O'Connell v. Gross*, No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020) (upholding law requiring mandatory safety courses and $300 in fees under intermediate scrutiny). Plaintiffs'

1   argument is directly contrary to binding law. And Plaintiffs' hypothesis the City "could" increase

2   the Fee in the future does not support their attack on the Ordinance, now. Mot at 12.

3         In the Ninth Circuit, "if a challenged law does not implicate a core Second Amendment right,

4   or does not place a substantial burden on the Second Amendment right," the Court should apply

5   intermediate scrutiny. *Jackson*, 746 F.3d at 961; *accord Young v. Hawaii*, 992 F.3d 765, 784 Based

6   on this binding law, intermediate scrutiny is appropriately applied.

7                    **ii.  The Ordinance Easily Survives Intermediate Scrutiny**

8         To withstand intermediate scrutiny, the City need only show (1) that their stated objective is

9   significant, substantial, or important; and (2) a reasonable fit between the Ordinance and that

10  objective. *Chovan*, 735 F.3d at 1139.

11        First, the City's objective of promoting public safety and addressing gun injuries is an

12  "important" government interest, as the Plaintiffs concede. Mot, at 13, *Chovan*, 735 F.3d at 1139;

13  *see also Fyock*, 779 F.3d at 1000 (it is "self-evident" that government's interest in promoting public

14  safety and reducing violent crime are substantial and important government interests"); *Stimmel v.*

15  *Sessions*, 879 F.3d 198, 201 (6th Cir. 2018) (referring to "government's compelling interest of

16  preventing gun violence"); *Torcivia v. Suffolk Cty., New York*, 17 F.4th 342, 359 (2d Cir. 2021)

17  (finding a "substantial governmental interest in preventing suicide and domestic violence"). The

18  Ordinance's other stated purpose of reducing the social and financial costs caused by guns is also an

19  important interest. *See, e.g.*, *Bauer*, 858 F.3d at 1226; *Kwong*, 723 F.3d at 168 (city permitted to

20  recover costs as part of scheme "designed to promote public safety and prevent gun violence"). Thus,

21  the Ordinance clearly meets the first prong under intermediate scrutiny.

22        Second, there is a reasonable fit between the challenged regulation and the City's objective.

23  *See Chovan*, 735 F.3d at 1139. When assessing the reasonableness of fit under immediate scrutiny,

24  courts must give "substantial deference to the predictive judgments" of the legislature on public

25  policy questions that fall outside the courts' competence. *Turner Broad. Sys., Inc. v. FCC*, 520 U.S.

26  180, 195 (1997) ("*Turner II*"). This is because "the legislature is far better equipped than the

27  judiciary to make sensitive public policy judgments (within constitutional limits)" on complex

28  empirical questions like "the dangers in carrying firearms and the manner to combat those risks."

*Kachalsky v. County of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994) ("*Turner I*")). This Court's "sole obligation" is simply "to assure that, in formulating its judgments, [the legislature] has drawn reasonable inferences based on substantial evidence." *Turner II*, 520 U.S. at 181. That standard is easily met here.

Ignoring that the City's reasonable legislative judgments are entitled to deference, Plaintiffs argue the Ordinance does not sufficiently "fit" the Ordinance's stated aims of reducing gun injuries and reducing and offsetting some of the enormous social costs of gun injuries and violence in the City, for multiple reasons. *See* Mot. at 13, 14. Among other things, Plaintiffs criticize the Ordinance's reference to a November 2021 study by the Pacific Institute on Research and Evaluation (PIRE), a nonprofit organization headed by health economist Ted Miller, Ph.D. *See* Prevost Decl. ¶ 6, Ex. 3 (PIRE Report). Plaintiffs argue the City was wrong to rely on the PIRE study because it calculates costs of gun violence incurred by the City's police, fire, and courts—costs that the insurance mandate and Fee will not reimburse. Mot. at 14. But simply because "primary costs" of gun violence are associated with City response costs does not detract from the City's lawful goal (and authority) to prevent and reduce gun injuries and associated costs for the City and its residents in the first instance, with the goal of saving the City and its residents from ever incurring the related costs. That the Ordinance does not also seek to recover police or other response costs does not somehow invalidate it. And in any event, the PIRE study does include findings related to suicide and self-inflicted harm, which the Ordinance seeks to address. Prevost Decl. ¶ 6, Ex. 3.

Moreover, the PIRE study is but one of many other studies and findings the City relied on to form its reasonable judgment that an insurance mandate will deter, prevent, or reduce accidental gun harm. *See e.g.*, Prevost Decl., ¶ 7, Ex. 4 (The New England Journal of Medicine, "Handgun Ownership and Suicide in California"); *id.*, ¶ 8, Ex. 5 (The Educational Fund to Stop Gun Violence, "Unintentional Shootings"). The City also evaluated and reviewed materials concerning the civil liability and financial harm arising from gun violence. *See Id.*, ¶ 9, Ex. 6 (Hartford Courant, "Sandy Hook Families Settle Lawsuits Against Lanza Estate for $1.5M"); *Id.*, ¶ 10, Ex. 7 (Gilman & Bedigian, LLC, "Man who shot intruder in his home sued for wrongful death"). The Ordinance is also based on the City's reasonable judgment that requiring gun liability insurance might be effective

in reducing harm, since this has occurred over a long period of time in the context of automobile liability insurance, *Id.*, ¶ 11, Ex. 8 (an additional compendium of materials provided to San Jose City Council for review in advance of January 25, 2022 City Council meeting). *See* § 10.32.200(B)(8) (noting "risk-adjusted premiums used by the automobile insurance industry reduced per-mail auto fatalities by 80% over the past five decades and saved 3.5 million lives").

This multitude of studies support the City's view that the Ordinance's insurance mandate, annual Fee requirement, and related education programming and services will positively improve public health, safety, and well-being. Indeed, unintentional harm caused by firearms is a serious problem, and precisely the kind of harm a city must be allowed "a reasonable opportunity to experiment with solutions to admittedly serious problems." *Jackson*, 746 F.3d at 966 (citing *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 52 (1986)). The Ordinance findings and legislative record more than sufficiently support the reasonableness of the fit between City's important interests in reducing gun violence and the Ordinance's programs and requirements. *See City of Renton*, 475 U.S. at 51-52; *Jackson*, 746 F.3d at 969. Additionally, Plaintiffs are well-aware that the Mayor has publicly proposed a mere $25 fee (in a Memo provided for Council's review) (Prevost Decl. ¶ 12, Ex. 9), which is reflected in articles appended to Plaintiffs' Motion. Yet Plaintiffs never explain— or cite any authority supporting—why a $25 fee would impose so great a burden as to be unconstitutional. Nor do Plaintiffs ever address the Ordinance's "financial hardship" exemption, which seeks to further alleviate any burden on anyone for whom a $25 would be cost-prohibitive. § 10.32.225(C).

Ultimately, Plaintiffs' perspective of the requisite "fit" between the Ordinance and the City's important interest is far too limited, ignores key evidence and key provisions of the Ordinance, and ignores the deference due to a municipality's reasonable legislative judgments. *See City of Renton*, 475 U.S. at 51–52 (municipality may rely on any evidence "reasonably believed to be relevant" to substantiate its important interest in regulating speech); *Jackson*, 746 F.3d at 969 (finding San Francisco's evidence more than "fairly supports" its conclusion that hollow point bullets are lethal).

Tellingly, Plaintiffs' Second Amendment argument cites Second Amendment case law for general propositions only, eschewing any analogizing between the laws at issue in those cases and

the one at issue here. And for good reason, since they point no case where a court struck down a law even remotely similar to the one at issue. For example, Plaintiffs' cited cases in which gun laws were struck down as unconstitutional are of little help to Plaintiffs, because they concerned "handgun bans" that burdened Second Amendment rights in a far different and more severe way than the Ordinance here. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 792 (2010) (striking down Chicago ordinance "effectively banning handgun possession by almost all private citizens," including in the home for self-defense); *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) (striking down District of Columbia's "ban on handgun possession in the home" and rules requiring other firearms be stored in a way that made them useless "for the purpose of immediate self-defense"). Plaintiffs cite other Second Amendment cases for general propositions of law, but they are similarly inapposite. *See, e.g.*, *Nordyke v. King*, 681 F.3d 1041, 1044-45 (9th Cir. 2012) (en banc) (upholding constitutionality of ordinance regulating display of guns at gun shows "no matter what form of scrutiny applies"); *United States v. Masciandaro*, 638 F.3d 458, 459-60 (4th Cir. 2011) (upholding constitutionality of federal law prohibiting carrying or possessing a loaded handgun in a motor vehicle in a national park area).

Of all the Second Amendment decisions Plaintiffs cite, only two are factually analogous, and both resulted in the constitutionality of the gun laws at issue being upheld for reasons that are equally applicable here. *See Bauer*, 858 F.3d 1216 (upholding California law requiring payment of $19 fee on every firearm sale conducted in the state because of the "minimal nature of the burden" and plaintiff's failure to show the fee "has any impact on [his] actual ability to obtain and possess a firearm"); *Kwong*, 723 F.3d at 161, 167 (upholding mandatory $340 three-year gun license fee because it imposed merely a "marginal, incremental, or [] appreciable [but not substantial] restraint" on Second Amendment rights, "especially considering that plaintiffs [] put forth no evidence … that the fee is prohibitively expensive"). Like the plaintiffs in *Bauer* and *Kwong*, Plaintiffs here proffer no evidence on the cost of the liability insurance or annual fee requirements, much less that the cost would be prohibitively expensive—or, even if it were prohibitively expensive for some number of San Jose residents on an as-applied basis, that the Ordinance's "financial hardship" exception under Section 10.32.225(C) fails to fully address this concern. *See* Mot. at 12:20 (only one vague, passing

1  reference to the Ordinance's "economic hardship" exception in the entire Motion); *see also*

2  *O'Connell v. Gross*, 2020 WL 1821832, at *8-9 (D. Mass. Apr. 10, 2020) (upholding

3  constitutionality of law requiring mandatory gun safety and training courses and licensing fees

4  totaling $300, in part, because law "enhance[d] public safety by ensuring that gun owners do not

5  endanger themselves or others with unsafe practices").

6         In the absence of any Second Amendment jurisprudence helpful to their cause, Plaintiffs rely

7  on three decades-old First Amendment fee cases (Mot. at 10, 14), all of which are readily

8  distinguishable. *See Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.*, 460 U.S. 575,

9  591-92 (1983) (newspaper ink and paper tax held unconstitutional not just because it singles out the

10  press, but because it was "tailor[ed]" so that "a small group" of newspapers were required to pay

11  enormous taxes, whereas all other newspapers paid no or only nominal tax); *Murdock v.*

12  *Pennsylvania*, 319 U.S. 105, 113-14 (1943) (striking down licensing fee that was "not a nominal fee

13  imposed as a regulatory measure to defray the expenses of policing the activities in question"); *Cox*

14  *v. New Hampshire*, 312 U.S. 569, 577 (1941) (holding that fee imposed on exercise of a

15  constitutional right must address either "the expense incident to the administration of the act" or "the

16  maintenance of public order in the matter licensed," and not be a general "revenue tax"). Indeed, in

17  *Bauer*, the Ninth Circuit rejected the same argument Plaintiffs make here. *See Bauer*, 858 F.3d at

18  1225 (upholding constitutionality of California law imposing $19 fee on all gun sales under *Murdock*

19  and *Cox*, which establish "that a state may ... impose a permit fee that is reasonably related to

20  legitimate content-neutral considerations . . . as long as the ordinance or other underlying law is itself

21  constitutional"). Here, as in *Bauer*, the Ordinance is constitutional under *Murdock* and *Cox* because

22  the Ordinance's liability insurance and annual Fee requirements are carefully tailored to ensure they

23  are not a general revenue tax, directly further the maintenance of public order in the matter regulated,

24  and are even subject to a "financial hardship" exception. § 10.32.225(C).

25         Plaintiffs' final, last-ditch argument is that the Court should disregard binding Ninth Circuit

26  law and instead side with an approach suggested by an out-of-circuit dissenting opinion—i.e.,

27  abandon the heightened scrutiny framework altogether, and instead strike down the Ordinance

28  simply because it burdens the Second Amendment *at all*. *See* Mot. at 15 (citing *Heller v. District of*

1   *Columbia*, 670 F.3d 1244, 1273 (D.C. Cir. 2011 (Kavanaugh, J., dissenting). This argument is

2   directly contrary to binding Ninth Circuit precedent. *See Jackson*, 746 F.3d at 969. Even if the

3   Ordinance could have been less restrictive (though Plaintiffs do not posit how), "intermediate

4   scrutiny does not require the least restrictive means of furthering a given end." *Id*.

5       In sum, intermediate scrutiny applies, and the Ordinance clearly survives. Plaintiffs will not

6   prevail on the merits of their Second Amendment claim.

7           **k.  Plaintiffs are not Likely to Succeed on the Merits of their First
            Amendment Asserting Compelled Speech or Association**

8

9       Plaintiffs' First Amendment argument for a preliminary injunction is based on Plaintiffs'

10  speculation as to how a yet-to-be-designated, unknown nonprofit with unknown leadership is likely

11  hold anti-gun views and be hostile to the Second Amendment, likely to force gunowners to undergo

12  "reeducation" (though Plaintiffs concede use of the nonprofit's services under the Ordinance is

13  entirely voluntary), and likely to expend monies from the annual Fee in some objectionable way.

14  Mot. at 15-18. This is not a serious argument. Nevertheless, Plaintiffs argue the Ordinance violates

15  the First Amendment in two ways: by forcing City's resident gunowners (1) to "subsidiz[e] speech"

16  with which some unspecified percentage of them will not agree, and (2) to associate with the

17  nonprofit against their will. Mot. at 15-17. Both arguments fail. *See Winter*, 555 U.S. at 22

18  (preliminary injunctions "may only be awarded upon a *clear* showing that the plaintiff is entitled to

19  such relief" through "substantial proof").

20      First, Plaintiffs' small handful of three authorities, imported from very different contexts, do

21  not support their First Amendment claim that the Ordinance's Fee requirement is compelled speech

22  in violation of the First Amendment. *See* Mot. at 16. First, *Janus* concerns whether non-union public

23  employees can be compelled to pay union dues to fund the unions' political lobbying, advertising,

24  litigation, and social and recreational activities, and other activities. *Janus v. AFSCME, Council 31*,

25  138 S. Ct. 2448, 2459-61, 2480 (2018). *Janus*'s holding and reasoning are deeply rooted in the union

26  context. *See, e.g.*, *id.* at 2486 ("State and public sector unions may [not] extract agency fees from

27  nonconsenting employees . . . [u]less employees clearly and affirmatively consent[.]"). Second,

28  another decision from the same line of union cases, *Knox*, concerns whether public-sector unions

can collect fees from objecting employees "for a broad range of political expenses, including television and radio advertising, direct mail, voter education, and get out the vote activites." *See Knox v. SEIU*, 567 U.S. 298 (2012). Third, Plaintiffs cite a case against the State Bar concerning the use of compulsory bar membership dues to engage in specific political activities. *See Keller v. State Bar of California*, 496 U.S. 1 (1990).

Tellingly, in discussing these authorities, Plaintiffs never explain why language and reasoning from those cases should be extracted from their highly specific public union and State Bar contexts and applied to an entirely different scenario, where a legislature seeks funds for reasonable measures to carry out its police powers to protect public health, safety, and welfare for its residents. Nor do Plaintiffs cite any cases in which a court has applied these cases in that context, much less relied on them (as Plaintiffs do) to strike down a gun regulation under the First Amendment. Plaintiffs' argument should be rejected for these reasons alone.

The argument also fails for the independent reason that the activity at issue in those cases found to be unconstitutional—i.e., the expenditure of money to advance political viewpoints with which the plaintiffs disagreed—is **expressly prohibited** by the Ordinance here. § 10.32.220(B) (providing that no portion of the Fee may be used "for litigation, political activity, or lobbying activities"). This fact should exempt these cases from the Court's analysis. *See Janus*, 138 S.Ct at 2461 (nonmember dues used for lobbying and litigation); *Knox*, 567 U.S. at 304 (fees used for expressly political activity in support of ballot propositions); *Keller*, 496 U.S. at 15 (compulsory State Bar dues to "lobby[] for or against state legislation," oppose federal legislation, and endorse political measures). The core concern of the First Amendment compelled speech doctrine—i.e., prohibiting compelled speech and association in matters of political lobbying, advocacy, or litigation—simply does not exist here. *See also Keller*, 496 U.S. at 12-13 (1990) ("If every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the role of government as we know it radically transformed.").

Moreover, Plaintiffs' claim rests entirely on speculation and is unsupported by evidence. *See, e.g.*, Mot. at 15 (asserting Fee will be used for "the speech of other with whom [Plaintiffs] may

1   disagree"); *id.* at 7 (complaining Ordinance contains "scant information" about the designated

2   nonprofit). Plaintiffs opine that the nonprofit (despite not yet being designated) will "inevitably hold

3   the City's anti-gun biases" and be "hostile to gun ownership." Mot. at 5, 8, 17. As a preliminary

4   matter, the City disputes holding an "anti-gun bias," despite this criticism. But plainly, what

5   Plaintiffs' fear might happen in the future does not supply the "substantial proof" required to obtain a

6   preliminary injunction. *See Winter*, 555 U.S. at 22; *Mazurek*, 520 U.S. at 972. Additionally, even

7   Plaintiffs' own evidence undermines their speculative predictions. *See e.g.*, Pls.' RJN, Ex. C at 4

8   (San Jose Mayor Liccardo stating that "[w]e've invited . . .gun owners, to help identify how we

9   allocate the money from these fees in ways that will reduce gun violence"); Ex. D at 4 (stating that

10  National Rifle Association San Jose Chapter President Dave Truslow" "stepped up to advise or

11  participate in the creation of [the] nonprofit organization."); Ex. J at 3 ("We've invited and at least

12  one member of a gun group has actually joined this effort to create this nonprofit, because we want

13  organizations representing gun owners to be at the table, helping us to understand, how do we best

14  communicate, how do we best invest?").

15      Ultimately, Plaintiffs have not met their burden of showing how the Ordinance will compel

16  speech with which they do not agree. Plaintiffs' characterization of Mayor Liccardo's offhand

17  "yeah" when a reporter asked "So it's almost like joining a club" is taken out of context and clearly

18  insufficient to give rise to a Constitutional First Amendment claim. Mot. at 17; Pls.' RJN, Ex. J at

19  3; *see also id.* at 1 (published version of interview with Liccardo stating it was "condensed and edited

20  for clarity"). Plaintiffs' arguments based on "forced membership" is meritless.

21      In short, Plaintiffs' evidence comes nowhere near showing they are likely to succeed on the

22  merits on their First Amendment claim—especially in view of federalism concern that federal courts

23  should not invalidate state laws on the grounds that they violate the right of association based only

24  on "factual assumptions" and "[i]n the absence of evidence." *Wash. State Grange*, 552 U.S. at 457;

25  *accord Cal. Democratic Party v. Jones*, 530 U.S. 567, 600 (2000) (Stevens, J., dissenting) ("[A]n

26  empirically debatable assumption … is too thin a reed to support a credible First Amendment

27  distinction" with respect to burdens on association). And even if Plaintiffs had somehow produced

28  evidence regarding their speculative fears, their First Amendment claims are not ripe because the

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION;**
**CASE NO. 5:22-CV-00501-BLF**                                              16

1   nonprofit does not yet exist and the City Manager has not promulgated necessary regulations

2   regarding the Fee. *See Vieux*, 906 F.3d at 1344; *Chandler*, 598 F.3d at 1122-23; *Scholl v. Mnuchin*,

3   489 F.Supp.3d 1008, 1024-27 (N.D. Cal. 2020).

4       In sum, Plaintiffs' First Amendment claims are unlikely to succeed on the merits.

5       **c. The Ordinance is Not Preempted Under State Law**

6       Plaintiffs argue that the Ordinance is preempted by state law under Article XI, Section 7 of

7   the California Constitution. Mot. at 18. Under the provision of the California Constitution, a local

8   ordinance that is "in conflict with the general laws" is preempted and void, but a "city may make

9   and enforce … all local, … sanitary, and other ordinances … not in conflict with general laws" under

10  its police power. Cal. Const., Art. XI, § 7. "As a general rule, ordinances will be upheld against

11  constitutional challenge if they are reasonably related to promoting the health, safety, comfort and

12  welfare of the public, and if the means adopted to accomplish that promotion are reasonably

13  appropriate to the purpose.*" Sunset Amusement Co. v. Bd. of Police Comm'rs*, 7 Cal.3d 64, 72

14  (1972).

15      Additionally, under Article XI, Section 5(a) of the California Constitution, charter cities (like

16  San Jose) have the right to adopt and enforce ordinances that conflict with general state laws,

17  provided the subject of the ordinance is a "municipal affair" rather than one of "statewide concern."

18  As to matters of "statewide concern," charter cities remain subject to and controlled by applicable

19  general state laws "regardless of the provisions of their charters, if it is the intent and purpose of

20  such general laws to occupy the field to the exclusion of municipal regulation." *Bishop v. City of*

21  *San Jose*, 1 Cal.3d 56, 60-61 (1969). A law is preempted if it "duplicates, contradicts, or enters an

22  area fully occupied by general law, either expressly or by legislative implication." *Sherwin-Williams*

23  *Co. v. City of Los Angeles*, 4 Cal.4th 893, 897-98 (1993).

24      Here, Plaintiffs do not argue that the Ordinance duplicates or contradicts state law. Instead,

25  they argue that "insofar as [the Ordinance] intends to impose gun storage and safety requirements,

26  [it] plainly encroaches upon a field already occupied by state law, and thus violates Article XI,

27  section 7." Mot. at 18-19. Plaintiffs misstate the test for preemption. They also ignore that gun

28  regulation as a whole has not been fully occupied by general law. *Great Western Shows, Inc. v.*

1    *County of Los Angeles*, 27 Cal.4th 853, 861 (Cal. 2002). Instead, the State Legislature has expressly

2    preempted only discrete areas of gun regulation, such as permitting, licensing, and registration of

3    firearms. *See* Cal. Pen. Code § 25605 (permitting and licensing); Cal. Gov. Code § 53071

4    (registration and licensing). The State has neither expressly nor impliedly preempted the entire field

5    of gun regulation, or the discrete areas regulated by the Ordinance here (e.g., firearm liability

6    insurance, the provision of voluntary programming and services to gunowner households to improve

7    public health and safety). This impedes Plaintiffs' preemption argument.

8            Additionally, a local ordinance can only duplicate or contradict state law if it addresses the

9    exact same subject matter of the state law. In *Great Western Shows*, for example, the California

10   Supreme Court explained that, in a prior case, it had "distinguished between licensing, which

11   signifies permission or authorization, and registration, which entails recording 'formally and

12   exactly' and therefore declined to find express conflict between the statute and the ordinance." 27

13   Cal.4th at 860-61 (2002) (citing *Galvan v. Superior Court*, 70 Cal.2d 851 (1969)). Here, the

14   Ordinance has nothing to do with licensing. It does neither prevents nor expressly authorizes City

15   residents to obtain gun licenses, prevents a law enforcement official from issuing a license, or creates

16   new or different requirements for obtaining a license. Indeed, it expressly exempts from its

17   requirements any gunowner with a concealed weapon license under State law, indicating the City's

18   intent not to encroach into State territory. § 10.32.225(B). Permitting, licensing, and registration

19   concern completely different subjects than the insurance mandate contained within the Ordinance.

20   *See Great Western Shows*, 27 Cal.4th at 860-61; *Galvan*, 70 Cal.2d 85.

21           Plaintiffs' other claim, that the Ordinance is preempted because "the Legislature intended to

22   occupy the field of residential handgun possession to the exclusion of local government entities" is

23   similarly unavailing. Mot. at 18 (quoting *Fiscal v. City and County of San Francisco*, 158

24   Cal.App.4th 895, 909 (2008). *Fiscal*'s reach is not broad as Plaintiffs contend. *Fiscal* itself

25   recognized that the Legislature "has not impliedly preempted *all areas* of gun regulation." *Fiscal*,

26   158 Cal.App.4th at 908 (emphasis in original). But the ordinance at issue in *Fiscal* was a total ban

27   on handgun possession, which necessarily conflicted with state regulations, and thus was held

28

preempted. *Id.* at 915, 919 ("The City … has enacted a total ban on an activity state law allows … justify[ing] greater scrutiny.").

By contrast, the Ordinance here is not a total handgun ban, or anything like it. Nor does it conflict with state permit, licensing, or registration requirements. *Cf.* Cal. Penal Code § 25605; Cal. Gov. Code § 53071. Numerous California state courts have upheld gun regulations, rejecting preemption arguments identical to those Plaintiffs advance *See e.g.*, *Calguns Foundation*, *Inc. v. County of San Mateo*, 218 Cal.App.4th 661 (2013) (upholding county ban on gun possession in County parks); *Cal. Rifle & Pistol Assn. v. City of West Hollywood*, 66 Cal.App.4th 1302 (1998) (ordinance banning sale of "Saturday Night Special" handgun); *Olsen v McGillicuddy*, 15 Cal. App. 3d 897 (1971) (upholding ordinance prohibiting gun possession in cars); *Great Western Shows*, 27 Cal. 4th 853, 863 (2002) (upholding regulation of gun sales on municipal land). Plaintiffs' state preemption argument is without merit and should be rejected.

### d.  Plaintiffs are Unlikely to Succeed in Proving the Ordinance is an Unlawful Tax

Plaintiffs argue that the insurance mandate and Fee requirement are taxes that may not be imposed without voter approval under California Constitution Article XIII C, as amended by Proposition 26. Mot. at 19. A tax is defined to include any levy, charge, or exaction of any kind imposed by a local government. Cal. Const., Art. XIII C, § 1 ("Proposition 26"). Proposition 26 sets forth seven exemptions to this rule. *Id.* However, neither the insurance mandate nor the Fee constitute a tax because (aside from modest administrative costs) none of the proceeds from those requirements will pass into government hands. *See Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (2013).

In *Schmeer*, Los Angeles County enacted an ordinance that prohibited retail stores in unincorporated areas of the county from providing disposable plastic carryout bags to customers. 213 Cal.App.4th at 1314. The stores could provide recyclable paper carryout bags but were required to charge customers ten cents per bag. *Id*. Critically, the proceeds of the paper bag sales were retained by the store—not the County—to be used for prescribed purposes, including to cover the actual costs of the paper bags. *Id*. The *Schmeer* plaintiffs sued on the same theory advanced by Plaintiffs here: that the bag charge is a tax as defined by Proposition 26. The court ruled that because the proceeds

of the bag charge are retained by the retail store and not remitted to the county, the voter approval requirements of Article XIII C, § 2 [were] therefore inapplicable." *Id*. at 1326, 1329. Applied here, *Schmeer* makes clear that Plaintiffs' failure to explain how money that never passes to the City could constitute a tax is fatal to their Proposition 26 claim. Under the Ordinance, all monies from payment of the annual Fee will go directly to the nonprofit organization, insurance premiums will be paid to insurance carriers, and insurance claims will be paid out to victims of accidental gun injuries. *See* §§ 10.32.215, 10.32.220. The City will receive none of the monies at issue.

   *Schmeer* also defeats the Plaintiffs' argument that the City must prove that the amount of the fees is no more than necessary to cover the reasonable costs of the governmental activity and that the manner in which those costs are allocated to a payor bear a reasonable relationship to the payor's burdens on, or benefits from, the governmental activity. Mot. at 19. But even if it did not, this argument would fail for the separate and independent reason that Fee money collected from gunowners would be fairly categorized under the exception from Proposition 26 for fees "imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged." Cal. Const., Art. XIII C, § 1 ("specific benefit exemption"); *see also S. Cal. Edison Co. v. Pub. Util. Comm'n*, 227 Cal.App.4th 172, 200 (2014) (finding a public utility fee was "designed to benefit … ratepayers and "[t]he possibility that some EPIC research may incidentally provide a social benefit to the public at large does not transform EPIC into a tax where a discrete group, namely the utility corporations' ratepayers, is specifically benefitted."). Finally, Plaintiffs' arguments are unripe and premature because the amount of the Fee has not yet been determined.

   In sum, neither the insurance mandate nor the Fee is a tax under Proposition 26, and Plaintiffs fail to show they are likely to succeed on the merits of this claim.

### e.   The Ordinance Does Not Violate the San Jose City Charter

   Plaintiffs argue that the Ordinance violates the San Jose City Charter "by prohibiting the San Jose City Council from using its budgetary and appropriating powers to direct how" the designated nonprofit expends the Fee, and by "diverting a City fee to a nonprofit rather than the City's General Fund or a special fund." Mot. at 20-21. Both arguments fail.

**OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION;
CASE NO. 5:22-CV-00501-BLF**

When interpreting a California statute, Federal courts apply California rules of statutory construction. *Lares v. West Bank One* (*In re Lares*) 188 F.3d 1166, 1168 (9th Cir. 1999). The same rules of construction apply to local ordinances and city charters. *See 1300 N. Curson Investors, LLC v. Drumea*, 225 Cal.App.4th 325, 332 (2014); *Laurent v. City and County of San Francisco*, 99 Cal.App.2d 707, 708 (1950). The language of the Charter and the Ordinance must be read in the context of the respective statutes as a whole. *See Isaakhani v. Shadow Glen Homeowners Assn., Inc.*, 63 Cal.App.5th 917, 931-932 (2021); *City of San Jose v. Lynch*, 4 Cal.2d 760, 766 (1935). And when interpreting a statute, the court must "avoid a construction that would lead to impractical or unworkable results." *Los Angeles Unified Sch. Dist. v. Garcia*, 58 Cal.4th 175, 194 (2013). But read in context, the isolated the provisions of the Ordinance and the San Jose City Charter upon which Plaintiffs rely do not support their conclusion.

### f.  The Charter Does Not Require Placing the Fee into the General Fund

Plaintiffs ignore the first sentence of San Jose City Charter section 1211, which states that "[a]ll monies paid into the San Jose City Treasury shall be credited to and kept in separate funds in accordance with provisions of this Charter or ordinance." *Id.* When read together with the sentences that follow, it is clear the General Fund applies to "monies paid into the City Treasury." *Id.* But the Ordinance requires that the Fee be paid to the designated nonprofit, not "paid into the City Treasury." § 10.32.215.

### ii. The Fee Is Not Subject to the Charter's Budgetary Procedures

The premise of Plaintiffs' argument, that the Ordinance "violates the [Charter's] reservation of budgeting and appropriation power to the City Council," is incorrect. Sections 1204, 1206, and 1207 of the Charter do not apply to the Fee. All three sections concern the City's budgetary process, which expressly applies to "City departments, offices, and agencies" – not the designated nonprofit or the Fee it receives. San Jose City Charter §§ 1204, 1206, 1207. The nonprofit is not a City department, office, or agency. Indeed, "[n]o City official or employee shall sit on the board of directors of the Designated Nonprofit Organization" (§ 10.32.305(B)), and the City "shall not specifically direct how the monies from the [Fee] are expended" (§ 10.32.220(C)).

The Ordinance does not provide for or contemplate using the Fee for the operation of City departments. § 10.32.220(C). Rather, the Ordinance requires the designated nonprofit to "spend every dollar generated from the [Fee]" on programs and initiatives within a particular category – none of which include the operation of offices, departments, or agencies of the City. *Id.*; *c.f.* San Jose City Charter § 1207. Therefore, the Fee is not subject to the City's budgetary process and Plaintiffs' argument fails on its premise.

### iii.   The City Council Properly Delegated Regulatory Authority to the City Manager

The City Manager is the Chief Administrative Officer and head of the administrative branch of San Jose's council-manager government. San Jose City Charter §§ 300, 700. The City Manager is thus "responsible for the faithful execution of all laws, provisions of [the] Charter, and acts of the Council which are subject to enforcement by the City Manager or by officers who are under the City Manager's direction and supervision." *Id.* § 701(d).

The Council may lawfully delegate administrative or ministerial functions to the City Manager. *Sacramento Chamber of Commerce v. Stephens*, 212 Cal. 607, 610 (1931). It is sufficient that the Council "declare a policy, fix a primary standard, and authorize executive or administrative officers to prescribe subsidiary rules and regulations that implement the policy and standard and to determine the application of the policy or standard to the facts of particular cases." *Birkenfeld v. City of Berkeley*, 17 Cal.3d 129, 167 (Cal. 1976) (citation omitted). That is precisely the case here.

The Ordinance directs the City Manager to "implement the requirements and fulfill the policies of [the Ordinance] relating to the reduction of gun harm," including by designating the nonprofit receiving the Fee and setting forth "processes and procedures relating to the payment of the fee, and **any additional guidelines or auditing of the use of the monies from the fee**." 10.32.235.A, *et seq*. The nonprofit clearly has more than a "vague direction" from the City, Mot. at 20. Simply because the City "shall not specifically direct how" the designated nonprofit will expend the fee does not "violate the Charter's delegation of executive functions to the administrative branch of the City Government." Mot. at 20. San Jose maintains authority over how the designated nonprofit expends the fee through the administrative oversight of the City Manager. But "[n]either Council

nor any of its members nor the Mayor shall interfere with the execution by the City Manager of [their] powers and duties." San Jose City Charter § 411. Therefore, authority over expenditure of the Fee is properly vested and Plaintiffs claim the City is violating its own charter are false.

### 2.    Plaintiffs Have Not Established That They Will Suffer Irreparable Harm

Plaintiffs fail to establish that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20 (clarifying that plaintiffs must show something more than just a possibility). A party seeking injunctive relief must provide evidence of likely irreparable harm and cannot rely on "unsupported conclusory statements regarding harm [they] might suffer." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013). As set forth above, Plaintiffs' evidence does not support, and even contradicts, their conclusions.

Putting aside the fact the Ordinance is not even effective yet, Plaintiffs fail to substantiate any harm, other than risk to the "fundamental rights secured by the First, Second, and Fourteenth Amendment[s]" and to say that "[i]rreparable harm is presumed." Mot. at 22.

Citing a district court case that pre-dates *Winter*, Plaintiffs argue that "the requirement that a party who is seeking a preliminary injunction show 'irreparable injury' is deemed fully satisfied if the party shows that, without the injunction, First Amendment freedoms would be lost, even for a short period." Mot. at 21 (citing *College Republicans at San Francisco State Univ. v. Reed*, 523 F.Supp.2d 1005, 1011). Post-*Winter* cases from the Ninth Circuit contradict *Reed*. "While a First Amendment claim 'certainly raises the specter' of irreparable harm and public interest considerations, proving the likelihood of such a claim is not enough to satisfy *Winter*." *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).

Here, Plaintiffs fail this test for all the same reasons their claim fails on the merits. Plaintiffs will not suffer harm if the Ordinance is enacted, because the Ordinance does not impose an unlawful burden on their Constitutional rights. Plaintiffs certainly cannot show that they will suffer any imminent and certain injury sufficient to grant them "extraordinary relief" by way of this motion. *Winter*, 555 U.S. at 22.

1
2
3
4
5
6
7

For each of reasons set forth herein, the Ordinance is lawful, and does not threaten Plaintiffs' constitutional rights. While Plaintiffs offhandedly claim the Fourteenth Amendment is also implicated here, the Supreme Court has emphasized that "incorporation [of the Second Amendment into the Due Process Clause of the Fourteenth Amendment] does not imperil every law regulating firearms," and agreed that "reasonable firearms regulation will continue under the Second Amendment." *McDonald*, 561 U.S. at 785-86. Devoid of any analysis, Plaintiffs' claim on this point fails.

8
9
10
11
12

Without proffering any evidence that Plaintiffs or anyone is harmed by the not-yet-effective Ordinance, at most Plaintiffs advance an abstract "possibility of irreparable injuries." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As the Supreme Court has emphasized, the "possibility standard is too lenient" a basis upon which to issue the drastic remedy of a preliminary injunction. *Winter*, 555 U.S. at 22. The mere theoretical possibility of future harm does not suffice.

13

### 3.    The Balance of Equities and Public Interest Favor Defendants

14
15
16
17
18
19

"Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Santa Cruz Lesbian and Gay Cmty. Ctr. v. Trump*, 508 F.Supp.3d 521, 546 (N.D. Cal. 2020) (citing *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020)); *Nken v. Holder*, 556 U.S. 418, 435 (2009). "The plaintiffs bear the initial burden of showing that the injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). Plaintiffs have not carried their burden.

20
21
22
23
24
25
26
27

Plaintiffs argue that "tens of thousands of San Jose citizens will risk seizure of their guns and the payment of fines" and "Plaintiffs' core constitutional rights . . . will remain in jeopardy." Mot. at 22-23. This is a gross mischaracterization of the Ordinance's terms, which do not provide for seizure or impoundment to the extent not recognized now or in the future under state law. *See* Ordinance §§ 10.32.240; 10.32.245.  On balance, the City's substantial interest in mitigating harm inflicted by gun violence and shift the financial burden of gun education and victim services to gun owners instead of all taxpayers, outweighs the premature interests raised by Plaintiffs. § 10.32.220. Plaintiffs have not, and cannot, show a significant adverse impact on their fundamental rights.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

**OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION;
CASE NO. 5:22-CV-00501-BLF**                                                24

### C.    The Court Should Deny Plaintiffs Request for Judicial Notice and Should Not Dispense with the Bond Requirement

Plaintiffs' Request for Judicial Notice ("RJN") requests the Court to accept facts that are "subject to reasonable dispute," and cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Further, Plaintiffs seek to have the Court take judicial notice of the truth of facts or statements within these documents. "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert denied sub. nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

Plaintiffs inappropriately seek judicial notice of Exhibits C (January 19, 2022 *Los Angeles Times* article), F (January 25, 2022 *San Francisco Chronicle* article), and G (January 25, 2022 *Los Angeles Times* article) Plaintiffs do not seek to introduce the exhibits to establish their mere existence but rather as an improper "vehicle for legal argument." *Garcia v. California Supreme Court*, 2014 WL 309000, at *1 (N.D. Cal. Jan. 21, 2014). Because the Court should not weigh or interpret information within judicially noticed documents in Plaintiffs' favor or for their truth, the Court should not take judicial notice of these exhibits. *See Khoja*, 899 F.3d at 999.

Plaintiffs also seek to dispose of the bond requirement pursuant to Rule 65(c) of the Federal Rules of Civil Procedure. Mot at 23. This requirement, among other purposes, seeks to discourage the moving party from seeking preliminary injunctive relief to which it is not entitled. *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1037 (9th Cir. 1994). The Court has discretion as to the requirement of the bond, and the amount of security required. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th. Cir. 2011). The City asks that the Court use its discretion to require Plaintiffs to post a reasonable bond.

## V.    CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court deny Plaintiffs' Motion. In the alternative, in light of the severability clause present in the Ordinance, the City respectfully asks that the Court preliminarily enjoin only such portions of the Ordinance deemed unlawful. § 3.

1   Dated: March 22, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

2

3                                           By: */s/ Tamarah P. Prevost*
                                               JOSEPH W. COTCHETT
4                                              TAMARAH P. PREVOST
                                               MELISSA MONTENEGRO
5                                              ANDREW F. KIRTLEY

6                                              *Attorneys for Defendants*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP