HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

DAVID A. WARRINGTON*
dwarrington@dhillonlaw.com
CURTIS M. SCHUBE
cschube@dhillonlaw.com
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, VA 22314
Telephone: (571) 400-2121

*Admission *Pro Hac Vice* forthcoming
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,** a nonprofit corporation, and **MARK SIKES,** an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE, a public entity, JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL,**<br><br>Defendants. | Case Number: 5:22-cv-00501-BLF<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: July 21, 2022<br>Hearing Time: 9:00 a.m.<br>Location: Courtroom 3, 5th Floor<br>Robert F. Peckham Federal Building<br>280 South First Street, San Jose, CA<br><br>Judge: Honorable Beth Labson Freeman |



# TABLE OF CONTENTS

**Pages**

STATEMENT OF THE ISSUES TO BE DECIDED ............................................................................ 1

INTRODUCTION ................................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................................... 2

ARGUMENT ........................................................................................................................................ 2

   I.      This Matter is Ripe for Review. .................................................................................. 2

   II.     Plaintiffs Have Met Their Burden for a Preliminary Injunction. ................................ 4

          1.      Plaintiffs are likely to succeed on the merits. ........................................... 4

              A.     The Ordinance is preempted by state law. ....................................... 4

              B.     The Ordinance burdens core Second Amendment rights. ............... 5

                 i.    There is no reasonable fit between the Ordinance and its stated objective. .... 6

                 ii.   This does not fit within the Ninth Circuit's Cox/Murdock Fee Jurisprudence ................................................................................ 9

              C.     The First Amendment prevents the City from forcing gun owners to fund a private nonprofit's speech and activities ......................................................... 9

              D.     The Ordinance is an unlawful tax. ................................................. 10

              E.     The Ordinance violates the City Charter. ...................................... 11

              F.     Irreparable harm, balance of the equities, and the public interest each tip in Plaintiffs' favor. ..................................................................... 14

   III.    Newspaper Articles Are Subject to Judicial Notice ................................................ 14

   IV.   This Court should not require Plaintiffs to post a bond. .......................................... 15



# TABLE OF AUTHORITIES

**CASES**                                                   **PAGES**

*Abood v. Detroit Bd. of Ed.*,
   431 U.S. 209 (1977).................................................................................................................9

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979).................................................................................................................3

*Baca v. Moreno Valley Unified Sch. Dist.*,
   936 F. Supp. 719 (C.D. Cal. 1996). .......................................................................................15

*Bauer v. Becerra,.*
   858 F.3d 1216 (9th Cir. 2017) ...............................................................................................8, 9

*Bishop v. City of San Jose*,
   1 Cal.3d 56 (1969) ...................................................................................................................4

*Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012)...............................................................................................................11

*Chicago Teacher's Union, Local No. 1 v. Hudson*,
   475 U.S. 292 (1986).................................................................................................................9

*Colorado Outfitters Ass'n v. Hickenlooper*,
   823 F.3d 537 (10th Cir. 2016) .................................................................................................3

*Dist. Columbia v. Heller*,
   554 U.S. 570 (2008)............................................................................................................5, 6

*Fiscal v. City and County of San Francisco*,
   158 Cal.App.4th 895 (Ct. App. 2008).....................................................................................4

*Great Western Shows, Inc. v. County of Los Angeles*,
   27 Cal.4th 853 (2002) .............................................................................................................5

*Heller v. District of Columbia*,
   670 F.3d 1244 (D.C. Cir. 2011) ..............................................................................................6

*Jackson v. City and County of San Francisco*,
   746 F.3d 953 (9th Cir. 2014) ...................................................................................................5



*Janus v. AFSCME, Council 31*,
   138 S.Ct. 2448 (2018)..................................................................................................9, 10

*Knox v. Service Employees Intern. Union, Local 1000*,
   567 U.S. 298 (2012)............................................................................................................9

*Kwong v. Bloomberg*,
   723 F.3d 160 (2nd Cir. 2013)..........................................................................................8, 9

*Libertarian Party of L.A. Cnty. v. Bowen*,
   709 F.3d 867 (9th Cir. 2013) .............................................................................................3

*McDonald v. City of Chicago, Ill.*,
   561 U.S. 742 (2010)............................................................................................................5

*Mendoza v. Fonseca McElroy Grinding Co., Inc.*,
   11 Cal.5th 1118 (2021) ......................................................................................................4

*Mercer, Fraser Co. v. County of Humboldt, Cal.*, |
   2008 WL 4344524 (N.D. Cal. 2008) ...............................................................................15

*Nichols v. Brown*,
   859 F.Supp.2d 1118 (C.D. Cal. 2012) ...............................................................................3

*Schmeer v. County of Los Angeles*,
   213 Cal.App.4th 1310 (Ct. App. 2013)......................................................................10, 11

*Sunset Amusement Co. v. Bd. of Police Comm'rs*,
   7 Cal.3d 64 (1972) .............................................................................................................4

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ...........................................................................................3

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) ..................................................................................6, 7, 8

**STATUTES**

Cal. Penal Code § 12026....................................................................................................4

San Jose, Cal. Charter Art. XII § 1211 ............................................................................12

San Jose, Cal. Code of Ordinance § 10.32.215..................................................................3



San Jose, Cal. Code of Ordinance § 10.32.220 ................................................................................ 9

San Jose, Cal. Code of Ordinance § 10.32.235.A ........................................................................... 13

San Jose, Cal. Code of Ordinance § 10.32.250 ................................................................................ 3

San Jose, Cal. Code of Ordinance § 10.32.210 ................................................................................ 3

San Jose, Cal. Code of Ordinance, §10.32.200 ................................................................................ 7

**OTHER AUTHORITIES**

*Assessment*, *Merriam-Webster Dictionary* (2022), https://www.merriam-
    webster.com/dictionary/assessment. ....................................................................................... 10

*Charge*, *Merriam-Webster Dictionary* (2022), https://www.merriam-
    webster.com/dictionary/charge. .............................................................................................. 10

*Exaction*, *Merriam-Webster Dictionary* (2022), https://www.merriam-
    webster.com/dictionary/exaction. ........................................................................................... 10

**RULES**

Fed. R. Civ. Pro. 65(c) ..................................................................................................................... 15

Fed. R. Ev. 801(d)(2) ....................................................................................................................... 14

**CONSTITUTIONAL PROVISIONS**

Cal. Const. Art. XI, § 3(a) ............................................................................................................... 11

Cal. Const. Art. XIII, § 1(a) ............................................................................................................ 10



Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for Preliminary Injunction      Case No.22-cv-00501-BLF

**STATEMENT OF THE ISSUES TO BE DECIDED**

Whether the City of San Jose's ordinance conditioning the constitutional right of gun ownership on (1) paying an annual City "fee" directly to a nonprofit (i.e., a donation) to fund private speech and activities related to gun use, and (2) purchasing an insurance policy, violates the First and Second Amendments to the U.S. Constitution, the California Constitution, and/or the San Jose City Charter.

**INTRODUCTION**

The City of San Jose may not have its cake and eat it too. Out of one side of its mouth, the City boasted to national media about its ingenuity in enacting its Ordinance, yet before the Court claimed the Ordinance had yet to be enacted. The City declares that the Ordinance is a first-of-its-kind innovation, while simultaneously asserting it is a run of the mill policy sanctioned by indistinguishable precedent. Even as to what exactly the Ordinance compels, the City speaks with a forked tongue—the City claims it creates a City "fee," but all "fee" revenues go to an independent nonprofit, and therefore the City is prohibited from directing how the nonprofit will spend the "fees," but yet the City Manager maintains control over the nonprofit. Cutting through the City's argument whiplash, either the City (a) has no idea what its Ordinance does, or (b) knows exactly what it does, but cannot admit it to this Court because it is blatantly unconstitutional. As Plaintiff has shown, the answer is the latter.

The Ordinance is ripe for judicial review because every salient fact needed for a dispositive analysis under federal, state, and city law is known. The City's misnomer shell game cannot hide that the Ordinance creates a local gun permitting requirement preempted by state law, imposes fees that violate the Second Amendment, compels a donation to a nonprofit advocacy organization in violation of the First Amendment, mandates either an unlawful tax not approved by voters or an unlawful fee which does not pay for city services, and diverts City fees outside of City accounts contrary to safeguards in the City Charter.

The Ordinance violates basic rules of government that were designed to protect Americans, Californians, and the City's citizens from government overreach and abuse of their rights. If Second Amendment rights can be burdened by a municipality compelling donations to fund nonprofit

speech, any core right could be subject to such a burden. By the City's logic, there would be nothing preventing a city from charging a voting "fee" to be paid to a local nonprofit educating voters on government's preferred methods of civic participation. Putting aside the issue of gun rights/control, the operation of the Ordinance violates essential controls on government power that protect everyone.

Accordingly, Plaintiffs respectfully request this Court declare that the Ordinance is unlawful for the reasons stated in their Motion for Preliminary Injunction and enjoin its implementation.

## FACTUAL BACKGROUND

As summarized in the Plaintiffs' Motion for Preliminary Injunction, the City's Ordinance conditions lawful gun ownership on a forced payment to an unknown nonprofit organization, coupled with the purchase of gun liability insurance. The City claims gun ownership imposes costs on the city, as well as society at large, but Ordinance "fees" do not compensate the City, or correspond to any individual determination of a gun owner's alleged burden on society or their pro-rata share of the aggregate alleged burden of all gun owners.

The nonprofit the City will designate to receive gun owners' mandatory donations will not represent gun owners as they will have neither membership rights nor an option to refuse to fund the nonprofit's speech. These financial exactions are either unlawful taxes not garnering the required approval from voters, or unlawful city fees which do not correspond to City administrative costs. Further, the payments the Ordinance describe as a City "fee" are not paid to the city, but rather directly to a nonprofit, preventing City oversight and control as required by the City's Charter.

## ARGUMENT

### I.    This Matter is Ripe for Review.

The Constitution does not require citizens to allow government to violate their rights, and suffer consequential injuries, before they can sue. As the Court knows, temporary restraining orders, preliminary injunctions, and declaratory judgments are a routine mechanism by which citizens appeal to the judicial branch to *prevent* government from violating rights before the violations occur.  "When the plaintiff has alleged an intention to engage in a course of conduct



arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo…prosecution as a sole means of seeking relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

In the First Amendment context, for example, a plaintiff may make a pre-enforcement claim when there is "an actual and well-founded fear that the challenged statute will be enforced." *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). For the Second Amendment, a "credible threat of prosecution test" is used. *See e.g. Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 550-51 (10th Cir. 2016). Plaintiffs are "not required to violate [a gun law] and subject [themselves] to prosecution to establish an injury-in-fact." *Nichols v. Brown*, 859 F.Supp.2d 1118, 1128 (C.D. Cal. 2012) (citing *Babbit*, 442 U.S. at 298; *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)).

Defendants argue that the undetermined fee amount, and the yet-to-be-identified non-profit, make the matter not "clean-cut and concrete" for this Court's review. Opp. at 5 (quotation omitted). There is no doubt that the Plaintiffs or their members will be subject to the ordinance, FAC ¶13-14, and there is nothing to suggest that the City will refrain from enforcing the Ordinance. It is certain that, when the ordinance takes effect on August 7: (1) the Ordinance will condition lawful gun ownership on the making of a financial donation to a nonprofit that the Ordinance characterizes as a city "fee"; (2) none of that fee will pay for costs imposed on the City by gun owners, but is exclusively to fund the non-profit's programs; (3) the City will have no control over use of the fee; (4) the Ordinance will condition lawful gun ownership on the purchase of insurance that will not compensate the City for any costs it incurs arising from gun use; and (5) the Ordinance was not approved by the voters. San Jose, Cal. Code of Ordinance §§ 10.32.210; 10.32.215, 10.32.250, Section 2; Opp. at 2. Regardless of the amount of the fee, and regardless of the identity of the nonprofit, Plaintiff's claims will not change.

The City also contends a facial challenge is impossible because it speculates that (after it is implemented and violating citizens' rights) there may be unspecified circumstances where the

//

Ordinance is *not* unconstitutional. Opp. at 5-6. There is only one circumstance the Ordinance, in application, would survive: if the City does not require gun owners to comply with the Ordinance.

## II. Plaintiffs Have Met Their Burden for a Preliminary Injunction.

### 1. Plaintiffs are likely to succeed on the merits.

#### A. The Ordinance is preempted by state law.

Defendants acknowledge that field preemption applies "regardless of the provisions of their [city] charters, if it is the intent and purpose of such general [state] laws to occupy the field to the exclusion of municipal regulation." Opp. at 17 (quoting *Bishop v. City of San Jose*, 1 Cal.3d 56, 60-61 (1969) (overruled by *Mendoza v. Fonseca McElroy Grinding Co., Inc.*, 11 Cal.5th 1118 (2021)). It tries to distract this court from controlling authority, citing a case about a roller-skating rink, that ordinances are to be upheld if they are reasonably related to the health, safety, comfort, and welfare of the public. Opp. at 17 (quoting *Sunset Amusement Co. v. Bd. of Police Comm'rs*, 7 Cal.3d 64, 72 (1972)). That may be true, but the issue of residential handgun possession has already been determined to be preempted by state law. *Fiscal v. City and County of San Francisco*, 158 Cal.App.4th 895, 903 (Ct. App. 2008).

*Fiscal*, dealing with a law practically banning handgun possession, acknowledged that state law already prevents public entities from "adopting impediments on legally qualified citizens to 'purchase, own, possess, keep, or carry' a concealable firearm in their homes or businesses." 158 Cal.App.4th at 906 (citing Cal. Penal Code § 12026). This same statutory text now exists as California Penal Code Section 25605. *Fiscal* read this language to mean that local entities are deprived of "*any* power to regulate handgun possession on private property" and the legislature "intended to occupy the field of residential handgun possession." *Id*. at 908 (emphasis added). Section 12026 "was intended to occupy the *field of residential firearm possession*." *Id*. (emphasis added). Accordingly, a permit requirement was "easily struck down," previously. *Id*. at 907 (citing *Sippel v. Nelder*, 24 Cal.App.3d 173 (1972). So too should this Ordinance be, as requiring gun owners to have proof of insurance and proof of paying two separate fees is akin to a permit or license. As noted below, Defendants' reliance on prior cases approving permit and license fees in their Second Amendment analysis is, therefore, a curious choice.

It should be noted, *Fiscal* is not limited to licenses or permits. Twice the court stated that the statute "intended to occupy the field of residential firearm possession," and that the law "depriv[ed] local entities any power to regulate handgun possession on private property." *Id*. at 908.

Defendants' primary authority, *Great Western Shows, Inc. v. County of Los Angeles*, 27 Cal.4th 853 (2002), was about the sale of guns on county property. Opp. at 17-18. This is not about the City's ability to regulate firearm sales on its own property. It is about the state's ability to regulate firearm possession in individuals' residences. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, (2010) ("[T]he Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense.") *Fiscal,* rather than *Great Western Shows,* is analogous.  Indeed, each of the preemption cases cited by Defendant are distinguishable based on this same basic premise. Defendants' cited cases each deal with the sale or possession of firearms outside of the home. Opp. at 19. Defendant cites no authority about regulating "residential firearm possession," which was the focus of *Fiscal*—and the Ordinance. *See* Opp. at 6 ("the Ordinance . . . imposes . . . burdens on the constitutional right to obtain a keep a firearm in the home for self-defense. . ."); *id*. at 7 (Ordinance "requires residents who own guns to obtain liability insurance for accidental gun injuries and to pay a reasonable fee to reduce well established harms that result from guns being lawfully kept [in their homes]").

Accordingly, as an attempted regulation of residential firearm possession, the Ordinance is preempted by state law.

### B.  The Ordinance burdens core Second Amendment rights.

The Second Amendment confers "an individual right to keep and bear arms." *Heller*, 554 U.S. at 595. This guarantee is "among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778(2010). Moreover, "the core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *Dist. Columbia v. Heller*, 554 U.S. 570, 635 (2008)). Strict scrutiny applies if a challenged law implicates a core Second Amendment right. *Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014).

1  "[J]ust as in the First Amendment context, the level of scrutiny in the Second Amendment context should depend on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (citation and quotation omitted). Here, the Ordinance strikes directly at what the Ninth Circuit held is the "core of the Second Amendment," that is, the right of law-abiding citizens to use guns to defend themselves and their homes.  It does so by conditioning the lawful possession of guns in the home on the making of annual donations to fund the speech and activities of the City's preferred nonprofit and the mandatory purchase of private insurance, threatening to fine gun owners and confiscate guns to compel compliance. Accordingly, strict scrutiny is appropriate because the Ordinance regulates core Second Amendment rights.  Further, as Justice Roberts stated previously, repeated by Justice Kavanaugh, the Constitution does not prescribe an interests balancing test for the Second Amendment. *Heller v. District of Columbia*, 670 F.3d 1244, 1273 (D.C. Cir. 2011) (Kavanaugh, B., dissenting) (quoting Tr. Of Oral Arg. At 44, *District of Columbia v. Heller*, 554 U.S. 570 (No. 07-290)). These tests are mere "baggage" and should no longer be used. *Id*. The Ordinance is therefore unconstitutional by virtue of it burdening Plaintiffs' right to own guns.

Yet even under the lower intermediate scrutiny standard Defendants seek, the Ordinance fails. Opp. at 7-9.

### *i.     There is no reasonable fit between the Ordinance and its stated objective.*

Under intermediate scrutiny, the City must establish that 1) the stated objective is significant, substantial, or important, and 2) a reasonable fit between the challenged regulation and the asserted objective." *Chovan*, 735 F.3d at 1139. The Ninth Circuit acknowledges that reducing gun violence is important, meaning here the test turns solely on whether there is a reasonable fit between the Ordinance and its claimed objectives. *Id*.

Defendants, however, misconstrue the "reasonable fit" requirement, conflating it with, and subsuming it within, the requirement that a law's goals must be significant, substantial, or important, and further contending that courts must defer to legislative judgments on fit.  Opp. at 10. The result is a vision of constitutional rights jurisprudence that would collapse intermediate scrutiny

//



Plaintiffs' Reply to Defendant's Opposition to Plaintiffs'  
Motion for Preliminary Injunction

Case No.22-cv-00501-BLF

into a deferential one-prong test asking whether a legislature's stated goal for a law impacting a constitutional right is well-intentioned.

Yet even if Defendants' reading of the reasonable fit requirement was correct, the City relies on irrelevant information as the basis for the Ordinance's reasonableness. The Ordinance cites misleading statistics, "finding[]" that "San Jose taxpayers annually spend approximately $39.7 million, or approximately $151 per firearm-owning household." Ordinance, §10.32.200.B.8. But they fail to acknowledge that $34.1 million of that is due to crime, regardless of its connection to firearms. Doc 25-3, Ex. I, p. 5. The Ordinance "find[s]" that San Jose residents incur an annual financial burden of $442 million per year…." Ordinance, §10.32.200.B.9. But it fails to mention that, even using their figures, only $35 million of that is a "direct" burden, the rest is entirely speculative for "pain, suffering, and lost quality of life" which the Defendants' study says is the "largest share" of that figure. Doc 25-3, Ex. I, p. 4. Thus, the Defendants' findings artificially inflate the costs to justify making non-criminal citizens pay for speculative costs caused primarily by criminals. (Defendants cite a handful of studies in their Opposition at pages 10-11 but neither supporting Declaration states that these studies were relied upon in forming the Ordinance.)

Regarding insurance, Defendants' only justification is that "requiring gun liability insurance *might be effective* in reducing harm, since this has occurred over a long period of time in the context of automobile liability insurance." Opp. at 10-11 (emphasis added). But the *only* studies Defendant cites are for automobile insurance. The activity of driving a car—routinely, daily, and with significantly more public interaction than is usually found in the average home—is entirely different than merely owning a gun and keeping it in one's home. It is an apples to oranges comparison, and a "guess" that cannot justify burdening a core constitutional right.

Between the bait-and-switch use of crime statistics for an ordinance that does not target criminals, and the wild guess about the relevance of auto insurance, Defendants' self-serving statements about the Ordinance's "fit" with its purpose cannot be given deference. The authorities cited by Defendants also do not support the wholesale deference Defendants demand. In *Chovan* the important government interest at issue was an interest in "preventing domestic gun violence" and the law under examination prohibited "domestic violence misdemeanants" from possessing

guns. *United States v. Chovan*, 735 F.3d 1127, 1140 (9th Cir. 2013). The court in *Chovan* meticulously examined the evidence the law fit its purpose, finding that the law was focused on violent people not prohibited from possessing guns by other laws, that domestic violence misdemeanants were likely to be repeat offenders, that they use guns, and that their gun use would increase the likelihood their victims would die. *Id.* This evidence satisfied intermediate scrutiny.

The contrast with the Defendants' Ordinance is stark. The Ordinance is justified by two main purposes: (a) deterring, preventing, and reducing injuries and damages caused by guns; and (b) reducing social and financial costs caused by the use of guns. Opp. at 10. But the Ordinance's Gun Harm Reduction Fee does *nothing* to target criminals who use guns, the primary source—by a large margin—of the injuries and damages the Defendants use to justify the Ordinance. *See e.g.* Doc 25-3, Ex. I, p. 5. Rather, the Ordinance compels *every* gun owner to make an annual donation to the City's chosen nonprofit. Defendants also concede that the "'primary costs' of gun violence" that they cited to support enactment of the Ordinance are in fact "associated with City response costs" that the Ordinance does not seek to recover. *Id.*

The Defendants' response to this mismatch between the Ordinance's goals and its actual operation is to fall back on the worthiness of its goals in general and that the City also made findings that there were other costs "related to suicide and self-inflicted harm." *Id.* But this misses the point. A "reasonable fit" analysis does not measure whether the Defendants' stated goals were worthy, but whether its attendant burdens address its stated goals. Here, they do not.

Defendants' citations to cases permitting reimbursement for administrative costs do not help. (Opp. at 9) (citing *Bauer v. Becerra,*. 858 F.3d 1216 (9th Cir. 2017) (fees charged to implement and enforce background checks) and *Kwong v. Bloomberg*, 723 F.3d 160, 167 (2nd Cir. 2013) (fee imposed to enforce and implement a licensing scheme)). There is no reimbursement here, and Defendant cites to no authority approving making citizens shoulder society at large's financial burden for the criminal conduct of others as a condition of exercising a core constitutional right. (Indeed, if the Defendants are claiming the Ordinance is a licensing scheme, more legal problems ensue, such as state preemption, discussed below.) Defendants do not, and cannot, cite

//

any case validating a law forcing gun owners to donate directly to a private third-party organization as a condition of exercising their Second Amendment right of home and self-defense.

### ii. This does not fit within the Ninth Circuit's Cox/Murdock Fee Jurisprudence

The *Murdock/Cox* fee-jurisprudence, adopted by the Ninth Circuit, only permits fees to defray administrative and enforcement costs. *Kwong v. Bloomsberg*, 723 F.3d 160, 165 (2nd Cir. 2013); *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017). Defendants simply misunderstand these authorities. It wishes to place fees into a level of burden analysis, citing the fact that $19 and $340 fees were not found to be unduly burdensome. Opp. at 12. However, before the Court can get to a burden analysis, there must be a showing that the fees "meet the expense incident to the administration of the act." *Bauer*, 858 F.3d at 1225 (quoting *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941)). Unlike the fees in *Bauer* and *Kwong*, the Ordinance's fee does not defray the City's administrative costs in any way as the money goes directly to the nonprofit. Ordinance §10.32.220.

### C. The First Amendment prevents the City from forcing gun owners to fund a private nonprofit's speech and activities.

Defendant fundamentally misunderstands the significance and holding of *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018). *Janus* was not, as Defendants suggest, about "the expenditure of money to advance political viewpoints" and "lobbying and litigation." Opp.15. Unions were already prevented from using mandated fair share fees to support political activity prior to *Janus*, and in fact had been since 1977. *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 235-36 (1977) (holding that a union cannot constitutionally compel dues and use them to "spend funds for the expression of political views, on behalf of political candidates, or toward the advancement of other ideological causes…."); *Chicago Teacher's Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986) (requiring fee payers be allowed to opt out of paying funds for political activity); *Knox v. Service Employees Intern. Union, Local 1000*, 567 U.S. 298 (2012) (requiring the ability to opt out of payment even for speech related to union contracts).

*Janus* prevented forced subsidization of unions, regardless of whether the speech for which non-members were paying was political or not, finding it was unconstitutional to "force[]" public

employees "to subsidize a union, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities." *Janus*, 128 S.Ct. 2459-60. Any such payment to a private organization, the Court stated, requires consent to pay, and extracting fees without consent "violates the First Amendment and cannot continue." *Id*. Here, a nonconsenting gun owner, such as Plaintiff Mark Sikes who objects by virtue of the filing of this lawsuit, has no option to waive the payment of this annual fee/donation subsidizing the City-chosen nonprofit. He is forced to support the speech of the nonprofit, in violation of the First Amendment.

Defendant complains of the limited number of authorities from a different context. Opp. at 14. But, one would be hard pressed to find examples of government creating law that *requires* a citizen to subsidize a nonprofit entity. And, even if Ordinance had been passed in a pre-*Janus* regime, forced subsidization of a non-profit that presumes to advocate for proscribed actions addressing suicide, violence, mental health, firearms safety, and addiction is inherently political.

### D.  The Ordinance is an unlawful tax.

Defendants' authority for the argument that the Gun Harm Reduction Fee is not a tax, *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (Ct. App. 2013), runs against the plain language of the California Constitution and is otherwise clearly distinguishable from the instant case. First, a "tax," which must be approved by the voters, "means any levy, charge, or exaction of any kind imposed by a local government…." Article XIII C.1(e). (A "'General tax' means any such tax imposed for general governmental purposes." Article XIII C.1(a).)

A "levy" is "the imposition or collection of an 'assessment'," which is defined as "an amount that a person is officially required to pay." *Assessment*, *Merriam-Webster Dictionary* (2022), https://www.merriam-webster.com/dictionary/assessment.  A "charge" is simply "the price demanded for something." *Charge*, *Merriam-Webster Dictionary* (2022), https://www.merriam-webster.com/dictionary/charge.  An "exaction" is defined as "something exacted," to especially include *"*a fee, reward, or contribution demanded or levied with severity or injustice." *Exaction*, *Merriam-Webster Dictionary* (2022), https://www.merriam-webster.com/dictionary/exaction.

First, there is no question that the Gun Harm Reduction fee is a levy, charge, or exaction, and that it will be imposed by the City of San Jose.  The California Constitution does not limit its



definition of a tax based on whether a municipality deposits the tax revenue into a city account or if it diverts the tax payment directly to another person. It would be a curious interpretation of the California Constitution and a profound loophole to hold that a city could evade the constitutional requirement of voter approval for taxes by ordering payments directly to third parties.

Second, the Gun Harm Reduction Fee and the insurance requirement (backed by the threat of a fine payable to the City) are levies, charges or exactions imposed by the City of San Jose and thus each constitutes a "tax" within the meaning of the California Constitution. *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 564-566 (2012) (a law describing a payment as a "penalty" for not complying with an insurance requirement does not determine whether the payment is a tax for constitutional purposes).

Third, *Schmeer's* actual holding was that the language "any levy, charge, or exaction of any kind imposed by a local government" in the first paragraph of article XIII C, section 1, subdivision (e) is limited to charges payable to, *or for the benefit of, a local government*. *Schmeer*, 213 Cal. App. 4th at 1328–29, as modified (Mar. 11, 2013) (italics added). While Defendants focus exclusively on the fact that the Fee is not payable to the City, *Schmeer* also treated charges "for the benefit of" the government as taxes. If, as Defendants have argued elsewhere, the Ordinance benefits San Jose, article XIII C applies.

Fourth, *Schmeer* is also distinguishable.  The grocery stores in Schmeer were to use the 10-cent fee *to compensate themselves* for complying with a City requirement imposed on them – a prohibition against plastic bags that was only imposed on persons who used their bags. Here, the Ordinance *neither* requires the fee to compensate the nonprofit for the costs of its compliance with a City regulation nor is imposed on just those persons who obtain something from the nonprofit.

### E.  The Ordinance violates the City Charter.

Defendants' proposed interpretation of the City's Charter, Opp. at 20-21, is based on a selective, self-serving reading of its plain terms. City officials' compliance with the City Charter is neither aspirational nor a mere technicality. A charter city's Charter has the force of law, Cal. Const. Art. XI, § 3(a). In its entirety, Section 1211 states:

> All monies paid into the City Treasury shall be credited to and kept in separate funds in accordance with provisions of this Charter or ordinance. A fund, to be

11



known as the "General Fund," is hereby created as a medium of control and accounting for all City activities excepting activities for which special funds are established and maintained. All revenues and receipts which are not required by this Charter, State law or ordinances to be placed in special funds shall be credited to the General Fund.

Read together, the Charter could not be plainer: (1) City revenues must be placed in either the General Fund or special funds; (2) the General Fund serves "as a medium of control and accounting for all City activities," except for those activities for which the City creates a special fund; and (3) if the law does not require city revenues and receipts to be placed in special funds, they must go to the General Fund. Here, neither the Ordinance nor any other law requires the City to place the Gun Harm Reduction Fee into a special fund. Accordingly, pursuant to section 1211's third sentence, the fee's revenues must be placed into the City's General Fund.

Defendants instead argue that the reference in the first sentence of section 1211 to "monies paid into the City's Treasury" bars the application of section 1211 to the Ordinance because it requires the fee to be paid to the City's designated nonprofit. Opp. at 21. But this violates the very maxim Defendants cite: "The language of the Charter and the Ordinance must be read in the context of the respective statutes as a whole. . . the court must 'avoid a construction that would lead to impractical or unworkable results.'" Opp. at 21 (Citations omitted). Defendants' interpretation would create an exception that swallows the rule. To allow city fees to bypass the General Fund, diverted into city officials' favored nonprofit beyond the City's control and accounting, would turn section 1211 on its head. It would subvert this fundamental control on the City government's ability to hide, or avoid oversight of, how City fee revenues are spent.

The City's interpretation, if accepted, contradicts treatment of the Ordinance's Gun Harm Reduction Fee as a City fee in the first instance, corroborating the tax analysis above (for an exaction to qualify as a city fee, it must pay for city services). Combined with the Defendants' further argument that the fee is not subject to the City's budgetary or appropriations authority, Opp. at 21-23, the Defendants further distinguish the Gun Harm Reduction Fee and the activities of the designated nonprofit from government functions. Specifically, Defendants acknowledge:

> The nonprofit is not a City department, office, or agency. Indeed, "[n]o City official or employee shall sit on the board of directors of the Designated Nonprofit Organization", and the City "shall not specifically direct how the monies from the

[Fee] are expended"

> The Ordinance does not provide for or contemplate using the Fee for the operation of City departments. Rather, the Ordinance requires the designated nonprofit to "spend every dollar generated from the [Fee]" on programs and initiatives within a particular category – none of which include the operation of offices, departments, or agencies of the City.

Opp. at 21-22 (citations omitted).

Thus, to the diversion of the Fee to a third party nonprofit instead of the City's General Fund, the City further acknowledges the fee will not fund a city department, city officials are prohibited from serving on the nonprofit's board, and "the City 'shall not specifically direct how the monies from the [Fee] are expended.'" Opp. at 22. But this collides with the Charter's delegation to the City Manager of responsibility "for the faithful execution of all laws, provisions of [the] Charter, and acts of the Council which are subject to enforcement by the City Manager or by officers who are under the City Manager's direction and supervision." *Id.* (quoting Charter § 701(d)). Reversing themselves, the Defendants immediately pivot to asserting the City Manager indeed *will* "'implement the requirements and fulfill the policies of [the Ordinance] relating to the reduction of gun harm,' including by designating the nonprofit receiving the Fee and setting forth 'processes and procedures relating to the payment of the fee, and **any additional guidelines or auditing of the use of the monies from the fee**.'" *Id.* (quoting 10.32.235.A, *et seq.*) (emphasis in original). In sum, Defendants state "San Jose maintains authority over how the designated nonprofit expends the fee through the administrative oversight of the City Manager." *Id.*

Accordingly, Defendants claim the City is simultaneously prohibited from directing how the nonprofit will spend the City's fee, which is not deposited into city accounts, and yet the City maintains authority over how the nonprofit spends the City's fee. The fee is also simultaneously not paying for City operations, and yet City's chief administrative officer "maintains authority" over the nonprofits spending.

Returning to the Defendants' proposed interpretation of Charter section 1211: the Defendants' conflicting arguments either mean that: (A) the City Charter is not violated by City fee revenues funding activities under the City Manager's control but kept outside City accounts ('off the books'); or (B) the City Charter is not violated by a City fee being diverted to an entity over which the City has no

immediate control. This are impractical and unworkable results, indicating the Defendants' interpretations are wrong.

### F. Irreparable harm, balance of the equities, and the public interest each tip in Plaintiffs' favor.

Defendants' arguments about the alleged lack of irreparable harm merely echo their ripeness and merits arguments. As already explained above, citizens do not need to wait until the government has already trampled their rights to sue to prevent the violation. Further, Defendants' Ordinance will unconstitutionally infringe upon their core Second Amendment rights, violates the First Amendment, constitutes a tax that violates the state constitution, is preempted by state law, and violates the City Charter.

By contrast, the status quo injures nobody. If a gun owner wants to, they can purchase insurance. As shown above, the Fee will do nothing to actually compensate society or the city for the alleged costs of gun ownership. If the city wants to use its general treasury funds to donate to a nonprofit to advocate about guns or provide service to gun households, it can.

The balance of equities, therefore, tips decidedly in Plaintiffs' favor.

### III.   Newspaper Articles Are Subject to Judicial Notice

"The court may judicially notice a fact that is not subject to reasonable dispute because it: **(1)** is generally known within the trial court's territorial jurisdiction; or **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b). Exhibit C is an OpEd written by Defendant Mayor Liccardo and published in the Los Angeles Times. Though their argument is not entirely clear, Plaintiffs appear to concede the Court may take judicial notice of the Op-ed, but indicate that some of the Mayor's statements are not accurate. The Mayor's statements, as those of a party opponent, are otherwise admissible, and Defendants have offered no suggestion of what in the Op Ed is unreliable. Fed. R. Ev. 801(d)(2).

Exhibits F and G are San Francisco Chronicle and Los Angeles Times articles, respectively. Defendants concede their authenticity, but balk at Plaintiffs' use of the articles to determine the public perception of the Ordinance's enactment. Opp. at 25. As the Court already denied

//

Defendants' Motion to Dismiss as moot and Plaintiffs filed a First Amended Complaint, this is no longer in controversy.

Accordingly, the Court should grant Defendants' Request for Judicial Notice.

### IV. This Court should not require Plaintiffs to post a bond.

When a "preliminary injunction will require defendant to incur little or no monetary costs and that the injunction is sought to vindicate constitutional rights and the public interest, [] no bond or security will be imposed under Fed. R. Civ. Pro. 65(c)." *Mercer, Fraser Co. v. County of Humboldt, Cal.*, 2008 WL 4344524, *2 (N.D. Cal. 2008). "[T]o require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public affected by the policy." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996). Here, Defendants make no mention at all of how it would be harmed, financially, by the issuance of a preliminary injunction. A bond would have a negative impact on Plaintiffs subject to this unconstitutional Ordinance and should be waived.

Respectfully submitted,

Date: March 29, 2022                    DHILLON LAW GROUP INC.

By:   /s/ Harmeet K. Dhillon
      Harmeet K. Dhillon
      Michael A. Columbo
      Mark P. Meuser
      DHILLON LAW GROUP INC.
      177 Post Street, Suite 700
      San Francisco, California 94108
      (415) 433-1700

      David A. Warrington*
      Curtis M. Schube
      DHILLON LAW GROUP INC.
      2121 Eisenhower Avenue, Suite 402
      Alexandria, VA 22314
      (571) 400-2121

      *Admission *pro hac vice* forthcoming

      Attorneys for Plaintiffs

