1  JOSEPH W. COTCHETT (SBN 36324)
   jcotchett@cpmlegal.com
2  TAMARAH P. PREVOST (SBN 313422)
   tprevost@cpmlegal.com
3  ANDREW F. KIRTLEY (SBN 328023)
   akirtley@cpmlegal.com
4  MELISSA MONTENEGRO (SBN 329099)
   mmontenegro@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
6  840 Malcolm Road, Suite 200
   Burlingame, CA  94010
7  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
8
9  *Attorneys for Defendants*
10

11              **UNITED STATES DISTRICT COURT**

12         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                    **SAN JOSE DIVISION**

14

15 | **NATIONAL ASSOCIATION FOR GUN** | **Case No. 5:22-cv-00501-BLF** |
   | **RIGHTS, INC.**, a non-profit corporation, and | |
16 | **MARK SIKES**, an individual, | |
   | | **DEFENDANTS' MOTION TO DISMISS** |
17 | Plaintiffs, | **PLAINTIFFS' FIRST AMENDED** |
   | | **COMPLAINT** |
18 | v. | |
   | | Date:        August 4, 2022 |
19 | **CITY OF SAN JOSE**, a public entity; | Time:        9:00 A.M. |
20 | **JENNIFER MAGUIRE**, in her official capacity | Courtroom:  Via Zoom Webinar |
   | as City Manager of the City of San Jose; and | Judge:       Hon. Beth Labson Freeman |
21 | **CITY OF SAN JOSE CITY COUNCIL**, | |
   | | Complaint filed: January 25, 2022 |
22 | Defendants. | FAC filed: February 14, 2022 |

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on August 4, 2022, at 9:00 A.M., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Beth Labson Freeman, United States District Judge for the Northern District of California, located at 280 South 1st Street, San Jose, California, 95113, Defendants City of San Jose, Jennifer Maguire in her official capacity as City Manager of the City of San Jose, and the City of San Jose City Council will and hereby do move this Court to dismiss the First Amended Complaint (ECF No. 19) ("FAC") filed by Plaintiffs National Association for Gun Rights, Inc., and Mark Sikes in its entirety under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and under Rule 12(b)(6) for failure to state a claim as to each of Plaintiffs' six causes of action.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Tamarah P. Prevost and Sarah Zarate and all corresponding exhibits attached thereto, the Proposed Order, the anticipated reply brief, and any other papers Defendants may file in support of the motion, as well as all judicially noticeable facts, the files and records in this action, and such other evidence and argument as may be provided to the Court at or before the hearing.

Dated: April 8, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

By: _____/s/ Tamarah P. Prevost_____
       JOSEPH W. COTCHETT
       TAMARAH P. PREVOST
       ANDREW F. KIRTLEY
       MELISSA MONTENEGRO

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..........................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................2

   A.    History of the Ordinance and Procedural Posture ....................................2

   B.    Summary of the Ordinance .......................................................................3

     1.    Liability Insurance Requirement ........................................................4

     2.    Annual Gun Harm Reduction Fee ......................................................4

     3.    Self-Certification of Compliance .......................................................5

III.  LEGAL STANDARDS...................................................................................6

   A.    Rule 12(b)(1)..............................................................................................6

   B.    Rule 12(b)(6)..............................................................................................6

IV.   ARGUMENT ..................................................................................................7

   A.    THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(b)(1). ......7

     1.    The FAC Fails for Lack of Ripeness.....................................................7

     2.    The FAC Does Not State a Proper Facial Constitutional Challenge.............9

   B.    THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(b)(6). ....10

     1.    Plaintiffs Fail to State a Second Amendment Claim.............................10

       *a.    The Appropriate Level of Scrutiny is Intermediate Scrutiny.* .....................10

       *b.    The Ordinance Easily Survives Intermediate Scrutiny.*............................12

     2.    Plaintiffs Fail to State a First Amendment Claim Based on Compelled Speech or Association.........................................................................................16

     3.    Plaintiffs Fail to Sufficiently Allege State Law Preemption.........................17

     4.    Plaintiffs Fail to State a Claim that the Ordinance Imposes a Tax in Violation of the California Constitution...................................................................................19

     5.    The Ordinance Does Not Violate the San Jose City Charter. ........................20

       *a.    The Charter Does Not Require Placing the Fee into the General Fund.* ...................21

       *b.    The Fee is Not Subject to the Charter's Budgetary Procedures.* ...............21

       *c.    The Council Properly Delegated Regulatory Authority to the City Manager.*............22

     6.    Plaintiffs Fail to State a Claim for Declaratory Relief..................................23

   C.    THE FAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND..................23

V.    CONCLUSION............................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*1300 N. Curson Investors, LLC v. Drumea,*
5
    225 Cal.App.4th 325 (2014) ...............................................................................21

6

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) .............................................................................................7
7

*Ashcroft v. Iqbal,*
8
    556 U.S. 662 (2009) .............................................................................................7

9

*Bauer v. Becerra,*
    858 F.3d 1216 (9th Cir. 2017) .............................................................12, 15, 16
10

11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................................7
12

*Birkenfeld v. City of Berkeley,*
13
    17 Cal.3d 129 (Cal. 1976) .................................................................................22

14

*Bishop v. City of San Jose,*
    1 Cal.3d 56 (1969) .............................................................................................18
15

16

*Cal. Democratic Party v. Jones,*
    530 U.S. 567 (2000) (Stevens, J., dissenting) ..................................................17
17

*Cal. Rifle & Pistol Assn. v. City of West Hollywood,*
18
    66 Cal.App.4th 1302 (1998) .............................................................................19

19

*Calguns Foundation, Inc. v. County of San Mateo,*
    218 Cal.App.4th 661 (2013) .............................................................................19
20

21

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) .............................................................................8
22

23

*City of Renton v. Playtime Theaters, Inc.,*
    475 U.S. 41 (1986) ...........................................................................................14

24

*City of San Jose v. Lynch,*
    4 Cal.2d 760 (1935) ..........................................................................................21
25

26

*Cox v. New Hampshire,*
    312 U.S. 569 (1941) ..........................................................................................15
27

28

*Cramer v. Brown,*
    2012 WL 13059699 (C.D. Cal. Sept. 12, 2012) ................................................7

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**

ii

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)...............................................................................10, 11, 15

*Galvan v. Superior Court,*
    70 Cal.2d 851 (1969) ..........................................................................................19

*Gonzales v. Carhart,*
    550 U.S. 124 (2007)...............................................................................................9

*Great Western Shows, Inc. v. County of Los Angeles,*
    27 Cal.4th 853 (Cal. 2002)............................................................................18, 19

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011) .........................................................................11

*Heller v. District of Columbia,*
    801 F.3d 264 (D.C. Cir. 2015) ...........................................................................12

*Isaakhani v. Shadow Glen Homeowners Assn., Inc.,*
    63 Cal.App.5th 917, 931-932 (2021) ..................................................................21

*Jackson v. City and County of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) ....................................................................... *passim*

*Janus v. AFSCME, Council 31,*
    138 S. Ct. 2448 (2018)........................................................................................16

*Kachalsky v. County of Westchester,*
    701 F.3d 81 (2d Cir. 2012)..................................................................................13

*Keller v. State Bar of California,*
    496 U.S. 1 (1990)...........................................................................................16, 17

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994).............................................................................................6

*Kwong v. Bloomberg,*
    723 F.3d 160 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 2696 (2014)....................12, 15

*Lares v. West Bank One,*
    188 F.3d 1166 (9th Cir. 1999) ............................................................................21

*Laurent v. City and County of San Francisco,*
    99 Cal.App.2d 707 (1950) ..................................................................................21

*Leadsinger Inc. v. BMG Music Pub.*
    512 F.3d at 532 (9th Cir. 2008)...........................................................................23

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**                                                                                          iii

*Lopez v. Turnage,*
    2021 WL 5142070 (N.D. Cal. Oct. 15, 2021)................................................................23

*Los Angeles Unified Sch. Dist. v. Garcia,*
    58 Cal.4th 175 (2013) ..................................................................................................21

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010) .....................................................................................................15

*Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.,*
    460 U.S. 575 (1983) .....................................................................................................15

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,*
    858 F.2d 1376 (9th Cir. 1988), *cert. denied,* 488 U.S. 1006 (1989).........................23

*Murdock v. Pennsylvania,*
    319 U.S. 105 (1943).................................................................................................15, 16

*Nat'l Park Hosp. Assn. v. Dep't. of Interior,*
    538 U.S. 803 (2003).......................................................................................................8

*Nordyke v. King,*
    681 F.3d 1041 (9th Cir. 2012) (en banc), *cert. denied,* 133 S. Ct. 840 (2013)....................10, 15

*O'Connell v. Gross,*
    No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020).........................12

*Olsen v McGillicuddy,*
    15 Cal. App. 3d 897 (1971) ..........................................................................................19

*Parks Sch. of Bus. v. Symington,*
    51 F.3d 1480 (9th Cir. 1995) ..........................................................................................6

*Portland Police Ass'n v. City of Portland,*
    658 F.2d 1272 (9th Cir. 1981) ......................................................................................23

*Reno v. Catholic Soc. Servs., Inc.,*
    509 U.S. 43 (1993)...........................................................................................................6

*Rizzo v. Goode,*
    423 U.S. 362 (1976)......................................................................................................23

*S. Cal. Edison Co. v. Pub. Util. Comm'n,*
    227 Cal.App.4th 172 (2014) .........................................................................................20

*Sacramento Chamber of Commerce v. Stephens,*
    212 Cal. 607 (1931) .....................................................................................................22

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ........................................................................................6

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**                                                                                                iv

*Schmeer v. County of Los Angeles,*
  213 Cal.App.4th 1310 (2013) ............................................................19, 20

*Scholl v. Mnuchin,*
  489 F.Supp.3d 1008 (N.D. Cal. 2020) ........................................................7

*Scott v. Pasadena Unified Sch. Dist.,*
  306 F.3d 646 (9th Cir. 2002) ........................................................................8

*Sherwin-Williams Co. v. City of Los Angeles,*
  4 Cal.4th 893 (1993) ...................................................................................18

*Sierra Club v. United States Army Corps of Eng'rs,*
  990 F.Supp.2d 9 (D.C. Cir. 2013)................................................................9

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) ........................................................................6

*Stimmel v. Sessions,*
  879 F.3d 198 (6th Cir. 2018) ......................................................................12

*Sunset Amusement Co. v. Bd. of Police Comm'rs,*
  7 Cal.3d 64 (1972) ......................................................................................17

*Thomas v. Anchorage Equal Rights Comm'n,*
  220 F.3d 1134 (9th Cir. 2000) (en banc) .....................................................6

*Toilet Goods Ass'n, Inc. v. Gardner,*
  387 U.S. 158 (1967).......................................................................................7

*Torcivia v. Suffolk Cty., New York,*
  17 F.4th 342 (2d Cir. 2021) ........................................................................12

*Turner Broad. Sys., Inc. v. FCC,*
  520 U.S. 180 (1997).....................................................................................13

*United States v. Chovan,*
  735 F.3d 1127 (9th Cir. 2013) ........................................................10, 12, 13

*United States v. Gila Valley Irr. Dist.,*
  31 F.3d 1428 (9th Cir. 1994) ........................................................................8

*United States v. Masciandaro,*
  638 F.3d 458 (4th Cir. 2011) ......................................................................15

*United States v. Power Co.,*
  2008 WL 2626989 (D. Nev. June 26, 2008)................................................8

*Vieux v. Easy Bay Reg'l Park Dist.,*
  906 F.3d 1330 (9th Cir. 1990) ......................................................................8

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)..................................................................................................11

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)......................................................................................9, 10, 17

*Westlands Water Distrib. Dist. v. Nat. Res. Defense Council*,
    276 F.Supp.2d 1046 (E.D. Cal. 2003)....................................................................24

*Young v. Hawaii*,
    992 F.3d 765 (9th Cir. 2021) (en banc) ...........................................................9, 11

**Statutes**

Cal. Gov. Code § 53071 ...............................................................................................18

Cal. Pen. Code § 25605 ................................................................................................18

Ordinance ............................................................................................................ *passim*

Ordinance. ¶ 26 ..............................................................................................................2

San Jose Ordinance ("Ordinance") ................................................................................1

**Other Authorities**

First Amendment ................................................................................................ *passim*

Second Amendment ............................................................................................ *passim*

Cal. Const., Art. XIII C, § 1 ...................................................................................19, 20

California Constitution.............................................................................................2, 19

California Constitution Article XI, Section 5(a)............................................................18

California Constitution Article XI, Section 7 ................................................................17

California Constitution Article XIII C ..........................................................................19

NAGR Press Release, *National Association for Gun Rights Files Lawsuit Against
    the City of San Jose* (Jan. 26, 2022), *available at* https://tinyurl.com/2p89jdu5 .........................2

NAGR Website, *Frequently Asked Questions*,
    https://nationalgunrights.org/resources/faqs/ (accessed Apr. 5, 2022) ........................................2

6 Wright & Miller, FED. PRAC. & PROC. § 1473 (3d ed. 2021) .......................................23

Charters Budgetary Procedures:
    §§ 300, 700..............................................................................................................22
    § 411.......................................................................................................................23

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE
NO. 5:22-CV-00501-BLF**
    vi

§§§1204, 1206, and 1207 ............................................................................21
§ 1207 ...........................................................................................................22

**Rules**

Federal Rules of Civil Procedures:
Rule 12(b)(1) .......................................................................................6, 7, 24
Rule 12(b)(6) ...............................................................................2, 6, 10, 24
Rule 15(a) ....................................................................................................23
Rule 15(d) ....................................................................................................23

**Ordinances:**

§ 10.32.200(A) .........................................................................................................3
§§ 10.32.215, 10.32.235(A), 10.32.240(B) .............................................................3
§ 10.32.200(B)(10)-(13) ..........................................................................................3
§ 10.32.200(B)(11) ..................................................................................................3
§ 10.32.200(B)(4)-(10) ............................................................................................3
§ 10.32.255(A)-(C) ..................................................................................................3
§ 10.32.235(A)(4) ....................................................................................................3
§ 10.32.210(A), (C) .................................................................................................4
§ 10.32.220(B)(11)-(12) ..........................................................................................4
§ 10.32.235(A)(1) ....................................................................................................4
§§10.32.215, 10.32.220(A) ......................................................................................4
§ 10.32.200(B)(13) ..................................................................................................4
§ 10.32.220(A)(1)-(5) ..............................................................................................4
§ 10.32.205(B) .........................................................................................................4
§ 10.32.200(B)-(C) ..................................................................................................4
§ 10.32.215 .........................................................................................................5, 21
§ 10.32.235(A)(2) ....................................................................................................5
§ 10.32.230(A)-(B) ..................................................................................................5
§ 10.32.230(A) .........................................................................................................5
§ 10.32.240(A) .........................................................................................................5
§ 10.32.240(B) .........................................................................................................5
§ 10.32.245 ..............................................................................................................5
§§ 10.32.215, 10.32.240(B) .....................................................................................7
§ 10.32.235(A) .........................................................................................................7
§ 10.32.220(B) ....................................................................................................9, 16
§§ 10.32.210(A), 10.32.215, 10.32.220 .................................................................11
§§ 10.32.210(A), 10.32.215 ....................................................................................12
§ 10.32.200(B) .......................................................................................................12
§ 10.32.200(B)(6) ..................................................................................................13
§ 10.32.200(B)(8) ..................................................................................................14
§§ 10.32.225(C), 10.32.235(A)(4) .........................................................................14
§ 10.32.225(B) .......................................................................................................19
§§ 10.32.215, 10.32.220 ........................................................................................20
§ 10.32.305(B) .......................................................................................................22
§ 10.32.220(C) .......................................................................................................22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

§ 10.32.220(C) ............................................................................................................22
§ 10.32.235 (A), *et seq*...............................................................................................22
§ 10.32.235........................................................................................................................23

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**

# I.    INTRODUCTION

The San Jose Ordinance ("Ordinance") at issue in this action springs from the legitimate authority of Defendant City of San Jose ("City" or "San Jose") to enact legislation aimed at reducing gun deaths and injuries and compensating victims of accidental shootings. The City believes that smart, innovative policies informed by public health experts and gunowners alike can reduce firearm-related deaths and injuries, while fully respecting lawful gunowners' Second Amendment rights to keep and bear arms for self-defense. State and local governments must be granted leeway to address the complex challenge of reducing the ever-increasing numbers of gun-related deaths and injuries.

The Ordinance here requires non-exempted San Jose gunowners to obtain liability insurance for gun accidents and to pay a reasonable annual Gun Harm Reduction Fee ("Fee"), which a nonprofit organization will use to provide gunowners and their families with voluntary programming and services related to gun safety, mental health, and domestic violence. Notwithstanding the Ordinance's modest scope, Plaintiffs seek to strike it down. The lead Plaintiff in this case is the National Association for Gun Rights ("NAGR"), which calls itself the nation's largest "no compromise" pro-gun organization and is opposed to the existence of any law that regulates firearms in any way. Their operative First Amended Complaint ("FAC") is legally defective and should be dismissed on two grounds.

First, Plaintiff's claims fail under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of standing and ripeness, because key components of the Ordinance, which bear directly on the validity of Plaintiffs' claims, have not yet been decided by the City. For example, Plaintiffs' FAC rests on the theory that the annual Fee is a substantial and unconstitutional burden on the right to keep and bear arms—even though the amount of the Fee has not yet been set, and even though the criteria for the Ordinance's "financial hardship" exemption have not yet been established. Similarly, Plaintiffs' FAC is premised on speculation that the nonprofit organization referenced in the Ordinance (which the City Manager has not yet designated) will harbor anti-gun views and discourage gun ownership. Plaintiffs' abstract objections to these and other aspects of

the law rest on speculation, contingent future events, and hypotheticals that would require this Court to issue an advisory opinion about an ordinance that is still incomplete and unfinished.

Second, under Rule 12(b)(6), all six of Plaintiffs' claims under the First and Second Amendment to the U.S. Constitution, the California Constitution (Proposition 26), and the San Jose City Charter are legally defective under binding precedent or otherwise collapse under scrutiny. Because there are no facts Plaintiffs could allege to cure those defects, all six claims should be dismissed with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    History of the Ordinance and Procedural Posture

In June 2021, the City's mayor and City Council directed the City Attorney to draft a gun safety ordinance designed to mitigate gun harms for Council's consideration. *See* Decl. of Tamarah Prevost ("Prevost Decl.") ¶ 2, Ex. 1. Six months and seven detailed memoranda later, the Council, at its January 25, 2022 meeting, heard a first reading of the draft ordinance, directed that it be published, that certain amendments be drafted, and voted to re-consider the Ordinance at a later date. *Id.* ¶¶ 3-9, Exs. 2-8.

That same day, Plaintiffs NAGR and Mark Sikes, filed this lawsuit seeking to invalidate the Ordinance, even though it was still being negotiated and drafted. ECF 1; *see also* NAGR Press Release, *National Association for Gun Rights Files Lawsuit Against the City of San Jose* (Jan. 26, 2022), *available at* https://tinyurl.com/2p89jdu5 (NAGR denouncing "new ordinance" as "tyrannical"). "Unlike other groups such as the NRA, NAGR believes in absolutely NO COMPROMISE on gun rights issues." NAGR Website, *Frequently Asked Questions*, https://nationalgunrights.org/resources/faqs/ (accessed Apr. 5, 2022).

On February 4, 2022, Defendants moved to dismiss the Complaint for lack of jurisdiction. ECF 17. On February 8, the City enacted the Ordinance. ¶ 26.[1] The Ordinance expressly leaves key aspects of the law unspecified and dependent on future action by the City Council and City

---

[1] "¶_" on its own refers to a paragraph of the FAC.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**                    2

1    Manager (§§ 10.32.215, 10.32.235(A), 10.32.240(B)),[2] which the FAC repeatedly concedes (*see*

2    ¶¶ 1, 36-37, 90-91). The Ordinance provides the Council and City Manager 180 days to take those

3    actions before the Ordinance becomes effective on August 7, 2022. § 2. On February 14, before

4    the Council or City Manager had taken any of those further actions, Plaintiffs filed their FAC

5    (ECF 19), and the Court terminated the motion to dismiss the Complaint as moot (ECF 21). Three

6    weeks later, Plaintiffs filed a motion for preliminary injunction that mirrors their FAC in

7    substance, and which is now fully briefed and set to be heard on July 21, 2022. ECF 25, 28, 31-32.

8    **B.  Summary of the Ordinance**

9        The Ordinance's basic purpose is to "reduce gun harm" "for the protection of the welfare,

10   peace, and comfort of the residents of the City of San Jose." § 10.32.200(A). To "reduce the

11   number of gun incidents," the Ordinance seeks to provide voluntary gun safety and other

12   "[p]rograms and services to gun owners and their households" and to require gunowners to obtain

13   liability insurance to compensate victims of accidental shootings, which is partly informed by an

14   analogue to the success of car insurance mandates in helping reduce vehicle collision fatalities and

15   injuries. § 10.32.200(B)(10)-(13); *see also* § 10.32.200(B)(11) (finding risk-based automobile

16   liability insurance mandates were part of "a comprehensive public health approach to car safety"

17   that helped reduce U.S. motor vehicle collision fatalities by 80%). The Ordinance is informed by

18   public health research and data, such as findings that more than a third of all gun injuries are from

19   unintentional shootings, that gunowners and those who live with them are at significantly higher

20   risk of gun suicide and homicide than the rest of the population, and that gun-related deaths or

21   serious bodily injuries cost San Jose residents $442 million per year. § 10.32.200(B)(4)-(10).

22       The Ordinance applies to all City residents who own a gun, with three exceptions:

23   (1) peace officers, (2) those with a state concealed weapon license, and (3) those for whom

24   compliance with the Ordinance would create a "financial hardship." § 10.32.255(A)-(C). With

25   respect to the latter, the Ordinance authorizes the City Manager to "promulgate [] regulations" on

26   "[t]he criteria by which a person can claim a financial hardship exemption." § 10.32.235(A)(4).

27   _____

28   [2] "§_" on its own refers to a section of the Ordinance, which is attached as Exhibit K to the FAC.

1   The City Manager has not yet promulgated these regulations. *See* Decl. of Sarah Zarate, City

2   Manager's Office ("CMO Decl.") ¶¶ 4-8. With respect to all non-exempt persons, the Ordinance

3   imposes three main requirements.

### 1.   Liability Insurance Requirement

5   First, gunowners must obtain "a homeowner's, renter's or gun liability insurance policy …

6   specifically covering losses or damages resulting from any accidental use of the Firearm, including

7   but not limited to death, injury or property damage" within 30 days of the Ordinance taking effect

8   (i.e., September 7, 2022) or a later date prescribed by regulation. § 10.32.210(A), (C). The purpose

9   of the liability insurance requirement is to ensure victims of accidental shootings have access to

10   compensation, and to leverage private insurance market forces as a means of "encouraging safer

11   behavior." § 10.32.220(B)(11)-(12). The Ordinance authorizes the City Manager to "promulgate []

12   regulations" on "[p]rocesses and procedures related to the implementation of the liability insurance

13   requirement, and forms necessary thereto," which it must complete before the Ordinance can be

14   fully effectuated. § 10.32.235(A)(1); CMO Decl. ¶¶ 4-8.

### 2.   Annual Gun Harm Reduction Fee

16   Second, gunowners must pay an annual Fee to make available voluntary programming and

17   services to gunowner residents, "to members of their household, or to those with whom they have

18   a close familiar or intimate relationship" (§§10.32.215, 10.32.220(A)) with the goal of

19   "encourage[ing] safer behavior" related to gun ownership and use (§ 10.32.200(B)(13)). The

20   programs and services will focus on suicide prevention, violence reduction and gender-based

21   violence, addiction intervention and substance abuse treatment, mental health services related to

22   gun violence, and firearms safety education or training. § 10.32.220(A)(1)-(5). These programs

23   and services will be provided to qualifying City residents by a nonprofit organization to be

24   designated by the City Manager. § 10.32.205(B); CMO Decl. ¶ 6. While the City may not

25   "specifically direct" how the nonprofit spends monies from the Fee, the Ordinance is clear that

26   "[n]o portion of the monies … shall be used for litigation, political advocacy, or lobbying

27   activities." § 10.32.200(B)-(C).

28

The Ordinance does not set the amount of the Fee but leaves that to be "established by [separate] resolution of the City Council." § 10.32.215. *Accord* ¶¶ 1, 36, 90-91 (alleging that, under Ordinance, Fee amount is "unspecified" and City Council must "determine the fee amount at a later date"). To date, no such resolution has been passed. CMO Decl. ¶¶ 7-8. The Ordinance also authorizes the City Manager to "promulgate [] regulations" concerning the "[d]esignation of the nonprofit organization that will receive the [Fee], any processes and procedures related to the payment of the fee, and any additional guidelines or auditing of the use of the monies from the fee" (§ 10.32.235(A)(2)), as well as the annual due date for payment of the Fee (§ 10.32.215). The City Manager has not yet promulgated these regulations. CMO Decl. ¶¶ 7-8. *Accord* ¶¶ 1, 37, 91 (conceding nonprofit has not yet been designated and characterizing services to be provided as "unspecified programs").

### 3. Self-Certification of Compliance

Third, much in the same way car owners must document their compliance with liability insurance and annual registration fee requirements, the Ordinance requires gunowners to complete a "City-designated attestation form" that states basic information about their gun liability insurance and to keep that form and "proof of payment of the [Fee]" "with the[ir] Firearms where they are being stored or transported." § 10.32.230(A)-(B). Gunowners must also produce the form and proof of payment "when lawfully requested to do so by a peace officer." § 10.32.230(A). The City Manager has not yet designated the attestation form. CMO Decl. ¶ 5.

Violations of the Ordinance are punishable by an administrative citation and fine, subject to due process protections. § 10.32.240(A). Similar to the Fee, the Ordinance does not set the amount of the administrative fine but leaves that to be "established by [separate] resolution of the City Council." § 10.32.240(B). To date, no such resolution has been passed. CMO Decl. ¶¶ 7-8. *Accord* ¶¶ 17, 90 (conceding fine amount is presently "unspecified"). Contrary to Plaintiffs' allegations that the Ordinance authorizes the "seizure of firearms" of those who fail or refuse to comply with the Ordinance (¶¶ 3, 44), the Ordinance only authorizes the "impoundment" of firearms and only "to the extent allowed by law" (§ 10.32.245). There is currently no lawful basis to impound firearms under state or federal law, meaning this particular provision will not take effect until, for

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF** 5

example, the passage of a state law permitting municipalities to impound firearms. The Ordinance also contains a severability clause. § 3.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

The plaintiff bears the burden of establishing the Court has jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).[3] The Court's proper role is "to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution," which means it lacks jurisdiction "to issue advisory opinions []or to declare rights in hypothetical cases." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The doctrine of ripeness "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* Ripeness "is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "A Rule 12(b)(1) jurisdictional attack may be facial or factual," *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The City primarily makes a facial attack, that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* To the extent the Court deems any part of the City's argument to represent a factual attack disputing the truth of Plaintiffs' allegations purporting to establish federal jurisdiction, the court "need not presume the truthfulness of the plaintiff's allegations" and "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

### B.   Rule 12(b)(6)

Defendants are entitled to dismissal under Rule 12(b)(6) if, accepting Plaintiffs' allegations as true, the complaint fails to state a claim. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The Court should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiffs' "obligation to provide the 'grounds' of [their]

---

[3] Unless otherwise noted, internal citations, alterations, and quotations are omitted.

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The allegations must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## IV.   ARGUMENT

### A.  THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(b)(1).

#### 1.  The FAC Fails for Lack of Ripeness.

The Ordinance was enacted in February 2022, but it expressly provides a 180-day period before it becomes effective on August 7, 2022 (§ 2), during which time the Council would need to pass resolutions setting the amount of the Fee and any administrative fine (§§ 10.32.215, 10.32.240(B)), and the City Manager would promulgate key regulations, such as those establishing the criteria for the financial hardship exemption and designating the nonprofit organization (§ 10.32.235(A)). *See generally* CMO Decl. Since the Ordinance is not yet "effective," and since none of the required resolutions or regulations have yet been passed or promulgated, Plaintiffs' claims are not ripe for review. *See Scholl v. Mnuchin*, 489 F.Supp.3d 1008, 1024-27 (N.D. Cal. 2020).

Ripeness is justiciability doctrine that looks primarily at two considerations: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). The "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements" (*id.* at 148), and to ensure that challenges to laws are "test[ed] … in a concrete situation" (*Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 165 (1967)). Pre-enforcement challenges to laws are not ripe for judicial review if it is likely that the law will change before it goes into effect. *See, e.g., Cramer v. Brown*, 2012 WL 13059699, at *3 (C.D. Cal. Sept. 12, 2012) (finding pre-enforcement claim justiciable, in part, because the legislature "ha[d] no power to amend the statute before its effective date" and there was "no reason

to think the law change"). Additionally, an issue "may not be ripe for review if further factual development would significantly advance [the court's] ability to deal with the legal issues presented." *Nat'l Park Hosp. Assn. v. Dep't. of Interior*, 538 U.S. 803, 812 (2003); *see also Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122-23 (9th Cir. 2010) (case not ripe if it "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all"); *Vieux v. Easy Bay Reg'l Park Dist.*, 906 F.3d 1330, 1344 (9th Cir. 1990) (federal courts may not issue advisory opinions based on a "hypothetical state of facts").

"The prudential considerations of ripeness are amplified when constitutional considerations are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) ("*Scott*"). Indeed, "[t]he Supreme Court has neatly instructed that the jurisdiction of federal courts to hear constitutional challenges should be exercised only when the underlying constitutional issues [are tendered] in clean-cut and concrete form." *Id.* (quoting *Rescue Army v. Mun. Ct. of Los Angeles*, 332 U.S. 549, 584 (1947)). In *Scott*, for example, the Ninth Circuit determined that an equal protection challenge to an admissions policy was not ripe because it lacked a "basis to infer" how the policy's criteria was to be implemented. 306 F.3d at 663. And "[w]ithout knowing the conditions under which the policy was to be implemented, no court can make a true determination as to whether the policy" passes constitutional muster. *Id.*

Here, Plaintiffs' claims are not ripe for precisely the same reasons Plaintiffs repeatedly emphasize on the face of the FAC—i.e., because key aspects of the Ordinance that Plaintiffs challenge have not yet been established. *See, e.g.*, ¶¶ 1, 36-37, 90-91. For example, Plaintiffs challenge the constitutionality of the insurance and Fee requirements as an unconstitutional burden on Second Amendment rights, even Plaintiffs' allege the amount of the Fee and the cost of the required insurance is "as yet unknown." ¶¶ 1, 90. This is precisely the kind of situation in which it is "premature" to ask a federal court "to issue a binding interpretation of a local ordinance based on what might happen in the future without first giving the City … the opportunity to interpret its own ordinance." *United States v. Power Co.*, 2008 WL 2626989, at *4 (D. Nev. June 26, 2008). Since claims are not ripe when based on "mere speculation" as to what a future regulatory decision will be (*United States v. Gila Valley Irr. Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994)), they certainly

are not ripe when the plaintiffs' own complaint admits that necessary legislative action and rulemaking has not yet occurred, and plaintiffs have no idea what the content of those items will be. *See, e.g.*, ¶¶ 1, 36-37, 90-91. As for Plaintiffs' speculative fears that firearms will be "seized" and onerous fines imposed, that also is not ripe for review because it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Young v. Hawaii*, 992 F.3d 765, 828 (9th Cir. 2021) (en banc) ("*Young*").

Similarly, Plaintiffs' First Amendment challenge is based on allegations that the "yet-to-be-determined nonprofit" will "likely" be "dedicated to exclusively preaching the negative risks of gun ownership," and that it will administer "unspecified programs" and "activities of ideological or political nature with which Plaintiffs disagree," such as "endorsing gun control." ¶¶ 6, 53, 62-63, 112. This is all speculation that ignores the Ordinance's express limitations on the nonprofit's activities. § 10.32.220(B) (expressly prohibiting nonprofit from spending any "portion of the monies from the [Fee]" on "litigation, political advocacy, or lobbying activities"). Plaintiffs' speculation about the "likely" views and activities of the yet-to-be-determined nonprofit is also devoid of factual support. *See Sierra Club v. United States Army Corps of Eng'rs*, 990 F.Supp.2d 9, 31-32 (D.C. Cir. 2013) (grounds for preliminary injunction not ripe where the complained-of conduct "has not yet occurred and is still in the process of being addressed").

### 2. The FAC Does Not State a Proper Facial Constitutional Challenge.

In addition to being unripe for review, Plaintiffs' facial challenge to the Ordinance should be rejected for other reasons. Courts may not "resolve questions of constitutionality with respect to each potential situation that might develop" in litigation, especially when the moving party does not demonstrate that the law "would be unconstitutional in a large fraction of relevant cases." *Gonzales v. Carhart*, 550 U.S. 124, 167-68 (2007). Because constitutional facial challenges "often rest on speculation" (*Jackson v. City and County of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014) ("*Jackson*")), "they raise the risk of premature interpretations of statutes on the basis of factually barebones records," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner inconsistent with the Constitution" (*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51

(2008)). To be successful, a facial challenge must show that "no set of circumstances exists under which the [law] would be valid, i.e., that the law is unconstitutional in all of its applications," or at least that it lacks a "plainly legitimate sweep." *Id.* at 449.

Plaintiffs fail to allege facts establishing that the Fee would be unconstitutional in a "large fraction" of cases, especially since the amount of the Fee has not even been determined yet. Assuming the Council and City Manager establish constitutionally reasonable fees, fines, and regulations, the Ordinance's sweep is plainly legitimate because it furthers the City's legitimate efforts to reduce the harm caused by gun-related accidents and imposes only de minimus or marginal burdens on the constitutional right to obtain a keep a firearm in the home for self-defense. *Cf. Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) (en banc), *cert. denied*, 133 S. Ct. 840 (2013) (rejecting facial challenge to ordinance that regulated gun shows "only minimally and only on county property," without even requiring empirical support justifying the regulation). Plaintiffs' FAC should be dismissed for this reason alone.

## B.  THE COURT SHOULD DISMISS THE FAC UNDER RULE 12(b)(6).

### 1.  Plaintiffs Fail to State a Second Amendment Claim.

Plaintiffs contend the Ordinance impermissibly burdens the Second Amendment rights of City residents to whom the Ordinance applies. ¶¶ 45-49. The Ninth Circuit adjudicates Second Amendment challenges using a two-step test, which "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). For purposes of this Motion, Defendants concede the Ordinance imposes some minimal or slight burden, and so proceed to the second step of the test. *See e.g., Heller*, 554 U.S. at 625; *Jackson*, 746 F.3d at 959.

#### a.  The Appropriate Level of Scrutiny is Intermediate Scrutiny.

To determine the appropriate level of scrutiny, Courts look to two factors. First, Courts assess how close the law comes to the core of the Second Amendment right, which is the right to keep firearms in the home for purposes of self-defense. *Heller*, 554 U.S. at 629; *Jackson*, 746 F.3d at 963. Unless the challenged law "implicates the core of the Second Amendment right and severely burdens that right," courts in the Ninth Circuit generally apply intermediate scrutiny.

1    *Young*, F.3d 765 at 784; *see also Heller v. District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir.

2    2011) ("*Heller II*") ("[A] regulation that imposes a substantial burden upon the core right of self-

3    defense protected by the Second Amendment must have a strong justification, whereas a regulation

4    that imposes a less substantial burden should be proportionately easier to justify."). Here,

5    intermediate scrutiny applies because the Ordinance does not "impos[e] restrictions on the use of

6    handguns within the home" or otherwise come close to regulating the core Second Amendment

7    right of keeping firearms in the home for self-defense. *Jackson*, 746 F.3d at 963. The Ordinance

8    merely requires resident gunowners to obtain liability insurance to provide a mechanism for

9    compensating victims of accidental gun injuries, and to pay a reasonable Fee to fund services

10   aimed at reducing well-established harms that result from guns being present in the home.

11   §§ 10.32.210(A), 10.32.215, 10.32.220.

12        The second factor of the scrutiny evaluation requires the Court to assess the "severity of the

13   law's burden" on the core Second Amendment right. *Jackson*, 746 F.3d at 963. A law that

14   "severely burdens that right receives strict scrutiny," but in all "other cases in which Second

15   Amendment rights are affected in some lesser way, we apply intermediate scrutiny." *Young*, 992

16   F.3d at 784. Laws that regulate only the "manner in which persons may exercise their Second

17   Amendment rights" are obviously less burdensome than those which ban firearm possession

18   completely. *Jackson*, 746 F.3d at 961 (citing *Chovan*, 735 F.3d at 1138). Similarly, "firearm

19   regulations which leave open alternative channels for self-defense are less likely to place a severe

20   burden on the Second Amendment right than those which do not. *Jackson*, 746 F.3d at 961; *see*

21   *also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (noting that laws placing "reasonable

22   restrictions on the time, place, or manner of protected speech" and that "leave open alternative

23   channels" for communication pose less burden to a First Amendment right and are reviewed under

24   intermediate scrutiny).

25        Here, the burden the Ordinance imposes is minimal: it neither regulates the use of firearms,

26   how or where they are stored, nor any other factors evaluated by courts as directly affecting

27   residents' ability to keep and bear arms for self-defense. *See e.g.*, *Heller*, 554 U.S. at 629. Instead,

28   it merely requires gunowners to obtain insurance and pay a reasonable annual Fee.

§§ 10.32.210(A), 10.32.215. The Ordinance neither seeks to ban guns nor threatens to seize them. Indeed, the Ninth Circuit (in line with the other Circuits) has long applied intermediate scrutiny to uphold similar laws. *See, e.g., Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) (upholding DOJ's use of gun sale fee for enforcement efforts targeting illegal firearm possession after point of sale under intermediate scrutiny); *Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015) ("*Heller III*") (upholding $48 in gun licensing fees under intermediate scrutiny; *Kwong v. Bloomberg*, 723 F.3d 160, 161, 167 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014) (upholding $340 gun licensing fee under intermediate scrutiny); *O'Connell v. Gross*, No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020) (upholding law requiring mandatory safety courses and $300 in fees under intermediate scrutiny). Intermediate scrutiny is appropriate.

### *b.* The Ordinance Easily Survives Intermediate Scrutiny.

To withstand intermediate scrutiny, the City need only show (1) that their stated objective is significant, substantial, or important; and (2) a reasonable fit between the Ordinance and that objective. *Chovan*, 735 F.3d at 1139.

First, the City's objective of promoting public safety and addressing gun injuries is an "important" government interest. *Chovan*, 735 F.3d at 1139; *see also Fyock*, 779 F.3d at 1000 (it is "self-evident" that government's interest in promoting public safety and reducing violent crime are substantial and important government interests"); *Stimmel v. Sessions*, 879 F.3d 198, 201 (6th Cir. 2018) (referring to "government's compelling interest of preventing gun violence"); *Torcivia v. Suffolk Cty., New York*, 17 F.4th 342, 359 (2d Cir. 2021) (finding a "substantial governmental interest in preventing suicide and domestic violence"). The Ordinance's other stated purpose of reducing the social and financial costs caused by guns (§ 10.32.200(B)) is also an important interest. *See, e.g., Bauer*, 858 F.3d at 1226; *Kwong*, 723 F.3d at 168 (city permitted to recover costs as part of scheme "designed to promote public safety and prevent gun violence"). There can be no serious doubt that gun violence is a major public health crisis. *See* U.S. Centers for Disease Control and Prevention, *Firearm Violence Prevention*, available at https://www.cdc.gov/violenceprevention/firearms/fastfact.html (accessed Apr. 6, 2022) (deeming

firearm injuries a "serious public health problem."). Thus, the Ordinance clearly meets the first prong under intermediate scrutiny.

Second, there is a reasonable fit between the challenged regulation and the City's objective. *See Chovan*, 735 F.3d at 1139. When assessing the reasonableness of fit under immediate scrutiny, courts must give "substantial deference to the predictive judgments" of the legislature on public policy questions that fall outside the courts' competence. *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) ("*Turner II*"). This is because "the legislature is far better equipped than the judiciary to make sensitive public policy judgments (within constitutional limits)" on complex empirical questions like "the dangers in carrying firearms and the manner to combat those risks." *Kachalsky v. County of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994) ("*Turner I*")). This Court's "sole obligation" is simply "to assure that, in formulating its judgments, [the legislature] has drawn reasonable inferences based on substantial evidence." *Turner II*, 520 U.S. at 181. That standard is easily met here.

The City's reasonable legislative judgments are entitled to deference. Plaintiffs' vaguely allege the Ordinance is "not a reasonable fit" with its stated aims of reducing gun injuries and reducing and offsetting some of the enormous social costs of gun injuries and violence in the City. *See* ¶¶ 52-56, 96. Simply because "primary costs" of gun violence are associated with City response costs does not detract from the City's lawful goal (and authority) to prevent and reduce gun injuries and associated costs for the City and its residents in the first instance, with the goal of saving the City and its residents from ever incurring the related costs. That the Ordinance does not also seek to recover police or other response costs does not somehow invalidate it. And in any event, the PIRE study does include findings related to suicide and self-inflicted harm, which the Ordinance seeks to address.

Moreover, the City relied on several studies and findings to form its reasonable judgment that an insurance mandate will deter, prevent, or reduce accidental gun harm. *See e.g.*, Prevost Decl. ¶ 12, Ex. 11 (*The New England Journal of Medicine* article "Handgun Ownership and Suicide in California," cited in Ordinance findings at § 10.32.200(B)(6)). The City also evaluated and reviewed materials concerning the civil liability and financial harm arising from gun violence.

1   *See id.* ¶ 13, Ex. 12 (The Educational Fund to Stop Gun Violence, "Unintentional Shootings"); *id.*

2   ¶ 14, Ex. 13 (Hartford Courant, "Sandy Hook Families Settle Lawsuits Against Lanza Estate for

3   $1.5M"); *id*. ¶ 15, Ex. 14 (Gilman & Bedigian LLC, "Man who shot intruder in his home sued for

4   wrongful death"). The Ordinance is also based on the City's reasonable judgment that requiring

5   gun liability insurance might be effective in reducing harm, relying on the useful analogue of

6   automobile liability insurance. *See* § 10.32.200(B)(8) (noting "risk-adjusted premiums used by the

7   automobile insurance industry reduced per-mail auto fatalities by 80% over the past five decades

8   and saved 3.5 million lives"); Prevost Decl. ¶ 8, Ex. 7 (compendium of materials provided to City

9   Council in advance its January 25, 2022 meeting).

10          This multitude of studies support the City's view that the Ordinance's insurance mandate,

11   annual Fee requirement, and related education programming and services will positively improve

12   public health, safety, and well-being. Indeed, a city is allowed "a reasonable opportunity to

13   experiment with solutions to admittedly serious problems," such as unintentional harm caused by

14   firearms. *Jackson*, 746 F.3d at 966 (citing *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41,

15   52 (1986)). The Ordinance findings and legislative record more than sufficiently support the

16   reasonableness of the fit between City's important interests in deterring gun-related deaths and

17   injuries and compensating victims of accidental shootings. *See City of Renton*, 475 U.S. at 51-52;

18   *Jackson*, 746 F.3d at 969. Additionally, Plaintiffs are well-aware that the Mayor has publicly

19   proposed a mere $25 fee in a Memorandum provided for Council's review. *See* Prevost Decl. ¶ 5,

20   Ex. 4. Yet the FAC contains no non-conclusory allegations as to why such a minimal Fee would be

21   an unconstitutional burden on Second Amendment rights. Nor do Plaintiffs' claims account for the

22   Ordinance's "financial hardship" exemption, which would exempt from the Ordinance's

23   requirements any person who meets its yet-to-be-promulgated criteria. §§ 10.32.225(C),

24   10.32.235(A)(4).

25          Ultimately, Plaintiffs' allegations regarding the purported lack of a "reasonable fit"

26   between the Ordinance and the City's important interests are far too limited, ignore key provisions

27   of the Ordinance, and ignore the deference due to a municipality's reasonable legislative

28   judgments. *See City of Renton*, 475 U.S. at 51-52 (municipality may rely on any evidence

1    "reasonably believed to be relevant" to substantiate its important interest in regulating speech);

2    *Jackson*, 746 F.3d at 969 (finding San Francisco's evidence more than "fairly supports" its

3    conclusion that hollow point bullets are lethal).

4         Tellingly, Plaintiffs' cited cases in its FAC (*see* ¶¶ 46-49, 86-87) striking down gun laws

5    are inapposite as they either concerned "handgun bans," a far more severe burden than the

6    Ordinance here (*McDonald v. City of Chicago*, 561 U.S. 742, 750, 792 (2010); *District of*

7    *Columbia v. Heller*, 554 U.S. 570, 635 (2008)), or actually contradict their position. *See Nordyke v.*

8    *King*, 681 F.3d 1041, 1044-45 (9th Cir. 2012) (en banc) (upholding constitutionality of ordinance

9    regulating display of guns at gun shows "no matter what form of scrutiny applies"); *United States*

10   *v. Masciandaro*, 638 F.3d 458, 459-60 (4th Cir. 2011) (upholding constitutionality of federal law

11   prohibiting carrying or possessing a loaded handgun in a motor vehicle in a national park area);

12   *Bauer*, 858 F.3d 1216 (upholding California law requiring payment of $19 fee on every firearm

13   sale conducted in the state because of the "minimal nature of the burden" and plaintiff's failure to

14   show the fee "has any impact on [his] actual ability to obtain and possess a firearm"); *Kwong*, 723

15   F.3d at 161, 167 (upholding mandatory $340 three-year gun license fee because it imposed merely

16   a "marginal, incremental, or [] appreciable [but not substantial] restraint" on Second Amendment

17   rights, "especially considering that plaintiffs [] put forth no evidence … that the fee is prohibitively

18   expensive"). Like the plaintiffs in *Bauer* and *Kwong*, Plaintiffs' FAC provides no facts  on the cost

19   of the liability insurance or annual fee requirements, nor that the Ordinance's "financial hardship"

20   exception under Section 10.32.225(C) would fail to fully address this concern.

21        Rather, Plaintiffs rely on three decades-old First Amendment fee cases (¶¶ 1, 57-58, 85-

22   86), all of which are readily distinguishable. *See Minneapolis Star and Tribune Co. v. Minnesota*

23   *Comm'r of Rev.*, 460 U.S. 575, 591-92 (1983) (newspaper tax held unconstitutional because it was

24   "tailor[ed]" so that "a small group" of newspapers were required to pay enormous taxes); *Murdock*

25   *v. Pennsylvania*, 319 U.S. 105, 113-14 (1943) (striking down licensing fee that was "not a nominal

26   fee" properly imposed as a regulatory measure); *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941)

27   (holding that fee imposed on a constitutional right cannot not be a general "revenue tax"). Indeed,

28   the Ninth Circuit has rejected the same argument Plaintiffs make here. *See Bauer*, 858 F.3d at 1225

1    (upholding constitutionality of California law imposing $19 fee on all gun sales). The Ordinance is

2    constitutional under *Bauer*, *Murdock*, *and Cox* because the Ordinance's liability insurance and

3    annual Fee requirements are carefully tailored to ensure they are not a general revenue tax, directly

4    further the maintenance of public order in the matter regulated, and are even subject to a "financial

5    hardship" exception. § 10.32.225(C). In sum, intermediate scrutiny applies, and the Ordinance

6    clearly survives. Plaintiffs fail to state a claim under the Second Amendment.

7              **2.   Plaintiffs Fail to State a First Amendment Claim Based on Compelled**

8                   **Speech or Association.**

9         Plaintiffs' First Amendment claim is based on speculation that a yet-to-be-designated

10   nonprofit with unknown leadership is likely hold anti-gun views and be hostile to the Second

11   Amendment. ¶¶ 60-64. This claim should be dismissed as pure speculation and for ignoring,

12   among other things, that the political advocacy that Plaintiffs fear the nonprofit might engage in is

13   expressly prohibited by the Ordinance. § 10.32.220(B) (providing that no portion of the Fee may

14   be used "for litigation, political activity, or lobbying activities").

15        Additionally, Plaintiffs' authorities cited in the FAC (i.e., a Thomas Jefferson quote and

16   two Supreme Court decisions from disparate contexts) do not support their First Amendment claim

17   that the Ordinance's Fee requirement is compelled speech in violation of the First Amendment.

18   ¶¶ 61, 63, 110-113. First, *Janus* concerns whether non-union public employees can be compelled

19   to pay union dues to fund the unions' political lobbying, advertising, litigation, and social and

20   recreational activities, and other activities. *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2459-

21   61, 2480 (2018). *Janus's* holding and reasoning are deeply rooted in the union context. *See, e.g.,*

22   *id.* at 2486 ("State and public sector unions may [not] extract agency fees from nonconsenting

23   employees . . . [u]nless employees clearly and affirmatively consent[.]"). Second, Plaintiffs cite a

24   case against the State Bar concerning the use of compulsory bar membership dues to engage in

25   political activities, such as "lobbying for or against state legislation," opposing federal legislation,

26   and endorsing political measures. *See Keller v. State Bar of California*, 496 U.S. 1, 15 (1990).

27        Tellingly, Plaintiffs never explain why language and reasoning from these factually

28   inapposite cases should be extracted from their highly specific public union and State Bar contexts

and applied to an entirely different scenario, where a legislature seeks funds for reasonable measures to carry out its police powers to protect public health and safety. Nor do Plaintiffs cite any cases in which a court has applied these cases in that context, much less relied on them (as Plaintiffs do), to strike down a gun regulation. Plaintiffs' argument should be rejected for these reasons alone. The core concern of the First Amendment compelled speech doctrine—i.e., prohibiting compelled speech and association in matters of political lobbying, advocacy, or litigation—simply does not exist here. *See also Keller*, 496 U.S. at 12-13 (1990) ("If every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would be limited to those in the private sector, and the role of government as we know it radically transformed.").

Ultimately, Plaintiffs fail to plausibly allege that the Ordinance will compel speech with which they do not agree—especially in view of federalism concern that federal courts should not invalidate state laws on the grounds that they violate the right of association based only on "factual assumptions." *Wash. State Grange*, 552 U.S. at 457; *accord Cal. Democratic Party v. Jones*, 530 U.S. 567, 600 (2000) (Stevens, J., dissenting) ("[A]n empirically debatable assumption … is too thin a reed to support a credible First Amendment distinction" with respect to burdens on association). Plaintiffs' First Amendment claim should be dismissed.

### 3.   Plaintiffs Fail to Sufficiently Allege State Law Preemption.

Plaintiffs argue that the Ordinance is preempted by state law under Article XI, Section 7 of the California Constitution. ¶¶ 65-69. Under that provision, a local ordinance that is "in conflict with the general laws" is preempted and void, but a "city may make and enforce … all local, … sanitary, and other ordinances … not in conflict with general laws" under its police power. Cal. Const., Art. XI, § 7. The "general rule" is that "ordinances will be upheld against constitutional challenge if they are reasonably related to promoting the health, safety, comfort and welfare of the public, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose." *Sunset Amusement Co. v. Bd. of Police Comm'rs*, 7 Cal.3d 64, 72 (1972). The Ordinance here fits well within that general rule.

Additionally, under Article XI, Section 5(a) of the California Constitution, charter cities (like San Jose) have the right to adopt ordinances that conflict with general state laws, provided the subject of the ordinance is a "municipal affair" rather than one of "statewide concern." As to matters of "statewide concern," charter cities remain subject to and controlled by applicable general state laws only "if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation." *Bishop v. City of San Jose*, 1 Cal.3d 56, 60-61 (1969). A law is preempted if it "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal.4th 893, 897-98 (1993).

Here, Plaintiffs do not argue that the Ordinance duplicates or contradicts state law. Instead, they argue that "[g]un regulation is already fully occupied by the State of California." ¶ 68. Plaintiffs ignore that gun regulation as a whole has not been fully occupied by general law. *Great Western Shows, Inc. v. County of Los Angeles*, 27 Cal.4th 853, 861 (Cal. 2002). Instead, the State Legislature has expressly preempted only discrete areas of gun regulation, such as permitting, licensing, and registration of firearms. *See* Cal. Pen. Code § 25605 (permitting and licensing); Cal. Gov. Code § 53071 (registration and licensing). The State has neither expressly nor impliedly preempted the entire field of gun regulation, or the discrete areas regulated by the Ordinance here (e.g., firearm liability insurance, the provision of voluntary programming and services to gunowner households to improve public health and safety). This impedes Plaintiffs' preemption argument.

Additionally, Plaintiffs ignore the test for preemption. A local ordinance can only duplicate or contradict state law if it addresses the exact same subject matter of the state law. In *Great Western Shows*, for example, the California Supreme Court explained that, in a prior case, it had "distinguished between licensing, which signifies permission or authorization, and registration, which entails recording 'formally and exactly' and therefore declined to find express conflict between the statute and the ordinance." 27 Cal.4th at 860-61 (2002) (citing *Galvan v. Superior Court*, 70 Cal.2d 851 (1969)). Here, the Ordinance has nothing to do with licensing. It neither prevents nor expressly authorizes City residents to obtain gun licenses, prevents a law enforcement official from issuing a license, or creates new or different requirements for obtaining a license.

Indeed, it expressly exempts from its requirements any gunowner with a concealed weapon license under State law, indicating the City's intent not to encroach into State territory. § 10.32.225(B). Permitting, licensing, and registration concern completely different subjects than the insurance mandate contained within the Ordinance. *See Great Western Shows*, 27 Cal.4th at 860-61; *Galvan*, 70 Cal.2d 85.

Numerous California state courts have upheld gun regulations, rejecting preemption arguments similar to those Plaintiffs make here. *See e.g., Calguns Foundation, Inc. v. County of San Mateo*, 218 Cal.App.4th 661 (2013) (upholding county ban on gun possession in County parks); *Cal. Rifle & Pistol Assn. v. City of West Hollywood*, 66 Cal.App.4th 1302 (1998) (ordinance banning sale of "Saturday Night Special" handgun); *Olsen v McGillicuddy*, 15 Cal. App. 3d 897 (1971) (upholding ordinance prohibiting gun possession in cars); *Great Western Shows*, 27 Cal. 4th 853, 863 (2002) (upholding regulation of gun sales on municipal land). Plaintiffs' state preemption argument is without merit and should be dismissed.

### 4. Plaintiffs Fail to State a Claim that the Ordinance Imposes a Tax in Violation of the California Constitution.

Plaintiffs argue that the Ordinance's insurance mandate and Fee requirements are taxes that may not be imposed without voter approval under California Constitution Article XIII C, as amended by Proposition 26. ¶¶ 70-72. A tax is defined to include any levy, charge, or exaction of any kind imposed by a local government. Cal. Const., Art. XIII C, § 1 ("Proposition 26"). Proposition 26 sets forth seven exemptions to this rule. *Id*. However, neither the insurance mandate nor the Fee constitute a tax because (aside from modest administrative costs) none of the proceeds from those requirements will pass into government hands. *See Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (2013).

In *Schmeer*, Los Angeles County enacted an ordinance that prohibited retail stores in unincorporated areas of the county from providing disposable plastic carryout bags to customers. 213 Cal.App.4th at 1314. The stores could provide recyclable paper carryout bags but were required to charge customers ten cents per bag. *Id*. Critically, the proceeds of the paper bag sales were retained by the store—not the County—to be used for prescribed purposes, including to cover

the actual costs of the paper bags. Id. The *Schmeer* plaintiffs sued on the same theory advanced by Plaintiffs here: that the bag charge is a tax as defined by Proposition 26. The court ruled that because the proceeds of the bag charge are retained by the retail store and not remitted to the county, the voter approval requirements of Article XIII C, § 2 [were] therefore inapplicable." *Id.* at 1326, 1329. Applied here, Schmeer makes clear that Plaintiffs' failure to explain how money that never passes to the City could constitute a tax is fatal to their Proposition 26 claim. Under the Ordinance, all monies from payment of the annual Fee will go directly to the nonprofit organization, insurance premiums will be paid to insurance carriers, and insurance claims will be paid out to victims of accidental gun injuries. *See* §§ 10.32.215, 10.32.220. The City will receive none of the monies at issue.

Schmeer also defeats the Plaintiffs' argument that the City must prove that the amount of the fees is no more than necessary to cover the reasonable costs of the governmental activity and that the manner in which those costs are allocated to a payor bear a reasonable relationship to the payor's burdens on, or benefits from, the governmental activity. ¶ 42. But even if it did not, this argument would fail for the separate and independent reason that Fee money collected from gunowners would be fairly categorized under the exception from Proposition 26 for fees "imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged." Cal. Const., Art. XIII C, § 1 ("specific benefit exemption"); *see also S. Cal. Edison Co. v. Pub. Util. Comm'n*, 227 Cal.App.4th 172, 200 (2014) (finding a public utility fee was "designed to benefit … ratepayers" and "[t]he possibility that some EPIC research may incidentally provide a social benefit to the public at large does not transform EPIC into a tax where a discrete group, namely the utility corporations' ratepayers, is specifically benefitted.")

In sum, neither the insurance mandate nor the Fee is a tax under Proposition 26, and Plaintiffs' claim should be dismissed.

### 5.  The Ordinance Does Not Violate the San Jose City Charter.

Plaintiffs allege that the Ordinance violates the San Jose City Charter ("Charter") "by prohibiting the San Jose City Council from using its budgetary and appropriating powers to direct

how" the designated nonprofit expends the Fee, and by "divert[ing] a City fee to a nonprofit rather than the City's General Fund." ¶¶ 73-81. Both arguments fail.

When interpreting a California statute, Federal courts apply California rules of statutory construction. *Lares v. West Bank One*, 188 F.3d 1166, 1168 (9th Cir. 1999). The same rules of construction apply to local ordinances and city charters. *See 1300 N. Curson Investors, LLC v. Drumea*, 225 Cal.App.4th 325, 332 (2014); *Laurent v. City and County of San Francisco*, 99 Cal.App.2d 707, 708 (1950). The language of the Charter and the Ordinance must be read in the context of the respective statutes as a whole. *See Isaakhani v. Shadow Glen Homeowners Assn., Inc.*, 63 Cal.App.5th 917, 931-932 (2021); *City of San Jose v. Lynch*, 4 Cal.2d 760, 766 (1935). And when interpreting a statute, the court must "avoid a construction that would lead to impractical or unworkable results." *Los Angeles Unified Sch. Dist. v. Garcia*, 58 Cal.4th 175, 194 (2013). But read in context, the isolated the provisions of the Ordinance and the Charter upon which Plaintiffs rely do not support their conclusion.

### a.   The Charter Does Not Require Placing the Fee into the General Fund.

Plaintiffs ignore the first sentence of Section 1211 of the Charter, which states that "[a]ll monies paid into the San Jose City Treasury shall be credited to and kept in separate funds in accordance with provisions of this Charter or ordinance." *Id.* When read together with the sentences that follow, it is clear the General Fund applies to "monies paid into the City Treasury." *Id.* But the Ordinance requires that the Fee be paid to the designated nonprofit, not "paid into the City Treasury." § 10.32.215.

### b.   The Fee is Not Subject to the Charter's Budgetary Procedures.

The premise of Plaintiffs' argument, that the Ordinance "violates the [Charter's] reservation of budgeting and appropriation power to the City Council," is incorrect. Sections 1204, 1206, and 1207 of the Charter do not apply to the Fee. All three sections concern the City's budgetary process, which expressly applies to "City departments, offices, and agencies" – not the designated nonprofit or the Fee it receives. Charter §§ 1204, 1206, 1207. The nonprofit is not a City department, office, or agency. Indeed, "[n]o City official or employee shall sit on the board of

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CASE NO. 5:22-CV-00501-BLF**

1   directors of the Designated Nonprofit Organization" (§ 10.32.305(B)), and the City "shall not

2   specifically direct how the monies from the [Fee] are expended" (§ 10.32.220(C)).

3   The Ordinance does not provide for or contemplate using the Fee for the operation of City

4   departments. § 10.32.220(C). Rather, the Ordinance requires the designated nonprofit to "spend

5   every dollar generated from the [Fee]" on programs and initiatives within a particular category –

6   none of which include the operation of offices, departments, or agencies of the City. *Id.*; *c.f.*

7   Charter § 1207. Therefore, the Fee is not subject to the City's budgetary process and Plaintiffs'

8   argument fails on its premise.

9                    ***c.   The Council Properly Delegated Regulatory Authority to the City***

10                    ***Manager.***

11          The City Manager is the Chief Administrative Officer and head of the administrative

12   branch of San Jose's council-manager government. Charter §§ 300, 700. The City Manager is thus

13   "responsible for the faithful execution of all laws, provisions of [the] Charter, and acts of the

14   Council which are subject to enforcement by the City Manager or by officers who are under the

15   City Manager's direction and supervision." *Id.* § 701(d).

16          The Council may lawfully delegate administrative or ministerial functions to the City

17   Manager. *Sacramento Chamber of Commerce v. Stephens*, 212 Cal. 607, 610 (1931). It is

18   sufficient that the Council "declare a policy, fix a primary standard, and authorize executive or

19   administrative officers to prescribe subsidiary rules and regulations that implement the policy and

20   standard and to determine the application of the policy or standard to the facts of particular cases."

21   *Birkenfeld v. City of Berkeley*, 17 Cal.3d 129, 167 (Cal. 1976) (citation omitted). That is precisely

22   the case here.

23          The Ordinance directs the City Manager to "implement the requirements and fulfill the

24   policies of [the Ordinance] relating to the reduction of gun harm," including by designating the

25   nonprofit receiving the Fee and setting forth "processes and procedures relating to the payment of

26   the fee, and any additional guidelines or auditing of the use of the monies from the fee." §

27   10.32.235 (A), *et seq*. The nonprofit clearly has more than vague directions from the City. ¶¶ 77,

28   143. Simply because the City "shall not specifically direct how" the designated nonprofit will

expend the fee, that does not "violate the City Charter's delegation of executive functions to the administrative branch of the City Government." *Id*. San Jose maintains authority over how the designated nonprofit expends the fee through the administrative oversight of the City Manager. (§ 10.32.235). But "[n]either Council nor any of its members nor the Mayor shall interfere with the execution by the City Manager of [their] powers and duties." Charter § 411. Therefore, authority over expenditure of the Fee is properly vested and Plaintiffs claim the City is violating its own charter are false.

### 6.  Plaintiffs Fail to State a Claim for Declaratory Relief.

Plaintiffs' make a claim for declaratory relief "to the extent that each of the claims above have not already established a remedy." ¶ 148. This claim should be dismissed as impermissibly duplicative of Plaintiffs' other five claims, and because it fails for all the same reasons as those set forth above.

### C.  THE FAC SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.

Defendants respectfully request that the FAC be dismissed without leave to amend, in light of futility, and serious federalism concerns. Preliminarily, the Ninth Circuit's permissive standards for granting leave to amend do not apply here. Rule 15(a) only allows parties to amend pleadings to "assert matters that were overlooked or were unknown *at the time the party interposed the original complaint*." 6 Wright & Miller, FED. PRAC. & PROC. § 1473 (3d ed. 2021). Both Plaintiffs' original complaint and FAC were filed before the Ordinance was effective. No amount of amending could teleport the FAC "to the future," to a time when the Ordinance is effective. And allowing Plaintiffs to supplement their pleadings under Rule 15(d) would also not be permissible. "If jurisdiction is lacking at the outset [of a litigation], the district court has no power to do anything with the case except dismiss." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989); *Lopez v. Turnage*, 2021 WL 5142070, at *1 (N.D. Cal. Oct. 15, 2021). Moreover, the Ordinance is what it is. The legal defects described in this Motion cannot be cured by adding different factual allegations to the FAC. "Any amendment would be futile." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

A practice of allowing plaintiffs to sue legislators before a bill is effective so that the plaintiffs could amend or supplement their pleadings when the bill becomes effective is inappropriate. *Rizzo v. Goode*, 423 U.S. 362, 380 (1976); *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1275 n.3 (9th Cir. 1981) (citing "federalism concerns" as reason for declining to exercise jurisdiction in litigation involving municipal police department policies); *Westlands Water Distrib. Dist. v. Nat. Res. Defense Council*, 276 F.Supp.2d 1046, 1051 (E.D. Cal. 2003). The Court should dismiss the FAC with prejudice.

## V.    CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss the FAC under Rules 12(b)(1) and 12(b)(6). Since the FAC's defects cannot be cured, Plaintiffs respectfully request the dismissal be without leave to amend.

Dated: April 8, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Tamarah Prevost*
       JOSEPH W. COTCHETT
       TAMARAH P. PREVOST
       ANDREW F. KIRTLEY
       MELISSA MONTENEGRO

       *Attorneys for Defendants*