# Exhibit 1

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

DAVID A. WARRINGTON*
dwarrington@dhillonlaw.com
CURTIS M. SCHUBE*
cschube@dhillonlaw.com
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, VA 22314
Telephone: (571) 400-2121

*Admission *Pro Hac Vice* forthcoming

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,** a nonprofit corporation, and **MARK SIKES,** an individual, | Case Number: 5:22-cv-00501-BLF |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND NOMINAL DAMAGES** |
| v. | |
| **CITY OF SAN JOSE, a public entity, JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL,** | Judge: Hon. Beth Labson Freeman |
| Defendants. | |



First Amended Complaint

No: 5:22-cv-00501-BLF

*"That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create…."* Justice John Marshall, *M'Culloch v. Maryland*, 17 U.S. 316, 431 (1819). *"A tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding governmental interest."* Justice Sandra Day O'Connor, *Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.*, 460 U.S. 575, 582 (1983).

Plaintiffs National Association for Gun Rights, Inc. ("NAGR"), and Mark Sikes ("Sikes"), by and through the undersigned counsel, hereby bring this action for injunctive relief, a declaratory judgment, and nominal damages as a result of the City of San Jose's unconstitutional and unlawful ordinance, specifically Part 6 of Chapter 10.32 of Title 10 of the San Jose Municipal Code (the "Ordinance"). In support of these requests, Plaintiffs state as follows:

## INTRODUCTION

1.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), and the government "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943). And yet, the City of San Jose has taken the unprecedented step of requiring virtually all gun owners within its city limits to pay unspecified sums of money to private insurance companies and an unspecified fee to an unidentified government-chosen nonprofit simply to exercise their constitutional right to own a gun, as well as an unspecified fee to the City for the costs of administering the unlawful Ordinance. Just as a tax on the fundamental right for the press to circulate its content "suggests that the goal of the regulation is not unrelated to suppression of expression," *Minneapolis Star and Tribune Co. v. Minnesota Comm'r of Rev.*, 460 U.S. 575, 586 (1983), San Jose's imposition of a tax, fee, or other arbitrary cost on gun ownership is intended to suppress gun ownership without furthering any government interest. In fact, the stated penalties for nonpayment of the insurance and fees include seizure of the citizen's gun. The Ordinance is, therefore, patently unconstitutional.

2.     Moreover, it is at home "where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628. Because California and the City of San Jose have already made it exceedingly difficult to lawfully carry a weapon outside the home, and the Ordinance only affects

First Amended Complaint                                          5:22-cv-00501-BLF

owners of lawfully owned guns, the Ordinance's true impact is solely on guns kept in the home by law-abiding citizens. If left intact, the City of San Jose's Ordinance would strike at the very core of the fundamental constitutional right to keep and bear arms and defend one's home.

3.      While threatening the seizure of firearms for failure to fund the city's chosen nonprofits in violation of the Second Amendment, the Ordinance does *nothing* to deter the scourge of unlawful ownership and use of guns by criminals or to recoup from them compensation for the extensive injuries and costs they cause. According to the City's own statistics in support of the Ordinance, "Injuries from unintentional shootings" nationally only comprise about a third of all gun-related injuries, Ordinance §10.32.200.B.10, and in the period from 2010 to 2014, only "thirty-one percent (31%) of emergency department visits and sixteen percent (16%) of hospitalizations from firearms injuries were due to unintentional shootings." *Id.* at §10.32.200.B.4. Consequently, this Ordinance—largely directed as it is at gun safety and liability protection for *unintentional* acts—does virtually *nothing* to impose its costs on the primary source of gun violence and its associated harms in San Jose: criminals committing intentional acts of violence with guns.

4.      Further, the Ordinance calculates the cost to San Jose "per-firearm owning household" based on all of the costs ($39.7M) arising from responses to "gun violence," including "incident investigation," "perpetrator adjudication" and "judicial sanctioning"—i.e., responses to intentional criminal activity. *Id.* at §10.32.200.B.8. And yet, the Ordinance does not impose these costs on criminals but rather on lawfully gun-owning households. The Ordinance seeks to impose financial pressure ("incentivizing" or "encouraging" in the words of the Ordinance at sections 10.32.200.B.11-12) on gun owners.  But the Ordinance applies its pressure to lawful gun owners exercising their constitutional right to keep arms in the home for self-defense against the violent criminals who are actually causing the harm and costs the Ordinance claims it is trying to reduce.

5.      By compelling gun owners to directly pay and therefore subsidize the advocacy of an unnamed government-chosen nonprofit for the purpose of preaching the harms of gun ownership back at them, as appears to be the intent and function of the Gun Harm Reduction Fee, the Ordinance also violates the First Amendment rights of gun owners.

//

First Amended Complaint                                                                    5:22-cv-00501-BLF

6. Additionally, the Ordinance violates Article XIII C of the California Constitution because the Gun Harm Reduction Fee and penalty-backed insurance mandate constitute taxes within the meaning of the California Constitution which were not approved by the voters. Finally, the Ordinance violates the San Jose City Charter because, by commanding gun owners to directly pay one nonprofit for unspecified programs not controlled by the City Council, it unlawfully deprives the City Council of its budget and appropriations powers and the City Manager of their powers as the City's chief administrative officer, and violates a Charter requirement that City funds only be deposited into City accounts.

7. To preserve the safety and core rights under the Constitution of the law-abiding citizens of the City of San Jose, as well as their rights under the California Constitution and the City Charter, this Court must prevent Defendants from enforcing the unconstitutional and unlawful Ordinance.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the First, Second, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C § 1983. This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

9. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims regarding the City of San Jose's lack of authority to pass the Ordinance because the federal claims and this state claim are so related that they form part of the same case or controversy.

10. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1) because Defendants are officials of the City of San Jose, which is within the geographical boundaries of the Northern District of California. Defendants are also residents of this State within the meaning of 28 U.S.C. § 1391(c).

11. The Court has personal jurisdiction over the Defendants because the City of San Jose is within the State of California.

//

First Amended Complaint                                        5:22-cv-00501-BLF

**INTRADISTRICT ASSIGNMENT**

12.     This action is properly assigned to the San Jose Division, pursuant to Civil L.R. 3-2(e). A substantial part of the events giving rise to the claims occurred in Santa Clara County, California.

**PARTIES**

13.     Plaintiff NAGR is a non-stock, nonprofit corporation incorporated under the laws of the Commonwealth of Virginia and has its principal place of business in Loveland, Colorado. NAGR is a grassroots organization whose mission is to defend the right to keep and bear arms under the Second Amendment and advance the constitutional right by educating the American people and urging them to action in public policy.  NAGR has members who would be subject to the Ordinance within the City of San Jose.

14.     Plaintiff Mark Sikes resides in San Jose, California. Sikes legally owns a gun, is not a peace officer, does not have a concealed carry permit, and does not meet the qualifications of CAL. GOV. CODE § 68632 (a) and (b) and, therefore, would be subject to the Ordinance if it were to go into effect.

15.     Defendant City of San Jose is a municipal corporation within the County of Santa Clara, California. A true and correct copy of the City of San Jose's City Charter is attached as Exhibit "A."

16.     Defendant Jennifer Maguire ("Maguire") is the current and active City Manager for the City of San Jose. San Jose's Charter states that the City Manager is the "Chief Administrative Officer and head of the administrative branch of the City government." San Jose City Charter §§ 502, 701. "The City Manager shall be responsible for the faithful execution of all laws, provisions of this Charter, and acts of the Council which are subject to enforcement by the City Manager or by the officers who are under the City Manager's direction and supervision." *Id.*, § 701(d). Additionally, the City Manager is directly identified with enforcement authority throughout the Ordinance. Ordinance §§ 10.32.205, 210, 215, 235, & 250.

17.     Defendant San Jose City Council (the "City Council") is vested with authority under Article IV of the City of San Jose's City Charter (Ex. A). The Ordinance vests the City Council with authority to "set forth the schedule of fees and charges established by resolution of the City Council"

4

and to "set forth…the schedule of fines" for those who violate the ordinance. *Id.,* § 10.32.215; 10.32.250; 10.32.240.

## STATEMENT OF FACTS

### Enactment of the Ordinance

18. On June 29, 2021, the City Council directed San Jose City Attorney Nora Frimann "to return to Council with an ordinance for Council consideration that would require every gun owner residing in the City of San José, with certain exceptions, to obtain and maintain a City-issued document evincing payment of an annual fee, and attestation of insurance coverage for unintentional firearm-related death, injury, or property damage." Frimann Mem. re Gun Harm Reduction Ord., Jan. 14, 2022, 1 ("City Attorney Mem.") (a true and correct copy is attached as Exhibit "B"). Plaintiff National Association for Gun Rights immediately sent the City a cease and desist letter warning that the proposed ordinance was unconstitutional. Ltr. from H. Dhillon and D. Warrington to San Jose City Council, July 14, 2021 (a true and correct copy is attached as Exhibit "C").

19. On January 14, 2022, in advance of the City Council's January 25 meeting, the City Attorney issued a memorandum in compliance with the City Council's directions that recommended the Council "[c]onsider approving an ordinance amending Title 10 of the San José Municipal Code to add Part 6 to Chapter 10.32 to reduce gun harm by: (a) requiring gun owners to obtain and maintain liability insurance; and (b) authorizing a fee to apply to gun harm reduction programs." City Attorney Mem. at 1 (Ex. B). Under a section addressing penalties for noncompliance, the City Attorney stated that "[f]ailure to comply shall constitute a civil violation subjecting the owner to the temporary or permanent seizure of the gun, and under specified circumstances, a fine." *Id*. at 2.

The City Attorney concluded:

If *approved*, the proposed ordinance will require, with certain exceptions, that San José residents who own firearms: (a) obtain and maintain liability insurance; (b) pay an annual gun harm reduction fee to a designated nonprofit organization that will use the fee proceeds to provide gun harm reduction services to residents of the City who own or possess a gun or to members of their household; and (c) pay any City cost recovery fees associated with program implementation, including any associated third-party costs.

First Amended Complaint                                                                  5:22-cv-00501-BLF

*Id.* at 2 (emphasis added).

20.    In an op-ed published on January 19 in the Los Angeles Times, San Jose Mayor Sam Liccardo wrote "[l]ast June our City Council unanimously approved my proposals that will mitigate gun harm in our community — and *a final vote* on Jan. 25 should turn them into law." Mayor Sam Liccardo, *Op-Ed*: *My City's New Gun Control Laws Will Help More Than Waiting On Congress To Do Something*, LOS ANGELES TIMES, Jan. 19, 2022, https://www.latimes.com/opinion/story/2022-01-19/op-ed-new-gun-control-laws-help-congress (emphasis added)(a true and correct copy is attached as Exhibit "D").

21.    On January 21, 2022, Mayor Liccardo, Vice Mayor Jones, Councilmember Cohen, and Councilmember Carrasco issued "Directions" to the City Council, including to "[a]pprove the proposed ordinance," with certain modifications. Mayor's Mem. to City Council, Jan. 21, 2022, 2 (a true and correct copy is attached as Exhibit "E"). The Mayor's Memorandum also noted that "Members of the California legislature are exploring bills to have law enforcement agencies seize guns *as a sanction for violations of local gun regulations*, with subsequent restoration of ownership as required by constitutional due process." *Id.* at 4 (emphasis added).

22.    The Agenda for the City Council's January 25, 2022, meeting further stated that the recommendation before the Council was to "[c]onsider approving" the Ordinance.  Agenda for Jan. 25, 2022 City Council Meeting (a true and correct copy is attached as Exhibit "F"). The City's Synopsis for what occurred at its January 25, 2022, City Council Meeting also states that the action before the Council was to "[c]onsider approving" the Ordinance and the Synopsis records that the Ordinance was indeed "approved" through two votes regarding various changes.  Tuesday, January 25, 2022 City Council Meeting Synopsis at 13 (a true and correct copy is attached as Exhibit "G").

23.    The Mayor immediately issued a press release the night of the vote, in which he boasted that "Tonight San José *became* the first city in the United States *to enact* an ordinance to require gun owners to purchase liability insurance, and to invest funds generated from fees paid by gun owners into evidence-based initiatives to reduce gun violence and gun harm." Liccardo Press Release, Jan. 25, 2022 (emphasis added) (a true and correct copy is attached as Exhibit "H").

24.    Within 24 hours, articles were published about San Jose enacting an unprecedented

First Amended Complaint                                                    5:22-cv-00501-BLF

regulation of gun ownership, including in the San Francisco Chronicle and the Los Angeles Times. *See* Lauren Hernández, *Gun Owners In San Jose Must Buy Liability Insurance Under Newly Passed First-In-The-Nation Law,* SAN FRANCISCO CHRONICLE, Jan. 25, 2022 (updated Jan. 26, 2022) https://www.sfchronicle.com/bayarea/article/Gun-owners-in-San-Jose-must-buy-liability-16804951.php  (a true and correct copy is attached as Exhibit "I") ("The San Jose City Council adopted a measure Tuesday night requiring gun owners in the South Bay city to buy liability insurance for their firearms, city officials said."); Olga R. Rodriguez and Juliet Williams, *San Jose Approves First Law In U.S. Requiring Gun Owners To Have Insurance*, LOS ANGELES TIMES, Jan. 25, 2022, https://www.latimes.com/california/story/2022-01-25/san-jose-gun-liability-insurance (a true and correct copy is attached as Exhibit "J") ("The city of San Jose voted Tuesday night to require gun owners to carry liability insurance in what's believed to be the first measure of its kind in the United States. The San Jose City Council overwhelmingly approved the measure despite opposition from some gun owners who said it would violate their 2nd Amendment rights.").

25.     Consistent with the Mayor's pre- and post-meeting statements, and the interpretations of reputable journalists reporting on the Council's action, Plaintiffs considered the City Council's vote to potentially constitute the "final approval" or enactment of the Ordinance and immediately filed suit to protect their rights and those of the citizens of San Jose.

26.     The City's new position, first taken in this litigation, is that contrary to the Mayor's and City Council's pronouncements before and after the January 25, 2022, City Council meeting, the City Council did not actually "enact" or provide the "final approval" for the Ordinance on January 25 because it would have violated the City Charter for them to do so. The City now states the ordinance could only have ever been truly enacted at the City Council's February 8, 2022, meeting on its "second reading," (Mem. Supp. Mot. Dismiss 3), notwithstanding the Mayor's statements to the contrary before and after the January 25 Council meeting. The Ordinance was placed on the Council's consent calendar for its February 8, 2022, meeting and on that day the Council voted a second time to approve the Ordinance.

27.     In any event, regardless of whether the Mayor's statements about the enactment of the Ordinance or the City's published records about its approval were incorrect or misleading, a

true and correct copy of the now-indisputably enacted Ordinance, as shown on the City's website, is attached as Exhibit "K."

### The Burdens of the Ordinance

28.    The Ordinance will require an estimated 50,000-55,000 gun-owning San Jose Citizens, minus a few exceptions, to obtain an insurance policy and pay annual fees simply to exercise the same constitutional right to own a gun that existed prior to this ordinance. Liccardo Mem. re Gun Harm Reduction Ord., Jan., 19, 2022 (a true and accurate copy is attached as Exhibit "L").

29.    The Ordinance states that "[t]o the extent allowed by law, the Firearm or Firearms of a person that [*sic*] is not in compliance with [the Ordinance] may be impounded subject to a due process hearing."  Ordinance § 10.32.245.  Further, "[a]ny violation" of the Ordinance is "punishable by an administrative citation," "fines for violations," and "all other civil and administrative remedies available to the City." *Id*., § 10.32.240; *see also* Mayor's Mem. to City Council, Jan. 21, 2022 (Ex. E) ("Members of the California legislature are exploring bills to have law enforcement agencies seize guns as a sanction for violations of local gun regulations . . ."); City Attorney Frimann Memo. at 2 (Ex. B)("Failure to comply [with the Ordinance] shall constitute a civil violation subjecting the owner to the temporary or permanent seizure of the gun, and under specified circumstances, a fine.").

30.    The Ordinance targets guns in the home. It does not apply to people who have a license to carry a concealed weapon. *Id*., § 10.32.225. Additionally, absent a concealed carry permit, there is no other way to carry a firearm in San Jose. *See* CAL. PENAL CODE §§ 25850, 26150, 26155, 26350, 26400. The Ordinance thus would charge all law-abiding owners of guns for home and self-defense to pay for the harms caused by criminals who use unregistered guns to commit acts of violence. Ordinance § 10.32.200.B.8 (identifying costs the Ordinance seeks to recoup to include those arising from homicides and all firearm-related injuries).

### *Insurance Requirement*

31.    The Ordinance conditions the constitutional right to own a gun on the payment of an unstated amount for insurance.  It states that "A person who resides in the City of San Jose and owns or possesses a Firearm in the City shall obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy…specifically covering losses or damages

resulting from any accidental use of the Firearm, including but not limited to death, injury, or property damage." Ordinance § 10.32.210.A.

32.     This requirement does not contain any information about minimum insurance coverage thresholds or premiums. Thus, the City of San Jose has conditioned the constitutional right of its law-abiding citizens to own a gun on an unstated, unregulated price to be set by an industry of for-profit private sector corporations.

33.     Moreover, the City's findings did not include any evidence that there are available insurance policies "specifically covering losses or damages resulting from any accidental use of" firearms, or what any such policy will cost. *See* Ordinance § 10.32.200.B.10 ("[i]njuries from unintentional shootings . . . are *generally* insurable" (emphasis added)).

34.     The Ordinance does nothing to ensure that insurance companies will provide policies "specifically covering" losses arising from accidental firearm use for any and every citizen who is subject to the Ordinance, which means the City's insurance mandate would establish a precondition to gun ownership that empowers for-profit insurance companies (with or without government pressure) to prohibit persons from exercising their Second Amendment rights.

35.     Further, the Ordinance does not indicate there is any way for taxpayers to file claims against insurers to recover the city's expenses. *See id*. §10.32.210 (stating only that policies must cover "death, injury, or property damage").

### *Fee Requirement*

36.     The second primary component of the Ordinance is the creation of a "fee" for owning a gun. The Ordinance states that "A person who resides in the City and owns or possesses a Firearm in the City shall pay an Annual Gun Harm Reduction Fee to the Designated Nonprofit Organization each year." Ordinance § 10.32.215. No fee amount is specified, nor is there criteria for how to calculate the fee. *Id*. Rather, Defendant City Council reserved the right for itself to determine the fee amount at a later date. *Id*.

37.     The destination of the money is to an undetermined nonprofit. That determination is delegated to Defendant Maguire. *Id.*, §§ 10.32.205.B; 10.32.220.

38.     The nonprofit fee in the Ordinance is not to defray the City's administrative costs.

9

Rather, "all monies…shall be expended by the Designated Nonprofit Organization…." *Id.*, § 10.32.220.A.

39.     The only selection criteria for the Designated Nonprofit Organization is that it "provid[e] services to residents of the City that own or possess a Firearm in the City or to members of their household, or to those with whom they have a close familial or intimate relationship." These services "include, *but are not necessarily limited to*" suicide prevention services or programs, violence reduction or gender based violence services or programs, mental health services related to gun violence, firearms safety education or training, or addiction intervention and substance abuse treatment. *Id.*, § 10.32.220.A (emphasis added).

40.     "[T]he City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" by the nonprofit. *Id.*, § 10.32.220.C.

41.     The fee thus functions to compel gun owners to give their money to a government-approved nonprofit to spend on unspecified programs at the nonprofit's discretion, none of which are services that the City is obligated to perform. This compelled donation by gun owners to one City-favored nonprofit to advocate about the dangers of gun ownership with little to no municipal oversight is not only obnoxious to the Constitution, it is an invitation to corruption and waste.

42.     By its plain terms, this fee and insurance requirement do not compensate the City to cover reasonable costs of governmental activity, because they are not for government activity. Further, the manner in which those costs are allocated to gun owners do not bear a fair or reasonable relationship to the gun owner's burdens on, or benefits received from, the City's governmental activity.

43.     Indeed, the Ordinance also authorizes a separate fee just to recoup the costs associated in administering the Ordinance. *Id.* § 10.32.250.

44.     Accordingly, as discussed further below, the "Annual Gun Harm Reduction Fee"—unconnected to the cost of City services and for unspecified programs outside of the City's control—and the mandatory insurance requirement backed by the threat of fines and seizure are nothing more than exactions, or *taxes* within the meaning of the California Constitution, that the City is imposing on the exercise of a constitutional right.

First Amended Complaint                                                           5:22-cv-00501-BLF

**The Second Amendment**

45.    The Second Amendment to the United States Constitution states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

46.    "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010).

47.    Even in the face of "the problem of handgun violence in this country,…the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636.

48.    "The upshot of [*Heller* and *McDonald*] is that there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home." *United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011).

49.    Local governments, including the City of San Jose, are bound by the Second Amendment. *McDonald*, 561 U.S. at 790; *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012).

50.    Imposing an insurance mandate and fees (or taxes) on gun owners in the City of San Jose burdens Plaintiff NAGR's members and Plaintiff Sikes by creating an indefinite cost on their ability to exercise their basic and fundamental right to possess a gun. "A tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding governmental interest." *Minneapolis Star and Tribune*, 460 U.S. at 582.

51.    Both the insurance mandate and the fees created by the Ordinance are costs subject to the whims of the City Council and private insurance companies and, thus, bear a significant risk of making gun ownership far more expensive, if not cost prohibitive. As a form of fixed tax disconnected from a person's income or the monetary value of a person's firearms, it is an especially regressive one.

52.    The Ordinance cites a number of statistics about gun violence, but provides no studies or statistics that gun liability insurance will reduce gun violence. Rather, it in conclusory fashion states that "Liability insurance can reduce the number of gun incidents by encouraging safer

First Amended Complaint                                           5:22-cv-00501-BLF

behavior….” Ordinance § 10.32.200.B.12.  It is not apparent how liability insurance will meaningfully add to the extant incentives for safe behavior, such as the fear of potentially killing another human being (intentionally or by accident), being prosecuted, or being sued.

53.    The Ordinance does not include any studies or statistics showing that the yet-to-be-determined nonprofit will accomplish the stated aim of reducing gun violence. Rather, in conclusory fashion, it states that "Programs and services to gun owners and their households can also encourage safer behavior, and provide education and resources to those residents." *Id.*, § 10.32.200.B.13.

54.    The Ordinance cites a figure that "San Jose taxpayers annually spend approximately $39.7 million, or approximately $151 per firearm-owning household, to respond to gun violence with such public services as emergency police and medical response, victim assistance, incident investigation, acute and long-term care, and perpetrator adjudication and judicial sanctioning." It cites figure of $442 million in gun-related costs if the calculation includes "private costs to individuals and families." *Id*., § 10.32.200.B.8-.9. But the Ordinance does not distinguish how much of these costs are due to intentional violent criminal conduct that the Ordinance will hardly address as opposed to the types of unintentional conduct it is largely focused on.

55.    Despite the per-household fee being based on the City's assessment of the overall cost of guns to San Jose, the fee will not reimburse the City, taxpayers, or private individuals because the fee will be distributed entirely to a nonprofit. Likewise, the insurance will not reimburse the City, taxpayers, or private individuals for any intentional gun violence committed by criminals and most costs incurred by the City/taxpayers, such as ambulance, police, and judicial costs, would not be the type of costs covered by an insurance carrier.

56.    Therefore, neither the insurance mandate nor the nonprofit fee fit any stated, or unstated, government objective.

57.    Additionally, governments "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock*, 319 U.S. at 113.

58.    The only exception is to "meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed." *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941). Applied to the Second Amendment, "imposing fees on the exercise of constitutional rights is

permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2nd Cir. 2013).

59.     Neither the insurance premium nor the fee to be paid to the City's chosen nonprofit are designed to defray the City's administrative costs and, therefore, they are unconstitutional.

### The First Amendment

60.     The First Amendment, applied to the states through the Fourteenth Amendment, protects the freedom of speech, including both the right to speak freely and the right to refrain from speaking at all, and to avoid associating with others for expressive purposes. The First Amendment thus prohibits government officials from forcing individuals to support views that they find objectionable.

61.     Thomas Jefferson famously said that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical." *Janus v. AFSCME*, 138 S.Ct. 2448, 2464 (2018) (quoting *A Bill for Establishing Religious Freedom*, in 2 Papers of Thomas Jefferson 545 (J. Boyd ed. 1950)).

62.     The Ordinance directs gun owners to subsidize one unidentified nonprofit by paying the city's fee directly to that organization. Ordinance § 10.32.215. The Ordinance even prohibits the city from directing how the nonprofit would use the funds. *Id.* at § 10.32.220.C. The one thing that is clear is that the organization will likely be dedicated to exclusively preaching the negative risks of gun ownership, and the Ordinance does not prohibit the nonprofit from using the City's fee revenues for other messages and programs.

63.     The Defendants may not force Plaintiffs to pay fees to nonprofits when those fees are going to be used to fund activities of ideological or political nature with which Plaintiffs disagree, *see Keller v. State Bar of California*, 496 U.S. 1, 13 (1990), or in fact are left unstated.

64.     The Ordinance therefore unconstitutionally compels Plaintiffs to subsidize speech and associate against their will and this Court should therefore preliminarily and permanently enjoin Defendant from enforcing the Ordinance and award Plaintiffs nominal damages.

### California Constitution-Preemption

65.     Article XI, section 7 of the California Constitution states that "A county or city may

13

make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

66.     Article XI, section 7 of the California Constitution preempts any local law that "duplicates, contradicts, or *enters an area fully occupied by general law*, either expressly or by legislative implication." *Fiscal v. City and County of San Francisco* 158 Cal.App.4th 895, 903 (Cal. Ct. App. 2008)(quotation omitted)(emphasis added).

67.     "[T]he Legislature intended to occupy the field of residential handgun possession to the exclusion of local government entities." *Id*. at 909.

68.     Gun regulation is already fully occupied by the state of California. Indeed, California already comprehensively regulates firearms, including firearm safety, CAL. PENAL CODE §§ 23500-23520, the appearance of firearms, *id*., §§ 23800-24790, storage of firearms, *id*., §§ 25000-25225, how to handle lost or stolen firearms, *id*., §§ 25250-25225, carrying firearms, *id*., §§ 25300-26406, the sale, lease, or transfer of firearms, *id*., §§ 26500-28490, the registration and assignment of firearms, *id*., §§ 28010-28024, how to transfer firearms between private persons, *id*., §§ 28050-28070, recordkeeping, background checks, and fees related to transfer, *id*., §§ 28100-28490, the manufacture of firearms, *id*., §§ 29010-29184, who may not possess a firearm, *id*., §§ 29610-30165, rules pertaining to "firearm equipment," *id*., §§ 30150-30165, and, in some cases, firearm registration, *id*., §§ 30900-30965. This is but a sample of all of the separate statutes regulating firearms in California. *See generally* CAL. PENAL CODE §§ 23500-34370.

69.     Thus, the City of San Jose's Ordinance violates the California Constitution because it is preempted by California state law.

### California's Local Tax Requirements

70.     All taxes imposed by local governments in California must be approved by voters of the local government. CAL. CONST. art. XIII C. A "tax" in California, with exceptions that do not apply here, is defined as "any levy, charge, or *exaction of any kind* imposed by a local government." Article XIII C, § 1(e) (emphasis added).

71.     The Ordinance's insurance mandate and Gun Harm Reduction Fee do not pay for City services and do not correspond to any benefit received from City services by those who pay for them.

First Amended Complaint                                         5:22-cv-00501-BLF

72.     The insurance mandate and the Gun Harm Reduction fee are thus taxes which were not submitted to the electorate for approval and, therefore, violate the California Constitution.

### The San Jose City Charter

73.     The San Jose City Charter vests in the City Council "[a]ll powers of the City and the determination of all matters of policy." San Jose City Charter § 400. These powers include the exclusive authority to impose taxes.  *Id.*, § 602(c).  With regard to the expenditure of City funds, only the City Council has the power to establish a budget. *Id.* §§ 1204, 1206.  The Council also has the sole power to appropriate the expenditure of City funds. *Id.*, § 1207.

74.     The City Manager is the "Chief Administrative Officer and head of the administrative branch of the City government." *Id.*, §§ 502; 701.

75.     "All revenues and receipts which are not required by [the] Charter, State law or ordinances to be placed in special funds shall be credited to the [City's] General Fund." *Id.*, § 1211. The General Fund is "a medium of control and accounting for all City activities excepting activities for which special funds are established and maintained." *Id.*

76.     The Ordinance, by prohibiting the City from directing how "monies from the Gun Harm Reduction fee are expended" by the chosen nonprofit, Ordinance § 10.32.220.C, violates the San Jose City Charter's reservation of budgeting and appropriation power to the City Council.

77.     The Ordinance also violates the City Charter's delegation of executive functions to the "administrative" branch of the City Government under the leadership and control of the City Manager because the Ordinance says "the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" other than vague directions to the nonprofit to "reduce the risk" of harm from using firearms, "mitigate the risk" of harm or liability from possessing firearms, and to spend the City's funds in ways including, *but not limited to*, various services. *Id.,* § 10.32.220.A, C.

78.     The Ordinance, by requiring gun owners to pay the City-required, City-determined fee directly to a nonprofit organization, *id.*, § 10.32.215, thereby diverts a City fee to a nonprofit rather than the City's General Fund, and thus violates the City Charter's requirement that all City revenues and receipts be deposited into City accounts as an essential means of City "control and accounting." This too is an invitation to corruption, waste, and fraud.

First Amended Complaint                                               5:22-cv-00501-BLF

79.     The Ordinance also violates California Government Code § 43400 that requires all "money received from licenses, street poll taxes, fines, penalties, and forfeitures shall be paid into the general fund."

*     *     *     *

80.     In sum, the Ordinance violates the Second Amendment by infringing upon the right to keep and bear arms, violates the First Amendment by forcing gun owners to associate with and pay a donation subsidizing the virtually unrestricted speech of a private non-governmental nonprofit organization, violates article XI, §7 of the California Constitution because state law thoroughly occupies and preempts the field of gun regulation, violates article XIII C of the California Constitution by failing to submit a local tax to the voters for approval, violates the San Jose City Charter's budget,  appropriations, and separation of powers provisions, and violates controls on the handling of city receipts under the City Charter.

81.     Accordingly, Plaintiffs request that this court issue preliminary and permanent injunctions preventing Defendants from enforcing the Ordinance in its entirety pursuant to 42 U.S.C. § 1983, declare the Ordinance unconstitutional in its entirety under both the United States and California Constitutions, declare that the Ordinance violates the San Jose City Charter and the California Government Code, issue nominal damages, and order any other relief this Court deems necessary and proper.

**FIRST CLAIM FOR RELIEF**
**Violation of the Second and Fourteenth Amendments (42 U.S.C. § 1983)**
***The Ordinance requiring owners of guns to purchase insurance and pay annual fees***
***violates the Second and Fourteenth Amendments to the United States Constitution.***

82.     Plaintiffs incorporate by reference and re-allege each of the Paragraphs set forth above.

83.     The Second Amendment of the United States Constitution guarantees "the right of the people to keep and bear arms" and that right "shall not be infringed." U.S. CONST., amend. II.

84.     In a Second Amendment inquiry, a Court asks "whether the challenged law burdens conduct protected by the Second Amendment[.]" *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

85.     Government "may not impose a charge for the enjoyment of a right granted by the

16

federal constitution." *Murdock*, 319 U.S. at 113. For example, in 1973 the Minnesota legislature passed a use tax on paper and ink. The Supreme Court struck down this special use tax because it singled out the press for special treatment and the Court found that a "tax that burdens rights protected by the [Constitution] cannot stand unless the burden is necessary to achieve an overriding governmental interest." *Minneapolis Star and Tribune Co.*, 460 U.S. at 581.

86.     This is particularly true because the exercise of a constitutional right cannot be conditioned upon a fee unless it is to defray an administrative expense. *Cox*, 312 U.S. at 577; *Kwong*, 723 F.3d at 165.

87.     The Ninth Circuit has adopted the *Murdock/Cox* standards for Second Amendment fee cases. *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017).

### *The Ordinance Violates the Second Amendment*

88.     Both the Ordinance's Gun Harm Reduction Fee and insurance mandate impose costs on gun owners in the City of San Jose just for exercising their Second Amendment rights.

89.     If the City has the power to impose these arbitrary burdens on gun ownership, there would be no limiting principle to the amount of the fees and costs the City could mandate and nothing to prevent the City from extinguishing the Second Amendment within its borders entirely.

90.     Though the Ordinance threatens the confiscation of guns and an unspecified fine for noncompliance with its insurance and Gun Harm Reduction Fee, it does not specify a sum certain or articulate standards that will determine the cost of the insurance requirement or either fee that the Ordinance creates. Therefore, the as yet unknown financial burden of the Ordinance's insurance requirement will be left to the whims of for-profit insurance companies without a clear standard for what their policies must cover. The City's fees, too, are left unstated and deferred to future, unscheduled determinations of the City Council in an exercise of unfettered discretion. Any statement by the City now regarding a minimal cost or burden rings hollow because there are no constraints on the City's authority to increase the costs and burdens tomorrow.

91.     The City's dictate that the right to gun ownership will depend on citizens having an unspecified insurance policy and payment of as-yet undetermined fee to a third party who has yet to be chosen to fund unspecified programs beyond the City's control will chill and infringe upon on

First Amended Complaint                                      5:22-cv-00501-BLF

those citizens' Second Amendment rights.

92.     It is plausible, if not probable, that the Ordinance will discourage gun ownership, if not make it cost prohibitive, for at least some San Jose residents, particularly in light of the view of gun ownership reflected in the Ordinance's findings.

93.     Where, as here, taxes and fees are not anchored to value or income, they are also inherently regressive; their burden on citizens' rights will be inversely proportional to those citizens' ability to pay the taxes and fees.

94.     At the very least, any such a cost "infringe[s]" upon the constitutional right to keep and bear arms.

### The Ordinance Does Not Serve Its Claimed Purpose or Any Other Valid Purpose

95.     The Ordinance's "Purpose and Findings" recites facts about homicide, suicide, accidental injury and death, hospitalizations, probabilities of incidents as they correlate to gun ownership, and statistics from automobile insurance. Ordinance § 10.32.200.B. Accordingly, the City of San Jose appears to claim a stated objective of reducing gun violence.

96.     However, requiring gun owners to purchase an insurance policy and pay an annual fee to an unnamed nonprofit are not a reasonable fit to the asserted objective of reducing gun violence insofar as the violence to be reduced is committed by persons who do not register their guns and use their guns to commit crimes, or the injuries are inflicted by persons other than the guns' owners.

97.     The City makes no findings, other than conclusory statements, that insurance or funding nonprofits will impact gun violence, particularly gun violence by those who lawfully possess and register their firearms to be kept in the home as opposed to others who possess guns either unlawfully or outside the home. *See generally id.*, § 10.32.200.B. That the Ordinance does not in fact control how the chosen nonprofit would spend the City's fees, and specifically forbids the City from directing the spending of its own funds, further undermines the contention that payment of the fee would achieve the Ordinance's aims.

98.     The Ordinance cites a figure that "San Jose taxpayers annually spend approximately $39.7 million, or approximately $151 per firearm-owning household, to respond to gun violence with such public services as emergency police and medical response, victim assistance, incident

First Amended Complaint                                                                5:22-cv-00501-BLF

investigation, acute and long-term care, and perpetrator adjudication and judicial sanctioning."
Ordinance § 10.32.200.B.8. It includes a sum of $442 million if the calculation includes "private costs
to individuals and families." *Id.*, § 10.32.200.B.9.  But more than $328,355,500 (or 74%) of these
alleged costs are for the impact of guns on "quality of life" and a further $78,272,000 (or 18%) of the
asserted $442 million is for "lost work." Liccardo Mem. re Gun Harm Reduction Ord., Jan., 19, 2022
(Ex. L).

99.    However, the Gun Harm Reduction Fee will not reimburse the City, taxpayers, or
private individuals because the fee will be distributed entirely to a nonprofit. Likewise, the insurance
will not likely reimburse the City, taxpayers or private individuals for any intentional gun violence
committed by gun owners or injuries inflicted by uninsured persons or premises and, even if the gun
owner is insured, costs incurred by the City/taxpayers, such as ambulance, police, and judicial costs,
would not be reimbursed by an insurance carrier. Thus, the insurance and fee requirements do not fit
the government interest in reimbursing the costs incurred by the City/taxpayers or most private
individuals or their families who are injured through criminal gun violence (the majority of gun
injuries).

100.    To the extent that Defendants will assert a separate government interest, said
government interest would not be significant, substantial, or important.

101.    To the extent that Defendant will assert a separate government interest, requiring gun
owners to pay insurance and an annual fee to an unnamed nonprofit does not constitute a reasonable
fit for any other government interest.

102.    Neither the insurance requirement nor the fee requirement is historically or
presumptively lawful, in that, the Ordinance is a first-of-its-kind regulation of firearms.

*        *        *        *

103.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm
to their constitutional rights unless Defendants are enjoined from implementing and enforcing the
Ordinance.

104.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled preliminary and
permanent injunctive relief invalidating and restraining enforcement of the Ordinance as well as

declaratory relief.

105. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### SECOND CLAIM FOR RELIEF

**Violation of the First and Fourteenth Amendments (42 U.S.C. § 1983)**
***The payment of a fee to a nonprofit violates the free speech rights of gun owners by compelling them to subsidize private speech on matters of substantial public concern.***

106. Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

107. The First Amendment protects Plaintiffs' freedom of speech which includes both the right to speak freely and the right to refrain from speaking at all.

108. The First Amendment protects the right of Plaintiffs to eschew association for expressive purposes.

109. The First Amendment prohibits government officials from forcing individuals to support views that they find objectionable.

110. Thomas Jefferson famously said that "to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical." *Janus*, 138 S.Ct. at 2464 (quoting *A Bill for Establishing Religious Freedom*, in 2 Papers of Thomas Jefferson 545 (J. Boyd ed. 1950)).

111. In *Janus*, the Supreme Court examined the case of compelled subsidization of private speech. The Court never determined if the courts are to use strict scrutiny or exacting scrutiny because in *Janus* the Court concluded that the "Illinois scheme cannot survive under even the more permissive standard." *Id.* at 2465.

112. Furthermore, the Defendants may not require Plaintiffs to pay fees to nonprofits when those fees are going to be used to fund activities of ideological or political nature, such as endorsing gun control. *See Keller*, 496 U.S. at 13.

113. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the

First Amended Complaint                                                    5:22-cv-00501-BLF

Ordinance.

114.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled preliminary and permanent injunctive relief invalidating and restraining enforcement of the Ordinance, as well as declaratory relief.

115.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
### Violation of article XI, §7 of the California Constitution-Field Preemption
### *The Ordinance occupies a field already occupied by California law.*

116.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

117.    Article XI, section 7 of the California Constitution states that "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

118.    The State of California has voluminous statutes comprehensively regulating firearm ownership in California. *See generally* CAL. PENAL CODE §§ 23500-34370. California courts have already determined that "the Legislature intended to occupy the field of residential handgun possession to the exclusion of local government entities." *Fiscal*, 158 Cal.App.4th at 909 (citing Cal. Penal Code § 12026).[1]

119.    Accordingly, because the state legislature has already occupied the field of regulating residential handgun possession, as well as all conceivable fields of gun possession, local governments are excluded from further regulation of guns, particularly guns in the home.

120.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

---

[1] The state laws cited in *Fiscal* have since been repealed.  However, they have been continued into other statutes with no substantive change.

First Amended Complaint                                          5:22-cv-00501-BLF

121.     Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## FOURTH CLAIM FOR RELIEF

### Violation of article XIII C, §1 of the California Constitution-Local Tax Elections
*The Ordinance imposes new taxes, but was not submitted to the electorate for vote.*

122.     Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

123.     The California Constitution requires that "No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote." Article XIII C, §2(b).

124.     It also requires that "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." Article XIII C, §2(d).

125.     A "tax" is "any levy, charge, or exaction of any kind imposed by a local government," with exceptions that do not apply here. Article XIII C, §1(e).

126.     Thus, both of the fees in the Ordinance and the insurance requirement constitute a "tax."

127.     The Ordinance, whether it is a general or a special tax, was never submitted to the electorate for a vote.

128.     We note that, if the City disputes that the Ordinance is a tax, "the [City] bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." Article XIII C, §1.

129.     The City cannot meet this burden because the fees imposed are a levy, charge, or exaction imposed by the city that does not meet any exception, and the amount of the fees are "more

First Amended Complaint                                              5:22-cv-00501-BLF

than necessary to cover the reasonable costs of the governmental activity" because they are not for government activity, and "the manner in which those costs are allocated to" gun owners do not "bear a fair or reasonable relationship to the payor's burdens on, or benefits received from" the City's "governmental activity." Article XIII C, §1.

130. As stated previously, the insurance requirement and the fee allocated to a nonprofit do not cover "costs of a governmental activity" as the insurance is allocated to for-profit corporations and the fee is allocated to an unnamed nonprofit rather than the City.

131. Neither the insurance requirement nor the nonprofit fees bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, a governmental activity.

132. Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

133. Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

### FIFTH CLAIM FOR RELIEF
**San Jose City Charter, Art. IV, §§ 400, 502, 602, 701, 1204, 1206, 1207, 1211**
***The Ordinance Violates the Separation of Powers Within the City of San Jose's Government, its Budget and Appropriations Procedures, and Controls on the City's Receipts.***

134. Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

135. The San Jose City Charter ("Charter") establishes the powers of the City of San Jose's government. San Jose City Charter § 200 (Ex. A).

136. The Charter divides the legislative power of the City's government from its executive power. "All powers of the City and the determination of all matters of policy shall be vested in the Council, subject to the provisions of this Charter and the Constitution of the State of California." *Id.*, § 400.

137. The Charter grants the City Council the power to impose taxes by ordinance. *Id.*, §

First Amended Complaint                                    5:22-cv-00501-BLF

602(c).

138.    Only the City Council has the power to establish a budget. *Id.* §§ 1204, 1206.  The Council also has the sole power to appropriate the expenditure of City funds. *Id.*, § 1207.

139.    The City Manager is the "Chief Administrative Officer and head of the administrative branch of the City government." *Id.*, § 502; *see also id.,* § 701.

140.    Finally, "[a]ll revenues and receipts which are not required by [the] Charter, State law or ordinances to be placed in special funds shall be credited to the [City's] General Fund." *Id.*, § 1211. The General Fund is "a medium of control and accounting for all City activities excepting activities for which special funds are established and maintained." *Id.* CAL. GOV'T. CODE § 43400 also requires monies received "from licenses, street poll taxes, fines, penalties, and forfeitures" to be put into the general fund.

141.    Here, the Ordinance states that "[t]he City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" by its chosen nonprofit.  Ordinance, § 10.32.220.C.

142.    The Ordinance, by prohibiting the City from directing how "monies from the Gun Harm Reduction Fee are expended" violates the San Jose City Charter's reservation of budgeting and appropriation power to the City Council.

143.    The Ordinance also violates the City Charter's delegation of executive functions to the "administrative" branch of the City Government under the leadership and control of the City Manager because the Ordinance says "the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" other than a vague directions to the nonprofit to "reduce the risk" of harm from using firearms, "mitigate the risk" of harm or liability from possessing firearms, and to spend the city's funds in ways including, *but not limited to*, various services. *Id.,* § 10.32.220.A, C.

144.    The Ordinance states that gun owners must pay the City-required, City-determined fee directly to a nonprofit organization. *Id.*, § 10.32.215. By diverting the payment of the City's mandatory fee directly to a nonprofit rather than the City's General Fund, the Ordinance violates the City Charter's requirement that all City revenues and receipts be deposited into City accounts as an essential means of City "control and accounting."

145.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm

First Amended Complaint                                                5:22-cv-00501-BLF

to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

146.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**SIXTH CLAIM FOR RELIEF**
**Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202**
***Plaintiffs are entitled to declaratory relief.***

147.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

148.    To the extent that each of the claims above have not already established a remedy, Plaintiffs are entitled to declaratory relief holding that the Ordinance violates Plaintiffs' individual rights under the United States and California constitutions and San Jose's City Charter, and is otherwise invalid, are entitled to preliminary and permanent injunctions preventing the enforcement of the Ordinance, nominal damages, and further relief that this Court deems necessary or proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray, on behalf of themselves and all of NAGR's members, for the following:

A.    Preliminary and permanent injunctions enjoining Defendants and all successors in office from enforcing the Ordinance, including those authorized by 42 U.S.C. § 1983 and Cal. Civil Code §52.1;

B.    A declaratory judgment that the Ordinance violates the First, Second, and Fourteenth Amendments of the United States Constitution and article XI, section 7 and article XIII C of the California Constitution, San Jose's City Charter, and granting the necessary and proper relief this Court deems appropriate, including relief authorized by 28 U.S.C. §§ 2201, 2202;

C.    Nominal damages;

D.    Costs and attorneys' fees, including those authorized by 42 U.S.C. § 1988 and California Code of Civil Procedure Section 1021.5; and

25

1    E.    Any other relief as this Court, in its discretion, deems just and appropriate.

2

3    Dated: February 14, 2022                    DHILLON LAW GROUP INC.

4

5                                                By:  /s/ Harmeet K. Dhillon

6                                                Harmeet K. Dhillon
                                                 Michael A. Columbo
7                                                Mark P. Meuser
                                                 DHILLON LAW GROUP INC.
8                                                177 Post Street, Suite 700
                                                 San Francisco, California 94108
9                                                (415) 433-1700

10
                                                 David A. Warrington*
11                                               Curtis M. Schube*
                                                 DHILLON LAW GROUP INC.
12                                               2121 Eisenhower Avenue, Suite 402
                                                 Alexandria, VA 22314
13                                               (571) 400-2121

14
                                                 *Admission *pro hac vice* forthcoming
15

16                                               *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint                                          5:22-cv-00501-BLF