1  JOSEPH W. COTCHETT (SBN 36324)
   jcotchett@cpmlegal.com
2  TAMARAH P. PREVOST (SBN 313422)
   tprevost@cpmlegal.com
3  ANDREW F. KIRTLEY (SBN 328023)
   akirtley@cpmlegal.com
4  MELISSA MONTENEGRO (SBN 329099)
   mmontenegro@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
6  San Francisco Airport Office Center
   840 Malcolm Road, Suite 200
7  Burlingame, CA  94010
   Telephone: (650) 697-6000
8  Facsimile: (650) 697-0577
9
   *Attorneys for Defendants*
10
11
12              **UNITED STATES DISTRICT COURT**
13         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
14                    **SAN JOSE DIVISION**
15
16  **NATIONAL ASSOCIATION FOR GUN**          Case No. 5:22-cv-00501-BLF
    **RIGHTS, INC.,** a non-profit corporation, and
17  **MARK SIKES,** an individual,            **DEFENDANTS' REPLY IN SUPPORT**
                                              **OF MOTION TO DISMISS PLAINTIFFS'**
18                    Plaintiffs,             **FIRST AMENDED COMPLAINT**
19         v.                                 Date:        August 4, 2022
20                                            Time:        9:00 AM
    **CITY OF SAN JOSE,** a public entity,    Courtroom:   Zoom Webinar
21  **JENNIFER MAGUIRE,** in her official     Judge:       Hon. Beth Labson Freeman
    capacity as City Manager of the City of San
22  Jose, and the **CITY OF SAN JOSE CITY**
    **COUNCIL,**
23
24                    Defendants.
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

A.   The FAC Should Be Dismissed Under Rule 12(b)(1) ..................................... 2

1.   None of Plaintiffs' Claims are Ripe for Review ............................... 2

2.   Plaintiffs Do Not State a Proper Facial Constitutional Challenge. ............... 3

B.   The FAC Should Also Be Dismissed under Rule 12(b)(6) Because Each of Plaintiffs' Claims Fail ..................................................................................... 4

1.   The Ordinance is Not Preempted by State Law. ............................... 4

2.   Plaintiffs Fail to State a Second Amendment Claim. ....................... 5

3.   Plaintiffs Fail to State a First Amendment Claim Based on Compelled Speech or Association ....................................................................... 8

4.   The Ordinance Does Not Impose an Unlawful Tax. ...................... 11

5.   The Ordinance Does Not Violate the San Jose City Charter. ........ 12

6.   The Declaratory Relief Claim Should Be Dismissed ..................... 14

III.  CONCLUSION............................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Am. States Ins. v. Kearns*,
   15 F.3d 142 (9th Cir. 1994) ...................................................................................15

5

*Bauer v. Becerra*,
   858 F.3d 1216 (9th Cir. 2017) .................................................................................6

6

7

*Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*,
   529 U.S. 217 (2000)..................................................................................................9

8

9

*Cal. Democratic Party v. Jones*,
   530 U.S. 567 (2000)................................................................................................11

10

*Cal. Rifle & Pistol Ass'n v. City of West Hollywood*,
   66 Cal.App.4th 1302 (1998) .....................................................................................4

11

12

*Calguns Foundation, Inc. v. County of San Mateo*,
   218 Cal.App.4th 661 (2013) .....................................................................................4

13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..................................................................................................3

14

15

*Clear Conn. Corp. v. Comcast Cable Communs. Mgmt., LLC*,
   501 F.Supp.3d 886 (E.D. Cal. 2020).......................................................................14

16

17

*County of Santa Clara v. Trump*,
   267 F. Supp. 2d 1201 (N.D. Cal. 2017) ..................................................................14

18

19

*Fiscal v. City and County of San Francisco*,
   158 Cal.App.4th 895 (2008) .....................................................................................5

20

21

*Gilbert v. Chase Home Fin., LLC*,
   2013 WL 2318890 (E.D. Cal. May 28, 2013) ..........................................................4

22

*Glickman v. Wileman Bros. & Elliott, Inc.*,
   521 U.S. 457 (1997)..................................................................................................9

23

24

*Gonzales v. Carhart*,
   550 U.S. 124 (2007)..............................................................................................4, 9

25

*Heller v. District of Columbia*,
   801 F.3d 264 (D.C. Cir. 2015) .................................................................................6

26

27

*Huweih v. US Bank Trust, N.A.*,
   2017 WL 396143 (N.D. Cal. Jan. 30, 2017) ..........................................................14

28

*Jackson v. City and County of San Francisco*,
    763 F.3d at 953 (9th Cir. 2014)..........................................................7, 8, 10

*Janus v. AFSCME, Council 31*,
    138 S. Ct. 2448 (2018).........................................................................9

*Johanns v. Livestock Mktg. Ass'n*,
    544 U.S. 550 (2005)............................................................................9

*Keller v. State Bar of California*,
    496 U.S. 1 (1990)..............................................................................10

*Kwong v. Bloomberg*,
    723 F.3d 160 (2d Cir. 2013)................................................................6

*Nguyen v. Wells Fargo Bank, N.A.*,
    749 F.Supp.2d 1022 (N.D. Cal. 2010) ..............................................14

*Nordyke v. King*,
    681 F.3d 1041 (9th Cir. 2012) (en banc), *cert. denied*, 568 U.S. 1085 (2013)...........................3

*O'Connell v. Gross*,
    No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020).....................6

*Olsen v. McGillicuddy*,
    15 Cal.App.3d 897 (1971) ...................................................................4

*Principal Life Ins. Co. v. Robinson*,
    394 F.3d 665 (9th Cir. 2005) .............................................................15

*PruneYard Shopping Ctr. v. Robins*,
    447 U.S. 74 (1980)............................................................................10

*R.J. Reynolds Tobacco Co. v. Shewry*,
    423 F.3d 906 (9th Cir. 2005) .............................................................10

*Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*,
    547 U.S. 47 (2006)............................................................................10

*Schmeer v. County of Los Angeles*,
    213 Cal.App.4th 1310 (2013) ...........................................................11

*Scott v. Pasadena Unified Sch. Dist.*,
    306 F.3d 646 (9th Cir. 2002) ...........................................................3, 15

*Sharma v. BMW of N. Am., LLC*,
    2014 WL 2795512 (N.D. Cal. June 19, 2014) ..................................14

*Sippel v. Nedler*,
    24 Cal.App.3d 173 (1972) ...................................................................5

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Defendants' Reply ISO Motion to Dismiss Plaintiffs' First Amended Complaint
Case No. 5:22-cv-00501-BLF

iii

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...................................................................................................3

*U.S. v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ..................................................................................8

*Washington. State Grange v. Washington State Republican Party*,
    552 U.S. 447 (2008) .................................................................................................11

*Young v. Hawai'i*,
    992 F.3d 765 (9th Cir. 2021) .....................................................................................6

**Statutes**

Cal. Bus. & Prof. Code
    § 2216.2 .....................................................................................................................9

Cal. Govt. Code
    § 100705 .....................................................................................................................9

Cal. Health & Safety Code
    § 44015 .......................................................................................................................9

Cal. Vehicle Code
    §§ 4000.1(a), 24007(b) ..............................................................................................9

San Jose Muni. Code
    § 10.32.200, *et seq.* ...................................................................................................1

Penal Code
    § 25605 .......................................................................................................................5

**Other Authorities**

Cal. Const.,
    Art. XIII C, § 1 ....................................................................................................11, 12

U.S. Const.
    First Amendment .....................................................................................................2, 3
    Second Amendment ....................................................................................................2
    Fourteenth Amendment ..............................................................................................2

**Rules**
Federal Rules of Civil Procedure
    Rule 12(b)(1) .........................................................................................................2, 15
    Rule 12(b)(6) .....................................................................................................4, 9, 15

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**Ordinances**

San Jose Ordinance

§ 10.32.200(12)........................................................................................7
§ 10.32.200(B)(10)-(13)..........................................................................7
§ 10.32.210.............................................................................................1
§ 10.32.215................................................................................1, 2, 11, 12
§ 10.32.220...................................................................................1, 12, 13
§ 10.32.220(A)(2)-(3) .............................................................................7
§ 10.32.220(C) ......................................................................................13
§ 10.32.220(D) ......................................................................................13
§ 10.32.230.............................................................................................1
§ 10.32.235(A)........................................................................................2
§ 10.32.235(A)(2) .................................................................................13
§ 10.32.240........................................................................................1, 3
§ 10.32.240(B) ........................................................................................2
§ 10.32.345.............................................................................................1

**City Charter**

San Jose City Charter

§ 701....................................................................................................12
§ 1204-1207.....................................................................................12, 13
§ 1211.............................................................................................12, 13

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

The untenable nature of Plaintiffs' position can be summarized in one sentence from their Opposition: "There is only one circumstance the Ordinance, in application, would survive: if the City does not require gun owners to comply with the Ordinance." (Opp'n at 10-11.)  This extreme perspective, that any burden on gun ownership (no matter how slight) is *per se* unlawful finds no support in the law. Instead, Ninth Circuit and U.S. Supreme Court jurisprudence requires an exacting approach, one that carefully evaluates each aspect of the Ordinance. Defendants' Motion has done this; Plaintiffs "no compromise" method does not.

The City has discretion to enact reasonable legislation in response to a widespread local public health crisis of gun violence. Plaintiffs' misguided criticism does not detract from this discretion. Plaintiffs either selectively criticize certain authorities relied on by the City or advance a series of "slippery slope" arguments irrelevant to the instant Motion. *E.g.*, Opp'n at 2 (noting if the Ordinance is upheld "any core right could be at risk. . . there would be nothing preventing the city from charging a voting 'fee.'") But focusing on the issue at hand, the serious, pervasive problem of gun violence is appropriately addressed here by a law aimed at compensating victims, reducing gun harm, and limiting the economic and other harm resulting therefrom. *See* San Jose Muni. Code § 10.32.200, *et seq.* ("Ordinance").

Nevertheless, Plaintiffs National Association for Gun Rights, Inc. ("NAGR")—a national "no compromise" gun rights organization committed to an absolutist view of the Second Amendment—and Mark Sikes (collectively, "Plaintiffs") filed a pre-enforcement challenge claiming the Ordinance violates the First, Second, and Fourteenth Amendments to the U.S. Constitution, as well as various California laws. In their Opposition to the City's Motion to Dismiss, Plaintiffs rely heavily on ideology-driven rhetoric (e.g., that the City's legislative efforts should leave alone law-abiding gunowners and focus more on felony gun crimes, even though that topic is controlled by state law); unsupported accusations (e.g., that estimates regarding the societal costs of guns in San Jose are based on "artificially calculated" and "sham figures"); and scant legal authority. Ultimately, Plaintiffs fail to show that their claims are ripe or that they have stated any claims for which relief may be granted.

For all these reasons and those set forth below, the Motion should be granted. Because there are no facts Plaintiffs could allege to cure defects in their claims, the FAC should be dismissed without leave to amend.

## II.    ARGUMENT

### A.    The FAC Should Be Dismissed Under Rule 12(b)(1).

#### 1.    None of Plaintiffs' Claims are Ripe for Review.

In its Motion, the City showed that Plaintiffs' claims are not yet ripe for review and subject to dismissal under Rule 12(b)(1) because the Ordinance only provides a framework of a legal regime, defers deciding key aspects of that regime to future legislative action and rulemaking, and none of that legislative action or rulemaking has yet occurred. *See* Mot. at 7-9. The Ordinance becomes effective on August 7, 2022, with several logistical activities that must occur before then. See §§ 10.32.215, 10.32.240(B); § 10.32.235(A); Decl. of Sarah Zarate of City Manager's Office ("CMO Decl.") (ECF 36-16).

As a result, Plaintiffs' federal constitutional and other claims are based on speculation about hypothetical future facts and events, rather than the kind of concrete case or controversy needed for Article III jurisdiction. Mot. at 7-9; *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (ripeness concerns "are amplified when constitutional considerations are concerned" and require that federal courts only decide "constitutional issues [presented] in clean-cut and concrete form").

In response, Plaintiffs argue the Court need not concern itself with ripeness because Plaintiffs face a "credible threat of prosecution" (though the Ordinance does not authorize prosecution, *cf.* §§ 10.32.240, 10.32.245) and because of Plaintiffs' new position that the Fee amount is irrelevant to their legal arguments. Opp'n at 9-11; *see also id.* at 10 (arguing Fee requirement is unconstitutional "[r]egardless of the amount of the [F]ee" and "regardless of the identity of the nonprofit"); *id.* at 13 (arguing Fee and insurance requirements are unconstitutional regardless of their cost because determining precise dollar amount at which they impose more than a "minimal burden" requires difficult line drawing).

1    Plaintiffs' position that the Fee amount is irrelevant to their Second Amendment claim is

2    directly contrary to binding precedent requiring that Second Amendment challenges to gun

3    regulations be analyzed based on *the extent to which* they burden the exercise of Second Amendment

4    rights (and further rejecting challenges to laws that impose only minimal burdens). *Compare*

5    *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012) (en banc), *cert. denied*, 568 U.S. 1085 (2013)

6    (rejecting Second Amendment challenge to ordinance that regulated gun sales "only minimally and

7    only on county property," without requiring any empirical support justifying the ordinance), *with*

8    Opp'n at 13 (arguing "the Second Amendment is unqualified, stating that the right to bear arms

9    'shall not be infringed'"); *cf.* U.S. Const. Amend. I (providing Congress "shall make no law …

10   abridging the freedom of speech").

11   Plaintiffs' argument also makes clear that they have not suffered any Article III injury

12   because they seek relief based on a "conjectural and hypothetical" future harm. *See Summers v.*

13   *Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiffs cannot show that any threatened injury is

14   "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("allegations of

15   *possible* future injury are not sufficient" (emphasis in original)); *see also* Opp'n at 1 (asserting,

16   contrary to standing law, that "citizens do not need to suffer an imminent violation of their rights

17   before they can seek the court's protection"). Plaintiffs' speculative fears that they (and, given this

18   is a facial challenge, a large fraction of all persons subject to the Ordinance) might someday suffer

19   such purported injuries fall well short of establishing the requisite Article III injury. *See, e.g.*, *Gilbert*

20   *v. Chase Home Fin., LLC*, 2013 WL 2318890, at *11 (E.D. Cal. May 28, 2013) ("The prospect

21   of [plaintiff] someday losing the property is speculative, and does not represent a concrete injury

22   because "there is no indication that the foreclosure process has either begun or concluded"). The

23   Court is being asked to guess at the amount of the fee, identify whether it burdens constitutional and

24   other rights, and determine whether it must be struck down – all without knowing what the amount

25   of the fee actually is.

26   **2.    Plaintiffs Do Not State a Proper Facial Constitutional Challenge.**

27   Even if Plaintiffs' claims were somehow ripe and they had standing, their facial challenge

28   still fails because they allege no facts establishing that the Fee would be unconstitutional in a "large

fraction" of cases. *See* Mot. at 9-10; *Gonzales v. Carhart*, 550 U.S. 124, 167-68 (2007). In response, Plaintiffs ignore this argument, appearing to try to get around it in the same way they deal with the ripeness issue—by arguing the Fee and insurance requirements are unconstitutional as to all covered persons regardless of how much the fees cost. That argument, however, must be rejected as directly contrary to Ninth Circuit law, for reasons explained below.

**B.   The FAC Should Also Be Dismissed under Rule 12(b)(6) Because Each of Plaintiffs' Claims Fail.**

**1.   The Ordinance Is Not Preempted by State Law.**

Plaintiffs claim that "the issue of residential handgun possession has already determined to be preempted by state law." (Opp'n at 11.) First, the claim is flatly contradicted by decades of case law rejecting preemption challenges to a wide variety of local gun regulations in California. *See* Mot. at 18-19 (citing *Great Western Shows, Inc. v. County of Los Angeles*, 27 Cal.4th 853 (2002) [county ban on gun and ammunition sales on county property]; *Calguns Foundation, Inc. v. County of San Mateo*, 218 Cal.App.4th 661 (2013) [county ban on gun possession in parks]; *Cal. Rifle & Pistol Ass'n v. City of West Hollywood*, 66 Cal.App.4th 1302 (1998) [city ban on sale of 28 "Saturday Night Special" handguns designated by city manager]; *Olsen v. McGillicuddy*, 15 Cal.App.3d 897 (1971) (city ban on possession of BB guns by minors). Second, state law does not preempt the whole field, only discrete and *specific areas* of firearm regulation (such as permitting, licensing, and registration), the Ordinance here does not encroach on any of those areas. *See* Mot. at 17-19. In response, Plaintiffs abandon their overbroad claim that all local gun regulations are preempted and fall back to two limited arguments (Opp'n at 11-12), neither of which have merit.

First, Plaintiffs argue, based on a single case, that the entire Ordinance is preempted. *See* Opp'n at 11 (citing *Fiscal v. City and County of San Francisco*, 158 Cal.App.4th 895 (2008)). Plaintiffs' heavy reliance on *Fiscal* is entirely misplaced, and inappropriate here. In *Fiscal*, the Court of Appeal held that San Francisco's <u>total ban on firearm and ammunition sales and near-total ban on handgun possession</u> "including possession within … homes, businesses, and private property" was preempted under two state laws prohibiting local governments from (1) enacting "local regulations[] relating to [firearm] registration or licensing" or (2) requiring a "permit or license … to purchase,

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1   own, possess, keep, or carry" a handgun in the home or other private property. *Id.* at 901, 906-907,

2   919 (quoting Govt. Code § 53071; Penal Code § 12026 [now § 25605]); *see also id.* at 919

3   (criticizing the ordinance's "sheer breadth"). Even though the Ordinance is nothing like the handgun

4   ban struck down in *Fiscal*, Plaintiffs argue the Ordinance is preempted under that case. Opp'n at 11.

5   Plaintiffs never explain how the Ordinance regulates in "the field of residential handgun *possession*"

6   held to be fully occupied by state law in *Fiscal*, 158 Cal.App.4th at 908, nor could they. The claim

7   fails.

8       Plaintiffs' final argument is that, even "if this case is deemed to be about non-residential

9   firearm possession," the Ordinance is preempted under *Sippel v. Nedler,* 24 Cal.App.3d 173 (1972),

10  which held that an ordinance requiring gun purchasers "to obtain a permit from the police department

11  authorizing the purchase of [a] firearm" was preempted by state law occupying the field of gun

12  licensing and registration. *Id.* at 175. In a clumsy attempt to shoehorn the Ordinance into *Sippel*'s

13  holding, Plaintiffs vaguely assert that "requiring gun owners to have proof of insurance and proof of

14  paying two separate fees is ***akin to*** a permit ***or*** license" without any further explanation or supporting

15  legal authority, or even positing a definition of those terms. Opp'n at 11 (emphasis added). This

16  vague and unsupported argument fails. The Ordinance has nothing to do with gun permitting or

17  licensing, and does nothing to interfere with the state's permitting and licensing regime.

18      Plaintiffs' state preemption argument should be dismissed, as should their First Amended

19  Complaint.

20           **2.   Plaintiffs Fail to State a Second Amendment Claim.**

21      In its Motion, the City showed that, under the Ninth Circuit's two-step test for Second

22  Amendment claims, the appropriate level of scrutiny for adjudicating Plaintiffs' claim is

23  intermediate scrutiny, which the Ordinance easily survives under. Mot. at 10-16. This is flawed, for

24  two reasons. *See* Opp'n at 12-16.

25      First, Plaintiffs argue that strict scrutiny applies because the Ordinance "strikes directly" at

26  the core Second Amendment right "by conditioning lawful possession of guns in the home" on

27  compliance with the Ordinance's Fee and insurance requirement. (Opp. 12). Plaintiffs make that

28  conclusory statement, but never really explain why, and appear to misunderstand the Ordinance's

basic terms. The Court can review the basic terms of the Ordinance itself, but suffice to say, the Ordinance does not threaten seizure. It does not preclude or threaten gun possession in the home. In the Ninth Circuit, strict scrutiny is applied only if the challenged law "implicates the <u>core</u> of the Second Amendment right and <u>severely burdens</u> that right." *Young v. Hawai'i*, 992 F.3d 765, 784 (9th Cir. 2021) (en banc) (emphasis added). Plaintiffs fail to show they meet either prong, much less both. Instead, Plaintiffs quickly move on to try to distinguish three of the large number of cases cited in the City's Motion as concerning "gun sale fees" and "administrative fees," "not regulation of home use." But again, Plaintiffs never explain how the Ordinance regulates the "possession" or "use" of guns (the Ordinance regulates neither) nor how it "severely burdens" those rights under *Young*. Indeed, the burden imposed by the Ordinance is minimal at most: it neither regulates the possession or use of firearms, how or where they are stored, possession of guns in the home, nor does it impact any other factors evaluated by courts as directly affecting residents' ability to keep and bear arms for self-defense. *See, e.g.*, *Heller*, 554 U.S. at 629. Moreover, Plaintiffs do not explain why (if their position is correct) so many courts have applied intermediate scrutiny to far more restrictive laws than that of the Ordinance. *See, e.g.*, *Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) (upholding DOJ's use of gun sale fee for enforcement efforts targeting illegal firearm possession after point of sale under intermediate scrutiny); *Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015) ("*Heller III*"); *Kwong v. Bloomberg*, 723 F.3d 160, 161, 167 (2d Cir. 2013), cert. denied, 134 S. Ct. 2696 (2014); *O'Connell v. Gross*, No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020).  Intermediate scrutiny applies to this law.

Second, Plaintiffs argue that if intermediate scrutiny applies, the Ordinance fails that test for lack of a reasonable fit between the Ordinance and its stated objective. *See* Opp'n at 14-16. Across two pages of dense argument that cite only a single case (*Chovan*), Plaintiffs launch scattershot criticisms that are unsupported by law.

Plaintiffs first broadly contend the City relied on "irrelevant" information in enacting the Ordinance, and engage in an effort to pick apart a few of the statistics in the voluminous record relied on by the City. Opp'n at 14. Plaintiffs also contend that the "fit" between the Ordinance and its objectives is not sufficiently tight, and criticize the City's inclusion and reliance on figures in the

1   Ordinance estimating the economic and social costs of gun-related harms, simply because those

2   figures include costs caused by gun crimes. Opp'n at 14; *see also id.* at 15 (asserting the Fee "does

3   nothing to target criminals who own guns"). But to "reduce the number of gun incidents," the

4   Ordinance seeks to provide voluntary gun safety and other programs, and to require gunowners to

5   obtain liability insurance to compensate victims. *See* § 10.32.200(B)(10)-(13). To say the Ordinance

6   does nothing to react to gun crimes is simply inaccurate. See also § 10.32.220(A)(2)-(3) (providing

7   nonprofit will offer programming and services related to "[v]iolence reduction or gender based

8   violence services or programs" and "[a]ddiction intervention and substance abuse treatment.") There

9   is clearly a relationship between gun crimes and the Ordinance's stated aims. And moreover,

10  Plaintiffs' criticisms actually highlight that tens or hundreds of millions of dollars in economic and

11  social costs arise from *non-criminal* gun harm in any event.

12        Plaintiffs further critique the idea that requiring gun liability insurance could alleviate and

13  deter harm in the same way as automobile liability insurance does, because the City did not rely on

14  a study specific to gun liability insurance. Opp'n at 14-15. This ignores two basic truths: 1) there are

15  scant studies of this kind, because an insurance mandate over guns is innovative and novel; and 2)

16  the City has discretion to pass reasonable, lawful legislation, relying on the authority that is available,

17  which is what the Ordinance does. *Jackson v. City and County of San Francisco*, 746 F.3d 953, 966

18  (9th Cir. 2014) (lawmakers are allowed "a reasonable opportunity to experiment with solutions to

19  admittedly serious problems," such as unintentional harm caused by firearms.) And the materials

20  relied on by the City support that there are insurance policies available to comply with the insurance

21  mandate, contrary to Plaintiffs' contention. *Compare* Opp. at 6 *with* Dkt. 36-8 at 109 (noting $1.5

22  million in insurance coverage to compensate victims for gun harm under homeowners' insurance

23  policy); 122-124 (noting insurance companies offer gun liability insurance and comparing

24  underwriting factors).

25        Plaintiffs then criticize the Ordinance for not having focused more heavily on combatting

26  harms from gun crime, which is a pure policy criticism better directed at the City Council than this

27  Court. *See* Opp'n at 15. Moreover, gun harm is an important and complex subject, and legislatures

28  are entitled to address any aspect of the problem that they see fit to address.

1      Finally, Plaintiffs condemn the City for imposing a Fee designed to offset the social costs of

2  harm by *preventing* incidents of gun harm and associated costs. This argument makes no sense. It

3  does not matter that the Ordinance does not reimburse police response costs directly. , rather than

4  doing nothing to reduce incidents of gun harm and imposing a fee that merely *reimburses* the City

5  for costs incurred. *See* Opp'n at 16. Plaintiffs argue that the City is not permitted to save money by

6  reducing gun harms because the *Cox/Murdock* fee jurisprudence only permits fees to "defray"

7  already-incurred administrative and enforcement costs. *Id.* But this is a distinction without a

8  difference—a dollar saved is as good (if not better) than a dollar spent and later reimbursed. The fact

9  that the Ordinance here does not look and function exactly like past Ordinances does not mean it is

10 unconstitutional; it merely means it is acting as a laboratory of democracy and trying something

11 new. The City is entitled deference to do this. *Jackson*, 746 F.3d at 966 (citing *City of Renton v.*

12 *Playtime Theaters, Inc*., 475 U.S. 41, 52 (1986)).

13     Plaintiffs conveniently overlook the substantial, varied data and sources the City considered

14 and relied on to draft the Ordinance. *See* Dkt 36-8, p. 2-4 [listing "citations for the [fourteen] various

15 research and data sources . . . [deemed] useful in Council's deliberations on the matter.") Ultimately,

16 a perfectly overlapping venn diagram between the City's stated purpose and the terms of the

17 Ordinance is not necessary under intermediate scrutiny. The City need only show (1) that their stated

18 objective is significant, substantial, or important; and (2) a reasonable fit between the Ordinance and

19 that objective. *U.S. v. Chovan*, 735 F.3d 1127, 1139 (9th Cir. 2013). The Court should decline to

20 impose a legal requirement that does not exist.

21     In sum, Plaintiffs' scattershot response the Motion is not sufficient to show they have stated

22 a Second Amendment claim on which relief can be granted. The claim should be dismissed.

23        **3.  Plaintiffs Fail to State a First Amendment Claim Based on Compelled**
          **Speech or Association.**
24

25     Plaintiffs' First Amendment argument is based on the claim that they face a *risk of future*

26 *violation* of their free speech rights from a yet-to-be-designated nonprofit with unknown leadership

27 that, Plaintiffs argue, "will inevitably hold the City's anti-gun biases." Opp'n at 7; ¶¶ 60-64. In its

28 Motion, the City showed this claim is based largely on the kind of speculative and conclusory

allegation that need not be credited under Rule 12(b)(6). Mot. at 16-17; *see Twombly*, 550 U.S. at 555.  Plaintiffs' heavy reliance on *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), and their attempt to apply its holding outside the union context is misplaced and unsupported by law. Mot. at 16-17.

In response to the City's argument, Plaintiffs fail to cite a single case in which *Janus* has been applied outside the public union context, much less in the area of gun regulation. *See* Opp'n at 16-17. Instead, Plaintiffs weakly argue the purported uniqueness of the Ordinance has forced them to rely on *Janus* because "[u]nions are a rare example of a government forcing a citizen to pay another private entity directly." Opp'n at 17. But there are a great variety of such examples, even aside from auto liability insurance mandates: health insurance mandates (*see* Cal. Govt. Code § 100705), medical malpractice insurance mandates for physicians (*see* Cal. Bus. & Prof. Code § 2216.2), mandated smog testing (*see* Cal. Vehicle Code §§ 4000.1(a), 24007(b); Cal. Health & Safety Code § 44015); mandated assessments for agricultural marketing and promotion (*see Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550 (2005) [holding that assessments on beef producers to fund marketing program was "government speech" not subject to First Amendment challenge]; *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457 (1997) [holding federal mandate to fund generic advertising for California peaches, plums and nectarines did not violate farms' First Amendment rights]), and governments allowing private companies to operate toll roads.

Further, to the extent Plaintiffs now claim the First Amendment bars a law from requiring them to pay *any* amount of money that ends up in the hands of a government-selected entity that expresses *any* view with which they disagree, such an argument is contrary to binding precedent. *See, e.g., Bd. of Regents of the Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000) ("It is inevitable that government will adopt and pursue programs and policies within its constitutional powers but which nevertheless are contrary to the profound beliefs and sincere convictions of some of its citizens. The government, as a general rule, may support valid programs and policies by taxes or other exactions binding on protesting parties."); *R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906, 917 (9th Cir. 2005). As the U.S. Supreme Court has aptly noted: "If every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over

1   issues of great concern to the public would be limited to those in the private sector, and the role of

2   government as we know it radically transformed." *Keller v. State Bar of California*, 496 U.S. 1, 12-

3   13 (1990). Yet, that is precisely the non-existent "right" on which Plaintiffs appear to base their First

4   Amendment claim.

5         Plaintiffs' arguments fail for two additional reasons. First, Plaintiffs are not "forced to

6   support the speech of the nonprofit" because whatever message (if any) is ultimately attached to the

7   designated nonprofit, Plaintiffs will never lose their ability to "expressly disavow" their connection

8   to that message. *See PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (rejecting shopping

9   center's First Amendment challenge to state law requiring it to allow certain expressive activity on

10  its property); *Rumsfeld v. Forum for Academic and Inst. Rights, Inc.*, 547 U.S. 47, 65 (2006)

11  (rejecting First Amendment compelled-speech and compelled-association challenge to federal law

12  conditioning law schools' receipt of federal funds on schools allowing military recruiters on campus

13  during era of "Don't Ask, Don't Tell" because law did "not sufficiently interfere with any message

14  of the school"). Similarly, the Ordinance does not violate Plaintiffs' associational rights because

15  they remain free to associate with others and voice disapproval of the Ordinance and the nonprofit.

16  *See Rumsfeld*, 547 U.S. at 69-70 (right to associate not violated "regardless of how repugnant"

17  military recruiters' message was considered to be). Indeed, if Plaintiffs seek mainly to protect the

18  rights of law-abiding, safe gunowners, than public programs aimed at educating others about gun

19  safety would not appear to be objectionable. And Plaintiffs' repeated characterization of the fee as a

20  "donation" does not change the legality of the Ordinance. Opp'n at 1, 2, 5, 9, 12, 15, 17. The fee is

21  a reasonable cost-shifting mechanism to offset the social costs of gun harm that the City, in its

22  discretion and afforded the appropriate deference, is permitted to enact. *Jackson*, 746 F.3d at 966

23  (citing *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 52 (1986)).

24        Ultimately, Plaintiffs have not plausibly alleged the Fee requirement will compel them and

25  a large fraction of San Jose gunowners to engage in speech and association with which they do not

26  agree in violation of the First Amendment. This is especially so in view of federalism-based concerns

27  that federal courts should not invalidate state laws on the grounds that they violate the right of

28  association based only on "factual assumptions." *Washington State Grange v. Washington State*

1   *Republican Party*, 552 U.S. 442, 457 (2008); *accord Cal. Democratic Party v. Jones*, 530 U.S. 567,

2   600 (2000) (Stevens, J., dissenting) ("[A]n empirically debatable assumption … is too thin a reed to

3   support a credible First Amendment distinction" with respect to burdens on association). Plaintiffs'

4   First Amendment claims should be dismissed.

### 4.   The Ordinance Does Not Impose an Unlawful Tax.

6        Plaintiffs claim the Fee and insurance requirements are each a "tax" unlawfully imposed in

7   violation of the California Constitution, Article XIII C, Section 1, as amended by Proposition 26

8   ("Proposition 26"). ¶¶ 122-31. In its Motion, the City showed this argument fails for two reasons:

9   (1) neither the Fee nor insurance requirements meet Proposition 26's definition of a "tax" under

10  *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (2013), and (2) even if they did, the

11  requirements would still be lawful under Proposition 26's "specific benefit exemption" for fees

12  "imposed for a specific benefit conferred or privilege granted directly to the payor that is not provide

13  by those charged" (Cal. Const., Art. XIII C, § 1(e)). Nothing set forth in Plaintiffs' opposition

14  changes this conclusion.

15       ***First***, the Ordinance's annual Fee is not a "tax" under Proposition 26 because it is not paid

16  or remitted to the local government, but rather paid directly to and used by the designated nonprofit

17  organization to provide programming and services to gunowners and their families. § 10.32.215; *see*

18  *Schmeer*, 213 Cal.App.4th 1310 (2013) (legally mandated charge paid to and retained by retail stores

19  is not a "tax" for purposes of Proposition 26). In response, Plaintiffs argue that under *Schmeer*, a

20  charge can also be a tax if it is "for the benefit of" a local government. Opp'n at 18 (quoting Schmeer,

21  *Schmeer*, 213 Cal.App.4th at 1328-29). But here, the primary intended beneficiaries of the services

22  funded by the Fee (and paid to the non-profit) are not the City, but gunowners and their families

23  with access to the nonprofit's programming and services, and victims of accidental shootings.

24  Additionally, the *Schmeer* court's analysis makes clear that what it means by "benefit" with respect

25  to a local government is "raise[] [] revenue." 213 Cal.App.4th at 1329 (holding the bag charge is not

26  a tax "because the charge is not remitted to the county and raises no revenue for the county"). Here,

27  neither the Fee nor the insurance requirement are a tax because neither raise revenue for the City.

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**Second**, the City argued in its Motion that even if the Fee or insurance requirement is deemed a "tax," both would fall within Proposition 26's "specific benefits exception" for fees "imposed for a specific benefit conferred or privilege granted directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of conferring the benefit or granting the privilege." *See* Cal. Const., Art. XIII C, § 1(e)(1); Mot. at 20:14-22. Plaintiffs make no response to argument, thus conceding the issue. *See* Opp'n at 18-19.

In sum, the Fee is not a tax under Proposition 26, and even if it were, the specific benefits exception applies. Plaintiffs' Proposition 26 claim should be dismissed.

### 5.   The Ordinance Does Not Violate the San Jose City Charter.

Plaintiffs' last claim is that two provisions of the Ordinance (§§ 10.32.215, 10.32.220) violate the San Jose City Charter ("Charter") (§§ 701, 1204-1207, 1211). *See* Opp, 19-21; ¶¶ 73-81, 136-44. This claim has three components (*see* ¶¶ 142-44), all of which are contrary to the plain meaning of the Charter provisions at issue. Opp'n at 19-21.

**First**, Plaintiffs claim the Ordinance requirement that non-exempt gunowners pay the Fee directly to the nonprofit instead of the City (§ 10.32.215) violates a Charter provision requiring the City to deposit "[a]ll funds paid into the City Treasury" into either the City's General Fund or a special fund (Charter § 1211). ¶ 144. This claim fails for the simple reason that this Charter provision <u>expressly applies only</u> to "funds paid into the City Treasury" and not monies paid directly to a designated third party. *See* Mot. at 21. Plaintiffs contend the City's straightforward view of its own Charter is mistaken because the Fee monies are "City revenues"—an assertion for which Plaintiffs offer no explanation or support. Opp'n at 19:16. Plaintiffs further argue the City's interpretation should be rejected because it "would lead to impractical or unworkable results" (though Plaintiffs decline to explain what those would be), "would create an exception that swallows the rule" and "turn section 1211 on its head" (also unexplained), and "would subvert [Charter § 1211]'s fundamental control on the City government's ability to hide, or avoid oversight of, how City fee revenues are spent" (harkening back to Plaintiffs' prior unexplained assertion that Fee monies are "City revenues"). Opp'n at 19:27-20:4. None of these arguments are adequately explained or supported, and none are grounded in the text of the Charter. (See Mot. at 20-23.)

**Second**, Plaintiffs attack the Ordinance provision requiring the nonprofit to "spend every dollar" of Fee monies on the purposes related to reducing gun harm but that "[o]therwise, the City shall not specifically direct how the monies from the … Fee are expended." § 10.32.220(C). Opp'n at 19-21. Plaintiffs claim this violates the Charter's budgeting and appropriations procedures applicable to City "income" and "expenditures" (Charter §§ 1204-1207, 1211), or at least their purported underlying purpose of "control[ling] … City government's ability to hide, or avoid oversight of, how City fee revenues are spent." Opp'n at 20:3-4; ¶ 142; *see also* Opp'n at 7:4-6 (arguing "the potential for waste, fraud, and abuse is staggering" based on the inaccurate assertion the City will have no "oversight or even knowledge of the fees being paid to the nonprofit" or "control[] [over] how the funds are being spent"). This claim fails for the same reason as the prior one: because these Charter provisions only apply to monies in the City's possession, not to Fee monies paid directly to a designated third party. Moreover, Plaintiffs' theory that the Ordinance provides insufficient fiscal oversight of the nonprofit's expenditure of Fee monies ignores the numerous Ordinance provisions that do, in fact, provide for such oversight. Such provisions include those: (1) imposing detailed controls on the expenditure of Fee monies by the nonprofit, including a requirement that "[t]he designated non-profit shall provide a biannual report to an appropriate [City] council committee"; (2) authorizing the City Manager to promulgate regulations concerning "auditing" and "any additional guidelines" concerning the nonprofit's use of Fee monies; and (3) authorizing the City Manager to designate a new nonprofit if concerns were to arise about how the nonprofit is spending Fee monies. §§ 10.32.220(D), 10.32.235(A)(2).

**Third**, Plaintiffs claim the same Ordinance provision (§ 10.32.220) also somehow violates the Charter provision giving the City Manager responsibility "for the faithful execution" of the Charter and other City laws. Opp'n at 20-21 (quoting Charter § 701(d)); ¶ 143.) While difficult to follow, Plaintiffs appear to be upset <u>both</u> with City's general authority over how the nonprofit spends Fee monies (i.e., through the terms of the Ordinance, any future Council amendments, and any future City Manager regulations), <u>and</u> with the fact it does not have total control to direct or otherwise micromanage the nonprofit's expenditures. *See* Opp'n at 20-21. But there is no contradiction, and no impropriety. Plaintiffs' insistence to the contrary is obtuse, difficult to follow, and ultimately fails

1    to present a coherent theory about how the Ordinance violates Charter provisions giving the City

2    Manager responsibility for the faithful execution of City laws. (Opp. at 19-21)

3        In sum, Plaintiffs' claims that the Ordinance violates the Charter should be dismissed.

4        **6.   The Declaratory Relief Claim Should Be Dismissed.**

5        For their sixth and final cause of action, Plaintiffs seek declaratory relief "[t]o the extent that"

6    their other claims "have not already established a remedy." ¶ 148. In its Motion, the City argued this

7    ill-defined claim is duplicative and fails for all the reasons the other claims fail. Plaintiffs disagree,

8    responding that because the Court has subject matter jurisdiction (which the City contests), this

9    necessarily means Plaintiffs are entitled to seek declaratory relief and that such relief is not

10   duplicative and must survive any challenge at the pleading stage. Opp'n at 21. This is neither a

11   correct summary of the law, nor is it supported by Plaintiffs' only cited authority. *See County of*

12   *Santa Clara v. Trump*, 267 F. Supp. 2d 1201, 1216 (N.D. Cal. 2017) (not addressing issue of

13   duplicativeness, but dismissing all plaintiffs' claims *except* the declaratory relief claim).

14       "A declaratory relief claim is unnecessary when an adequate remedy exists under some other

15   cause of action." *Huweih v. US Bank Trust, N.A.*, 2017 WL 396143, at *6 (N.D. Cal. Jan. 30, 2017)

16   (cleaned up). Courts properly dismiss such duplicative claims for declaratory relief at the pleading

17   stage. *Id.*; *Clear Conn. Corp. v. Comcast Cable Communs. Mgmt., LLC*, 501 F.Supp.3d 886, 898

18   (E.D. Cal. 2020) (dismissing declaratory relief claim as redundant); *Nguyen v. Wells Fargo Bank,*

19   *N.A.*, 749 F.Supp.2d 1022, 1038 (N.D. Cal. 2010) (dismissing declaratory relief claim where, among

20   other things, the plaintiff did not show "how the declaratory relief claim is not duplicative of other

21   claims in this case"). *Sharma v. BMW of N. Am., LLC*, 2014 WL 2795512, at *7 (N.D. Cal. June 19,

22   2014) (dismissing declaratory relief claim that "identifie[d] no controversy other than that presented

23   in plaintiffs' substantive claims for relief"). Plaintiffs' declaratory relief claim should be dismissed

24   as duplicative.

25       Moreover, the declaratory relief claim fails for the same reason as Plaintiffs' other claims

26   fail: lack of ripeness. Declaratory relief can only be granted if there is an "actual case or

27   controversy." *Am. States Ins. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). This standard involves a

28   determination of ripeness, which is judged by whether "there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005); *see also Scott*, 306 F.3d at 662 ("The prudential considerations of ripeness are amplified when constitutional considerations are concerned," and federal courts should exercise jurisdiction over constitutional challenges "only when the underlying constitutional issues [are] in clean-cut and concrete form"). As a separate cause of action, "declaratory relief" should be dismissed.

## III.     CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court grant its Motion to Dismiss the First Amended Complaint under Rules 12(b)(1) and 12(b)(6). Since the Complaint's defects cannot be cured, the City requests that the dismissal be without leave to amend.

Dated: April 29, 2022                     **COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Tamarah P. Prevost*
    JOSEPH W. COTCHETT
    TAMARAH P. PREVOST
    ANDREW F. KIRTLEY
    MELISSA MONTENEGRO

    *Attorneys for Defendants*