JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
MELISSA MONTENEGRO (SBN 329099)
mmontenegro@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., a non-profit corporation; and MARK SIKES, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE, a public entity, JENNIFER MAGUIRE, in her official capacity as City Manager of the City of San Jose, and the CITY OF SAN JOSE CITY COUNCIL,<br><br>Defendants. | Case No. 5:22-cv-00501-BLF<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEFING**<br><br>Motion: Mot. for Preliminary Injunction<br>Date: July 14, 2022<br>Time: 9:00 a.m.<br>Courtroom: Zoom Webinar<br>Judge: Hon. Beth Labson Freeman |

## I. INTRODUCTION

In *Bruen*, the U.S. Supreme Court held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843, 2022 WL 2251305, at *5 (U.S. June 23, 2022) ("*Bruen*"). Applying this holding to a New York law that required residents to "demonstrate a special need for self-protection" to obtain a handgun license, the Court ruled that requirement unconstitutional. *Id.* at *5, 34; *see also id.* at *38-39 (Kavanaugh, J., and Roberts, C.J., concurring) ("underscor[ing] the limits of the Court's decision"); *id.*, at *34-38 (Alito, J., concurring) (similar). In doing so, *Bruen* fundamentally altered the legal analysis governing Second Amendment challenges; but its holding was limited. What *Bruen* did not do was raise any serious questions about the constitutionality of the San Jose Ordinance here. To the contrary, *Bruen* indicates the Ordinance does not even *trigger* Second Amendment analysis because it does not "infringe[]" anyone's rights to "keep and bear arms." Moreover, even if it did, per *Bruen* the Ordinance's features are well within states' historical authority to regulate firearms. Plaintiffs' preliminary injunction motion should still be denied.

## II. ARGUMENT

### A. *Bruen* Changed the Second Amendment Analysis

Following *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller*"), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"), federal courts "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Bruen*, 2022 WL 2251305, at *7; *see, e.g.*, *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). That two-step analysis formed the basis for Plaintiffs' Second Amendment argument in their preliminary injunction motion, *see Nat'l Assn. for Gun Rights, Inc., et al. v. City of San Jose*, *et al.*, No. 5:22-cv-00501-BLF, ECF 25 at 9-15, as well as the underlying Second Amendment claims in this action and the two related actions, which may be consolidated in the future. *Id.*, ECF 1 ¶¶ 32-46, 73-94; *Howard Jarvis Taxpayers Assn., et al. v. City of San Jose, et al.*, No. 5:22-cv-00501-BLF, ECF 1, Ex. A ¶¶ 20-23; *Glass, et al. v. City of San Jose, et al.*, No. 5:22-cv-02533-BLF, ECF 1 ¶¶ 41-53.

The *Bruen* Court rejected that two-step analysis, or any interest-balancing inquiry or means-end test strict or intermediate scrutiny test, in favor of a "methodology centered on constitutional text and

history." *Bruen*, 2022 WL 2251305, at *10-11. Henceforth, "the standard . . . is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects [it]." Then, to be upheld, a regulation must be demonstrably "consistent with the Nation's historical tradition of firearm regulation." *Id.*, at *11. As set forth below, the constitutionality of the Ordinance is unaffected by this analytical change, or by *Bruen*'s core holding. Plaintiffs' preliminary injunction motion should be denied.

### B.  The Ordinance Does Not "Infringe" Any Second Amendment Rights

*Bruen* emphasizes that Second Amendment analysis must begin with its "plain" text, which provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST., amend. II; 2022 WL 2251305, at *8. Thus, to trigger this analysis, the law at issue must plainly "infringe[]" on either the Second Amendment right to "keep" or to "bear" arms, which "guarantee the individual right to possess and carry weapons in case of confrontation." *Id.*, at *14; *15 (right applies to keeping firearms "in the home, at the ready for self-defense"); *id.* at *14-15 (right "refers to the right to wear, bear, or carry ... for the purpose ... of being armed and ready for offensive or defensive action" outside the home).

The Ordinance here is constitutional because it does not "infringe" on either of the Second Amendment rights protected by *Bruen*.[1] Unlike the laws struck down in *Heller*, *McDonald*, and *Bruen*, it does not ban, prohibit, or prevent anyone from keeping or bearing arms for self-defense in the home or in public. *See id.* at *34*.; *Heller*, 554 U.S. at 628, 630 (striking down law that "totally bans handgun possession in the home" and "makes it impossible" to use guns for self-defense"); *McDonald*, 561 U.S. at 750 (striking down law "banning handgun possession"). Nor does it require that firearms be stored or transported in a way rendering them "inoperable" or preventing use in self-defense. *Heller*, 554 U.S. at 628, 632. Indeed, the Ordinance does not regulate the purchase, sale, storage, or use of firearms in any way, whether inside the home or in public; it merely requires they obtain liability insurance to cover accidental harm and pay a fee to a nonprofit organization to prevent and reduce gun injuries and deaths.

---

[1] The City's previous concession that the Ordinance "imposes some minimal or slight burden" in its Opposition brief was made under the Ninth Circuit's now-defunct two-step analysis and after *Bruen*, is no longer constitutionally relevant. Dkt. 28, at 15; *Bruen*, 2022 WL 2251305, at *23; *27.

By contrast, the New York law at issue in *Bruen* criminalized possessing a firearm publicly without a license, obtainable only if a gunowner could prove "proper cause," which required her to "demonstrate a special need for self-protection distinguishable from that of the general community." *Bruen*, 2022 WL 2251305, at *6 (citing N.Y. Penal Law Ann. § 400.00(2)(f)). *Bruen* struck down this law explicitly for "features" entirely absent from the Ordinance: a vague "special-need requirement" and the "unchanneled discretion" afforded state licensing officials upon issuance. *Id.*, at *38 (Kavanaugh, J., and Roberts, C.J., concurring); *see also id.*, at *34 (Alito, J., concurring) ("[T]oday's decision therefore holds that a State may not enforce a law … that effectively prevents its law-abiding residents from carrying a gun for [self defense]. That is all we decide.").

The Ordinance here bears none of the same features, nor even anything remotely similar. It is not a licensing or permitting scheme; does not impose criminal penalties for non-compliance; does not give government officials discretion over individuals' ability to keep or carry firearms for self-defense; nor impact their ability to use a gun for self-defense. The Ordinance does not infringe, under *Bruen*.

      **C.**     ***Bruen*'s Reasoning Shows Why the Ordinance is Constitutional**

Since the Ordinance does not infringe Second Amendment rights, the Court need not go further. However, *Bruen*'s reasoning offers further support here. Per *Bruen*, states have long had and exercised the right to regulate the *manner* in which firearm rights were exercised, so long as they did not "altogether prohibit" the right to keep or bear arms. 2022 WL 2251305, at *25, 26; *see also id.*, *25 (finding "a consensus that States could not ban public carry altogether"); *id.*, at *14 (contrasting unconstitutional New York law with historical laws limiting "manner" – i.e., appropriately establishing "sensitive places" where weapons were prohibited.)

In explaining its reasoning, *Bruen* cited, *inter alia*, numerous antebellum decisions from State high courts upholding state laws banning concealed carry—but not banning public carry altogether. *See Bruen*, 2022 WL 2251305, at *44-46 (discussing five state high court decisions); *see e.g., id*. at *45 citing *State v. Reid*, 1 Ala. 612 (1840) (holding Alabama's concealed carry prohibition permissible under state constitution which "neither expressly nor by implication, denied to the Legislature, the right to enact laws in regard to the manner in which arms shall be borne"); *see also Bruen*, Br. for Amici Curiae Professors of History and Law in Support of Respondents 19-20 & n.13, *available at*

https://tinyurl.com/y5ek8mph (brief by 17 preeminent American and English law historians noting numerous state statutes and constitutional provisions prescribing gun regulations); *see also Nunn v. State*, 1 Ga. 243, 251 (1846) (Georgia law prohibiting "wearing" or "carrying" pistols was "valid" to the extent it prohibited "carrying certain weapons secretly.") A key takeaway from these decisions, read with the benefit of *Bruen*'s analysis, is that a government's police power can be used to exact firearms regulation imposing less than a total or *de facto* prohibition on keeping arms for self-defense. *See, e.g.*, *Reid*, 1 Ala. at 612; *see also* Saul Cornell, *The Long Arc of Arms Regulation in Public: From Surety to Permitting, 1328–1928*, 55 U.C. Davis L. Rev. 2545, 2591 (2022) (Reconstruction era state constitutions "expressly recognized broad police power authority to regulate arms").

And this reasoning is also consistent with centuries of jurisprudence upholding regulations affecting individual constitutional rights, such as those on the freedom of speech (e.g., time, place, and manner restrictions) or property rights. *See, e.g.*, *Ballinger v. City of Oakland*, 24 F.4th 1287 (9th Cir. 2022) (rejecting constitutional takings, exaction, and unreasonable seizure challenges to ordinance requiring landlord to pay tenant a relocation fee); *FCC v. Fla. Power Corp*., 480 U.S. 245, 252 (1987) (concerning wide constitutionality of "statutes regulating [] economic relations" under the Fifth Amendment). Guns are property; and Constitutionally-protected property rights have for decades been commonly subject to governmental regulations. The Ordinance is no different.

### D. Numerous "Relevantly Similar" Historical Analogues Support the Ordinance's Constitutionality

As noted, because the Ordinance does not "infringe" on any Second Amendment right, the inquiry should end there. However, should the Court continue, *Bruen* directs it to evaluate historical regulations by way of analogy, an inquiry easily satisfied here. *Bruen*, 2022 WL 2251305, at *13.

A proper analogue is drawn between two laws that are "relevantly similar," and the Court identified two metrics for making this determination: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at *13. The government need only "identify a well-established and representative historical analogue, not a historical twin," and even if "not a dead ringer for historical precursors," a law still may "pass … muster." *Id*. After all, "[t]he regulatory challenges

posed by firearms today are not always the same as those" in 1791 or 1868 and "the Constitution can, and must, apply to circumstances beyond" those the Founders anticipated." *Id.*, at *12.

Countless possible historic regulations and laws can be analogized to the Ordinance. As a preliminary matter, numerous laws from the 1700s prioritized public safety, welfare, or the "public good," including preventing harm from firearms, regulating the possession, storage, and transport of gunpowder, and those conditioning the keeping and bearing of guns on the gunowner taking an oath of loyalty to the state. *See* Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 74 Fordham L.R. 487, 506-08, 510-12 (2004). The 1800s saw laws limiting the carrying of concealed weapons and prohibiting firing guns in certain circumstances, including within town limits. *See id.* at 513-15.

And supportive of both the non-profit fee and insurance mandates in the Ordinance, *Bruen* itself reviewed surety laws from the 1800s. *See Bruen*, 2022 WL 2251305, at *26-28; *see generally* Cornell, *supra*, *The Long Arc of Arms Regulation*, 55 U.C. Davis L. Rev. at 2570-71 (2022) ("[T]he imposition of a peace bond was the primary mechanism for the enforcement of the peace in the early republic …. The appropriate legal response to the danger posed by someone traveling armed in public was to impose a peace bond, a surety of the peace."). While *Bruen* ultimately found these laws did not save the specific New York law at issue, *Bruen*'s reasoning is directly applicable here: because such laws are "intended merely for prevention" and "not meant as any degree of punishment," any burden associated with these surety laws was "too insignificant" to bear on the constitutionality analysis. *Bruen*, 2022 WL 2251305, at *27 (citing 4 Blackstone, *Commentaries*, at 249). The Ordinance is non-punitive, and designed to prevent harm.

Outside the firearms context, laws regulating dangerous animals offer analogies to those (like the Ordinance) preventing harm and compensating losses. For example, numerous Civil War-era state laws compelled the payment of taxes or fees by dog owners to compensate harm to livestock caused by their dogs—akin to the Ordinance's liability insurance to cover accidental harm. *See, e.g.*, *Mitchell v. Williams*, 27 Ind. 62, 64 (1866) (upholding tax on "sheep-killing dogs" and granting legislature considerable leeway in administration and expenditure of funds generated as a result); *Tenney v. Lenz*,

16 Wis. 566 (1863) (similar); *Osborn v. Selectmen of Lenox*, 84 Mass. 207, 208-209 (1861) (upholding tax on dogs to compensate owners of livestock killed or injured by dogs).

Moreover, *Bruen* is abundantly clear that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id*., at *39 (Kavanaugh, J., and Roberts, C.J., concurring) (citing *Heller*, 554 U.S. at 636). Fingerprinting, background and mental health records checks, training in firearms handling, and laws regarding the use of force, among others, are permissible even if not directly historically traceable because they reflect state and local governments legitimate power to uphold peace and good order. *Id*. The Ordinance's requirements are analogous to and significantly less burdensome than what the Court indicated were *per se* constitutional.

In sum, even if the Ordinance is found to infringe on Second Amendment rights in some way (it does not), these and other countless examples show its well-established historical roots and analogues sufficient to establish its constitutionality under *Bruen*.

E. ***Bruen* Does Not Support Issuing a Preliminary Injunction**

The preliminary injunction motion should be denied because there is no risk of "immediate irreparable harm" here. *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008). While the Ordinance is "effective" on August 8, 2022, the City Manager's Office ("CMO") has delayed implementation of the Ordinance to an indeterminate date. *See Memorandum from Sarah Zarate to San Jose City Council* (July 1, 2022), *available at* https://www.sanjoseca.gov/home/showpubliccsheddocument/87508. September 2022 is the earliest tentative date the CMO will set an implementation date for the insurance requirement," which would be January 1, 2023, at the earliest, and December 2022 is the earliest (tentative) date the City's contract with non-profit will be formed. *Id*. at 4-5. As such, Plaintiffs' request for extraordinary expedient relief is unnecessary and should be denied.

III. **CONCLUSION**

The Ordinance is constitutional under *Bruen*. Plaintiffs' motion should be denied.

/ / /

/ / /

/ / /

|  |  |
|---|---|
| Dated: July 8, 2022 | Respectfully submitted,<br><br>**COTCHETT, PITRE & McCARTHY, LLP**<br><br>By: */s/ Tamarah P. Prevost*<br>　　Joseph W. Cotchett<br>　　Tamarah P. Prevost<br>　　Andrew F. Kirtley<br>　　Melissa Montenegro<br><br>*Attorneys for Defendants City of San Jose, et al.* |