HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

DAVID A. WARRINGTON*
dwarrington@dhillonlaw.com
CURTIS M. SCHUBE*
cschube@dhillonlaw.com
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, VA 22314
Telephone: (571) 400-2121

*Admitted *Pro Hac Vice*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,** a non-profit corporation, and **MARK SIKES,** an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE,** a public entity, **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL,**<br><br>Defendants. | Case No. **5:22-cv-00501-BLF**<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF**<br><br>Motion:     Mot. Preliminary Injunction<br>Date:         July 14, 2022<br>Time:        9:00 a.m.<br>Courtroom: Zoom<br>Judge:       Hon. Beth Labson Freeman |



Plaintiffs' Supplemental Brief                                                                                  5:22-cv-00501-BLF

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

On June 27, 2022, this Court requested supplemental briefing, advising the Court on the appropriate standard to be applied in evaluating Plaintiffs' Motion for Preliminary Injunction in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, ---S. Ct.----, No. 20-843, 2022 WL 2251305 (June 23, 2022). Indeed, *Bruen* fundamentally changed the framework with which courts are to evaluate gun regulations. Accordingly, this Court should apply neither strict scrutiny nor intermediate scrutiny, but rather the new framework under *Bruen*. Under this standard, San Jose Ordinance Number 30716 (the "Ordinance") is unconstitutional because imposing insurance requirements for every gun owner, and fees to fund non-profit organizations, is not consistent with the Nation's historical tradition of firearm regulation. Accordingly, the Court should declare the Ordinance unconstitutional and enjoin its enforcement.

**1. The Historical Tradition Test Has Replaced the Interest Balancing/Scrutiny Analysis.**

The Supreme Court acknowledged courts have operated under a two-step inquiry, asking first whether a law falls within the scope of the Second Amendment and second how close to the core of the Second Amendment right the regulation comes, which directs the level of scrutiny to be applied. *Bruen*, 2022 WL 2251305, at *8. However, "[d]espite the popularity of this two-step approach, it is one step too many." *Id*. at *9. Step one, "which demands a test rooted in the Second Amendment's text, as informed by history" is appropriate. *Id*. But "applying means-end scrutiny in the Second Amendment context" is unsupported by Supreme Court precedent. *Id*. "Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. Thus, the new method of evaluating a gun regulation is as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id*. at *11. (internal quotation omitted).

### 2. The *Bruen* Test, As Applied, Demonstrates that Laws That Do Not Have Historical Comparisons Are Unconstitutional

The test described in *Bruen* "[i]n some cases…will be fairly straightforward." *Id.* at *12. It is "straightforward" when "earlier generations addressed the societal problem, but did so through materially different means [than the proposed regulation], that…could be evidence that a modern regulation is unconstitutional." *Id*. Thus, for example, a complete ban on firearms in the home in a densely populated area that struggles with "firearm violence" is unconstitutional because "the Founders themselves could have adopted [such a measure] to confront that problem." *Id*. (citing *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008)). Conversely, "longstanding" laws, such as laws forbidding carrying firearms in sensitive places such as schools or government buildings pass this test because it can be assumed "it [was] settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." *Id*. at *14.

The regulation at issue in *Bruen* dealt with the same issue of "handgun violence primarily in urban areas," which was found to have been a societal concern even at the time of the founding era. *Id.* at *12 (citing *Heller*, 554 U.S. at 634) (internal quotation marks omitted). And, it was conceded by all parties that the Second Amendment generally guarantees the right to public carry. *Id*. at *15. Thus, the Government had to prove that the proper cause requirement, which required those wishing to carry a concealed weapon to show cause before obtaining a carry license, was consistent with this Nation's historical tradition of firearm regulation. *Id*.

In *Bruen*, New York was unable to make such a showing. First, the Court values history from the founding era, "when the people adopted" the Second Amendment, more than other eras of history. *Id.* at *16. However, in *Bruen*, upon reviewing English history, colonial history, and the history during the founding era, the Court found that "[n]one of these historical limitations on the right to bear arms approach New York's proper-cause requirement because none operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose." *Id*. at *28. And, even after reviewing history of gun regulations up until the time of the passage of the Fourteenth Amendment, New York was still unable to point to an "American tradition justifying the State's proper-cause requirement." *Id*. at *33.

### 3. The Ordinance's Insurance and Fee Requirements Fail Under *Bruen* Analysis.

First, the Ordinance imposes a burden upon the ability to possess firearms. Both the insurance requirement and the nonprofit donation requirement impose costs upon gun owners that they must satisfy to exercise their Second Amendment rights. This is a point which the City has conceded. Defs. Oppo. MPI 7:3-4. Indeed, this Ordinance, which focuses its regulation on firearms in the home, is within the area of Second Amendment protection that is "most acute." *Heller*, 554 U.S. at 628. Thus, the first step, whether the Second Amendment's text covers the individual's conduct, is satisfied. Accordingly, it is the *City's burden* to establish that the Ordinance is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, 2022 WL 2251305, at *11. The City cannot meet this burden.

Just as in *Heller* and *Bruen*, the City has cited in their "whereas" clauses and "purposes and findings" that the societal concerns it wishes to address are "firearm injuries," "firearm suicide," "firearm homicide," gun injuries in the home, accidental death by shooting, and generally to "reduce gun harm." Ordinance No. 30716, Plfs. Ex. K The City also cites the "financial burden" on the city as well as individuals and families. *Id*. Similarly, the City's stated objective during briefing has been "public safety and addressing gun injuries" and "reducing the social and financial costs caused by guns." Defs. Oppo. MPI 9:11-12, 18. Neither societal interest, gun violence, nor financial costs associated with gun violence are unique to modern times and would have been problems that existed at the time of the Founders. *Bruen*, 2022 WL 2251305, at *12.

Given that gun violence and the financial and social costs of gun violence are concerns that have existed throughout American history, the City is obligated to identify historical examples of gun regulations that resemble the Ordinance's regulations. However, the City cannot identify historical examples of requiring all gun owners to carry insurance as a condition to possess a gun or to pay a fee to fund a non-profit organization chosen by the government. Indeed, the City's Mayor has been billing

//
//
//

this Ordinance as a first-of-its-kind law. In his January 25, 2022, Press Release, for example, he stated:

> "Tonight San José became the first city in the United States to enact an ordinance to require gun owners to purchase liability insurance, and to invest funds generated from fees paid by gun owners into evidence-based initiatives to reduce gun violence and gun harm."

Plfs' MPI Ex. E. The City has thus already acknowledged that both regulations are unprecedented and cannot be compared to any historical examples.

### 4. The Ordinance is Distinguishable from 19th Century Surety Laws

The City may argue that their Ordinance is comparable to the surety laws of the mid-19th Century referenced in *Bruen*. 2022 WL 2251305, at *26-28. But the Supreme Court's analysis of surety laws highlights the constitutionally meaningful distinction between them and the City's Ordinance. In short, the government's starting point must be that every citizen has a right to possess or carry a weapon, especially in the home, and it can only infringe upon that right once cause has been shown *specific to the individual*. Inherent in San Jose's Ordinance, however, is an assumption that every person is a danger and they must purchase their right to own a gun.

In the mid-19th century, certain jurisdictions required some individuals to post bond before carrying weapons in public. *Id*. at *26. Significantly, the Supreme Court concluded that "the surety statutes *presumed* that individuals had a right to public carry that could be burdened [with the bond requirement] only if . . . [there was a] specific showing of 'reasonable cause to fear an injury, or breach of the peace'" by that person. *Id*. (quoting Mass. Rev. Stat., ch. 134, § 16 (1836) (emphasis in original). Specifically, the surety statutes imposed their burdens "only *after* an individual was reasonably accused of intending to injure another or breach the peace." *Id*. at *27 (emphasis in original). Accordingly, the Court concluded that "'[u]nder surety laws ... everyone started out with robust carrying rights' and only those reasonably accused were required to show a special need in order to avoid posting a bond." *Id.*

San Jose's Ordinance, by contrast, starts from the position that no person has a right to keep and bear arms, even in their own home, unless they first obtain insurance and make a donation to the

City's chosen nonprofit. Unlike the surety statutes, the burden the Ordinance would impose on a person's Second Amendment right to keep arms in the home is not justified based on the past behavior of that person demonstrating a likelihood of causing harm. The Ordinance instead presumes that all lawful gun owners residing in the City, with limited exceptions, are somehow dangers to themselves and others. Ordinance §§10.32.210.A; 10.32.225. This interpretation is reinforced by the fact that those who don't pay for insurance and pay a fee are subjected to having their guns impounded. Ordinance § 10.32.245.

Thus, rather than a law respecting a "robust" constitutional right to keep and bear arms, the Ordinance prevents citizens from exercising their right to possess a gun unless they pay unprecedented insurance premiums and donate to the City's non-profit. As *Bruen* established, when laws presume that no citizen is entitled to possess a gun, the law is unconstitutional.

## CONCLUSION

The standard set forth in *Bruen* confirms that San Jose cannot meet its burden to prove that its "first of its kind" Ordinance is constitutional. The Ordinance fails because it would "prevent law-abiding citizens with ordinary self-defense needs" from exercising their Second Amendment rights. *Bruen*, 2022 WL 2251305, at *28. Accordingly, in light of *Bruen,* this Court should declare that the Ordinance is unconstitutional and enjoin its enforcement.

Dated: July 8, 2022                               By:  /s/ *Harmeet K. Dhillon*
                                                    Harmeet K. Dhillon
                                                    Michael A. Columbo
                                                    Mark P. Meuser
                                                    DHILLON LAW GROUP INC.
                                                    177 Post Street, Suite 700
                                                    San Francisco, California 94108
                                                    (415) 433-1700

                                                    David A. Warrington (*pro hac vice*)
                                                    Curtis M. Schube (*pro hac vice*)
                                                    DHILLON LAW GROUP INC.
                                                    2121 Eisenhower Avenue, Suite 402
                                                    Alexandria, VA 22314
                                                    (571) 400-2121

                                                    *Attorneys for Plaintiffs*