```
1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

4

5   NATIONAL ASSOCIATION FOR GUN    )   CV-22-00501-BLF
    RIGHTS, INC. ET AL,             )
6                                   )   SAN JOSE, CALIFORNIA
                    PLAINTIFF,      )
7                                   )   JULY 14, 2022
                VS.                 )
8                                   )   PAGES 1-44
    CITY OF SAN JOSE, ET AL,        )
9                                   )
                    DEFENDANT.      )
10                                  )
    _____

11                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE BETH LABSON FREEMAN
12                UNITED STATES DISTRICT JUDGE

13
                     A P P E A R A N C E S
14

15      FOR THE PLAINTIFF:     BY:  MICHAEL A COLUMBO
                               DHILLON LAW GROUP, INC.
16                             POLITICAL LAW
                               177 POST STREET, SUITE 700
17                             SAN FRANCISCO, CA 94108

18      FOR THE DEFENDANT:     BY:  TAMARAH PREVOST
                                    MELISSA MONTENEGRO
19                                  ANDREW KIRTLEY
                               COTCHETT PITRE MCCARTHY
20                             840 MALCOLM ROAD
                               BURLINGAME, CA 94010
21

22

23      OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                    CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        SAN JOSE, CALIFORNIA              JULY 14, 2022

 2                    P R O C E E D I N G S

 3        (COURT CONVENED AT 9:19 A.M.)

 4            THE CLERK:  CALLING CASE 22-0501.  NATIONAL

 5    ASSOCIATION FOR GUN RIGHTS, ET AL. VERSUS CITY OF SAN JOSE,

 6    ET AL.

 7            COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

 8    IF WE COULD BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANT.

 9            THE COURT:  OH, MR. COLUMBO, I CAN'T HEAR YOU.

10        MR. COLUMBO, DO YOU HAVE ANOTHER DEVICE HANDY, LIKE YOUR

11    CELL PHONE, THAT YOU COULD ALSO TURN ON AND THEN MUTE AND TURN

12    DOWN YOUR SOUND ON YOUR COMPUTER?

13            MS. PREVOST:  I CAN PLACE MY APPEARANCE ON THE RECORD

14    WHILE WE ARE WAITING FOR MR. COLUMBO, IF YOU LIKE.

15        TAMARAH PREVOST, COTCHETT PITRE & MCCARTHY FOR THE CITY OF

16    SAN JOSE ET AL.

17            MR. KIRTLEY:  ANDREW KIRTLEY ALSO OF COTCHETT PITRE &

18    MCCARTHY.

19            THE COURT:  GOOD MORNING.

20            MR. KIRTLEY:  GOOD MORNING.

21            MS. MONTENEGRO:  AND GOOD MORNING.

22        MELISSA MONTENEGRO, ALSO COTCHETT PITRE & MCCARTHY, FOR

23    THE CITY OF SAN JOSE, ET AL.

24            THE COURT:  MR. COLUMBO, WE HAVE THIS PROBLEM OFTEN.

25    SO WE USUALLY HAVE SOME PRETTY GOOD FIXES.  ARE YOU ABLE TO
```

1     CONNECT WITH THE SECOND DEVICE?

2          (PAUSE IN PROCEEDINGS.)

3               THE COURT:  OKAY.  NOW I CAN GET YOUR APPEARANCE ON

4     THE RECORD.

5               MR. COLUMBO:  GOOD MORNING, YOUR HONOR.

6          MICHAEL COLUMBO ON BEHALF OF THE NATIONAL ASSOCIATION FOR

7     GUN RIGHTS AND MARK SIKES, PLAINTIFF IN THIS MATTER.

8               THE COURT:  GOOD MORNING.

9          SO TECHNOLOGY IS GREAT WHEN IT WORKS.  AND REMOTE

10    PROCEEDINGS HAVE THEIR OWN PROBLEMS.  WE HAVE ALL BEEN IN

11    TRAFFIC JAMS ON OUR WAY TO COURT THAT ARE EVEN MORE AGGRAVATING

12    THAN A TECHNOLOGY GLITCH, SO THANK YOU FOR APPEARING ON ZOOM.

13         ALL RIGHT.  THIS IS THE TIME SET FOR THE PLAINTIFF'S

14    MOTION FOR PRELIMINARY INJUNCTION.  PLAINTIFFS HAVE IDENTIFIED

15    A NUMBER OF ISSUES AND GROUNDS ON WHICH THE ORDINANCE SHOULD

16    FAIL, THUS ENTITLING THEM TO A PRELIMINARY INJUNCTION DURING

17    THE PENDENCY OF THE ACTION.

18         WHAT I WOULD LIKE TO DO FIRST IS TO WALK THROUGH MY

19    IMPRESSIONS FROM THE BRIEFING, AND I WANT TO THANK YOU FOR YOUR

20    SUPPLEMENTAL BRIEFS, THEY WERE REALLY EXCELLENT, AND I THINK

21    BENEFITTED FROM THE SCARCE NUMBER OF PAGES I ALLOWED YOU,

22    BECAUSE I GOT VERY CONCISE, I THINK REALLY VERY HELPFUL,

23    ARGUMENT FROM YOU.  THANK YOU.

24         WE ALL WERE -- WE WERE EXPECTING THE BRUEN DECISION, BUT

25    NO ONE ACTUALLY EXPECTED YOU TO HAVE TO TURN ON A DIME AND

1    RECONFIGURE YOUR ENTIRE ARGUMENT FOR THIS PRELIMINARY

2    INJUNCTION.  SO IT'S JUST THE WAY IT IS.  MAYBE BETTER THAN IF

3    WE HAD HAD THIS ARGUMENT THE WEEK BEFORE THE CASE CAME OUT

4    BECAUSE THEN IT WOULD HAVE BEEN USELESS.

5        SO THERE ARE A NUMBER OF DISPARATE GROUNDS ON WHICH THE

6    PLAINTIFFS SUBMIT THEIR REQUEST FOR PRELIMINARY INJUNCTION, BUT

7    WHAT I'VE TRIED TO DO IS TO ORGANIZE THEM IN A WAY IN WHICH I

8    CAN ANALYZE EACH ONE, ALWAYS RESERVING THE CONSTITUTIONAL

9    ANALYSIS FOR LAST, BECAUSE IF I DON'T NEED TO INTERPRET THE

10   CONSTITUTION, I'M BETTER OFF AVOIDING THAT.

11       BUT I THINK IT ULTIMATELY IS UNAVOIDABLE IN THIS CASE, BUT

12   THERE ARE A COUPLE OF ISSUES I DID DEAL WITH, I THINK.

13       IN TERMS OF THE FIRST AMENDMENT CHALLENGE TO THE FEE, I

14   AGREE WITH THE DEFENDANTS THAT THAT CLAIM IS NOT RIPE.  I

15   WAS -- I FELT THAT IN READING THE OPENING BRIEFS, BUT THEN I

16   WAS PROVIDED WITH A SUPPLEMENTAL INFORMATION THAT THE CITY HAS

17   IN FACT POSTPONED THE OPERATIVE DATE OF THE ORDINANCE UNTIL THE

18   REGULATION ON THE IDENTIFICATION OF THE NONPROFIT AND THE

19   AMOUNT OF THE FEE IS DETERMINED.

20       AND SO I THINK THAT I HAVE NOTHING THAT I CAN ACTUALLY

21   ANALYZE UNDER THE FIRST AMENDMENT WITHOUT KNOWING WHAT THE

22   NONPROFIT IS.  THAT'S JUST TOO VAGUE A TERM, A NONPROFIT, FOR

23   ME TO MAKE ANY REASONABLE RULING.

24       AND I DON'T ACTUALLY SEE ANY IRREPARABLE HARM, BECAUSE

25   THAT IS POSTPONED FOR MANY MONTHS, AND SHOULD SOMETHING COME

1    UP, WE CAN WORK OUT A WAY IN WHICH THE PLAINTIFFS CAN BE

2    PROTECTED, IF THEY FEEL THE ISSUE NEEDS ADDITIONAL SCRUTINY IN

3    A PRELIMINARY INJUNCTION OR TEMPORARY RESTRAINING ORDER

4    POSTURE.

5         IN TERMS OF THE -- AND I DON'T SEE THE INSURANCE CLAIM AS

6    IN ANY WAY INVOKING A FIRST AMENDMENT ANALYSIS BECAUSE -- WELL,

7    I JUST DON'T SEE THAT.

8         THE BRIEFING BY THE PLAINTIFFS, IN MANY REGARDS, MERGED

9    THE DISCUSSION OF INSURANCE AND FEE.  SO I MAY NOT BE

10   REMEMBERING WHERE A BRIGHT LINE WAS DRAWN FOR THE ARGUMENTS,

11   AND I APOLOGIZE FOR THAT, MR. COLUMBO, IT WAS HARD TO KEEP THEM

12   STRAIGHT.

13        IN TERMS OF THE EVALUATING THE SECOND AMENDMENT ARGUMENT

14   UNDER BRUEN, THE FIRST THING I HAVE TO DO IS TO IDENTIFY THE

15   CONDUCT IN QUESTION.  THAT IS EXACTLY WHAT JUSTICE THOMAS DID

16   IN HIS ANALYSIS AND WHAT THE COURT, WITH A MAJORITY, INSTRUCTS

17   THE LOWER COURTS TO DO.

18        SO WITH THAT UNDERSTOOD BY ME, I NEEDED -- I HAVE REVIEWED

19   THE ORDINANCE, AND THERE WAS A PIECE OF THE ORDINANCE THAT I

20   FELT HAD TO BE ADDRESSED FIRST BEFORE I COULD UNDERSTAND THE

21   CONDUCT IN QUESTION.

22        AND BY THAT, I AM REFERRING TO THE IMPOUNDMENT SECTION.

23   SO THE PLAINTIFFS ARGUE THAT THE ENTIRE ORDINANCE IS PREEMPTED

24   BY STATE LAW.  AND ALTHOUGH I DISAGREE AS TO SECTION 10.32.240

25   ON ENFORCEMENT WITH THE VIOLATIONS, SECTION 2.45 ON IMPOUNDMENT

1    CLEARLY STATES, THIS IS REALLY A PLACE SAVER, IN MY VIEW, IN

2    THE ORDINANCE, AND THE DEFENDANTS HAVE CLEARLY CONFIRMED, I

3    BELIEVE MS. PREVOST IN YOUR OPPOSITION, THAT THE CITY KNEW AT

4    THE TIME THEY PASSED THE ORDINANCE AND REAFFIRMED, THAT

5    IMPOUNDMENT IS NOT AUTHORIZED BY LAW.  IN FACT, I THINK YOUR

6    COUNSEL CONCEDED THE PREEMPTION ISSUE IN THE GENERATION OF THE

7    POLICY IS THAT FAIR?

8            MS. PREVOST:  THAT'S FAIR.  YOU ARE PRECISELY

9    CORRECT, YES.

10           THE COURT:  THEN WHAT I'M LOOKING AT IS IDENTIFYING

11   THE CONDUCT IN QUESTION.  AND I THINK THERE'S A SERIOUS

12   QUESTION AS TO WHETHER THE SECOND AMENDMENT IS EVEN IMPLICATED

13   HERE, BECAUSE THIS ORDINANCE DOES NOT APPEAR TO ME TO REGULATE

14   WHO CAN OWN A GUN OR WHERE THEY CAN CARRY THAT GUN.

15        AND I THINK THAT, IN FACT, SHOULD THERE EVER BE A

16   CHALLENGE HERE, IT MIGHT BE AN AS-APPLIED CHALLENGE, WHICH

17   AGAIN, I BELIEVE JUSTICE THOMAS FORESHADOWS IN BRUEN WHEN HE

18   TALKS ABOUT THE "SHALL ISSUE" STATES, THE 43 STATES, HE MAKES

19   CLEAR ARE NOT SUBJECT TO THE BRUEN HOLDING.

20        AND THAT IS, THE "SHALL ISSUE" STATES WOULD SURVIVE A

21   FACIAL CHALLENGE, THEY MIGHT BE SUBJECT TO AN AS-APPLIED

22   CHALLENGE, AND THEN WE GET INTO THE SECOND PART OF THE BRUEN

23   TEST, IF I WERE TO FIND THAT, AT THIS STAGE, THE SECOND

24   AMENDMENT IS LIKELY TO BE IMPLICATED, I THINK WE GO RIGHT INTO

25   THE SECOND PART OF THE TEST, WHERE THE DEFENDANTS BEAR THE

1  BURDEN OF PRODUCING EVIDENCE.

2       AND IN MY VIEW, THEY HAVE SUBMITTED SUFFICIENT EVIDENCE TO

3  DEFEAT A PRELIMINARY INJUNCTION THAT OUR NATION'S HISTORY

4  SUPPORTS, THE INSURANCE AND THE FEE, AND I'M REALLY FOCUSSING

5  ON THAT PART OF THE BRUEN DECISION WHERE JUSTICE THOMAS TALKS

6  ABOUT, NOT SO MUCH WHEN HE TALKS ABOUT SURETIES, HE CERTAINLY

7  TALKS ABOUT SURETIES.

8       I RECOGNIZE THE PLAINTIFF'S ARGUMENT THAT THOSE HISTORICAL

9  SURETIES WERE ONLY FOR BAD ACTORS THAT HAD COMPLAINTS AGAINST

10  THEM, BUT HE ALSO TALKS ABOUT FEES.  AND IN MY VIEW, THE COURT

11  HAS INDICATED THAT FACIALLY, A FEE WOULD NOT DENY CITIZENS THE

12  RIGHT TO KEEP AND POSSESS GUNS.  THE AS-APPLIED CHALLENGE WOULD

13  GO TO WHETHER THE FEE WAS EXORBITANT.  AND I'M REFERRING TO

14  FOOTNOTE 9 OF THE DECISION.

15       SO I THINK THAT WALKS THROUGH THAT AT A PRETTY HIGH LEVEL.

16  THERE'S SO MANY DETAILS TO YOUR ARGUMENTS, THEY WERE COMPLEX, I

17  REALLY APPRECIATE THAT, AND I KNOW THERE IS THE ISSUE OF

18  WHETHER THERE IS A TAX.  I ACTUALLY THINK THIS SCHMEER CASE

19  TAKES CARE OF THAT, I DON'T THINK THIS IS A TAX.

20       SO WITH ALL OF THAT, I'M SORRY I'VE RAMBLED ON A BIT, I

21  JUST WANT YOU TO GET MY THINKING ON IT.

22       MR. COLUMBO, THIS IS YOUR MOTION, SO I'M GOING TO GIVE YOU

23  THE FLOOR FIRST, AND I WILL GIVE YOU THE LAST WORD AS WELL.  SO

24  PLEASE FEEL FREE TO GO BACK OVER ANYTHING I'VE DISCUSSED AND

25  ANYTHING I'VE NEGLECTED TO DISCUSS, I WOULD LIKE TO HEAR YOUR

1    ARGUMENT.

2              MR. COLUMBO:  THANK YOU, YOUR HONOR.

3         IF I MAY, I WILL ADDRESS EACH OF THE COURT'S CONCLUSIONS,

4    IN TURN, TO SHARE WHAT OUR POSITION IS ON THEM.

5         TO NATIONAL ACCLAIM, SAN JOSE BOOSTED THAT IT HAD ENACTED

6    AN UNPRECEDENTED GUN LAW, THE FIRST OF ITS KIND IN THE NATION.

7    IN SHORT, THE ORDINANCE SAID, AS A CONDITION OF THE LAWFUL

8    OWNERSHIP OF THEIR GUNS, GUN OWNERS MUST MAKE A DONATION TO A

9    CITY-CHOSEN NONPROFIT TO BUY LIABILITY INSURANCE AND TO KEEP

10   PROOF OF THESE ACTIONS WITH THEIR GUNS.

11             THE COURT:  BUT THAT'S NOT WHAT THE ORDINANCE SAYS,

12   MR. COLUMBO.

13        THE MAYOR MAY HAVE MISSPOKEN, BUT HE'S NOT THE ARBITER OF

14   WHAT THE ORDINANCE SAYS; IN FACT, I AM, AND THAT'S NOT WHAT IT

15   SAYS.

16        I DON'T DISPUTE THAT HE SAID THAT IN THE PRESS, GOOD FOR

17   HIM.  HE'S A POLITICIAN AND HE WAS BRAGGING.  AND NO DISRESPECT

18   TO THE MAYOR, BUT FRANKLY, HE AND I ARE BOUND BY THE LANGUAGE

19   OF THE ORDINANCE.

20             MR. COLUMBO:  YES, YOUR HONOR.

21             THE COURT:  SO THERE'S NO CONDITION OF OWNING A GUN

22   THAT YOU HAVE INSURANCE.  IT'S A REQUIREMENT FOR GUN OWNERS,

23   BUT WITHOUT IMPOUNDMENT, AND MAYBE HE MISUNDERSTOOD WHAT HIS

24   OWN COUNCIL AND CITY ATTORNEY WERE SAYING ABOUT IMPOUNDMENT, I

25   DON'T KNOW.

1          MR. COLUMBO:  YES.

2          WELL, WHEN -- IN BRUEN, THE COURT CONCLUDED THAT WHEN THE

3    SECOND AMENDMENT PLAIN TEXT COVERS AN INDIVIDUAL'S CONDUCT, THE

4    CONSTITUTION PRESUMPTIVELY PROTECTS THAT CONDUCT.

5          THE COURT:  ABSOLUTELY.

6          MR. COLUMBO:  THE GOVERNMENT MUST JUSTIFY ITS

7    REGULATIONS BY DEMONSTRATING THAT IT IS CONSISTENT WITH THE

8    NATION'S HISTORICAL TRADITION, THE FIREARM REGULATION.

9          SO ACCORDINGLY, THIS FIRST OF ITS KIND ORDINANCE DOES

10   IMPLICATE WHETHER OR NOT --

11         THE COURT:  I NEED YOU TO ARTICULATE SPECIFICALLY

12   WHAT YOU BELIEVE THE CONDUCT IN QUESTION IS.

13         SO IN THE BRUEN CASE, THE CONDUCT IN QUESTION WAS THE

14   ABILITY TO CARRY YOUR GUN IN PUBLIC WITHOUT A SPECIALIZED NEED.

15   THAT'S TAKEN FROM --

16         MR. COLUMBO:  YES.

17         THE COURT:  SO THAT'S FINE.  WE KNOW WE DON'T HAVE

18   THAT.

19         TELL ME IN YOUR WORDS, WHAT YOU BELIEVE THE CONDUCT IN

20   QUESTION IS UNDER THE ORDINANCE.

21         MR. COLUMBO:  ALL RIGHT.

22         TO AVOID A PENALTY FROM THE CITY, WHICH IN THE FUTURE MAY

23   INCLUDE IMPOUNDMENT, BUT NOW IT AT LEAST INCLUDES --

24         THE COURT:  I'M NOT SPECULATING.  OKAY.  TO AVOID A

25   PENALTY.

1       MR. COLUMBO:  THE CITIZEN MUST BUY INSURANCE AND MAKE

2    A CONTRIBUTION TO A NONPROFIT OF THE CITY'S CHOOSING, TO AVOID

3    THAT FINE.

4       IN A FOOTNOTE IN ITS SUPPLEMENTAL BRIEF, THE CITY REMINDS

5    US THAT THE ORDINANCE INDEED BURDENS SECOND RIGHTS.  IT IS

6    RETRACTING THAT ACKNOWLEDGEMENT BECAUSE THE RULE HAS CHANGED,

7    BUT THAT'S A FACTUAL STATEMENT.

8       IN TERMS OF THE HISTORICAL ANALYSIS, BRUEN INSTRUCTS THAT

9    WE MUST CONSIDER EARLY LAWS THAT WERE RELEVANTLY SIMILAR OR

10   WERE REPRESENTATIVE OF A HISTORICAL ANALOG IN ORDER TO

11   UNDERSTAND WHETHER THE SECOND AMENDMENT, AS UNDERSTOOD IN 1791,

12   INVALIDATES THE CHALLENGED LAW.  THE DANGER OF INJURIES FROM

13   FIREARMS, OTHER THAN HOMICIDE, EXISTED AT THE TIME OF THE

14   ADOPTION OF THE BILL OF RIGHTS.

15      AND THAT'S EXACTLY THE DANGERS THIS ORDINANCE ADDRESSES.

16   THERE IS NO LAW COMPELLING GUN OWNERS TO DONATE MONIES TO

17   OTHERS AS A MEANS OF REDUCING FIREARM INJURIES AND ASSIGNING

18   LIABILITY AND RECOVERING DAMAGES FOR FIREARM INJURIES WERE

19   INDEED HANDLED IN THE LAW THROUGH THE COURTS.

20      THIS IS CRITICAL, BECAUSE BRUEN INSTRUCTS THAT WHEN A

21   CHALLENGED REGULATION ADDRESSES A GENERAL SOCIETAL PROBLEM THAT

22   HAS PERSISTED SINCE THE 18TH CENTURY, THE LACK OF A DISTINCTLY

23   SIMILAR HISTORICAL REGULATION ADDRESSING THAT PROBLEM IS

24   RELEVANT EVIDENCE THAT THE CHALLENGED REGULATION IS

25   INCONSISTENT WITH THE SECOND AMENDMENT.

1        LIKEWISE, IF EARLIER GENERATIONS ADDRESS THE SOCIETAL

2   PROBLEMS, BUT DID SO THROUGH MATERIALLY DIFFERENT MEANS, THAT

3   ALSO COULD BE EVIDENCE THAT THE REGULATION IS UNCONSTITUTIONAL.

4   THAT'S FROM BRUEN AT 2131.

5              THE COURT:  YEAH.

6              MR. COLUMBO:  SAN JOSE'S ORDINANCE FAILS FOR BOTH OF

7    THOSE REASONS.  THERE'S A LACK OF SIMILAR HISTORICAL RULES, AND

8    SOCIETY ADDRESSED THIS PROBLEM THROUGH MATERIALLY DIFFERENT

9    MEANS.  CONSISTENT WITH THE ATTENTION TO THIS ORDINANCE FOR

10   BEING THE FIRST OF ITS KIND, THERE'S NO RELEVANTLY SIMILAR

11   EARLY LAW OR REPRESENTATIVE HISTORICAL ANALOG.

12       THE PLAINTIFFS FOCUS ON SEVERAL HISTORICAL EXAMPLES TO

13   ESTABLISH THAT THERE WAS HISTORICAL PRECEDENT, BUT EACH, IN

14   TURN, FAILED.  THE FIRST THEY ATTEMPT TO CITE ABOUT 17TH

15   CENTURY GUN LAW, BUT THAT ARTICLE STATES THAT 18TH CENTURY

16   STATUTES REGULATING AND USE OF FIREARMS FELL INTO JUST FOUR

17   CATEGORIES THAT ARE WHOLLY DIFFERENT FROM THE ORDINANCE.

18       TO QUOTE, "STATUTES PROVIDING FOR THE CONFISCATION OF

19   FIREARMS FROM PERSONS UNWILLING TO TAKE AN OATH OF ALLEGIANCE

20   TO THE STATE, STATUTES REGULATING THE USE OF FIREARMS WITHIN

21   THE CONTEXT OF MILITIA OBLIGATIONS, AND STATUTES REGULATING THE

22   STORAGE OF GUN POWDER, AS WELL AS A SMALL NUMBER REGULATING

23   HUNTING, AND THE DISCHARGE OF FIREARMS IN CERTAIN PLACES."

24   NONE OF THOSE ARE RELEVANT OR ANALOG TO WHAT THE ORDINANCE

25   DOES.

 1          THE SUPPLEMENTAL BRIEF ALSO INCLUDES RANDOM EXAMPLES OF

 2     LAWS THAT AREN'T EVEN REMOTELY SIMILAR TO THE ORDINANCE, FROM

 3     INSURANCE REQUIREMENTS FOR DOG OWNERS, TO THE REGULATION OF

 4     LANDLORDS, REGULATIONS ABOUT HOW A PERSON CAN CARRY A GUN, IS

 5     NOT A HISTORICAL PRECEDENT FOR FORCING GUN OWNERS TO DONATE TO

 6     THIRD PARTY PRIVATE NONPROFITS CHOSEN BY THE GOVERNMENT OR TO

 7     BUY INSURANCE AS A CONDITION FOR THEIR RENT.  LAWS CITED BY THE

 8     CITY OF SALINAS OF FIRING OF GUNS IN CERTAIN PLACES WERE ALSO

 9     NOT ANALOGOUS TO THE ORDINANCE.

10          ON THE ISSUE OF SURETY BONDS DISCUSSED IN BRUEN, WE NOTE

11     THAT BRUEN WAS NOT ABOUT THE CHALLENGE TO AN INSURANCE

12     REQUIREMENT OR A COMPULSORY NONPROFIT DONATION.  IT WAS ABOUT A

13     NEW YORK LAW PROHIBITED CARRYING GUNS UNLESS THE PERSON PROVED

14     THEY NEEDED IT.  AND THE STANDARD USE IS VAGUE.

15          SURETY BONDS DISCUSSED IN BRUEN WERE ONLY REQUIRED FOR

16     PEOPLE WHO WERE ADJUDICATED TO BE A DANGER, WHICH IS NOT

17     ANALOGOUS TO A MANDATORY INSURANCE REQUIREMENT OR A DONATION

18     FOR EVERY CITIZEN WHO OWNS A GUN.

19          AND EVEN THEN, A DANGEROUS PERSON WAS STILL EXEMPT FROM

20     THE SURETY REQUIREMENT IF HE NEEDED SELF DEFENSE, THAT'S 2146

21     OF THE DECISION.

22          THE SUPREME COURT ALSO NOTED THE SURETY REQUIREMENTS WERE

23     ALMOST NEVER ENFORCED.  THE SURETY BONDS DISCUSSED IN BRUEN ARE

24     THEREFORE NOT COMPARABLE TO SAN JOSE'S ORDINANCE WHICH REQUIRES

25     ALL GUN OWNERS TO HAVE INSURANCE, NOT JUST PEOPLE WHO ARE

1    DANGEROUS, AND PROVIDES NO EXCEPTION FOR SELF DEFENSE AND

2    PRESUMABLY WILL BE ENFORCED.  ACCORDINGLY, SURETY BOND

3    REQUIREMENTS DISCUSSED IN BRUEN DO NOT SAVE THE CITY'S

4    ORDINANCE.

5         THERE WAS SOMETHING ELSE I BELIEVE THE COURT ALSO REFERRED

6    TO, AND I THINK IT'S COVERED IN SUPPLEMENTAL BRIEF.  AND THE

7    SUPPLEMENTAL BRIEF OVERSTATES AND MISCHARACTERIZES BRUEN'S

8    DISCUSSION, I THINK THERE'S A QUOTE THAT LAWS INTENDED NEARLY

9    FOR PREVENTION AND NOT AS ANY DEGREE OF PUNISHMENT, HAVE NO

10    BEARING ON THE CONSTITUTIONALITY ANALYSIS.

11         BUT AT 2146, IN THE SUPREME COURT'S DECISION, THE SUPREME

12    COURT HELD ONLY THAT THE BURDEN IMPOSED BY SURETY LAWS IS

13    INCOMPARABLE TO THE BURDEN IMPOSED BY NEW YORK'S PROPER CAUSE

14    REQUIREMENT WHICH CARRIED A FOUR-YEAR PRISON TERM OR A $5,000

15    FINE.  THE LACK OF A COMPARABLE BURDEN, AND THE SURETY LAWS

16    WERE NOT COMPARABLE, AND THEREFORE DO NOT STATE THE NEW YORK

17    STATUTE, WAS A SENTENCE MAKING ANOTHER POINT, NOT A SWEEPING

18    HOLDING ON AN EXCEPTION TO THE SECOND AMENDMENT FOR SURETY

19    LAWS.

20         SURETY LAWS -- SIMILARLY, THE COURT'S STATEMENT THAT

21    SURETY LAWS DO NOT PREVENT ANYONE FROM CARRYING A GUN, ONLY

22    SERVE THE DISTINGUISHED SURETY LAWS FROM THE CHALLENGED LAW,

23    WHICH DID.

24         THE POINT WAS THAT THE TWO RULES WERE NOT ANALOGOUS.  IN

25    THAT CONTEXT, IT WAS NOT THE ANNOUNCEMENT OF AN EXCEPTION TO

1    THE SECOND AMENDMENT FOR ANY BURDEN THAT DOES NOT FULLY PREVENT

2    THE CITIZEN FROM CARRYING A GUN.

3             THE COURT:  SO MR. COLUMBO, WE KNOW THAT THE SUPREME

4    COURT CONTINUES TO ACKNOWLEDGE THAT CERTAIN REQUIREMENTS

5    PREDICATE TO OWNING A GUN, CONTINUE TO BE VALID.  LICENSING IS

6    VALID, CONCEAL CARRY LAWS ARE VALID, AND BACKGROUND CHECKS ARE

7    VALID.  AND THOSE ARE IMPEDIMENTS TO EVEN OWNING THE GUN.

8        HERE, WE HAVE NO IMPEDIMENT TO OWNING AND RETAINING

9    POSSESSION TO A FIREARM.  WE DO HAVE SOME -- THIS ORDINANCE

10   CLEARLY HAS REQUIREMENTS, THERE'S NO QUESTION ABOUT IT.  AND I

11   ACTUALLY THINK THAT -- I ACTUALLY THINK THAT IT MAY BE THAT THE

12   ENTIRE PRELIMINARY INJUNCTION ISSUE IS NOT RIPE UNDER THE

13   SECOND AMENDMENT, BECAUSE THIS CAN ONLY BE AN AS-APPLIED

14   CHALLENGE BECAUSE WE DON'T KNOW THE AMOUNT OF THE FEE, WHETHER

15   IT WILL BE EXORBITANT OR NOT.

16       AND I DON'T KNOW WHAT EXORBITANT WILL MEAN.  AND IT MAY

17   TAKE AN EVIDENTIARY HEARING.  I HAVE NO IDEA.  YOU MIGHT ARGUE

18   THE $25 THAT'S INDICATED IN THE PAPERWORK IS EXORBITANT, AND I

19   DON'T KNOW WHETHER THAT'S EXORBITANT.

20       AND WE DON'T KNOW THE AVAILABILITY OF INSURANCE.  I DON'T

21   EVEN KNOW, I MEAN, I COULDN'T LOCATE MY HOMEOWNER'S INSURANCE

22   POLICY LAST NIGHT WHEN I WAS THINKING ABOUT IT, BUT I DON'T

23   EVEN KNOW THAT MY HOMEOWNER'S POLICY MIGHT ALREADY COVER THIS.

24       SO THAT WOULD TAKE CARE OF A VAST NUMBER OF GUN OWNERS WHO

25   HAVE GARDEN VARIETY HOMEOWNER'S INSURANCE OR GARDEN VARIETY

1    RENTER'S INSURANCE.

2         SO I JUST DON'T KNOW THAT WE HAVE GOT A FACIAL CHALLENGE

3    HERE WHEN WE HAVE PRETTY MODEST REQUIREMENTS.  AND I'M PUTTING

4    ASIDE THE FIRST AMENDMENT ISSUE ON THE FORCED DONATION, BECAUSE

5    I WILL TALK TO MS. PREVOST ABOUT THAT, I HAVE REAL CONCERNS

6    WITH IT, I JUST DON'T THINK IT'S RIPE.  BUT THERE MAY BE SOME

7    ROOM FOR THE CITY TO GIVE SOME THOUGHT TO THAT BEFORE I HAVE TO

8    MAKE A JUDICIAL RULING, AND THAT WOULD BE TO YOUR BENEFIT AS

9    WELL IF THEY JUST MODIFIED THE LAW.

10        BUT I THINK YOU HAVE A STRONG POINT THERE.  I JUST DON'T

11   THINK I'M READY TO DECIDE IT UNTIL I KNOW THE CONTOURS OF IT.

12   BECAUSE I DON'T WANT TO BE -- I DON'T WANT TO GET OUT AHEAD OF

13   THIS.  I DON'T WANT TO SPECULATE.  AND SO THAT'S MY CONCERN

14   THERE.

15             MR. COLUMBO:  AND THEN I DON'T KNOW IF IT WILL BE

16   HELPFUL TO RUN THROUGH SOME OF THE STATE LAW CLAIMS, IF THE

17   COURT WOULD ALLOW.

18             THE COURT:  PLEASE DO, YES.

19             MR. COLUMBO:  AS EXPLAINED IN FISCAL V. CITY AND

20   COUNTY OF SAN FRANCISCO, ARTICLE 11, SECTION 7 OF THE

21   CALIFORNIA CONSTITUTION PROHIBITS THE LOCAL LAW THAT

22   DUPLICATES, CONTRADICTS OR ENTERS INTO AN AREA FULLY OCCUPIED

23   BY GENERAL LAW, EITHER EXPRESSLY OR BY LEGISLATIVE IMPLICATION.

24        ADDITIONALLY, THE STATE OF CALIFORNIA HAS EXTENSIVE

25   STATUTES COMPREHENSIVELY REGULATING FIREARM OWNERSHIP, WHICH

1    ARE GENERALLY FOUND IN THE PENAL CODE AT 23500 TO 34370.

2        IN FISCAL, THE COURT HELD THE LEGISLATURE INTENDED TO

3    OCCUPY THE FIELD OF RESIDENTIAL HANDGUN POSSESSION TO THE

4    EXCLUSION OF LOCAL GOVERNMENT ENTITIES.

5        THE CITY'S OPPOSITION CITES NO PRIOR AUTHORITY UPHOLDING

6    LOCAL REGULATION OF RESIDENTIAL FIREARM POSSESSION, BUT IT DOES

7    ESTABLISH THE ORDINANCE TARGETS EXACTLY THAT.  AND THE CITY'S

8    OPPOSITION AT PAGE 6, IT STATES THE ORDINANCE IMPOSES "BURDENS

9    ON THE CONSTITUTIONAL RIGHT TO OBTAIN AND KEEP A FIREARM IN THE

10   HOME FOR SELF DEFENSE."

11       AND ON PAGE 7 IT STATES IN REFERENCE TO GUNS LAWFULLY KEPT

12   IN THE HOME, THAT THE ORDINANCE "REQUIRES RESIDENTS TO OWN GUNS

13   TO OBTAIN LIABILITY INSURANCE FOR ACCIDENTAL GUN INJURIES AND

14   TO PAY A REASONABLE FEE TO REDUCE WELL ESTABLISHED HARMS."

15           THE COURT:  I DON'T HEAR ANYTHING ABOUT POSSESSION

16   BEING AT ISSUE IN THIS ORDINANCE.  I THINK THAT'S A REALLY KEY

17   POINT.

18       WITH THE IMPOUNDMENT SECTION OF THE ORDINANCE INOPERABLE

19   AND ACKNOWLEDGED BY THE CITY IN THE ORDINANCE ITSELF AS

20   INOPERABLE, IT'S ONLY ASPIRATIONAL THAT AT SOME POINT THE STATE

21   THAT DOES OCCUPY THE FIELD ON HANDGUN POSSESSION WILL CHANGE

22   THE LAW.  IT'S ONLY ASPIRATIONAL.

23       I DON'T MAKE RULINGS PREVENTING ASPIRATIONS.

24           MR. COLUMBO:  THE ORDINANCE ONLY APPLIES TO PEOPLE

25   WHO POSSESS GUNS, NUMBER ONE.

1          THE COURT:  SURE.

2          MR. COLUMBO:  IF THE COURT'S -- I UNDERSTAND THE

3     COURT'S POSITION TO BE THAT, IF I UNDERSTAND CORRECTLY, SO THAT

4     I CAN RESPOND TO IT, THE COURT'S POSITION APPEARS TO BE THAT

5     UNLESS A LAW THAT IMPOSES A BURDEN ON A GUN OWNER SPECIFICALLY

6     AS A GUN OWNER, ACTUALLY THREATENS TO TAKE THEIR GUN AWAY, THAT

7     LAW DOES NOT IMPLICATE THE FIRST AMENDMENT, IF I UNDERSTAND THE

8     COURT'S POSITION.

9          THE COURT:  NO, NOT THE FIRST AMENDMENT.  WE ARE

10    TALKING ABOUT CALIFORNIA -- THE ISSUE WE ARE TALKING ABOUT HERE

11    IS WHETHER THE STATE OCCUPIES THE FIELD UNDER THE STATE

12    CONSTITUTION.  THAT'S THE ISSUE THAT YOU RAISED.

13          AND WHEN I READ FISCAL, WHERE THE CITY AND COUNTY OF

14    SAN FRANCISCO TRIED TO BAN HANDGUNS, AND I LISTEN TO YOUR

15    ARGUMENT ABOUT THE CALIFORNIA CONSTITUTION HAVING BEEN

16    INTERPRETED AS CALIFORNIA, THE STATE, OCCUPIES THE FIELD OF

17    HANDGUN POSSESSION, THOSE ARE YOUR WORDS, I DON'T DISAGREE WITH

18    YOU ON THAT AT ALL.  I JUST AM SAYING THAT THIS ORDINANCE HAS

19    NOTHING TO DO WITH HANDGUN POSSESSION.  THE INSURANCE IS NOT A

20    PREREQUISITE TO OWNING AND POSSESSING A GUN, AND FAILURE TO

21    PURCHASE INSURANCE IS NOT -- IT DOES NOT LEAD TO LOSS OF

22    POSSESSION OR OWNERSHIP.

23          SO ON YOUR PREEMPTION, I JUST -- YOU DIDN'T GIVE ME ANY

24    CASE THAT EXTENDED BEYOND HANDGUN POSSESSION, THE COMPLETE

25    OCCUPATION OF THE FIELD.  I THINK YOU ACCURATELY STATED FISCAL,

1    I AGREE WITH YOU, I JUST THINK THIS ORDINANCE DOESN'T GO THERE.

2         MR. COLUMBO:  TO THE EXTENT THAT THE CITY

3    ACKNOWLEDGES THE ORDINANCE IMPACTS PEOPLE WHO POSSESS GUNS IN

4    THE HOME, IN THE COURT'S VIEW, THAT DOESN'T REACH WHAT <u>FISCAL</u>

5    WAS ADDRESSING, IF I UNDERSTAND THE COURT CORRECTLY.

6         THE COURT:  THAT'S WHAT I'M SAYING.

7         AND I'M JUST -- AND I'M JUST RELYING ON YOUR OWN WORDS,

8    MR. COLUMBO, WHERE YOU SAY THE STATE OCCUPIES THE FIELD OF

9    HANDGUN POSSESSION.  I JUST WROTE IT DOWN, THAT'S WHAT YOU JUST

10   SAID.  I THINK YOU ARE RIGHT.  I THINK THAT IS WHERE THE

11   PRESUMPTION IS, AND THIS ORDINANCE HAS TO NOTHING TO DO WITH

12   POSSESSION.

13        MR. COLUMBO:  IF I UNDERSTAND THE COURT CORRECTLY,

14   YOU ARE GOING TO HAVE FURTHER DISCUSSION ON THE FIRST AMENDMENT

15   WITH MS. PREVOST?

16        THE COURT:  OH, SURE.

17        YOU HAVE STRONG ARGUMENTS UNDER THE FIRST AMENDMENT, AND I

18   JUST DON'T THINK IT'S RIPE.  AND I MEAN, FRANKLY, THERE'S NO

19   IRREPARABLE HARM AT THIS POINT BECAUSE THERE'S NO ORGANIZATION

20   TO MAKE A DONATION TO.

21        AND SO UNTIL I KNOW WHAT THAT LOOKS LIKE, YOU KNOW, IF IT

22   LOOKS THE WAY YOU BELIEVE IT WILL LOOK, YOU ARE PROBABLY GOING

23   TO GET AN INJUNCTION ON IT.

24        I'M NOT GOING TO SPECULATE, AND FRANKLY, THE CITY HAS TOLD

25   ME THROUGH THEIR RESOLUTION THAT THEY GAVE ME A COPY OF, THAT

1    THOSE ARE THE REGULATIONS AND IT'S STILL BEING DREAMED UP, IT'S

2    STILL BEING ARTICULATED, WRITTEN DOWN.

3        SO WE JUST HAVE TO --

4        MR. COLUMBO:  I GUESS THE QUESTION THAT CONCERNS ME

5    IS, IS THERE -- ARE THERE ANY FACTS UNDER WHICH A COMPULSORY

6    DONATION TO A PRIVATE NONPROFIT WOULD BE PERMISSIBLE UNDER

7    THIS --

8        THE COURT:  I DON'T KNOW.

9        SO I THINK THAT'S AN IMPORTANT QUESTION, MR. COLUMBO, AND

10   I THINK IT'S WRONG FOR ME TO TRY TO ANSWER IT IN A VACUUM.  I

11   WANT TO SEE WHAT IT IS.

12       NOW, IT APPEARS THAT THERE IS A 30-DAY PERIOD OF

13   COMPLIANCE, AND SO IT BUILT INTO THE ORDINANCE, AND SO THE

14   OPERATIVE DATE IS NOW PUSHED TO DECEMBER OR JANUARY.  AND EVEN

15   ON THE OPERATIVE DATE, YOU WILL HAVE 30 DAYS BEFORE THERE COULD

16   BE ANY NONCOMPLIANCE.  AND I REALLY AM SATISFIED THAT YOU HAVE

17   AMPLE OPPORTUNITY WITH THAT CHANGED CIRCUMSTANCE OF A FULLY

18   FLESHED OUT REGULATION, TO BRING A LIMITED TEMPORARY

19   RESTRAINING ORDER UNDER THESE ISSUES.

20       AND SO I THINK, THAT'S WHY I SAY I DON'T SEE IRREPARABLE

21   HARM NOW AND I THINK YOU HAVE A GOOD CLEAR PATH TO PROTECTING

22   YOUR CLIENT'S RIGHTS, SHOULD IT BE DEVELOPED IN A WAY THAT YOU

23   FEEL VIOLATES THEIR FIRST AMENDMENT OR SECOND AMENDMENT RIGHTS.

24       MR. COLUMBO:  VERY GOOD.

25       AND I WILL JUST QUICKLY TOUCH ON SCHMEER, BECAUSE THE

1    COURT -- SAN JOSE RELIES ON SCHMEER TO AVOID THE FEE BEING

2    DEEMED, OR THE INSURANCE REQUIREMENT BEING DEEMED AS TAXES OR

3    FEES.  THAT STATE HELD THAT THE CONSTITUTION'S REFERENCE TO A

4    LEVY CHARGE, OR ITS ACTIONS OF ANY KIND IMPOSED BY LOCAL

5    GOVERNMENT, THAT THAT'S DESCRIBED IN ARTICLE 13(C), SECTION 1

6    SUBDIVISION E OF THE CONSTITUTION, INCLUDES "CHARGES PAYABLE TO

7    OR FOR THE BENEFIT OF A LOCAL GOVERNMENT."

8        THIS ORDINANCE BENEFITS THE CITY OF SAN JOSE, EVEN IF THE

9    PAYMENTS ARE NOT ALL PAYABLE TO THE CITY.  THE CITY HANGS ITS

10   DEFENSE ON SCHMEER, BUT THE CASE IS READILY DISTINGUISHABLE, IT

11   DID NOT INVOLVE A CITY TAX ON RESIDENTS.  THE CITY IMPOSED A

12   BAG REGULATION ON STORES WHICH ENTAILED COSTS, AND THE CITY

13   PERMITTED THOSE STORES TO CHARGE CUSTOMERS FOR BAGS IF THEY

14   WANTED THEM.  BUT IT HAD THE CONSEQUENCE OF RAISING THE COST OF

15   BAGS USED BY RESIDENTS, IT WAS NOT A CHARGE IMPOSED ON CITY

16   RESIDENTS, LIKE TAX, LIKE THE ORDINANCE THAT WE HAVE HERE.

17       WE ALSO NOTE THAT RESIDENTS WERE NOT FORCED TO BUY BAGS,

18   AND IF THEY DID PAY FOR A BAG, THEY GOT A BAG OUT OF THE

19   TRANSACTION, WHICH IS MORE THAN WE CAN SAY ABOUT THE MANDATORY

20   NONPROFIT DONATION.

21       THE COURT:  WELL, MAYBE.

22       LET ME ASK YOU A QUESTION THOUGH, BECAUSE IN SCHMEER, THEY

23   RECITE FOR ME THE EXCEPTIONS IN THE CONSTITUTION, AND EXCEPTION

24   NUMBER TWO IS A CHARGE IMPOSED FOR A SPECIFIC GOVERNMENT

25   SERVICE.  I WOULD SAY THAT THIS DONATION AND THE NONPROFIT IS

1    NOT A GOVERNMENT SERVICE.

2         SO WE ARE NOT THERE YET, BUT JUST BEAR WITH ME, "FOR A

3    SPECIFIC GOVERNMENT SERVICE OR PRODUCT PROVIDED DIRECTLY TO THE

4    PAYOR, THAT IS NOT PROVIDED TO THOSE NOT CHARGED, AND WHICH

5    DOES NOT EXCEED THE REASONABLE COST TO THE STATE OF PROVIDING

6    THE SERVICE OR PRODUCT TO THE PAYOR."

7         SO HERE'S MY QUESTION, AND IT'S A HYPOTHETICAL, BUT IF THE

8    CITY HAD IMPOSED A FEE PAYABLE TO THE CITY SO THAT THE CITY

9    COULD PROVIDE A MANDATED EDUCATION CLASS TO GUN OWNERS, SO IT

10   WOULD BE DIRECTLY TO THE PAYOR AND NOT TO PEOPLE WHO ARE NOT

11   GUN OWNERS, WOULD YOU HAVE MADE THE SAME ARGUMENT?  AM I BEING

12   UNFAIR OF PUTTING YOU ON THE SPOT?  YOU CAN CERTAINLY SAY THAT.

13   I DON'T MEAN TO.

14         MR. COLUMBO:  NO.  I THINK IF I UNDERSTAND THE COURT

15   CORRECTLY, THAT IS EXACTLY WHAT A PERMISSIBLE CITY FEE IS, A

16   FEE PAID TO THE CITY FOR WHICH THE CITY PROVIDES A SERVICE THAT

17   IS COMMENSURATE WITH, AND IN VALUE, TO THE FEE THAT IS CHARGED.

18         THE COURT:  AND YOU COULD DRAW A STRAIGHT LINE

19   BETWEEN THE AMOUNT OF THE FEE AND THE COST TO THE CITY.  AND I

20   THINK WE ALL UNDERSTAND THAT.

21         OKAY.  BECAUSE I'M GOING TO -- MS. PREVOST KNOWS SHE'S

22   GOING TO GET A HARD TIME ON THIS, AND SO I WANTED YOUR VIEW ON

23   IT, AND I DO APPRECIATE THAT.

24         MR. COLUMBO:  THE LAST THING I WAS GOING TO MENTION

25   IS OUR CONCERNS UNDER THE SAN JOSE CITY CHARTER, AND THE CITY

1    CHARTER REQUIRES THE USE OF CITY ACCOUNTS "AS A MEDIUM OF

2    CONTROL AND ACCOUNTING FOR ALL CITY ACTIVITIES" THE ORDINANCE

3    WILL CREATE WHAT IT CALLS THE CITY FEE THAT IT IMPOSES ON ITS

4    CITIZENS, BUT IT DOES NOT DEPOSIT THAT FEE INTO THE CITY'S

5    ACCOUNT.

6         THE DEFENDANT'S INTERPRETATION OF THE CHARTER WOULD CREATE

7    AN EXCEPTION THAT FOLLOWS THE RULE IN THE CHARTER, TO ALLOW THE

8    CITY TO IMPOSE FEES THAT BYPASS THE GENERAL FUNDS DIVERTED INTO

9    A CITY OFFICIAL'S FAVORED NONPROFIT, BEYOND THE CITY'S CONTROL

10   AND ACCOUNTING, WOULD TURN SECTION 1211 OF THE CHARTER ON ITS

11   HEAD.  IT WOULD SUBVERT THIS FUNDAMENTAL CONTROL ON THE CITY

12   GOVERNMENT'S ABILITY TO HIDE OR AVOID OVERSIGHT OF HOW CITY FEE

13   REVENUES ARE SPENT.  IT WOULD BE AN INVITATION TO CORRUPTION

14   AND ABUSE.

15        ON PAGE 22 OF ITS OPPOSITION, THE CITY ACKNOWLEDGES THAT

16   THIS CITY FEE WILL NOT IN FACT FUND A CITY DEPARTMENT, AND CITY

17   OFFICIALS ARE PROHIBITED FROM SERVING ON THE NONPROFIT'S BOARD,

18   AND THE CITY SHALL NOT SPECIFICALLY DIRECT HOW THE MONIES FROM

19   THE FEES ARE EXPENDED.  THAT'S ON PAGE 22.

20        BUT THIS COLLIDES WITH THE CHARTER'S DELEGATION TO THE

21   CITY MANAGER OF RESPONSIBILITY FOR THE FAITHFUL EXECUTION OF

22   ALL LAWS, PROVISIONS OF THE CHARTER, AND ACTS WHICH ARE SUBJECT

23   TO ENFORCEMENT BY THE CITY MANAGER, OR BY OFFICERS UNDER ITS

24   CONTROL.

25        THAT'S QUOTING FROM SECTION 701(D) OF THE CHARTER.

1      REVERSING THEMSELVES, DEFENDANTS IMMEDIATELY PIVOT TO

2   ASSERTING THAT "SAN JOSE MAINTAINS AUTHORITY OVER HOW THE

3   NONPROFIT EXPENDS THE FEE THROUGH THE ADMINISTRATIVE OVERSIGHT

4   OF THE MANAGER."

5      ACCORDINGLY, THE DEFENDANTS ARE CLAIMING THE CITY IS

6   SIMULTANEOUSLY PROHIBITED FROM DIRECTING HOW THE NONPROFIT WILL

7   SPEND THE FEE, WHICH IS NOT DEPOSITED INTO CITY ACCOUNTS, AND

8   YET THE CITY MAINTAINS AUTHORITY OVER HOW THE NONPROFIT SPENDS

9   THE CITY'S FEE.

10      THESE INCONSISTENT POSITIONS.  THE FEE IS ALSO

11   SIMULTANEOUSLY NOT PAYING FOR CITY OPERATIONS, AND YET THE

12   CITY'S CHIEF ADMINISTRATIVE OFFICER MAINTAINS AUTHORITY OVER

13   THE NONPROFIT SPENDING.

14      THE CITY AGREES IN ITS OPPOSITION, AT 21, THAT THE

15   LANGUAGE OF THE CHARTER IN THE ORDINANCE MUST BE READ IN THE

16   CONTEXT OF THE RESPECTIVE STATUTE AS A WHOLE.

17      AND IT GOES ON TO SAY, THE COURT MUST AVOID A CONSTRUCTION

18   THAT WOULD LEAD TO IMPRACTICAL OR UNWORKABLE RESULTS.

19      THE DEFENDANT'S CONFLICTING ARGUMENTS MEAN EITHER THAT A,

20   THE CITY CHARTER IS NOT VIOLATED BY CITY FEE REVENUES FUNDING

21   ACTIVITY UNDER THE CITY MANAGER'S CONTROL, BUT KEPT OUTSIDE THE

22   CITY ACCOUNTS OR OFF THE BOOKS; OR B, THE CITY CHARTER IS NOT

23   VIOLATED BY A CITY FEE BEING DIVERTED TO AN ENTITY OVER WHICH

24   THE CITY HAS NO CONTROL.

25      THESE EITHER IMPRACTICAL AND UNWORKABLE RESULTS SUGGESTING

1      THAT DEFENDANTS'S INTERPRETATION IS MISTAKEN.

2           AS WE ARGUE IN OUR PLEADINGS AND AS I MENTIONED TODAY, OUR

3      OPPOSITION IS THAT WE ARE LIKELY TO PREVAIL ON THE MERITS, AND

4      WE DO HAVE A CONCERN WITH THE DELAYED ENACTMENT, DEFENDANTS

5      HAVE BEEN PROMISING THIS ORDINANCE FOR ABOUT A YEAR, THEY

6      ENACTED IT HERE WITH A MONTHS'S LONG PERIOD WHERE THE COURT, IN

7      PART, ALLOWED IT TO BE LITIGATED.

8           WE HAVE BRIEFED IT, TODAY IS THE HEARING, AND THEN THEY

9      SLIP INTO BRIEFING ABOUT A CONSTITUTIONAL ISSUE, NEWS OF ITS

10     DELAY, JUST WEEKS BEFORE IT WAS SUPPOSED TO TAKE EFFECT.

11          PLAINTIFFS RAISED A CONCERN ABOUT THIS TIMING MONTHS AGO

12     AND THE CITY DID NOTHING UNTIL NOW.  THERE ISN'T AN ADEQUATE

13     EXPLANATION FOR IT, AND THERE'S NO LAW BARRING THE CITY FROM

14     CHANGING ITS MIND TOMORROW.

15          I'M NOT SAYING THE CITY IS TRYING TO AVOID REVIEW BY

16     MANIPULATING ITS EFFECTIVE DATE, BUT IF IT WERE, THIS IT WHAT

17     IT WOULD LOOK LIKE.

18          THE COURT:  MR. COLUMBO, IS IT YOUR GOAL THAT THIS

19     ORDINANCE NEVER GO INTO EFFECT?  ISN'T THAT YOUR GOAL?

20          MR. COLUMBO:  THE CITY IS NOT PROMISING THAT --

21          THE COURT:  I'M JUST ASKING YOU A SIMPLE QUESTION,

22     ISN'T THAT THE GOAL OF THIS LITIGATION?

23          MR. COLUMBO:  YEAH.

24          THE COURT:  SO EVERY DAY IT IS NOT IN EFFECT IS A

25     VICTORY FOR YOUR CLIENTS, THAT'S HOW I SEE IT.

1          MR. COLUMBO:  UNLESS WE SPEND THE BETTER PART OF A

2     YEAR AND RESOURCES LITIGATING IT, ONLY TO HAVE THE CASE DEEMED

3     NOT RIPE AND THE FOLLOWING DAY THEY CHANGE THEIR MIND AND IT'S

4     RIPE AGAIN AND WE HAVE TO RELITIGATE THE WHOLE THING OVER

5     AGAIN.

6          THE COURT:  WELL, I CAN'T MAKE SOMETHING RIPE JUST

7     BECAUSE IT'S -- I APPRECIATE THE EFFORT AND THE COST TO YOUR

8     CLIENTS, I DON'T MEAN TO MINIMIZE THAT AT ALL, BUT RIPENESS

9     DOESN'T ACTUALLY TAKE THAT INTO ACCOUNT.

10         I APPRECIATE THE AMOUNT OF WORK YOU'VE PUT INTO THIS, YOU

11    HAVE SUBMITTED EXCELLENT PAPERS, AND IT SHOWS AN EXTREME,

12    EXTRAORDINARY AMOUNT OF WORK THAT YOU AND YOUR -- THE OTHER

13    ATTORNEYS IN YOUR OFFICE AND ELSEWHERE HAVE PUT INTO IT.  I

14    REALLY APPRECIATE THAT.  BUT I CAN'T GIVE ADVISORY OPINIONS.

15         MR. COLUMBO:  MAY I CLARIFY ONE POINT?

16         THIS HEARING TODAY IS THE HEARING ON THE PLAINTIFF'S

17    MOTION FOR PRELIMINARY INJUNCTION.  ARE WE STILL HOLDING A

18    SEPARATE HEARING ON THE MOTION TO DISMISS?

19         THE COURT:  SURE.

20         MR. COLUMBO:  OKAY.  SO THE ISSUE OF RIPENESS IS ONE

21    THAT IS FOR THE SUBSEQUENT HEARING?

22         THE COURT:  I DON'T KNOW.  I HAVEN'T READ THOSE.  I

23    DON'T EVEN KNOW IF THAT'S AN ISSUE.  I HAVE NO IDEA.

24         YOU KNOW, AS I THINK YOU COULD IMAGINE, WE CAN ONLY BE

25    READY ON THE CASES THAT ARE PRESENTED IN ANY GIVEN WEEK.  I

1    KNOW I HAVE THREE MOTIONS TO DISMISS, I KNOW I HAVE AN ISSUE OF

2    CONSOLIDATION COMING UP AND YOU ASKED THAT THE CONSOLIDATION

3    ISSUE NOT INTERFERE WITH YOUR RIGHT TO HAVE THIS HEARING IN A

4    TIMELY MANNER.

5         I THOUGHT THAT WAS A REALLY VALID POINT AND I HAVE HONORED

6    THAT, AND ALTHOUGH I COULDN'T MOVE THIS UP ANYMORE THAN I DID,

7    I'VE DONE EVERYTHING I COULD BECAUSE I THOUGHT YOU WERE DEAD TO

8    RIGHTS ON THAT, MR. COLUMBO, THAT YOU WERE ENTITLED TO THAT,

9    AND I DIDN'T WANT THE MONKEY WRENCH OF ME SAYING A CONSOLIDATED

10   COMPLAINT HAS TO BE FILED BEFORE YOU GOT YOUR HEARING.

11        SO AS YOU KNOW, I'VE DONE NOTHING ON MY OWN SUA SPONTE

12   REQUEST ABOUT CONSOLIDATION, AND THAT WAS OUT OF DEFERENCE TO

13   YOUR REQUEST, FRANKLY.

14             MR. COLUMBO:  THANK YOU, YOUR HONOR.

15        AND WE DO APPRECIATE THE COURT'S CONSIDERATION FOR THOSE

16   CONCERNS.

17        I JUST WANTED TO CLARIFY THAT TODAY, WE ARE NOT DECIDING

18   RIPENESS, THAT WILL BE PART OF THE MOTIONS HEARING.

19             THE COURT:  NO, I HAVE TO DECIDE RIPENESS ON YOUR

20   PRELIMINARY INJUNCTION.

21        YOU PUT THE ISSUE OF THE FIRST AMENDMENT BEFORE ME, THE

22   CITY HAS ARGUED THAT THIS ISSUE IS NOT RIPE, AND I WILL BE

23   DECIDING IT.  AND THERE WAS NO CLAIM IN THE OPPOSITION THAT YOU

24   HADN'T EVEN PLED THIS ADEQUATELY, AND THAT'S FINE.  I WILL LOOK

25   UNDER RULE 12(B)(6) WHEN I GET TO THOSE IN AUGUST.

1      I DIDN'T EVEN KNOW RIPENESS WAS AN ISSUE IN THE MOTION TO

2   DISMISS BECAUSE I HAVEN'T READ IT.

3      CAN I JUST ASK ONE FOLLOWUP QUESTION BEFORE I TURN TO THE

4   DEFENDANTS?  AND I THINK I WROTE THIS DOWN RIGHT IN YOUR

5   DISCUSSION ABOUT SCHMEER, YOU INDICATED THAT THERE -- IT WOULD

6   BE A TAX IF THE FEE WAS FOR THE BENEFIT OF THE MUNICIPALITY.

7   AND IF I QUOTED YOU CORRECTLY, I WANT TO KNOW WHAT YOU THINK

8   THE BENEFIT TO THE CITY OF SAN JOSE IS THROUGH THE FEE OR THE

9   INSURANCE.

10      MR. COLUMBO:  I WOULD TAKE THAT FROM THE CITY'S OWN

11   STATEMENTS ABOUT THE ORDINANCE AND WHAT IT DOES FOR THE CITY.

12   I BELIEVE --

13      THE COURT:  SO I ACTUALLY DRAW A DISTINCTION BETWEEN

14   THE CITIZENS OF THE CITY AND THE CITY AS A GOVERNMENTAL ENTITY.

15      AND I KNOW THAT'S A HARD LINE TO DRAW, BUT EVERYTHING THE

16   CITY DOES IS FOR THE BENEFIT OF THE WELL BEING OF ITS

17   CITIZENRY.  THAT'S ITS OVERALL MISSION.  BUT THE CITY, ITSELF,

18   HAS CERTAIN OBLIGATIONS THAT HAVE FINANCIAL IMPACTS.

19      FOR EXAMPLE, IF I DROVE DOWN FIRST STREET TO GET TO THE

20   COURTHOUSE AND THERE WAS A GIANT POTHOLE, IT WOULD BE THE

21   CITY'S OBLIGATION TO COME FILL IT, AND THAT WOULD COST MONEY.

22      SO THAT IS A CITY OBLIGATION.  BUT PASSING LAWS THAT

23   PROTECT THE GENERAL WELL BEING OF MEMBERS OF THE COMMUNITY

24   THROUGH SOME OF THESE OTHER THINGS, I'M NOT SURE THAT THAT

25   FALLS WITHIN THE DEFINITION OF BENEFIT TO THE MUNICIPALITY,

1      THAT'S WHY I WANTED TO ASK YOU ABOUT IT.

2          MR. COLUMBO:  YES, YOUR HONOR.

3      IN THE CITY'S FINDINGS THAT WERE USED TO JUSTIFY AND

4  EXPLAIN THE ORDINANCE, THEY DISCUSSED THE EXTENSIVE COST TO THE

5  CITY ITSELF OF THE INJURIES, AND THAT THE ORDINANCE IS DESIGNED

6  OR INTENDED TO REDUCE THOSE INJURIES WHICH ARE COSTING THE CITY

7  RESOURCES FROM FIRST RESPONDERS.

8          THE COURT:  THAT'S REALLY HELPFUL.  THANK YOU.  THAT

9   ADDRESSES MY QUESTION DIRECTLY.

10         OKAY.  LET ME NOW TURN TO THE DEFENDANTS.

11         MS. PREVOST, I WANT TO HEAR YOUR FULL ARGUMENT.  AND YOU

12  KNOW, I GUESS I FIND IT, I'M SURE YOU DID TOO, TO LOOK AT AN

13  ORDINANCE, IN MY VIEW, WAS DRAFTED TO AN EYE TO SUPPORTING

14  STRICT SCRUTINY, AND NOW STRICT SCRUTINY DOESN'T EXIST ANYMORE

15  AND THERE ARE THESE FINDINGS THAT ARE -- WELL, THEY MAY JUST BE

16  IRRELEVANT, AND MAYBE THAT'S THE WORST WE CAN SAY ABOUT THEM, I

17  DON'T KNOW.  BUT CLEARLY, IT LOOKS PRETTY CLEAR TO BE THAT.

18         THE OTHER THING THAT, YOU KNOW, WE DO NEED TO TALK ABOUT

19  THIS, THE ISSUE OF THE CHARTER VERSUS THE TAX ISSUE UNDER THE

20  CALIFORNIA CONSTITUTION, AND AGAIN, IT APPEARS TO ME THAT THE

21  CITY WAS VERY CAREFULLY THREADING A VERY FINE, A THREAD THROUGH

22  A VERY FINE NEEDLE TO GO BETWEEN THE TWO, THE CITY IS THE

23  EXPERT ON MUNICIPAL LAW, AND AT ONE TIME I THOUGHT I WAS, BUT

24  IT'S BEEN MORE THAN 20 YEARS SINCE I WAS A PRACTICING LAWYER,

25  SO I HARDLY COULD CLAIM THAT NOW.  BUT I DO WANT YOU TO TALK

1    ABOUT THAT.

2         AND ON THE ISSUE OF THE FEE, EVEN IF I FIND IT'S NOT RIPE

3    TODAY, I DON'T WANT THE CITY TO WALK AWAY THINKING THIS IS A

4    WIN.  I THINK THERE ARE REAL PROBLEMS HERE.  I NEED TO FIND OUT

5    WHAT THE NONPROFIT IS AND WHAT IT'S CHARGED WITH DOING BEFORE I

6    CAN RULE.  BUT I THINK IT WOULD BE INCUMBENT UPON THE CITY TO

7    CONSIDER THE DIRECTION ITS GOING UNDER BRUEN AND THE FIRST

8    AMENDMENT, AND I'M NOT SURE BRUEN REALLY HAS AS MUCH TO DO WITH

9    IT.  I ACTUALLY THINK MR. COLUMBO HAS THE WINNING ARGUMENT

10   UNDER JANUS.

11        YES, I COULD DRAW SOME DISTINCTIONS IN THE LABOR UNION

12   EMPLOYMENT CONTEXT, BUT I THINK THAT HE REALLY -- I THINK THAT

13   THE RELEVANT PORTIONS OF JANUS FALL WITHIN THE REASONABLE

14   ARGUMENTS THAT THE PLAINTIFFS HAVE MADE.

15        SO I THINK YOU HAVE SOME REAL PROBLEMS THERE, AND YOU

16   HAVE, YOUR CITY HAS SOME TIME TO EVALUATE THAT.  I CAN'T ORDER

17   YOU TO DO ANYTHING TODAY, I'M NOT, BUT I CAN CERTAINLY

18   FORESHADOW CONCERNS I HAVE SO THAT THE CITY CAN EVALUATE THAT.

19        AND AS I SAID TO MR. COLUMBO, HIS GOAL IS THAT THIS NEVER

20   GO INTO EFFECT.  AND SO IF THE FEE NEVER GOES INTO EFFECT OR

21   DOESN'T GO INTO EFFECT IN THE CURRENT WAY, HE WINS.  ANYWAY HE

22   GETS THERE, I DON'T THINK HE NEEDS TO CLOBBER YOU WITH A

23   JUDGMENT IF HE CAN GET IT IN A SOFTER WAY WITH A VELVET GLOVE,

24   WOULD ALWAYS BE BETTER.  SO I WANT TO LEAVE THAT WITH YOU.

25        BUT NOW I'M GOING TO STEP BACK, AND I WOULD LIKE TO HEAR

1    YOUR ARGUMENTS ON ALL OF THE ISSUES.

2            MS. PREVOST:  THANK YOU VERY MUCH, YOUR HONOR.  YOUR

3     COMMENTS ARE EXTREMELY HELPFUL.

4        I THINK THAT IN TERMS OF THE SECOND AMENDMENT,

5    YOUR HONOR'S INTERPRETATION OF <u>BRUEN</u> IS EXACTLY CORRECT.  <u>BRUEN</u>

6    DIRECTS THAT COURTS LOOK TO THE TEXT OF THE SECOND AMENDMENT

7    FIRST.  AND AS WE ALL KNOW IN THIS HEARING, THE TEXT PROTECTS

8    THE RIGHT TO KEEP AND BEAR ARMS, OKAY.

9        THE ORDINANCE AT ISSUE HERE MANDATES AN ENTIRELY SEPARATE

10   ACTIVITY, WHICH IS LIABILITY INSURANCE AND PAYMENT OF A FEE.

11   OBTAINING INSURANCE FROM AN INSURANCE PROVIDER IS WHOLLY

12   SEPARATE FROM THE RIGHT TO KEEP AND BEAR ARMS.  THE ORDINANCE

13   DOESN'T AFFECT THE USE, POSSESSION, STORAGE, SALE, PURCHASE OF

14   FIREARMS, IT DOESN'T TOUCH ANY PART OF THAT.

15       AND SO <u>BRUEN</u>, ITSELF, WAS CLEAR THAT REGULATIONS ON THE

16   MANNER OF GUN POSSESSION ARE STILL PERMISSIBLE.  SO OUR VIEW IS

17   THAT BECAUSE THE ORDINANCE DOESN'T IMPINGE ON THE SECOND

18   AMENDMENT, PERIOD, THE COURT NEED NOT DIVE INTO THE HISTORICAL

19   QUESTIONS SET FORTH IN <u>BRUEN</u> UNDER THE SECOND PORTION OF THAT

20   TEST.

21       BUT EVEN IF THE COURT WERE TO DO SO, THERE ARE A LOT OF

22   HISTORIC ANALOGS THAT CAN BE DRAWN FROM THE ACTIVITY THAT THE

23   ORDINANCE MANDATES, AND THE LAWS AT THE TIME OF THE FOUNDING

24   FATHERS WHEN THE CONSTITUTION WAS DRAFTED.  WE PROVIDED A FEW

25   EXAMPLES OF THOSE.

1      THE COURT, I THINK, IDENTIFIED SURETY LAWS.  WHILE IT IS

2  TRUE, THERE IS AN ELEMENT OF MOST SURETY LAWS, BUT NOT ALL,

3  ACTUALLY, BUT MOST, THAT REQUIRE DANGEROUSNESS OF AN INDIVIDUAL

4  BEFORE A BOND IS MANDATED TO BE POSTED, THE REASONING THAT

5  BRUEN IDENTIFIED AND EXPLAINED IN ITS OPINION FOR WHY SURETY

6  LAWS DON'T BEAR ON THE CONSTITUTION THE SAME WAY THAT THE NEW

7  YORK DID, IS APPLICABLE HERE.

8      AND NAMELY, THAT SURETY LAWS WERE INTENDED FOR PREVENTION

9  AND NOT FOR PUNISHMENT.  AND THAT'S EXACTLY, AGAIN, WHAT THE

10  ORDINANCE IS INTENDED FOR HERE, TO PREVENT ACCIDENTAL GUN HARM,

11  TO COMPENSATE VICTIMS.

12      THE OTHER EXAMPLES WE PROVIDED IN OUR BRIEFING WITH

13  RESPECT TO DANGEROUS ANIMALS AND LAWS THAT EXISTED AT THE TIME,

14  AGAIN, IN THE 1800'S, THOSE ARE JUST ABOUT GOVERNMENTS BEING

15  PERMITTED TO PASS LEGISLATION THAT FORCES INTERNALIZING OF

16  COSTS, RIGHT, FROM INDIVIDUALS WHO OWN DANGEROUS PROPERTY.

17      AND GUNS ARE PROPERTY, AND SO THIS IS JUST A FEW EXAMPLES.

18  THERE'S ALSO WIDESPREAD EXAMPLES OF ECONOMIC BURDENS ON GUN USE

19  THAT CAN BE IMPOSED BY GOVERNMENTS FROM MISSISSIPPI AND RHODE

20  ISLAND IN 1854 AND 1851, IN THE CITY OF SAN FRANCISCO ITSELF,

21  FINANCIAL IMPOSITION OF FEES FOR DANGEROUS PISTOLS IN THE

22  1800'S.

23      SO I THINK THE COURT'S SECOND AMENDMENT UNDERSTANDING OF

24  BRUEN IS CORRECT.

25      IN TERMS OF THE FIRST AMENDMENT, YOU KNOW, WE AGREE THE

1  CLAIM IS NOT RIPE.  THE CITY IS WORKING HARD, AND I CAN TELL

2  YOU, I CAN PRESENT TO THE COURT THAT THE CITY IS WORKING HARD

3  TO COME UP WITH LOGISTICS AND IMPLEMENTING THE REGULATIONS

4  ASSOCIATED WITH THE FEE.  THE FEE HAS NOT BEEN SET.  WE DO HAVE

5  A MEMORANDUM FROM THE MAYOR, JANUARY 21ST, WHICH IS IN THE

6  PAPERS, THAT SETS -- PROPOSES A $25 FEE, BUT THAT HAS NOT BEEN

7  SIGNED YET.  SO WE AGREE OVERALL THAT THE CLAIM IS NOT RIPE.

8       I CAN DISCUSS SOME OF THE FIRST AMENDMENT ISSUES, THAT

9  SEEMS TO BE ON THE COURT'S MIND, SO WHY DON'T I GO THERE NOW.

10      YOU KNOW, I UNDERSTAND THAT THE COURT'S VIEW OF JANUS

11  SPECIFICALLY, AND I KNOW THE COURT UNDERSTANDS OUR VIEW, WHICH

12  IS THAT THERE ARE FACTUAL DISSIMILARITIES, BUT I THINK THAT

13  IT'S IMPORTANT TO POINT OUT A FEW THINGS.

14      ONE, THE ORDINANCE SPECIFICALLY EXEMPTS ANY PORTION OF THE

15  FEE GOING TO LITIGATION, POLITICAL ACTIVITIES, LOBBYING OF ANY

16  KIND, THAT'S WRITTEN SECTION --

17         THE COURT:  IN JANUS, THE UNIONS HAD ALREADY BEEN

18   PROHIBITED FROM DOING THAT.

19      YOU KNOW, THE THING ABOUT JANUS, AND I THINK WHAT WAS SO

20   SURPRISING ABOUT HOW IT CHANGED UNION SHOPS, WAS THAT EVERYONE

21   BENEFITTED FROM A COLLECTIVE BARGAINING AGREEMENT THAT

22   INCREASED WAGES AND IMPROVED WORKING CONDITIONS.

23      AND SO JANUS ENDORSES THE FREE RIDE, THE UNIONS STILL HAVE

24   TO REPRESENT EVERYONE IN THE CLASSIFICATION, THEY JUST CAN'T

25   COLLECT DUES FROM THOSE WHO DON'T WISH TO PAY IT.

1      YOU KNOW, IF YOU ARE LEGISLATOR, YOU MIGHT NOT VOTE FOR

2   IT, BUT WE ALL TAKE OUR GUIDANCE FROM THE SUPREME COURT.

3          MS. PREVOST:  SURE.  THAT'S CORRECT.

4      AND I THINK THAT THE COURT IS CORRECT, THAT I ONLY RAISE

5   THE EXEMPTION ISSUE, WHICH I BELIEVE ACTUALLY IS MORE OF A

6   FREEDOM OF SPEECH ISSUE RATHER THAN A FREEDOM OF ASSOCIATION,

7   RIGHT, BUT, AND THAT'S SORT OF MORE ALIGN WITH WHAT THE

8   PLAINTIFFS ARE ARGUING HERE.

9          THE COURT:  I GUESS, MS. PREVOST, IT'S REALLY HARD TO

10  SAY THAT ANY ORGANIZATION, AND WE WILL ASSUME THAT THEY HAVE

11  THE HIGHEST ETHICAL STANDARDS AND THE HIGHEST PROFESSIONALISM

12  IN THEIR FIELD, BUT ANY ORGANIZATION THAT IS TEACHING ABOUT

13  SUICIDE PREVENTION, A VERY IMPORTANT THING WHEN YOU TALK ABOUT

14  ACCIDENTAL GUN INJURIES AND DEATH.

15     I THINK IT'S GOING TO BE A HARD LINE TO DRAW AS TO WHAT A

16  PERSON WHO IS GENERALLY OPPOSED TO THE FEE FINDS IS ACCEPTABLE

17  SPEECH, GIVEN THEIR OWN VIEWS AND WHETHER THEY ENDORSE THE

18  STATEMENTS SURROUNDING SUICIDE PREVENTION.

19     I'M NOT SUGGESTING ANYONE IS IN FAVOR OF SUICIDE, BUT THE

20  WAY IN WHICH IT'S COUCHED, THAT'S REALLY THE PROBLEM IS THAT

21  THERE ARE A LOT OF IMPORTANT STATEMENTS THAT A HIGHLY EDUCATED,

22  DEVOTED PERSON COULD MAKE ABOUT SUICIDE PREVENTION, THAT OTHER

23  EQUALLY DEVOTED, HIGHLY EDUCATED PEOPLE WOULD TAKE OFFENSE TO.

24         MS. PREVOST:  I UNDERSTAND THAT, YOUR HONOR.

25     I THINK -- I UNDERSTAND WHAT THE COURT IS SAYING.  I THINK

1    THE STATE BAR CASE IS ANOTHER CASE THAT SORT OF BEARS ON THIS

2    AND GIVES A SLIGHTLY DIFFERENT INSIGHT, WHICH IS THAT THERE,

3    THE COURT FOUND THAT THE STATE BAR WAS MORE AKIN TO A PRIVATE

4    ORGANIZATION -- AND I WILL JUST GIVE SOME BACKGROUND ON THE

5    FACTS.

6         IT WAS A SIMILAR SITUATION, IF THE COURT IS NOT FAMILIAR,

7    SIMILAR ARGUMENTS RAISED WITH RESPECT TO ATTORNEY DUES TO THE

8    STATE BAR.  AND THE COURT FOUND THAT THE STATE BAR WAS MORE

9    AKIN TO A PRIVATE ORGANIZATION OR CORPORATION THAN IT WAS TO A

10   STATE AGENCY, AND REALLY EXPLAINED THAT WHEN WE ARE TALKING

11   ABOUT A GOVERNMENT AGENCY, THERE'S A SLIGHTLY MORE, WHAT I WILL

12   CALL A DIFFERENTIAL STANDARD, WHEN IT COMES TO PASSING

13   LEGISLATION, BECAUSE THERE CAN'T BE A PERFECT -- THERE CAN'T BE

14   LEGISLATION THAT'S PASSED THAT REQUIRES THE PAYMENT OF A FEE

15   THAT EVERYBODY IS GOING TO AGREE WITH, AND THERE ARE GOING TO

16   BE CITIZENS WHO DISAGREE.

17        THE COURT:  THIS FEE ISN'T PAID TO A GOVERNMENT,

18   THAT'S THE PROBLEM.

19        MS. PREVOST:  WELL, YES, IT'S A UNIQUE MODEL, I WILL

20   GIVE YOU THAT.

21        THE COURT:  I DON'T ACTUALLY UNDERSTAND WHY THE CITY

22   DIDN'T DECIDE TO HANDLE ITS OWN EDUCATION PROGRAM AND CHARGE

23   THE ACTUAL COSTS.  THE ACTUAL COSTS ARE GOING TO BE HIGH.  AND,

24   YOU KNOW, UNDER THE CALIFORNIA CONSTITUTION, IT WOULD BE

25   EXEMPTED FROM BEING A TAX.  IT MAY BE UNIQUE, BUT I DON'T KNOW

1    THAT IT PASSES CONSTITUTIONAL MUSTER.

2           MS. PREVOST:  I THINK THAT THE CITY'S INTENT WAS TO

3    NOT BE OVERLY INVOLVED IN THE NONPROFIT'S ACTIVITIES AND TO

4    KEEP SOME KIND OF A BORDER BETWEEN THE NONPROFIT AND THE

5    GOVERNMENT.

6           THE COURT:  AND THAT MAY BE THE DOWNFALL.

7           MS. PREVOST:  RIGHT, YES.  THAT IS CORRECT.

8           THE COURT:  SO MS. PREVOST, WE ALL KNOW, AS AN

9    ELECTED BODY REPRESENTING THE CITIZENS OF SAN JOSE, THEY HAVE

10   MANY PROBLEMS TO SOLVE AND THEY HAVE MANY BARRICADES IN THE WAY

11   THAT THEY HAVE TO MANEUVER.

12      SO I ADMIRE THE WORK OF ANY GOVERNING BODY AND APPRECIATE

13   THE HARD WORK AND GOOD INTENTIONS, THAT I PRESUME, BUT THAT'S

14   WHY WE ARE HERE AS THE COURTS, IS TO JUST EVALUATE IT IN A

15   DIFFERENT WAY.

16          MS. PREVOST:  YOUR HONOR, I APPRECIATE THAT.

17          THE COURT:  MY ONLY JOB IS TO SAY UP OR DOWN, WHETHER

18   THE PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OR NOT.

19      AND I AGREE WITH YOU, I NEED TO UNDERSTAND THE CONTOURS OF

20   THE FEE AND THE NONPROFIT BEFORE I CAN RULE.  I JUST DIDN'T

21   WANT TO GIVE YOU ANY FALSE IMPRESSION THAT ALL YOU NEEDED TO DO

22   WAS FLESH IT OUT.  AND IF THAT'S WHAT THE CITY WANTS TO DO AND

23   HAVE ME RULE, THAT IS MY JOB, I'M GLAD TO DO THAT.

24          MS. PREVOST:  THANK YOU, YOUR HONOR.  I APPRECIATE

25   THAT.

1      ALL OF YOUR COMMENTS, I APPRECIATE A GREAT DEAL, AND IT'S

2   VERY CLEAR TO ME THAT YOU HAVE READ THE PAPERS AND DOVE INTO

3   THE LAW, AND IT'S VERY MUCH APPRECIATED.

4      THESE ARE COMPLEX ISSUES, AND YOUR HONOR IS CORRECT, THE

5   CITY IS DEALING WITH A VERY COMPLEX PROBLEM HERE, RIGHT.  200

6   PEOPLE DIE ANNUALLY IN THE CITY OF SAN JOSE FROM GUNFIRE, AND

7   DOZENS OF THOSE ARE FROM ACCIDENTAL DEATHS AND SUICIDE.  SO

8   THIS IS SOMETHING THAT THE CITY HAS TAKEN GREAT CARE TO DRAFT,

9   AND NOW IMPLEMENT, BUT WE REALLY APPRECIATE THE COURT'S

10   COMMENTS.

11      THE COURT:  AND YOU KNOW, THERE IS A SEVERABILITY

12   CLAUSE IN THIS ORDINANCE, AND THE FACT THAT ONE PIECE MAY NOT

13   SURVIVE, DOESN'T IMPERIL THE REMAINDER.

14      AND I APPRECIATE THAT THE CITY COULD ULTIMATELY HAVE SOME

15   DISAPPOINTMENT.  OBVIOUSLY IF NONE OF IT GOES INTO EFFECT, THEN

16   THEY REALLY GO BACK TO THE DRAWING BOARD.

17      AND I'M NOT MAKING THAT ULTIMATE RULING TODAY, AND I HAVE

18   A LONG WAY TO GO IN FASHIONING MY RULING ON THE SECOND

19   AMENDMENT AND THE TAX AND CHARTER ISSUES.  I THINK THE

20   PREEMPTION IS NOT AS HARD, FRANKLY, BUT IT'S CERTAINLY AN ISSUE

21   I NEED TO DECIDE WHETHER THE PLAINTIFFS HAVE SHOWN A LIKELIHOOD

22   OF PREVAILING.  THAT'S ALL I'M DOING.

23      WE ARE GOING TO HAVE A TRIAL HERE IN THIS CASE.  THESE ARE

24   NOT NECESSARILY THE KIND OF CASES THAT ONE COULD HOPE TO

25   SETTLE.  BUT I CERTAINLY DON'T THINK THAT THERE'S ANY BENEFIT

1    TO AN EVIDENTIARY HEARING AT THIS POINT.  I THOUGHT ABOUT IT,

2    NEITHER OF YOU ASKED FOR IT.  I ACTUALLY -- YOU KNOW, WE ARE

3    ALL KIND OF SET BACK IN OUR THINKING BECAUSE THE ENTIRE

4    STANDARD OF REVIEW CHANGED ONLY TWO WEEKS AGO, AND SO IT'S NOT

5    THAT YOUR ENTIRE BRIEF WAS THROWN OUT THE WINDOW, BUT I GOT TO

6    PORTIONS OF IT AND JUST CLIPPED THEM TOGETHER SAYING, WAIT FOR

7    THE SUPPLEMENTAL, BECAUSE I DON'T NEED TO READ THESE.

8         AND SO REALLY MY FULL ADMIRATION TO BOTH OF YOU FOR HAVING

9    TO ANALYZE THAT AND RECONFIGURE YOUR ARGUMENTS THERE.

10         MR. COLUMBO, I PROMISED YOU THE LAST WORD.  IT IS YOUR

11   MOTION, AND ALTHOUGH YOU BEAR THE BURDEN ON MOST OF THE ISSUES,

12   NOT ALL OF THEM, THE SUPREME COURT HAS GUIDED US ON WHERE THE

13   CITY HAS THE BURDEN, BUT IT'S YOUR MOTION, SO YOU GET THE LAST

14   WORD.

15         MR. COLUMBO:  THANK YOU, YOUR HONOR.

16         AND WE ECHO OUR APPRECIATION FOR THE THOUGHTFUL

17   CONSIDERATION THAT YOU HAVE GIVEN TO THESE ISSUES.  THERE'S A

18   LOT OF ISSUES THAT WE HAVE RAISED AND WE DO APPRECIATE THE

19   COURT'S EFFORT TO GRAPPLE WITH THEM.

20         MY ONLY PARTING THOUGHT, BECAUSE I THINK WE HAVE COVERED A

21   LOT TODAY, BUT MY ONLY PARTING THOUGHT IS THE ONE LAST PITCH ON

22   THESE THRESHOLD QUESTIONS OF WHETHER THE SECOND AMENDMENT AND

23   THE HISTORICAL ANALYSIS IN BRUEN APPLIES.

24         THE ORDINANCE APPLIES TO EVERY GUN OWNER AS A GUN OWNER,

25   AND DOESN'T APPLY TO ANYONE WHO DOESN'T OWN GUNS.  REQUIRING

1   GUN OWNERS AS SUCH, TO PAY FEES AND MAKE A DONATION OR BUY

2   INSURANCE, IT IS A BURDEN, IT IS AN INFRINGEMENT, IT IS AT

3   LEAST IMPACTFUL ON THEIR SECOND AMENDMENT RIGHTS, SUFFICIENT

4   THAT WE BELIEVE THE BRUEN ANALYSIS, HISTORICAL ANALYSIS TENDS

5   TO BE -- HAS TO BE ADDRESSED.

6        WE WOULD ALSO NOTE, THROUGHOUT THE CASE THERE'S BEEN

7   ILLUSIONS OR COMPARISONS BETWEEN THE FIRST AND SECOND

8   AMENDMENT, AND I THINK IT HELPS AGAIN HERE TO CLARIFY WHAT WE

9   ARE REALLY SAYING.

10       WE DON'T THINK ANYONE WOULD SUGGEST THAT REQUIRING A FEE

11  PAYMENT OR THE PURCHASE OF INSURANCE WOULD BE CONSTITUTIONAL IF

12  IT WERE APPLIED TO PEOPLE WHO WANTED TO SPEAK OR TO PRAY.  AND

13  SO I THINK IT WOULD BE A VERY EASY THING IF WE WERE TALKING

14  ABOUT OTHER CONSTITUTIONAL RIGHTS, TO UNDERSTAND THAT REQUIRING

15  THESE KINDS OF MEASURES TO EXERCISE THOSE RIGHTS, WOULD AT

16  LEAST INVOKE A CONSTITUTIONAL ANALYSIS.

17         THE COURT:  SO, YOU KNOW, I REALLY APPRECIATE THAT

18  STATEMENT.  I WOULD CERTAINLY AGREE WITH YOU THAT THE FIRST

19  AMENDMENT WOULD NOT TOLERATE A FEE OR INSURANCE FOR THE RIGHT

20  TO SPEAK OR PRAY.

21       BUT THE RIGHT TO OWN YOUR GUN AND KEEP IT IS NOT AT ISSUE

22  HERE.  NO ONE IS TAKING THE GUN AWAY, NO ONE IS LIMITING WHERE

23  YOU, NOT YOU, BUT YOUR CLIENTS, CAN CARRY THEM, WHERE THEY CAN

24  OWN THEM, HOW MANY THEY CAN OWN.  AND SO THAT, I THINK, IS THE

25  DISTINCTION.

1          IF THE IMPOUNDMENT PROVISION WAS OPERATIVE, THAT WOULD BE

2     A PROBLEM HERE.  BUT I THINK THAT IS A KEY DIFFERENCE.

3          CAN YOU REFER ME TO ANY CASE THAT LIMITED THE BURDEN ON

4     THE -- THE EXTRA BURDENS ON GUN OWNERSHIP, SORT OF CONFISCATION

5     OR IMPOUNDMENT?

6          JUSTICE THOMAS AND THE SUPREME COURT REFERRED TO

7     EXORBITANT FEES OR EXTRAORDINARILY LONG WAITING PERIODS,

8     ESSENTIALLY ENDORSING WHAT THE "SHALL ISSUE" STATES HAVE MODEST

9     WAITING PERIODS AND MODEST FEES.  AND I SAY MODEST WITHOUT ANY

10    NUMBER ATTACHED TO IT, BUT AS THE OPPOSITE OF EXORBITANT, OR ON

11    THE OTHER SIDE OF THE LINE OF EXORBITANT.

12         BRUEN DOESN'T GIVE ME THAT GUIDANCE BECAUSE BRUEN ACTUALLY

13    PROHIBITED CARRYING GUNS IN PUBLIC, EXCEPT WHERE THERE WAS

14    SPECIALIZED NEED.  KEEP AND POSSESS, AS WE ALWAYS HAVE TO FOCUS

15    ON, AND THE SUPREME COURT HAS ENDORSED REASONABLE REQUIREMENTS.

16         AND SO IF THERE'S ANOTHER CASE YOU CAN GIVE ME WHERE IT'S

17    A REQUIREMENT THAT DOES NOT -- THAT CANNOT RESULT IN LOSS OF

18    GUN POSSESSION OR OWNERSHIP, THAT WOULD BE HELPFUL TO ME.

19              MR. COLUMBO:  OKAY.  I WOULD BE HAPPY TO ADDRESS

20    THAT.

21         ONE THING THAT I WILL NOTE, AND I WILL ANSWER THE COURT'S

22    QUESTION AS BEST AS I CAN, IS THAT IF WE ARE INTO THE

23    HISTORICAL ANALYSIS PART OF BRUEN, IT IS ACTUALLY THE

24    GOVERNMENT'S BURDEN TO FIND THAT HISTORICAL ANALOGY.

25              THE COURT:  OH, THERE'S NO QUESTION.

1          MR. COLUMBO:  AND I'M HAPPY TO DISCUSS IT, THE ISSUE

2    WE FEEL IS NOT HOW TO COMPARE, I GUESS IF YOU COULD TAKE THE

3    BURDENS OF ALL THE GUN REGULATIONS THAT HAVE EVER EXISTED AND

4    YOU COULD PUT THEM ON A LINE AND QUANTIFY WITH A NUMBER WHAT

5    THEIR BURDEN WAS, AND SAY WELL, FINGERPRINTING IS A SIX, AND A

6    BACKGROUND CHECK IS A SEVEN, BUT THE NONPROFIT DONATION HERE,

7    IT'S JUST A THREE.  I DON'T THINK THAT'S THE WAY BRUEN DESIGNED

8    ITS ANALYSIS.  I THINK THE ISSUE HERE IS WE ARE LOOKING FOR A

9    HISTORICALLY RELEVANT ANALOG.

10         AND WHEN WE TALK ABOUT EITHER MANDATORY INSURANCE, AND WE

11   TALKED ABOUT THE SURETY BONDS AND OUR VIEW OF THEM, BUT

12   ESPECIALLY THE MANDATORY NONPROFIT DONATION, I THINK SIMPLY

13   THAT THERE IS NO HISTORICAL ANALOGY FOR THAT KIND OF GUN

14   REGULATION.  AND THE CITY STATEMENTS, I THINK REFLECT THAT.  SO

15   I THINK THAT'S HOW WE ANSWER THAT QUESTION.

16         THE COURT:  OKAY.  SO I ACTUALLY WAS ASKING IF, AND

17   MAYBE THE STANDARD IS TOO NEW TO EXPECT THERE TO BE CASES, BUT

18   I ACTUALLY THINK THAT MY QUESTION GOES TO THE FIRST -- THE

19   THRESHOLD QUESTION WE ASK UNDER BRUEN IS, WHAT DOES THIS

20   CONDUCT INVOKE, SECOND AMENDMENT PROTECTION WHERE THE ABILITY

21   TO KEEP AND BEAR ARMS IS NOT AT ISSUE IN IMPLEMENTATION OF THE

22   ORDINANCE.

23         MR. COLUMBO:  RIGHT.  SO IF I COULD CLARIFY, IS THE

24   COURT'S POSITION THAT OWNING A GUN IS NOT KEEPING AND BEARING

25   ARMS?

1          THE COURT:  IT IS.  IT ABSOLUTELY IS.  OWNING,

2     POSSESSING.  OWNING, POSSESSING, CARRYING IT WHERE YOU WANT TO,

3     ALL OF THOSE THINGS ARE IMPLICATED UNDER THE SECOND AMENDMENT.

4     I'M READING THE ORDINANCE AS NOT TOUCHING ANY OF THOSE RIGHTS.

5          MR. COLUMBO:  THE ORDINANCE -- I THINK I UNDERSTAND

6     YOUR POSITION.  I MAY NOT -- WITH ALL RESPECT, I MAY NOT AGREE

7     WITH IT.

8          THE COURT:  I APPRECIATE THAT.

9          MR. COLUMBO:  IN OUR VIEW, IF YOU IMPOSE A FEE ON A

10    CONSTITUTIONAL RIGHT OR SOME OTHER KIND, INCLUDING INSURANCE

11    REQUIREMENT, WE MAY STILL HAVE TO FIGURE OUT WHETHER OR NOT

12    IT'S CONSTITUTIONAL, BUT I THINK AS A THRESHOLD MATTER, WE

13    WOULD SAY IMPOSING THAT REQUIREMENT ON THE OWNERSHIP OF GUNS,

14    AT LEAST TRIGGERS THE CONSTITUTIONAL ANALYSIS UNDER BRUEN.

15          THE COURT:  AND YOU MAY BE RIGHT.  YOU MAY BE RIGHT.

16    I AM PURSUING THE ARGUMENT THAT WAS PRESENTED BY THE

17    DEFENDANTS IN THEIR BRIEF, AND I THOUGHT IT WAS WORTH

18    EXPLORING.

19    I HAVEN'T DECIDED THIS, I WANT TO BE CLEAR ON THAT.  AND

20    THIS IS, YOU KNOW, THIS IS NEW FOR ALL OF US, MR. COLUMBO, SO

21    THE DIALOG IS REALLY IMPORTANT TO ME IN UNDERSTANDING YOUR

22    POSITION ON IT.  SO IF I PUSH, IT'S REALLY TO GET A RESPONSE,

23    BECAUSE I WANT YOU TO PERSUADE ME YOU ARE RIGHT.  I WANT TO BE

24    CLEAR ON THAT, THAT'S WHY I ASK THE QUESTION.

25    I'M NOT TRYING TO PERSUADE MYSELF THAT I'M RIGHT, I'M

1    TRYING TO MAKE SURE THAT YOU HAVE THE OPPORTUNITY TO PERSUADE

2    ME THAT YOU ARE RIGHT.  I DON'T NEED A HEARING, I WANT TO LOOK

3    IN THE MIRROR, YOU KNOW.

4          MR. COLUMBO:  I WANT TO PERSUADE YOU THAT I'M RIGHT

5    AS WELL.

6          THE COURT:  OKAY.  AND I THINK YOU'VE MADE A STRONG

7    ARGUMENT THERE ON THE FEE, AND I WANT TO REALLY THINK ABOUT

8    THAT.

9          YOU KNOW, I HAD YOU DO SIMULTANEOUS BRIEFING ON THE

10   SUPPLEMENTAL.  AND SO THIS IS THE TIME FOR ME TO HEAR HOW YOU

11   ADDRESS EACH OTHER'S ARGUMENTS, AND I THINK YOU'VE DONE A NICE

12   JOB ON THAT.

13         ALL RIGHT.  I THINK THAT'S EVERYTHING FOR THIS MORNING.

14   JUST SO YOU KNOW, I'M PROBABLY GOING TO CONSOLIDATE ALL THE

15   HEARINGS ON THE SEPARATE MOTIONS TO DISMISS INTO ONE HEARING.

16   I DON'T NEED TO DO IT THREE SEPARATE TIMES BECAUSE THERE'S SO

17   MUCH OVERLAP, AND I HAVEN'T DECIDED ON CONSOLIDATION OR WHAT

18   THAT WILL LOOK LIKE, SO I'M NOT READY TO DO THAT YET.

19         BUT I AM PROBABLY -- I DON'T KNOW WHETHER YOUR MOTION TO

20   DISMISS HEARING IS TEED UP FOR THE FIRST DATE, I HAVEN'T

21   DECIDED WHICH -- I THINK THEY ARE SPREAD ALL THROUGHOUT AUGUST

22   AND I WILL GET TO THAT.  I JUST DIDN'T WANT ANYTHING TO

23   INTERFERE WITH A FULL HEARING ON THE PRELIMINARY INJUNCTION.

24         AND QUITE FRANKLY, IT'S MY GOAL TO GET THIS ORDER OUT AS

25   QUICKLY AS I CAN, EVEN THOUGH I KNOW THE EFFECTIVE DATE IS NOT

1    AUGUST 8TH, AND THAT GIVES ME SOME BREATHING ROOM, WHICH IS

2    NICE, BECAUSE I THINK THE PLAINTIFFS DESERVE THAT.  YOU FILED

3    THIS QUITE A WHILE AGO, AND I'VE ALWAYS BEEN FOCUSED ON THE

4    EFFECTIVE DATE.  SO I FEEL LIKE I'VE GOT A LITTLE BREATHING

5    ROOM, BUT NOTHING MORE.

6         ALL RIGHT.  MS. PREVOST, IS THERE ANY, LITERALLY, LAST

7    SENTENCE YOU WANTED TO MAKE?

8              MS. PREVOST:  NO, YOUR HONOR.

9         I APPRECIATE THE COURT'S TIME.  THANK YOU.

10             THE COURT:  ALL RIGHT.

11        ALL RIGHT.  THANK YOU ALL.  MR. COLUMBO, THANK YOU.  AND

12    YOU WILL HAVE MY ORDER AS QUICKLY AS I CAN.

13             MR. COLUMBO:  THANK YOU, YOUR HONOR.

14             MS. PREVOST:  THANK YOU.

15        (THE PROCEEDINGS WERE CONCLUDED AT 10:32 A.M.)

16

17

18

19

20

21

22

23

24

25

1

2

3

4                          **CERTIFICATE OF REPORTER**

5

6

7

8           I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13           THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 8/17/22