**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., et al.,<br><br>      Plaintiffs,<br><br>      v.<br><br>CITY OF SAN JOSE, et al.,<br><br>      Defendants. | Case No. 22-cv-00501-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>[Re: ECF No. 36] |
| HOWARD JARVIS TAXPAYERS ASSOCIATION, et al.,<br><br>      Plaintiffs,<br><br>      v.<br><br>CITY OF SAN JOSE,<br><br>      Defendant. | Case No. 22-cv-02365-BLF<br><br>[Re: ECF No. 9] |

On February 8, 2022, the City of San Jose City Council voted to approve the Reduction of Gun Harm – Liability Insurance Requirement and Gun Harm Reduction Fee (the "Ordinance"), requiring San Jose gun owners to maintain gun liability insurance and pay a mandatory annual fee to a designated gun harm reduction nonprofit. This ordinance has been challenged by two sets of plaintiffs, one led by the National Association for Gun Rights, Inc. ("NAGR Plaintiffs") and the other by the Howard Jarvis Taxpayers Association ("HJTA Plaintiffs").

The Court previously denied NAGR Plaintiffs' motion for preliminary injunction ("August 3 Order"). Now before the Court are Defendants' motions to dismiss both Plaintiffs' respective complaints. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motions.

United States District Court
Northern District of California

## I.   BACKGROUND

### A.   The Ordinance

The San Jose Ordinance at issue here is comprised of two primary obligations: the requirement for gunowners to maintain liability insurance (the "Insurance Requirement") and the payment of an annual fee to a nonprofit of the City's designation (the "Fee Provision").

The Insurance Requirement obligates San Jose residents who own or possess a firearm to obtain a homeowner's, renter's, or gun liability insurance policy "covering losses or damages resulting from any accidental use of the Firearm." First Am. Compl. Injunctive Relief, Declaratory Judgment, and Nominal Damages ("NAGR FAC"), Ex. K ("Ordinance") § 10.32.210 (the "Insurance Requirement"), NAGR ECF No. 19.[1]

The Fee Provision requires San Jose gun owners to pay an Annual Gun Harm Reduction Fee (the "Fee") to a Designated Nonprofit Organization (the "Nonprofit"), selected by the City Manager. *Id.* § 10.32.215, 10.32.235. The Fee amount will be established by City Council, and every dollar generated must be used by the Nonprofit to provide "services to residents of the City that own or possess a [f]irearm in the City, to members of their household, or to those with whom they have a close familial or intimate relationship." *Id.* § 10.32.220(A). The Ordinance instructs the Nonprofit to spend the funds generated from the Fee exclusively for programs and initiatives designed to "(a) reduce the risk or likelihood of harm from the use of firearms in the City of San Jose, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San Jose firearm owner or her family will incur through her possession of firearms." *Id.* § 10.32.220(C). Proceeds generated by the Fee may not be used for litigation, political advocacy, or lobbying activities nor may the City "specifically direct how the monies from the Gun Harm Reduction Fee are expended." *Id.* §§ 10.32.220(B) – (C).

In addition to obtaining gun liability insurance and paying the annual Fee, San Jose

---

[1] ECF entries in the NAGR Plaintiffs' docket, *i.e.*, Case No. 22-cv-00501-BLF, will be referred to as "NAGR ECF No." Likewise, ECF entries in the HJTA Plaintiffs' docket will be referred to as "HJTA ECF No."

residents must also maintain City-designated proof of compliance. *Id.* § 10.32.230. The Ordinance sets out a limited number of exemptions from its obligations, including a "financial hardship" exemption, the criteria for which will be promulgated by the City Manager. *Id.* §§ 10.32.225, 10.32.235(A)(4).

Violations of the Ordinance are punishable by administrative citation with fines to be established by City Council. *Id.* § 10.32.240. Although the Ordinance would permit the impoundment of any non-compliant person's firearm to the extent allowed by law (*id.* § 10.32.245), the City admitted in its briefing that the section is inoperable because "[t]here is currently no lawful basis to impound firearms under state or federal law." Mot. Dismiss [NAGR] Pls.' First Am. Compl. ("Mot. NAGR"), at 5-6, NAGR ECF No. 36; *see also* Mot. Dismiss [HJTA] Pls.' Compl. ("Mot. HJTA"), at 6, HJTA ECF No. 9.

The Ordinance authorizes the City Manager to promulgate certain implementing regulations, including the designation of the Nonprofit, additional guidelines on and audits of the use of the Fee, and establishing the criteria for the "financial hardship" exemption. *Id.* § 10.32.235. At the time the NAGR and HJTA complaints were filed and as of the date of this Order, the City Council and City Manager have not yet established the amount of the Fee, the amount of any administrative fines, or the identity of the Nonprofit. Mot. NAGR 8-9; *see also* Defs.' Corrected Status Report 1-2, NAGR ECF No. 78, Aug. 17, 2022 ("[T]he City has not yet set a date for when enforcement of the Fee requirements will begin, nor has it designated the nonprofit organization to which the Fee must be paid.").

### B. Procedural History

#### i. National Association for Gun Rights, Inc. ("NAGR"), et al.

Plaintiff National Association for Gun Rights, Inc. ("NAGR") describes itself as a nonprofit grassroots organization dedicated to defending the Second Amendment right to keep and bear arms. NAGR FAC ¶ 13. Its members include San Jose residents, such as Plaintiff Mark Sikes, who legally own guns and would be subject to the Ordinance if it were to go into effect. *Id.* ¶ 14. NAGR Plaintiffs name the City of San Jose, Jennifer Maguire in her official capacity as City Manager, and the City of San Jose City Council (collectively, the "City") as defendants to their

1    suit.  *Id.* ¶¶ 15-17.

2         NAGR Plaintiffs filed their original complaint on January 25, 2022, the same day the City

3    passed the first reading of the Ordinance.  *See* NAGR ECF No. 1.  They challenge both the

4    Insurance Requirement and the Fee Provision in five claims for violations of the First and Second

5    Amendment to the U.S. Constitution, the California Constitution, and the City of San Jose's City

6    Charter, as well as a sixth claim under the Declaratory Judgment Act.  NAGR FAC ¶¶ 82-148.

7         On March 8, 2022, NAGR Plaintiffs moved for a preliminary injunction against the

8    enforcement of the Ordinance, which both parties fully briefed by March 29, 2022.  NAGR ECF

9    Nos. 25, 28, 32.  Shortly thereafter, the City filed the instant motion to dismiss NAGR Plaintiffs'

10   First Amended Complaint on April 8, 2022, which was fully briefed by April 29, 2022.  NAGR

11   ECF Nos. 36, 46, 50.

12        On June 23, 2022 (after both motions were briefed but before hearing on either), the

13   United States Supreme Court issued its opinion in *New York State Rifle & Pistol Ass'n., Inc. v.*

14   *Bruen*, 142 S. Ct. 2111 (2022), expressly rejecting the "two-step" means-end scrutiny framework that

15   Circuit Courts of Appeals and the parties had used to analyze Second Amendment challenges.  After

16   requesting and receiving the parties' supplemental briefings on the application of *Bruen* (NAGR ECF

17   Nos. 64-65) and hearing oral arguments, the Court denied NAGR Plaintiffs' motion for preliminary

18   injunction on August 3, 2022.  NAGR ECF No. 72.

19            **ii.    Howard Jarvis Taxpayers Association ("HJTA"), et al.**

20        Plaintiff Howard Jarvis Taxpayers Association ("HJTA") is a nonprofit public benefit

21   corporation that engages in civil litigation to ensure constitutional taxation in California.  Notice

22   of Removal, Ex. A ("HJTA Compl."), HJTA ECF No. 1.  Plaintiffs Silicon Valley Taxpayers

23   Association, Inc. ("SVTA") and Silicon Valley Public Accountability Foundation ("SVPAF") are

24   also nonprofit public benefit corporations comprised of Santa Clara County residents, seeking to

25   reduce taxes and monitor Santa Clara County public officials, respectively.  *Id.* ¶¶ 2-3.  All three

26   associations' members include San Jose gun owners who would be subject to the Fee Provision.

27   *Id.* ¶¶ 1-3.  In addition to the associational plaintiffs, the suit is also brought by individual

28   plaintiffs, James Barry and George Arrington (collectively with HJTA, SVTA, and SVPAF, the

United States District Court
Northern District of California

4

1  "HJTA Plaintiffs"), both of whom are San Jose residents who legally own firearms.  *Id.* ¶¶ 4-5.

2  On March 7, 2022, the HJTA Plaintiffs filed their "Complaint to Invalidate §§ 10.32.215

3  and 10.32.230(B) of Chapter 10.32 of the Title 10 of the San Jose Municipal Code" in the Santa

4  Clara County Superior Court.  Notice of Removal ¶ 1, HJTA ECF No. 1.  The HJTA Complaint is

5  styled as a validation action pursuant to Cal. Civ. Proc. Code §§ 860, *et seq.*, and asserts four

6  causes of action: (1) violation of constitutional rights of speech and association under both the

7  U.S. and California Constitution; (2) "unconstitutional condition" of the Second Amendment and

8  California Constitution; (3) "special tax lacking voter approval" under the California Constitution,

9  and (4) "unconstitutional delegation of power to tax" under the California Constitution.  HJTA

10  Compl. ¶¶ 8-37.  Notably, HJTA Plaintiffs only challenge the Fee Provision and not the Insurance

11  Requirement.  *See* Opp. Pls. Mot. Dismiss Compl. ("HJTA Opp.") 13, HJTA ECF No. 16.

12  On April 15, 2022, the City removed the HJTA Complaint to the Northern District of

13  California based on the First and Second Amendment claims.  Notice of Removal ¶¶ 4-6.  Shortly

14  thereafter, the Court granted the City's motion to relate the HJTA Plaintiffs' case with the NAGR

15  Plaintiffs' case.  NAGR ECF No. 41; HJTA ECF No. 5.  On September 30, 2022, the Court

16  consolidated both cases for all purposes.  NAGR ECF No. 80.

17  On April 22, 2022, the City moved to dismiss the HJTA Complaint on Rule 12(b)(1) and

18  (b)(6) grounds.  Mot. HJTA 1.  The City and HJTA Plaintiffs completed their briefing by May 13,

19  2022, and the Court heard oral arguments on August 18, 2022.

20  **II.   LEGAL STANDARD**

21  **A.   Lack of Subject Matter Jurisdiction**

22  A party may challenge the Court's subject matter jurisdiction by bringing a motion to

23  dismiss under Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack

24  may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

25  In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from

26  the face of the complaint.  *Id.*  In a factual attack, the movant disputes the truth of allegations that

27  otherwise would give rise to federal jurisdiction.  *Id.*  "In resolving a factual attack on jurisdiction,

28  the district court may review evidence beyond the complaint without converting the motion to

dismiss into a motion for summary judgment." *Id.* "The court need not presume the truthfulness of the plaintiff's allegations." *Id.* If the moving party presents evidence demonstrating the lack of subject matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient to establish subject matter jurisdiction. *Id.*

**B.      Failure to State a Claim**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

United States District Court
Northern District of California

### III.   DISCUSSION

Although the NAGR and HJTA Complaints contain overlapping claims, there are several differences in the approach each set of Plaintiffs has elected to challenge the City's Ordinance, as well as in the City's respective motions to dismiss.  Accordingly, the Court will address each complaint separately.

### A.   NAGR FAC

The City moves to dismiss each of the NAGR FAC's claims for failure to state a claim. Mot. NAGR 10-23.  Additionally, the City argues that the NAGR FAC is unripe and fails to state a proper facial constitutional challenge, though these arguments appear only to apply to NAGR Plaintiffs' Fee Provision challenges.  *Id.* at 7-10.  For the following reasons, the Court will GRANT IN PART and DENY IN PART the City's motion as to the NAGR FAC.

#### i.   First Amendment

The NAGR FAC's First Amendment claim is only asserted against the Ordinance's Fee Provision and alleges that the City "may not require Plaintiffs to pay fees to nonprofits when those fees are going to be used to fund activities of ideological or political nature, such as endorsing gun control."  NAGR FAC ¶ 112.  The City moves to dismiss this claim on three grounds: it is unripe, it fails to state a proper facial challenge, and it fails to state a claim under Rule 12(b)(6).  Mot. NAGR 7-9, 16-17.  Because "jurisdiction generally must precede merits in dispositional order," the Court first addresses the City's ripeness challenges.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).

In the August 3 Order, the Court found that NAGR Plaintiffs' First Amendment challenge to the Fee Provision was unripe because the Court had no information as to what activities—and more critically what speech or expression, if any—the proceeds from the Fee would fund.  *See* Aug. 3 Order 9-11.  Today, the Court finds that this reasoning applies equally to NAGR Plaintiffs' First Amendment claim, now reviewed on a motion to dismiss.  Because the City Manager has not promulgated regulations identifying the Nonprofit's activities, the Court cannot determine if the Fee would fund any expressive activities and thereby remains unfit for judicial determination.  Additionally, NAGR Plaintiffs still have not highlighted any hardship they would suffer from the

1    Court withholding consideration at this time.  *Id.*; *see also Bishop Paiute Tribe v. Inyo Cnty.*, 863

2    F.3d 1144, 1154 (9th Cir. 2017).

3          Neither the NAGR FAC nor NAGR Plaintiffs' opposition contains any allegations that

4    would reassure the Court of the First Amendment claim's ripeness.  For example, the FAC alleges

5    that the City "may not require Plaintiffs to pay fees to nonprofits when those fees are going to be

6    used to fund activities of ideological or political nature" (NAGR FAC ¶ 112) but does not allege

7    that the Nonprofit would be engaging in ideological or political activities.  The NAGR FAC

8    provides only speculation on what the Nonprofit's activities are *likely* to be.  *See id.* ¶ 62 ("The

9    one thing that is clear is that the organization will *likely* be dedicated to exclusively preaching the

10   negative risks of gun ownership. . . .") (emphasis added).  Plaintiffs' inability to specify these facts

11   is not surprising, as the Ordinance itself only sets broad directives for the Nonprofit (*e.g.*, "reduce

12   the risk or likelihood of harm from the use of firearms") and a non-exhaustive and non-mandatory

13   list of potential activities.  Ordinance § 10.32.220.

14         To the extent NAGR Plaintiffs argue that—regardless of the Nonprofit's actual activities—

15   the Supreme Court's decision in *Janus* instructs that a mandatory Fee to *any* nonprofit would

16   violate the First Amendment, this argument is unavailing.  *See* Hearing Tr. 18:20-24, Aug. 4,

17   2022, NAGR ECF No. 76 ("NAGR Hearing Tr.") (citing *Janus v. Am. Fed'n of State, Cnty., &*

18   *Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018)).  In *Janus*, the recipient of the compulsory fees

19   (*i.e.*, the union) and the activities the fees would fund were known and well-defined for First

20   Amendment scrutiny.  *See* 138 S. Ct. at 2461 (noting that nonmembers' agency fees paid for the

21   "cost of collective bargaining," as well as lobbying, social and recreational activities, advertising,

22   membership meetings and conventions, and litigation).  Here, by contrast, there are no such

23   concrete activities that the Court can consider in applying any level of First Amendment scrutiny

24   or the Supreme Court's reasoning in *Janus*.

25         For the reasons set forth above, the City's motion to dismiss the First Amendment claim

26   for lack of ripeness is GRANTED.  "In the Ninth Circuit, it is proper to liberally allow amendment

27   of a complaint to cure jurisdictional defects."  *Nat. Res. Def. Couns. v. Winter*, 2008 WL

28   11338646, at *3 (C.D. Cal. Apr. 10, 2008) (internal quotation marks omitted).  Accordingly, the

United States District Court
Northern District of California

1    Court will DISMISS the NAGR FAC's First Amendment claim with LEAVE TO AMEND.

2              **ii.    Second Amendment**

3         The NAGR FAC asserts Second Amendment violations against both the Ordinance's Fee

4    Provision and the Insurance Requirement (NAGR FAC ¶ 88), pled under the pre-*Bruen* "two-step"

5    framework of Second Amendment analysis.  *See id.* ¶¶ 88-102.

6         The City moves to dismiss NAGR Plaintiffs' Second Amendment claim on ripeness

7    grounds with respect to the Fee Provision (Mot. NAGR 8-10) and on Rule 12(b)(6) grounds under

8    the former "two-step" framework for the Insurance Requirement.  Mot. NAGR 10-16.  NAGR

9    Plaintiffs' Opposition similarly presents now legally incognizable arguments, such as the proper

10   level of scrutiny and the Ordinance's "reasonable fit," as does the City's Reply.  *See* NAGR Pls.'

11   Resp. ("NAGR Opp.") 12-16, NAGR ECF No. 46; Defs.' Reply ("Reply NAGR") 5-8.  The Court

12   has not requested—and the parties have not provided—supplemental briefs to update this motion's

13   Second Amendment briefing in accordance with *Bruen*, though the Court did request such briefs

14   on a different procedural posture.  *See* NAGR ECF Nos. 64-65.

15        The Court previously held that NAGR Plaintiffs' Second Amendment challenge to the Fee

16   Provision was not ripe because the City Council had not yet confirmed the Fee's final amount nor

17   had the City Manager promulgated the "financial hardship" criteria by which a gun owner may be

18   exempt from paying the Fee.  Aug. 3 Order 11-13.  Once again, the Court sees no reason to depart

19   from its prior ripeness reasoning, especially given that the NAGR FAC itself alleges the

20   uncertainty of the Ordinance's financial burden.  *See* NAGR FAC ¶ 90 ("The City's fees, too, are

21   left unstated and deferred to future, unscheduled determinations of the City Council.").  As with

22   their First Amendment claim, NAGR Plaintiffs also have not demonstrated any hardship of

23   withholding judicial consideration on their Second Amendment claim, such as serious penalties

24   requiring them to make immediate and significant changes to their regular conduct.  *See Wolfson*

25   *v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010).  Accordingly, the Court will DISMISS NAGR

26   Plaintiffs' Second Amendment claim as to the Fee Provision for lack of ripeness.

27        Regarding the Second Amendment challenges to the Insurance Requirement, the NAGR

28   FAC's allegations—irrespective of their sufficiency under a prior framework—do not track the

United States District Court
Northern District of California

current legal standard. As noted above, the Supreme Court expressly rejected the previous two-step framework that the Circuit Courts of Appeals—and the parties—had used to evaluate Second Amendment constitutional challenges. *See Bruen*, 142 S. Ct. at 2126-30. The present standard as pronounced in *Bruen* is, as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30. As currently drafted, the NAGR FAC does not provide the necessary allegations to support a Second Amendment claim under this new standard. For instance, the NAGR FAC does not define a proposed course of conduct for the Court to determine whether it is covered by the Second Amendment's plain text. *See Bruen*, 145 S. Ct at 2134-36. The only post-*Bruen* arguments the Court received were presented under a different procedural posture and did not directly address the sufficiency of the NAGR FAC.[2] *See* NAGR ECF Nos. 64-65.

Under these circumstances, the Court finds that the NAGR FAC—drafted under a now obsolete Second Amendment landscape—does not state a claim under the current post-*Bruen* framework. The NAGR FAC's Second Amendment challenge to the Insurance Requirement will be DISMISSED with LEAVE TO AMEND its allegations consistent with the Supreme Court's decision in *Bruen*.

### iii. State Preemption

The NAGR FAC's Third Claim asserts that the Ordinance's requirements are preempted by California law, primarily as interpreted by *Fiscal v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 895, 909 (2008) ("[I]t can be readily infer[red] . . . that the Legislature intended to

---

[2] In its August 3 Order, the Court inferred a proposed course of conduct from the parties' post-*Bruen* supplemental briefing for the limited purpose of evaluating NAGR Plaintiffs' likelihood of success. Aug. 3 Order 14-16. The Court, however, is unable to do so here on a Rule 12(b)(6) motion to dismiss where the operative pleading makes no reference to the plaintiffs' proposed conduct and provides no basis for such inference.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    occupy the field of residential handgun possession to the exclusion of local governmental

2    entities.") (internal quotation marks omitted).  *See* NAGR FAC ¶¶ 117-119.

3         The NAGR FAC correctly states that the City of San Jose may "make and enforce within

4    its limits all . . . ordinances and regulations not in conflict with general laws."  *Id.* ¶ 117 (quoting

5    Cal. Const. art. XI, § 7).  A local ordinance conflicts with general laws if it "duplicates,

6    contradicts, or enters an area fully occupied by general law, either expressly or by legislative

7    implication."  *O'Connell v. City of Stockton*, 41 Cal. 4th 1061, 1067 (2007) (emphasis added).

8    Here, the NAGR FAC asserts that the Ordinance is entering a field fully occupied by the state

9    Legislature, specifically the "field of regulating residential handgun possession."  NAGR FAC ¶¶

10   118-19.  The City responds, in part, that the Ordinance does not implicate handgun *possession*, nor

11   does it encroach upon any of the discrete areas of firearm regulation that the California Legislature

12   has preempted (*e.g.*, permitting, licensing, and registration).  Reply NAGR 4-5.

13        The Court begins with the observation that the California Legislature has "chosen not to

14   broadly preempt local control of firearms but has targeted certain specific areas for preemption."

15   *Great W. Shows, Inc. v. Cnty. of Los Angeles*, 27 Cal. 4th 853, 864 (2002).  This observation is

16   reinforced by *Fiscal*—NAGR Plaintiffs' central case authority—which acknowledges that "state

17   law tends to concentrate on specific areas, leaving unregulated other substantial areas relating to

18   the control of firearms . . . to permit local governments to tailor firearms legislation to the

19   particular needs of their communities."  158 Cal. App. 4th at 905.  The Court, therefore, is mindful

20   that the relevant "fields" the California Legislature has occupied on firearm regulation are discrete

21   and specific, rather than broad or sweeping.[3]

22        In their opposition, NAGR Plaintiffs primarily argue that the California Legislature has

23

24   [3] The NAGR FAC alleges that "local governments are excluded from *further regulation of guns*,"

25   though NAGR Plaintiffs appear to have pulled back somewhat from this position.  NAGR FAC ¶

26   119 (emphasis added).  In any event, this assertion is plainly at odds with the findings in *Great W.*

27   *Shows* and *Fiscal* that "the Legislature has never expressed an intent to preempt the entire field of

28   firearm regulation to the exclusion of local control."  *Fiscal*, 158 Cal. App. 4th at 905.

United States District Court
Northern District of California

1    preempted the field of "residential handgun possession."  NAGR Opp. 11 (citing *Fiscal*, 158 Cal.

2    App. 4th at 908).  Their emphasis on *Fiscal* and the scope of "residential handgun possession,"

3    however, is ultimately misplaced because the Ordinance does not confer any authority to

4    dispossess a San Jose resident of his or her firearm.  The City has acknowledged that "[t]here is

5    currently no lawful basis to impound firearms under state or federal law" and, therefore, violations

6    of the Ordinance are only punishable by an administrative citation and fine.[4]  Mot. NAGR, at 5-6;

7    *see also* Ordinance §§ 10.32.240; 10.32.245.  To the extent NAGR Plaintiffs argue that

8    "residential handgun possession" should be broadly interpreted to preclude any local regulation

9    that would merely *affect* handgun owners as a group—*i.e.*, by virtue of the sole fact that they

10   possess a firearm—such an interpretation is not supported by *Fiscal*.  *See* 158 Cal. App. 4th at 905

11   ("[T]he Legislature has never expressed an intent to preempt the entire field of firearm regulation

12   to the exclusion of local control."); *see also id.* at 919 ("[C]ourts have tolerated subtle local

13   encroachment into the field of firearms regulation").  Without any means by which handgun

14   possession can be revoked, the Ordinance cannot be interpreted to be entering the field of

15   residential handgun *possession*, as alleged in NAGR FAC ¶ 119.

16          In addition to their reliance on *Fiscal*, NAGR Plaintiffs also argue that the Insurance

17   Requirement and Fee Provision are akin to a permitting or licensing scheme, which is expressly

18   precluded by Penal Code § 25605.  NAGR Opp. 11; *see also* Cal. Gov. Code § 53071 ("It is the

19   intention of the Legislature to occupy the whole field of regulation of the registration or licensing

20   of commercially manufactured firearms. . . .").  This analogy is unpersuasive.  First, the Ordinance

21   expressly exempts "persons who have a license to carry a concealed weapon issued pursuant to

22   California Penal Code § 26150 or § 26155," Ordinance § 10.32.225(B), evidencing the City's

23   intent to avoid encroaching upon the preempted field of licensing or permitting.  Second, unlike

24   _____

25   [4] By contrast, the ordinance that gave rise to the holding in *Fiscal* purported to "ban[] the

26   *possession* of handguns by San Francisco residents," 158 Cal. 4th at 906 (emphasis in

27   original), and was titled "Limiting Handgun *Possession* in the City and County of San Francisco."

28   *Id.* (emphasis added).

permitting or licensing regimes, compliance with the Ordinance does not signify that gun owners must obtain the City's permission or authorization to possess firearms in the first instance; and unlike registration programs, the Ordinance does not entail formalized and specific recordkeeping by the City. *See Great W. Shows, Inc. v. Cnty. of Los Angeles*, 27 Cal. 4th 853, 861 (2002) (noting that "licensing" is understood to signify "permission or authorization" and "registration" to mean "recording formally and exactly") (internal quotation marks omitted).  Accordingly, the Ordinance's compliance requirement is dissimilar to a gun licensing or registration scheme and, therefore, is not preempted by California general laws on firearm licensing or registration.

Although leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), dismissal without leave may be proper "if the amendment would be futile." *California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004).  Here, the question of whether the Ordinance's requirements are preempted by California state law is a pure question of law.  As a result, there are no factual amendments that could salvage NAGR Plaintiffs' state preemption claim.  *See, e.g.*, *N.L.R.B. v. Vista Del Sol Health Servs., Inc.*, 40 F. Supp. 3d 1238, 1255 (C.D. Cal. 2014) ("Because the question of its jurisdiction to hear the case is a pure question of law, the court concludes that allowing [declaratory relief plaintiff] to amend its complaint would be futile, it therefore dismisses the action with prejudice.").  The Court will therefore DISMISS NAGR Plaintiffs' Third Claim for Relief WITHOUT LEAVE TO AMEND.

### iv.    State Tax Requirements

The NAGR FAC's Fourth Claim for Relief asserts violations of article XIII C of the California Constitution, specifically that the Insurance Requirement and Fee Provision constitute taxes that have not been submitted to the electorate for a vote.  NAGR FAC ¶¶ 123-131.

The City moves to dismiss this claim on two grounds.  First, neither the insurance premiums nor the Fee proceeds will be payable to the City and, therefore, they are not taxes; and second, in any event, both the insurance and the Fee would fall under the "specific benefit" exception in the California Constitution.  Mot. NAGR 19-20.  With respect to the first point, the City relies on *Schmeer v. Cnty. of Los Angeles*, 213 Cal. App. 4th 1310, 1328-29 (2013), as

1   modified (Mar. 11, 2013), in which the California Court of Appeal held that the language in article

2   XIII C is "limited to charges payable to, or for the benefit of, a local government."

3       In the absence of contrary California authority or the California Supreme Court's

4   interpretation of article XIII C, the Court finds persuasive the thorough analysis conducted in

5   *Schmeer*.  There, the Court of Appeal had considered the historical foundations behind the voter

6   initiative that gave rise to article XIII C, including two prior initiatives adopted in 1978 and 1992,

7   as well as a 1997 decision from the California Supreme Court.  *See Schmeer*, 213 Cal. App. 4th at

8   1326-23; *see also id.* at 1323-30 (analyzing the voters' interpretation of the ballot initiative and the

9   definition of a "tax").  Although NAGR Plaintiffs attempt to distinguish *Schmeer* on its facts, the

10   Court notes that *Schmeer*'s reasoning and interpretation of article XIII C does not rely or turn on

11   the specific ordinance in that case, which was a paper carryout bag charge.  *See id.* at 1326-30.

12       With *Schmeer* as the touchstone for its article XIII C analysis, the Court finds that NAGR

13   Plaintiffs have all but pled their Fourth Claim out of court.  The NAGR FAC expressly alleges that

14   "the insurance is allocated to for-profit corporations and the fee is allocated to an unnamed

15   nonprofit rather than the City."  NAGR FAC ¶ 130 (emphasis added).  To use the specific

16   language from *Schmeer*, NAGR Plaintiffs have alleged that the Insurance Requirement and Fee

17   are not "payable to, or for the benefit of, a local government."  213 Cal. App. 4th at 1328-29.

18   With this allegation in the NAGR FAC, NAGR Plaintiffs are unable to state an article XIII C

19   taxing claim against the Ordinance's Insurance Requirement and Fee Provision, and their Fourth

20   Claim is thereby subject to dismissal under Rule 12(b)(6).

21       The Court, however, will grant NAGR Plaintiffs leave to amend this claim, as amendment

22   may not be futile.  *See, e.g.*, *Eminence Capital*, 316 F.3d at 1052.  As it remarked at the hearing on

23   the City's motion, the Court finds merit in NAGR Plaintiffs' argument that the City could

24   effectively end-run the California Constitution's voter approval requirements by simply directing

25   residents to pay an organization that is in fact the "City in nonprofit clothing."  NAGR Hearing Tr.

26   6:18-7:8.  This risk would be heightened if the designated Nonprofit will be specially created by

27   the City (as opposed to a currently existing nonprofit organization) or—as the City has argued

28   elsewhere—if the Nonprofit will express government speech and policies.  *See* Def. Reply 6

1    ("[T]he purpose of the Fee is not to support private speech but to fund government speech and

2    policy as set forth in the Ordinance."), HJTA ECF No. 17.  Given these reservations, the Court

3    cannot say that the Fee Provision and the recipient Nonprofit could never violate article XIII C of

4    the California Constitution as interpreted by *Schmeer*.  But, as currently pled, the NAGR FAC

5    fails to state a valid claim on this point.

6       The Court will GRANT the City's motion to dismiss the NAGR FAC's Fourth Claim for

7    Relief with LEAVE TO AMEND.

8              **v.    San Jose City Charter**

9       The NAGR Plaintiffs' Fifth Claim for Relief asserts violations of the San Jose City

10   Charter.  NAGR FAC ¶¶ 135-144; *see also id.*, Ex. A ("City Charter").  The NAGR FAC alleges

11   that the Ordinance (1) violates the City Charter's requirement that all "revenues and receipts" be

12   placed into the City's General Fund by directing the Fee to a third-party Nonprofit (City Charter §

13   1211); (2) infringes upon City Council's budgeting and appropriation powers by prohibiting the

14   City from directing how the Fee is expended (*id.* §§ 1204-1207); and (3) infringes upon the City

15   Manager's executive functions for the same reason (*id.* § 701).

16      On their City Charter claim, as with their taxing claim, NAGR Plaintiffs seem to have pled

17   themselves beyond the scope of most of their cited City Charter provisions.  By alleging that the

18   insurance premiums and Fee are allocated to other entities and not to the City (NAGR FAC ¶

19   130), the NAGR FAC has put those proceeds beyond any reasonable definition of "revenues and

20   receipts" for the purpose of City Charter § 1211 ("All revenues and receipts which are not required

21   . . . to be placed in special funds shall be credited to the General Fund.").  Furthermore, because

22   the NAGR FAC alleges that the Fee and Insurance Requirement "are not for government activity"

23   (NAGR FAC ¶ 42), those provisions do not impact the City Council's budget, which is a

24   "complete financial plan of all City *funds and activities*."  City Charter § 1205 (emphasis added).

25   The City Charter appropriations claim falls for the same reasons, as City Council's appropriation

26   power only pertains to "monies for the operation of each of the *offices, departments and agencies*

27   *of the City*."  *Id.* § 1207 (emphasis added); *see also* Aug. 3 Order 28-29.  Accordingly, the NAGR

28   FAC, as drafted, does not state a violation of City Charter §§ 1204-1207, 1211.

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1    That said, the Court will note its concerns regarding the ripeness of NAGR Plaintiffs'

2    remaining claim for violation of City Charter § 701(d), *i.e.*, that the Ordinance undermines the

3    City Manager's responsibility for the "faithful execution of all laws."  City Charter § 701(d); *see*

4    *also* Aug. 3 Order 29.  The Court cannot fully evaluate this claim until the City Manager develops

5    implementing regulations on the guidance and auditing of the Nonprofit.  *See* Ordinance §

6    10.32.235(A)(2).  And to the extent those regulations result in such governmental oversight that

7    the City would effectively control all but the choice of the Nonprofit's expenditures, that

8    possibility would dovetail with the Court's concerns that the Nonprofit may be used as a vehicle

9    for the City to circumvent the California Constitution's voter-tax requirements.  *See supra* Section

10   III(A)(iv).  Such developments could also affect the Court's analysis regarding whether the

11   Nonprofit's activities could properly be considered as City's activities for the purposes of City

12   Charter's budgeting and appropriations delegation to City Council.  City Charter §§ 1204-1207.

13   In sum, the NAGR FAC has made affirmative allegations that would place the Ordinance's

14   provisions beyond the scope of most of their City Charter claims.  Although those deficiencies do

15   not directly impact the NAGR Plaintiffs' City Charter § 701(d) claim, the Court's evaluation of

16   that claim may not be complete without the City Manager's to-be-determined regulations

17   regarding the Nonprofit.  Given the interwoven nature of NAGR Plaintiffs' various City Charter

18   challenges, the Court will DISMISS the entirety of NAGR Plaintiffs' Fifth Claim for Relief with

19   LEAVE TO AMEND following the promulgation of implementing regulations.

20            **vi.    Declaratory Judgment Relief**

21   Finally, the NAGR FAC asserts a claim under the Declaratory Judgment Act, seeking

22   declaratory relief "to the extent that each of the claims above have not already established a

23   remedy."  NAGR FAC ¶ 148.  The City moved to dismiss this claim as duplicative of NAGR

24   Plaintiffs' other five claims and also renewed its ripeness argument with respect to this claim.

25   Mot. NAGR 23; Reply NAGR 14-15.

26   Addressing the City's ripeness argument first, the Court is satisfied that subject matter

27   jurisdiction exists over the request for declaratory relief, because at minimum there is an actual

28   case or controversy over NAGR Plaintiffs' Second Amendment § 1983 claim against the

1   Insurance Requirement.  First, "when the threat of prosecution under a challenged statute is real, a

2   declaratory judgment on the constitutionality of the statute is appropriate."  10B Charles A.

3   Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2757 (4th ed.).

4   Here, the City has made no indication that it does not intend to enforce the Insurance Requirement

5   against San Jose residents, a population that includes individual Plaintiff Mark Sikes.  *See*

6   *generally* NAGR ECF No. 78; *see also* NAGR Opp. 10.  Second, the City's ripeness arguments—

7   which largely target NAGR Plaintiffs' attacks on the Fee Provision—barely address and certainly

8   do not establish that NAGR Plaintiffs' Second Amendment challenges to the Insurance

9   Requirement are unripe.  *See* Mot. NAGR 7-9; Reply NAGR 2-3.  Accordingly, the Court is

10  satisfied that some "actual case or controversy" exists with respect to NAGR Plaintiffs' request for

11  declaratory relief.

12          As to the City's duplication argument, "[t]he existence of another adequate remedy does

13  not preclude a declaratory judgment that is otherwise appropriate."  Fed. R. Civ. P. 57; *see also* 28

14  U.S.C. § 2201(a) (providing that declaratory relief may be sought "whether or not further relief is

15  or could be sought"); 10B Wright, Miller, & Kane, § 2758 ("[T]he general principle is, as stated in

16  the rule, that the existence of another adequate remedy does not bar a declaratory judgment.").

17  That said, the Court may, in the exercise of its sound discretion, deny declaratory relief where

18  another remedy is "more appropriate."  *Rodriguez v. Bank of Am.*, 2011 WL 5864108, at *4 (N.D.

19  Cal. Nov. 22, 2011); *see also, e.g.*, *Shin v. ICON Found.*, 2021 WL 6117508, at *6 (N.D. Cal.

20  Dec. 27, 2021) (noting that "declaratory relief that is 'needlessly duplicative' of the damages or

21  relief requested under the substantive claims" may be inappropriate).  Here, the NAGR Plaintiffs

22  have requested declaratory judgment to the extent their other claims have not already established a

23  remedy (NAGR FAC ¶ 148), and the Court finds at this early stage that the scope of the requested

24  declaratory relief is not inappropriately duplicative of NAGR Plaintiffs' injunctive relief.  *Cf.*

25  *Steffel v. Thompson*, 415 U.S. 452, 472 (1974) (holding that declaratory relief may be available

26  where injunctive relief is not, such as in the absence of irreparable injury).

27          Accordingly, the Court DENIES the City's motion to dismiss NAGR Plaintiffs' sixth claim

28  for declaratory relief.

United States District Court
Northern District of California

17

### B. HJTA Complaint

The City moves to dismiss all four counts of the HJTA Complaint, all of which only target the Ordinance's Fee Provision. Mot. HJTA 3. The City seeks dismissal pursuant to Rule 12(b)(1) for lack of ripeness and standing, as well as Rule 12(b)(6) for failure to state a claim. For the following reasons, the Court will GRANT the City's motion to dismiss the HJTA Complaint and permit HJTA Plaintiffs LEAVE TO AMEND.

#### i. First Amendment

The HJTA's First Amendment claim contains significant overlap with the NAGR Plaintiffs' First Amendment challenges. *Compare* HJTA Compl. ¶¶ 17-19 *with* NAGR FAC ¶¶ 107-112. As one example, both HJTA and NAGR Plaintiffs rely on *Janus* for the proposition that compelled subsidies violate the First Amendment right not to associate. *See* HJTA Opp. 10-11.

For largely the same reasons discussed above at Section III(A)(i), the Court finds that HJTA Plaintiffs' First Amendment claim against the Fee Provision is not ripe. The Nonprofit and, more critically, its activities have not yet been determined, including whether the Nonprofit would be engaging in any speech or expressive activities in the first instance. *See supra* Section III(A)(i).

HJTA Plaintiffs' arguments to the contrary are inapposite. As an initial matter, their argument that this claim will be ripe by the time of the motion hearing is not well-taken. HJTA Opp. 6-7. "Ripeness is assessed based on the facts as they exist at the present moment," *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1205 (9th Cir. 2008), and, to date, the City has not yet promulgated regulations regarding the Nonprofit's activities. *See, e.g.*, HJTA ECF No. 25. Moreover, with the benefit of hindsight, this argument turned out to be inaccurate, as the City had delayed implementation of the Ordinance pending this Court's order on preliminary injunctive relief. *See* NAGR ECF No. 64, at 7.

HJTA Plaintiffs also appear to argue that, because the HJTA Complaint was originally filed in state court pursuant to California's validation statutes, Cal. Civ. Proc. Code §§ 860, *et seq.*, this alone rebuts the City's justiciability arguments. HJTA Opp. 7; HJTA Compl. ¶ 8. To the extent HJTA Plaintiffs suggest that validation actions are not subject to typical justiciability requirements, this position has been rejected by California courts. *See, e.g.*, *Wilson & Wilson v.*

*City Council of Redwood City*, 191 Cal. App. 4th 1559, 1579-81 (2011) ("To the extent that [plaintiff] appears to argue that validation actions are somehow exempt from ordinary rules of justiciability, it is incorrect.  Like all other actions, validation actions must be justiciable."); *City of Santa Monica v. Stewart*, 126 Cal. App. 4th 43, 66–69 (2005) ("Even validation actions are not exempt from the traditional principle that a justiciable action must satisfy the requirements of both ripeness and standing."), as modified on denial of reh'g (Feb. 28, 2005).

Finally, HJTA Plaintiffs argue that their claims are ripe because they face an "actual and well-founded fear that the challenged statute will be enforced."  HJTA Opp. 8 (quoting *Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013)).  Although this may be a valid basis to argue HJTA Plaintiffs' standing, the fear of enforcement does not respond to the City's prudential ripeness arguments, which target the HJTA Complaint's speculation regarding the Fee Provisions.  Mot. HJTA 8-9; *see also* Aug. 3 Order 9-11 (distinguishing constitutional ripeness from prudential ripeness).  HJTA Plaintiffs take the position that it does not matter "whether the private payee is Moms For Gun Sense or the National Rifle Association" (HJTA Opp. 8); however, it is unclear whether the designated Nonprofit would be engaging in *any* speech or expressive activities, as opposed to simply providing non-expressive services.  *See* HJTA Compl. ¶ 19 ("[T]he Ordinance forces San Jose gun owners . . . to fund [the Nonprofit's] *message*. . . .") (emphasis added); *see also* Aug. 3 Order 9-10.  Without the critical facts regarding the Nonprofit's activities, the Court would be asked to speculate on the unknown activities of a faceless nonprofit to determine if such activities would involve compelled speech.  The Court declines to prematurely adjudicate such "abstract disagreements."  *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

Accordingly, the Court GRANTS the City's motion as to HJTA Plaintiffs' First Amendment claim.  The HJTA Complaint's First Cause of Action will be DISMISSED for lack of ripeness with LEAVE TO AMEND.

### ii.    Unconstitutional Condition (Second Amendment)

The second claim in the HJTA Complaint is titled, "Unconstitutional Condition," asserting that the Fee "has placed a condition on the continued exercise of [federal and state constitutional]

rights." HJTA Compl. ¶¶ 21-23; *see also* HJTA Opp. 14 (citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013)).

The Ordinance as drafted does not "condition" the exercise of Second Amendment rights because there are no means by which a San Jose gun owner may be deprived of his or her firearm. *See* Mot. HJTA 6. As a result, the HJTA Complaint's allegation that "any gun owner who fails to pay the required fee to the designated private organization may be forced to surrender his firearms" is a misinterpretation of the Ordinance. HJTA Compl. ¶ 22; *see also* HJTA Opp. 15 ("And if the price is not paid, the City will take that right away by confiscating the owner's firearms."). The Ordinance expressly states that its impoundment provision may only apply "[to] the extent allowed by law (Ordinance § 10.32.245), and the City openly admits that there is no state or federal law that would presently permit impoundment. Mot. HJTA 6. HJTA Plaintiffs have not provided any authority that the unconstitutional conditions doctrine can apply in the Second Amendment context where possession is not at risk.[5] They instead rely primarily on *Koontz*, a case involving a "special application" of the unconstitutional conditions doctrine in the Fifth Amendment Takings Clause context. 570 U.S. at 604. On these allegations, the HJTA Complaint fails to state a claim for unconstitutional conditioning of Second Amendment rights.

In addition to Second Amendment rights, HJTA Plaintiffs also alleges the unconstitutional conditioning of rights under the California Constitution, specifically the rights of "protecting property, and pursuing and obtaining safety." HJTA Compl. ¶ 21 (citing Cal. Const. art. I, § 1). However, the California Supreme Court has already expressly declined to interpret a right to bear arms into the state constitution's language regarding protection and safety. *Kasler v. Lockyer*, 23 Cal. 4th 472, 481 (2000) ("If plaintiffs are implying that a right to bear arms is one of the rights recognized in the California Constitution's declaration of rights, they are simply wrong. No mention is made in it of a right to bear arms."). To the extent HJTA Plaintiffs attempt to leverage

---

[5] Indeed, the U.S. Supreme Court had tacitly acknowledged that reasonable and non-exorbitant fees are permissible in firearm permit schemes, which much more directly implicate firearm possession. *See Bruen*, 142 S. Ct. at 2138 n.9.

United States District Court
Northern District of California

1    *Bruen* to somehow limit the holding in *Kasler* (*see* Hearing Tr. 21:16-23, HJTA ECF No. 28), the

2    U.S. Supreme Court's interpretation of the Second Amendment is not binding on the California

3    Supreme Court's interpretation of the California Constitution.  *See, e.g.*, *People v. Buza*, 4 Cal. 5th

4    658, 684 (2018) ("[T]he California Constitution is, and has always been, a document of

5    independent force that sets forth rights that are in no way dependent on those guaranteed by the

6    United States Constitution.") (internal citation and quotation marks omitted).  The Court,

7    therefore, declines to adopt an interpretation of California constitutional rights that conflicts with

8    the California Supreme Court's holding in *Kasler*.  23 Cal. 4th at 481.

9           Accordingly, the Court GRANTS the City's motion to dismiss HJTA Plaintiff's

10   unconstitutional conditions claim.  To the extent the claim relies on unconstitutional conditioning

11   of Second Amendment rights, the claim is dismissed WITH LEAVE TO AMEND.  However, to

12   the extent HJTA Plaintiffs assert the unconstitutional condition of a California right, amendment

13   would be futile, as the California Supreme Court has expressed that there is no right to bear arms

14   in the California Constitution.  Accordingly, this claim is dismissed WITHOUT LEAVE TO

15   AMEND insofar as it refers to unconstitutional conditioning of a California right.

16            **iii.    Tax Lacking Voter Approval**

17          HJTA Plaintiffs' third claim asserts a violation of the California Constitution's voter

18   approval requirement for taxes and contains significant similarities to the corresponding claim in

19   the NAGR FAC.  HJTA Compl. ¶¶ 25-31.  The City moves to dismiss this claim on the same two

20   grounds it sought to dismiss the NAGR Plaintiffs' claim: (1) the Fee at issue is not payable to the

21   City; and (2) the Fee falls under the "specific benefit" exception.  Mot. HJTA 18-19.

22          As an initial matter, the Court notes that, although it has dismissed all of HJTA Plaintiffs'

23   claims over which it has original jurisdiction (*i.e.*, HJTA Plaintiffs' first and second claims), the

24   Court nonetheless has discretion to continue exercising supplemental jurisdiction over the

25   remaining state claims under 28 U.S.C. § 1367(a).  Because HJTA Plaintiffs' remaining state

26   claims contain significant overlap with NAGR Plaintiffs' voter-tax claim, the Court finds that

27   judicial economy favors exercising supplemental jurisdiction over HJTA Plaintiffs' remaining

28   claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (noting that

United States District Court
Northern District of California

United States District Court
Northern District of California

1   supplemental jurisdiction is a "doctrine of discretion" rooted in "considerations of judicial

2   economy, convenience and fairness to litigants").  However, to the extent that HJTA Plaintiffs

3   continue to couch its claims as a state validation action, the Court is likely to decline supplemental

4   jurisdiction over that uniquely California law procedure.

5        Turning to the merits of the voter-tax claim, the HJTA Complaint contains very limited

6   factual allegations in support.  The only fact alleged is that the City of San Jose imposed the Fee;

7   the remaining allegations are largely legal conclusions couched in the language of article XIII C.

8   *See* HJTA Compl. ¶¶ 25-30.  Based on just the quantum of facts asserted, the HJTA Complaint

9   falls short of the federal standard required by *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A

10  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

11  the reasonable inference that the defendant is liable for the misconduct alleged.").  Although

12  HJTA Plaintiffs speculate in their opposition that the "City plans to form its own nonprofit

13  organization, run by hand-picked people it will install, to carry out an agenda that the City codified

14  in its ordinance" (HJTA Opp. 16), none of these facts are alleged in their operative pleading.

15       Furthermore, the most relevant interpretation of article XIII C is *Schmeer*, which held that,

16  to be a tax under the California Constitution, a charge must be "payable to, or for the benefit of, a

17  local government."  213 Cal. App. 4th at 1329; *see also supra* Section III(A)(iv).  As the HJTA

18  Complaint alleges, the Fee is to be paid to a Designated Nonprofit Organization instead of to the

19  local government.  HJTA Compl. ¶ 11.  This allegation on its face would seem to place the Fee

20  beyond the scope of article XIII C per *Schmeer*, especially in the absence of factual allegations to

21  the contrary.

22       Because the HJTA Complaint has failed to plead facts sufficient to state a claim under

23  federal standards, the Court will GRANT the City's motion to dismiss HJTA Plaintiffs' third

24  claim regarding a tax lacking voter approval.  As the Court discussed *supra* at Section III(A)(iv),

25  the Court cannot determine that leave to amend would be futile.  Accordingly, this claim will be

26  DISMISSED WITH LEAVE TO AMEND.

27       **iv.    Unconstitutional Delegation of Taxing Power**

28       HJTA Plaintiffs' final claim asserts that the City unconstitutionally delegated its municipal

22

1    power to collect taxes and appropriate tax revenues by requiring the Fee be paid to the Nonprofit

2    designated by the City Manager.  HJTA Compl. ¶¶ 33-35.  HJTA Plaintiffs acknowledge,

3    however, that this claim could only prevail if their third claim—whether the Fee constitutes a tax

4    lacking voter approval—also prevails.  HJTA Opp. 17-18.

5           The relevant portion of the California Constitution is article XIII, section 31, which simply

6    states in full, "The power to tax may not be surrendered or suspended by grant or contract."  Cal.

7    Const., art. XIII, § 31.  Here, the HJTA Complaint contains no allegations that the City has entered

8    into any grant or contract with the Nonprofit to collect the Fee revenues.  *See* HJTA Compl. ¶¶ 35-

9    37.  HJTA Plaintiffs' opposition also admits that "no specific contract or grant exists yet" and that

10   "Plaintiffs cannot be faulted for not specifically identifying something that doesn't yet exist."

11   HJTA Opp. 19.  These acknowledgments indicate to the Court that HJTA Plaintiffs'

12   unconstitutional delegation claim is unripe, which is an issue of subject matter jurisdiction that the

13   Court's must resolve *sua sponte* before reaching the merits of the claim.  *See, e.g.*, *Ruhrgas AG*,

14   526 U.S. at 577 ("[J]urisdiction generally must precede merits in dispositional order.").

15          A claim is not ripe if the issues are not fit for judicial decision and there would not be any

16   hardship to the parties for withholding court consideration.  *See Bishop Paiute*, 863 F.3d at 1153-

17   54.  Here, because section 31 includes the specific language of "surrendered or suspended *by grant*

18   *or contract*," the absence of any grant or contract would significantly hamper the Court's ability to

19   evaluate whether the power to tax has been "surrendered or suspended."  This is precisely the type

20   of "abstract disagreements" and "premature adjudication" that courts are often advised to avoid.

21   *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).  Furthermore,

22   there would be no hardship to HJTA Plaintiffs for withholding consideration, as the Fee would not

23   impose an "immediate and significant change in plaintiffs' conduct of their affairs with serious

24   penalties attached to noncompliance."  *Wolfson*, 616 F.3d at 1060; *see also* Aug. 3 Order 11.

25          Because there is no current grant or contract that the Court can evaluate to determine if the

26   City has "surrendered or suspended" its power to tax, the Court finds that HJTA Plaintiffs' fourth

27   claim for unconstitutional delegation is not ripe for adjudication.  Accordingly, the Court will

28   GRANT the City's motion to dismiss this claim with LEAVE TO AMEND.

United States District Court
Northern District of California

IV.   **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART, as follows:

1.   Defendants' motion to dismiss Claims 1, 2, 4, and 5 of the NAGR FAC is GRANTED, and the claims are DISMISSED with LEAVE TO AMEND;

2.   Defendants' motion to dismiss Claim 3 of the NAGR FAC is GRANTED, and the claim is DISMISSED WITHOUT LEAVE TO AMEND;

3.   Defendants' motion to dismiss Claim 6 of the NAGR FAC is DENIED;

4.   Defendants' motion to dismiss Claims 1, 3, and 4 of the HJTA Complaint is GRANTED, and the claims are DISMISSED with LEAVE TO AMEND;

5.   Defendants' motion to dismiss Claim 2 of the HJTA Complaint is GRANTED, and the claim is DISMISSED with LEAVE TO AMEND to the extent it relies on Second Amendment rights and DISMISSED WITHOUT LEAVE TO AMEND to the extent it relies on California Constitution rights.

6.   To the extent any of HJTA Plaintiffs' claims are denominated as validation actions pursuant to Cal. Civ. Proc. Code §§ 860, *et seq.*, in an amended complaint, the Court may decline to exercise supplemental jurisdiction over those claims.

NAGR Plaintiffs and HJTA Plaintiffs shall file an amended consolidated complaint by February 2, 2023, and shall set forth whether each claim is brought by only certain plaintiffs or all plaintiffs.  The lengthy time for amendment is granted so that Plaintiffs' claims may become ripe upon the City's enactment of further implementing regulations as contemplated by the Ordinance's express terms.

**IT IS SO ORDERED.**

Dated:  September 30, 2022

BETH LABSON FREEMAN
United States District Judge