JONATHAN M. COUPAL, State Bar No. 107815
TIMOTHY A. BITTLE, State Bar No. 112300
LAURA E. DOUGHERTY, State Bar No. 255855
Howard Jarvis Taxpayers Foundation
1201 K Street, Suite 1030
Sacramento, CA 95814
(916) 444-9950

Attorneys for Plaintiffs
HOWARD JARVIS TAXPAYERS ASSN., et al.

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL ASSN. FOR GUN RIGHTS, *et al.*,<br><br>    Plaintiffs<br><br>  v.<br><br>CITY OF SAN JOSE, *et al.*,<br><br>    Defendants<br>_____ | No. 22-cv-00501-BLF |
| HOWARD JARVIS TAXPAYERS ASSN., *et al.*,<br><br>    Plaintiffs<br><br>  v.<br><br>CITY OF SAN JOSE,<br><br>    Defendant | No. 22-cv-02365-BLF<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 6, 2023<br>Time: 9:00 a.m.<br>Judge: Hon. Beth Labson Freeman<br>Dept: San Jose Courtroom 3 |

TO DEFENDANT CITY OF SAN JOSE AND ITS ATTORNEYS:

PLEASE TAKE NOTICE that on Thursday, April 6, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the San Jose Division of the District Court for the Northern District of California located at 280 South 1st Street, San

Jose, California 95113, plaintiffs Howard Jarvis Taxpayers Association, *et al.*, will, and hereby do, move the Court for an order pursuant to 28 U.S.C. § 1447 remanding this action to the Superior Court of California for the County of Santa Clara.

Plaintiffs move for remand on the grounds that: (1) District Court Judge Beth Labson Freeman has indicated that the Court lacks jurisdiction over plaintiffs' state law validation action; and (2) plaintiffs' validation action is largely predicated on the theory that defendant's Gun Harm Reduction Fee is a tax that is invalid under the California Constitution for lack of voter approval. Under 28 U.S.C. § 1341, the District Court is powerless to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Plaintiffs' motion is based on this notice and motion, the memorandum of points and authorities, the reply to defendant's opposition, the argument of counsel at the hearing, and any other pleadings, evidence or argument that may be presented to or considered by the Court.

Respectfully submitted,

JONATHAN M. COUPAL
TIMOTHY A. BITTLE
LAURA E. DOUGHERTY

_____
TIMOTHY A. BITTLE
Attorneys for Plaintiffs

**POINTS AND AUTHORITIES**

INTRODUCTION

Plaintiffs seek an order remanding this case to state court. Removal to federal court was not necessarily improper (which is why plaintiffs do not request attorney fees or costs under 28 U.S.C. §1447(c)), but considering the nature of plaintiffs' action and the absence of any comparable federal procedure, the fact that state constitutional theories – some of them novel – dominate plaintiffs' complaint, and the fact that plaintiffs' prayer seeks the invalidation of a tax under state law, the California courts are better equipped to handle this case.

ARGUMENT

I

THIS IS A REVERSE-VALIDATION ACTION FOR WHICH
THERE IS NO COMPARABLE FEDERAL PROCEDURE

Plaintiffs in this case are taxpayer organizations. One of the primary theories of their complaint is that the annual "Gun Harm Reduction Fee" imposed by defendant City of San Jose ("City") is really a tax under California's definition of a "tax" in article XIII C, section 1(e) of the California Constitution, and that the City's tax is invalid for lack of voter approval under article XIII C, section 2(d). (Complaint at 6:15.)

Article XIII C, section 1(e) defines a "tax" as "any levy, charge, or exaction of any kind *imposed* by a local government."[1] There are seven enumerated exceptions, none of which fit the City's "fee." It is indisputable that the City itself is "imposing" the fee since the fee is a creation of the City's ordinance, payment of the fee is mandated by the City's ordinance, and nonpayment of the fee is punished by the City pursuant to its ordinance. (San Jose Municipal Code ("Muni Code") §§ 10.32.215, 10.32.230(B), 10.32.240, 10.32.245.) The City readily admitted this point in its Reply in support of its motion to dismiss plaintiffs' complaint, when it said, "the imposition of the Fee and the

---

[1] Unless noted otherwise, all emphasis is added.

Fee amount are both controlled entirely by the City Council." (Reply at PDF 18:14.) There being no applicable exception, the fee is therefore a tax.

Every local tax in California is either a "general tax" or a "special tax." (Cal. Const., art. XIII C, § 2(a).) A "special tax" is "any tax imposed for specific purposes." (*Id.*, art. XIII C, § 1(d).) The annual Gun Harm Reduction Fee is a special tax because it is imposed for the specific purpose of raising revenue to fund public programs specified in the City's ordinance, to be administered by a nonprofit organization formed or designated by the City. (SJ Muni Code § 10.32.220.)

Article XIII C, section 2(d) provides, "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote." The City's Gun Harm Reduction Fee is invalid because it was never even submitted to the electorate, much less approved by a two-thirds vote.

In *Davis v. Mariposa County Board of Supervisors*, plaintiffs challenged an annual fire "assessment" approved by a majority, but not two-thirds of the voters. "[Plaintiffs] claimed the supposed assessment was actually a special tax, meaning it had to be approved by two-thirds of the electorate." (*Davis v. Mariposa Co. Bd. of Supervisors* (2019) 38 Cal.App.5th 1048, 1051.) The court dismissed the action as untimely in part because, under plaintiffs' own theory that the assessment was really a special tax (albeit not two-thirds approved), any challenge had to be brought as a reverse-validation action under California Code of Civil Procedure sections 860 *et seq.* (*Davis*, 38 Cal.App.5th at 1059-61.)

Accordingly, plaintiffs here fashioned their challenge to San Jose's Gun Harm Reduction Fee as a reverse-validation action. Per California's validation statute, they named as defendants not only the City, but also "ALL PERSONS INTERESTED in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee." (Complaint at 1.) By ex parte application in state court they received court approval of the wording of a summons directed to "all persons," and approval to publish

4

that summons in the San Jose Mercury News.  (See Order Approving Publication of Summons, issued by Superior Court Judge Socrates Manoukian, filed March 25, 2022, Bittle Dec., Exh. 2.)  Plaintiffs published the summons once a week for three consecutive weeks as required by Code of Civil Procedure section 861 and Government Code section 6063 (See Proof of Published Service of Summons, filed April 14, 2022, Bittle Dec., Exh. 3.)

      Under California's validation statute, publication of the summons confers on the superior court jurisdiction over all persons.  Any interested person may respond to the published summons by filing an answer to the complaint before the deadline set by the court.  (Code of Civ. Proc. § 862.)

      In this case, an interested person did respond to the summons.  A group called the Golden State Second Amendment Council ("GS2AC") filed a timely answer in state court.  (See Santa Clara County Superior Court Public Portal for Case No. 22CV395596 at https://portal.scscourt.org/case/NDU2MjUwNg==.)

      Under state law, GS2AC has the same right to participate in this litigation as any other party.  (Code of Civ. Proc. § 862.)  During this Court's hearing on the City's motion to dismiss plaintiffs' complaint, counsel for plaintiff asked how the Federal District Court could accommodate GS2AC's participation.  Judge Beth Labson Freeman answered:

> That's an interesting issue, Mr. Bittle.  I had been thinking that I may decline supplemental jurisdiction over the validation action itself, because it is such a unique process under state law that the state courts are better suited to deal with it. ... The federal court is simply not equipped to, and nor should we be handling and trying to understand these uniquely state procedures."  (Transcript of Proceedings, Aug. 18, 2022, at 23:1-11, Bittle Dec., Exh. 1.)

The Judge then reflected, "I don't know what remains if I decline the validation action." To which Mr. Bittle responded, "[T]he bulk of our complaint was pled under state law, and perhaps if we dismiss the federal First Amendment claim, all the rest of our case could go back to state court, if your Honor gave us the opportunity to do that." The Judge approved that approach: "I actually think, Mr. Bittle, that that makes sense. Validation actions can be of value to the public agency as well; in fact, that's why the law was created, so that a public agency could validate its action before it changed its position in reliance. The reverse validation is well understood under state law, and that's what you have taken advantage of. ... I want you to think about that, because I am not inclined to accept supplemental jurisdiction on the validation action." (Transcript at 23:12 - 24:7, Bittle Dec., Exh. 1.)

The Judge's inclination to decline jurisdiction of plaintiffs' reverse-validation action is legally sound. Federal courts "narrowly [construe removal statutes] in light of our constitutional role as limited tribunals." (*Pritchett v. Office Depot, Inc.* (10th Cir. 2005) 420 F.3d 1090, 1095.) "All doubts are to be resolved *against removal*" (*Fajen v. Found. Reserve Ins. Co.* (10th Cir. 1982) 683 F.2d 331, 333), "ambiguities should be resolved *in favor of remand*" (*Bonadeo v. Lujan*, 2009 U.S. Dist. LEXIS 45672, 2009 WL 1324119 at *4).

Plaintiffs' reverse-validation action alleges five claims, four of which are grounded on state law: (1) a claim that the gun harm reduction "fee" is really a "tax" as defined in the state constitution, lacking the voter approval required by the state constitution; (2) a claim under the state constitution that the City is impermissibly delegating taxing powers to a private entity; (3) a claim under the state law doctrine of unconstitutional conditions; (4) a compelled speech/association claim based on article I, sections 2 and 3 of the state constitution; and (5) a federal compelled speech/association claim.

Plaintiffs' reverse-validation action can be visualized as a ballot containing five races – four for state offices and one for a federal office. By timely answering plaintiffs' reverse-validation action, GS2AC "registered" to vote and is entitled to vote in all five contests. Although counsel for HJTA suggested that he could dismiss HJTA 's First Amendment claim, he spoke in haste without considering the rights of GS2AC, who did not have an attorney in the courtroom to represent its interests. GS2AC's rights would not be protected if a claim contained in the complaint were dismissed without GS2AC's consent. Nor would its rights be protected if this Court remanded only the state law claims and retained jurisdiction of the single First Amendment claim since, as this Court indicated at the hearing, there is no federal procedure for accommodating GS2AC's participation. GS2AC's rights can be protected only by remanding plaintiffs' whole case with the First Amendment claim intact.

It will not prejudice the City to remand plaintiffs' case with the one federal claim intact, for several reasons. First, the federal removal statute was not designed to protect the City. Its purpose is to protect defendants from potential prejudice against them by state courts. (*Ehrlich v. Oxford Ins. Co.* (N.D. Cal. 1988) 700 F.Supp. 495, 497.) Here, the City is the defendant only because, instead of bringing its own validation action under Code of Civil Procedure section 860, it did nothing to validate its fee – foisting on those whose constitutional rights are at risk the burden of defending their rights through a section 863 reverse-validation action. The City does not contend that California's state courts would be prejudiced against it.

Second, California's state courts are perfectly capable of adjudicating a federal First Amendment claim, often do so, and in fact rely heavily (although not exclusively) on federal First Amendment jurisprudence to interpret California's own free speech and association clauses. (See, e.g., *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 487-490; *Beeman v. Anthem Prescription Mgmt., LLC* (2013) 58 Cal.4th 329, 357-361; *Kasky v. Nike, Inc.* (2002) 27 Cal. 4th 939, 952-960.)

Third, it would actually benefit the City to remand plaintiffs' whole case including the one federal claim. For if this Court chooses to decline supplemental jurisdiction over the state law claims as it seems prepared to do, but asserts jurisdiction over the one federal claim, then the City (in fact, both parties) will be forced to spend duplicative time and money fighting HJTA's case on two fronts, because HJTA does not want to waive its First Amendment claim, nor would it be fair to GS2AC for HJTA to do so. (*Carnegie-Mellon Univ. v. Cohill* (1988) 484 U.S. 343, 351 ["When ... a removed case involv[es] pendent claims, the court has discretion to remand the case to state court. ... In determining whether a remand is appropriate, the court should proceed in the manner that will best accommodate the values of economy, convenience, fairness, and comity."])

Because plaintiffs' entire complaint is a reverse-validation action for which no comparable federal procedure exists, because another interested party answered the validation complaint and is entitled to – but in federal court is unable to – participate as a party, and because it would not prejudice the City, plaintiffs' motion for remand should be granted. The motion should be granted for the additional reason that plaintiffs' complaint prays for the invalidation of a tax, and under 28 U.S.C. § 1341, the District Court is powerless to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

II

THIS ACTION CHALLENGES THE CITY'S "FEE"
AS AN INVALID TAX UNDER CALIFORNIA LAW,
<u>A HARM FOR WHICH THERE IS NO FEDERAL REMEDY</u>

28 U.S. Code section 1341 provides, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

Congress added section 1341 "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." (*Franchise Tax Bd. v. Alcan Aluminium Ltd.* (1990) 493 U.S. 331, 338.)

Although section 1341 uses the word "tax," it has been interpreted to include levies labeled as "fees" when, as here, the payer does not necessarily receive goods, services, or regulatory supervision in exchange for the fee. (See, e.g., *A Bonding Co. v. Sunnuck* (5th Cir. 1980) 629 F.2d 1127, 1133 ["Section 1341 has been construed to be much broader than its words initially suggest."]; *City of Chattanooga v. BellSouth Telecomms.* (E.D. Tenn. 1998) 1 F.Supp.2d 809, 812-13 ["The City's labeling of the ... franchise fees as 'rent' is not determinative of whether those fees are a tax for purposes of applying 28 U.S.C. § 1341."].)

Rather than defer to the self-serving label of an exaction, federal courts ask whether its purpose is to generate revenue (the hallmark of a tax) or to recover the cost of regulating a business or serving customers (the hallmark of a fee).  For example, in *Hager v. City of W. Peoria* (7th Cir. 1996) 84 F.3d 865, a truck fee, based on vehicle weight to recover the cost of road wear, was not a tax for purposes of section 1341 because it did not exceed a reasonable estimate of "the cost imposed by the person required to pay the fee."  (*Id.* at 871-72.)

Here, San Jose's Gun Harm Reduction Fee is not imposed on a graduated scale or based on a reasonable estimate of some public harm attributable to the person required to pay the fee (*id.*), but rather is a uniform amount imposed indiscriminately on every lawfully registered gun owner regardless of his or her age, background, training, safety record, gun type, storage method, etc.  The fee generates revenue to fund programs that the payer is not required to utilize and may not choose to utilize, which programs benefit non-gun owners as much as gun owners.  Under the City's ordinance, expenditures of fee revenue "may include, but are not necessarily limited to the following: (1) Suicide prevention services or programs; (2) Violence reduction or gender

based violence services or programs; (3) Addiction intervention and substance abuse treatment; (4) Mental health services related to gun violence; or (5) Firearms safety education or training." (San Jose Muni. Code § 10.32.220(A).)

The City argues that its fee cannot be a tax under state law because it must be paid to the City's designated nonprofit, not the City itself, citing *Schmeer v. County of Los Angeles* (2013) 213 Cal.App.4th 1310. *Schmeer* is easily distinguishable on its facts since its fee was incurred voluntarily by shoppers who requested and received a grocery bag worth the ten cents they were required to pay. (*Schmeer*, 213 Cal.App.4th at 1315.) Regardless of whether *Schmeer* applies under state law, however, the federal courts apply their own test and precedents.

Applying its own test and precedents, the Second Circuit found that a "stewardship payment" was a tax in *Association for Accessible Medicines. v. James* (2d Cir. 2020) 974 F.3d 216, 220. In that case, a New York law required opioid producers and distributers to make an annual "stewardship payment" to the State's Opioid Stewardship Fund. Monies in the Fund were made available to support programs operated by, *inter alia*, private agencies "certified, authorized, approved or otherwise funded by the New York state office of alcoholism and substance abuse services to provide opioid treatment, recovery and prevention and education services." (*Assn. for Accessible Meds. v. James*, 974 F.3d at 220; N.Y. State Fin. Law § 97-aaaaa.)

Although the New York fee was imposed on members of a regulated community (pharmaceutical companies) and some of the revenue ultimately went to private agencies, the Court found that "New York's allocation of revenues from the payment [] strongly suggests that the stewardship payment requirement serves general revenue-raising purposes *without a regulatory or punitive aim*." (*Assn. for Accessible Meds.*, 974 F.3d at 223.) Because the programs supported by the fee were not for the narrow benefit of the pharmaceutical companies paying the fee, but were for opioid education, prevention, treatment and recovery services, the Court found that the

expenditures "undoubtedly provide a 'general benefit' to New York residents 'of a sort often financed by a general tax.'" (*Id.*)

In the same way here, San Jose's Gun Harm Reduction Fee will be collected from every gun owner "without a regulatory or punitive aim" to support educational programs and services such as suicide prevention, gender based violence prevention, substance abuse treatment; and mental health services for victims of gun violence, all of which are not for the narrow benefit of the gun owners paying the fee, but which instead are available to the general public and provide benefits to the general public. Accordingly, the City's fee on gun owners should be deemed a tax under federal law for purposes of applying the tax injunction act, 28 U.S. Code section 1341.

## CONCLUSION

Because this case focuses primarily on state law, is a reverse-validation action for which there is no comparable federal procedure, and challenges the city's fee as an invalid tax under the California Constitution, a harm for which there is no federal remedy, the state court is better equipped to resolve this controversy and the case therefore should be remanded to state court.

DATED: January 10, 2023.          Respectfully submitted,

JONATHAN M. COUPAL
TIMOTHY A. BITTLE
LAURA E. DOUGHERTY

_/s/ Tim Bittle_____
TIMOTHY A. BITTLE
Attorneys for Plaintiffs
HOWARD JARVIS TAXPAYERS ASSN., et al.

11