JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Defendants City of San Jose, et al.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.**, a non-profit corporation, and **MARK SIKES**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, a public entity, **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL**,<br><br>Defendants. | Case No. 5:22-cv-00501-BLF<br><br>**DEFENDANTS' OPPOSITION TO THE HJTA PLAINTIFFS' MOTION TO REMAND**<br><br>Date:   April 6, 2023<br>Time:   9:00 a.m.<br>Judge:  Hon. Beth Labson Freeman<br>Dept.:  San Jose Courthouse, Crtrm 3 (5th Floor) |
| **HOWARD JARVIS TAXPAYERS ASSOCIATION**, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, James Barry, and George Arrington,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, and all persons interested in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee,<br><br>Defendants. | Case No. 5:22-cv-02365-BLF |

Defendants' Opposition to the HJTA Plaintiffs' Motion to Remand
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF

# TABLE OF CONTENTS

Page

I. STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II. INTRODUCTION ............................................................................................................ 1

III. LEGAL STANDARDS .................................................................................................... 2

    A. Removal Jurisdiction ........................................................................................... 2

    B. Federal Question Jurisdiction .............................................................................. 2

    C. Supplemental Jurisdiction .................................................................................... 3

IV. ARGUMENT .................................................................................................................... 3

    A. The HJTA plaintiffs presently have no claims to remand. ................................. 4

    B. Even if HJTA had any live claims to remand, their arguments lack merit. ................. 5

        1. HJTA styling their claims as a validation action does not deprive this Court of its subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. ...... 5

        2. HJTA's argument under the Tax Injunction Act is both wrong on the merits (because the Fee is not a "tax" under the Act) and unripe for review. ............ 10

V. CONCLUSION ............................................................................................................... 15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*A Bonding Co. v. Sunnuck*,
    629 F.2d 1127 (5th Cir. 1980) .................................................................................................. 14

*Am. Trucking Ass'ns, Inc. v. Alviti*,
    944 F.3d 45 (1st Cir. 2019) ................................................................................................ 10, 13

*Anderson v. Aon Corp.*,
    614 F.3d 361 (7th Cir. 2010) ..................................................................................................... 3

*Ariz. v. Atchison, T. & S. F. R. Co.*,
    656 F.2d 398 (9th Cir. 1981) ..................................................................................................... 8

*Ass'n for Accessible Medicines v. James*,
    974 F.3d 216 (2d Cir. 2020) ................................................................................................... 13

*Bidart Bros. v. California Apple Comm'n*,
    73 F.3d 925 (9th Cir. 1996) ............................................................................................. *passim*

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ............................................................................................................. 6, 7

*Charleston v. Nevada*,
    830 Fed. App'x 948 (9th Cir. 2020) .......................................................................................... 8

*City of Chattanooga v. BellSouth Telecomms.*,
    1 F.Supp.2d 809 (E.D. Tenn. 1998) ........................................................................................ 14

*Collins Holding Corp. v. Jasper County*,
    123 F.3d 797 (4th Cir. 1997) ............................................................................................ 12, 14

*Davis v. Mariposa Co. Bd. of Supervisors*,
    38 Cal.App.5th 1048 (2019) ..................................................................................................... 9

*Emrick v. Fujitec Am., Inc.*,
    2005 WL 162235 (N.D. Cal. Jan. 24, 2005) ............................................................................. 3

*Gov't Suppliers Consol. Servs., Inc. v. Bayh*,
    975 F.2d 1267 (7th Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993) ....................................... 11

*Hager v. City of W. Peoria*,
    84 F.3d 865 (7th Cir. 1996) ..................................................................................................... 13

*In re Head Money Cases*,
    112 U.S. 580 (1884) ................................................................................................................ 12

Defendants' Opposition to the HJTA Plaintiffs' Motion to Remand
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF                                                                                                    ii

*Henderson v. Stalder*,
    281 F.Supp.2d 866 (E.D. La. 2003) .......................................................................................... 11

*Hexom v. Or. Dep't of Transp.*,
    177 F.3d 1134 (9th Cir. 1999) ................................................................................... 10, 12, 13

*Hill v. Kemp*,
    478 F.3d 1236 (10th Cir. 2007) (Gorsuch, J.) ......................................................................... 11

*Holden v. Haynes*,
    2014 WL 2094344 (E.D. Wash. May 20, 2014) ....................................................................... 3

*Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*,
    346 F.3d 1190 (9th Cir. 2003) ............................................................................................. 2, 3

*McLeod v. Columbia County, Georgia*,
    254 F.Supp.2d 1340 (S.D. Ga. 2003) ............................................................................... 10, 14

*Obenchain v. Reg'l Transp. Comm'n of S. Nevada*,
    2014 WL 3696306 (D. Nev. July 23, 2014) .............................................................................. 6

*Qwest Corp. v. City of Surprise*,
    434 F.3d 1176 (9th Cir. 2006) .................................................................................................. 11

*San Juan Cellular Tel. Co. v. Public Serv. Comm'n*,
    967 F.2d 683 (1st Cir. 1992) (Breyer, J.) ................................................................................ 13

*Sauk-Suiattle Indian Tribe v. City of Seattle*,
    --- F.4th ----, 2022 WL 17999429 (9th Cir. 2022) (per curiam) .......................................... 2, 7

*Schmeer v. County of Los Angeles*,
    213 Cal.App.4th 1310 (2013) .................................................................................................. 14

*Smith v. Mylan Inc.*,
    761 F.3d 1042 (9th Cir. 2014) ............................................................................................. 2, 3

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    159 F.3d 1209 (9th Cir. 1998) .................................................................................................. 3

*SurvJustice Inc. v. DeVos*,
    2019 WL 1434141 (N.D. Cal. Mar. 29, 2019) ......................................................................... 8

*Trailer Marine Transp. Corp. v. Vazquez*,
    977 F.2d 1 (1st Cir. 1992) ........................................................................................ 10, 11, 13

*United States v. City of Huntington*,
    999 F.2d 71 (4th Cir. 1993) ..................................................................................................... 12

*Wright v. Riveland*,
    219 F.3d 905 (9th Cir. 2000) ............................................................................................ 10, 11

**Statutes**

U.S. Code

    28 U.S.C. § 1331 ................................................................................................ 2, 5, 6, 7, 9

    28 U.S.C. § 1343 ........................................................................................................ 5, 7, 9

    28 U.S.C. § 1341 ..................................................................................................... 1, 4, 9, 10

    28 U.S.C. § 1343 .................................................................................................................. 6

    28 U.S.C. § 1367(a) ......................................................................................................... 3, 7

    28 U.S.C. § 1367(c) ............................................................................................... 3, 5, 7, 8, 9

    28 U.S.C. § 1441 .................................................................................................................. 2

    28 U.S.C. § 1447 ........................................................................................................... 2, 3, 8

**Ordinances**

San José Gun Harm Reduction Ordinance

    § 10.32.215 ................................................................................................................. 12, 13

    § 10.32.215 ........................................................................................................................ 11

    §10.32.225 ......................................................................................................................... 11

## I. STATEMENT OF ISSUES TO BE DECIDED

In March 2022, the plaintiffs in the above-captioned *Howard Jarvis Taxpayers Association* action ("HJTA plaintiffs" or "HJTA") filed a complaint in state court against the City of San Jose ("City") challenging a new $25 Gun Harm Reduction Fee ("Fee") under federal and state law. The City timely removed the action to this Court and filed a motion to dismiss. In September 2022, the Court granted that motion, dismissed *all* the HJTA plaintiffs' claims (most with leave to amend), and ordered HJTA and the other plaintiffs in this consolidation action to file an amended consolidated complaint by February 2, 2023. ECF No. 81 at 24. On January 10, 2023, before filing an amended complaint, the HJTA plaintiffs filed a Motion to Remand ("Motion") all their dismissed claims for lack of federal subject matter jurisdiction, including under the Tax Injunction Act which bars federal courts from issuing declaratory or injunctive relief regarding "any tax under State law." 28 U.S.C. § 1341.

The two primary issues to be decided in resolving the Motion are: (1) Should the Motion be denied as premature because HJTA currently has no live claims to remand? (2) To the extent the Motion is not premature and is ripe for decision before the Fee is fully implemented, is the $25 Fee a "tax under State law" within the meaning of 28 U.S.C. § 1341?

## II. INTRODUCTION

Many motions are difficult; this one is not. A few months ago, the HJTA plaintiffs' claims were all dismissed, mostly with leave to amend. They have not subsequently filed an amended complaint. Despite having no live claims before this Court, the HJTA plaintiffs have filed a Motion to remand all their "claims" back to state court.[1] In the absence of an operative complaint, the present Motion asks the parties and the Court to argue and decide what aspects (if any) of this important constitutional litigation should be severed and remanded, based on speculation about how HJTA is likely re-plead its claims in the future. Even if engaging in such speculation were legally permissible (it is not), there is

---

[1] For simplicity, rather than continually referring to the HJTA plaintiffs' "dismissed claims," or their "claims" in scare quotes, this Opposition brief generally refers to them simply as HJTA's "claims" without scare quotes. In doing so, the City does not concede that the HJTA plaintiffs presently have any claims before the Court that could be the proper subject of a remand order.

no good reason for the parties to make assumptions about how HJTA might re-plead its claims instead of HJTA simply filing an amended complaint, as ordered by the Court. Only then will the Court be able to issue a non-advisory opinion on its subject matter jurisdiction over the HJTA plaintiffs' amended claims. The Motion should be denied.

### III. LEGAL STANDARDS

#### A. Removal Jurisdiction

Civil actions brought in state court can be removed to federal district court if the latter has "original jurisdiction" over the action. 28 U.S.C. § 1441(a). The two general grounds for remand are a procedural defect in removal, and lack of subject matter jurisdiction. *Id.* § 1447(c). Remands for procedural defects can only occur if a party moves for remand "within 30 days after the filing of the notice of removal." *Id.*; *accord Smith v. Mylan Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014) ("timely motion to remand" is required to "remand for defects other than lack of subject matter jurisdiction"); *Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*, 346 F.3d 1190, 1193 (9th Cir. 2003). On the other hand, no such time limitation applies to remands for lack of subject matter jurisdiction: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). If a removed action includes both claims within the court's federal question jurisdiction under § 1331 and state-law claims outside the court's supplemental jurisdiction, the district court "shall sever" the latter claims from the action and remand them to state court. *Id.* § 1441(c).

#### B. Federal Question Jurisdiction

A federal district court has original jurisdiction over all claims "arising under" federal law. 28 U.S.C. § 1331. Such jurisdiction exists both when federal law supplies the cause of action, and when state law supplies the cause the action but "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Sauk-Suiattle Indian Tribe v. City of Seattle*, --- F.4th ----, 2022 WL 17999429, at *4 (9th Cir. 2022) (per curiam). "A substantial federal question exists when the question is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* (internal quotation marks omitted). Whether the court has original jurisdiction over an action is

determined as of "the date the suit is removed." *Anderson v. Aon Corp.*, 614 F.3d 361, 364 (7th Cir. 2010); *accord Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998); *Emrick v. Fujitec Am., Inc.*, 2005 WL 162235, at *2 (N.D. Cal. Jan. 24, 2005).

### C.  Supplemental Jurisdiction

If a state-law claim does not raise a substantial federal question, a district court may exercise supplemental jurisdiction over that claim if it is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the exercise the supplemental jurisdiction is ultimately in the discretion of the district court, which may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c). If the district court finds that one of the four enumerated factors under § 1367(c) is present, it should also consider "what will best accommodate the values of economy, convenience, fairness and comity," including whether the "plaintiff has engaged in manipulative tactics … after removal in order to get back to state court." *Holden v. Haynes*, 2014 WL 2094344, at *2 (E.D. Wash. May 20, 2014) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988), and *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991)).

### IV.  ARGUMENT

The City timely removed the HJTA plaintiffs' complaint to this Court on April 15, 2022. *See HJTA* Action, ECF No. 1 (Notice of Removal); *see also* Mot. at 3:4 (conceding that removal "was not [] improper"). The HJTA plaintiffs declined to file a motion to remand in the subsequent 30 days, thereby waiving all grounds for remand except for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c); *Smith*, 761 F.3d at 1044; *Kelton Arms*, 346 F.3d at 1193. Since the action was removed, this Court has related the *HJTA* Action to the earlier-filed *NAGR* Action (ECF No. 41), consolidated the two cases for all purposes (ECF No. 80), largely granted the City's motions to dismiss the NAGR and HJTA plaintiffs' respective claims under Rules 12(b)(1) and 12(b)(6) (ECF No. 81), and ordered the now-consolidated plaintiffs to file an "amended consolidated complaint by February 2, 2023" (*id.* at

24:18-19). On January 10, 2023, a few weeks before they were due to file an amended complaint, the HJTA plaintiffs filed a "Motion to Remand" all their claims to state court. ECF No. 86 ("Mot."). The hearing on the remand motion is set for April 2023, after the February 2023 deadline for plaintiffs to file an amended consolidated complaint.

The HJTA plaintiffs seek remand of all their claims, including their federal constitutional claims, on three stated bases. First, they argue that their claims should be remanded because their suit is "largely predicated" on state constitutional provisions applicable to taxes. *Id.* at 2:4-11; *see also id.* at 3:5-9 (arguing that "state constitutional theories … dominate [their] complaint"). Second, the HJTA plaintiffs argue that their claims should be remanded because they were originally brought as part of a state-law validation action for which there is no "comparable federal procedure." *Id.* at 3:5-9; *see also id.* at 2:4-11 (referencing the Court's prior statements that it might decline to exercise supplemental jurisdiction over HJTA's re-pled state-law claims if they are denominated as a validation action in an amended complaint). Third, they argue that remand of their claims is required under the Tax Injunction Act, 28 U.S.C. § 1341, which deprives federal courts of jurisdiction over taxpayer actions seeking declaratory or injunctive relief regarding "any tax under State law." Mot. at 2:4-11.

For the reasons explained below, all three of these arguments for remand are meritless. The Motion should be denied.

### A. The HJTA plaintiffs presently have no claims to remand.

The Motion's most glaring flaw is that it incorrectly assumes the HJTA plaintiffs presently have live claims to remand, when in fact all their claims were dismissed. *See* ECF No. 81 at 24:9-14. Specifically, the HJTA plaintiffs' original but now-dismissed complaint brought four causes of action under federal and state law for "(1) violation of constitutional rights of speech and association under both the U.S. and California Constitution; (2) 'unconstitutional condition' of the Second Amendment and California Constitution; (3) 'special tax lacking voter approval' under the California Constitution, and (4) 'unconstitutional delegation of power to tax' under the California Constitution." *Id.* at 5:4-11 (citing HJTA Compl. ¶¶ 8-37). In September 2022, the Court dismissed *all* HJTA's claims with leave to amend, except that it dismissed with prejudice the state-law aspect of its second claim. *Id.* at 24:9-14. The Court then gave the consolidated HJTA and NAGR plaintiffs until February 2, 2023, to file an

amended consolidated complaint. *Id.* at 24:18-20. On January 10, 2023, before filing an amended complaint, the HJTA plaintiffs filed their Motion seeking remand of all their dismissed claims for lack of federal subject matter jurisdiction. ECF No. 86. As of the date of this Opposition brief (January 24, 2023), there was still no amended complaint on file.

In other words, as things stand today, the HJTA plaintiffs have no claims to remand—and they won't have any claims to remand unless and until they file an amended complaint. Indeed, the Court telegraphed this very point to the parties in its September 2022 dismissal order, when it indicated that questions about its supplemental jurisdiction over the HJTA plaintiffs' claims would need to wait until after the filing of an amended consolidated complaint: "To the extent any of HJTA Plaintiffs' claims are denominated as validation actions pursuant to Cal. Civ. Proc. Code §§ 860, *et seq.*, *in an amended complaint*, the Court *may* decline to exercise supplemental jurisdiction over those claims." ECF No. 81 at 24:15-17 (emphases added). Notwithstanding this guidance, the HJTA plaintiffs filed their Motion to remand before filing an amended complaint, effectively seeking an advisory opinion.

It would be both procedurally infirm and deeply prejudicial to the City to grant the HJTA plaintiffs' Motion, which asks this Court to remand claims that do not presently exist and, thus, are not available to the City to analyze and make legal arguments about. Without seeing the HJTA plaintiffs' actual amended claims in writing, it is impossible for the City to make an informed decision about the extent to which it opposes remand, much less have a fair and reasonable opportunity to ascertain whether those claims "aris[e] under" federal law within the meaning of 28 U.S.C. § 1331, or the extent to which they "raise[] a novel or complex issue of State law" or present the kind of "exceptional circumstances" that present "compelling reasons" for declining supplemental jurisdiction under 28 U.S.C. § 1367(c).

Accordingly, the Motion is premature and should be denied.

**B.    Even if HJTA had any live claims to remand, their arguments lack merit.**

**1.    HJTA styling their claims as a validation action does not deprive this Court of its subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.**

In their Motion, the HJTA plaintiffs seek to reframe their case as one in which "state constitutional theories … dominate [their] complaint," implying that their federal constitutional claims

are of secondary importance. Mot. at 3:6-7. They then argue, without any supporting legal authority, that this somehow provides a legal basis for remanding *all* their claims. Their arguments are wrong for several reasons.

   ***First***, HJTA's argument fundamentally misunderstands how federal subject matter jurisdiction works. *See, e.g.*, *Obenchain v. Reg'l Transp. Comm'n of S. Nevada*, 2014 WL 3696306, at *2 (D. Nev. July 23, 2014) (rejecting plaintiff's argument that the court should remand the action because his federal constitutional claims were not "pivotal" to his case). Contrary to the general thrust of HJTA's argument that courts are empowered to view all of a plaintiff's claims *in the aggregate* and remand if the state-law claims seem more central to the case, subject matter jurisdiction is determined on a claim-by-claim basis. "A single federal claim having the violation of a federal constitutional right as an element gives rise to jurisdiction under 28 U.S.C. § 1331." *Id.* (citing *Standage Ventures, Inc. v. Arizona,* 499 F.2d 248, 249 (9th Cir. 1974)); *see also* 28 U.S.C. § 1343(a)(3) (providing district courts "original jurisdiction of any civil action … [t]o redress the deprivation, under color of any State law … of any right … secured by the Constitution of the United States").

   Here, the City cannot know the precise substance of HJTA's hypothetical claims in a future amended complaint, but their Motion previews that they intend to re-plead some kind of "a federal compelled speech/association claim," as well as a "claim under the state law doctrine of unconstitutional conditions" based on the HJTA plaintiffs' Second Amendment rights. Mot. at 6:23-26.[2] This Court would presumably have subject matter jurisdiction over the referenced First

---

[2] HJTA's statement that it "does not want to waive its First Amendment claim" (Mot. at 8:5-6) reverses course from its previous suggestion that it might dismiss its federal-law claims in order to obtain remand of its state-law claims. *See* Hrg. Tr. at 23-24 (Aug. 18, 2022) (HJTA's counsel: "[P]erhaps if we dismiss the federal First Amendment claim, all the rest of our case could go back to state court, if your Honor gave us the opportunity to do that." The Court: "I actually think, Mr. Bittle, that that makes sense."). HJTA cites *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), as supporting remand of federal constitutional claims, but it badly misreads the case. *Carnegie-Mellon* involved remand of state-law claims that remained *after* "all federal-law claims in the action ha[d] been

Amendment claim under 28 U.S.C. §§ 1331 and 1343, and jurisdiction over the Second Amendment claim under § 1331. Although the HJTA plaintiffs state they will bring their Second Amendment claim under the "state law doctrine of unconstitutional conditions," this Court would have jurisdiction over such a claim under § 1331 because "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Sauk-Suiattle Indian Tribe*, 2022 WL 17999429, at *4.[3]

**Second**, regarding the HJTA plaintiffs' future repleading of their now-dismissed third and fourth claims alleging the $25 Fee is an unlawful "tax" under the California Constitution, those claims are closely "related" to HJTA's federal-law claims for purposes of § 1367(a) because they all concern the same subject matter—i.e., the lawfulness of the Fee. Answering the additional question of whether the Court should decline to exercise supplemental jurisdiction over those claims under § 1367(c) is factually and analytically intensive, and impossible to do before HJTA reduces these claims to writing by re-pleading them in an amended complaint.

Additionally, even if HJTA had already re-pled these state-law claims, there would still be a serious question of whether it is currently ripe for the Court to decide the issue of declining supplemental jurisdiction over those claims under § 1367(c). As of today, there are still several remaining steps to be completed before the Fee is fully implemented. *See* ECF No. 85 (City's Status Report) (Jan. 6, 2023). Specifically, the nonprofit organization that will collect the Fee has still not yet been formed, the final Fee amount is still subject to revision by the City Council, enforcement of the

---

eliminated" (*id.* at 345), not the situation here where federal-law claims remain in the case, such that "considerations of judicial economy, convenience and fairness to litigants support a wide-ranging power in the federal courts to decide state-law claims in cases that also present federal questions" (*id.* at 349).

[3] HJTA's reliance on boilerplate legal rules recited at the highest levels of generality—such as federal courts being courts of limited jurisdiction (Mot. at 6:12-18), and that remanding all its claims would best serve the "values of economy, convenience, fairness, and comity" (*id.* at 8:7-11)—does nothing to disturb federal district courts' subject matter jurisdiction over claims arising under the U.S. Constitution.

Fee requirement has not yet begun, and the nonprofit organization has not yet begun using funds generated by the Fee to provide services for gun owners and their households. *Id*. Thus, critical facts are still unknown. These include facts that are necessary to analyze whether, for example, any of HJTA's future amended state-law claims raise a "complex issue" of state law, "substantially predominate" over its federal-law claims, or present "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (2), (4). As the Supreme Court has noted, ripeness requires that "[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding." *Ariz. v. Atchison, T. & S. F. R. Co.*, 656 F.2d 398, 402 (9th Cir. 1981) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952)).

**Third**, the HJTA plaintiffs' purported concerns for the rights of an absent third party, the Golden State Second Amendment Coalition ("GS2AC"), do nothing to advance their Motion. *See, e.g.*, Mot. at 5:15-16, 7:1-12 (arguing that failure to remand would deprive GS2AC of its "right to participate in this litigation"). As a threshold matter, none of the HJTA plaintiffs argue they have third-party standing to raise GS2AC's rights, nor could they. *See, e.g., SurvJustice Inc. v. DeVos*, 2019 WL 1434141, at *7 (N.D. Cal. Mar. 29, 2019) ("A plaintiff asserting third-party standing must show," *inter alia*, "a close relationship with the third party" and "some hindrance to the third party's ability to protect his or her own interests"); *see also Charleston v. Nevada*, 830 Fed. App'x 948, 949 (9th Cir. 2020) (declining to construe the appellants' arguments as invoking third-party standing because "they neither expressly do so nor cite any relevant cases").

Indeed, GS2AC appears perfectly capable of protecting its own rights and interests. The state court docket in the *HJTA* action shows that GS2AC was represented by legal counsel when it lodged a post-removal filing there on May 3, 2022. *See* Superior Court of Santa Clara County, Public Portal, *available at* https://traffic.scscourt.org/search (Case No. 22CV395596). This indicates that GS2AC has known about this litigation for more than eight months but decided not to seek to intervene or otherwise participate in this case, or to bring its own separate action challenging the Fee. And even if GS2AC were so necessary a party that it should be *compelled* to participate in this litigation (of course, it should not), the federal removal statute authorizes this Court to "issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or

otherwise." 28 U.S.C. § 1447(a). In sum, the HJTA plaintiffs have no standing to represent GS2AC's interests, and this Court is not stripped of subject matter jurisdiction over HTJA's claims simply because a represented nonparty with notice of the suit and the right to seek intervention has declined to do so.

***Finally***, at a more fundamental level, the Motion appears to conflate this court's subject matter jurisdiction under §§ 1331 and 1343 over the HJTA plaintiffs' *federal-law* claims, with this Court's separate and unrelated discretion under § 1367(c) to "decline to exercise supplemental jurisdiction over a [related *state-law*] claim" if the latter "substantially predominates" over the federal claims. 28 U.S.C. § 1367(c)(2). Contrary to HJTA's argument, nothing in § 1367(c) gives district courts the authority to decline to exercise its jurisdiction over federal-law claims. *See id.* § 1367(c) (authorizing courts only to decline to exercise supplemental jurisdiction "over a claim under subsection (a)"). And while it is true that the California validation statutes provide some unique procedures, the ultimate "purpose of the validation statutes is to serve 'the acting agency's need to settle promptly all questions about the validity of its action.'" *Quantification Settlement Agreement Cases*, 201 Cal.App.4th 758, 833 (2011) (quoting *Friedland v. City of Long Beach*, 62 Cal.App.4th 835, 842 (1998)). It is squarely within the jurisdictional and institutional competencies of this federal court to decide questions about whether the $25 Fee at issue here is lawful—particularly when some of those challenges, according to HJTA, hinge on questions of federal constitutional law under the First and Second Amendments to the U.S. Constitution.[4]

---

[4] HJTA's reliance on *Davis v. Mariposa Co. Bd. of Supervisors*, 38 Cal.App.5th 1048 (2019), is misplaced. *See* Mot. at 4:13-21. That case says nothing about whether state-law claims denominated as a validation action should be remanded to state court, but instead concerns the wholly unrelated issue of whether a state Court of Appeal has appellate jurisdiction over an action challenging the lawfulness of a county assessment when the challengers failed to file their notice of appeal within the validation statute's 30-day deadline for doing so. *Davis*, 38 Cal.App.5th at 1051-52.

### 2. HJTA's argument under the Tax Injunction Act is both wrong on the merits (because the Fee is not a "tax" under the Act) and unripe for review.

The HJTA plaintiffs' final argument is that remand of all their claims challenging the Fee is required by the federal Tax Injunction Act (the "TIA" or "Act"), 28 U.S.C. § 1341. *See* Mot. at 2:4-11, 8:21-11:10. The Act provides that federal district courts may not "enjoin, suspend or restrain the assessment, levy or collection of *any tax under State law* where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (emphasis added). As the text indicates, the Act applies only if the Court determines that the assessment at issue is a "tax." 28 U.S.C. § 1341.

"Not every exaction by state authorities is a tax." *Hexom v. Or. Dep't of Transp.*, 177 F.3d 1134, 1135 (9th Cir. 1999); *id.* at 1136 (explaining the Act applies to "taxes" but not "fees"). "Federal law determines whether an assessment qualifies as a 'tax' for purposes of the TIA," *Wright v. Riveland*, 219 F.3d 905, 911 (9th Cir. 2000), although "[s]tate law determinations as to whether a fee is a tax may still be pertinent or instructive." *McLeod v. Columbia County, Georgia*, 254 F.Supp.2d 1340, 1345 (S.D. Ga. 2003) (citing *Diginet, Inc. v. W. Union ATS, Inc.*, 845 F.Supp.1237, 1240 (N.D. Ill. 1994)), *accord Trailer Marine Transp. Corp. v. Vazquez*, 977 F.2d 1, 5 (1st Cir. 1992).

In the Ninth Circuit, whether a state or local assessment is a "tax" or a "fee" turns on a three-factor test that looks to "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." *Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996) ("*Bidart*") (adopting the test from First Circuit case law); *accord Wright*, 219 F.3d at 911-12. While these are the main factors, they are not exhaustive, and courts often considered additional factors, such as "whether the agency places the money in a special fund, whether collection of the charge is assigned to the State Tax Assessor, whether the requested injunction poses a threat to the central stream of tax revenues, and whether the enacting entity referred to the charge as a 'tax.'" *Am. Trucking Ass'ns, Inc. v. Alviti*, 944 F.3d 45, 55 (1st Cir. 2019) (cleaned up and citations omitted).

Here, application of the second and third *Bidart* factors (and *all* the additional factors listed in *Alviti*) make clear that the $25 Fee is not a tax and, thus, the Act does not apply. The first *Bidart* factor

is the only one that weighs in favor of finding a tax, because the Fee is imposed by the legislature (i.e., the City Council) and not an agency.

By contrast, the second factor weighs in favor of finding a fee because the $25 Fee at issue is imposed upon a "narrow class" rather than a "broad class" of persons. *Bidart*, 73 F.3d at 931; *Wright*, 219 F.3d at 911-12. Regarding the second factor, the Fee applies not to all of San Jose's nearly 1,000,000 residents,[5] but only those residents that own or possess a firearm and are not covered by one of the Ordinance's three exemptions. *See* Ordinance §§ 10.32.215, 10.32.225. While there are no record facts indicating how many people that is, a recent study estimates the number is "between 50,000 and 55,000 households," minus whatever (unknown) number of those households are covered by the Ordinance's exemptions. Pacific Institute for Research and Evaluation (PIRE), *Incidence and Cost of Firearm Injuries in San Jose, CA* at 2 (Jan. 19, 2022), *available at* https://www.sanjoseca.gov/home/showpublisheddocument/81530/637788026225530000; *see also id.* at 3 (citing 2014 data indicating that 11% of households in Santa Clara County own guns). While these figures are incomplete and not part of the record, and thus render any analysis premature and unripe, these preliminary numbers indicate that the Fee is imposed on the kind of "narrow class" of persons that weighs against finding a tax. *See, e.g.*, *Trailer Marine*, 977 F.2d at 6 (fee "collected only from those seeking the privilege of driving on state highways" weighed against finding a tax); *Henderson v. Stalder*, 281 F.Supp.2d 866, 874 (E.D. La. 2003) (finding "purchasers of specialty license plates" were a "narrow class").

When, as here, "the first two *Bidart* factors are not dispositive, courts emphasize the third factor—the way in which the revenue is ultimately spent." *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1183 (9th Cir. 2006) (citing *Bidart*, 73 F.3d at 932); *accord Hill v. Kemp*, 478 F.3d 1236, 1245 (10th Cir. 2007) (Gorsuch, J.) (calling the third factor "the critical inquiry"). "Assessments treated as general revenues and paid into the state's general fund are taxes," whereas "[a]n assessment placed in a special fund and used only for special purposes is less likely to be a tax." *Bidart*, 73 F.3d at 932; *see also Wright*, 219 F.3d at 911 (funds not "paid to the tax collector or the state's general fund" were not

---

[5] *See* U.S. Census Bureau, *Quick Facts: San Jose, California*, https://www.census.gov/quickfacts/fact/table/sanjosecitycalifornia/PST045221 (estimating July 2021 population at 983,489 people).

taxes); *Trailer Marine,* 977 F.2d at 6 (fees held separately from general funds and used only to compensate automobile accident victims were not taxes); *Gov't Suppliers Consol. Servs., Inc. v. Bayh,* 975 F.2d 1267, 1271 n.2 (7th Cir. 1992) (fees imposed on waste transportation vehicles used to implement waste disposal regulatory system and not reverting to general funds were not taxes), *cert. denied,* 506 U.S. 1053 (1993).

While fees paid into special funds can be taxes if they are "expended to provide a general benefit to the public," the connection between the expenditure and the public benefit must be direct, and not simply an "indirect public benefit." *Bidart*, 73 F.3d at 932. Thus, for example, the Supreme Court has held that a statutory levy on ship owners for each immigrant passenger paid into the treasury's general funds was not a tax because it did "not go to the general support of the government," but rather was used for "the care of immigrants," "the protection of the citizens among whom they are landed," and "the general purposes and expense of carrying th[e] [immigration] act into effect." *In re Head Money Cases,* 112 U.S. 580, 590, 596 (1884); *see also Bidart,* 73 F.3d at 933 ("an assessment levied for public purposes" is not a tax if it is part of a regulatory program). Importantly in this case, fees are also generally not taxes if they are paid "in return for a government-provided benefit." *United States v. City of Huntington,* 999 F.2d 71, 74 (4th Cir. 1993); *see also Hexom*, 177 F.3d at 1138; *Collins Holding Corp. v. Jasper County*, 123 F.3d 797 (4th Cir. 1997) (distinguishing taxes that sustain the essential flow of revenue to a government's general fund for benefit of the public, and fees paid to an agency in connection with a regulatory scheme for the benefit of a narrow class of persons).

Here, the third factor weighs strongly in favor of finding the $25 Fee is not a tax but a fee. Under the Ordinance's terms, not only will $25 Fee payments not be placed in the City's general fund, they are required to be paid directly to a nongovernmental entity in the form of designated nonprofit organization. Ordinance § 10.32.215. This is as far as the Fee could get from the City's general fund, which militates strongly against finding a tax. Relatedly, the Fee monies are not to be spent on general public benefits, but only for "providing services to residents of the City that own or possess a Firearm in the City, to members of their household, or to those with whom they have a close familial or intimate relationship," for the purposes of "(a) reduc[ing] the risk or likelihood of harm from the use of firearms" and "(b) mitigat[ing] the risk of physical harm or financial, civil, or criminal liability that a

San José firearm owner or her family will incur through possession of firearms." *Id.* § 10.32.220(A), (C). In other words, the purpose of the Fee is to provide services for gun owners and members of their households for the purpose of reducing their "risk of physical harm or financial, civil, or criminal liability" from owning a firearm, with some indirect benefits running to the public. *Id.* Moreover, the Fee passes every single one of the additional factors courts often use to determine if an assessment is a tax—i.e., "whether the agency places the money in a [general or] special fund, whether collection of the charge is assigned to the State Tax Assessor, whether the requested injunction poses a threat to the central stream of tax revenues, and whether the enacting entity referred to the charge as a 'tax.'" *Alviti*, 944 F.3d at 55 (1st Cir. 2019) (cleaned up and citations omitted).

An instructive decision is *Hexom v. Oregon Dep't of Transp.*, 177 F.3d 1134 (9th Cir. 1999), where the Ninth Circuit held that a $4 fee for disabled person parking permits payable to a state department of transportation was not a tax, reasoning that its "minimal size … does not make it look like a general revenue raising device," and because its purpose was "to pay the costs of conferring a particular benefit on a particular group of people." *Id.* at 1138. The *Hexom* court discussed with approval many prior cases holding that similar fees were also not taxes. *Id.* at 1136-38; *see Trailer Marine*, 977 F.2d at 4, 6 ($35 annual trailer fee was not a tax because it was directed to a special fund for special purposes, and an injunction would pose "no threat to the central stream of tax revenue"); *see also San Juan Cellular Tel. Co. v. Public Serv. Comm'n,* 967 F.2d 683, 686-87 (1st Cir. 1992) (Breyer, J.) (fee amounting to 3% of revenue was not a "tax" because it was not for general governmental purposes but for use by a particular agency).

HJTA's motion ignores the controlling three-factor *Bidart* framework and instead argues that the $25 Fee is a tax under the Act for scattershot reasons based on a handful of out-of-circuit decisions. *See* Mot at 8-11. All of those cases are easily distinguishable, including one that found the assessment at issue not a tax at all, but a fee. *See Hager v. City of W. Peoria*, 84 F.3d 865, 870-72 (7th Cir. 1996) (reversing district court's ruling that $20 heavy truck permit fee deposited into city's general fund to be used for road repair was a tax). The other three cases all involve significant taxes on industry that are materially different from the small $25 Fee at issue here. *See Ass'n for Accessible Medicines v. James*, 974 F.3d 216, 220, 223 (2d Cir. 2020) (assessment on opioid manufacturers to fund "opioid treatment,

recovery and prevention and education services" statewide was not a fee that delivered "narrow benefits" to the regulated entities, but was a tax being used to fund "broad public health initiatives" that provide a "general benefit'" to the state's residents); *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1128, 1133 (5th Cir. 1980) (holding, with virtually no analysis on facts relevant to the *Bidart* factors, that 1% fee on all bail bonds issued was a tax); *City of Chattanooga v. BellSouth Telecomms.*, 1 F.Supp.2d 809, 812-13 (E.D. Tenn. 1998) (requirement that telecommunications companies pay a "franchise fee" equal to 5% of their gross revenue to the city was a tax, in part, because the fee was not intended to defray any industry-related infrastructure costs, but "to pay the City's general debts and obligations").

Moreover, while federal law controls what is a tax under the Act, "[s]tate law determinations as to whether a fee is a tax may still be pertinent or instructive." *McLeod v. Columbia County, Georgia*, 254 F.Supp.2d 1340, 1345 (S.D. Ga. 2003). Here, the Court's prior conclusion that HJTA has so far failed even to adequately plead the Fee is a tax under state law, this provides yet another reason that the Court should find that the Fee is not a tax under the Act. *See* ECF No. 81 at 13:27-14:20, 22:15-21 (relying on *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (2013)). HJTA seeking to relitigate arguments it has already presented and lost in this Court does nothing to advance its Motion. *Compare* Mot. at 10:4-10 (arguing *Schmeer* is "easily distinguishable on its facts" and does not prevent the Fee from being deemed a "tax" under the California Constitution), *with* ECF No. 81 at 13:27-14:20, 22:15-21 (the Court rejecting plaintiffs' "attempt to distinguish *Schmeer* on its facts," and instead finding *Schmeer*'s analysis to be "thorough," "persuasive," and thus the "touchstone" for its legal analysis of the issue).

Finally, to the extent that the Court has any doubts about whether the $25 Fee is a "tax" under the Act, the prudent course of action would be to wait and answer that question on a fuller factual record, as other courts have done. *See, e.g.*, *Collins Holding Corp.*, 123 F.3d at 801 (concluding that "whether the … ordinance is a tax or a fee … could be better answered on a fuller record"). Here, that could mean waiting to decide this important jurisdictional issue until after the nonprofit organization that will collect the Fee has been formed, the final Fee amount has been set by the City Council, and the Fee requirement has actually begun to be enforced and used to provide services for gun owners and members of their households.

## V. CONCLUSION

For the foregoing reasons, the Motion should be denied without prejudice to the HJTA plaintiffs re-bringing the motion after filing an amended complaint.

Dated: January 24, 2023

Respectfully submitted,

**COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Tamarah P. Prevost*
      Joseph W. Cotchett
      Tamarah P. Prevost
      Andrew F. Kirtley

*Attorneys for Defendants City of San Jose, et al.*