JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Defendants City of San Jose, et al.*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.**, a non-profit corporation, and **MARK SIKES**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, a public entity, **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL**,<br><br>Defendants. | Case No. 5:22-cv-00501-BLF<br><br>**DEFENDANTS' CORRECTED OPPOSITION TO THE HJTA PLAINTIFFS' MOTION TO REMAND**<br><br>*[This corrected brief replaces ECF No. 87, as ordered by the Court at ECF No. 88.]*<br><br>Date:      April 6, 2023<br>Time:      9:00 a.m.<br>Judge:    Hon. Beth Labson Freeman<br>Dept.:     San Jose Courthouse, Crtrm 3 (5th Floor) |
| **HOWARD JARVIS TAXPAYERS ASSOCIATION**, Silicon Valley Taxpayers Association, Silicon Valley Public Accountability Foundation, James Barry, and George Arrington,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, and all persons interested in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee,<br><br>Defendants. | Case No. 5:22-cv-02365-BLF |

# TABLE OF CONTENTS

Page

I.     STATEMENT OF ISSUES TO BE DECIDED ................................................... 1

II.     INTRODUCTION ................................................................................................. 1

III.     PROCEDURAL HISTORY ................................................................................. 2

IV.     ARGUMENT ......................................................................................................... 2

     A.     The HJTA plaintiffs presently have no claims to remand. ......................... 2

     B.     Even if HJTA had any live claims to remand, its arguments lack merit .................... 3

         1.     HJTA bringing its claims as a validation action does not deprive this Court of jurisdiction under 28 U.S.C. §§ 1331 and 1343, and the issue of whether to decline supplemental jurisdiction under § 1367(c) is not ripe for review. ......................................................... 3

         2.     HJTA's argument under the Tax Injunction Act is both wrong on the merits (because the Fee is not a "tax" under the Act) and not ripe for review. ......................................................................... 7

V.     CONCLUSION ................................................................................................... 10

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Cases**

5

*A Bonding Co. v. Sunnuck*,
   629 F.2d 1127 (5th Cir. 1980)..........................................................................................10

6

7

*Am. Trucking Ass'ns, Inc. v. Alviti*,
   944 F.3d 45 (1st Cir. 2019) ...............................................................................................8

8

*Ariz. v. Atchison, T. & S. F. R. Co.*,
   656 F.2d 398 (9th Cir. 1981)..............................................................................................5

9

10

*Ass'n for Accessible Medicines v. James*,
   974 F.3d 216 (2d Cir. 2020) ..............................................................................................9

11

*Bidart Bros. v. California Apple Comm'n*,
   73 F.3d 925 (9th Cir. 1996)..............................................................................7, 8, 9, 10

12

13

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) .......................................................................................................4, 5

14

*Charleston v. Nevada*,
   830 Fed. App'x 948 (9th Cir. 2020)..................................................................................5

15

16

*City of Chattanooga v. BellSouth Telecomms.*,
   1 F.Supp.2d 809 (E.D. Tenn. 1998) ...............................................................................10

17

18

*Davis v. Mariposa Co. Bd. of Supervisors*,
   38 Cal.App.5th 1048 (2019) ..........................................................................................6, 7

19

*Diginet, Inc. v. W. Union ATS, Inc.*,
   845 F.Supp. 1237 (N.D. Ill. 1994) ....................................................................................7

20

21

*Edye v. Robertson*,
   112 U.S. 580 (1884) ............................................................................................................9

22

*Hager v. City of W. Peoria*,
   84 F.3d 865 (7th Cir. 1996)...............................................................................................9

23

24

*Hexom v. Oregon Dep't of Transp.*,
   177 F.3d 1134 (9th Cir. 1999)....................................................................................7, 8, 9

25

26

*Kathrein v. City of Evanston*,
   636 F.3d 906 (7th Cir. 2011)..........................................................................................7, 9

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*McLeod v. Columbia County*,
    254 F.Supp.2d 1340 (S.D. Ga. 2003) ........................................................................ 7, 10

*Obenchain v. Reg'l Transp. Comm'n of S. Nevada*,
    2014 WL 3696306 (D. Nev. July 23, 2014) ...................................................................... 4

*Qwest Corp. v. City of Surprise*,
    434 F.3d 1176 (9th Cir. 2006) ........................................................................................ 7

*San Juan Cellular Tel. Co. v. Public Serv. Comm'n*,
    967 F.2d 683 (1st Cir. 1992) (Breyer, J.) ....................................................................... 9

*Sauk-Suiattle Indian Tribe v. City of Seattle*,
    --- F.4th ----, 2022 WL 17999429 (9th Cir. 2022) ......................................................... 4

*Schmeer v. County of Los Angeles*,
    213 Cal.App.4th 1310 (2013) ........................................................................................ 10

*Smith v. Mylan Inc.*,
    761 F.3d 1042 (9th Cir. 2014) ......................................................................................... 2

*SurvJustice Inc. v. DeVos*,
    2019 WL 1434141 (N.D. Cal. Mar. 29, 2019) ................................................................. 5

*Trailer Marine Transp. Corp. v. Vazquez*,
    977 F.2d 1 (1st Cir. 1992) ........................................................................................ 7, 8, 9

*Wright v. Riveland*,
    219 F.3d 905 (9th Cir. 2000) .................................................................................... 7, 8, 9

**Statutes**

U.S. Code

    28 U.S.C. § 1331 .................................................................................................... 3, 4, 6

    28 U.S.C. § 1341 .................................................................................................... 1, 2, 7

    28 U.S.C. § 1343 .................................................................................................... 3, 4, 6

    28 U.S.C. § 1367 ................................................................................................. 3, 4, 5, 6

    28 U.S.C. § 1447 ....................................................................................................... 2, 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Ordinances**

San José Gun Harm Reduction Ordinance

§ 10.32.215................................................................................................................. 8, 9

§ 10.32.220.................................................................................................................... 9

§ 10.32.225.................................................................................................................... 8

**Other Authorities**

Pacific Institute for Research and Evaluation,
*Incidence and Cost of Firearm Injuries in San Jose, CA* (Jan. 19, 2022),
*available at* shorturl.at/gmM28.............................................................................. 8

U.S. Census Bureau,
*Quick Facts: San Jose, California*,
https://www.census.gov/quickfacts /fact/table/sanjosecitycalifornia/PST045221......................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.      STATEMENT OF ISSUES TO BE DECIDED**

In March 2022, the plaintiffs in the above-captioned *Howard Jarvis Taxpayers Association* action ("HJTA plaintiffs" or "HJTA") filed a complaint in state court against the City of San Jose ("City") challenging a new $25 Gun Harm Reduction Fee ("Fee") under federal and state law. The City timely removed the action to this Court and filed a motion to dismiss. In September 2022, the Court granted that motion, dismissed *all* the HJTA plaintiffs' claims (most with leave to amend), and ordered HJTA and the other plaintiffs in this consolidation action to file an amended consolidated complaint by February 2, 2023. ECF No. 81 at 24. On January 10, 2023, before filing an amended complaint, the HJTA plaintiffs filed a Motion to Remand ("Motion") all their dismissed claims for lack of federal subject matter jurisdiction, including under the Tax Injunction Act which bars federal courts from issuing declaratory or injunctive relief regarding "any tax under State law." 28 U.S.C. § 1341.

The two primary issues to be decided in resolving the Motion are: (1) Should the Motion be denied as premature because HJTA currently has no live claims to remand? (2) To the extent the Motion is not premature and is ripe for decision before the Fee is fully implemented, is the $25 Fee a "tax under State law" within the meaning of 28 U.S.C. § 1341?

**II.     INTRODUCTION**

Many motions are difficult; this one is not. A few months ago, the HJTA plaintiffs' claims were all dismissed, mostly with leave to amend. They have not subsequently filed an amended complaint. Despite having no live claims before this Court, the HJTA plaintiffs seek to have all their "claims" remanded to state court.[1] Despite the absence of an operative complaint, the Motion asks the parties and the Court to argue and decide what aspects (if any) of this important constitutional litigation should be severed and remanded, based on speculation about how HJTA is likely re-plead its claims in the future. Even if such adjudication-by-supposition were legally permissible (it is not), there is no good reason for the parties and the Court to be engaging in it instead of HJTA simply filing an amended

---

[1] For simplicity, rather than continually referring to HJTA's "dismissed claims," or its "claims" in scare quotes, this Opposition brief generally refers to them as HJTA's "claims" without scare quotes.

1    complaint. Only then will the Court be able to issue a non-advisory opinion on its subject matter

2    jurisdiction over the HJTA plaintiffs' amended claims. The Motion should be denied.

3    **III.    PROCEDURAL HISTORY**

4            The City timely removed the HJTA plaintiffs' complaint to this Court on April 15, 2022. *See*

5    *HJTA Action*, ECF No. 1; *see also* Mot. at 3:4 (HJTA conceding that removal "was not [] improper").

6    HJTA declined to file a motion to remand in the subsequent 30 days, thereby waiving all grounds for

7    remand except lack of subject matter jurisdiction. 28 U.S.C. § 1447(c); *Smith v. Mylan Inc.*, 761 F.3d

8    1042, 1044 (9th Cir. 2014). Since the action was removed, this Court has related the *HJTA* Action to

9    the earlier-filed *NAGR* Action (ECF No. 41), consolidated the two cases for all purposes (ECF No. 80),

10   largely granted the City's motions to dismiss the NAGR and HJTA plaintiffs' respective claims (ECF

11   No. 81), and ordered the plaintiffs to file an "amended consolidated complaint by February 2, 2023"

12   (*id.* at 24:18-19). On January 10, 2023, a few weeks before they were due to file an amended complaint,

13   the HJTA plaintiffs filed the present Motion. ECF No. 86 ("Mot.").

14           In their Motion, the HJTA plaintiffs seek remand of all their claims, including their federal

15   constitutional claims, on three stated bases: (1) because their suit is "largely predicated" on state

16   constitutional theories (Mot. at 2:4-11, 3:5-9); (2) because they originally brought their claims as part

17   of a state-law validation action, for which there is no "comparable federal procedure" (*id.* at 3:5-9); and

18   (3) because the Tax Injunction Act, 28 U.S.C. § 1341, supposedly deprives this Court of jurisdiction

19   (*id.* at 2:4-11). For the reasons explained below, all of HJTA's arguments are meritless.

20   **IV.    ARGUMENT**

21           **A.    The HJTA plaintiffs presently have no claims to remand.**

22           The Motion's most glaring flaw is that it incorrectly assumes the HJTA plaintiffs presently have

23   live claims to remand, when in fact all their claims were dismissed. *See* ECF No. 81 at 24:9-14. While

24   HJTA's original complaint brought four claims under federal and state law for "(1) violation of

25   constitutional rights of speech and association under both the U.S. and California Constitution;

26   (2) 'unconstitutional condition' of the Second Amendment and California Constitution; (3) 'special tax

27   lacking voter approval' under the California Constitution, and (4) 'unconstitutional delegation of power

28   to tax' under the California Constitution" (*id.* at 5:4-11), the Court dismissed *all* those claims with

1   leave to amend, except that it dismissed with prejudice the state-law aspect of the second claim (*id.* at

2   24:9-14). The Court then gave the consolidated HJTA and NAGR plaintiffs until February 2, 2023, to

3   file an amended consolidated complaint. *Id.* at 24:18-20. On January 10, 2023, before filing an

4   amended complaint, the HJTA plaintiffs filed their Motion seeking remand of all their dismissed claims

5   for lack of federal subject matter jurisdiction. As of the date of this Corrected Opposition brief (January

6   26, 2023), there was still no amended complaint on file.

7         In other words, the HJTA plaintiffs presently have no claims to remand—and they won't have

8   any claims to remand unless and until they file an amended complaint. Indeed, the Court telegraphed

9   this very point to the parties when it indicated that questions about supplemental jurisdiction over the

10   HJTA plaintiffs' claims would need to wait until an amended complaint is filed: "To the extent any of

11   HJTA Plaintiffs' claims are denominated as validation actions … *in an amended complaint*, the Court

12   *may* decline to exercise supplemental jurisdiction over those claims." *Id.* at 24:15-17 (emphases added).

13   Notwithstanding this guidance, the HJTA plaintiffs filed their Motion to remand before filing an

14   amended complaint, effectively seeking an advisory opinion.

15         It would be both procedurally infirm and deeply prejudicial to the City to grant HJTA's Motion,

16   which asks this Court to remand claims that do not presently exist and, thus, are unavailable to the City

17   to analyze. Without seeing the HJTA plaintiffs' actual amended claims, it is impossible for the City

18   even to make an informed decision about the extent to which it opposes remand, much less have a fair

19   and reasonable opportunity to ascertain whether those claims "aris[e] under" federal law under 28

20   U.S.C. § 1331, or the extent to which they "raise[] a novel or complex issue of State law" or present the

21   kind of "exceptional circumstances" that present "compelling reasons" for declining supplemental

22   jurisdiction under 28 U.S.C. § 1367(c). Accordingly, the Motion is premature and should be denied.

23      **B.**       **Even if HJTA had any live claims to remand, its arguments lack merit.**

24            **1.**      **HJTA bringing its claims as a validation action does not deprive this Court of jurisdiction under 28 U.S.C. §§ 1331 and 1343, and the issue of whether to decline supplemental jurisdiction under § 1367(c) is not ripe for review.**

26         In its Motion, HJTA seeks to reframe its case as one in which "state constitutional theories …

27   dominate [its] complaint," while its federal constitutional claims are of secondary importance. Mot. at

28   3:6-7. HJTA then argues, without any supporting legal authority, that this somehow provides a legal

basis for remanding *all* its claims. This is wrong for several reasons.

*First*, HJTA's argument fundamentally misunderstands how federal subject matter jurisdiction works. *See, e.g.*, *Obenchain v. Reg'l Transp. Comm'n of S. Nevada*, 2014 WL 3696306, at *2 (D. Nev. July 23, 2014) (rejecting argument that plaintiff's action should be remanded because his federal claims were not "pivotal" to his case). "A single federal claim having the violation of a federal constitutional right as an element gives rise to jurisdiction under 28 U.S.C. § 1331." *Id.* (citing *Standage Ventures, Inc. v. Arizona,* 499 F.2d 248, 249 (9th Cir. 1974)); *see also* 28 U.S.C. § 1343(a)(3) (providing district courts "original jurisdiction of any civil action … [t]o redress the deprivation, under color of any State law … of any right … secured by the Constitution of the United States").

Here, the City cannot know the precise substance of HJTA's hypothetical future claims, but its Motion indicates it intends to re-bring "a federal compelled speech/association claim," and a "claim under the state law doctrine of unconstitutional conditions" based on Second Amendment rights. Mot. at 6:23-26.[2] This Court would presumably have jurisdiction under over the First Amendment claim under §§ 1331 and 1343, and jurisdiction under § 1331 over the Second Amendment claim because (although it is styled as arising under a "state law doctrine") HJTA's "right to relief necessarily depends on resolution of a substantial question of federal law." *Sauk-Suiattle Indian Tribe v. City of Seattle*, --- F.4th ----, 2022 WL 17999429, at *4 (9th Cir. 2022). HJTA cites *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), as somehow supporting remand of federal-law claims (*see* Mot. at 8:7-11), but that case says nothing of the sort. *See* 484 U.S. at 345 (deciding only if *state-law* claims were properly remanded after "all federal-law claims in the action ha[d] been eliminated").

*Second*, regarding HJTA's state-law claims that the $25 Fee is an unlawful "tax" under the California Constitution, those claims are "related" to HJTA's federal-law claims under § 1367(a)

---

[2] HJTA's statement that it "does not want to waive its First Amendment claim" (Mot. at 8:5-6) is contrary to its previous suggestion that it might dismiss its federal-law claims in order to obtain remand of its state-law claims. *See* Hrg. Tr. at 23-24 (Aug. 18, 2022) (HJTA's counsel: "[P]erhaps if we dismiss the federal First Amendment claim, all the rest of our case could go back to state court, if your Honor gave us the opportunity to do that." The Court: "I actually think, Mr. Bittle, that that makes sense.").

because they all concern the same subject matter—i.e., the lawfulness of the Fee. *See also Carnegie-Mellon*, 484 U.S. at 349 (noting that federal courts have "a wide-ranging power … to decide state-law claims in cases that also present federal questions"). Whether the Court should nevertheless decline to exercise supplemental jurisdiction over those claims under § 1367(c) requires a factually and legally intensive analysis that is impossible to perform without an operative complaint.

And even if HJTA had an operative complaint, a serious question would remain: whether issues under § 1367(c) are ripe for decision. As of today, there are still several important steps to complete before the Fee is fully implemented. *See* ECF No. 85 (City's Status Report) (Jan. 6, 2023). The nonprofit organization to which the Fee will be paid still not been formed, the Fee amount is still subject to revision by the City Council, enforcement of the Fee has not yet begun, and Fee monies have not yet been used to provide any services to gun owners or their families. *Id*. Until the Fee is fully implemented, one cannot fully assess the extent (if any) to which HJTA's state-law claims raise a "complex issue" of state law, "substantially predominate" over federal-law claims, or present "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (2), (4). Ripeness requires that "[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding." *Ariz. v. Atchison, T. & S. F. R. Co.*, 656 F.2d 398, 402 (9th Cir. 1981) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952)). Until the Fee is fully implemented, the § 1367(c) issue is not ripe for decision.

***Third***, HJTA's purported concern for the rights of an absent third party, the Golden State Second Amendment Coalition ("GS2AC"), does nothing to advance its Motion. *See* Mot. at 5:15-16, 7:1-12 (arguing that not remanding would violate GS2AC's "right to participate in this litigation"). As a threshold matter, none of the HJTA plaintiffs argue they have third-party standing to enforce GS2AC's rights—nor could they. *See SurvJustice Inc. v. DeVos*, 2019 WL 1434141, at *7 (N.D. Cal. Mar. 29, 2019) ("A plaintiff asserting third-party standing must show … a close relationship with the third party" and "some hindrance to the third party's ability to protect [its] own interests"); *see also Charleston v. Nevada*, 830 Fed. App'x 948, 949 (9th Cir. 2020) (declining to construe appellants' arguments as invoking third-party standing because "they neither expressly do so nor cite any relevant cases").

1    Indeed, GS2AC appears perfectly capable of protecting its own rights and interests. The state

2    court docket in the *HJTA* action shows that GS2AC was represented by legal counsel when it lodged a

3    post-removal filing there on May 3, 2022. *See* Superior Court of Santa Clara County, Public Portal,

4    *available at* https://traffic.scscourt.org/search (Case No. 22CV395596). This indicates that GS2AC has

5    known about this litigation for more than eight months but decided not to seek to intervene or

6    otherwise participate in this case. And even if GS2AC were so necessary a party that it should be

7    *compelled* to participate in this litigation (of course, it should not), the federal removal statute

8    authorizes this Court to "issue all necessary orders and process to bring before it all proper parties

9    whether served by process issued by the State court or otherwise." 28 U.S.C. § 1447(a). In sum, the

10   HJTA plaintiffs have no standing to represent GS2AC's interests, and this Court is not stripped of

11   subject matter jurisdiction over HJTA's claims simply because a represented nonparty with notice of

12   the suit and the right to seek intervention has declined to do so.

13       ***Finally***, at a more fundamental level, the Motion appears to conflate this court's subject matter

14   jurisdiction over HJTA's *federal-law* claims under §§ 1331 and 1343, with this Court's separate and

15   unrelated discretion under § 1367(c) to "decline to exercise supplemental jurisdiction over a [related

16   *state-law*] claim" if the latter "substantially predominates" over the federal claims. *Id.* § 1367(c)(2).

17   Contrary to HJTA's argument, nothing in § 1367(c) allows district courts to decline jurisdiction over

18   federal-law claims. *See id.* § 1367(c) (authorizing courts only to decline supplemental jurisdiction

19   "over a claim under subsection (a)"). And while it is true that the California validation statutes provide

20   some unique procedures, the ultimate "purpose of the validation statutes is to serve 'the acting agency's

21   need to settle promptly all questions about the validity of its action.'" *Quantification Settlement*

22   *Agreement Cases*, 201 Cal.App.4th 758, 833 (2011) (quoting *Friedland v. City of Long Beach*, 62

23   Cal.App.4th 835, 842 (1998)). It is squarely within the jurisdictional and institutional competencies of

24   this federal court to decide questions about whether the $25 Fee at issue here is lawful—particularly

25   when some of those challenges, according to HJTA, hinge on questions of constitutional law under the

26   First and Second Amendments to the U.S. Constitution.[3]

27   _____

28   [3] HJTA errs in relying on *Davis v. Mariposa Co. Bd. of Supervisors*, 38 Cal.App.5th 1048 (2019). *See*

1

2

### 2.   HJTA's argument under the Tax Injunction Act is both wrong on the merits (because the Fee is not a "tax" under the Act) and not ripe for review.

3

HJTA's final argument is that remand of all their claims is required by the Tax Injunction Act

4   (the "TIA" or "Act"). *See* Mot. at 2:4-11, 8:21-11:10. The Act provides that federal district courts may

5   not "enjoin, suspend or restrain the assessment, levy or collection of *any tax under State law* where a

6   plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (emphasis

7   added). As its text indicates, the Act applies only if the assessment at issue is a state "tax." *Id.*

8

"Not every exaction by state authorities is a tax." *Hexom v. Oregon Dep't of Transp.*, 177 F.3d

9   1134, 1135 (9th Cir. 1999); *see also id.* at 1136 (explaining the Act applies to "taxes" but not "fees");

10   *Kathrein v. City of Evanston*, 636 F.3d 906, 911-12 (7th Cir. 2011) (outlining four categories of fees, or

11   "non-taxes"). "Federal law determines whether an assessment qualifies as a 'tax' for purposes of the

12   TIA." *Wright v. Riveland*, 219 F.3d 905, 911 (9th Cir. 2000). That said, "[s]tate law determinations as

13   to whether a fee is a tax may still be pertinent or instructive." *McLeod v. Columbia County*, 254

14   F.Supp.2d 1340, 1345 (S.D. Ga. 2003); *Diginet, Inc. v. W. Union ATS, Inc.*, 845 F.Supp. 1237, 1240

15   (N.D. Ill. 1994); *accord Trailer Marine Transp. Corp. v. Vazquez*, 977 F.2d 1, 5 (1st Cir. 1992).

16

In the Ninth Circuit, whether an assessment is a "tax" or a "fee" turns on a three-factor test that

17   looks to "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is

18   imposed; and (3) whether the assessment is expended for general public purposes, or used for the

19   regulation or benefit of the parties upon whom the assessment is imposed." *Bidart Bros. v. California*

20   *Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996) ("*Bidart*"). The third factor is the most important.

21   *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1183 (9th Cir. 2006) ("When the first two *Bidart*

22   factors are not dispositive, courts emphasize the third factor"); *see also Kathrein*, 636 F.3d at 912

23   (indicating the key inquiry is whether an assessment's "purpose is to regulate behavior [a fee] or to

24   _____

25   Mot. at 4:13-21. That case says nothing about remanding state-law claims denominated as a validation

26   action, but instead concerns whether a state Court of Appeal has *appellate jurisdiction* over an action

27   challenging a tax if the appellants blew the validation statute's 30-day deadline to appeal. *Davis*, 38

28   Cal.App.5th at 1051-52.

raise revenue [a tax]"). As part of this analysis, courts often consider a variety of specific issues, including "whether the agency places the money in a special fund, whether collection of the charge is assigned to the State Tax Assessor, whether the requested injunction poses a threat to the central stream of tax revenues, and whether the enacting entity referred to the charge as a 'tax.'" *Am. Trucking Ass'ns, Inc. v. Alviti*, 944 F.3d 45, 55 (1st Cir. 2019) ("*Alviti*"); *see, e.g.*, *Hexom*, 177 F.3d at 1136 (considering these issues in its *Bidart*-factor analysis).

Here, application of the above factors makes clear that the $25 Fee is not a tax but a fee. Indeed, the *only* factor that weighs in favor of HJTA's view that the Fee is a tax is the first *Bidart* factor, because the Fee is imposed by a legislature (i.e., the City Council) rather than an agency. *See Bidart*, 73 F.3d at 931. On the other hand, *all* of the remaining factors weigh strongly against finding that the $25 Fee is a tax.

For example, the second *Bidart* factor favors the City because the $25 Fee is imposed on a "narrow class" rather than a "broad class" of persons. *Bidart*, 73 F.3d at 931; *Wright*, 219 F.3d at 911-12. Instead of applying to all of San Jose's 983,000 residents and 324,000 households,[4] the Fee applies to only those that own or possess a firearm and are not covered by any of the Ordinance's three exemptions. *See* Ordinance §§ 10.32.215, 10.32.225. While there are no record facts indicating how many people or households that might be, a recent study would put the number at an estimated 50,000 to 55,000 households that own guns, minus whatever (unknown) number of those households are covered by one of the Ordinance's exemptions. Pacific Institute for Research and Evaluation, *Incidence and Cost of Firearm Injuries in San Jose, CA* at 2 (Jan. 19, 2022), *available at* shorturl.at/gmM28; *see also id.* at 3 (citing 2014 data that 11% of households in Santa Clara County own guns). While these estimates are outside the record and thus render any analysis premature and unripe, they do provide a preliminary indication that the Fee is imposed on a sufficiently "narrow class" of persons to weigh against finding a tax. *See, e.g.*, *Trailer Marine*, 977 F.2d at 3, 6 (finding annual $35 fee paid to DMV was not a tax, in part, because it applied only to vehicle owners who drive on public roadways).

---

[4] *See* U.S. Census Bureau, *Quick Facts: San Jose, California*, https://www.census.gov/quickfacts/fact /table/sanjosecitycalifornia/PST045221 (July 2021 estimates, rounded here to the nearest thousand).

1    The third *Bidart* factor also favors the City because the $25 Fee is not "expended for general

2    public purposes," but rather is "used for the regulation or benefit of the parties upon whom the

3    assessment is imposed"—here, San Jose gun owners. *Bidart*, 73 F.3d at 931. Unlike taxes, which are

4    generally "treated as general revenues and paid into the state's general fund," the Fee here is more like

5    a fee that is "placed in a special fund" and used only for "special purposes." *Bidart*, 73 F.3d at 932; *see*

6    *also Wright*, 219 F.3d at 911 (exaction not "paid to the tax collector or the state's general fund" was not

7    a tax); *Trailer Marine,* 977 F.2d at 6 ($35 fee paid to DMV and held in separate fund to benefit

8    automobile accident victims was not a tax); *San Juan Cellular Tel. Co. v. Public Serv. Comm'n,* 967

9    F.2d 683, 686-87 (1st Cir. 1992) (Breyer, J.) (fee equal to 3% of businesses' revenue, for use by a

10   particular agency, was not a tax).[5] Additionally, because the $25 Fee is paid not to the government but

11   to a nonprofit (Ordinance § 10.32.215), the Fee will not "raise significant revenue" for the government

12   (*Kathrein*, 636 F.3d at 912), and enjoining the Fee would pose "no threat to the central stream of tax

13   revenue" (*Hexom*, 177 F.3d at 1136).

14   HJTA's motion ignores the controlling three-factor analysis under *Bidart*, and instead argues

15   that the $25 Fee is a tax under the Act for scattershot reasons based on a handful of out-of-circuit

16   decisions (*see* Mot. at 8-11)—including one case that held the charge at issue was not a tax but a fee.

17   *See Hager v. City of W. Peoria*, 84 F.3d 865, 870-72 (7th Cir. 1996) (concerning $20 heavy truck

18   permit fee paid into city's general fund). All of HJTA's other cases are readily distinguishable because

19   they involve large taxes on industry that are materially different from the small $25 Fee here. *See Ass'n*

20   *for Accessible Medicines v. James*, 974 F.3d 216, 220, 223 (2d Cir. 2020) (assessment on opioid

_____

22   [5] Moreover, the scope of "special purposes" on which a fee can be spent, *Bidart*, 73 F.3d at 932, can be

23   incredibly broad. *See Edye v. Robertson,* 112 U.S. 580, 590, 596 (1884) (holding that statutory levy on

24   ship owners for each immigrant passenger, even "though paid into the treasury," was not a tax because it

25   was used for the special purposes of "the care of immigrants," "the protection of the citizens among

26   whom they are landed," and "the general purposes and expenses of carrying th[e] [immigration] act into

27   effect"); *accord Bidart,* 73 F.3d at 933 (citing *Edye* for proposition that "an assessment levied for public

28   purposes" is not a tax if it is part of a regulatory program); *Wright*, 219 F.3d at 911 (similar).

manufacturers to fund "opioid treatment, recovery and prevention and education services" statewide was not a fee that delivered "narrow benefits" to the regulated entities, but a tax used to fund "broad public health initiatives" for the state's residents); *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1128, 1133 (5th Cir. 1980) (holding that 1% fee on all bail bonds was a tax); *City of Chattanooga v. BellSouth Telecomms.*, 1 F.Supp.2d 809, 812-13 (E.D. Tenn. 1998) ("franchise fee" equal to 5% of telecommunications companies' gross revenue was a tax because it was not intended to defray any industry-related infrastructure costs but "to pay the City's general debts and obligations").

Moreover, while federal law controls what is a tax under the Act, "[s]tate law determinations as to whether a fee is a tax may still be pertinent or instructive." *McLeod*, 254 F.Supp.2d at 1345. Thus, this Court's prior conclusion that HJTA has failed to adequately plead the Fee is a tax under state law provides yet another reason to conclude that the Fee is not a tax under the Act. *See* ECF No. 81 at 13:27-14:20, 22:15-21 (relying on *Schmeer v. County of Los Angeles*, 213 Cal.App.4th 1310 (2013)). HJTA trying to relitigate arguments it has already raised and lost does not advance its Motion. *Compare* Mot. at 10:4-10 (HJTA arguing *Schmeer* is "easily distinguishable on its facts" and does not prevent the Fee from being a "tax" under the California Constitution), *with* ECF No. 81 at 13:27-14:20, 22:15-21 (the Court rejecting plaintiffs' "attempt to distinguish *Schmeer* on its facts," and instead finding *Schmeer*'s analysis to be "thorough," "persuasive," and thus the "touchstone" of the Court's legal analysis).

Finally, to the extent that the Court has any doubts about whether the $25 Fee is a "tax" under the Act, the prudent course would be to defer answering that question until there is a factual record. *See, e.g.*, *Collins Holding Corp.*, 123 F.3d at 801 (concluding that "whether the … ordinance is a tax or a fee … could be better answered on a fuller record"). Here, that could mean waiting until after the nonprofit organization that will collect the Fee has been formed and designated, the final Fee amount has been set by the City Council, and the Fee requirement has begun to be enforced and used to provide actual services for gun owners and their families.

## V.   CONCLUSION

For the foregoing reasons, the Motion should be denied without prejudice to the HJTA plaintiffs re-bringing the motion after filing an amended complaint.

1  Dated:  January 26, 2023                    Respectfully submitted,

2                                              **COTCHETT, PITRE & McCARTHY, LLP**

3                                              By:  ___/s/ Tamarah P. Prevost_____

4                                                   Joseph W. Cotchett
                                                    Tamarah P. Prevost
5                                                   Andrew F. Kirtley

6                                              *Attorneys for Defendants City of San Jose, et al.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Corrected Opposition to the HJTA Plaintiffs' Motion to Remand
Case Nos. 5:22-cv-00501-BLF, 5:22-cv-02365-BLF                              11