1    HARMEET K. DHILLON (SBN: 207873)
     harmeet@dhillonlaw.com
2    MICHAEL A. COLUMBO (SBN: 271283)
     mcolumbo@dhillonlaw.com
3    MARK P. MEUSER (SBN: 231335)
     mmeuser@dhillonlaw.com
4
     DHILLON LAW GROUP INC.
5    177 Post Street, Suite 700
     San Francisco, California 94108
6    Telephone: (415) 433-1700
7
     DAVID A. WARRINGTON*
8    dwarrington@dhillonlaw.com
     CURTIS M. SCHUBE*
9    cschube@dhillonlaw.com
     DHILLON LAW GROUP INC.
10   2121 Eisenhower Avenue, Suite 608
11   Alexandria, VA 22314
     Telephone: (571) 400-2121
12

13   *Admitted *Pro Hac Vice*

14   *Attorneys for the National Association for Gun Rights,*
     *Inc. and Mark Sikes*
15

16   JONATHAN M. COUPAL (SBN: 107815)
     TIMOTHY A. BITTLE (SBN: 112300)
17   LAURA E. DOUGHERTY (SBN: 255855)
     Howard Jarvis Taxpayers Foundation
18   1201 K Street, Suite 1030
19   Sacramento, CA 95814
     Telephone: (916) 444-9950
20   Email: tim@hjta.org

21
     *Attorneys for Howard Jarvis Taxpayers Association,*
22   *Silicon Valley Public Accountability Foundation, Silcon*
     *Valley Taxpayers Association, Inc., George Arrington,*
23   *and James Barry*

24

25

26

27

28



Consolidated Second Amended Complaint                    No: 5:22-cv-00501-BLF

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,** a nonprofit corporation, and **MARK SIKES,** an individual,<br><br>               Plaintiffs,<br><br>               And<br><br>**HOWARD JARVIS TAXPAYERS ASSN.,** a nonprofit corporation**, SILICON VALLEY TAXPAYERS ASSN.,** a nonprofit corporation, **SILICON VALLEY PUBLIC ACCOUNTABILITY FOUNDATION,** a nonprofit corporation, **JIM BARRY,** an individual, and **GEORGE ARRINGTON,** an individual,<br><br>               Plaintiffs,<br><br>               v.<br><br>**CITY OF SAN JOSE, a public entity, JENNIFER MAGUIRE,** in her official capacity as City Manager of the City of San Jose, the **CITY OF SAN JOSE CITY COUNCIL, and ALL PERSONS INTERESTED in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee,**<br><br>               Defendants. | **Case Number: 5:22-cv-00501-BLF**<br>**Case Number: 5:22-cv-02365-BLF**<br><br>**CONSOLIDATED SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, INVALIDATION OF §§ 10.32.215 AND 10.32.230(B) OF CHAPTER 10.32 OF TITLE 10 OF THE SAN JOSE MUNICIPAL CODE, AND NOMINAL DAMAGES**<br><br>**Judge: Hon. Beth Labson Freeman** |



1    Plaintiffs by and through the undersigned counsel, hereby bring this consolidated action for

2    injunctive relief, a declaratory judgment, invalidation of the fee provisions, and nominal damages as a

3    result of the City of San Jose's unconstitutional and unlawful ordinance, specifically Part 6 of Chapter

4    10.32 of Title 10 of the San Jose Municipal Code (the "Ordinance").

5    In support of these requests, Plaintiffs state as follows:

6                                    **INTRODUCTION**

7    1.    The Second Amendment provides an "unqualified command": "the right of the people

8    to keep and bear Arms, shall not be infringed." *See New York State Rifle and Pistol Association, Inc.*

9    *v. Bruen*, 142 S.Ct. 2111, 2126 (2022) (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.

10   10 (1981); U.S. Const., Amend. 2.

11   2.    "The constitutional right to bear arms in public for self-defense is not 'a second-class

12   right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *New*

13   *York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, 2156 (2022) (quoting

14   *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality opinion)).

15   3.    The Second Amendment (incorporated through the Fourteenth Amendment)

16   "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *District of*

17   *Columbia v. Heller*, 554 U.S. 570, 592 (2008).  This right is particularly acute at home, "where the

18   need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628. Thus, the

19   conduct at issue in this case falls within the plain text of the Second Amendment and is

20   "presumptively protect[ed]" by the Constitution.  *Bruen*, 142 S.Ct. at 2130.

21   4.    The City of San Jose's insurance mandate is utterly inconsistent with "the Nation's

22   historical tradition of firearm regulation."  *Bruen*, 142 S.Ct. at 2130.  To the contrary, as the City's

23   Mayor highlighted in his own press release, the City of San Jose is "the *first* city in the United States

24   to enact an ordinance to require gun owners to purchase liability insurance."  *San Jose Mayor*

25   *Statement on Historic Passage of First in the Nation Gun Violence Reduction Ordinance* (Jan. 25,

26   2022) ("Liccardo Press Release") (attached as Exhibit A) (emphasis added)

27

28

                                        1

Consolidated Second Amended Complaint                              5:22-cv-00501-BLF

5.      The City of San Jose's fee requirement is nothing more than an attempt to impose costs on ordinary American citizens for no reason other than their decision to exercise their basic constitutional rights.

6.      The City of San Jose's ordinance thus flagrantly fails the test set forth in *Bruen* for assessing burdens on the exercise of the right to bear arms guaranteed by the Second Amendment to the Constitution of the United States just as surely as if the City had required individuals to have "defamation insurance" or to pay a "speech tax" before speaking in the town square or publishing a newspaper.

7.      To preserve the safety and core rights under the Constitution of the law-abiding citizens of the City of San Jose, as well as their rights under the California Constitution and the City Charter, this Court must invalidate and prevent Defendants from enforcing the unconstitutional and unlawful Ordinance.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the Second and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C § 1983. This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

9.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1) because Defendants are officials of the City of San Jose, which is within the geographical boundaries of the Northern District of California. Defendants are also residents of this State within the meaning of 28 U.S.C. § 1391(c).

10.     The Court has personal jurisdiction over the Defendants because the City of San Jose is within the State of California.

11.     The California Superior Court for the County of Santa Clara has jurisdiction over the *in rem* reverse validation action against all persons filed in that court pursuant to California Code of Civil Procedure sections 860 *et seq.* by Plaintiffs Howard Jarvis Taxpayers Association, *et al.*, which defendant City of San Jose removed to this Court.

Consolidated Second Amended Complaint                    5:22-cv-00501-BLF

**INTRADISTRICT ASSIGNMENT**

12.     This action is properly assigned to the San Jose Division, pursuant to Civil L.R. 3-2(e). A substantial part of the events giving rise to the claims occurred in Santa Clara County, California.

**PARTIES**

13.      Plaintiff National Association of Gun Rights ("NAGR") is a non-stock, nonprofit corporation incorporated under the laws of the Commonwealth of Virginia and has its principal place of business in Loveland, Colorado. NAGR is a grassroots organization whose mission is to defend the right to keep and bear arms under the Second Amendment and advance the constitutional right by educating the American people and urging them to action in public policy.  NAGR has members who would be subject to the Ordinance within the City of San Jose.

14.     Plaintiff Mark Sikes resides in San Jose, California. Sikes legally owns a gun, is not a peace officer, does not have a concealed carry permit, and does not meet the qualifications of CAL. GOV. CODE § 68632 (a) and (b) and, therefore, would be subject to the Ordinance if it were to go into effect.

15.     Plaintiffs NAGR and Mark Sikes are referred to collectively herein as "NAGR Plaintiffs."

16.     Plaintiff Howard Jarvis Taxpayers Association ("HJTA") is a nonprofit public benefit corporation, comprised of over 200,000 California members, organized and existing under the laws of California for the purpose, among others, of engaging in civil litigation on behalf of its members and all California taxpayers to ensure constitutionality in taxation. HJTA has members who reside in the City of San Jose, who legally own firearms, and who are subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

17.     Plaintiff Silicon Valley Taxpayers Association, Inc. ("SVTA") is a nonprofit public benefit corporation, comprised of members who reside in Santa Clara County, organized and existing under the laws of California for the purpose of advocating the reduction of taxes and acting on behalf of its members to achieve its tax reduction goals. SVTA has members who reside in the City of San Jose, who legally own firearms, and who are subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

18.     Plaintiff Silicon Valley Public Accountability Foundation ("SVPAF") is a nonprofit public benefit corporation, comprised of members who reside in Santa Clara County, organized and existing under the laws of California for the purpose of monitoring the policies and political actions of public officials in Santa Clara County to keep voters informed and residents represented in local decision-making. SVPAF has members who reside in the City of San Jose, who legally own firearms, and who are subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

19.     Plaintiff Jim Barry is a resident of San Jose who legally owns a firearm and is subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

20.     Plaintiff George Arrington is a resident of San Jose who legally owns a firearm and is subject to the Annual Gun Harm Reduction Fee that is the subject of this action.

21.     Plaintiffs HVTA, SVTA, SVPAF, Jim Barry and George Arrington are collectively referred to herein as "Howard Jarvis Plaintiffs."

22.     Defendant City of San Jose is a municipal corporation within the County of Santa Clara, California.[1]

23.     Defendant Jennifer Maguire ("Maguire") is the current and active City Manager for the City of San Jose. San Jose's Charter states that the City Manager is the "Chief Administrative Officer and head of the administrative branch of the City government." San Jose City Charter §§ 502, 701. "The City Manager shall be responsible for the faithful execution of all laws, provisions of this Charter, and acts of the Council which are subject to enforcement by the City Manager or by the officers who are under the City Manager's direction and supervision." *Id.*, § 701(d). Additionally, the City Manager is directly identified with enforcement authority throughout the Ordinance. Ordinance §§ 10.32.205, 210, 215, 235, & 250.

24.     Defendant San Jose City Council (the "City Council") is vested with authority under Article IV of the City of San Jose's City Charter (Ex. A). The Ordinance vests the City Council with authority to "set forth the schedule of fees and charges established by resolution of the City Council" and to "set forth…the schedule of fines" for those who violate the ordinance. *Id.*, § 10.32.215;

---

[1] *See City of San Jose City Charter, as amended* (Feb. 2021),
https://www.sanjoseca.gov/home/showpublisheddocument/13907/638058439112030000

Consolidated Second Amended Complaint                    5:22-cv-00501-BLF

10.32.250; 10.32.240.

25.     Defendants All Persons Interested in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee will be bound by any validation judgment issued in this case pursuant to California Code of Civil Procedure section 870.  Jurisdiction by the California court over All Persons was obtained by published summons pursuant to Code of Civil Procedure sections 861 and 862.

## STATEMENT OF FACTS

### Enactment of the Ordinance

26.     On June 29, 2021, the City Council directed San Jose City Attorney Nora Frimann "to return to Council with an ordinance for Council consideration that would require every gun owner residing in the City of San José, with certain exceptions, to obtain and maintain a City-issued document evincing payment of an annual fee, and attestation of insurance coverage for unintentional firearm-related death, injury, or property damage." Frimann Mem. re Gun Harm Reduction Ord. at 1 (Jan. 14, 202, 1 ("City Attorney Mem.") (a true and correct copy is attached as Exhibit B). Plaintiff NAGR immediately sent the City a cease and desist letter warning that the proposed ordinance was unconstitutional. *Ltr. from H. Dhillon and D. Warrington to San Jose City Council*, (July 14, 2021) (a true and correct copy is attached as Exhibit C).

27.     On January 14, 2022, in advance of the City Council's January 25 meeting, the City Attorney issued a memorandum in compliance with the City Council's directions that recommended the Council "[c]onsider approving an ordinance amending Title 10 of the San José Municipal Code to add Part 6 to Chapter 10.32 to reduce gun harm by: (a) requiring gun owners to obtain and maintain liability insurance; and (b) authorizing a fee to apply to gun harm reduction programs." City Attorney Mem. at 1. Under a section addressing penalties for noncompliance, the City Attorney stated that "[f]ailure to comply shall constitute a civil violation subjecting the owner to the temporary or permanent seizure of the gun, and under specified circumstances, a fine." *Id*. at 2.

28.     On January 21, 2022, Mayor Liccardo, Vice Mayor Jones, Councilmember Cohen, and Councilmember Carrasco issued "Directions" to the City Council, including to "[a]pprove the proposed ordinance," with certain modifications. *Mayor's Mem. to City Council* at 2 (Jan. 21, 2022) (a

Consolidated Second Amended Complaint                                    5:22-cv-00501-BLF

true and correct copy is attached as Exhibit D). The Mayor's Memorandum also noted that "Members of the California legislature are exploring bills to have law enforcement agencies seize guns as a sanction for violations of local gun regulations, with subsequent restoration of ownership as required by constitutional due process." *Id.* at 4 (emphasis added).

29.     On January 25, 2022, the City Council approved the ordinance through two votes regarding various changes. *Tuesday, January 25, 2022 City Council Meeting Synopsis* at 13 (a true and correct copy is attached as Exhibit E).

30.     The Ordinance requires any San Jose resident who owns a firearm to "obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy ... specifically covering losses or damages resulting from any accidental use of the Firearm." (San Jose Muni. Code § 10.32.210(A).).

31.     The Ordinance also requires San Jose gun owners to pay an "Annual Gun Harm Reduction Fee" to a "Designated Nonprofit Organization" that the City Manager will designate from time to time. The amount of the annual fee "will be set forth in the schedule of fees and charges established by resolution of the City Council." (Muni. Code § 10.32.215.) In the 2022/2023 schedule of fees, the Gun Harm Reduction Fee is set at $25 per year.

32.     "Designated Nonprofit Organization" is defined in the Ordinance as "an entity that qualifies as a nonprofit corporation under the federal internal revenue code and is designated pursuant to the City Manager's authority under Section 10.32.235," provided that "[n]o City official or employee shall sit on the board of directors of the Designated Nonprofit Organization." (Muni. Code § 10.32.205(B).) Section 10.32.235, in subdivision (A)(2), delegates authority to the City Manager for "[d]esignation of the nonprofit organization that will receive the Gun Harm Reduction Fee."

33.     The Ordinance provides basic guidelines for expenditure of the fee by the nonprofit organization. It says, "expenditures may include, but are not necessarily limited to the following: (1) Suicide prevention services or programs; (2) Violence reduction or gender based violence services or programs; (3) Addiction intervention and substance abuse treatment; (4) Mental health services related to gun violence; or (5) Firearms safety education or training." (Muni. Code § 10.32.220(A).).

34.     The Ordinance further states, "The Designated Nonprofit Organization shall spend

Consolidated Second Amended Complaint                         5:22-cv-00501-BLF

every dollar generated from the Gun Harm Reduction Fee, minus administrative expenses, exclusively for programs and initiatives designed to (a) reduce the risk or likelihood of harm from the use of firearms in the City of San Jose, and (b) mitigate the risk of physical harm or financial, civil, or criminal liability that a San Jose firearm owner or her family will incur through her possession of firearms." (Muni. Code § 10.32.220(C).). Except for these basic guidelines, the Ordinance provides that "the City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended." (Muni. Code § 10.32.220(C).)

35.    A gun owner's failure to pay the required fee to the designated private organization is punishable by a fine (Muni. Code § 10.32.240(A)) and confiscation of the owner's firearms (Muni. Code § 10.32.245).

36.    The Mayor immediately issued a press release the night of the vote, in which he boasted that "Tonight San José became *the first city in the United States* to enact an ordinance to require gun owners to purchase liability insurance, and to invest funds generated from fees paid by gun owners into evidence-based initiatives to reduce gun violence and gun harm." Liccardo Press (emphasis added).

37.    Within 24 hours, articles were published about San Jose enacting an unprecedented regulation of gun ownership, including in the San Francisco Chronicle and the Los Angeles Times. *See* Lauren Hernández, *Gun Owners In San Jose Must Buy Liability Insurance Under Newly Passed First-In-The-Nation Law,* SAN FRANCISCO CHRONICLE (Jan. 26, 2022) https://www.sfchronicle.com/bayarea/article/Gun-owners-in-San-Jose-must-buy-liability-16804951.php  (a true and correct copy is attached as Exhibit F) ("The San Jose City Council adopted a measure Tuesday night requiring gun owners in the South Bay city to buy liability insurance for their firearms, city officials said.  The ordinance – which city officials said marks *the first such law for a city, state, or other jurisdiction in the country* . . . ." (emphasis added)); Olga R. Rodriguez and Juliet Williams, *San Jose Approves First Law In U.S. Requiring Gun Owners To Have Insurance*, LOS ANGELES TIMES (Jan. 25, 2022), https://www.latimes.com/california/story/2022-01-25/san-jose-gun-liability-insurance (a true and correct copy is attached as Exhibit G) ("The city of San Jose voted Tuesday night to require gun owners to carry liability insurance *in what's believed to be the first*

Consolidated Second Amended Complaint                                    5:22-cv-00501-BLF

*measure of its kind in the United States*. The San Jose City Council overwhelmingly approved the measure despite opposition from some gun owners who said it would violate their 2nd Amendment rights." (emphasis added)).

38.     On February 8, 2022, the City Council voted a second time to approve the Ordinance.

39.     On October 21, 2022, City Manager Regulations for the Ordinance went into effect (attached as Exhibit H ).

40.     Section 2.1 of the City Manager Regulations provides "Firearm owners residing in San Jose who are required by SJMC section 10.32.210 to obtain liability insurance shall obtain such insurance by January 1, 2023."

41.     Fines for violations of the Ordinance begin at $250 for a first offense and increase to $500 for a second offense and $1000 for a third offense within a year.

42.     Section 2.2 of the Regulations state "[t]his version of the City Manager Regulations for the Reduction of Gun Harm Ordinance does not set a payment date; a payment date will be established in an amended version of these regulations to be issued in the future.  Individuals covered by the Gun Harm Reduction Fee are not required to pay the fee until a payment date is set through the amended regulations.

43.     With respect to the purported Gun Harm Reduction Fee, the City provided to the District Court an Implementation Timeline. Per the Timeline, "issu[ing] a Request for Proposals to procure the designated nonprofit" would not occur until September 2022. The Timeline projected "December 2022" as the date by which the City Manager would "finalize contract with designated nonprofit."

44.     The District Court granted the City's motion to dismiss plaintiffs' claims as unripe, with leave to amend the complaint by February 2, 2023, based on the Timeline showing that the City Manager would issue a Request for Proposals in September, then select a nonprofit from among the proposals received and finalize a contract by the end of December.

45.     On January 6, 2023, the City filed a Status Report in which it represented that the City Manager "has now completed all relevant tasks in the Implementation Timeline, except for the task listed as 'Finalize contract with designated nonprofit' with an estimated completion date of December

Consolidated Second Amended Complaint                    5:22-cv-00501-BLF

2022." (01/06/23 Status Report, ECF #85 at 3:6).

46.     Yet the City Manager had not "issu[ed] a Request for Proposals to procure the designated nonprofit" which, according to the Timeline, was supposed to be done in September. Instead, the City Manager issued something else – a "Request for Information." The Status Report explained the difference: "RFIs are used by the City to solicit information about potential solutions and *do not typically result in a contract award*, whereas RFPs are used by the City to gather responses and pricing from potential contractors to deliver a specific City defined scope of work, with the purpose of awarding one or more contracts at the end of the RFP process." (ECF #85 at 3:25.).

47.     The Status Report informed the Court that no qualified organizations responded to the City Manager's Request for Information (*id.* at 3:13.) so the City Manager "has decided that the best approach to progress implementation at this point is to ... publish a full Request for Proposals .... Unfortunately, the lack of satisfactory RFI responses and the upcoming RFP process will delay the steps necessary for full implementation." (*Id.* at 3:20.) The Status Report offered no date by which these overdue "steps necessary for full implementation" might be completed.

48.     Despite the City's delay in designating a nonprofit, and its equivocation on the ultimate amount of the fee, this controversy is ripe because a fee of $25 has been imposed for the 2022/2023 fiscal year and, although the City is not currently enforcing proof of payment (because there is no nonprofit to accept payment), the City has *not* waived the fee. The the 2022/2023 fee apparently will be due and payable once a nonprofit has been designated.

49.     This controversy is ripe because, regardless of the ultimate identity of the nonprofit organization, the City's Ordinance requires the nonprofit to expend the fee providing services such as suicide prevention, gender based violence prevention, addiction intervention and substance abuse treatment, and mental health counseling for victims of gun violence, which services will be available to the general public, not just gun owners, and which gun owners are not required to, and may not choose to, utilize. Because its revenue will fund public services, not services requested by each payer, the "fee" is a tax under California law.

### The Burdens of the Ordinance

50.     The Ordinance will require an estimated 50,000-55,000 gun-owning San Jose Citizens,

Consolidated Second Amended Complaint                    5:22-cv-00501-BLF

minus a few exceptions, to obtain an insurance policy and pay annual fees simply to exercise the same constitutional right to own a gun that existed prior to this ordinance. *Liccardo Mem. re Gun Harm Reduction Ord*. (Jan., 19, 2022) (a true and accurate copy is attached as Exhibit I).

51.     The Ordinance states that "[t]o the extent allowed by law, the Firearm or Firearms of a person that [*sic*] is not in compliance with [the Ordinance] may be impounded subject to a due process hearing."  Ordinance § 10.32.245.  Further, "[a]ny violation" of the Ordinance is "punishable by an administrative citation," "fines for violations," and "all other civil and administrative remedies available to the City." *Id*., § 10.32.240; *see also* City Attorney Mem. at 2 ("Failure to comply [with the Ordinance] shall constitute a civil violation subjecting the owner to the temporary or permanent seizure of the gun, and under specified circumstances, a fine."). At present, the City has no authority to seize a person's gun for violating the Ordinance, but "[m]embers of the California legislature are exploring bills to have law enforcement agencies seize guns as a sanction for violations of local gun regulations . . ." Mayor's Mem. to City Council, Jan. 21, 2022.

52.     The Ordinance targets guns in the home. It does not apply to people who have a license to carry a concealed weapon. *Id*., § 10.32.225. Additionally, absent a concealed carry permit, there is no other way to carry a firearm in San Jose. *See* CAL. PENAL CODE §§ 25850, 26150, 26155, 26350, 26400.

### Insurance Requirement

53.     The Ordinance conditions the constitutional right to own a gun on the payment of an unstated amount for insurance.  It states that "A person who resides in the City of San Jose and owns or possesses a Firearm in the City shall obtain and continuously maintain in full force and effect a homeowner's, renter's or gun liability insurance policy…specifically covering losses or damages resulting from any accidental use of the Firearm, including but not limited to death, injury, or property damage." Ordinance § 10.32.210.A.

54.     This requirement does not contain any information about minimum insurance coverage thresholds or premiums. Thus, the City of San Jose has conditioned the constitutional right of its law-abiding citizens to own a gun on an unstated, unregulated price to be set by an industry of for-profit private sector corporations.

Consolidated Second Amended Complaint                    5:22-cv-00501-BLF

55.     Moreover, the City's findings did not include any evidence that there will always be insurance policies "specifically covering losses or damages resulting from any accidental use of" firearms, or what any such policy will cost. *See* Ordinance § 10.32.200.B.10 ("[i]njuries from unintentional shootings . . . are *generally* insurable" (emphasis added)).

56.     The Ordinance does nothing to ensure that insurance companies will provide policies "specifically covering" losses arising from accidental firearm use for any and every citizen who is subject to the Ordinance, which means the City's insurance mandate would establish a precondition to gun ownership that empowers for-profit insurance companies (with or without government pressure) to prohibit persons from exercising their Second Amendment rights.

### *Fee Requirement*

57.     The second primary component of the Ordinance is the imposition of a "fee" for owning a gun. The Ordinance states that "A person who resides in the City and owns or possesses a Firearm in the City shall pay an Annual Gun Harm Reduction Fee to the Designated Nonprofit Organization each year." Ordinance § 10.32.215. No fee amount is specified, nor is there criteria for how to calculate the fee. *Id*. Rather, Defendant City Council reserved the right for itself to determine the fee amount at a later date. *Id*. This fee is currently set at an amount of $25, but is subject to change. Memorandum from Sarah Zarate to San Jose Mayor and City Council Re: Gun Harm Reduction Ordinance Update (July 1, 2022), available at sanjoseca.gov/home/showpublished document/87508.

58.     The destination of the money is to a still undetermined nonprofit. That determination is delegated to Defendant Maguire. *Id*., §§ 10.32.205.B; 10.32.220; *see also* City Manager Regulations at § 2-2 ("This version of the City Manager Regulations for the Reduction of Gun Harm Ordinance does not set a payment date; a payment date will be established by an amended version of these regulations to be issued in the future.").

59.     The nonprofit fee in the Ordinance is not to defray the City's administrative costs. Rather, "all monies…shall be expended by the Designated Nonprofit Organization…." *Id*., § 10.32.220.A.

60.     The only selection criteria for the Designated Nonprofit Organization is that it

11

Consolidated Second Amended Complaint                          5:22-cv-00501-BLF

"provid[e] services to residents of the City that own or possess a Firearm in the City or to members of their household, or to those with whom they have a close familial or intimate relationship." These services "include, but are not necessarily limited to" suicide prevention services or programs, violence reduction or gender based violence services or programs, mental health services related to gun violence, firearms safety education or training, or addiction intervention and substance abuse treatment. *Id.*, § 10.32.220.A (emphasis added).

61.    "[T]he City shall not specifically direct how the monies from the Gun Harm Reduction Fee are expended" by the nonprofit. Id., § 10.32.220.C.

62.    The fee thus functions to compel gun owners to give their money to a government approved nonprofit to spend on vaguely specified and/or unspecified programs at the nonprofit's discretion, none of which are services that the City is obligated to perform. While the nonprofit must make these services available to "residents of the City that own or possess a Firearm," it must also make those services available to non-gun owning "members of their household," and is nowhere precluded from making those services available to the general public. Indeed, the nature of many of the services listed in the Ordinance (suicide prevention, gender based violence prevention, addiction intervention and substance abuse treatment, mental health counseling for victims of gun violence, and gun safety "education") covers a much wider population than just gun owners. This compelled donation by gun owners to one City favored nonprofit to provide public "education," which may include advocating about the dangers of gun ownership, and other services with little to no connection to the payer's ownership of a gun and little or no municipal oversight is not only obnoxious to the Constitution, it is an invitation to corruption and waste.

63.    By its plain terms, this fee and insurance requirement do not compensate the City to cover reasonable costs of governmental activity, because they are not for government activity. Further, the manner in which those costs are allocated to gun owners do not bear a fair or reasonable relationship to the gun owner's burdens on, or benefits received from, the City's governmental activity.

64.    Indeed, the Ordinance also authorizes a separate fee just to recoup the costs associated

12

Consolidated Second Amended Complaint                                    5:22-cv-00501-BLF

in administering the Ordinance. *Id*. § 10.32.250.

65.     Accordingly, as discussed further below, the "Annual Gun Harm Reduction Fee"—unconnected to the cost of City services and for unspecified programs outside of the City's control—and the mandatory insurance requirement backed by the threat of fines are nothing more than costs that the City is imposing on the exercise of a constitutional right.

**The Second Amendment**

66.     The Second Amendment to the United States Constitution states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

67.     "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010).

68.     Consistent with this protection, in *Bruen* the Supreme Court held "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S.Ct. at 2126.

69.     "As [the Supreme Court] explained in *Heller*, the 'texual elements' of the Second Amendment's operative clause . . . 'guarantee the individual right to possess and carry weapons in case of confrontation.'" *Bruen*, 142 S.Ct. at 2134 (quoting *Heller*, 554 U.S. at 592). Thus, in *Heller* and *McDonald*, the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary law-abiding citizen to possesses a handgun in the home for self-defense." *Bruen*, 142 S.Ct. at 2122.

70.     "[T]he need for armed self-defense is perhaps 'most acute' in the home," *Bruen*, 142 S.Ct. at 2135 (quoting *Heller*, 544 U.S. at 628) but also extends to "a right to 'bear' arms in public for self-defence." *Id*.

71.     Thus, NAGR Plaintiffs assert that the Ordinance burdens an activity that falls within the plain text of the Second Amendment: the right to keep and bear arms in the home for self-defense and the right to bear arms in public for self-defense, including when transporting firearms from one location to another.

Consolidated Second Amended Complaint                              5:22-cv-00501-BLF

72.     As the Supreme Court has noted, "*Heller* and *McDonald* expressly rejected the application of any 'judge-empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests.'"  *Bruen*, 142 S.Ct. at 2129 (quoting *Heller*, 554 U.S. at 634) (other citations omitted).  Thus, "[t]he Second Amendment 'is the very *product* of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Bruen*, 142 S.Ct. at 2131 (quoting *Heller*, 544 U.S. at 635).

73.     Accordingly, government may not justify regulations that infringe upon the Second Amendment by reference to some "important interest" or balancing test; "[o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's 'unqualified command.'"  *Bruen*, 142 S.Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

74.     The problem of gun violence in densely populated communities is not new.  Adopting an insurance requirement and/or fee for all gun owners is a solution "that the Founders themselves could have adopted to confront that problem,"  *Bruen*, 142 S.Ct. at 2131, but in fact did not adopt.

75.     To the contrary, the City and its leaders have emphasized the novelty of the City's insurance and fee requirements.

76.     Local governments, including the City of San Jose, are bound by the Second Amendment because of the Fourteenth Amendment. *See Bruen*, 142 S.Ct. 2137 ("Strictly speaking, New York is bound to respect the right to keep and bear arms because of the Fourteenth Amendment."); *McDonald*, 561 U.S. at 790; *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012).

77.     Second Amendment rights are not subject to a free floating balancing test or judged against the "important interests" identified by the government.

78.     The Ordinance cites a number of statistics about gun violence, but provides no examples of how it is consistent with this Nation's historical tradition of firearms ownership.  To the contrary, the Mayor and other sources, apparently relying on city officials, have emphasized the unique, "first of its kind" nature of the insurance requirement.

Consolidated Second Amended Complaint                                    5:22-cv-00501-BLF

79.     Although the Supreme Court in *Bruen* noted that there were past laws that required individuals "reasonably accused of intending to injure another or breach the peace" or "threatening to do harm" to obtain a bond in order to carry a gun *in public, see Bruen* at 2120, 2148, there is no historical tradition of requiring <u>every</u> gun owner to purchase insurance for the mere ownership of guns, even if the guns stay locked within the home and are never carried in public.

80.     Moreover, while state actors may collect a fee to "meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed," *Cox v. New Hampshire*, 312 U.S. 569 (1941), they "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943).  In the Second Amendment context, at least one Court of Appeals has stated "imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2nd Cir. 2013).

81.     Neither the insurance premium nor the fee to be paid to the City's chosen nonprofit are designed to defray the City's administrative costs.  Instead, they impose a charge simply for the enjoyment of a right guaranteed by the federal constitution.

82.     In sum, the NAGR Plaintiffs assert that the insurance requirement in the Ordinance violates the Second Amendment, as incorporated by the Fourteenth Amendment, by placing a burden on the right to keep and bear arms that is inconsistent with this Nation's history and tradition of firearms regulation.

83.     Accordingly, the Plaintiffs request that this court issue preliminary and permanent injunctions preventing Defendants from enforcing the insurance mandate, fee requirement, and their associated enforcement provisions of Ordinance pursuant to 42 U.S.C. § 1983, declare the insurance mandate, fee provisions, and associated enforcement provisions of the Ordinance unconstitutional under the Constitution of the United States,  issue nominal damages, and order any other relief this Court deems necessary and proper.

**FIRST CLAIM FOR RELIEF (NAGR PLAINTIFFS ONLY)**
**Violation of the Second and Fourteenth Amendments (42 U.S.C. § 1983)**
***The Ordinance requiring owners of guns to purchase insurance and pay a fee***
***violates the Second and Fourteenth Amendments to the United States Constitution.***

84.     NAGR Plaintiffs incorporate by reference and re-allege each of the Paragraphs set forth above.

85.     The Second Amendment of the United States Constitution guarantees "the right of the people to keep and bear arms" and that right "shall not be infringed." U.S. CONST., amend. II.

86.     In a Second Amendment inquiry, a Court asks whether the "Second Amendment's plain text covers an individual's conduct." *Bruen*, 142 S.Ct. at 2126.  If so, "government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearms regulation." *Id*.

87.     The Ordinance's insurance and/or fee requirements imposes a cost on Plaintiffs and all gun owners merely for choosing to keep and bear arms in the home.  Thus, the Ordinance places a burden on conduct central to the plain text of the Second Amendment.

88.     The City has not (and cannot) demonstrated that the Ordinance is consistent with this Nation's historical tradition of firearms regulation.  To the contrary, the City has emphasized the new and unique nature of the insurance and fee provisions.

89.     Thus, the insurance and fee provisions of the Ordinance violate the Second and Fourteenth Amendments to the Constitution of the United States.

90.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Ordinance.

91.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to preliminary and permanent injunctive relief invalidating and restraining enforcement of the Ordinance as well as declaratory relief.

92.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42

Consolidated Second Amended Complaint                                   5:22-cv-00501-BLF

U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF (ALL PLAINTIFFS)**
**Violation of the First and Fourteenth Amendments (42 U.S.C. § 1983)**
***The Ordinance requiring owners to pay a fee to a nonprofit organization to exercise their constitutional rights violates the First and Fourteenth Amendments to the United States Constitution.***

93.     Plaintiffs repeat the allegations above as though fully set forth herein.

94.     The First Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides, "Congress shall make no law … abridging the freedom of speech ... or the right of the people peaceably to assemble."

95.     Freedom of speech includes the right to not speak and the right to not be forced by the government to support someone else's speech, particularly when you disagree with their message. The right to peaceably assemble includes the right to associate with others around a common cause and the right to not be forced by the government to associate with or support someone else's organization, particularly a group with which you would not voluntarily assemble.

96.     By requiring San Jose gun owners to pay an Annual Gun Harm Reduction Fee to a private nonprofit organization that the City Manager will designate, the Ordinance forces San Jose gun owners to associate with or support that private group and to fund their message, in violation of the gun owners' rights of free speech and association under the United States Constitution.

97.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the fee provisions of the Ordinance.

98.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to preliminary and permanent injunctive relief invalidating and restraining enforcement of the Ordinance as well as declaratory relief.

99.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF (ALL PLAINTIFFS AS DESCRIBED BELOW)**
**Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202**
***Plaintiffs are entitled to declaratory relief.***

100.    Plaintiffs incorporate by reference and re-allege herein each of the Paragraphs set forth above.

101.    To the extent that each of the claims above have not already established a remedy, Plaintiffs are entitled to declaratory relief holding that the Ordinance violates Plaintiffs' individual rights under the Constitution of the United States and is otherwise invalid, are entitled to preliminary and permanent injunctions preventing the enforcement of the Ordinance, nominal damages, and further relief that this Court deems necessary or proper.

102.    NAGR Plaintiffs are entitled to declaratory relief with respect to both the insurance mandate and the fee.  Based on their claims above, Howard Jarvis Plaintiffs are entitled to declaratory relief based on the First Amendment with respect to the fee provision of the Ordinance.

**FOURTH CLAIM FOR RELIEF (HOWARD JARVIS PLAINTIFFS ONLY)**
**Violation of California Rights of Speech and Association**

103.    Except as specified above, the Howard Jarvis Plaintiffs repeat the allegations contained in the Paragraphs above as though fully set forth herein.

104.    Article I, sections 2 and 3 of the California Constitution provide, "A law may not restrain or abridge liberty of speech," and "The people have the right to ... assemble freely to consult for the common good."

105.    Liberty of speech includes the right to not speak and the right to not be forced by the government to support someone else's speech, particularly when you disagree with their message. The right to assemble freely includes the right to associate with others around a common cause and the right to not be forced by the government to associate with or support someone else's organization, particularly a group with which you would not voluntarily assemble.

18

106.     By requiring San Jose gun owners to pay an Annual Gun Harm Reduction Fee to a private nonprofit organization that the City Manager will designate, the Ordinance forces San Jose gun owners to associate with or support that private group and to fund their message, in violation of the gun owners' rights of free speech and association under the California Constitution.

### FIFTH CLAIM FOR RELIEF (HOWARD JARVIS PLAINTIFFS ONLY)
### Violation of Doctrine of Unconstitutional Conditions

107.     Except as set forth above, the Howard Jarvis Plaintiffs repeat the allegations contained in the Paragraphs above as though fully set forth herein.

108.     The Second Amendment of the United States Constitution provides, "the right of the people to keep and bear arms, shall not be infringed."

109.     Howard Jarvis Plaintiffs gun owners wish to continue exercising their rights under the United States and California constitutions to protect their property and personal safety by keeping and bearing arms. However, the Ordinance has placed a condition on the continued exercise of those rights: any gun owner who fails to pay the required fee to the designated private organization may be forced to surrender his firearms to the City. (Muni. Code § 10.32.245.)

110.     The City has represented to the District Court that section 10.32.245 does not currently threaten gun owners with confiscation of their firearms because it reads, "*To the extent allowed by law*, the Firearm or Firearms of a person that is not in compliance with this Part may be impounded subject to a due process hearing" and, according to the City, the law does not currently authorize city police to confiscate a firearm with or without a due process hearing.

111.     The Howard Jarvis Plaintiffs believe that representation is incorrect. City police are authorized by law to, and often do, confiscate firearms when carried or used in violation of the law. If a student brings a firearm to school, if someone is carrying a firearm in public without a CCW permit, if someone with a CCW permit is carrying a firearm while intoxicated, if someone purchases a firearm

Consolidated Second Amended Complaint                                    5:22-cv-00501-BLF

on the street without going through a federally licensed dealer, if someone discharges a firearm in the air on New Year's Eve, and for a host of other reasons, city police are authorized to, and often do, confiscate firearms when carried or used in violation of the law.

112.    The City's Ordinance makes it a violation of the law to own a gun in the City of San Jose unless you timely pay the annual Gun Harm Reduction Fee. San Jose Municipal Code section 1.08.010 provides, "No person shall violate any provision or fail to comply with any of the requirements of this Code or of any other ordinance of the city. Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this Code or of any city ordinance, other than administrative provisions thereof, shall be guilty of a misdemeanor, unless the violation of such provision is designated as an infraction or is a parking violation. The Code provisions for which a violation is an infraction are set forth in Section 1.08.020. The Code provisions for which a violation is a parking violation are set forth in Section 1.08.025." Possessing a gun without paying the fee is not an infraction. It is a misdemeanor violation of the law, and city police can confiscate a gun that is kept or carried in violation of the law.

113.    Howard Jarvis Plaintiffs gun owners' right to keep a gun in their home for protection is "inalienable." It is not a right granted by the City of San Jose that can be withheld or revoked by the City if gun owners do not comply with conditions contrived by the City. Under the doctrine of unconstitutional conditions, the City can no more charge a fee to own a gun than it could charge a fee to own a Bible.

### SIXTH CLAIM FOR RELIEF (HOWARD JARVIS PLAINTIFFS ONLY)
### Special Tax Lacking Voter Approval

114.    Except as set forth above, the Howard Jarvis Plaintiffs repeat the allegations contained in the Paragraphs above as though fully set forth herein.

115.    The Annual Gun Harm Reduction Fee is imposed by the City of San Jose.

Consolidated Second Amended Complaint                           5:22-cv-00501-BLF

116.    The Annual Gun Harm Reduction Fee is a compulsory exaction.

117.    Article XIII C, section 1(e) of the California Constitution defines a "tax" as "any levy, charge, or exaction of any kind imposed by a local government" unless it fits one of seven limited exceptions.

118.    Although labeled a "fee" by the City, the Annual Gun Harm Reduction Fee does not qualify for any exception from the definition of a "tax" enumerated in article XIII C, section 1(e). Therefore it is a tax.

119.    Taxes are either "general taxes" or "special taxes." A "special tax" is "any tax imposed for specific purposes." (Cal. Const., art. XIII C, § 1(d).) The Annual Gun Harm Reduction Fee is imposed ostensibly for the purpose of reducing gun harm. Therefore, it is a special tax.

120.    Article XIII C, section 2(d) of the California Constitution provides, "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote."

121.    The Annual Gun Harm Reduction Fee was not submitted to the electorate or approved by a two-thirds vote. The fes is therefore invalid.

**SEVENTH CLAIM FOR RELIEF**
**Unconstitutional Delegation of Power to Tax**

122.    Except as set forth above, the Howard Jarvis Plaintiffs repeat the allegations contained in the Paragraphs above as though fully set forth herein.

123.    Only the government possesses the power to tax.

124.    The power to tax includes the power to collect taxes and appropriate tax revenues.

125.    Under the Ordinance, the Annual Gun Harm Reduction Fee will be collected by the private nonprofit organization that the City Manager will designate. That revenue will not be remitted to the City, but will be appropriated by the private organization. San Jose Municipal Code section 10.32.220(C) states, "The Designated Nonprofit Organization shall spend every dollar generated from

21

1  the Gun Harm Reduction Fee," and "the City shall not specifically direct how the monies from the

2  Gun Harm Reduction Fee are expended."

3      126.    Under article XIII, section 31 of the California Constitution, the power to tax may not

4  be granted to a private entity. It provides, "The power to tax may not be surrendered or suspended by

5  grant or contract." Similarly, article XI, section 11 prohibits the delegation of local powers to private

6  entities. It prohibits "delegat[ing] to a private person or body power to make, control, appropriate,

7  supervise, or interfere with county or municipal corporation improvements, money, or property, or to

8  levy taxes or assessments, or perform municipal functions."

9      127.    The Ordinance unconstitutionally delegates some of the City's power to tax

10  and appropriate tax revenues to a private organization, not answerable to the voters,

11  that the City Manager will designate.

12  **PRAYER FOR RELIEF**

13      WHEREFORE, Plaintiffs pray, on behalf of themselves and their members where applicable,

14  for the following:

15      A.    Preliminary and permanent injunctions enjoining Defendants and all successors in

16          office from enforcing the insurance mandate, fee requirement, and related enforcement

17          provisions in the Ordinance;

18      B.    A declaratory judgment that the insurance mandate, fee requirement, and related

19          enforcement provisions in the Ordinance violate the First, Second, and Fourteenth

20          Amendments of the United States Constitution;

21      C.    An Order invalidating sections 10.32.215 and 10.32.230(B) of chapter 10.32 of title 10

22          of the San Jose Municipal Code;

23      D.    Nominal damages;

24      E.    Costs and attorneys' fees, including those authorized by 42 U.S.C. § 1988; and

25      F.    Any other relief as this Court, in its discretion, deems just and appropriate.

26

27

28

Consolidated Second Amended Complaint            5:22-cv-00501-BLF

Dated: February 2, 2023                    DHILLON LAW GROUP INC.


By:  /s/ David A. Warrington
Harmeet K. Dhillon
Michael A. Columbo
Mark P. Meuser
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
(415) 433-1700

David A. Warrington*
Curtis M. Schube*
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
(571) 400-2121

*Admitted *pro hac vice*

*Attorneys for NAGR Plaintiffs*

JONATHAN M. COUPAL (SBN: 107815)
TIMOTHY A. BITTLE (SBN: 112300)
LAURA E. DOUGHERTY (SBN: 255855)
Howard Jarvis Taxpayers Foundation
1201 K Street, Suite 1030
Sacramento, CA 95814
Telephone: (916) 444-9950
Email: tim@hjta.org

*Attorneys for Howard Jarvis Plaintiffs*

Consolidated Second Amended Complaint                    5:22-cv-00501-BLF