JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Defendants City of San Jose, et al.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.**, a nonprofit corporation, and **MARK SIKES**, an individual,<br><br>And<br><br>**HOWARD JARVIS TAXPAYERS ASSN.**, a nonprofit corporation, **SILICON VALLEY TAXPAYERS ASSN.**, a nonprofit corporation, **SILICON VALLEY PUBLIC ACCOUNTABILITY FOUNDATION,** a nonprofit corporation, **JIM BARRY**, an individual, and **GEORGE ARRINGTON**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE**, a public entity, **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, **CITY OF SAN JOSE CITY COUNCIL**, and **ALL PERSONS INTERESTED** in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee,<br><br>Defendants. | Case No. 5:22-cv-00501-BLF<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINT UNDER FEDERAL RULES 12(b)(1) AND 12(b)(6)**<br><br>Date:     June 15, 2023<br>Time:    9:00 a.m.<br>Judge:   Hon. Beth Labson Freeman<br>Dept.:    San Jose Courthouse, Courtroom 3<br>            (5th Floor) |

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3

     **PLEASE TAKE NOTICE** that on June 15, 2023, at 9:00 a.m., or as soon thereafter as the

4

matter may be heard, in the courtroom of the Honorable Beth Labson Freeman, United States District

5

Judge of the Northern District of California, located at 280 South First Street, San Jose, California

6

95113, Defendants City of San Jose, Jennifer Maguire (in her official capacity as City Manager), and

7

the City of San Jose City Council (collectively, the "City" or "Defendants") will and hereby do move

8

this Court to dismiss Plaintiffs' Consolidated Second Amended Complaint (ECF No. 94) in its entirety

9

under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack ripeness and standing, and under Rule

10

12(b)(6) for failure to state a claim upon which relief can be granted.

11

     This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of

12

Points and Authorities; the accompanying declaration of Tamarah P. Prevost and all exhibits thereto;

13

the Proposed Order; the anticipated reply brief; and any other papers Defendants may file in support of

14

the Motion, as well as all judicially noticeable facts, the files and records in this action, and such other

15

evidence and argument as may be provided to the Court at or before the hearing.

16

17

Dated:  February 16, 2023           **COTCHETT, PITRE & McCARTHY, LLP**

18

                   By:   */s/ Tamarah P. Prevost*

19

                         Joseph W. Cotchett
                         Tamarah P. Prevost
                         Andrew F. Kirtley

20

21

                   *Attorneys for Defendants City of San Jose, et al.*

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

I.  STATEMENT OF ISSUES TO BE DECIDED ....................................................1

II.  INTRODUCTION ...............................................................................................1

III.  BACKGROUND AND PROCEDURAL HISTORY ...........................................3

    A.  The Ordinance ...........................................................................................3

        1.  Enactment......................................................................................3

        2.  Findings and Purposes ..................................................................3

        3.  Requirements and Implementation ...............................................4

            a.  The Insurance Requirement ...............................................4

            b.  The Fee Requirement .........................................................5

            c.  Compliance and Enforcement ............................................6

    B.  Procedural History .....................................................................................7

        1.  The NAGR Plaintiffs .....................................................................7

        2.  The HJTA Plaintiffs ......................................................................7

        3.  Plaintiffs' Claims in the SAC .......................................................8

IV.  LEGAL STANDARDS..........................................................................................8

    A.  Rule 12(b)(1) .............................................................................................8

    B.  Rule 12(b)(6) .............................................................................................9

    C.  Facial Challenges to Laws .......................................................................10

V.  ARGUMENT .......................................................................................................10

    A.  The NAGR Plaintiffs' Second Amendment Claim Challenging the
        Insurance Requirement Should Be Dismissed. ........................................10

        1.  The Insurance Requirement Does Not Infringe on Conduct that
            Falls Within the Plain Text of the Second Amendment...............11

        2.  The Insurance Requirement Is Consistent with the Nation's
            Historical Tradition of Firearm Regulation.................................13

    B.  Plaintiffs' Claims Challenging the Fee Requirement Should Also Be
        Dismissed. ................................................................................................16

        1.  Claims challenging the Fee requirement are still unripe for review. ...........16

2.   The Fee Requirement Does Not Violate the Right to Keep and Bear Arms. .................................................................................... 20

a.   Plaintiffs' Second Amendment Claim (Claim 1) ............................ 20

b.   The HJTA Plaintiffs' Unconstitutional Conditions Claim (Claim 5) 21

3.   Plaintiffs Fail to State a Derivative Declaratory Relief Claim (Claim 3). .................................................................................... 22

4.   The Fee is not a "tax" under the California Constitution (Claims 6 and 7) ........................................................................................ 22

a.   HJTA Plaintiffs' Article XIII C Claim (Claim 6) ......................... 23

b.   HJTA Plaintiffs' tax-delegation claim (Claim 7) ......................... 24

C.   Plaintiffs' Claims Should Be Dismissed Without Leave to Amend. ..................... 25

VI.   CONCLUSION ......................................................................................... 25

1

2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)..........................................................................................16

6

*Americans for Prosperity Found. v. Bonta*,
7
   141 S.Ct. 2373 (2021)......................................................................................10

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................9
9

10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................9

11

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
12
   598 F.3d 1115 (9th Cir. 2010)..........................................................................17

13

*Cramer v. Brown*,
14
   2012 WL 13059699 (C.D. Cal. Sept. 12, 2012)................................................16

15

*Heller v. District of Columbia*,
   801 F.3d 264 (D.C. Cir. 2015) ........................................................................21

16

17

*Jackson v. City and County of San Francisco*,
   746 F.3d 953 (9th Cir. 2014)............................................................................10

18

*Kokkonen v. Guardian*,
19
   511 U.S. 375, 377 (1994) ...............................................................................8, 9

20

*Kwong v. Bloomberg*,
   723 F.3d 160 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2696 (2014) ....................21

21

22

*Nat'l Park Hosp. Assn. v. Dep't. of Interior*,
   538 U.S. 803 (2003)..........................................................................................17

23

*O'Connell v. Gross*,
24
   No. CV 19-11654-FDS, 2020 WL 1821832 (D. Mass. Apr. 10, 2020)...........21

25

*Parks Sch. of Bus. v. Symington*,
   51 F.3d 1480 (9th Cir. 1995)...............................................................................9

26

*Reno v. Catholic Soc. Servs., Inc.*,
27
   509 U.S. 43 (1993)..............................................................................................9

28

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004)..............................................................................9

*Scott v. Pasadena Unified Sch. Dist.*,
  306 F.3d 646 (9th Cir. 2002)..............................................................................17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)................................................................................9

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) (en banc)..............................................................9

*Toilet Goods Ass'n, Inc. v. Gardner*,
  387 U.S. 158 (1967)..............................................................................................16

*United States v. Power Co.*,
  2008 WL 2626989 (D. Nev. June 26, 2008) .........................................................20

*Vieux v. Easy Bay Reg'l Park Dist.*,
  906 F.3d 1330 (9th Cir. 1990)............................................................................17

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008).............................................................................................10

**Rules**

Federal Rules of Civil Procedure:

  Rule 12(b)(1).............................................................................................8, 9, 25

  Rule 12(b)(6)...................................................................................................9, 25

**Ordinances**

§§ 10.32.215, 10.32.235(A), 10.32.240(B)..............................................................3

§ 10.32.200(A) ............................................................................................................3

§ 10.32.200(B)(10)-(13)............................................................................................3

§ 10.32.200(B)(11)......................................................................................................3

§ 10.32.200(B)(4)-(10)..............................................................................................4

§ 10.32.255(A)-(C)......................................................................................................4

§ 10.32.210(A), (C).....................................................................................................4

§ 10.32.220(B)(11)-(12)............................................................................................4

§ 10.32.235(A)(1)........................................................................................................4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

§§ 10.32.215, 10.32.220(A) ......................................................................................................5

§ 10.32.200(B)(13) ..................................................................................................................5

§ 10.32.220(A)(1)-(5) ..............................................................................................................5

§ 10.32.205(B) .........................................................................................................................5

§ 10.32.200(B)-(C) ..................................................................................................................5

§ 10.32.215 ...............................................................................................................................5

§ 10.32.235(A)(2) ....................................................................................................................5

§ 10.32.230(A)-(B) ..................................................................................................................6

§ 10.32.240(A) .........................................................................................................................6

§ 10.32.245 ...............................................................................................................................6

1    **I.     STATEMENT OF ISSUES TO BE DECIDED**

2         In their Consolidated Second Amended Complaint ("SAC") (ECF No. 94), Plaintiffs bring

3    facial challenges seeking to invalidate and enjoin enforcement of two requirements under San Jose's

4    2022 Gun Harm Reduction Ordinance ("Ordinance") (San Jose Muni. Code §§ 10.32.200-10.32.250):

5    (1) that non-exempt gun owners residing in San Jose have liability insurance covering harm to persons or

6    property from accidental shootings (the "Insurance requirement"), and (2) that they pay an annual Gun

7    Harm Reduction Fee ("Fee") to a City-designated nonprofit organization ("Nonprofit") to fund

8    voluntary services for gun owners and their families (the "Fee requirement"). §§ 10.32.210, 10.32.215.[1]

9    The Insurance requirement is currently fully implemented, but the Fee requirement is not. This Motion to

10   Dismiss the SAC ("Motion") presents the following issues:

11        1.     Whether, under Rule 12(b)(6), Plaintiffs' claims facially challenging the Ordinance's

12   Insurance requirement under the Second Amendment should be dismissed with prejudice for failure to

13   state a claim?

14        2.     Whether Plaintiffs' claims facially challenging the Ordinance's Fee requirement should

15   be dismissed without prejudice because they are still unripe for review?

16        3.     Whether, under Rule 12(b)(6), Plaintiffs' claims facially challenging the Ordinance's Fee

17   requirement should be dismissed with prejudice for failure to state claim?

18   **II.    INTRODUCTION**

19        The Ordinance derives from the legitimate authority of Defendants City of San Jose, San Jose

20   City Council, and San Jose City Manager Jennifer Maguire (collectively, the "City" or "Defendants") to

21   enact and implement legislation aimed at reducing gun harm in San Jose, while fully respecting gun

22   owners' First and Second Amendment rights. The Ordinance imposes two modest requirements on San

23   Jose gun owners who do not qualify for one of its three exemptions: (1) to have liability insurance for

24   accidental or negligent harm caused by firearms (the "Insurance requirement"), and (2) to pay an annual

25   Fee (currently set at $25) to the City-designated Nonprofit to fund voluntary services for gun owners and

26   their families aimed at preventing gun harm (the "Fee requirement"). §§ 10.32.210, 10.32.215,

27   _____

28   [1] "§" on its own refers to a section of the Ordinance. *See* Consol. SAC, Ex. E (copy of Ordinance).

10.32.225. The Ordinance was discussed and voted on by the City Council in January and February 2022, which led to the commencement of these now-consolidated actions.

When the parties briefed the last round of (pre-consolidation) motions to dismiss, both the Fee and Insurance requirements were far from fully implemented, causing the Court to dismiss (mostly with leave to amend) the federal constitutional claims for lack of ripeness, and most of Plaintiffs' claims under the California Constitution for failure to state claim under Rule 12(b)(6). The consolidated Plaintiffs filed their SAC on February 2, 2023. As the City noted in recent Status Report, however, only the Insurance requirement has been fully implemented and is fully ripe, rendering many of Plaintiffs' claims challenging the Fee requirement still unripe at this juncture.

Defendants now move under Rules 12(b)(1) and 12(b)(6) to dismiss the SAC for three reasons.

*First*, the SAC's claims challenging the Insurance requirement under the Second Amendment (and a derivative declaratory relief claim) are now ripe for review, but they fail to state a claim upon which relief may be granted for two reasons: because Plaintiffs have failed to show that the Second Amendment's plain text covers conduct required by the Ordinance, and because the City can amply demonstrate that the Insurance requirement is consistent with this Nation's historical tradition of firearms regulation, akin to regulations the *Bruen* court blessed as constitutional. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*").

*Second*, Plaintiffs' claims challenging the Fee requirement should be dismissed for lack of prudential ripeness. As provided in the City's January 6, 2023 Status Report, implementation of the Fee requirement encountered a significant unanticipated delay when the City received no acceptable responses from entities willing to serve as the Nonprofit under the Ordinance. ECF No. 85. Because the Fee requirement is still not fully implemented, Plaintiffs' claims that relate to, *inter alia*, designation of the attendant non-profit entity, remain unripe for review on First Amendment and related orunds. *See* ECF No. 72 at 7-13 ("August 2022 Order") (this Court holding that Plaintiffs' First and Second Amendment claims challenging the Fee requirement were unripe for review, because it was not fully implemented); ECF No. 81 at 7-10, 18-19, 23 ("September 2022 Order") (reiterating that holding).

*Third*, even if Plaintiffs' claims challenging the Fee were ripe for review (they are not), they should be dismissed for failure to statute a claim under Rule 12(b)(6). Nearly all the claims re-pled in

the SAC (except for the Second Amendment claim, which is appropriately re-pled under *Bruen*) are substantively the same as those set forth in Plaintiffs' prior complaints, and dismissed with leave by the Court in its September 2022 Order. Plaintiffs were given the opportunity to address the deficiencies raises by the Court, but they failed to do so. Their claims should be dismissed with prejudice.

## III.   BACKGROUND AND PROCEDURAL HISTORY

### A.  The Ordinance

#### 1.      Enactment

In June 2021, the City's mayor and City Council directed the drafting of a gun safety ordinance designed to mitigate gun harm in San Jose. ¶ 26; *see also* ECF No. 36-1 (Decl. of Tamarah P. Prevost ISO MTD NAGR FAC) ¶ 2 & Ex. 1. On January 25, 2022, after exchanging numerous memoranda, the City Council met, heard a first reading, and voted on the draft Ordinance. ¶¶ 27-29 & Exs. B, D, E; *see also* ECF No. 36-1 ¶¶ 3-10 & Exs. 2-9. On February 8, 2022, the City Council took a second vote and enacted the Ordinance. ¶ 38. The Ordinance omits certain key aspects of the Fee and Insurance requirements, and expressly directs the City Council and City Manager to implement those requirements. *See, e.g.*, §§ 10.32.215, 10.32.235(A), 10.32.240(B). Some of the City's implementation efforts to date are set forth in the SAC, and they are more fully summarized in the three previous Status Reports filed by the City. *See* ECF No. 78 (Aug. 17, 2022); ECF No. 82 (Oct. 25, 2022); ECF No. 85 (Jan 6, 2023). As of the date of this Motion, the Insurance requirement has been fully implemented, but the Fee requirement has not. Decl. of Tamarah P. Prevost ISO MTD SAC ¶ 6 (Feb. 16, 2023) ("Prevost Decl.") (confirming that the City's most recent Status Report, at ECF No. 85, remains accurate today).

#### 2.      Findings and Purposes

The Ordinance's basic purpose is to "reduce gun harm" "for the protection of the welfare, peace, and comfort of the residents of the City of San Jose." § 10.32.200(A). To "reduce the number of gun incidents," the Ordinance seeks to provide voluntary "[p]rograms and services to gun owners and their households" (e.g., gun-safety training), and to require gunowners to obtain liability insurance to compensate victims of accidental shootings. § 10.32.200(B)(10)-(13); *see also* § 10.32.200(B)(11) (finding that liability insurance mandates were part of "a comprehensive public health approach to car safety" that helped reduce car crash fatalities by 80%). The Ordinance is informed by public health

research and data, such as findings that more than a third of all gun injuries are from unintentional shootings, that gunowners and those who live with them are at significantly higher risk of gun-induced suicide and homicide, and that gun-related deaths and serious bodily injury costs San Jose residents $442 million per year. § 10.32.200(B)(4)-(10).

### 3.   Requirements and Implementation

The Ordinance applies to all City residents who own a gun, except for (1) peace officers, (2) state concealed weapon license holders, and (3) those for whom complying with the Ordinance would be a "financial hardship." §§ 10.32.210, 10.32.215 10.32.255. In October 2022, the City Manager's Office promulgated regulations ("CMO Regulations") that flesh out these exceptions, such as by providing that the "financial hardship" exception applies when a gun owner's "household income is at or below the Extremely Low Income threshold [i.e., 30% of Area Median Income based on household size] for Santa Clara County." ¶ 39 & Ex. H, § 4. Gun owners subject to the Ordinance must comply with three main requirements: (a) the Insurance requirement, (b) the Fee requirement, and (c) a documentation requirement showing their compliance with the Ordinance.

### a.  The Insurance Requirement

The Ordinance requires non-exempt gun owners to obtain "a homeowner's, renter's or gun liability insurance Policy … covering losses or damages resulting from any accidental use of the Firearm, including but not limited to death, injury or property damage." § 10.32.210(A), (C). The purpose of the liability insurance requirement is to ensure victims of accidental shootings have access to compensation, and to leverage private insurance market forces as a means of "encouraging safer behavior." § 10.32.220(B)(11)-(12). The Ordinance authorizes the City Manager to promulgate regulations on "[p]rocesses related to the implementation of the liability insurance requirement, and forms necessary thereto." § 10.32.235(A)(1). In October 2022, the City Manager promulgated those regulations and published the Attestation Form that non-exempt gun owners must use to certify their compliance with the Insurance requirement. ¶ 39 & Ex. H. The Insurance requirement is fully implemented and took effect on January 1, 2023. ¶¶ 40, 45 (citing SAC Ex. H, § 2.1; ECF No. 85).

**b.  The Fee Requirement**

The Ordinance requires non-exempt gun owners to pay an annual Fee to make available voluntary programming and services to San Jose gun owners, as well as "members of their household" and "those with whom they have a close familiar or intimate relationship." §§ 10.32.215, 10.32.220(A). The purpose of these voluntary services is to "encourage safer behavior" related to gun ownership and use. § 10.32.200(B)(13). The services aim to reduce gun-related harms, including but not limited to services related to suicide prevention, reduction of gender-based and other violence, addiction intervention, substance abuse treatment, mental health services, and firearms safety education and training. § 10.32.220(A). The Ordinance requires that the services be provided by a City-designated Nonprofit. § 10.32.205(B). While the City may not "specifically direct" how the Nonprofit spends the Fee revenue, the Ordinance is clear that "[n]o portion of the monies … shall be used for litigation, political advocacy, or lobbying activities." § 10.32.200(B)-(C).

The Ordinance did not set the Fee amount but left that for later decision by the City Council. § 10.32.215. In June 2023, the City Council passed a $25 Fee amount per gun-owning household when it passed the City's schedule of fees and charges for its 2022/2023 Fiscal Year. ¶ 31; ECF No. 78 at 2. The City Council could revise this amount at a future, unscheduled vote authorizing the CMO to begin enforcing the Fee requirement. ECF No. 78 at 2-3. That vote cannot occur until the City has completed other necessary implementation steps (e.g., designating and contracting with a Nonprofit). *Id.* These prerequisite steps to a final Council vote were expected to occur by December 2022 but have been delayed because the CMO did not receive an acceptable response from any nonprofit entity interested in serving as the Nonprofit under the Ordinance. ECF No. 85. The CMO is currently executing a further process for attracting bids from nonprofits interested in serving in that role, but everything hinges on developments outside the City's control—i.e., an acceptable organization being willing to serve as the Nonprofit. *See id.*

The Ordinance also authorizes the City Manager to promulgate regulations concerning the "[d]esignation of the [Nonprofit], any processes and procedures related to the payment of the [F]ee, and any additional guidelines or auditing of the use of the monies from the [F]ee," and also to set the date when payment of the Fee is due each year. §§ 10.32.215, 10.32.235(A)(2). The CMO regulations issued

in October 2022 did not contain any of these regulations, but rather provided that "a payment date will be established in an amended version of these regulations to be issued in the future," and noted that payment of the Fee is "not required … until a payment date is set through the amended regulations." ¶ 42 (quoting SAC Ex. H, § 2.2). As of the filing of this Motion, there have been no other amended regulations issued by the City Manager's Office, and no material action towards this end after the most recent Status Report in January 2023. *See* Prevost Decl. ¶ 6.

### c. Compliance and Enforcement

Much in the same way car owners must document their compliance with liability insurance and annual fee requirements, the Ordinance requires non-exempt gun owners to complete a City "attestation form" providing information about their gun liability insurance and to keep that form and "proof of payment of the [Fee]" "with the[ir] Firearms where they are being stored or transported." § 10.32.230. Gunowners must also produce the form and proof of payment "when lawfully requested to do so by a peace officer." *Id.* In October 2022, the City published the referenced "attestation form" as part of the CMO Regulations. *See* SAC Ex. H.

Violations of the Ordinance are punishable by an administrative citation and fine, subject to due process protections. § 10.32.240. Similar to the Fee, the Ordinance does not set the amount of fines but leaves that to future action by the City Council. *Id.* In October 2022, the City Council set escalating fine amounts for first, second, and third or subsequent violations of the Ordinance ($250, $500, and $1000, respectively), which are proportional to the violation type and severity with amounts set for other municipal code violations. ECF No. 82 at 3-4; *accord* ¶ 41. The Ordinance also authorizes the "impound[ment]" of firearms "subject to a due process hearing," but only "to the extent allowed by law." § 10.32.245. As Plaintiffs admit, there is currently no lawful basis to impound firearms under state or federal law, meaning that this provision will not take effect unless and until, for example, the State passes a law permitting municipalities to impound firearms. ¶ 51 (admitting that "[a]t present, the City has no authority to seize a person's gun for violating the Ordinance").

The Ordinance also contains a severability clause. § 3.

### B.  Procedural History

#### 1.      The NAGR Plaintiffs

Plaintiffs National Association for Gun Rights, Inc., and Mark Sikes (collectively, the "NAGR Plaintiffs") filed their original complaint in January 2022. ECF No. 1. The following month, they filed a First Amended Complaint ("FAC") challenging the Insurance and the Fee requirements under the First and Second Amendment, the California Constitution, and the San Jose City Charter. ECF No. 19.

In March 2022, they moved for a preliminary injunction under all their claims. *See* ECF Nos. 25, 28, 32. The following month, the City moved to dismiss the FAC. *See* ECF Nos. 36, 46, 50. In June 2022 (after both motions were briefed), the U.S. Supreme Court announced a new test for analyzing Second Amendment claims in *Bruen*. 142 S. Ct. 2111. This led to supplemental briefing from the parties and amicus briefing from Brady before the motion hearings. *See* ECF Nos. 64-65, 66-1, 69-70. In its August 2022 Order, the Court denied the motion for preliminary injunction for lack of ripeness (as the First and Second Amendment challenge to the Fee requirement) and failure to show a likelihood of success on the merits. ECF No. 72. In its September 2022 Order, the Court also largely granted the City's motion to dismiss for lack of ripeness and failure to state a claim, dismissing most claims with leave to amend. ECF No. 81 at 7-17, 24.

In the SAC, the NAGR Plaintiffs drop all their state law claims and bring only federal claims under the First and Second Amendments, and a derivative Declaratory Judgment Act claim. ¶¶ 84-102.

#### 2.      The HJTA Plaintiffs

The HJTA Plaintiffs comprise three nonprofit corporations and two individuals. ¶¶ 16-20. In March 2022, they filed their Complaint in state court to invalidate only the Fee requirement and a related compliance requirement as (1) a violation of federal and state constitutional rights against compelled speech and association, (2) an "unconstitutional condition" of the exercise of Second Amendment rights and similar state constitutional rights, (3) an unlawful special "tax" under Cal. Const., art. XIII C, and (4) an unconstitutional delegation of the power to tax under Cal. Const., art. XI and XIII. ECF No. 81 at 5. In April 2022, the City removed the HJTA Complaint to this Court, and moved to the dismiss the Complaint under Rules 12(b)(1) and 12(b)(6). *Id.* The Court related the case with the *NAGR* action and consolidated the two cases for all purposes. ECF Nos. 41, 80. In September

2022 Order, the Court granted the City's motion to dismiss for lack of prudential ripeness and failure to state a claim. ECF No. 81 at 18-24.

In the SAC, the HJTA Plaintiffs re-bring all their claims that were dismissed with leave to amend, and add a declaratory relief claim in connection with their First Amendment claim. ¶¶ 93-127.

### 3. Plaintiffs' Claims in the SAC

When the parties briefed the last motions to dismiss, both the Fee and Insurance requirements were far from fully implemented, resulting in the Court's September 2022, dismissing many of Plaintiffs' respective claims for lack of prudential ripeness. ECF No. 81. (Sept. 30, 2022).

On February 2, 2023, Plaintiffs timely filed their Consolidated SAC, which re-alleges claims that were dismissed with leave to amend (omitting claims under the San Jose City Charter). For the Court's convenience, the following table lists Plaintiffs' claims as they are numbered in the SAC and provides, for each claim, the Ordinance requirement challenged and the Plaintiffs bringing the claim.

| | Claim for Relief (SAC ¶¶ 84-127) | Requirement Challenged | | Plaintiffs Bringing | |
|---|---|---|---|---|---|
| 1 | U.S. Constitution, Second Amendment | Fee | Insurance | NAGR | |
| 2 | U.S. Constitution, First Amendment (compelled speech and association) | Fee | | NAGR | HJTA |
| 3 | Declaratory Judgment, 28 U.S.C. §§ 2201–02 (derivative of Claims 1 and 2) | Fee | Insurance | NAGR | HJTA |
| 4 | Cal. Constitution, art. I (§§ 2-3) (compelled speech and association) | Fee | | | HJTA |
| 5 | Cal. Unconstitutional Conditions Doctrine (based on Second Amendment rights) | Fee | | | HJTA |
| 6 | Cal. Constitution, art. XIII C (§§ 1-2) (special tax lacking voter approval) | Fee | | | HJTA |
| 7 | Cal. Constitution, arts. XIII (§ 31) and XI (§ 11) (delegation of power to tax) | Fee | | | HJTA |

## IV.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

The plaintiff bears the burden of establishing the Court has jurisdiction. *Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).[2] The Court's proper role is "to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution," which means it lacks jurisdiction "to issue advisory opinions [] or to declare rights in hypothetical cases." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). The doctrine of ripeness "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* Ripeness "is drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Facial attacks are based on the argument that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* To the extent the Court deems any part of the City's argument to represent a factual attack disputing the truth of Plaintiffs' allegations relevant to federal jurisdiction, it "need not presume the truthfulness of the plaintiff's allegations" and "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

## B.    Rule 12(b)(6)

Defendants are entitled to dismissal under Rule 12(b)(6) if, accepting Plaintiffs' allegations as true, the complaint fails to state a claim. *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The Court should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiffs' "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders naked assertions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[2] Unless otherwise noted, internal citations, alterations, and quotations are omitted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.     Facial Challenges to Laws

To bring a successful facial challenge to a law, the plaintiff must "establish no set of circumstances exists under which the law would be valid or show that the law lacks a plainly legitimate sweep," or (in the First Amendment context) that "a substantial number of its applications are unconstitutional, judged in relation to the [law]'s plainly legitimate sweep." *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021). Because facial challenges "often rest on speculation," *Jackson v. City and County of San Francisco*, 746 F.3d 953, 962 (9th Cir. 2014) ("*Jackson*"), they are "disfavored" for "several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450, 455 (2008). Among other things, "they raise the risk of premature interpretations of statutes on the basis of factually barebones records," "run contrary to the fundamental principle of judicial restraint," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 450-51.

## V.     ARGUMENT

### A. The NAGR Plaintiffs' Second Amendment Claim Challenging the Insurance Requirement Should Be Dismissed.

The NAGR Plaintiffs bring a facial challenge to the Insurance requirement under the Second Amendment to the U.S. Constitution. *See* ¶¶ 84-102. The allegations by the NAGR Plaintiffs are either vague speculation or plainly inaccurate.

First, the NAGR Plaintiffs allege the Ordinance does not specify "minimum insurance coverage thresholds or premiums" or state how much it "will cost" them to obtain the required liability insurance, but rather leaves the setting of policy premiums to the state's highly regulated insurance market. ¶¶ 53-55. They also complain that "[t]he Ordinance does nothing to ensure that insurance companies will provide" the required liability insurance, and thus it "empower[s]" insurers "to prohibit persons from exercising their Second Amendment rights"—Plaintiffs don't say how, nor do they name any insurers engaged in the supposed concerted action of collectively removing the required insurance from the market. ¶ 56; *cf.* Cal. Dept. of Ins., *2021 California Property and Casualty Market Share Report* (Apr. 30, 2022), *available at* shorturl.at/gCX18 (listing 228 licensed property and casualty insurers in California). They also do not allege how they might be burdened, *i.e.*, whether for example their own homeowners' insurance policy does not already cover what is required by the Ordinance, or if

not, what the precise burden would be if they tried to comply. Second, and more problematically, the NAGR Plaintiffs accuse the Ordinance of "burden[ing] the right to "keep and bear arms in the home," and because the Ordinance is "novel" it cannot be located in the nation's historical traditions under *Bruen*. ¶¶ 87, 88. Based on such allegations and speculation, the NAGR Plaintiffs claim the Insurance requirement violates their Second Amendment rights. ¶¶ 82, 84-92. Each of these assertions are false under the appropriate legal framework.

Under *Bruen*, Second Amendment challenges turn on a two-part test: (1) whether the challenger can show "the Second Amendment's plain text covers an individual's conduct" and, if so, (2) whether the government can demonstrate that "the regulation is consistent with this Nation's historical tradition of firearms regulation." 142 S. Ct. at 2126. Plaintiffs fail to state a Second Amendment claim at both steps, and the claim should be dismissed with prejudice.

### 1. The Insurance Requirement Does Not Infringe on Conduct that Falls Within the Plain Text of the Second Amendment.

The Ordinance requires that gun owners carry liability insurance for firearm accidents. The conduct regulated by the Ordinance is entirely outside of the scope of the Second Amendment.

Analysis of Second Amendment challenges begins with the Amendment's "plain text," which requires looking at "the Second Amendment's text, as informed by history." *Id.* at 2126-27, 2129. The relevant Second Amendment text provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST., amend. II; *see also District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (holding that this text "guarantee[s] the individual right to possess and carry weapons in case of confrontation").[3]

At step one, *Bruen* requires a plaintiff to show that "the Second Amendment's plain text covers an *individual's conduct*." 142 S. Ct. at 2126 (emphasis added). Thus, the NAGR Plaintiffs must clearly

---

[3] While pre-*Bruen*, law found a law "infringe[s]" on the Second Amendment right to "keep and bear Arms" when it amounts to total bans on possession, *McDonald v. Chicago*, 561 U.S. 742, 750 (2010), or requires a firearm be stored and transported in a way that "makes it impossible" to use it for self-defense. *Heller*, 554 U.S. at 628, 630, 632. The Ordinance's Insurance requirement bears no resemblance to such laws.

1    articulate and allege a proposed course of conduct, protected by the Second Amendment, that they

2    claim is burdened by the Ordinance. Plaintiffs were well-aware of this requirement before filing the

3    SAC, but failed to properly allege it. *See, e.g.*, ECF No. 81 at 10 (citing *Bruen*, 142 S. Ct. at 2134-36,

4    and noting "the NAGR FAC does not define a *proposed course of conduct* for the Court to determine

5    whether it is covered by the Second Amendment's plain text."); *see also id.* at 10 n.2. The Second

6    Amendment claim (¶¶ 84-92) should be dismissed on this ground alone.

7         Construing the SAC in Plaintiffs' favor, the closest the NAGR Plaintiffs come to pleading the

8    required course of conduct is to allege the protected conduct at issue is "choosing to keep and bear arms

9    in the home." *See* ¶ 87 ("The Ordinance's insurance and/or fee requirements imposes a cost on

10   Plaintiffs … merely for choosing to keep and bear arms in the home," and thus "places a burden on

11   conduct central to the plain text of the Second Amendment."). But this allegation fails to state a claim

12   because "choosing to keep and bear arms in the home" is not a course of conduct that is affected by the

13   Insurance requirement, which merely requires gun owners to obtain liability insurance for accidental

14   shootings, assuming that such coverage is not already part of their existing homeowner's or renter's

15   policy. Moreover, the Ordinance does not condition firearm ownership on complying with the

16   Insurance requirement, because non-compliance is only punishable by an administrative citation and

17   fine. § 10.32.240; *see also* ¶ 51 (conceding that "the City has no authority to seize a person's gun for

18   violating the Ordinance" under the Ordinance's impoundment provision); *accord* ECF No. 72 at 15

19   ("The Court recognizes that, because the impoundment provision is not operable under current law, the

20   Insurance Requirement would not imperil the ownership or possession of anyone's firearms.").

21        While liability insurance covering firearm accidents is certainly *related to* firearms, the Second

22   Amendment's text does not cover all topics related to firearms in any way, but only the specific rights

23   "to keep and bear" arms. The plain text must be followed. Indeed, the Supreme Court has made this

24   very distinction in decisions upholding other insurance mandates. *See, e.g.*, *National Federation of

25   Independent Business v. Sebelius*, 567 U.S. 519, 558 (2012) (wherein the Court explained that a

26   mandate to purchase health insurance might be "inherently" related to "health care consumption," but

27   the two were simply "not the same thing," in part because they "involve different transactions, entered

28   into at different times, with different providers"). The insurance mandate at issue in this case is simply

not within the plain text of the Second Amendment. Holding insurance for an activity is not the same as participating in that activity.

Moreover, the Insurance requirement bears no resemblance to the laws that the Supreme Court has historically struck down as violating Second Amendment rights, all of which have either sought to directly ban, prohibit, or prevent most or all people from keeping or bearing arms. *See Bruen*, 142 S. Ct. at 2161 (Kavanaugh, J., and Roberts, C.J., concurring) (explaining that the Court struck down New York's licensing regime because its features—namely, "the unchanneled discretion for licensing officials and the special-need requirement—*in effect deny* the right to carry handguns for self-defense to many 'ordinary, law-abiding citizens'"); *id.* at 2157 (Alito, J., concurring) (explaining that "all we decide" in "today's decision" is "that a State may not enforce a law … that *effectively prevents* its law-abiding residents from carrying a gun" for self-defense or other lawful purposes). Even laws struck down under pre-*Bruen* legal frameworks were far more burdensome than the Ordinance here. *See, e.g.*, *McDonald*, 561 U.S. at 750 (striking down law "banning handgun possession"); *Heller*, 554 U.S. at 628, 630, 632 (striking down law that "totally bans handgun possession in the home" and requires firearms be stored and transported in a way that "makes it impossible" to use them for self-defense).

Instead of regulating the purchase, sale, storage, or use of firearms in any way, the Insurance requirement merely requires that non-exempt gun owners to obtain liability insurance for firearm accidents (if such coverage is not already included in their existing policies). Because the Insurance requirement does not "infringe[]" on the NAGR Plaintiffs' rights to keep and bear arms, their Second Amendment claim must be dismissed.

**2.    The Insurance Requirement Is Consistent with the Nation's Historical Tradition of Firearm Regulation.**

Since the Insurance requirement does not infringe Second Amendment rights (*Bruen* step 1), the Court need not go any further. However, the Insurance requirement is also consistent with the nation's historical traditional of firearm regulation (*Bruen* step 2) because, as *Bruen* itself explains, states have long had the right to regulate the *manner* in which firearm rights were exercised. 142 S. Ct. at 2147.

Numerous historical analogues support the Insurance requirement's constitutionality is that they are "relevantly similar" as mandated by *Bruen*. *Id.* at 2132. Determining if historical analogues are "relevantly similar" requires comparing "how and why the regulations burden a law-abiding citizen's

right to armed self-defense." *Id*. at 2133. To meet its burden, the government need only "identify a well-established and representative historical analogue, not a historical twin," and even if "not a dead ringer for historical precursors," a law still may "pass constitutional muster." *Id*. After all, "[t]he regulatory challenges posed by firearms today are not always the same as those" in 1791 or 1868, and "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Id.* at 2132. Accordingly, Plaintiffs' self-serving and conclusory allegations, that because the Ordinance is "novel" and "unique," it is not historically supported under *Bruen*, lacks the necessary nuance under this legal framework. *See, e.g.*, ¶ 88.

As one apt example, *Bruen* itself reviewed surety laws from the 1800s, which are applicable to the Insurance requirement. *See* Cornell, *supra*, *The Long Arc of Arms Regulation*, 55 U.C. Davis L. Rev. at 2570-71 (2022) ("[T]he imposition of a peace bond was the primary mechanism for the enforcement of the peace in the early republic …. The appropriate legal response to the danger posed by someone traveling armed in public was to impose a peace bond, a surety of the peace."). While *Bruen* ultimately found these laws did not save the specific New York law at issue, *Bruen*'s reasoning is directly applicable here: because such laws are "intended merely for prevention" and "not meant as any degree of punishment," any burden associated with these surety laws was "too insignificant" to bear on the constitutionality analysis. *Bruen*, 2022 WL 2251305, at *27 (citing 4 Blackstone, *Commentaries*, at 249). *See* ECF No. 72 at 16-20 (citing *Bruen*, 2142 S. Ct. at 2148-51); *see* ECF No. 72 at 16-20.

And countless other historic regulations and laws can be analogized to the Insurance requirement, the purpose of which is to prevent and mitigate harm to persons and property from firearms. Numerous laws from the 1700s prioritized public safety, welfare, or the "public good," including preventing harm from firearms, regulating the possession, storage, and transport of gunpowder, and those conditioning the keeping and bearing of guns on the gunowner taking an oath of loyalty to the state. *See* Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 74 Fordham L. Rev. 487, 506-08, 510-12 (2004). The 1800s saw laws limiting the carrying of concealed weapons and prohibiting firing guns in certain circumstances, including within town limits. *See id.* at 513-15. The Insurance requirement here is far less burdensome.

Indeed, one way to understand the Ordinance's constitutionality is to understand what it does *not* do. In explaining its reasoning, *Bruen* cited numerous antebellum decisions from State high courts upholding state laws banning concealed carry—but not banning public carry altogether—including *State v. Reid*, 1 Ala. 612 (1840), which held that an Alabama concealed carry prohibition was permissible under a state constitution that "neither expressly nor by implication, denied to the Legislature, the right to enact laws in regard to the manner in which arms shall be borne," and *Nunn v. State*, 1 Ga. 243, 251 (1846), which upheld a Georgia law prohibiting the secret "wearing" or "carrying" of pistols. *Bruen*, 142 S. Ct. at 2145-47; *see also Bruen*, Br. for Amici Curiae Profs. of History and Law in Support of Respondents 19-20 & n.13, *available at* https://tinyurl.com/y5ek8mph (brief by 17 preeminent historians noting numerous state statutes and constitutional provisions prescribing gun regulations); Saul Cornell, *The Long Arc of Arms Regulation in Public: From Surety to Permitting, 1328–1928*, 55 U.C. Davis L. Rev. 2545, 2591 (2022) (Reconstruction era state constitutions "expressly recognized broad police power authority to regulate arms"). A key takeaway from these authorities is that a government's police power can be used to pass regulations related to the keeping and bearing of firearms, so long as they do not function as a total or *de facto* prohibition on keeping and bearing arms for self-defense.

"Properly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Bruen*, 142 S. Ct. at 2162 (citing *Heller*, 554 U.S. at 636). Even firearms laws that have no clear historical analogues from the Founding or Reconstructions eras—such as laws requiring fingerprinting, background checks, mental health records checks, and training in firearms handling—will often pass constitutional muster because they reflect state and local governments legitimate power to uphold peace and good order. *Id.* The Ordinance's Insurance requirement is analogous to and significantly less burdensome than requirements that the *Bruen* Court indicated were *per se* constitutional.

The City's police power to enact the Ordinance is consistent with centuries of jurisprudence upholding regulations affecting individual constitutional rights, such as freedom of speech (e.g., time, place, and manner restrictions) and property rights. *See, e.g.*, *Ballinger v. City of Oakland*, 24 F.4th 1287 (9th Cir. 2022) (rejecting constitutional takings, exaction, and unreasonable seizure challenges to ordinance requiring landlord to pay tenant a relocation fee); *FCC v. Fla. Power Corp.*, 480 U.S. 245,

252 (1987) (noting the wide constitutionality of "statutes regulating [] economic relations" under the Fifth Amendment). Guns are property, as are the persons and property that the Insurance requirement seeks to protect, and even constitutionally protected property rights have long been subject to governmental regulations. The Insurance requirement here is no different.

In sum, even if the Ordinance is found to "infringe" on Second Amendment rights in some way (it does not), it minimally burdens those rights and is sufficiently similar to historical firearm regulations that it is constitutional under *Bruen*.

**B. Plaintiffs' Claims Challenging the Fee Requirement Should Also Be Dismissed.**

      **1.     Claims challenging the Fee requirement are still unripe for review.**

All Plaintiffs' claims involve facial challenges to the Ordinance's Fee requirement. ¶¶ 84-127; *see supra* at 8 (table). Plaintiffs generally attack the Fee requirement under two basic sets of claims: because the Fee requirement forces them to "associate with a private group" (¶ 96), or that the Fee is a "tax." These and other related claims against the Fee requirement are meritless, as set forth below.

This Court previously held on two occasions, when the Fee requirement was in virtually the same state of implementation as it is today, that certain federal and state constitutional challenges were not ripe for review. ECF Nos. 72, 81. The same is true today. The City has not designated a Nonprofit. *See* ECF No. 85. Accordingly, many of the same claims challenging the Fee requirement that have previously been dismissed on ripeness grounds and that were re-pled in the SAC (i.e., at least Claims 1, 2, and 4) should again be dismissed for lack of ripeness.

Ripeness doctrine looks primarily at two considerations: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). The "basic rationale" of ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," *id.* at 148, and to ensure that challenges to laws are "test[ed] … in a concrete situation." *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 165 (1967). Pre-enforcement challenges are not ripe if it is likely that the law will change before it goes into effect. *See, e.g.*, *Cramer v. Brown*, 2012 WL 13059699, at *3 (C.D. Cal. Sept. 12, 2012) (finding pre-enforcement claim justiciable, in part, because there was "no reason to think the law will change"). Another common reason that issues "may not be ripe for review

[is] if further factual development would significantly advance [the court's] ability to deal with the legal issues presented." *Nat'l Park Hosp. Ass'n v. Dep't. of Interior*, 538 U.S. 803, 812 (2003); *see also Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122-23 (9th Cir. 2010) (case not ripe if it "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all"); *Vieux v. Easy Bay Reg'l Park Dist.*, 906 F.3d 1330, 1344 (9th Cir. 1990) (federal courts may not issue advisory opinions based on a "hypothetical state of facts").

"The prudential considerations of ripeness are amplified when constitutional considerations are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002). Indeed, "[t]he Supreme Court has neatly instructed that the jurisdiction of federal courts to hear constitutional challenges should be exercised only when the underlying constitutional issues [are tendered] in clean-cut and concrete form." *Id.* (quoting *Rescue Army v. Municipal Court*, 332 U.S. 549, 584 (1947)).

Here, Plaintiffs' claims facially challenging the Fee requirement on compelled speech and association grounds remain unripe for review for the same reasons that this Court expressed in its prior orders from August and September 2022. *See* ECF Nos. 72, 81. Plaintiffs re-pled these claims in the SAC as Claims 1, 2, and 4, but the same ripeness concerns previously articulated by the Court continue to exist today. In August 2022, this Court held that the NAGR Plaintiffs' First and Second Amendment challenges to the Fee requirement were unripe for review because the Nonprofit had not been designated, "the Ordinance does not specify what the Nonprofit's activities will be," and the Court could not tell "whether the Fee would fund *any* kind of speech or expressive activities." ECF No. 72 at 7-10. Ultimately, the Court concluded: "Without a concrete idea of the Nonprofit's actual programs and activities, the Court is left 'entangling [itself] in abstract disagreements.'" *Id.* at 10 (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000)). A month and a half later, the Court reached the same conclusion and dismissed both sets of Plaintiffs' federal constitutional challenges to the Fee Requirement as unripe. ECF No. 81 at 7-9, 18-19, 23.

As the City noted in its most recent Status Report, the City attempted to handle the Nonprofit designation process through an RFI process but did not receive any satisfactory responses, even after republishing the RFI. ECF No. 85 at 2. As a result, the City has decided to issue an RFP, which process has not yet begun. *Id.*; Prevost Decl. ¶ 6. Unfortunately, the lack of satisfactory RFI responses and the

upcoming RFP process will delay the steps necessary for full implementation of the Fee requirement, which requires designating and contracting with the Nonprofit, all of which must happen before the City Council votes on whether to approve the CMO's authority to begin requiring payment of the Fee. ECF No. 85 at 2-3; *see also* ¶ 58 (alleging "[t]he destination of the [Fee] money is to a still undetermined nonprofit"). At a time when the City is grappling with and developing ways to fully implement the Ordinance's terms, is not an appropriate time for the Court to try to evaluate whether those terms, when fully implemented in the future, will be constitutional. While courts have rejected ripeness arguments in pre-enforcement challenges precisely because the legislature "ha[d] no power to amend the statute before its effective date" and there was "no reason to think the law will change," *Cramer,* 2012 WL 13059699, at *3, the opposite is true here, which aptly demonstrates one reason why these claims remain unripe for review.

Additionally, Plaintiffs' renewed allegations about the conditions under which the Ordinance is to be implemented rest on self-serving speculation rather than any actual knowledge (e.g., how the Nonprofit will actually behave in delivering voluntary services). For example, Plaintiffs allege that the Fee requirement violates the compelled speech and association doctrines because the undetermined Nonprofit's activities "*may* include advocating about the dangers of gun ownership, and other services with little to no connection to the payer's ownership of a gun," and that the whole situation "is an invitation to corruption and waste." ¶ 62. Plaintiffs likewise claim that the Fee requirement violates their asserted rights under the First Amendment and highly similar state constitutional provisions (Cal. Const., art. I, §§ 2-3) "to not be forced by the government to support someone else's speech, particularly when you disagree with their message," and "the right to not be forced by the government to associate with or support … a group with which you would not voluntarily assemble." ¶ 95 (First Amendment claim); ¶ 105 (identical allegation underpinning analogous state constitutional claim). These claims and allegations are clearly based on speculation. *See Young v. Hawaii*, 992 F.3d 765, 828 (9th Cir. 2021) (en banc) (claims not ripe if they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all"); *United States v. Gila Valley Irrigation Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994) (claims not ripe when based on "speculation" regarding future

regulatory decisions); *see also* § 10.32.220(B) (expressly prohibiting the Nonprofit from spending any "portion of the monies from the [Fee]" on "litigation, political advocacy, or lobbying activities").[4]

However, because the Fee amount has at least been preliminarily set, the Fee requirement can be evaluated under the Second Amendment framework. The primary thing that has changed since the Court previously dismissed claims for lack of ripeness is that the City Council passed in its 2022-2023 schedule of fines and fees a Fee amount of $25, pursuant to its customary budget process. It is true that after the CMO designates and contracts with a Nonprofit and then asks the City Council to vote on whether to approve the CMO's authority to begin enforcing the Fee requirement, the City Council could set a different amount. ECF No. 85 at 3 (citing ECF No. 78 at 3); *accord* ¶ 57 (conceding that the current $25 Fee amount "is subject to change"). However, the Court could find, now, that the Fee is not "exorbitant" and therefore passes constitutional muster under *Bruen*. *See* 142 S. Ct. at 2138 n.9.

As this Court has itself noted (ECF No. 72 at 12), *Bruen* discussed with approval fee payments so long as they are not so "exorbitant [so as to] deny ordinary citizens their right to public carry." *Bruen*, 142 S. Ct. at 2138 n.9. Based on this, this Court stated in its September 2022 Order:

> In and of itself, a fee that is merely associated with owning a firearm—and for which the failure to pay does not result in that ownership being revoked, Opp. 3—would not necessarily be inconsistent with the "historical tradition of firearm regulation." Indeed, the Supreme Court in *Bruen* expressly contemplated regulations that may permissibly include fee payments, so long as the fees were not so "exorbitant [so as to] deny ordinary citizens their right to public carry." *Bruen*, 142 S. Ct. at 2138 n.9. Here, the Court cannot assess whether such a Fee would be so "exorbitant" as to infringe upon Plaintiffs' rights without additional information on the Fee amount or the as-yet-to-be-determined "criteria by which a person can claim a financial hardship exemption." Ordinance § 10.32.235(A)(4). Absent the promulgation of regulations on these two points, the Court would be left to issue an impermissible advisory opinion on the Ordinance's constitutionality under the Second Amendment.

ECF No. 72 at 12. The "financial hardship" criteria have been set in the CMO Regulations (SAC Ex. H, § 4-3), and the Fee amount has been set at $25 but is potentially still subject to change by the City Council. Thus, the Court could find that Second Amendment challenge to the Fee requirement remains

---

[4] These claims are also subject to dismissal under Rule 12(b)(6), which provides that such speculative and conclusory allegations need not be credited. *See Twombly*, 550 U.S. at 555.

unripe for review, or it could go ahead and decide the issue under *Bruen* based on the action taken by the City Council to vote it into the City's budget. If in the future, the City Council materially increases the Fee amount, Plaintiffs could seek leave to amend their Complaint to re-bring the claim at that time.

As for the compelled speech and association claims, it is "premature" to ask a federal court "to issue a binding interpretation of a local ordinance based on what might happen in the future without first giving the City … the opportunity to interpret its own ordinance." *United States v. Power Co.*, 2008 WL 2626989, at *4 (D. Nev. June 26, 2008). Moreover, important *regulations* bearing on the Fee requirement have not yet been promulgated. *See* ¶ 42 & SAC Ex. H, § 2.2 (CMO regulations state that amended regulations will be issued regarding implementation of the Fee requirement). At minimum, the SAC's challenges to the Fee requirement based on compelled speech and association (Claims 2 and 4) should be dismissed for lack of ripeness, for the same reasons as stated in the Court's August and September 2022 Orders. *See* ECF Nos. 72, 81. The Court can, however, and should, deem the amount of the Fee constitutional under *Bruen*.

### 2.     The Fee Requirement Does Not Violate the Right to Keep and Bear Arms.

#### a.   Plaintiffs' Second Amendment Claim (Claim 1)

The *Bruen* analysis of the Insurance requirement, *supra*, applies equally to the Fee requirement. It is obvious that an annual $25 Fee with a financial hardship exemption (based on 30% area median income) passes constitutional muster under *Bruen*. Such a nominal Fee is far from being so "exorbitant [so as to] deny ordinary citizens their right" to keep and bear arms. *Bruen*, 142 S. Ct. at 2138 n.9. As this Court noted in August 2022: "In and of itself, a fee that is merely associated with owning a firearm—and for which the failure to pay does not result in that ownership being revoked—would not necessarily be inconsistent with the 'historical tradition of firearm regulation,'" especially given that *Bruen* "expressly contemplated regulations that may permissibly include fee payments" so long as they are not "exorbitant." ECF No. 72 at 12.

"Properly interpreted, the Second Amendment allows a variety of gun regulations," including laws far more intrusive than payment of a $25 Fee (e.g., fingerprinting, mental health records checks) so long as they reflect state and local governments legitimate power to uphold peace and good order. *Bruen*, 142 S. Ct. at 2162. The Ordinance's Fee requirement here is significantly less burdensome than

the various laws that the *Bruen* Court indicated were *per se* constitutional, and the $25 Fee amount is clearly not exorbitant under any common-sense understanding of the term, or Second Amendment case law. *See, e.g., Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015) (upholding $48 in gun licensing fees); *Kwong v. Bloomberg*, 723 F.3d 160, 161, 167 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014) (upholding $340 gun licensing fee); *O'Connell v. Gross*, 2020 WL 1821832 (D. Mass. Apr. 10, 2020) (upholding $300 in fees and mandatory gun safety courses).

The Second Amendment challenge to the Fee requirement should be dismissed with prejudice.

### b.   The HJTA Plaintiffs' Unconstitutional Conditions Claim (Claim 5)

The HJTA Plaintiffs bring a related claim, alleging the Fee has unlawfully "placed a condition on the continued exercise" of their rights to keep and bear arms under the Second Amendment and the California Constitution. ¶¶ 108-109. In its September 2022 Order, the Court dismissed *with prejudice* the aspect of this claim based on the California Constitution, yet the HJTA Plaintiffs' have improperly re-pled the claim in the SAC. ECF No. 81 at 21:11-15. This aspect of the claim should be stricken or (again) dismissed, as the Court sees fit.

As for the aspect of the claim of based on Second Amendment rights, the Court dismissed it with leave to amend because "[t]he Ordinance as drafted does not 'condition' the exercise of Second Amendment rights because there are no means by which a San Jose gun owner may be deprived of his or her firearm." ECF No. 81 at 20 (rejecting, as a "misinterpretation of the Ordinance," the HJTA Plaintiffs' allegations that a gun owner could be "forced to surrender his firearms" if he fails to pay the Fee). The Court noted that the HJTA Plaintiffs failed to provide "any authority that the unconstitutional conditions doctrine can apply in the Second Amendment context where possession is not at risk," and held that their Fifth Amendment takings case law was inapposite. *Id.*

The HJTA Plaintiffs' allegations in the SAC for this claim remain largely the same as in their prior complaint, with one exception: the HJTA Plaintiffs have added the vague and unsupported allegation that because the police may confiscate firearms involved in some violations of the law (e.g., "[i]f a student brings a firearm to school," "if someone purchases a firearm on the street without going through a federally licensed dealer," "if someone discharges a firearm in the air on New Year's Eve"), and because a violation of the Ordinance is also a violation of the law, then it must be possible (the

HJTA Plaintiffs claim) that police officers might also confiscate guns for violations of the Ordinance. ¶¶ 111-12. This is a stretch. Such vague and speculative allegations about what the law *might be* or how different combinations of law and conduct *could* apply are insufficient to state claim under Rule 12(b)(6). Moreover, it is axiomatic that more specific provisions of law control over more general ones. *See, e.g.*, Cal. Code Civ. Proc. § 1859. Thus, the Ordinance's provision that firearms may be "impounded" for violations of the law only if authorized by some other law (i.e., state or federal law, as interpreted by the City) controls over HTJA's unsupported supposition that the City might begin using a highly general provision of the Municipal Code (§ 1.08.010) to override the Ordinance's impoundment provision. The claim should again be dismissed, this time with prejudice, for failure to state a claim upon which relief may be granted.

### 3.     Plaintiffs Fail to State a Derivative Declaratory Relief Claim (Claim 3).

Plaintiffs make a claim for declaratory relief under 28 U.S.C. §§ 2201-02 "to the extent that each of the claims above [i.e., their First and Second Amendment Claims] have not already established a remedy," in which case Plaintiffs allege "are entitled to declaratory relief holding that the Ordinance violates Plaintiffs' individual rights under the Constitution of the United States and is otherwise invalid." ¶ 101. This claim is derivative of Plaintiffs' First and Second Amendment claims, and it should likewise be dismissed for failure to state a claim under Rule 12(b)(6) for the same reasons.

### 4.     The Fee is not a "tax" under the California Constitution (Claims 6 and 7).

The HJTA Plaintiffs' final two claims for relief allege that the Fee requirement violates the California Constitution's prohibitions on imposing a special "tax" without voter approval (Cal. Const., art. XIII C), and on delegating the power to tax (Cal. Const., arts. XI, XIII). ¶¶ 114-27. It has already been established in this case that both claims require the HJTA Plaintiffs to show that the Fee is a "tax" under Article XIII C. ECF No. 81 at 23:2-4. But, as this Court has previously held, the Fee is not a "tax" under *Schmeer v. County of Los Angeles*, 213 Cal. App. 4th 1310 (2013), because the Fee is not "payable to, or for the benefit of, a local government." *Id.* at 13-15, 22-23 (quoting *Schmeer*, 213 Cal. App. 4th at 1328-29); *see also id.* at 14 (calling *Schmeer* "thorough," "persuasive," and the "touchstone" of the Court's analysis, and rejecting Plaintiffs' "attempt to distinguish *Schmeer* on its facts"). But the Court gave Plaintiffs leave to amend these claims, and the HJTA Plaintiffs decided to

1    re-bring the same claims in the SAC (the NAGR Plaintiffs opted not to do so). The re-pled claims,

2    however, are *identical* to the HJTA Plaintiffs' old claims. Compare SAC ¶¶ 114-27, with HJTA

3    Complaint ¶¶ 24-37 (*HJTA* action, No. 22-cv-02365-BLF, ECF No. 1). For the same substantive

4    reasons articulated in the City's prior motions, these claims should now be dismissed with prejudice.

5                    a.   **HJTA Plaintiffs' Article XIII C Claim (Claim 6)**

6            Just as before, Plaintiffs again fail to state a claim under Article XIII C for at least three reasons.

7            First, the Court previously dismissed this claim because it "contain[ed] very limited factual

8    allegations," "largely legal conclusions couched in the language of article XIII C," and thus "f[ell]

9    short of the federal standard required by *Ashcroft v. Iqbal*." ECF No. 81 at 22 (citing prior HJTA

10   Complaint ¶¶ 25-30). The HJTA Plaintiffs then re-filed the *exact same* claim (i.e., the language is

11   identical except the addition of a conclusory sentence at the end stating "The fes [sic] is therefore

12   invalid."). The claim is subject to dismissal with prejudice for this reason alone.

13           Second, the Fee is still not a "tax" under Article XIII C, which is defined as "any levy, charge,

14   or exaction of any kind imposed by a local government." Cal. Const., Art. XIII C, § 1(e). A charge is a

15   "tax" under this definition only if it is "payable to, or for the benefit of, a local government." *Schmeer*,

16   213 Cal. App. 4th at 1328-29. Here, the Fee is not a "tax" because it is not paid or remitted to the local

17   government, but rather "shall" be paid directly to the Nonprofit to fund voluntary services for the

18   benefit of gun owners and their families. § 10.32.215. This Court previously held that *Schmeer* is fatal

19   to Plaintiffs' claims, and that remains true today. *See also* ECF No. 81 at 22 (noting that Plaintiffs'

20   allegation that the Ordinance requires the Fee be paid directly to the Nonprofit, seemed to be, on its

21   own, fatal to the claim); *cf.* ¶¶ 57, 109.

22           Third, even if the Fee were a "tax," it would fall under the "specific benefits exception." *See*

23   Cal. Const., Art. XIII C, § 1(e)(1). Under that exception, taxes are not subject to Article XIII C if they

24   are "imposed for a specific benefit conferred or privilege granted directly to the payor that is not

25   provided to those not charged, and which does not exceed the reasonable costs to the local government

26   of conferring the benefit or granting the privilege." *Id.*; *see, e.g.*, *S. Cal. Edison Co. v. Pub. Util.

27   Comm'n*, 227 Cal. App. 4th 172, 200 (2014) (finding this exception applied to a public utility fee

28   "designed to benefit … ratepayers"). That exception applies here, where the Fee is paid only by San

1    Jose gun owners for the sole purpose of providing gun-safety and other programming and services to

2    San Jose gunowners, "members of their household," and "those with whom they have a close familial

3    or intimate relationship." § 10.32.220(A).

4                              **b.   HJTA Plaintiffs' tax-delegation claim (Claim 7)**

5            The HJTA Plaintiffs' final claim is for unlawful delegation of the power to tax under Cal.

6    Const., art. XIII (§ 31), and art. XI (§ 11). ¶¶ 122-27. This claim fails for three reasons.

7            First, while the Court previously dismissed this claim as unripe, ECF No. 81 at 23, it should

8    now be dismissed with prejudice along with the Article XIII C claim because the HJTA Plaintiffs failed

9    to plausibly allege the Fee is a "tax" despite being given a chance to amend. The HJTA Plaintiffs have

10   previously ***conceded*** that failure to show the Fee is a "tax" under Article XIII C is fatal to this claim.

11   ECF No. 81 at 23:2-4. Thus, this claim should also be dismissed with prejudice.

12           Second, as the HJTA Plaintiffs have likewise already *conceded* in this litigation, the Ordinance

13   also does not violate Article XI § 11 because that provision only applies to the *state* Legislature, not

14   municipal governments. *See HJTA* Action, No. 22-cv-02365, ECF No. 16 at 18 n.3 (HJTA Plaintiffs

15   conceding this point and "withdraw[ing]" the allegation); Cal. Const., Art. XI, § 11(a) ("*The*

16   *Legislature* may not delegate to a private person or body power to …."); *County of Riverside v.*

17   *Superior Court*, 30 Cal.4th 278, 284 (2003). Thus, Article XI § 11 does not apply to the City.

18           Third, Article XIII § 31 does not apply because the Ordinance does not "surrender[] or

19   suspend[]" the City's power to tax "by grant or contract." Cal. Const., Art. XIII, § 31. The Ordinance

20   itself is clearly not a "grant" or a "contract," and the SAC does not plausibly allege the existence of any

21   such grant or contract. Nor has there been any surrender or suspension of the City's power to tax

22   because "the controlling consideration" under Section 31 is "whether a disputed contract amounts to a

23   local entity's 'surrender'… of its control of a [taxing] power or municipal function," which "turns on

24   whether this crucial control element has been lost." *Russell City Energy Co., LLC v. City of Hayward*,

25   14 Cal. App. 5th 54, 64 (2017). Here, no such control has been lost because the imposition of the Fee

26   and the Fee amount are both controlled entirely by the City Council. § 10.32.215. The Nonprofit's only

27   power is to receive and spend Fee monies under its limited mandate in the Ordinance. § 10.32.220.

28

**C.  Plaintiffs' Claims Should Be Dismissed Without Leave to Amend.**

In deciding whether to grant leave to amend, the Court must consider five factors set forth by the US. Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). A strong showing with respect to any one of the other factors may warrant denial of leave to amend. *Id.*

Here, the third and fifth *Foman* factors warrant denial of leave to amend at least with respect to the NAGR Plaintiffs' claims challenging the Insurance requirement (Claims 1 and 3), and also with respect to the certain of Plaintiffs' claims challenging the Fee requirement, including under California constitution provisions concerning taxation (Claims 6 and 7). All those claims can be resolved at this stage of the case as a matter of law. With respect to the latter two claims, the Court previously pointed out deficiencies with these claims and granted leave to amend, but the HJTA Plaintiffs' version of those claims in the SAC are virtually unchanged.

## VI.   CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss Plaintiffs' SAC under Rules 12(b)(1) and 12(b)(6). Since the Complaint's defects with respect to claims challenging the Insurance requirement and certain claims challenging the Fee requirement cannot be cured, the City respectfully requests that the dismissal of those claims be without leave to amend.

Dated:  February 16, 2023          Respectfully submitted,

**COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Tamarah P. Prevost*
     JOSEPH W. COTCHETT
     TAMARAH P. PREVOST
     ANDREW F. KIRTLEY

*Attorneys for Defendants City of San Jose, et al.*