JONATHAN M. COUPAL, State Bar No. 107815
TIMOTHY A. BITTLE, State Bar No. 112300
LAURA E. DOUGHERTY, State Bar No. 255855
Howard Jarvis Taxpayers Foundation
1201 K Street, Suite 1030
Sacramento, CA 95814
(916) 444-9950

Attorneys for Plaintiffs
HOWARD JARVIS TAXPAYERS ASSN., et al.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL ASSN. FOR GUN RIGHTS, *et al.*,<br><br>　　　　　Plaintiffs<br><br>　　v.<br><br>CITY OF SAN JOSE, *et al.*,<br><br>　　　　　Defendants | No. 22-cv-00501-BLF |
| HOWARD JARVIS TAXPAYERS ASSN., *et al.*,<br><br>　　　　　Plaintiffs<br><br>　　v.<br><br>CITY OF SAN JOSE,<br><br>　　　　　Defendant | No. 22-cv-02365-BLF<br><br>**HJTA'S OPPOSITION TO CITY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date:　　June 15, 2023<br>Time:　　9:00 a.m.<br>Judge: Hon. Beth Labson Freeman<br>Dept:　　San Jose Courtroom 3 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. ............................................................................. 3

ARGUMENT. ............................................................................................. 5

    I.    THE CITY'S VERSION OF THE FACTS MUST BE REJECTED
        ON A MOTION TO DISMISS. ............................................................ 5

    II.   PLAINTIFFS' FIRST AMENDMENT SPEECH AND ASSOCIATION
        CLAIMS ARE RIPE FOR REVIEW CONCLUSION. .................................. 5

        A.    Plaintiffs' Rights Should Not Hang In Limbo While The City
              Delays Implementation. ......................................................... 5

        B.    Plaintiffs' First Amendment Claims Are Ripe Enough For
              Facial Review. ...................................................................... 8

    III.  AMENDMENTS TO THE COMPLAINT WARRANT DENYING
         THE CITY'S RENEWED MOTION TO DISMISS PLAINTIFFS'
         UNCONSTITUTIONAL CONDITION CLAIM. ...................................... 10

    IV.  PLAINTIFFS' UNVOTED TAX CLAIM IS CURRENTLY
         DISTINGUISHABLE FROM *SCHMEER*, AND IS NONETHELESS
         ALLOWED UNDER *SCHMEER*, A CASE THAT SHOULD NOT BE
         EXTENDED BEYOND ITS FACTS. ................................................. 12

        A.    *The Fee Is Not Currently Being Paid To A Private
              Entity.* ............................................................................... 13

        B.    *Even If A Nonprofit Is Designated, Schmeer, By Its Own
              Terms, Will Not Apply.* ......................................................... 14

        C.    *This Court Should Not Extend Schmeer's Reach To Vastly
              Different Facts.* .................................................................... 15

    V.   IF PLAINTIFFS' CLAIM OF UNLAWFUL DELEGATION IS
        DISMISSED ON RIPENESS GROUNDS, IT SHOULD BE WITH
        LEAVE TO AMEND. ...................................................................... 19

CONCLUSION. ...................................................................................... 20

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Cal. Chamber of Commerce v. State Air Res. Bd.*
(2017) 10 Cal.App.5th 604. ......................................................... 16

*Cal. Motor Transp. Co. v. State Bd. of Equal.*
(1947) 31 Cal.2d 217. ................................................................. 18

*City of Glendale v. Trondsen*
(1956) 300 P.2d 235. .................................................................. 26

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
657 F.3d 936 (9th Cir. 2011). ........................................................ 8

*Decker v. Advantage Fund, Ltd.*
362 F.3d 593 (9th Cir. 2004). ........................................................ 5

*Griffith v. City of Santa Cruz*
(2012) 207 Cal.App.4th 982. ................................................... 15-16

*Hill RHF Hous. Partners, L.P. v. City of L.A.*
(2021) 12 Cal.5th 458. ............................................................... 18

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*
499 F.3d 1048 (9th Cir. 2007). ...................................................... 5

*Jacks v. City of Santa Barbara*
(2017) 3 Cal.5th 248. ................................................................. 18

*Janus v. AFSCME Council 31*
138 S.Ct. 2448 (2018). ................................................................ 9

*Knox v. City of Orland*
(1992) 4 Cal.4th 132. ................................................................. 16

*Mills v. Cnty. of Trinity*
(1980) 108 Cal.App.3d 656. .......................................................... 18

*Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*
No. 22-cv-00501-BLF, 2022 U.S. Dist. LEXIS 138385, at *42
(N.D. Cal. Aug. 3, 2022). ............................................................ 16

*Prof. Engineers in Cal. Gov. v. Kempton*
(2007) 40 Cal.4th 1016. ............................................................. 18

*Roberts v. United States Jaycees*
468 U.S. 609 (1984). ................................................................... 8

*Schmeer v. County of Los Angeles*
(2013) 213 Cal.App.4th 1310. ............................................... *passim*

3

*United States v. Stevens*
130 S.Ct. 1577, 176 L.Ed. 2d 435 (2010). ...................................................... 8


**CONSTITUTIONS**

**California Constitution**
Art. 1, § 1. ...................................................................................................... 10
Art. XI, § 5. ..................................................................................................... 12
Art. XI, § 11. ................................................................................................... 19
Art. XIII C, § 1. ............................................................................................... 13
Art. XIII C, § 1(e). ............................................................................. 13, 15, 16
Art. XIII C, § 2. ............................................................................................... 13


**STATUTES**

**San Jose Municipal Code**
§ 1.08.010 ...................................................................................................... 11
§ 1.08.020 ...................................................................................................... 11
§ 1.08.025 ...................................................................................................... 12
§ 10.32.200 .................................................................................................... 14
§ 10.32.215 .................................................................................................... 20
§ 10.32.220 ................................................................................................. 9, 17
§ 10.32.220(C) ............................................................................................... 20
§ 10.32.235 ................................................................................................. 9, 16
§ 10.32.245 ............................................................................................... 10, 11


**MISCELLANEOUS**

https://sanjose.legistar.com/View.ashx?M=F&ID=10972300&GUID=8729FAF4-9C72-49
E8-B07A-2FEB3A618FBE ............................................................................... 6

https://www.sanjoseca.gov/home/showpublisheddocument/87508. ......................... 6, 19

**ARGUMENT**

**I**
**THE CITY'S VERSION OF THE FACTS**
**MUST BE REJECTED ON A MOTION TO DISMISS**

The City chose not to answer the complaint, but to immediately file this motion to dismiss the complaint. Plaintiffs allegations therefore stand undenied.  When the court considers a defen-dant's motion to dismiss the plaintiffs' complaint, "[a]ll well-pleaded facts in the complaint are accepted as true and construed in the light most favorable to the nonmoving party."  (*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595 (9th Cir. 2004).)

While plaintiffs and the City agree on many facts regarding the legislative history of the City's ordinance and the procedural history of this case, there are key facts in dispute regarding the impact of the ordinance on the rights of gun owners.  In this Opposition brief, when it is relevant, plaintiffs will point out the City's improper description of a different version of the facts. At those junctures, the Court must accept plaintiffs' allegations as true.

**II**
**PLAINTIFFS' FIRST AMENDMENT SPEECH**
**AND ASSOCIATION CLAIMS ARE RIPE FOR REVIEW**

The City has moved to dismiss plaintiffs' second amended complaint on grounds that the facts are not yet ripe for review.  (City's Mot. to Dismiss at PDF 23:8.)  The City urges this Court to take action consistent with its dismissal of plaintiffs' prior complaint "when the Fee requirement was in virtually the same state of implementation as it is today." (*Id.* at PDF 23:14.)

Plaintiffs urge this Court to deny the City's motion for two reasons: (1) the City is perpetuat-ing the delayed state of implementation and should not benefit from causing delay; and (2) the case is ripe for facial review.

*A.*   *Plaintiffs' Rights Should Not Hang In Limbo While The City Delays Implementation*

From the beginning, the City's strategy has been to avoid facing the merits of plaintiffs' claims.  A June 2, 2022, memo from city staff to the Mayor and City Council states, "pending litigation has caused uncertainty as to when the City will be able to begin implementation of the

1  ordinance. ... The ordinance requires that the fee be collected by a designated nonprofit organiza-

2  tion. ... Staff recommends a procurement process open to any interested organizations be used

3  to select the designated nonprofit.  *In August 2022, based on an evaluation of the status of*

4  *litigation, staff will decide whether to initiate a procurement process.*  (Staff Memo pp. 2-3 at

5  https://sanjose.legistar.com/View.ashx?M=F&ID=10972300&GUID=8729FAF4-9C72-49E8-B07

6  A-2FEB3A618FBE.)[1]

7          A July 1, 2022, update from city staff to the Mayor and City Council recites: "On July 1, 2022

8  the City Manager's Office issued regulations that *suspend implementation* of both the insurance

9  requirement and the Gun Harm Reduction Fee [until] the legal situation has been clarified. ... *Per*

10  *Council direction, implementation of the Gun Harm Reduction Fee can only begin after the legal*

11  *challenges have been fully resolved.*"  (City's Status Rpt., ECF 25 at PDF 3:12; Staff Memo at

12  https://www.sanjoseca.gov/home/showpublisheddocument/87508.)

13          The City's suspended Implementation Timeline had called for "issu[ing] a Request for

14  Proposals to procure the designated nonprofit" to occur some time in September 2022.  (See Staff

15  Memo, Attachment A, PDF p. 4., at https://www.sanjoseca.gov/home/showpublisheddocument/

16  87508.)  The Timeline had projected "December 2022" as the date by which the City Manager

17  would "[f]inalize contract with designated nonprofit."  (*Id.* at PDF p. 5.)

18          Despite halting implementation of the ordinance until "the legal challenges have been fully

19  resolved," the City nonetheless moved to dismiss plaintiffs' complaints as unripe because the

20  ordinance had not yet been implemented.  This Court saw through the City's duplicity and refused

21  to cooperate with what it called a "chicken and egg problem."  (Transcript of Aug. 4, 2022 hearing,

22  ECF 76, PDF pp. 15:20-16:4; 23:19; 26:12.)

23          The Court granted the City's motion but with leave to amend the complaint by February 2,

24  2023, based on the Implementation Timeline showing that the City Manager would issue a Request

25  for Proposals in September, then select a nonprofit from among the proposals received and finalize

26

27          [1]  Unless noted otherwise, all emphasis is added.

1   a contract by the end of December.

2       On January 6, 2023, however, the City filed a Status Report indicating that those deadlines

3   had not been met.  Although it represented that the City Manager "has now completed all relevant

4   tasks in the Implementation Timeline, except for the task listed as 'Finalize contract with designated

5   nonprofit' with an estimated completion date of December 2022" (Status Report, ECF 85, at PDF

6   p. 3:6), that representation was untruthful.

7       The City Manager had *not* "issu[ed] a Request for Proposals to procure the designated

8   nonprofit" which, according to the Timeline, was supposed to be done in September.  Instead, the

9   City Manager issued something else – a "Request for Information."  The Status Report explained

10  the difference: "RFIs are used by the City to solicit information about potential solutions and do not

11  typically result in a contract award, whereas RFPs are used by the City to gather responses and

12  pricing from potential contractors to deliver a specific City defined scope of work, with the purpose

13  of awarding one or more contracts at the end of the RFP process."  (ECF 85 at PDF p. 3:25.)

14      The Status Report informed the Court that no qualified organizations responded to the City

15  Manager's Request for Information (*id.* at PDF p. 3:13.) so the City Manager "has decided that the

16  best approach to progress implementation at this point is to ... publish a full Request for Proposals

17  .... Unfortunately, the lack of satisfactory RFI responses and the upcoming RFP process will delay

18  the steps necessary for full implementation." (*Id.* at PDF p. 3:20.)  The Status Report offered no

19  date by which these overdue "steps necessary for full implementation" might be completed.

20      Despite the City's delay in designating a nonprofit, it is back in court requesting dismissal

21  of plaintiffs' amended complaint on grounds of unripeness because no nonprofit organization has

22  yet been designated.  The City should not benefit from its own delay.

23      The complaint alleges that a $25 Fee is imposed for the current year and will eventually be

24  collected once a nonprofit has been designated.  (Cons. 2d Amnd. Complaint at PDF p. 11:15.)

25  The City apparently does not dispute that allegation.  (City's Mot. to Dismiss at PDF p. 26:4 ["The

26  primary thing that has changed since the Court previously dismissed claims for lack of ripeness is

27  that the City Council passed in its 2022-2023 schedule of fines and fees a Fee amount of $25"].)

7

1   Because the ordinance requires that the current Fee be paid eventually once a private nonprofit

2   organization is selected by the City Manager, plaintiffs' First Amendment claims are ripe enough

3   for facial review.  The City's motion should be denied.

4   **B.    _Plaintiffs' First Amendment Claims Are Ripe Enough For Facial Review_**

5           As the City readily admits, this case presents a facial challenge to the City's Gun Harm

6   Reduction Fee.  (City's Mot. to Dismiss at PDF p. 23:10.)  A facial challenge ordinarily alleges that

7   "no set of circumstances exists under which the law would be valid." But in the First Amendment

8   context, it need only allege that "a substantial number of its applications [would be] unconstitu-

9   tional." (City's Mot. to Dismiss at PDF p. 17:2; _Comite de Jornaleros de Redondo Beach v. City of_

10  _Redondo Beach_, 657 F.3d 936, 944 (9th Cir. 2011); _United States v. Stevens_, 130 S.Ct. 1577,

11  1587, 176 L.Ed. 2d 435 (2010).)

12          Here, plaintiffs' amended complaint alleges that a Fee of $25 has been imposed for fiscal

13  year 2022/2023, that it will eventually be collected, at which point nonpayment will be punished, and

14  that the challenged ordinance requires the Fee to be paid as a compelled donation to a private

15  nonprofit organization that the City Manager will designate. (Cons. 2d Amnd. Complaint at PDF p.

16  11:15.)

17          The City argues that, until the nonprofit is designated, it is unknown "how the Nonprofit will

18  actually behave in delivering voluntary services."   (City's Mot. to Dismiss at PDF p. 25:13.)

19  Regarding plaintiffs' compelled association claim, however, it is irrelevant how the nonprofit will

20  actually behave.  Plaintiffs' complaint alleges a right against being forced by the government to

21  associate with _anyone_.  (Cons. 2d Amnd. Complaint at PDF p. 19:11.)  Americans have a right to

22  choose for themselves which private organizations, if any, they want to associate with or support

23  financially. (_Roberts v. United States Jaycees_, 468 U.S. 609, 623 (1984).) The complaint therefore

24  adequately pleads a claim for compelled association.

25          For similar reasons, the complaint adequately pleads a claim for compelled speech.  The

26  City argues that, until a nonprofit is actually designated, it is unknown whether plaintiffs will

27  "disagree with their message," or whether the nonprofit will engage in expressive conduct at all.

8

1 (City's Mot. to Dismiss at PDF p. 25:12-24.)

2       Plaintiffs' facial challenge, however, does not rest on the content of the nonprofit's speech.

3 It is irrelevant whether plaintiffs will agree or disagree with its message.  It is enough that the

4 nonprofit will be speaking, and the City of San Jose is ordering gun owners to subsidize that

5 speech. (*Janus v. AFSCME Council 31*, 138 S.Ct. 2448, 2463 (2018).)  Moreover, the designated

6 nonprofit can change from year to year at the discretion of the City Manager.  (SJ Muni. Code §

7 10.32.235.)  Waiting to learn how the first designated nonprofit will "actually behave" provides no

8 guarantee that subsequent nonprofits will behave the same way.

9       The City cannot seriously argue that these nonprofits might not speak at all.  They *have* to

10 speak.  They must provide services to gun owners and others, which "may include, but are not

11 necessarily limited to the following: (1) Suicide prevention services or programs; (2) Violence

12 reduction or gender based violence services or programs; (3) Addiction intervention and substance

13 abuse treatment; (4) Mental health services related to gun violence; or (5) Firearms safety

14 education or training."  (SJ Muni Code § 10.32.220.)  None of these services can be provided

15 without communication.  For example, if a person contacts the nonprofit ready to commit suicide,

16 is it reasonable to believe he will be met with silence? Is it reasonable to believe that a "firearms

17 safety education or training" class could be taught without communication?  While it may be

18 possible that *some* of the nonprofit's activities will involve no speech, for a First Amendment facial

19 challenge, it is sufficient that "a substantial number" of its services will. (*Comite de Jornaleros*, 657

20 F.3d at 944.)

21       Because, under the ordinance, the nonprofit will be offering voluntary services that involve

22 speaking, and plaintiffs have alleged a right against being forced by the government to subsidize

23 *anyone's* speech (Cons. 2d Amnd. Complaint at PDF p. 19:9), the complaint adequately pleads not

24 only a claim for compelled association, but a claim for compelled speech as well.

25 / / /

26 / / /

27 / / /

**III**

**AMENDMENTS TO THE COMPLAINT**
**WARRANT DENYING THE CITY'S RENEWED MOTION**
**TO DISMISS PLAINTIFFS' UNCONSTITUTIONAL CONDITION CLAIM**

In its September Order, this Court observed that plaintiffs' complaint as then drafted asserted a constitutional right to keep and bear arms under both the U.S. and California constitutions.  The complaint alleged that the City's ordinance unconstitutionally conditioned plaintiffs' exercise of these rights by requiring gun owners to pay a "fee" or else face confiscation of their firearms.

The Court rejected the assertion that California's constitution contains a right to keep arms and ruled, "to the extent HJTA Plaintiffs assert the unconstitutional condition of a California right, amendment would be futile, as the California Supreme Court has expressed that there is no right to bear arms in the California Constitution.  Accordingly, this claim is dismissed WITHOUT LEAVE TO AMEND."  (Court's Order, ECF 81 at PDF p. 21:11.)

As to plaintiffs' claim that the City's ordinance unconstitutionally conditions their federal right to bear arms, the Court dismissed that claim with leave to amend.  The Court explained that, in its view, plaintiffs were "misinterpreting" the ordinance.  "[T]he HJTA Complaint's allegation that 'any gun owner who fails to pay the required fee to the designated private organization may be forced to surrender his firearms' is a misinterpretation of the Ordinance. ... The Ordinance expressly states that its impoundment provision may only apply '[to] the extent allowed by law' (Ordinance § 10.32.245), and the City openly admits that there is no state or federal law that would presently permit impoundment."  (*Id.* at PDF p. 20:5.)  Because the Court's interpretation of the ordinance was based on the City's admission, the Court granted plaintiffs leave to amend their complaint to allege otherwise.

In their consolidated amended complaint, plaintiffs did allege otherwise.  First, they deleted the verbiage that previously claimed a right to bear arms implied in "Article I, section 1 of the California Constitution provid[ing] that 'All people ... have inalienable rights' among which are the rights of 'protecting property, and pursuing and obtaining safety.'" (Plaintiffs' Orig. Complaint at

PDF p. 6:1.)  But then, with respect to whether city police have authority to seize the firearms of gun owners who refuse to pay the fee, plaintiffs added new allegations to their amended complaint:

110.    The City has represented to the District Court that section 10.32.245 does not currently threaten gun owners with confiscation of their firearms because it reads, "*To the extent allowed by law*, the Firearm or Firearms of a person that is not in compliance with this Part may be impounded subject to a due process hearing" and, according to the City, the law does not currently authorize city police to confiscate a firearm with or without a due process hearing.

111.    The Howard Jarvis Plaintiffs believe that representation is incorrect. City police are authorized by law to, and often do, confiscate firearms when carried or used in violation of the law. If a student brings a firearm to school, if someone is carrying a firearm in public without a CCW permit, if someone with a CCW permit is carrying a firearm while intoxicated, if someone purchases a firearm on the street without going through a federally licensed dealer, if someone discharges a firearm in the air on New Year's Eve, and for a host of other reasons, city police are authorized to, and often do, confiscate firearms when carried or used in violation of the law.

112.    The City's Ordinance makes it a violation of the law to own a gun in the City of San Jose unless you timely pay the annual Gun Harm Reduction Fee. San Jose Municipal Code section 1.08.010 provides, "No person shall violate any provision or fail to comply with any of the requirements of this Code or of any other ordinance of the city. Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this Code or of any city ordinance, other than administrative provisions thereof, shall be guilty of a misdemeanor, unless the violation of such provision is designated as an infraction or is a parking violation. The Code provisions for which a violation is an infraction are set forth in Section 1.08.020. The Code provisions for which a violation is a parking violation are set

11

1    forth in Section 1.08.025." Possessing a gun without paying the fee is not an

2    infraction. It is a misdemeanor violation of the law, and city police can confiscate a

3    gun that is kept or carried in violation of the law.

4    (Cons. 2d Amnd. Complaint at PDF p. 19:18-20:16.)

5        San Jose is a charter city.  Under California's constitution, charter cities "may make *and*

6    *enforce* all ordinances and regulations in respect to municipal affairs, subject only to restrictions

7    and limitations provided in their several charters .... City charters adopted pursuant to this Constitu-

8    tion shall supersede any existing charter, and with respect to municipal affairs shall supersede *all*

9    *laws* inconsistent therewith."  (Cal. Const., art. XI, § 5.)  Under this provision of the California

10   Constitution whereby a charter city's charter, with respect to municipal affairs, supersedes state

11   law inconsistent therewith, the burden is on the City to identify some federal law that prohibits the

12   City from seizing firearms when they are possessed in violation of the City's ordinance.  So far, the

13   City has only "admitted" that it has no such power, but that could just be strategic posturing to gain

14   an advantage in the litigation.  The City has identified no federal law that would deprive it of the

15   power to enforce its own ordinance.  In fact, in defending against NAGR's Second Amendment

16   claims, the City has argued vigorously that federal law does not constrain the City's power to

17   regulate local gun ownership.

18        The new allegations added to plaintiffs' amended complaint are sufficient to state a claim

19   for unconstitutional condition.  The City's motion to dismiss this claim should be denied.

20                                              IV

21              **PLAINTIFFS' UNVOTED TAX CLAIM IS CURRENTLY**
         **DISTINGUISHABLE FROM *SCHMEER*, AND IS NONETHELESS ALLOWED**
22       **UNDER *SCHMEER*, A CASE THAT SHOULD NOT BE EXTENDED BEYOND ITS FACTS**

23        The City argues that plaintiffs' unvoted tax claim should be dismissed because it contains

24   essentially the same allegations as their prior complaint, which this Court dismissed because it

25   found a controlling precedent in *Schmeer v. County of Los Angeles* (2013) 213 Cal.App.4th 1310.

26   Currently, however, and for the foreseeable future, *Schmeer* does not apply to this case because

27   the City is imposing a fee that is not being paid to a private entity.  And even if the City someday

                                              12

1    finds a private entity to provide the services described in the ordinance, the fee will still be "for the

2    benefit of" the City of San Jose, which takes it out from under *Schmeer*.

3    **A.    _The Fee Is Not Currently Being Paid To A Private Entity_**

4            *Schmeer* involved a local ordinance barring grocers from furnishing disposable plastic bags

5    to their customers, and requiring the grocers to charge and keep ten cents for each paper bag

6    requested by a customer.  *Schmeer* held that the bag charge did not impose a "tax" that required

7    voter approval as that term is used in article XIII C, sections 1 and 2 of the California Constitution,

8    because "tax" in our common vernacular refers to compulsory payments made to or for the benefit

9    of the government.  "Accordingly, we conclude that the language 'any levy, charge, or exaction of

10   any kind imposed by a local government' in the first paragraph of  California Constitution, article

11   XIII C, section 1, subdivision (e) is limited to charges payable to, or for the benefit of, a local

12   government."  (*Schmeer*, 213 Cal.App.4th at 1328-29.)

13           The complaint alleges that a $25 Fee is imposed for the current year despite the fact that

14   a nonprofit payee has not yet been designated.  (Cons. 2d Amnd. Complaint at PDF p. 11:15; see

15   also City's Mot. to Dismiss at PDF p. 26:4 ["The primary thing that has changed since the Court

16   previously dismissed claims for lack of ripeness is that the City Council passed in its 2022-2023

17   schedule of fines and fees a Fee amount of $25"].)  Since there is no designated nonprofit, the fee

18   was included in the City's 2022-2023 Budget for its police department.  (City's 8/17/22 Status

19   Report, ECF 25 at PDF p. 4:6 ["the City Council, after a public hearing, voted in June 2022 to

20   approve the City's 'Fee and Charges Report' for the 2022-2023 fiscal year, which included the Fee

21   as part of the City Police Department's annual budget and set a placeholder Fee amount of $25

22   per gun-owning household"].)

23           The lack of a nonprofit payee may or may not be a temporary situation.  The City admits

24   that no qualified organizations responded to the City Manager's Request for Information.  (City's

25   01-06-23 Status Report, ECF 85 at PDF p. 3:13.)  The City Manager "has decided that the best

26   approach to progress implementation at this point is to ... publish a full Request for Proposals ....

27   Unfortunately, the lack of satisfactory RFI responses and the upcoming RFP process will delay the

1  steps necessary for full implementation." (*Id.* at PDF p. 3:20.)  The City has committed to no date
2  by which this RFP process will be commenced or completed, nor offered any guarantee that it will
3  produce a qualified nonprofit willing to sign a contract with the City to provide the services de-
4  scribed in the ordinance.  In the meantime, however, San Jose gun owners are subject to an
5  accumulating debt of $25/year.

6      The City may object to having its fee analyzed under the current state of affairs, but doesn't
7  the City's Motion to Dismiss demand that plaintiffs' complaint be analyzed under the current state
8  of affairs?  The City's motion asks this Court to dismiss plaintiffs' complaint as unripe because, at
9  this snapshot in time, there is no designated nonprofit payee.  What's good for the goose is good
10  for the gander.  At this snapshot in time, when there is no designated nonprofit payee, *Schmeer*
11  does not apply to rescue the City's 2022/2023 fee.  The motion must be denied.

12  **B.  *Even If A Nonprofit Is Designated, Schmeer, By Its Own Terms, Will Not Apply***

13      *Schmeer* held that the term "tax," as defined in article XIII C, section 1(e), "is limited to
14  charges payable to, *or for the benefit of*, a local government."  (*Schmeer*, 213 Cal.App.4th at
15  1328-29.)

16      Plaintiffs' complaint alleges that "the City's Ordinance requires the nonprofit to expend the
17  fee providing services such as suicide prevention, gender based violence prevention, addiction
18  intervention, substance abuse treatment, and mental health counseling for victims of gun violence,
19  which services will be available to the general public, not just gun owners, and which gun owners
20  are not required to, and may not choose to, utilize. Because its revenue will fund public services,
21  not services requested by each payer, the 'fee' is a tax under California law."  (Cons. 2d Amnd.
22  Complaint at PDF p. 11:21.)

23      San Jose Municipal Code section 10.32.200 contains Findings regarding the need for the
24  ordinance, and a declaration of purpose.  It finds, "Conservatively, San Jose taxpayers annually
25  spend approximately $39.7 million ... to respond to gun violence with such public services as
26  emergency police and medical response, victim assistance, incident investigation, acute and
27  long-term health care, and perpetrator adjudication and judicial sanctioning." It declares, "This Part

14

1  is passed and adopted in the exercise of the police power of the City, and for the protection of the

2  welfare, peace and comfort of the residents of the City of San Jose.  Specifically, it is the intent of

3  this Ordinance to reduce gun harm."

4          Thus, for the purpose of reducing the annual cost incurred by "San Jose taxpayers ... to

5  respond to gun violence with such public services as emergency police and medical response,

6  [etc.]," and "for the protection of the welfare, peace and comfort of the residents of the City of San

7  Jose," the ordinance requires gun owners to pay an annual fee to a nonprofit organization fo fund

8  its provision of services which plaintiffs allege are available to, and for the benefit of, the San Jose

9  general public – which services could have been provided by the City directly had the City been

10  willing to pay for them.

11          This, plaintiffs contend, is a tax requiring voter approval, even under *Schmeer's* narrowed

12  definition of "tax" to mean only "charges payable to, *or for the benefit of*, a local government."

13  (*Schmeer*, 213 Cal.App.4th at 1328-29.)

14  **C.      *This Court Should Not Extend Schmeer's Reach To Vastly Different Facts***

15          The California Constitution defines a "tax" as "*any* levy, charge, or exaction of *any kind*

16  imposed by a local government."  (Cal. Const., art. XIII C, § 1(e).)  The *Schmeer* court admitted

17  that the bag fee was *imposed* by a local government, and that article XIII C "does not explicitly state

18  that the levy, charge or exaction must be *payable* to a local government."  (*Schmeer*, 213

19  Cal.App.4th at 1327.)  Nevertheless, the court ruled that the word tax "in ordinary usage" refers

20  only to payments made to, or for the benefit of, the government.

21          The HJTA plaintiffs believe that, had their case been allowed to remain in state court and

22  progress up to the state courts of appeal, there is a good chance *Schmeer* would not have been

23  extended to facts like those at bar.

24          *Schmeer* cited no precedent for its interpretation of article XIII C, section 1(e).  It also cited

25  no precedent for redefining a constitutionally defined term of art.  In fact, the only precedent at the

26  time acknowledged that the voters who enacted article XIII C, section 1(e) intended a "*broadened

27  definition of 'tax*'," not the one in ordinary usage.  (*Griffith v. City of Santa Cruz* (2012) 207

15

1   Cal.App.4th 982, 989.)

2       In the ten years since *Schmeer* was decided, only one court has followed it.  This Court.

3   (See *Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, No. 22-cv-00501-BLF, 2022 U.S. Dist.

4   LEXIS 138385, at *42 (N.D. Cal. Aug. 3, 2022).)

5       As plaintiffs argued before, *Schmeer* can be easily distinguished from the case at bar.

6   *Schmeer* ruled it was not a tax when commercial retailers with no connection to the government

7   were required to collect a ten cent payment for a ten cent product, and only from persons who

8   voluntarily purchased the product.  Here, however, there is a connection to the government.  The

9   City will hand-pick the nonprofit organization it finds most qualified to provide services to the public

10  that are specified in the ordinance and which the City itself could provide, it will enter into contract

11  with that nonprofit, and will audit the nonprofit's use of the fee revenue.  (SJ Muni. Code §

12  10.32.235.)  Unlike *Schmeer*, the fee is compulsory; gun owners must pay it whether or not they

13  request or receive any service that the nonprofit offers.  As the City admits, use of the services is

14  "voluntary" even though payment of the fee is not.  (City's Mot. to Dismiss at PDF p. 8:25.)

15      Applying any test other than the *Schmeer* private payee test, this would be a tax.  It passes

16  the only test expressly contained in article XIII C, section 1(e) where "tax" is defined as "*any* levy,

17  charge, or exaction of *any* kind imposed by a local government."  Unlike the bag charge in

18  *Schmeer*, the City's fee also passes the test of "compulsory" and "not in return for a benefit."

19  "[G]enerally speaking, a tax has two hallmarks: (1) it is compulsory, and (2) it does not grant any

20  special benefit to the payor."  (*Cal. Chamber of Commerce v. State Air Res. Bd.* (2017) 10

21  Cal.App.5th 604, 610.)  "Indeed, nothing is more familiar in taxation than the imposition of a tax

22  upon a class or upon individuals who enjoy no direct benefit from its expenditure, and who are not

23  responsible for the condition to be remedied."  (*Knox v. City of Orland* (1992) 4 Cal.4th 132, 135.)

24  And again unlike the bag charge in *Schmeer*, the City's gun fee even passes the test of raising

25  revenue to pay for public services.  "A 'tax,' in the general sense of the word, includes every charge

26  upon persons or property, imposed by *or under the authority of* the Legislature, for public pur-

27  poses."  (*City of Glendale v. Trondsen* (1956) 300 P.2d 235, 239 [citations omitted].)

16

1         Although the City repeatedly argues that the nonprofit will provide services only to "gun

2  owners and their families." (City's Motion at PDF 8:8, 8:25, 30:18.), the complaint alleges that the

3  nonprofit is authorized to, and logically must, offer services to unrelated members of a gun owner's

4  household, unrelated intimate friends, and even the general public. (Cons. 2d Amnd. Complaint

5  at PDF 14:11, 11:20.) This Court must accept the complaint's version of the facts, not only

6  because this is a motion to dismiss, but also because only plaintiffs' version is supported by the

7  actual text of the ordinance. To be qualified for selection as the Designated Nonprofit Organiza-

8  tion, an organization must "provid[e] services to residents of the City that own or possess a Firearm

9  in the City *or* to members of their household, *or* to those with whom they have a close familial or

10  intimate relationship." (SJ Muni Code § 10.32.220.) Unrelated members of one's household, such

11  as roommates, and unrelated people with whom one has an intimate relationship, such as

12  sweethearts and close friends, are members of the public, not family, despite the City's repeated

13  misrepresentation otherwise.

14         Moreover, services that the nonprofit is expected to provide will logically reach outside the

15  payer's inner circle. They "include, but are not necessarily limited to the following: (1) Suicide

16  prevention services or programs; (2) Violence reduction or gender based violence services or

17  programs; (3) Addiction intervention and substance abuse treatment; (4) Mental health services

18  related to gun violence; or (5) Firearms safety education or training." (*Id.*) It is far-fetched for the

19  City to suggest that the nonprofit will hang up the phone when a non-gun owner calls ready to end

20  his life by jumping or overdosing. It is far-fetched to suggest that the nonprofit is going to counsel

21  victims of gun violence only if they currently possess a gun of their own. Logically, these services

22  will be available to the general public.

23         The City's fee therefore is: (1) imposed by the City; (2) compulsory; (3) not in return for a

24  benefit received; (4) to pay for public services. *Schmeer*'s analysis considered none of these

25  traditional tests. It looked only at the broad definition of "tax" contained in California's Constitution,

26  article XIII C, section 1(e), which defines a tax as "any levy, charge, or exaction of any kind

27  imposed by a local government" *unless it fits one of seven exceptions*. The *Schmeer* court did not

find that the bag charge fit any one of the seven exceptions.  Instead, it made up an eighth exception: "paid to a private entity."  This broke several rules of constitutional construction.  "Absent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language." (*Prof. Engineers in Cal. Gov. v. Kempton* (2007) 40 Cal.4th 1016, 1037.)  Where there is ambiguity, "construction is to favor the taxpayer rather than the government." (*Cal. Motor Transp. Co. v. State Bd. of Equal.* (1947) 31 Cal.2d 217, 223-24.)  "Initiative measures as well as other general constitutional provisions should be interpreted liberally to give full effect to the framers' objective." (*Mills v. Cnty. of Trinity* (1980) 108 Cal.App.3d 656, 660.) Here, the "framers' objective" is contained in the Liberal Construction Clause of the statewide initiative that added article XIII C to the constitution, and the Findings and Declarations of the subsequent initiative that amended it: "its provisions 'shall be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent'" (*Hill RHF Hous. Partners, L.P. v. City of L.A.* (2021) 12 Cal.5th 458, 475) "so that neither the Legislature nor local governments can circumvent these restrictions on increasing taxes by simply defining new or expanded taxes as 'fees'" (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 263).

Thus, the *Schmeer* court was barred from adding to or rewriting article XIII C, required to construe it to favor taxpayers rather than the government, and bound to adopt a liberal interpretation that gives full effect to the framers' objective of enhancing taxpayer consent and preventing local governments from circumventing voter approval by labeling exactions as "fees."  Instead it took the opposite approach.  For these reasons, rather than expand *Schmeer*, which no California court has done, this Court should either distinguish *Schmeer* based on its vastly different facts, or find that the fee at bar may constitute a tax even under *Schmeer* because it is "for the benefit of" the City of San Jose.

/ / /

/ / /

/ / /

**V**

**IF PLAINTIFFS' CLAIM OF UNLAWFUL DELEGATION
IS DISMISSED ON RIPENESS GROUNDS,
IT SHOULD BE WITH LEAVE TO AMEND**

The City urges this Court to dismiss plaintiffs' unlawful delegation claim again, as it did before, for the same reasons and based on the same concessions that applied then.

First, plaintiffs again concede that they have no claim for an unlawful delegation of the power to tax unless this Court first finds that the City's fee is a "tax" as that term was broadly defined by the voters in the California Constitution.

Second, plaintiffs also concede that they have no claim under California Constitution article XI, section 11, because that provision applies to the State Legislature, not the City. Plaintiffs meant to scrub that from the consolidated amended complaint and apologize that somehow it was inadvertently left in.

When this Court partly granted the City's first motions to dismiss last September, it dismissed plaintiffs' unlawful delegation claim (with leave to amend) solely on ripeness grounds. The Court opined, "Here, because section 31 includes the specific language of 'surrendered or suspended by grant or contract,' the absence of any grant or contract would significantly hamper the Court's ability to evaluate whether the power to tax has been 'surrendered or suspended.' ... Because there is no current grant or contract that the Court can evaluate to determine if the City has 'surrendered or suspended' its power to tax, the Court finds that HJTA Plaintiffs' fourth claim for unconstitutional delegation is not ripe for adjudication. Accordingly, the Court will GRANT the City's motion to dismiss this claim with LEAVE TO AMEND." (Court's Order, ECF 81 at PDF p. 23:17.)

If the City ever finds a qualified nonprofit willing to collect the fee and provide the services described in the ordinance, that nonprofit and the City will enter into a contract. (See Staff Memo, Attachment A, PDF p. 5 at https://www.sanjoseca.gov/home/showpublisheddocument/87508 [setting December 2022 as the date by which the City Manager would "[f]inalize contract with designated nonprofit"].) Should that day ever come, plaintiffs' allegations that the nonprofit will

1    collect the fee and appropriate and spend its revenue, will materialize.  Under the terms of the

2    Ordinance, the City cannot be the one collecting the fee.  Rather, gun owners "shall pay an Annual

3    Gun Harm Reduction Fee to the Designated Nonprofit Organization each year."  (S.J. Muni. Code

4    § 10.32.215.)  Nor will the City appropriate or spend the revenue from the fee.  San Jose Municipal

5    Code section 10.32.220(C) provides, "the City shall not specifically direct how the monies from the

6    Gun Harm Reduction Fee are expended."  Rather, "[t]he Designated Nonprofit Organization shall

7    spend every dollar generated from the Gun Harm Reduction Fee."

8           If plaintiffs' unlawful delegation claim is unripe, then, it is through no fault of their own.  And

9    if the City ever signs a contract with a nonprofit, the claim will become ripe at that time.  Therefore,

10   if the Court again dismisses the claim as unripe, it should again be with leave to amend.

11                                              **<u>CONCLUSION</u>**

12          For the reasons above, the City's motion to dismiss plaintiffs' consolidated amended

13   complaint should be denied, but to the extent it is granted based on unripeness, it should be with

14   leave to amend if and when the City designates a nonprofit to collect the fee.

15   DATED: March 16, 2023.                          Respectfully submitted,

16

17                                                   JONATHAN M. COUPAL
                                                     TIMOTHY A. BITTLE
                                                     LAURA E. DOUGHERTY

18

19                                                   _____

20                                                   TIMOTHY A. BITTLE
                                                     Attorneys for Plaintiffs
                                                     HOWARD JARVIS TAXPAYERS ASSN.,et al.
21

22

23

24

25

26

27