HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

DAVID A. WARRINGTON (*pro hac vice*)
dwarrington@dhillonlaw.com
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 402
Alexandria, VA 22314
Telephone: (571) 400-2121

*Attorneys for Plaintiffs National Association for Gun Rights, Inc., and Mark Sikes*

[Case caption follows on next page]



Plaintiffs' Response to Defendants' Motion to Dismiss
Plaintiffs' First Amended Complaint

Case No.22-cv-00501-BLF

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,** a nonprofit corporation, and **MARK SIKES,** an individual,<br><br>And<br><br>**HOWARD JARVIS TAXPAYERS ASSN.**, a nonprofit corporation, **SILICAN VALLEY TAXPAYERS ASSN.**, a nonprofit corporation, **SILICON VALLEY PUBLIC ACCOUNTABILITY FOUNDATION**, a nonprofit corporation, **JIM BARRY**, an individual, and **GEORGE ARRINGTON**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF SAN JOSE, a public entity, JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, and the **CITY OF SAN JOSE CITY COUNCIL,**<br><br>Defendants. | Case Number: 5:22-cv-00501-BLF<br><br>**PLAINTIFFS NATIONAL ASSOCIATION FOR GUN RIGHTS' AND MARK SIKES' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINT**<br><br>Date:     June 15, 2023<br>Time:    9:00 a.m.<br>Judge:   Honorable Beth Labson Freeman<br>Dept:    Courtroom 3 (5th Floor) |



# TABLE OF CONTENTS

STATEMENT OF THE ISSUES TO BE DECIDED ................................................... 1

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 2

LEGAL STANDARD ............................................................................................ 2

ARGUMENT ........................................................................................................ 3

I.   The NAGR Plaintiffs have stated a plausible claim that the Ordinance violates the Second Amendment ................................................................ 3

   A.   The Ordinance regulates conduct—owning or possessing firearms—that falls within the plain text of the Second Amendment. ................................ 4

   B.   The NAGR Plaintiffs have plausibly alleged that both the Insurance Requirement and the Fee Requirement are inconsistent with the text and historical understanding of the Second Amendment. .................................. 6

   C.   The Fee Requirement is ripe for review. ..................................................... 8

II.   The Ordinance violates the First Amendment. ....................................... 9

III.   Plaintiffs are entitled to declaratory relief. ........................................... 10

CONCLUSION .................................................................................................. 10



**STATEMENT OF THE ISSUES TO BE DECIDED**

In Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 95) ("Motion to Dismiss"), Defendants identify three issues to be decided:

1. Whether, under Rule 12(b)(6), Plaintiffs' claims facially challenging the Ordinance's Insurance requirement under the Second Amendment should be dismissed with prejudice for failure to state a claim?

2. Whether Plaintiffs' claims facially challenging the Ordinance's Fee requirement should be dismissed without prejudice because they are still unripe for review?

3. Whether, under Rule 12(b)(6), Plaintiffs' claims facially challenging the Ordinance's Fee requirement should be dismissed with prejudice for failure to state claim?

**INTRODUCTION**

This past summer, the Supreme Court once again reaffirmed that the constitutional right to bear arms "is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, 2156 (2022) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality opinion)). If a restriction would be intolerable "when it comes to unpopular speech or the free exercise of religion" under the First Amendment, or "a defendant's right to confront the witnesses against him" under the Sixth Amendment, it is intolerable under the Second Amendment. *See id*.

The City of San Jose fails to grapple with the Court's test set forth in *Bruen* and blithely attempts to smuggle in the very sort of balancing test the Court rejected. The City of San Jose adopted an ordinance that imposes costs on American citizens merely for choosing to exercise their Second Amendment rights. These costs impose a burden that is not supported by America's historical tradition of firearms ownership and therefore fail to pass constitutional muster under *Bruen*.

The ordinance also fails under the Second Amendment. A city ordinance mandating that homeowners have property insurance before posting a political sign in their front yard would plainly

offend the First Amendment. So too would a City Ordinance requiring that a criminal defendant pay a speech tax of $25, unconnected with any actual administrative costs incurred by the City—like the Annual Gun Harm Reduction Fee imposed by the City Ordinance here. Neither would be saved by the argument that most people already have homeowner's insurance or that the speaking tax is low, nor would they be subject to a balancing test.

Thus, Plaintiffs National Association for Gun Rights and Mark Sikes (the "NAGR Plaintiffs") have stated a claim for relief and the Defendant's Motion to Dismiss must be denied.

## FACTUAL BACKGROUND

This opposition incorporates by reference the Second Amended Complaint, which fully sets forth the relevant facts. In sum, the City of San Jose's ordinance, specifically Part 6 of Chapter 10.32 of Title 10 of the San Jose Municipal Code (the "Ordinance"), requires any person who owns or possesses a gun to purchase liability insurance and pay a fee to a nonprofit. *E.g.*, Compl. ¶¶ 4, 30-35, 40, 50-52, 53-56, 57-65. The Ordinance requires anyone who keeps or bears arms in the City of San Jose, with limited exceptions, to "obtain and continuously maintain" a liability insurance policy covering losses or damages resulting from any accidental use of the firearm (the "Insurance Requirement"). Compl. ¶¶ 53-56. The Ordinance also requires anyone who keeps or bears arms in the City of San Jose, with limited exceptions, to pay a fee to an undesignated nonprofit to support its program (the "Fee Requirement"). Compl. ¶¶ 57-65. Anyone who does not comply will be penalized. *Id.* at ¶¶ 35, 41.

## LEGAL STANDARD

"A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). All allegations of material fact in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *See Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998); *Usher v. City of Los Angeles*, 88 F.2d 556, 561 (9th Cir. 1987). "A court must give the plaintiff the benefit of every reasonable inference to be drawn from the 'well-pleaded' allegations of the complaint." *McFadyen v. Cnty. of Tehama*, No. 218CV02912TLNDMC, 2020 WL 4480376, at *3 (E.D. Cal. Aug. 4, 2020) (citing *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6



(1963)).

A plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not "impose a probability requirement at the pleading stage." *Starr v. Baca*, 652 F.3d 12012, 1213 (9th Cir. 2011). It "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support the allegations." *Id.* at 1217.

## ARGUMENT

### I. The NAGR Plaintiffs have stated a plausible claim that the Ordinance violates the Second Amendment.

The NAGR Plaintiffs have stated a plausible claim for relief under 42 U.S.C. § 1983 for violation of their Second Amendment rights, as incorporated by the Fourteenth Amendment. In the context of the Second Amendment, we have a rare phenomenon—a clearly defined, recently announced test established by the Supreme Court: *New York State Rifle & Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022). *Bruen* adopted a one-step test for evaluating a gun regulation as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S.Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n. 10 (1961)).

This test explicitly eschews any "means-end" scrutiny or "interest-balancing inquiries" in review of regulations that burden the right to bear arms. 142 S.Ct. at 2127-30. To wit, the Court stated, "[*District of Columbia v.] Heller* [554 U.S. 570 (2008)] and *McDonald* expressly rejected the application of any 'judge-empowering interest-balancing inquiry that asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests.'" *Bruen*, 142 S.Ct. at 2129 (quoting

*Heller*, 554 U.S. at 634) (other citations omitted). Such evaluations are unnecessary and inappropriate because "[t]he Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Bruen*, 142 S.Ct. at 2131 (quoting *Heller*, 544 U.S. at 635).

### A. The Ordinance regulates conduct—owning or possessing firearms—that falls within the plain text of the Second Amendment.

The Ordinance places a burden on a core right protected by the Second Amendment—the right to keep and bear arms for self-defense within the home. Indeed, by its plain terms, the Ordinance imposes a fee on lawful gun owners merely for choosing to exercise this right. It thus transgresses the Second Amendment's "unqualified command." Defendants themselves have repeatedly characterized the challenged requirements as "novel" and representing a first-in-the-nation approach to regulating firearms ownership. Thus, they are not consistent with our Nation's history and tradition of firearms regulation.

Defendants' attempt to avoid this conclusion by converting the Court's one-step test into a two-step test by arguing that the Ordinance is not a firearms regulation. This "is one step too many." *Bruen*, 142 S.Ct. at 2127. As shown below, the Ordinance is a firearms regulation, which means the only question before the Court is whether the NAGR Plaintiffs have plausibly alleged that it is inconsistent with the Second Amendment's text and historical understanding. They have. As shown below, the NAGR Plaintiffs have plausibly alleged inconsistency between the Ordinance and the Second Amendment's text and historical understanding.[1] The Ordinance regulates conduct—owning or possessing firearms in the home for self-defense—that falls within the plain text of the Second Amendment.

As a gating item, Defendants argue that the Ordinance is not a firearms regulation because the conduct regulated by the Ordinance is "entirely outside the scope of the Second Amendment." Mot. 11:13-14. That argument strains credulity. Defendants ignore the fact that the text of the Ordinance specifically regulates owning or possessing firearms. Compl. ¶¶ 53, 57. Any regulation that targets gun ownership and possession with a unique and novel requirement, as the Ordinance

---

[1] Moreover, at this stage, the Court does not need to decide whether the Ordinance is inconsistent, only whether Plaintiffs have *plausibly alleged* inconsistency, which they have.



does, targets conduct covered by the plain text of the Second Amendment. *Id.* at 2126. The Ordinance targets gun ownership and possession in at least two ways: (1) imposing a burden on gun ownership and possession through the Insurance Requirement, and (2) imposing a burden on gun ownership and possession through the Fee Requirement. Thus, the Ordinance seeks to regulate the keeping and bearing of arms, regulating and burdening conduct that falls within the plain text of the Second Amendment.

Defendants seek to evade this conclusion by arguing "an administrative citation and fine" for noncompliance with the Ordinance's regulation of persons who own, or possess, firearms, does not *substantially affect* the right to keep and bear arms. Motion to Dismiss 12:11-17 (emphasis added). That is a thinly-veiled attempt to argue that the burden is so small that it is justified under "means-end" scrutiny or "interest-balancing" inquiries--exactly the type of argument the *Bruen* court rejected. 142 S.Ct. at 2127-30.

Whether a regulation's burden is small or great, impactful or inconsequential is immaterial. The Second Amendment presents an "unqualified command" that "elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Bruen*, 142 S.Ct. at 2131 (quoting *Heller*, 544 U.S. at 635). The government bears the burden of proving that *any* burden on the right to keep and bear arms is consistent with our nation's history and tradition of firearms regulation—narrowly calculated or broadly construed—modern firearms regulations must be consistent with the Second Amendment's text and historical understanding. *Id.*

Both the insurance requirement and the nonprofit donation requirement impose costs upon gun owners that they must satisfy to exercise their Second Amendment rights. Indeed, this Ordinance, which focuses its regulation on firearms in the home, is within the area of Second Amendment protection that is "most acute." *Heller*, 554 U.S. at 628. Accordingly, it is the City's burden to establish that the Ordinance is consistent with the Nation's historical tradition of firearm regulation—a burden the City cannot meet.



**B.  The NAGR Plaintiffs have plausibly alleged that both the Insurance Requirement and the Fee Requirement are inconsistent with the text and historical understanding of the Second Amendment.**

The Insurance Requirement and the Fee Requirement, which are regulations imposed on persons keeping and bearing arms, must be "consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S.Ct. 2130. The NAGR Plaintiffs have plausibly stated a claim that these requirements are inconsistent with the Second Amendment's text and historical understanding, and therefore have plausibly alleged a violation of their rights under color of law, as required under 42 U.S.C. § 1983.

Given that people have committed violent acts using guns that, like violence by any means, inflicted financial and social costs throughout American history, the City is obligated to identify historical examples of gun regulations that resemble the Ordinance's regulations. However, the City cannot identify historical examples of requiring all gun owners to carry insurance as a condition to possess a gun or to pay a fee to fund a non-profit organization chosen by the government. Indeed, the City's former Mayor has been billing this Ordinance as a first-of-its-kind law, claiming in his own press release the City of San Jose is "the first city in the United States to enact an ordinance to require gun owners to purchase liability insurance." Compl. at Exhibit A.

Contrary to the plain meaning of their own statements, Defendants argue that its laws are analogous to surety laws from the 1800s, and therefore consistent with the text and historical understanding of the Constitution. Mot. At 14:9-28. This is an inapt analogy. The Supreme Court's analysis of surety laws highlights the constitutionally meaningful distinction between them and the City's Ordinance. In short, the government's starting point must be that every citizen has a right to possess or carry a weapon, especially in the home, and it can only infringe upon that right once cause has been shown specific to the individual. Inherent in San Jose's Ordinance, however, is an assumption that every person is a danger and they must purchase their right to own a gun.

In the mid-19th century, certain jurisdictions required some individuals to post bond before carrying weapons in public. *Bruen*, 142 S.Ct. at 2148. Significantly, the Supreme Court concluded that "the surety statutes *presumed* that individuals had a right to public carry that could be burdened [with the bond requirement] only if . . . [there was a] specific showing of 'reasonable cause to fear

an injury, or breach of the peace'" by that person. *Id.* (quoting Mass. Rev. Stat., ch. 134, § 16 (1836) (emphasis in original). Specifically, the surety statutes imposed their burdens "only *after* an individual was reasonably accused of intending to injure another or breach the peace." *Id*. at 2148-49 (emphasis in the original). Accordingly, the Court concluded that "'[u]nder surety laws ... everyone started out with robust carrying rights' and only those reasonably accused were required to show a special need in order to avoid posting a bond." *Id*. at 2149.

San Jose's Ordinance, by contrast, starts from the position that no person has a right to keep and bear arms, even in their own home, unless they first obtain insurance and make a donation to the City's chosen nonprofit. Unlike the surety statutes, the burden the Ordinance would impose on a person's Second Amendment right to keep arms in the home is not justified based on the past behavior of that person demonstrating a likelihood of causing harm. The Ordinance instead presumes that all lawful gun owners residing in the City, with limited exceptions, are somehow dangers to themselves and others. Ordinance §§10.32.210.A; 10.32.225. This interpretation is reinforced by the fact that the Ordinance states that those who don't pay for insurance and pay a fee are subjected to having their guns impounded. Ordinance, § 10.32.245. Although impoundment is not permitted by state law, its inclusion reveals the Ordinance's presumptions and aspirations. Thus, rather than a law respecting a "robust" constitutional right to keep and bear arms, the Ordinance conditions citizens exercising their right to possess a gun on payment of unprecedented insurance premiums and donate to the City's non-profit. As *Bruen* established, when laws presume that no citizen is entitled to possess a gun, the law is unconstitutional.

Defendants argue that these laws are merely preventative, and not punitive, Mot. 14:14-17. But this argument once again improperly attempts to revive a form of "means-end" scrutiny at odds with *Bruen*'s clear historical analog framework. It is also fallacious because both laws impose criminal penalties for violations. Compl. ¶ 35, 41.

Defendants also argue that any infringement only "minimally burdens" Second Amendment exercise. This is more "means-end" scrutiny and "interest-balancing" inquiry. It also ignores the context of other costs referenced by the Court. While state actors may collect a fee to "meet the expense incident to the administration of the act and to the maintenance of public order in the matter

licensed," *Cox v. New Hampshire*, 312 U.S. 569 (1941), they "may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943). A separate fee within the Ordinance, not challenged here, defrays the City's administrative costs. Ordinance §10.32.250. The Insurance and Fee requirements do not; they are purely "charge[s] for the enjoyment of a right granted by the federal constitution," and thus impermissible.

The Complaint sets forth sufficient facts to show that the Ordinance is inconsistent with our Nation's history and tradition of firearms regulation. But even if they had not, they *plausibly* allege—including with reference to Defendants' own characterization of their Ordinance—that the Ordinance is inconsistent with the Nation's history and traditions. Those allegations must be taken as true at the motion to dismiss stage. Defendants cannot take a shortcut and skip to the ultimate question at this stage, that question requires a development of a factual record exploring the consistency between the Ordinance and the text and historical understanding of the Second Amendment. Denying Defendants' motion to dismiss does not require the Court to rule that the Ordinance is unconstitutional, but rather that the NAGR Plaintiffs should have the opportunity to prove their plausible allegations that the Ordinance is inconsistent with the historical understanding of the Second Amendment.

### C. The Fee Requirement is ripe for review.

The Constitution does not require citizens to wait for the government to violate their rights, and suffer consequential injuries, before they can sue. Temporary restraining orders, preliminary injunctions, and declaratory judgments are routine mechanisms by which citizens appeal to the judicial branch to *prevent* government from violating rights before the violations occur. "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo…prosecution as a sole means of seeking relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Such is the posture here.

The question before the Court is whether the Ordinance's Fee Requirement violates the

constitution. Defendants argue that this provision is not ripe for review because the "City has not designated a Nonprofit." Mot. 16:16. The name of the nonprofit designated to receive that fee does not change the constitutionality of the provision; there is no constitutional way to enforce this requirement regardless of which nonprofit is selected to receive gun owners' payments. Compl. ¶¶ 48-49. As we approach a point two years after the City first announced its intention to enact the Fee Requirement, more than a year after it was enacted to national fanfare for its novelty, and approximately half a year after the City informed the Court it would in fact implement the Fee Requirement within a few months, this requirement is ripe for review.

## II.     The Ordinance violates the First Amendment.

The NAGR Plaintiffs have stated a plausible claim for relief under 42 U.S.C. § 1983 for violation of their First Amendment rights of free speech and association, as incorporated by the Fourteenth Amendment. Freedom of speech includes the right to not speak and the right to not be forced by the government to support someone else's speech, particularly when you disagree with their message. The right to peaceably assemble includes the right to associate with others around a common cause and the right to not be forced by the government to associate with or support someone else's organization, particularly a group with which you would not voluntarily assemble. *See Janus v. AFSCME, Council 31*, 138 S.Ct. 2448, 2459-60 (2018) (forcing public employees to subsidize union speech, whether political or not, is unconstitutional). Any compelled payments to a private organization without consent "violates the First Amendment." *Id*.

Here, a nonconsenting gun owner, such as Plaintiff Mark Sikes who objects by virtue of the filing of this lawsuit, has no option to waive the payment of this annual fee/donation subsidizing the City-chosen nonprofit. He is forced to support the speech of the nonprofit, in violation of the First Amendment. By requiring San Jose gun owners to pay an Annual Gun Harm Reduction Fee to a private nonprofit organization that the City Manager will designate, the Ordinance forces San Jose gun owners to associate with or support that private group and to fund their message, in violation of the gun owners' rights of free speech and association under the United States Constitution.

### III. Plaintiffs are entitled to declaratory relief.

The NAGR Plaintiffs have stated a plausible claim for relief under 28 U.S.C. §§ 2201 & 2202 for declaratory relief. Defendant objects that declaratory relief is "derivative." MTD FAC 23. However, the NAGR Plaintiffs' request for relief is requested "to the extent that each of the claims above have not already established a remedy." FAC 148. For declaratory relief to be "derivative," Defendants would have to concede that the NAGR Plaintiffs have already "established a remedy." Defendants make no such concession, so declaratory relief cannot be "duplicative" at this stage. So long as the NAGR Plaintiffs establish federal subject-matter jurisdiction and standing, which they have, declaratory relief is a remedy available to them. *County of Santa Clara v. Trump*, 267 F.Supp.3d 1201, 1216 (N.D. Cal. 2017) (citing *Fid. & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979)).

### CONCLUSION

The NAGR Plaintiffs have stated plausible claims for relief challenging the Ordinance, and its provisions, which are ripe for review. Therefore, Defendants' motion to dismiss must be denied.

Respectfully submitted,

Date: March 16, 2023

DHILLON LAW GROUP INC.

By: /s/ Harmeet K. Dhillon
Harmeet K. Dhillon
Michael A. Columbo
Mark P. Meuser
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
(415) 433-1700

David A. Warrington*
DHILLON LAW GROUP INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
(703) 574-1206
*Admitted *pro hac vice*.

*Attorneys for the National Association for Gun Rights and Mark Sikes*



**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record in this action.

By:     /s/ Harmeet K. Dhillon
           Harmeet K. Dhillon

