JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

*Attorneys for Defendants City of San Jose, et al.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.,** a nonprofit corporation, and **MARK SIKES**, an individual, <br><br> And <br><br> **HOWARD JARVIS TAXPAYERS ASSN.,** a nonprofit corporation, **SILICON VALLEY TAXPAYERS ASSN.,** a nonprofit corporation, **SILICON VALLEY PUBLIC ACCOUNTABILITY FOUNDATION,** a nonprofit corporation, **JIM BARRY**, an individual, and **GEORGE ARRINGTON**, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> **CITY OF SAN JOSE**, a public entity, **JENNIFER MAGUIRE**, in her official capacity as City Manager of the City of San Jose, **CITY OF SAN JOSE CITY COUNCIL**, and **ALL PERSONS INTERESTED** in the matter of San Jose Ordinance No. 30716, establishing an Annual Gun Harm Reduction Fee, <br><br> Defendants. | Case No. 5:22-cv-00501-BLF <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINT** <br><br> Date:      June 15, 2023 <br> Time:      9:00 a.m. <br> Judge:     Hon. Beth Labson Freeman <br> Dept.:      San Jose Courthouse, Courtroom 3 <br>            (5th Floor) |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION...............................................................................................................1

II. ARGUMENT ...................................................................................................................1

A.  The NAGR Plaintiffs' Claims Challenging the Insurance Requirement Should
    Be Dismissed With Prejudice. ...............................................................................1

    1.  The Insurance Requirement Does Not Infringe on Conduct Covered by the
        Second Amendment's Plain Text..............................................................................2

    2.  The Insurance Requirement is Consistent with the Nation's Historical
        Tradition of Firearm Regulation and Can Be Resolved as a Matter of Law.........4

B.  The HJTA Plaintiffs' Claims Challenging the Fee Requirement under Tax-Related
    Provisions of the California Constitution Should Also Be Dismissed with Prejudice. ....8

    1.  HJTA Plaintiffs' Article XIII C Claim (Claim 6) ................................................8

    2.  HJTA Plaintiffs' Tax-Delegation Claim (Claim 7)..............................................9

C.  Plaintiffs' Remaining Claims Challenging the Fee Requirement Should Be
    Dismissed Because They Are Still Unripe for Review.................................................9

D.  Even If the Court Finds Any of Plaintiffs' Remaining Claims Ripe, They Should
    Each Be Dismissed for Failure to State a Claim. .........................................................12

    1.  The Second Amendment Claims (Claims 1, 3, and 5).......................................12

    2.  The Compelled Speech and Association Claims (Claims 2, 3, and 4)...............13

III. CONCLUSION..............................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Babbitt v. United Farm Workers Nat'l Union*,
442 U.S. 289 (1979) ...................................................................................................................4

*Bishop Paiute Tribe v. Inyo County*,
863 F.3d 1144 (9th Cir. 2017) .................................................................................................11

*City of Dallas v. Stanglin*,
490 U.S. 19 (1989) ...................................................................................................................14

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ...............................................................................................................2, 6

*Heller v. District of Columbia*,
801 F.3d 264 (D.C. Cir. 2015) ................................................................................................12

*Janus v. AFSCME Council 31*,
138 S. Ct. 2448 (2018) .............................................................................................................14

*Kwong v. Bloomberg*,
723 F.3d 160 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2696 (2014) ......................................12

*McDonald v. Chicago*,
561 U.S. 742 (2010) ...................................................................................................................6

*Nat'l Fed'n of Indep. Business v. Sebelius*,
567 U.S. 519 (2012) ...................................................................................................................3

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) ...................................................................................................... *passim*

*O'Connell v. Gross*,
2020 WL 1821832 (D. Mass. Apr. 10, 2020) .........................................................................12

*PruneYard Shopping Ctr. v. Robins*,
447 U.S. 74 (1980) ...................................................................................................................14

*Rumsfeld v. Forum for Academic and Inst'l Rights, Inc.*,
547 U.S. 47 (2006) ...................................................................................................................14

*Schmeer v. County of Los Angeles*,
213 Cal. App. 4th 1310 (2013) ..............................................................................................8, 9

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...............................................................................................................3, 4

**Statutes**

San Jose Municipal Code

§ 10.32.210...................................................................................................................1, 2, 3

§ 10.32.215...........................................................................................................................1

§ 10.32.240.........................................................................................................................13

§ 10.32.245...........................................................................................................................3

**Rules**

Federal Rules of Civil Procedure

Rule 12(b)(1)......................................................................................................................15

Rule 12(b)(6)...............................................................................................................1, 2, 15

1

## I.       INTRODUCTION

In their Consolidated Second Amended Complaint ("SAC") (ECF No. 94), Plaintiffs seek to invalidate San Jose's Gun Harm Reduction Ordinance ("Ordinance"), Muni. Code §§ 10.32.200-10.32.250, which requires non-exempt gun owners residing in San Jose to (1) maintain liability insurance covering harm from accidental shootings (the "Insurance requirement"), and (2) pay an annual Gun Harm Reduction Fee ("Fee") to a City-designated nonprofit organization ("Nonprofit") to fund voluntary services for gun owners and their families (the "Fee requirement"). §§ 10.32.210, 10.32.215.[1] The parties agree the Insurance requirement is now fully implemented, but the Fee requirement is not. ¶¶ 40, 42, 45.[2]

Plaintiffs' claims either lack substantive merit (with respect to the Insurance requirement) or should be dismissed as being unripe or otherwise baseless (with respect to the Fee requirement). *See generally* Mot. to Dismiss the SAC ("Motion") (ECF No. 95). Plaintiffs' challenges to the Insurance requirement under the Second Amendment to the U.S. Constitution (parts of Claims 1 and 3), and to the Fee requirement under tax-related provisions of the California Constitution (Claims 6 and 7), should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6). Mot. at 10-16, 22-24, 25:9-20. Plaintiffs' remaining claims challenging the unimplemented Fee requirement under the First and Second Amendments and related state constitutional provisions (Claims 1-5) should be dismissed because they are unripe for review, or otherwise fail to state a claim. Mot. at 16-22.

Nothing in Plaintiffs' Opposition papers warrants a contrary result, as Plaintiffs' arguments either ignore entirely the basis of the City's Motion or the reasoning applied by the Court in an earlier procedural posture. *See* ECF No. 102 ("HJTA Opp'n"); ECF No. 103 ("NAGR Opp'n"). Such reasoning is appropriately applied here to dismiss each of the Plaintiffs' claims in the SAC, most with prejudice.

## II.      ARGUMENT

### A.       The NAGR Plaintiffs' Claims Challenging the Insurance Requirement Should Be Dismissed With Prejudice.

The Ordinance's Insurance requirement provides that non-exempt gun owners must maintain

---

[1] "§" on its own refers to a section of the Ordinance. *See* SAC, Ex. E (copy of the Ordinance).

[2] "¶" on its own refers to a paragraph in the SAC.

1  liability insurance for firearm accidents. § 10.32.210. The NAGR Plaintiffs bring a facial challenge to

2  this requirement under the Second Amendment to the U.S. Constitution (¶¶ 84-92) (Claim 1), as well as

3  a derivative claim for declaratory relief "to the extent that" the Second Amendment claim "ha[s] not

4  already established a remedy" (¶¶ 100-102) (Claim 3). The HJTA Plaintiffs do not challenge the

5  Insurance requirement. *See* ¶ 102. Whether the NAGR Plaintiffs have alleged a viable legal theory under

6  the Second Amendment turns on the two-part test announced in *New York State Rifle & Pistol*

7  *Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*"): (1) whether Plaintiffs can show "the

8  Second Amendment's plain text covers an individual's conduct" and, if so, (2) whether the government

9  can demonstrate that "the regulation is consistent with this Nation's historical tradition of firearms

10  regulation." *Id.* at 2126.[3] Because the NAGR Plaintiffs' challenge to the Insurance requirement fails to

11  state a claim at both steps of the *Bruen* framework, their claims should be dismissed with prejudice

12  under Rule 12(b)(6). *See* Mot. at 10-16, 25.

13      **1.  The Insurance Requirement Does Not Infringe on Conduct Covered by the
14          Second Amendment's Plain Text.**

15      As the Court is aware from having already analyzed the Ordinance under *Bruen*, the analysis of

16  Second Amendment challenges begins with the Amendment's "plain text." *Bruen*, 142 S. Ct. at 2126-

17  27, 2129. The relevant text provides that "the right of the people to keep and bear Arms, shall not be

18  infringed." U.S. CONST., amend. II; *see also District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)

19  (holding that this text "guarantee[s] the individual right to possess and carry weapons in case of

20  confrontation"). Plaintiffs' obligation at *Bruen*'s first step is to show that "the Second Amendment's

21  plain text covers an *individual's conduct*." 142 S. Ct. at 2126 (emphasis added). The NAGR Plaintiffs

22  have failed to do this in the SAC, for at least three reasons.

23      ***First***, the preliminary finding the Court must make is the defined scope of conduct that

24  Plaintiffs allege is covered by the Second Amendment's plain text. *Bruen*, 142 S.Ct. at 2134. Plaintiffs

---

26  [3] The NAGR Plaintiffs' strange argument that "*Bruen* adopted a one-step test" (NAGR Opp'n at 3:15) is

27  directly contradicted by Plaintiffs' quotations from *Bruen* (*id.* at 3:15-22; ¶ 86) and the text of *Bruen*

28  itself, as well as this Court's correct prior analysis (MPI Order at 13-14).

define the scope of conduct as "the right to keep and bear arms for self-defense within the home." ¶ 13; NAGR Opp'n at 7. Brady, accepted as *amicus curiae* in this case, defined the conduct at issue as "insuring liability that might arise from a firearm-related accident." ECF No. 99-1, Brady Amicus Curiae Br. ("Brady Br.") at 11:6. The Court previously (preliminarily and in a different procedural posture) defined the course of conduct as "owning or possessing a firearm without firearm liability insurance." ECF No. 72 ("MPI Order") at 15. The definitions advanced by both Brady and the Court are more appropriate and tailored to the facts of the case, and the City's arguments prevail under either of them.

Plaintiffs' contrary contention that the Ordinance threatens the "right to keep and bear arms," period, is inapposite. The Insurance requirement does not imperil ownership, possession, or use of firearms, *see* § 10.32.245 (presently inoperative "impoundment" provision)—which Plaintiffs concede in the SAC. ¶ 51 ("At present, the City has no authority to seize a person's gun for violating the Ordinance."). Rather, it requires them to obtain, from a private third-party insurance company, liability insurance indemnifying them against "losses or damages resulting from any accidental use of the Firearm." § 10.32.210. This does not threaten Plaintiffs' ability to own, possess, use, or otherwise "keep and bear arms." *See Nat'l Fed'n of Indep. Business v. Sebelius*, 567 U.S. 519, 558 (2012) (explaining that a health insurance mandate might be "inherently" related to "health care consumption," but the two are simply "not the same thing," in part because they "involve different transactions, entered into at different times, with different providers"). As Brady notes, the Insurance requirement "is consistent with other government insurance mandates that also raise no serious constitutional concerns even though they make insurance a prerequisite for engaging in constitutionally protected activity." Brady Br. at 11:16-18 (citing mandates that businesses, including gun ranges and gun stores, have workers compensation and liability insurance); MPI Order at 15:26-28 (crediting "the strong arguments offered by [Brady] that the Second Amendment is not implicated by the Insurance Requirement or Fee provisions").

The course of conduct defined by the NAGR Plaintiffs is not "proscribed by [the Insurance requirement]"—or even threatened by it. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *accord* MPI Order at 15 (noting "the Insurance Requirement would not imperil the ownership or

possession of anyone's firearms"). The NAGR Plaintiffs' generic, cookie-cutter arguments that the Insurance requirement, for instance, "impos[es] a burden on gun ownership and possession" and "seeks to regulate the keeping and bearing of arms" are wholly insufficient and untethered to the Ordinance's plain text. NAGR Opp'n at 5:2-6.

*Second*, the Court previously dismissed this claim with leave to amend, due to the NAGR Plaintiffs' failure to define a "proposed course of conduct for the Court to determine whether it is covered by the Second Amendment's plain text." ECF No. 81 ("MTD Order") at 10:7-10 & n.2. Having failed again to adequately do so in the SAC, the NAGR Plaintiffs' claim should be dismissed with prejudice. *See Susan B. Anthony List*, 573 U.S. at 159 (looking to whether "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute"); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (same). It should not be up the Court to articulate this "necessary allegation" for the Plaintiffs. MTD Order at 10:8.

*Third*, the NAGR Plaintiffs' allegations in the SAC also fail to establish they have Article III standing to challenge the Insurance requirement. *See Susan B. Anthony List*, 573 U.S. at 159; *Babbitt*, 442 U.S. at 298. Regardless of whether the Court might be able to infer from the SAC an alleged "course of conduct arguably affected with a constitutional interest, but proscribed by a statute," the NAGR Plaintiffs have certainly failed to "allege[] an **intention to engage in**" in that course of conduct, as required to establish standing. *Susan B. Anthony List*, 573 U.S. 149, 159 (2014) (emphasis added); *Babbitt*, 442 U.S. at 298. All the NAGR Plaintiffs allege is that they are "subject to the Ordinance," not that that they currently lack insurance that satisfies the Insurance requirement and intend to continue owning or possessing firearms without obtaining the required insurance. ¶¶ 13-14; *see also* Mot. at 10:27-28 (noting Plaintiffs' failure to allege they currently lack compliant insurance). Plaintiffs thus lack standing.

### 2. The Insurance Requirement is Consistent with the Nation's Historical Tradition of Firearm Regulation and Can Be Resolved as a Matter of Law.

Even assuming, liberally, that Plaintiffs can satisfy the first prong of *Bruen* by defining a scope of conduct falling within the Second Amendment's plain text, the Ordinance is firmly grounded in this

country's historical tradition of firearm regulation. *See Bruen*, 142 S. Ct. at 2149. It is the City's burden to "'demonstrat[e] that [the Insurance Requirement] is consistent with the Nation's historical tradition of firearm regulation,'" and that there are sufficiently "relevantly similar" historical regulations to defeat Plaintiffs' Second Amendment claim. MPI Order at 16:9-13 (quoting *Bruen*, 142 S. Ct. at 2130, 2132); *see also Bruen*, 142 S. Ct. at 2132-33 (government need only "identify a well-established and representative historical analogue, not a historical twin," keeping in mind that "regulatory challenges posed by firearms today are not always the same as those" in 1791 or 1868, and "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated"). The parties' and Brady's briefing on this issue raises four principal arguments.

*First*, on the issue of history, there are numerous "relevantly similar" historical analogues supporting the constitutionality of the Insurance requirement, including strikingly similar surety statutes, as is described further in the City's Motion. *See* Mot. at 14:9-19; *see also* Brady Br. at 14:1-17. As this Court previously found, "the mid-19th century surety statutes … bear striking analogical resemblances to the Insurance Requirement," and further "that surety laws and the Insurance Requirement share substantial overlap as to the 'how and why the regulations burden a law-abiding citizen's right to armed self-defense.'" MPI Order at 18:19-21 (quoting *Bruen*, 142 S. Ct. at 2133); *see also id.* at 18:22-20:2 (rejecting Plaintiffs' arguments for distinguishing the surety laws from the Insurance requirement). Moreover, even putting surety laws to the side, "the history of reallocating costs of firearm accidents—from which the Insurance Requirement descends—can be traced back to the early American practice of imposing strict liability for such accidents." MPI Order at 17:20-18:7.

In response, Plaintiffs repeat the same hyperbolic arguments, failing to grapple in depth with the relevant legal issues. *Compare, e.g.*, NAGR Opp'n at 6:17-7:20 (calling the surety laws an "inapt analogy" because the Ordinance is based on the "[i]nherent … assumption that every person is a danger and [] must purchase their right to own a gun"), *with* MPI Order at 17:15, 18:8-21 (finding the surety laws and Insurance requirement "bear striking analogical resemblances" and "substantial overlap" because they have "similar … deterrent purposes" and "achieve their purposes through similar means, namely the threat of financial consequences (either through a peace bond or higher premiums) for individuals deemed to be high-risk (either by a judge or an underwriter)"), *and* Mot. at 13-16.

Similarly, Plaintiffs' allegations that the Insurance requirement has no historical analogues because San Jose's former Mayor referred to it as "novel" and the first of its kind (NAGR Opp'n at 4, 6; ¶¶ 87-88) is irrelevant to the nuanced and searching historical inquiry *Bruen* requires, and is not appropriately focused on the clear text of the Ordinance germane to this case.

**Second**, given *Bruen*'s discussion of the great "variety" of gun regulations permitted under the Second Amendment, *Bruen*, 142 S. Ct. at 2162 (quoting *Heller*, 554 U.S. at 636), even firearms laws that have no clear historical analogues—such as laws requiring fingerprinting, background checks, and firearms training—will often pass constitutional muster because they reflect state and local governments' legitimate and well-established power to uphold peace and good order, including through the regulation of firearms. *See* Mot. at 14-16 (collecting authorities). This is consistent with the wide variety of gun regulations, including wholly contemporary regulations, that *Bruen* blessed as *per se* constitutional. *See Bruen*, 142 S. Ct. at 2138 n.9; *id.* at 2162 (Kavanaugh, J., concurring). The Insurance requirement here is analogous to and significantly less burdensome than many of those regulations. *See also* Brady Br. at 17-18 (contending that approximately 93 percent of homeowners already have the required liability insurance through their homeowner's policy). And it is certainly less burdensome than the laws the Supreme Court has historically struck down as violating Second Amendment rights, all of which have either sought to directly prohibit or prevent most or all people from keeping or bearing arms. *See McDonald v. Chicago*, 561 U.S. 742, 750 (2010) (law "banning handgun possession); *Heller*, 554 U.S. at 628, 630, 632 (law requiring a firearm be stored and transported in a way that "makes it impossible" to use it for self-defense); *Bruen*, 142 S. Ct. at 2161 (Kavanaugh, J., concurring) (striking down law that "in effect den[ies] the right to carry handguns for self-defense to many 'ordinary, law-abiding citizens'"); *id.* at 2157 (Alito, J., concurring) (explaining that "all we decide" in "today's decision" is "that a State may not enforce a law … that *effectively prevents* its law-abiding residents from carrying a gun" for self-defense or other lawful purposes). The Insurance requirement here bears no resemblance to such laws.

The NAGR Plaintiffs' response is that, after *Bruen*, Courts may no longer consider the burdens imposed by gun regulations. *See* NAGR Opp'n at 5:13 ("Whether a regulation's burden is small or great, impactful or inconsequential is immaterial."); *id.* at 1:22 (arguing the City's discussions of

comparable burdens "smuggle in the … balancing test the [*Bruen*] Court rejected"); *id.* at 7:21-23 (similar). But the NAGR Plaintiffs' argument is directly contrary to *Bruen* itself. *See Bruen*, 142 S. Ct. at 2128, 2133 (providing that, at step two of *Bruen*, two "central considerations" are "whether modern and historical regulations impose a comparable *burden* on the right of armed self-defense and [] whether that *burden* is comparably justified" (emphases added)); *accord* MPI Order at 15:21-23 (analysis of "the degree to which Plaintiffs' Second Amendment rights have been burdened … occur[s] under the 'historical tradition' prong of the *Bruen* framework"). Plaintiffs thus both pressure this Court to strike down the Ordinance under *Bruen*, while also asking the Court to misapply it.

***Third***, this issue can and should be decided now as a matter of law. Under *Bruen* step two, the Insurance requirement minimally burdens Second Amendment rights and is sufficiently similar to historical firearm regulations that it is constitutional under *Bruen*. No discovery is required to reach this conclusion. While the NAGR Plaintiffs argue that their insurance claim should survive the pleading stage because they allege "enough facts to raise a reasonable expectation that discovery will reveal evidence to support the allegations," NAGR Opp'n at 3:6-7, 4:16-19 & n.1, 8:7-17 (quoting *Starr v. Baca*, 652 F.3d 12012, 1217 (9th Cir. 2011)), they never explain what those facts are likely to be or how they would change the analysis. The claim should be dismissed. The text of the Ordinance is established, and the parties do not dispute either that the Insurance requirement is fully implemented and presently being enforced, or that *Bruen* supplies the governing legal standard to determine its constitutionality under the Second Amendment. Plaintiffs' claims as pled are insufficient to state a claim, even after having been granted leave to amend.

***Fourth***, the City's arguments are supported again by *amicus curiae* Brady, which is a nationally recognized authority on the history and present-day landscape of firearms regulation. *See* Brady Br. Brady argues, among other things, that the Insurance requirement descends from a well-established historical tradition of American governments allocating costs associated with risks, including through insurance mandates, and that the NAGR Plaintiffs' challenge to the Insurance requirement here fails at both steps of the *Bruen* framework. *See id*. As with the City's arguments, the NAGR Plaintiffs ignore many of these arguments, as well.

**B.    The HJTA Plaintiffs' Claims Challenging the Fee Requirement under Tax-Related Provisions of the California Constitution Should Also Be Dismissed with Prejudice.**

While the City's principal argument about Plaintiffs' claims challenging the Fee requirement is lack of ripeness because the Fee is still not implemented (*see infra* § II.C), at least two of Plaintiffs' claims challenging the Fee requirement can and should be dismissed now for failure to state a claim. These claims allege that the Fee requirement violates the California Constitution's prohibitions on imposing a special "tax" without voter approval under article XIII C (Claim 6), and on delegating the power to tax under article XIII (Claim 7). ¶¶ 114-27. The HJTA Plaintiffs have repeatedly conceded that the fate of these claims is tied together, in the sense that both claims fail if the Court rules against them on the threshold issue of whether the Fee is a "tax" under article XIII C of the California Constitution. *See* MTD Order at 23:2-4; HJTA Opp'n at 19:6-8.

The Court previously dismissed the lead claim (Claim 6) with leave to amend on that very threshold issue, noting specific pleading deficiencies under *Iqbal*. *See* MTD Order at 22:5-26; *see also id.* at 13-15, 22-23 (holding that Plaintiffs' allegations indicate the Fee is not a "tax" under *Schmeer v. County of Los Angeles*, 213 Cal. App. 4th 1310, 1328-29 (2013), because the Fee is not "payable to, or for the benefit of, a local government"). As the City has shown, the HJTA Plaintiffs then re-pled a virtually *identical* version of that claim. *See* Mot. at 23:7-12. Having already been given leave to amend once and squandered it, thereby wasting the parties' and the Court's time, the HJTA Plaintiffs should not be given leave to amend a second time. Both claims should be dismissed with prejudice.

**1.    HJTA Plaintiffs' Article XIII C Claim (Claim 6)**

The Court previously dismissed this claim, in part, because it "contain[ed] very limited factual allegations," "largely legal conclusions couched in the language of article XIII C," and thus "f[ell] short of the federal standard required by *Ashcroft v. Iqbal*." MTD Order at 22. The HJTA Plaintiffs then re-filed the *exact same* claim, except for the addition of a single conclusory sentence stating "The fes [sic] is therefore invalid." *Compare* ¶¶ 114-121, *with HJTA* action, No. 22-cv-02365-BLF, ECF No. 1, Compl. ¶¶ 25-30). The claim is subject to dismissal with prejudice for this reason alone.

It also subject to dismissal because, among other reasons, the Fee is still not a "tax" under Article XIII C and *Schmeer* for all the reasons stated in the Court's prior MTD Order. *See* Mot. at 23-

24 (citing MTD Order at 13-15, 22-23); *see also id.* ¶¶ 57, 109 (Plaintiffs repleading the allegation that the Ordinance requires the Fee be paid directly to the Nonprofit, which the Court previously noted, in its MTD Order at 22, seemed on its own to be fatal to the claim under *Schmeer*).

In response, the HJTA Plaintiffs do not deny that they repled the same allegations as before despite the Court's finding that such allegations were insufficient under *Iqbal*. *See* HJTA Opp'n at 12-18. Instead, they side-step that issue to press three arguments, often convoluted, attempting to distinguish *Schmeer* as follows: (1) the fee in *Schmeer* was paid to a private entity, whereas the Fee here is not currently being paid to anyone because the Nonprofit has not yet been established (*id.* at 12-14); (2) the fact that the services funded by the Fee are intended to reduce gun harm, and thereby benefit the San Jose public, means the Fee is "for the benefit of a local government" and thus a "tax" within the meaning of *Schmeer* (*id.* at 14-15), and (3) the HJTA Plaintiffs "believe" a state Court of Appeal would limit *Schmeer* because *Schmeer* was wrongly decided (*id.* at 15-18). The Court has noted that *Schmeer* was "thorough," "persuasive," and the "touchstone" of the appropriate analysis. The HJTA Plaintiffs haven't suggested a sensical distinction of *Schmeer*, or cited any alternative on-point case that the Court could apply. The claim should be dismissed with prejudice.

### 2.  HJTA Plaintiffs' Tax-Delegation Claim (Claim 7)

The HJTA Plaintiffs' seventh claim should likewise be dismissed with prejudice because they "again concede that they have no claim for an unlawful delegation of the power to tax unless this Court first finds that the City's fee is a 'tax'" under their sixth claim. HJTA Opp'n at 19:6-8. For the reasons stated above, and as previously stated by this Court, the HJTA Plaintiffs have again failed to adequately allege the Fee is "tax" within the meaning of the California Constitution despite being given a chance to amend. *See* MTD Order at 22:5-23:4. This claim should also be dismissed with prejudice.

### C.  Plaintiffs' Remaining Claims Challenging the Fee Requirement Should Be Dismissed Because They Are Still Unripe for Review.

All Plaintiffs' claims involve facial challenges to the Ordinance's Fee requirement, including federal constitutional challenges under the First and Second Amendments, and closely related state constitutional challenges. ¶¶ 84-127. But this Court has held on two occasions that certain federal and state constitutional challenges were not ripe for review, specifically because: the Fee requirement was

not being enforced, the Nonprofit had not been designated, "the Ordinance does not specify what the Nonprofit's activities will be," and the Court could not tell "whether the Fee would fund *any* kind of speech or expressive activities." MPI Order at 7-10 (concluding that, "[w]ithout a concrete idea of the Nonprofit's actual programs and activities, the Court is left 'entangling [itself] in abstract disagreements'"); MTD Order at 7-9, 18-19, 23.

Since then, the City has been working hard to implement this unique Ordinance, but the only two developments in implementing the Fee requirement to have subsequently occurred—which the Court's prior reasoning indicates could affect the ripeness of the Second Amendment claims (*see infra* § II.D.1) but not the First Amendment claims (*see infra* § II.D.2)—are that the City has at least preliminarily set the Fee amount at $25 and promulgated regulations defining the Ordinance's "financial hardship" exemption. ¶¶ 31, 39; SAC Ex. H, § 4 (financial hardship regulations); *see also* Mot. at 4, 5; ECF No. 85 (Jan. 2023 Status Report). The City has not yet designated or contracted with a Nonprofit, the final Fee amount has not been confirmed by the City Council, the Fee requirement is not yet operational or enforceable, and the non-existent Nonprofit has yet to use Fee revenues to provide services to gun owners and their families (nor has the precise nature of those services yet been articulated). Mot. at 16-20. Thus, the lack of ripeness remains today.

Plaintiffs make various misguided arguments in an effort to avoid this conclusion and to obtain a premature (and, for some claims, impossible) adjudication of their challenges to the Fee requirement. For example, the NAGR Plaintiffs generically argue instead that they face "a credible threat of prosecution" for failure to pay the Fee (obviously not true, since the Fee is not being enforced), and that learning "[t]he name of the nonprofit … [will] not change the constitutionality of the [Fee requirement]" (ignoring the actual ripeness analysis relevant to Plaintiffs' claims, and the Court's stated reasons the lack of ripeness). NAGR Opp'n at 8:24, 9:2-3. Meanwhile, the HJTA Plaintiffs argue that "Plaintiffs' rights should not hang in limbo" due to the City's "delays" in implementing the Fee Requirement (again, ignoring that no one's rights are "in limbo" as the Fee is neither being charged nor enforced), and using outdated facts to argue, incorrectly and without supporting allegations, that the City is somehow engaged in "duplicity" and deriving unspecified "benefit[s] from causing delay" of the Fee requirement's implementation. HJTA Opp'n at 5-6. These arguments are all some combination

of hyperbole, unsupported speculation, or are simply irrelevant. And none of Plaintiffs' arguments identify for the Court how it can rule on speech or association claims without knowing what services the Nonprofit will provide, and without the requirement in question even being enforced.

Constitutional ripeness requires establishing injury-in-fact (of which here, there is none), and prudential ripeness requires considering the fitness of issues for judicial decision, and the hardship to the parties of withholding court consideration. *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1153-54 (9th Cir. 2017). Plaintiffs fail to allege injury-in-fact with respect to the Fee requirement for the substantially the same reasons that they fail to allege injury-in-fact to to challenge the Insurance requirement. *See supra* § II.A.1. Specifically, no Plaintiff alleges that they intend to continue owning or possessing firearms but not to comply with the Fee requirement when it comes into effect. ¶¶ 13-21. The NAGR Plaintiffs attempt to rebut this with the bare assertion that they have "establish[ed] … standing" without any explanation or citation to allegations in the complaint. NAGR Opp'n at 10:8; *see also id.* at 9:20-21 (arguing that NAGR Plaintiff Sikes "objects [to the Fee Requirement] by virtue of filing this lawsuit"). Further, there is no prejudice to Plaintiffs whatsoever of withholding judicial review of the Fee requirement claims until it is operationalized and being enforced. Every day that goes by without the Fee being implemented or enforceable is, presumably, a benefit to Plaintiffs, and it is unclear why Plaintiffs are dissatisfied the Fee requirement has not been implemented sooner.

The City has made progress in implementing its novel Ordinance, but the structure and terms of the Fee requirement are unique, have not been done by the City before, and rely upon interest from qualified nonprofit organizations outside of the City's control. There is no "deception" explaining why an RFI rather than an RFP process was used to secure interest from nonprofits as Plaintiffs haphazardly claim. The RFI process is broader, casts a wide net, and seeks more information from potential nonprofit recipients about how those nonprofits might provide services, collect payment, and otherwise operationalize the Ordinance's directives. *See generally* ECF No. 85 (Jan. 2023 Status Update). The Court should also reject Plaintiffs' attempts to conjure up some other form of prejudice, such as by going outside the SAC to falsely assert (without any legal or factual authority) that San Jose gun owners are somehow currently "accumulating debt of $25/year" while the Fee requirement remains

1  unimplemented. HJTA Opp'n at 14:4-5. The Fee requirement is not retroactive. When implemented, it

2  will start to be enforced, and not before.

3        Plaintiffs' challenges to the Fee requirement should thus be dismissed for lack of ripeness.

4  Nothing in the SAC or Plaintiffs' Opposition briefs warrant a different result.

5     **D.     Even If the Court Finds Any of Plaintiffs' Remaining Claims Ripe, They Should**

6            **Each Be Dismissed for Failure to State a Claim.**

7            **1.     The Second Amendment Claims (Claims 1, 3, and 5)**

8        Because the Fee amount has at least been preliminarily set at $25 and the City has implemented

9  regulations defining the Ordinance's "financial hardship" exemption (based on 30% area median

10 income), the Court could determine that the Fee requirement is ripe for adjudication with respect to

11 Plaintiffs' Second Amendment and related state constitutional claims. *See* MPI Order at 12 (ruling that

12 "the promulgation of regulations on these two points" was necessary for the claim to be ripe); SAC Ex.

13 H, § 4-3 (financial hardship regulations). The question for Second Amendment purposes, is whether

14 this $25 Fee with the financial hardship exemption is so "exorbitant [as to] deny ordinary citizens their

15 right to public carry." *Bruen,* 142 S. Ct. at 2138 n.9; *accord* MPI Order at 12. It obviously is not.

16       "Properly interpreted, the Second Amendment allows a variety of gun regulations," including

17 laws far more intrusive than payment of a $25 Fee (e.g., fingerprinting, background and mental health

18 record checks) so long as they reflect state and local governments legitimate power to uphold peace and

19 good order. *Bruen*, 142 S. Ct. at 2162. The Ordinance's Fee requirement here is significantly less

20 burdensome than the various laws that the *Bruen* Court indicated were *per se* constitutional, and the

21 $25 Fee amount is clearly not exorbitant under any common-sense understanding of the term, or under

22 Second Amendment case law. *See, e.g., Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir.

23 2015) (upholding $48 in gun licensing fees); *Kwong v. Bloomberg*, 723 F.3d 160, 161, 167 (2d Cir.

24 2013), *cert. denied*, 134 S. Ct. 2696 (2014) (upholding $340 gun licensing fee); *O'Connell v. Gross*,

25 2020 WL 1821832 (D. Mass. Apr. 10, 2020) (upholding $300 in fees and mandatory gun safety

26 courses).

27       In response, Plaintiffs simply ignore the controlling "exorbitant" test for fees under *Bruen*, and

28 instead argue other non-controlling issues. *See, e.g.*, NAGR Opp'n at 7-8 (arguing *Bruen* rejected the

"means-end" scrutiny test for Second Amendment challenges, and discussing case law about administrative fees intended to defray costs directly incurred by governments). The Second Amendment and related declaratory relief challenges to the Fee requirement should thus be dismissed.

The same is true of the HJTA Plaintiffs' state-law "unconstitutional conditions" claim, which necessarily falls with the Second Amendment claim. In a vain attempt to avoid this outcome, the HJTA Plaintiffs directly contradict their own allegation that "[a]t present, the City has no authority to seize a person's gun for violating the Ordinance" (¶ 51) by arguing the opposite. *See* HJTA Opp'n at 11-12 (arguing the City presently *has* the legal authority to seize firearms for violations of the Ordinance); *contra* MTD Order at 20 (finding "there are no means by which a San Jose gun owner may be deprived of his or her firearm" for violating the Ordinance, and calling any contrary view is a "misinterpretation" of the law). Specifically, the HJTA Plaintiffs argue that, despite its own contrary allegations and the City's repeated prior concessions in this litigation that it lacks authority to take possession of firearms for violations of the Ordinance, the City's ability to seize firearms for various violations of criminal law might also apply to the Ordinance. *See* HJTA Opp'n at 11-12. Among other fatal flaws with this argument, the Ordinance does not authorize criminal punishment for violations, but expressly authorizes only civil and administrative remedies such as "administrative citations" and "administrative fines." § 10.32.240. The HTJA Plaintiffs' other argument that the "[t]he City has identified no federal law that would deprive it of the power to enforce its own ordinance" (*id.* at 12:14-15) references an argument that has never been raised in this case, and that is otherwise perplexing and/or irrelevant.

### 2.     The Compelled Speech and Association Claims (Claims 2, 3, and 4)

Plaintiffs bring claims facially challenging the Fee requirement on compelled speech and association grounds under the First Amendment (Claims 2 and 3) and an analogous provision of the California Constitution (Claim 4). ¶¶ 93-106. Despite the claims' obvious lack of ripeness, including for reasons set forth in this Court's earlier reasoning (*see supra* § II.C), Plaintiffs rehash their prior arguments anyway. *See* HJTA Opp'n at 8-9; NAGR Opp'n at 9. Several of Plaintiffs' arguments are absurd on their face. For example, the HJTA Plaintiffs argue that the $25 Fee necessarily constitutes compelled speech or association because the Nonprofit will have to engage in "communication" to

provide the voluntary services contemplated by the Ordinance. HJTA Opp'n at 9:9-20. This argument seems to assume that all communication is protected by the First Amendment and the California Constitution, which is incorrect. *See City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) (recognizing that not every group is engaged in "the sort of 'expressive association' that the First Amendment has been held to protect"); MPI Order at 9:16-27 ("It is also unclear whether the Fee would fund *any* kind of speech or expressive activities," noting for example "a program that may reduce gun harm without involving speech or other expressive activity, such as offering optional firearm safety training to first-time gun owners"). Plaintiffs likewise repeat that *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), categorically forbids "[a]ny compelled payments to a private organization." *See* NAGR Opp'n at 9:16-20; HJTA Opp'n at 9:2-8. This has also already been rejected by this Court. *See* MTD Order at 8:14-16 ("To the extent NAGR Plaintiffs argue that—regardless of the Nonprofit's actual activities—the Supreme Court's decision in *Janus* instructs that a mandatory Fee to *any* nonprofit would violate the First Amendment, this argument is unavailing.").

Ripeness aside, substantively the compelled speech and association claims should be dismissed as meritless, for at least two additional reasons. First, Plaintiffs are not "forced … to support [the Nonprofit's] speech" (¶¶ 95, 105) because whatever expressive speech (if any) the Nonprofit ultimately engages in, Plaintiffs will never lose their ability to "expressly disavow" their connection to that message. *See PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (rejecting shopping center's First Amendment challenge to state law requiring it to allow certain expressive activity on its property); *Rumsfeld v. Forum for Academic and Inst'l Rights, Inc.*, 547 U.S. 47, 65 (2006) (rejecting compelled-speech-and-association challenge to federal law conditioning law schools' receipt of federal funds on allowing on campus military recruiters during era of "Don't Ask, Don't Tell" because law did "not sufficiently interfere with any message of the school"). Second, the Ordinance does not violate Plaintiffs' associational rights because they remain free to associate with others and voice disapproval of the Ordinance and the nonprofit. *See Rumsfeld*, 547 U.S. at 69-70 (right to associate not violated "regardless of how repugnant" law schools considered "Don't Ask, Don't Tell" policy to be).

Ultimately, Plaintiffs have not plausibly alleged the Fee requirement will compel them and other San Jose gunowners to engage in expressive speech and association with which they disagree in

violation of the First Amendment or the California Constitution. Plaintiffs' federal and state constitutional claims based on compelled speech and association should be dismissed.

## III.     CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss Plaintiffs' SAC under Rules 12(b)(1) and 12(b)(6). Since the SAC's defects with respect to claims challenging the Insurance requirement and tax-related claims challenging the Fee requirement cannot be cured, the City respectfully asks that the dismissal of those claims be without leave to amend. To the extent the Court determines the Second Amendment challenges to the Fee requirement are ripe for review, those claims should also be dismissed with prejudice.

Dated:  March 30, 2023                    Respectfully submitted,

**COTCHETT, PITRE & McCARTHY, LLP**

By: */s/ Tamarah P. Prevost*
    JOSEPH W. COTCHETT
    TAMARAH P. PREVOST
    ANDREW F. KIRTLEY

*Attorneys for Defendants City of San Jose, et al.*